# EXHIBIT 2

Policy Options to Respond to Border
Surge of Illegal Immigration

SHORT TERM (next 30 days) OPTIONS

1. **Increase Prosecution of Family Unit Parents:** Instruct CBP and ICE to work with DOJ to significantly increase the prosecution of family unit parents when they are encountered at the border. The parents would be prosecuted for illegal entry (misdemeanor) or illegal reentry (felony) and the minors present with them would be placed in HHS custody as UACs. Since Because the parents would be criminally prosecuted, they would be placed in the custody of the U.S. Marshal to await trial. This would require close coordination with DOJ, to ensure there are sufficient prosecutors at the border and sufficient U.S. Marshal's detention space. Because of the large number of violators, not all parents could be criminally prosecuted. However, the increase in prosecutions would be reported by the media and it would have substantial deterrent effect. A public announcement of the policy could be made before implementation.

    Status:       *CBP is currently executing this policy on a limited basis in the El Paso Sector*
    Implement:    *Secretarial memo needed for further expansion*

2. **Separate Family Units:** Announce that DHS is considering separating family units, placing the adults in adult detention, and placing the minors under the age of 18 in the custody of HHS as unaccompanied alien children (UACs) because the minors will meet the definition of "unaccompanied alien child," i.e., (1) has no lawful immigration status in the U.S.; (2) has not attained the age of 18; and (3) has no parent or legal guardian in the U.S., or no parent or legal guardian in the U.S. is available to provide care and physical custody. *See* 6 USC § 279(g)(2). This will require close coordination with HHS, to ensure that sufficient capacity is available to detain the UACs. Advocacy groups are aware that this policy shift may occur and therefore are seeking to identify families who have been separated in order to bring a class action lawsuit. Hence, close coordination with DOJ will also be required.

    Status:       *Currently under consideration; dependent on policy determination*
    Implement:    *Direct DHS OPA to develop messaging options*

    a. Once legal coordination between DHS, HHS, and DOJ is complete, begin separating family units, as stated above.

        Status:       *Currently under consideration; dependent on policy determination*
        Implement:    *Secretarial memo needed for full implementation.*

3. **Revise UAC Definition:** Direct USCIS to rescind a 2013 memo that prevents adjudicators from making independent UAC determinations (thereby allowing for the re-designation of children who no longer meet the statutory UAC definition); and allow ICE to re-designate UACs as "accompanied alien juveniles" if/when HHS releases them to a parent or legal guardian. The current policy memorandum requires USCIS to recognize a minor as a UAC based on the initial determination

---

**Comments:**

**Commented [HG(1)]:** One option that isn't listed here, but ought to be: prosecuting those in the United States who conspire or otherwise facilitate the illegal entry into the United States of UACs. There was a fairly good initiative over the summer. It got close to zero press. Not enough cases were accepted for criminal prosecution. We need a concerted six month campaign—involving coordination between DHS, DOJ, and HHS. The whole of government needs to take a zero tolerance policy to the smuggling of minors into the United States (all aliens, of course, but especially minors).

I seem to recall that out of the original 10 decision memos, someone (presumably PLCY) talked to ICE and determined that a decision memo wasn't needed for such an initiative because ICE can do it already. Well, ICE isn't doing it like it was for a few weeks over the summer. It needs to be teed up for action. Any and all efforts should be made to criminally prosecute those who smuggle their kids into the United States, and those who are illegal and can't be prosecuted should be arrested and placed in removal proceedings.

That initiative needs to have a major OPA component. S1 should direct it, and require HSI to dedicate considerable resources to investigations of such cases.

**Commented [HG(2)]:** With this and the separation idea, we should consider a few things:
- UACs are generally not subject to expedited removal. So if an order of removal hasn't been entered as of the time of their placement in HHS custody, it would seem that the new UACs would be then placed into 240 removal proceedings, which can be slow.
- However, if CBP issues an ER for the entire family unit, places the parents in the custody of the U.S. Marshal, and then places the minors with HHS, it would seem that DHS could work with HHS to actually repatriate the minors, then. It would take coordination with the home countries, of course, but that doesn't seem like too much of a cost to pay compared to the status quo.
-In the event that an ER order isn't possible—for example, the parent passes a credible fear screening that cancels the ER order for the entire family unit—DOJ would need ICE to change its NTA filing policy to ensure that NTA... [1]

**Commented [HG(3)]:** See comment above. It could work for custody purposes, but we would want the ER to be

**Commented [HG(4)]:** Yes

**Commented [HG(5)]:** This could be done and implemented on Monday. DOJ allows immigration judges to make independent determinations as to when a minor is a UAC—it would be good for DHS to have the same policy. There are some things DHS and DOJ should coordinate on (in terms of notifying the other of indicia of non-UAC status, ensuring that USCIS respects the jurisdiction of an IJ who hears an asylum case by a former UAC who is now living with parents, etc.)

1

made by an immigration officer when the minor is encountered. That determination is recognized throughout the minor's immigration proceeding, despite the minor's reunification with parents. This affords the minors the protections under the Trafficking in Victims Protection Reauthorization Act (TVPRA), which allows them (1) to avoid expedited removal; (2) to be placed in removal proceedings before an immigration judge; (3) to seek asylum before USCIS and have their removal proceedings closed pending adjudication; and (4) renew their asylum claims before an immigration judge if it is not granted by USCIS (permitting them have two bites at the apple while all others who enter illegally and claim asylum must proceed directly to immigration court).

*Status:* Decision memo arrived in the FO on 12/15
*Implement:* Secretarial decision memo

> **Commented [HG(6)]:** This is one of the easiest decisions anyone will ever have to make. There is absolutely no reason not to change this misguided policy.

### NEAR TERM (2-6 months) OPTIONS

4. **MOU with HHS on Requirements for Releasing UACs:** Complete the MOU between ICE and HHS to conduct background checks on sponsors of UACs and subsequently place them into removal proceedings as appropriate. This would result in a deterrent impact on "sponsors" who may be involved with smuggling children into the United States. However, there would be a short term impact on HHS where sponsors may not take custody of their children in HHS facilities, requiring HHS to keep the UACs in custody longer. However, once the deterrent impact is seen on smuggling and those complicit in that process, in the long term there would likely be less children in HHS custody.

> **Commented [HG(7)]:** Similar to the first comment above regarding an initiative that should be started immediately, I would suggest referring sponsors for criminal prosecution under 1324 if information indicates that the sponsor facilitated the travel of the minor into the United States.

*Status:* Pending with ICE and HHS for clearance
*Implement:* MOU between ICE and HHS

> **Commented [HG(8)]:** If this could get finalized and implemented soon, it would have a tremendous deterrent effect.

5. **Repatriation Assistance:** Request that the State Department provide financial assistance to countries like Panama and Mexico, to fund efforts by those countries to interdict, detain, and remove aliens from the Northern Triangle who are transiting those countries en route to the United States

*Status:* XXXXX
*Implement:* XXXXXX

> **Commented [HG(9)]:** I would also add working with the State Department to begin large-scale repatriation of UACs and family units to the Northern Triangle countries.

6. **Eliminate Abuses in the SIJ Program.** To prevent potential abuses in the SIJ program and save resources, DHS could bolster the vetting and adjudication aspects of the SIJ program. DHS could review and improve the entire biometrics and security/vetting procedures for the SIJ population, including obtaining foreign criminal history information for SIJ petitioners. Before addressing adjudication concerns, DHS should ensure the identity of SIJ petitioners and carefully scrutinize the possibility of gang membership/affiliation. If a gang membership/affiliation issue is identified, USCIS adjudicators should understand and implement the Referral to ICE (RTI) process, specific to the SIJ population, to ensure any potential threat to public safety is referred to the proper component of ICE—which oftentimes is Homeland Security Investigations (HSI). Separate from the security/vetting procedures, review whether USCIS' consent function can be used to deny a case involving gang

membership or otherwise poses a threat to public safety or national security. DHS could also develop a formal process to encourage DHS components (e.g., ICE trial attorneys, ICE or CBP officers, etc.) to report cases of suspected SIJ program fraud to USCIS. For example, the process would provide that an ICE trial attorney who notices a child seeking SIJ classification attending immigration court with two parents should report this factor to USCIS for further investigation.

> **Commented [HG(10)]:** This is all good to do—and is something that should have been done all along. But it doesn't address the heart of SIJ visa abuse. I recall that we had discussed a number of options when I was still there—including having the Secretary withhold her statutory consent in any case in which the minor was living with one parent or legal guardian. That's the larger issue (minors living with mom, for example, but getting an SIJ based on alleged abandonment by dad in El Salvador). #14 below discusses this, but it's listed in the long-term category. DHS could change this in a matter of weeks (or to start things in motion by issuing a NPRM, 30 days for comment, 30 days for review, etc.). It does not need six months to change this. I wouldn't accept that.

   Status:      Currently under consideration
   Implement:   USCIS has authority to implement certain provisions; Secretarial decision memo
                may be needed for cross cutting decisions

7. **Adjudication of Cases in Immigration Court.** DHS could work with EOIR to adjudicate all cases on last in first out basis. This would have broad deterrent impact on those seeking to enter the United States once they become aware that their cases would be adjudicated promptly such that they would not have years with the ability to work in this U.S. while their cases are pending. Simultaneously, USCIS can adjudicate the asylum cases they receive in order of last in first out also. If both processes were implemented consistently, there would be substantial deterrent impact.

   Status:      Currently under consideration
   Implement:   Secretarial memo and coordination with DOJ needed for full implementation

> **Commented [HG(11)]:** Yes and no. Last in first out sounds good in principle, but is what the Obama Administration tried and failed at in 2014. DOJ recently implemented a comprehensive caseload reduction plan. Last-in, first-out only works if you keep the existing docket on pace, and don't replace scheduled hearings with newly arrived cases. Happy to discuss further.

## LONG TERM (6+ months) OPTIONS

8. **Flores Regulations:** Direct CBP, ICE, and USCIS to develop and draft regulations implementing the Flores Settlement Agreement and TVPRA, in conjunction with DOJ and HHS. ICE is working with OGC to develop and framework for these regulations.

   Status:      AS Duke signed decision memo on 9/25/17; ICE is currently working with OGC to
                establish a framework for regulations. OGC will lead cross-component
                coordination with ICE, CBP, and USCIS counsel's office as all have equities.
   Implement:   New regulation

9. **Safe Country Agreement with Mexico:** Authorize DHS components to request authority from the State Department to begin discussions with Mexico and Canada for the purpose of entering into a trilateral Safe Third Country Agreement with the parties. This will involve long-term negotiations with those countries.

   Status:      AS Duke signed decision memo on 12/5/17. On December 6, 2017, Acting
                Undersecretary for Policy Nealon sent a letter to the Department of State
                requesting authority (Circular 175) to negotiate a trilateral safe third country
                agreement with Canada and Mexico.
   Implement:   Formal negotiations cannot start until State authorizes DHS to engage in
                negotiations. Such an agreement could take years given the requirement that
                Mexico improve its capacity to accept and adjudicate asylum claims and improve
                its human rights situation.

10. **Implementation of Return to Territory Provisions of the INA consistent with Direction in the Border EO:** Begin negotiations with Mexico to implement INA § 235(b)(2)(C), which authorizes immigration officers to return aliens to the country from which they entered the U.S., pending a determination of their removability in removal proceedings. This would require the assent of Mexico because it would require aliens from the Northern Triangle to remain in Mexico until their removability and claims for relief have been decided by an immigration judge, which will likely hold hearings at the ports of entry (port courts). There are litigation risks associated with this proposal, as it would implicate refugee treaties and international law.

    *Status:*      *Currently under consideration*
    *Implement:*   *Secretarial decision memo*

    > **Commented [HG(12)]:** Just flagging that this isn't an option—It's a legally binding requirement from the President in section 7 of EO 13767. There isn't anything further to consider other than to aggressively push Mexico. I would suggest that the Secretary just tell PLCY and CBP to work with State and push Mexico harder than ever. DHS has a legal obligation to do this. If Mexico says no, DHS should inform the President immediately.

11. **Terminate the *Flores* Settlement Agreement via legislation:** In 1996 the INS entered into the Flores Settlement agreement following a Supreme Court decision where the court upheld the Constitutionality of a regulatory scheme relating to detention of minors and release only to parents, close relatives, or legal guardians. Since that time, litigation on this agreement has continued and multiple court decisions interpreting the agreement have handicapped DHS ability to detain children. Based on recent decisions DHS now has 20 days to place or release all children - accompanied or unaccompanied. Based on current processes, 20 days is not adequate time to place children. In addition, recent decisions place in jeopardy DHS's ability to utilize family detention. Hence, overwhelming majority of all alien children are subsequently released. Once released into the U.S. they await adjudication of their cases for years, can receive work authorization, and there is a less than 5% chance of removal.

    *Status:*      *Currently contained in President's Immigration Priorities package*
    *Implement:*   *Legislative change needed*

12. **Expand ICE Detention Facilities:** Direct ICE to explore additional detention capacity by entering into contracts with detention vendors along the border. ICE's ability to enter into long-term detention contracts is constrained by funding. If appropriations are forthcoming, ICE will expand its detention capacity in areas along the border.

    *Status:*      *Currently under consideration*
    *Implement:*   *Secretarial decision memo directing ICE, MGMT to develop options*

    > **Commented [HG(13)]:** I would suggest family detention capacity should be the priority, but perhaps somewhat modified from what we have now in terms of facilities that can handle family units on a short-term basis—and that can eventually be converted to single adult facilities

13. **Seek Legislative Fix for the TVPRA (Trafficking in Victims Protection Reauthorization Act) and Special Immigrant Juvenile Status (SIJ):** Under the TVPRA, minors who are not from Canada or Mexico (contiguous countries) (1) cannot be voluntarily returned removed; (2) are placed in removal proceedings before an immigration judge; (3) may to seek asylum before USCIS and have their removal proceedings closed pending adjudication; and (4) can renew their asylum claims before an immigration judge if it is not granted by USCIS (two bites at the apple). SIJs are minor aliens who may adjust their status to lawful permanent residents when they are found to have been subject to abuse, neglect, or abandonment under state law. This often requires the aliens to

petition a state court to become a ward of the state. The state juvenile court dockets are overwhelmed with these cases because of this program. The Asylum Reform and Border Protection Act of 2017 (H.R. 391) will reform these abuses.

*Status:* Currently contained in President's Immigration Priorities package
*Implement:* Legislative change needed

14. **Interpretation of Special Immigrant Juvenile Visas.** USCIS could consider revising its interpretation of the Special Immigrant Visa Statute to align with Congress' original intent of the program. This re-interpretation would allow the SIJ program to better support those children who are truly abandoned and do not have a single parent available to care for them. USCIS is consulting with OGC on the availability and of such a revised interpretation, as well as the appropriate procedure for making the change - likely notice-and-comment rulemaking, in light of a previously issue 2011 notice of proposed rulemaking

*Status:* OGC and USCIS Counsel's office are working on this proposal for Secretarial Decision
*Implement:* Secretarial decision memo directing OGC and USCIS to complete regulations. Timeframe for regulations would be 12 months.

> **Commented [HG(14):** See notes above. This is not a long-term item, this needs to be worked into the short-term items, at least for initiation of regulatory changes. Among other things, the Secretary should determine that she will never consent to the grant of an SIJ petition when a minor resides with one parent or a legal guardian.

15. **Mandatory Detention of Arriving Aliens who Claim Credible Fear.** DHS would detain arriving aliens in a manner consistent with statute such that they are detained for the duration of the adjudication of their asylum claims. This would require rescission of the 2009 Morton memo which allows for parole of all such aliens contrary to statute. Rescission must occur following a decision in the *Jennings vs. Rodriguez* case as DOJ relied on the Morton memo in its arguments before this SCOTUS in October. A decision by the SCOTUS should be issued this summer. DHS could rescind the memo thereafter.

> **Commented [HG(15):** I know folks don't want to prejudge things, but "could" isn't the word I would choose here.

*Status:* Awaiting implementation (post Supreme Court case)
*Implement:* AS Duke signed decision memo on 10/10/17

16. **Expand Expedited Removal (ER).** The Secretary of Homeland Security has, in her sole and unreviewable discretion, the authority to designate application of the expedited removal provisions of the INA to aliens who have not been admitted or paroled into the United States for the two-year period immediately prior to the determination of their inadmissibility. To date, this authority has only been exercised with respect to aliens encountered within 100 air miles of the border and 14 days of entry, and aliens who arrived in the United States by sea other than at a port of entry. Over the years, the Department has proceeded expanded ER, but has proceeded with caution owing to, among other considerations, potential constitutional challenges. Timing of an ER expansion should be coordinated with the Department of Justice (DOJ) given pending litigation, including before the Supreme Court, concerning the due process rights of recent entrants.

*Status:* Currently under consideration
*Implement:* Secretarial decision memo

> **Commented [HG(16):** This, too, is a legally binding requirement from an EO. But it won't have any effect on UACs, and likely a more limited effect on family units (but it could be helpful) We need to expand ER, but maybe after separating family units, prosecuting parents, and doing the other things first.

5