# EXHIBIT 8



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Office of the Deputy Director* (MS 2000)
Washington, DC 20529-2000

**U.S. Citizenship
and Immigration
Services**

APR 11 2013

# Memorandum

TO:      Maria Odom
           Citizenship and Immigration Services Ombudsman

FROM:  Lori Scialabba  *Lori Scialabba*
           Deputy Director

SUBJECT:  Responses to Citizenship and Immigration Services Ombudsman
           Recommendations, "Ensuring a Fair and Effective Asylum Process for
           Unaccompanied Children"

**Recommendations**

The Citizenship and Immigration Services Ombudsman (CIS Ombudsman) recommends that
U.S. Citizenship and Immigration Services (USCIS):

1. Accept jurisdiction of unaccompanied alien children (UAC) cases referred by the Executive
   Office for Immigration Review (EOIR).

2. Accept jurisdiction of cases filed by children in federal custody under the U.S. Department of
   Health and Human Services (HHS).

3. Follow established UAC-specific procedures, expand implementation of certain best
   practices, and enlist clinical experts for quality assurance and training. More specifically,
   USCIS should:

   a. Establish points of contact for the public to improve communication, coordination, and
      problem solving;

   b. Pre-assign UAC cases to officers with specialized knowledge and skills; and

   c. Contract with clinical experts adept at interviewing vulnerable children as part of an
      ongoing quality assurance and training component of the UAC asylum program.

4. Limit Headquarters review to a process that can be managed within 30 days.

5. Issue as soon as possible regulations regarding the UAC asylum process.

**USCIS Responses to Recommendations**

USCIS thanks the CIS Ombudsman for the opportunity to respond to these recommendations to
ensure a fair and effective asylum process for unaccompanied children. We welcome these
recommendations and consider these issues a high priority.

Responses to Citizenship and Immigration Services Ombudsman Recommendations, "Ensuring a Fair and Effective Asylum Process for Unaccompanied Children"
Page 2

1. **Accept jurisdiction of cases of unaccompanied alien children referred by the Executive Office for Immigration Review.**

2. **Accept jurisdiction of cases filed by children in federal custody under the U.S. Department of Health and Human Services.**

USCIS partially concurs with these recommendations, which coincide with current efforts; however, USCIS partially concurs for reasons different than those stated in the CIS Ombudsman's report.

Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), P.L. 110-457, 122 Stat. 5074, USCIS has initial jurisdiction over any asylum application filed by an individual determined to be a UAC, even if the individual is in removal proceedings. The USCIS Nebraska Service Center (NSC), the Executive Office for Immigration Review (EOIR), and the Department of Health and Human Services (HHS) do not make such UAC determinations. However, U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE) do make such determinations, and USCIS has decided to change current procedures to adopt existing CBP or ICE UAC status determinations in cases where they have been made. USCIS will still need to make UAC determinations in both the affirmative and the defensive asylum processes where no previous UAC determination was made.

The CIS Ombudsman's report correctly states that upon apprehension the apprehending entity, whether CBP or ICE, must determine whether a child is a UAC. CBP or ICE therefore makes a UAC determination for custody purposes. Because USCIS typically does not have jurisdiction over asylum applicants in removal proceedings, the current practice under which asylum officers examine the UAC criteria is for the purposes of determining jurisdiction. Because they are categorizing individuals as UACs for custody as opposed to jurisdictional purposes, CBP and ICE operate in a different context from asylum officers, who interview the child at a later time and under different circumstances. If CBP or ICE determines that a child is a UAC, they transfer the child to the custody of HHS. HHS accepts the DHS determination and does not make a separate UAC inquiry.[1] USCIS has decided to implement a similar model, under which it will adopt existing CBP or ICE UAC determinations, rather than duplicating them in the context of an asylum interview.

When the child appears in immigration court, if he or she may be a UAC and expresses an interest in filing for asylum, the ICE trial attorney gives the child a UAC Instruction Sheet with instructions on how to file an asylum application with USCIS. ICE trial attorneys do not make UAC determinations and immigration judges do not generally make UAC determinations. There is no system or guidance under which immigration judges routinely make UAC determinations on which asylum officers could consistently rely.

---

[1] While HHS does not make a separate UAC inquiry, HHS will refer the child back to ICE if HHS discovers through identity documents or self-disclosure that the child is over the age of 18.

Responses to Citizenship and Immigration Services Ombudsman Recommendations, "Ensuring a Fair and Effective Asylum Process for Unaccompanied Children"
Page 3

The NSC receives all asylum applications filed by potential UACs in removal proceedings but does not make a separate UAC determination. The NSC has been instructed by the USCIS Asylum Division to accept an asylum application from a child in removal proceedings if the:

(1) Date of birth listed on the asylum application indicates that the applicant is under 18 at the time of filing with USCIS; or

(2) Applicant has submitted a copy of the UAC Instruction Sheet with the asylum application, regardless of any other evidence of the applicant's age at the time of filing.[2]

Under the current practice, which USCIS has decided to change, when a potential UAC in removal proceedings appears for his or her interview with a USCIS asylum officer, the asylum officer makes a UAC determination for jurisdictional purposes for the first time. Immigration judges generally do not make separate UAC determinations and generally send all asylum cases involving children who could potentially be UACs to USCIS. Asylum officers determine in approximately 50% of such cases that USCIS does not have jurisdiction because the child in removal proceedings is not a UAC, which leads to unnecessary delay in the adjudication in immigration court.

USCIS's decision to adopt existing UAC determinations made for custody purposes by fellow Department of Homeland Security (DHS) components CBP and ICE will obviate the need for independent USCIS UAC determinations for jurisdictional purposes in most cases. USCIS notes that adopting these prior determinations by CBP and ICE for purposes of jurisdiction over the asylum claim would be a means of partially realizing the goal of these two recommendations. The vast majority of those potential UACs that immigration judges identify for USCIS UAC determinations were already found to be UACs for purposes of custody by CBP and/or ICE at an earlier point. In addition, children determined by CBP or ICE to be UACs are placed in HHS custody. Under this approach, USCIS would have jurisdiction over the claim of any child who has been in HHS custody as a UAC.

USCIS notes that this procedural change is informed by its experiences working with its DHS partners CBP and ICE as well as with HHS and EOIR in implementing the TVPRA provisions regarding initial jurisdiction as well as other UAC provisions. USCIS further notes that the TVPRA only provided 90 days to implement these provisions initially and recognizes that there is room to improve upon these initial procedures.

3.  **Follow established UAC-specific procedures, expand implementation of certain best practices, and enlist clinical experts for quality assurance and training, including:**
    a.  **Establishing points of contact for the public to improve communication, coordination, and problem solving.**

USCIS concurs with this recommendation. The Asylum Division recently released nationwide standards for customer service access, including requirements for dedicated e-mail addresses and telephone numbers at each asylum office for customer service inquiries. The Asylum Division

---

[2] See "Statutory Change Affecting Service Center Operations' Procedures for Accepting Forms I-589 Filed by Unaccompanied Alien Children," April 9, 2009 (attached).

Responses to Citizenship and Immigration Services Ombudsman Recommendations, "Ensuring a Fair and Effective Asylum Process for Unaccompanied Children"
Page 4

has already publicized via the USCIS Internet site as well as its quarterly meeting with non-governmental organizations the existence of these modes of contact, and anyone e-mailing or calling an asylum office with a UAC-related issue will be routed to the office-specific UAC point of contact to resolve the issue. Additionally, the Asylum Division will coordinate with the Customer Service Public Engagement Directorate to ensure that USCIS call centers are equipped to respond to questions about procedures related to UAC asylum applicants.

b. **Pre-assigning UAC cases to officers with specialized knowledge and skills.**

USCIS does not concur with this recommendation. USCIS disagrees with the CIS Ombudsman's assertion that the agency has chosen to prioritize administrative needs above a UAC applicant's needs. All asylum officers receive extensive training on interviewing and adjudicating children's cases in general and UAC cases under the TVPRA specifically. In addition, all asylum officers have access to their supervisor as well as their office's UAC point of contact and quality assurance officers if they need to ask for substantive or procedural guidance. Handling sensitive children's claims has been an integral part of the asylum program and its training for years, since prior to the passage of the TVPRA, and all asylum officers are equipped to conduct such interviews.

c. **Contracting with clinical experts adept at interviewing vulnerable children as part of an ongoing quality assurance and training component of the UAC asylum program.**

USCIS concurs in principle with this recommendation. USCIS agrees that it would be useful to collaborate with clinical experts to enhance the quality of UAC-related processes and training. Utilizing such clinical experts would enhance the Asylum Division's already extensive guidance and training (both national and individual office trainings) on children's and UAC issues.[3] In the past the Asylum Division has utilized experts, including non-governmental organizations, care-providers for survivors of torture, and country conditions experts, to consult on training materials and to conduct training sessions. Consistent with this best practice, the Asylum Division will explore using clinical experts as part of the extensive training received by asylum officers as well as for consultation on particular types of cases or issues. Clinical experts could also observe asylum interviews with the consent of the applicant in order to provide feedback to the asylum officer on interviewing techniques as well as more general feedback to the Asylum Division on possible training needs.

4. **Limit Headquarters review to a process that can be managed within 30 days.**

USCIS concurs with this recommendation. USCIS strives for and carefully tracks timely quality assurance review of its cases, which are all of humanitarian concern, but delays may occur due to

---

[3] In addition to this extensive guidance and training, asylum officer decisions are subject to 100% supervisory review. All cases involving juveniles as principal applicants, both accompanied and unaccompanied, receive headquarters quality assurance review. All asylum officers receive performance ratings on their interviewing and assessment writing skills. Supervisory asylum officers observe interviews on a regular basis. Quality assurance officers in the field also observe interviews regularly and conduct case file reviews to identify issues and trends.

Responses to Citizenship and Immigration Services Ombudsman Recommendations, "Ensuring a Fair and Effective Asylum Process for Unaccompanied Children"
Page 5

the processing times of third agencies, legal issues, and resource constraints. The pie chart on page 11 of the CIS Ombudsman's report indicates that a certain number of cases in June 2012 had been under headquarters review for more than 1 year. All 42 of the cases in this category were under review by third agencies or were on hold while DHS considered how to deal with issues involving national security and terrorism-related grounds of inadmissibility. In calendar year 2012, the length of time for review of cases referred to headquarters in the juvenile category averaged 47 days, whereas in past years the length of time averaged over 100 days. When USCIS moves forward with the plan described above for asylum officers to accept prior UAC determinations by CBP and ICE, asylum officers will not need to make new UAC status determinations in most UAC cases, and headquarters quality assurance review of this issue will no longer be necessary in those cases, therefore likely decreasing headquarters review time for UAC cases overall. USCIS will be establishing a separate monitoring system so that headquarters review for UAC cases can be efficiently managed, but there will always be a subset of cases under review by third parties over which USCIS does not have control.

**5. Issue as soon as possible regulations regarding the UAC asylum process.**

USCIS concurs with this recommendation. USCIS has been working with federal agencies both within and outside of DHS, including ICE and EOIR, to promulgate regulations.

Attachment

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Washington, DC  20529-2100



April 9, 2009                                              HQRAIO 120/12a

# Memorandum

TO:        All USCIS Service Centers

FROM:    Joseph E. Langlois /s/
            Chief, Asylum Division

            Barbara Velarde /s/
            Chief, Office of Service Center Operations

SUBJECT:  Statutory Change Affecting Service Center Operations' Procedures for Accepting
            Forms I-589 Filed by Unaccompanied Alien Children

## I.    <u>Purpose</u>

This memorandum provides notification and guidance to the USCIS Service Centers on the handling of I-589 applications for asylum filed under the "initial jurisdiction" provision of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA). The TVPRA, Public Law 110-457, was signed into law on December 23, 2008.  The initial jurisdiction provision becomes effective 90 days thereafter on March 23, 2009.

## II.   <u>Background</u>

The TVPRA makes a number of changes that affect unaccompanied alien children (UACs)[1] who file for asylum.  Among the statutory changes, section 235(d)(7)(B) of the TVPRA provides asylum officers with "initial jurisdiction over any asylum application filed by" a UAC.  This means that UACs will have an opportunity to file for asylum with USCIS, even if the UAC has been issued a Notice to Appear.  This initial jurisdiction provision is effective on March 23,

---

[1] As defined at 6 U.S.C. § 279(g)(2), an unaccompanied alien child means:
      a child who—
          **(A)** has no lawful immigration status in the United States;
          **(B)** has not attained 18 years of age; and
          **(C)** with respect to whom—
                  **(i)** there is no parent or legal guardian in the United States; or
                  **(ii)** no parent or legal guardian in the United States is available to provide care and
                        physical custody.

Statutory Change Affecting Service Center Operations' Procedures for Accepting Forms I-589
Filed by Unaccompanied Alien Children
Page 2

2009.  It applies to all UACs who file for asylum on or after March 23, 2009, as well as to the asylum claims filed by UACs with pending proceedings in Immigration Court or cases on appeal to the Board of Immigration Appeals or in federal court as of December 23, 2008 (see attached USCIS Update and USCIS Questions and Answers for more information).

UACs apprehended by Customs and Border Protection (CBP), Immigration and Customs Enforcement (ICE), or another federal entity must be placed into the custody of the Office of Refugee Resettlement (ORR) within the U.S. Department of Health and Human Services within 48 or 72 hours.  *See* TVPRA §§ 235(a)(4); 235(b)(3).  Those UACs are generally issued a Notice to Appear before an Immigration Judge of the U.S. Department of Justice for removal proceedings under section 240 of the Immigration and Nationality Act.  During removal proceedings, a UAC may request asylum.  Until the TVPRA's initial jurisdiction provision went into effect, such UACs filed their I-589 applications for asylum with the Immigration Court in removal proceedings.  With the initial jurisdiction provision of the TVPRA taking effect, UACs in removal proceedings should now file their I-589 with USCIS.  Those UACs in Immigration Court intending to file for asylum will be provided by ICE with "Instruction sheet for an unaccompanied alien child in immigration court to submit an I-589 asylum application to USCIS" ("UAC Instruction Sheet") (attached).

## III.    Field Guidance

This guidance focuses on the Nebraska Service Center's (NSC) handling of I-589s filed by UACs in removal proceedings.  UACs who, prior to implementation of the TVPRA provision on initial jurisdiction, had the ability to affirmatively file with USCIS are not the focus of this guidance.  UACs who are not in removal proceedings should continue to affirmatively file for asylum with USCIS by sending an I-589 to the Service Center listed for their location on the I-589 Instructions.  The Service Center should follow standard procedures for reviewing and accepting such filings.

NSC will receive all I-589s filed by UACs in removal proceedings.  The UAC Instruction Sheet directs UACs to file the I-589 with NSC.  The outer envelope of the filing should be addressed with the heading "UAC I-589."  Additionally, the UAC Instruction Sheet directs the UAC to submit a copy of the UAC Instruction Sheet with the I-589.

USCIS typically does not have jurisdiction to accept the filing of an I-589 filed by an applicant in removal proceedings before an immigration judge.  Because section 235(d)(7)(B) of the TVPRA places initial jurisdiction of asylum applications with USCIS, even for those UACs in removal proceedings, NSC should accept the asylum applications of UACs in removal proceedings.  Accordingly, NSC should accept the asylum application of an individual in removal proceedings if:
> (1) the date of birth listed on the Form I-589 indicates that applicant is under 18 at the time of filing with USCIS; or
> (2) the applicant has submitted a copy of the UAC Instruction Sheet with the I-589, regardless of any other evidence of the applicant's age at the time of filing.

Statutory Change Affecting Service Center Operations' Procedures for Accepting Forms I-589
Filed by Unaccompanied Alien Children
Page 3

NSC should otherwise follow normal procedures to verify that the filing is complete and to process the case filing.[2]  This means that NSC should continue to reject I-589 applications for lack of jurisdiction where the applicant is in removal proceedings, is 18 or over at the time of filing, and has not submitted the UAC Instruction Sheet.

At the time of receipt of a UAC's application, NSC should verify that the UAC is in removal proceedings by checking the EOIR screen.  NSC personnel should not consider the date on which the removal proceedings commenced, even though initial jurisdiction of new asylum applications applies only to those applications filed on or after March 23, 2009.  This is because USCIS may also have initial jurisdiction over the asylum application of an individual who was in pending proceedings as of December 23, 2008, including individuals in pending proceedings who later indicate an intent to apply for asylum.  If the EOIR screen does not indicate that the individual is in removal proceedings, the case should be handled like an affirmative application.

In cases where an I-589 is filed by a UAC in removal proceedings, the NSC should enter the special group code "PRL" (formerly "parole," presently defensive unaccompanied child) into RAPS on the Case Entry screen (I-589).[3]  Since this special group code is no longer in use for new filings, it is now being converted to refer to UACs in removal proceedings.  This special group code serves the purpose of removing the case from the automatic scheduler, so that the Asylum Office can determine whether special arrangements for the interview location need to be arranged.

The NSC should reject an I-589 filing due to lack of jurisdiction if the applicant is in removal proceedings, does not include the UAC Instruction Sheet, and is 18 years of age or more.  The NSC should document this reasoning in the rejection notice sent to the applicant.

An A-file will already exist for UAC applicants who file for asylum with USCIS and who are concurrently in removal proceedings.  The NSC will create a T-file and transfer the file to the Asylum Office.  Additionally, RAPS will automatically initiate the A-file transfer request from the ICE Office of Chief Counsel to the Asylum Office.  ICE may contact the Asylum Office to confirm that the file is being transferred due to the applicant being a UAC.

The NSC should designate a point of contact and backup point of contact for issues related to this memorandum.  The name of the point of contact and backup should be provided to HQ-SCOPS and HQASM (Chief of Operations) within one week after issuance of this memo.

If you have any questions concerning the guidance contained in this memorandum, please contact your supervisor, who can forward your inquiry to Headquarters Service Center Operations.

---

[2] The question as to whether the applicant is in fact a UAC will be examined again at the time of the Asylum Office interview.

[3] Note that the memo "Implementation of Statutory Change Providing USCIS with Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children" issued by Asylum Division Chief Joseph E. Langlois on March 25, 2009 indicated that the special group code "KRD" would be used for these cases in RAPS.  A directive has been issued to all Asylum Offices to correct the reference to "PRL."

Statutory Change Affecting Service Center Operations' Procedures for Accepting Forms I-589
Filed by Unaccompanied Alien Children
Page 4

Attachments (5)

1. DHS UAC Instruction Sheet (internal use only).
2. USCIS Update: USCIS Initiates Procedures for Unaccompanied Children Seeking Asylum. March 25, 2009.
3. USCIS Questions and Answers: USCIS Initiates Procedures for Unaccompanied Children Seeking Asylum. March 25, 2009.
4. Joseph E. Langlois, Chief, Asylum Division.  Memorandum *Implementation of Statutory Change Providing USCIS with Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children*. March 25, 2009.
5. Joseph E. Langlois, Chief, Asylum Division.  Memorandum *Special Group Code for Unaccompanied Alien Children Defensive Asylum Filings Changed To "PRL."* April 2, 2009.

*Office of Communications*



U.S. Citizenship
and Immigration
Services

# USCIS Update

March 25, 2009

## USCIS Initiates Procedures for Unaccompanied Children Seeking Asylum
### *New Law Allows Children in Removal Proceedings to Begin*
### *Asylum Process in a Non-Adversarial Setting*

**WASHINGTON**—U.S. Citizenship and Immigration Services (USCIS) today announced it is now responsible for initial adjudication of applications for asylum from *\*Unaccompanied Alien Children*. Some of these children previously would have been required to file for asylum in immigration court with the Executive Office for Immigration Review in the Department of Justice.

The new procedures were created to carry out the *William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008* (TVPRA). Under one of the provisions of the TVPRA, these unaccompanied children, who have been issued a *Notice to Appear* in immigration court, will now file their initial application for asylum with USCIS. The TVPRA also provides an opportunity for unaccompanied children, who did not previously file for asylum with USCIS and, who either have a pending claim in immigration court, on appeal to the Board of Immigration Appeals, or in federal court, to have their asylum claim heard and adjudicated by a USCIS asylum officer in a non-adversarial setting.

Further details on the asylum-related provisions of the TVPRA to protect unaccompanied children are in the accompanying USCIS *Questions and Answers* document. For more information about USCIS' Asylum Division, please visit www.uscis.gov/asylum.

*\* An Unaccompanied Alien Child (UAC) is a legal term referring to a child who: has no lawful immigration status in the United States; has not attained 18 years of age; and has no parent or legal guardian in the United States, or for whom no parent or legal guardian in the United States is available to provide care and physical custody.*

– USCIS –



*Office of Communications*

# Questions and Answers

March 25 2009

## USCIS Initiates Procedures for Unaccompanied Children Seeking Asylum
### *New Law Allows Children in Removal Proceedings to Begin Asylum Process in a Non-Adversarial Setting*

### Introduction

U.S. Citizenship and Immigration Services (USCIS) is now responsible for initial adjudication of applications for asylum from Unaccompanied Alien Children, (UAC). The new procedures were created to carry out the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA). The TVPRA provides USCIS with initial jurisdiction over any asylum applications filed by unaccompanied children.

### Background

On Dec. 23, 2008, former President Bush signed into law TVPRA, Public Law 110-457. The provisions of the TVPRA that apply to unaccompanied alien children took effect on March 23, 2009. Under one of these provisions, unaccompanied alien children who have been issued a *Notice to Appear* in immigration court will now file their initial application for asylum with USCIS. The TVPRA also provides an opportunity for unaccompanied alien children, who did not previously file for asylum with USCIS and who have a pending claim in immigration court, on appeal to the Board of Immigration Appeals, or in federal court, to have their asylum claim heard and adjudicated by a USCIS Asylum Officer in a non-adversarial setting.

In addition, the TVPRA makes the following changes that affect UACs applying for asylum:
1. The Immigration and Nationality Act (INA) is amended so that the one-year filing deadline and any safe third country agreements do not apply to UACs.
2. The Department of Health and Human Services (HHS) shall ensure pro bono counsel, to the greatest extent practicable and consistent with section 292 of the INA, for all UACs who either are or have been in its custody or in DHS custody.
3. HHS is authorized to appoint independent child advocates for child trafficking victims and other vulnerable unaccompanied alien children.

### Questions and Answers

**Q. Who is an Unaccompanied Alien Child, (UAC)?**
*A.* An Unaccompanied Alien Child (UAC) is a legal term referring to a child who: has no lawful immigration status in the United States; has not attained 18 years of age; and has no parent or legal guardian in the United States, or for whom no parent or legal guardian in the United States is available to provide care and physical custody.

**Q. Who is affected by the new procedures for UACs?**
*A.* The new procedures for filing the asylum application apply to a UAC, who has been issued a Notice to Appear in immigration court. These new procedures do not apply to accompanied children or to UACs who were not issued a Notice to Appear in immigration court.

**Q. I was in custody with the Office of Refugee Resettlement (ORR), and was released to a relative. Am I still unaccompanied?**
*A.* This depends on whether your relative is a legal guardian such that you are accompanied. DHS will make the determination as to whether USCIS has jurisdiction of your case because you are a UAC.

**Q. I am a UAC and I wish to apply for asylum; however, I was not issued a Notice to Appear in immigration court. Where do I apply?**
*A.* If you are a UAC who was not issued a Notice to Appear in immigration court and you wish to apply for asylum, you can file an asylum application with USCIS. You should follow the general instructions for asylum applicants not in proceedings in immigration court, in the *Application for Asylum and Withholding of Removal,* Form I-589, available at www.uscis.gov/forms.

**Q. I am a UAC who was issued a Notice to Appear in immigration court. I have not previously filed for asylum. Can I file directly with USCIS or do I have to wait until my hearing date in immigration court?**
*A:* At your hearing in immigration court, inform the immigration judge and the Immigration and Customs Enforcement (ICE) trial attorney that you intend to file for asylum. Once you receive the asylum instruction package from the ICE trial attorney, file your asylum application directly with USCIS. The instruction package includes a cover sheet that you are requested to submit to USCIS with your asylum application, so it is best to file for asylum after you have received the instruction package at your hearing in immigration court. The ICE trial attorney may recommend to the immigration judge to continue your case to allow you time to submit your application.

**Q. I was a UAC when I was placed in removal proceedings, but am no longer a UAC. I want to file for asylum. Where do I file?**
*A:* You must file your asylum application in immigration court. Since you are not a UAC at the time of filing your asylum application and you are in removal proceedings, USCIS does not have initial jurisdiction over your claim.

**Q. I am in removal proceedings and filed an *Application for Asylum and Withholding of Removal*, Form I-589, with USCIS, according to the instructions provided by ICE. Will ICE and the immigration judge know I applied for asylum?**
*A:* After you have received the instruction packet and filed for asylum with USCIS, you must appear at any hearings scheduled in immigration court. At your next hearing in immigration court, you may be required to provide a copy of your USCIS receipt notice to the ICE trial attorney.

**Q. If I was issued a *Notice to Appear* and then applied for asylum with USCIS, do I still have to appear in immigration court?**
*A:* Yes. Even while pursuing the asylum claim, you must appear in immigration court if you have a hearing scheduled. At the hearing, ICE may again seek to continue your case to allow USCIS to adjudicate your asylum application.

**Q. What happens if I am in removal proceedings and I do not file an *Application for Asylum and Withholding of Removal,* Form I-589, with USCIS?**
*A:* If you indicated that you wished to apply for asylum and you fail to file an *Application for Asylum and Withholding of Removal*, Form I-589, USCIS cannot adjudicate your asylum application and the immigration judge may proceed with your removal proceedings.

**Q. I am a UAC and my asylum application is currently pending in immigration court, is on appeal before the Board of Immigration Appeals, or is on review with a federal court. May I request that USCIS adjudicate my asylum application?**
*A:* USCIS also has initial jurisdiction over asylum applications filed by UACs with pending claims in immigration court, with a case on appeal before the Board of Immigration Appeals, or with a petition for

review with a federal court. If your case is pending in any of these places and you did not file for asylum with USCIS, your concerns should be raised in the context of those pending proceedings.

**Q. I already filed for asylum with USCIS and my case was referred to immigration court. Can I now file again with USCIS?**
*A*: No. You cannot re-file with USCIS if your case, which is pending or on appeal, began as an asylum adjudication with USCIS. You already had your initial opportunity to have your asylum claim heard by USCIS.

**Q. What do I do if I was released from an ORR facility or my address otherwise changed?**
*A*: If you change your address after filing a Form I-589 application, you must:
    1. Submit a Form AR-11 (Alien's Change of Address Card) to USCIS; and
    2. Submit a Form EOIR-33/IC (Alien's Change of Address Form/Immigration Court) to EOIR.

If the forms are not included in the asylum instruction packet you received from ICE, they are available on the Web at www.uscis.gov/forms or www.usdoj.gov/eoir.

**Q. I am currently in ORR custody. Are the procedures any different for me?**
*A*: The procedures for filing for asylum are the same. Additionally, you may wish to ask your ORR Division of Unaccompanied Children's Services Field Coordinator or Project Officer for a copy of your ORR Interim Placement Authorization Form, to submit it with your *Application for Asylum and Withholding of Removal*, Form I-589 as proof of UAC status. ORR will coordinate with the local asylum office, should any interview-related issues arise. For more information on ORR's general implementation of the TVPRA, please see ORR's website at www.acf.hhs.gov/programs/orr.

– USCIS –



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Asylum Division*
Washington, DC  20529-2100

March 25, 2009                                            HQRAIO 120/12a

# Memorandum

TO:            All Asylum Office Staff

FROM:        Joseph E. Langlois /s/
               Chief, USCIS Asylum Division

SUBJECT:    Implementation of Statutory Change Providing USCIS with Initial Jurisdiction over
               Asylum Applications Filed by Unaccompanied Alien Children

### I.       <u>Purpose</u>

This memorandum provides notification and guidance to the USCIS Asylum Offices regarding
the "initial jurisdiction" provision of the William Wilberforce Trafficking Victims Protection
Reauthorization Act of 2008 (TVPRA), Public Law 110-457, which was signed into law on
December 23, 2008 and became effective 90 days thereafter, on March 23, 2009.

The implementing procedures discussed herein have been established in consultation with
Immigration and Customs Enforcement (ICE) and the Executive Office for Immigration Review
(EOIR) based on a joint understanding.  These procedures will be incorporated into the
Affirmative Asylum Procedures Manual, though potentially following modification upon
monitoring and evaluation.  Federal regulations will ultimately be promulgated in order to reflect
the procedures established for USCIS initial jurisdiction.

This guidance should be reviewed at each Asylum Office's next training.

Implementation of Statutory Change Providing USCIS With Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children
Page 2

## II.    __Background__

The TVPRA makes a number of changes that affect unaccompanied alien children (UACs)[1] who file for asylum.  Among the statutory changes, section 235(d)(7)(B) of the TVPRA provides asylum officers with "initial jurisdiction over any asylum application filed by" a UAC.  This means that UACs will have an opportunity to file for asylum with USCIS, even if the UAC has been issued a Notice to Appear (NTA).  This initial jurisdiction provision is effective on March 23, 2009.  It applies to all UACs who file for asylum on or after March 23, 2009, as well as to the asylum claims filed by UACs with pending proceedings in Immigration Court or cases on appeal to the Board of Immigration Appeals (BIA) or on petition for review in federal court (see attached USCIS News Release and USCIS Fact Sheet for more information).

UACs who are apprehended by Customs and Border Protection, ICE, or another federal entity must be placed into the custody of the Office of Refugee Resettlement (ORR) within the U.S. Department of Health and Human Services within 48 or 72 hours.  *See* TVPRA §§ 235(a)(4); 235(b)(3).  Those UACs are generally issued an NTA before an Immigration Judge of EOIR, within the U.S. Department of Justice (DOJ), for removal proceedings under section 240 of the Immigration and Nationality Act.  During removal proceedings, a UAC may request asylum.  Until the TVPRA's initial jurisdiction provision went into effect, such UACs defensively filed their Form I-589 applications for asylum with the Immigration Court in removal proceedings.  With the initial jurisdiction provision of the TVPRA taking effect, UACs in removal proceedings will now file their Form I-589 application with USCIS.  ICE will provide those UACs in Immigration Court intending to file for asylum with "Instructions for an unaccompanied alien child in immigration court to submit a Form I-589 asylum application to USCIS" ("UAC Instruction Sheet") (attached).  The anticipated process is that ICE will request a continuance to provide time for the UAC to file the Form I-589 with USCIS and have the asylum case adjudicated.  There may be cases, however, that are administratively closed or terminated without prejudice.

The Asylum Offices may encounter filings from UACs in a number of different procedural postures.
  1. A UAC who has never been in removal proceedings may affirmatively file for asylum under pre-existing procedures.
  2. A UAC may be placed in removal proceedings in Immigration Court on or after March 23, 2009, and seek to file for asylum.

---

[1] As defined at 6 U.S.C. § 279(g)(2), an unaccompanied alien child means:
  a child who—
    **(A)** has no lawful immigration status in the United States;
    **(B)** has not attained 18 years of age; and
    **(C)** with respect to whom—
        **(i)** there is no parent or legal guardian in the United States; or
        **(ii)** no parent or legal guardian in the United States is available to provide care and
            physical custody.

Implementation of Statutory Change Providing USCIS With Initial Jurisdiction over Asylum
Applications Filed by Unaccompanied Alien Children
Page 3

3.  A UAC whose case was referred to Immigration Court after having been affirmatively
    adjudicated by USCIS may not re-file with USCIS, as USCIS already had initial
    jurisdiction of the case.
4.  A UAC in pending removal proceedings, with a case on appeal to the BIA, or with a
    petition for review in federal court as of December 23, 2008, who has never submitted a
    Form I-589, may file for asylum with USCIS.
5.  For an individual in pending removal proceedings, with a case on appeal to the BIA, or
    with a petition for review in federal court as of December 23, 2008, who has previously
    submitted a Form I-589 while a UAC, USCIS may have initial jurisdiction.

For scenario #2, concerning a UAC placed in removal proceedings on or after March 23, 2009,
ICE will provide UACs intending to file for asylum with the UAC Instruction Sheet.  The
interpretation of and procedures concerning scenarios #4 and #5 are still under development.
The litigating authority before EOIR or the federal courts may provide UACs in scenarios #4 and
#5  with the UAC Instruction Sheet if it is determined that USCIS should have initial
jurisdiction.  Where there is a pre-existing Form I-589, the existing Form I-589 should be
transferred to USCIS.  Such cases would then be processed according to standards for processing
new filings by UACs in removal proceedings, discussed below.

### III.    Field Guidance

This guidance focuses on the Asylum Offices' handling of I-589s by UACs in removal
proceedings who are filing pursuant to the TVPRA.

#### A.  Location of UAC filings with USCIS

The UAC Instruction Sheet communicates a new requirement for UACs to file the Form I-589
with the Nebraska Service Center (NSC).  The outer envelope of the filing should be addressed
with the heading "UAC I-589."  In extenuating circumstances where expeditious processing is
required, the Director of the local Asylum Office may consent to the UAC filing the Form I-589
application directly with the Asylum Office.  Pre-existing guidance in the Affirmative Asylum
Procedures Manual should inform the Director's decision as to whether to accept the direct
filing, rather than have the applicant file with the NSC.  Additionally, with regard to whether to
accept the direct filing, the Director may consider whether the UAC continues to be in ORR
custody as a factor meriting expeditious processing.

#### B.  Documentation in RAPS to indicate the applicant is a UAC

At the time of receipt of a UAC's Form I-589 application, the NSC will verify whether the UAC
is in removal proceedings.  In such cases, the NSC will enter the special group code "KRD"
(formerly Guam Kurd – presently defensive unaccompanied child) into the Refugees, Asylum
and Parole System (RAPS).  While this special group code was formerly utilized to refer to
Guam Kurds, as it is no longer in use for new filings, it is now being converted to refer to UACs
in removal proceedings.  This special group code serves the purpose of taking the case off of the
automatic scheduler, so that the Asylum Office can determine whether special arrangements for

Implementation of Statutory Change Providing USCIS With Initial Jurisdiction over Asylum
Applications Filed by Unaccompanied Alien Children
Page 4

the interview location need to be arranged. Additionally, the Asylum Office will have access to
a weekly report of all minor principal applicants, which will differentiate those UACs who are in
removal proceedings (i.e., in the special group KRD) from other minor principal applicants.

**C. Determination as to whether the applicant is a UAC**

USCIS typically does not have jurisdiction to accept the filing of a Form I-589 filed by an
applicant in removal proceedings. Because section 235(d)(7)(B) of the TVPRA places initial
jurisdiction of asylum applications filed by UACs with USCIS, even for those UACs in removal
proceedings, USCIS will need to determine whether an applicant in removal proceedings is a
UAC at the time of filing such that USCIS has initial jurisdiction. The NSC, as the entity where
most UACs will file, will make an initial determination as to jurisdiction. It will accept the filing
of an applicant in removal proceedings where the filing includes the UAC Instruction Sheet
indicating that the applicant is a UAC. The NSC will also accept the filing of an individual
under 18 years of age and in removal proceedings, even if there is no UAC Instruction Sheet
included in the filing.[2] Cases of UACs in removal proceedings will be entered into RAPS with
the special group code KRD. For individuals in removal proceedings who are over 18 years of
age and who do not submit a UAC Instruction Sheet, the Service Centers will follow existing
procedures.

The Asylum Offices play an important role in determining whether the applicant is a UAC such
that USCIS properly has jurisdiction. Where the Asylum Office receives a direct filing from an
applicant in removal proceedings, it must make the determination that the applicant is a UAC.
Even where the NSC accepts the filing, the Asylum Office at the time of interview should
evaluate whether the applicant was a UAC at the time of filing.

Inclusion of the UAC Instruction Sheet in the filing should serve as evidence that the applicant is
a UAC. Nonetheless, at the time of direct filing or of interview, the Asylum Office may need to
review other factors to determine whether the applicant is a UAC. For instance, while the
applicant may have been a UAC at the time of receiving the UAC Instruction Sheet from ICE,
the applicant must be a UAC at the time of filing the Form I-589 in order for USCIS to have
initial jurisdiction.

    1. *Age*

The Asylum Office should confirm that the applicant was under 18 years of age at the time of
filing the Form I-589. Where the file includes a Form I-213, the apprehending agent's notation
of the date of birth, this serves to indicate the age that the applicant claimed to be at the time of
apprehension. Where there is evidence that the applicant was in ORR custody, this also indicates
that the applicant was under 18, at least at the time of apprehension. Some applicants may
include the ORR Interim Placement Authorization document with their filing. Unless there is
clear, contradictory evidence in the file, jurisdiction should not be refused on the basis of age.

---

[2] For purposes of accepting a filing under these procedures, the NSC will use the date of birth listed on the Form I-589.

Implementation of Statutory Change Providing USCIS With Initial Jurisdiction over Asylum
Applications Filed by Unaccompanied Alien Children
Page 5

>    2. *Unaccompanied Status*

The Asylum Office should also confirm that the applicant was unaccompanied at the time of
filing the Form I-589. Where, at the time of filing, the applicant has no parent or legal guardian
in the U.S. who is available to provide care and physical custody, the applicant is
unaccompanied. *See* 6. U.S.C. § 279. *See also* Joseph E. Langlois, Asylum Division Chief,
USCIS. *Updated Procedures for Minor Principal Applicant Claims, Including Changes to
RAPS*, Memorandum for Asylum Office Directors, etc. (Washington, DC: 14 August 2007), at 5.
Legal guardianship refers to a formal (legal/judicial) arrangement. A child is unaccompanied
even if he or she is in the informal care and physical custody of other adults, including family
members. For instance, if a UAC is released from ORR custody to a sponsor who is not a parent
or legal guardian, the child continues to be unaccompanied.

## D. Transfer of file

An A-file will already exist for UAC applicants for asylum with USCIS who are concurrently in
removal proceedings. The NSC will create a T-file and transfer the file to the Asylum Office.
Additionally, RAPS will automatically initiate the A-file transfer request from the ICE Office of
Chief Counsel to the Asylum Office. ICE may contact the Asylum Office to confirm that the file
is being transferred due to the applicant being a UAC.

## E. Scheduling of UAC interviews

The Asylum Office will manually schedule special group KRD applicants for interview, based
on the weekly minor principal applicant report. While manually scheduling interviews for those
UACs in ORR custody, the Asylum Office should suppress the mailing of the interview notice
and instead send a manually generated notice to inform the UAC of the appropriate interview
location. This will permit the Asylum Office to determine the optimal interview location for
UACs in ORR custody, as further discussed below. The Asylum Office should not schedule an
applicant for interview until the A-file has been received.

Arranging for interviews of UACs in removal proceedings may take time, either due to arranging
for an interview in a circuit ride location or in an alternate location. Interview scheduling should
be done as expeditiously as possible for UACs, particularly for those who are in ORR custody at
the time of filing. Additionally, for UACs in removal proceedings, the Asylum Office should
attempt to schedule the asylum interview to occur prior to the next scheduled hearing date in
Immigration Court.

## F. Interview locations

Most UACs can be scheduled for interview at an Asylum Office or a pre-existing circuit ride
location. Special arrangements may need to be made for certain UACs in ORR custody. While
ORR is responsible for transportation of UACs in their custody to the asylum interview, it may
be necessary for the Asylum Office to arrange for a new circuit ride location to interview those

Implementation of Statutory Change Providing USCIS With Initial Jurisdiction over Asylum
Applications Filed by Unaccompanied Alien Children
Page 6

UACs in ORR facilities not located within an hour of a current interview location (see attached
map). Those ORR facilities for which special arrangements for a new USCIS interview location
may need to be made include: Harlingen, TX; Corpus Christi, TX; San Antonio, TX; and
Vincennes, IN. Additionally, while the general preference is for the interview to occur in a
USCIS office, we recommend that those UACs in an ORR secure facility be interviewed at the
secure facility, in order for proper security arrangements to be in place. Contact information for
ORR's Division of Unaccompanied Children's Services and its facilities will be posted on the
Asylum Virtual Library.

### G. Interpreters

The Asylum Division is able to provide telephonic interpreters for those UACs in ORR custody
who cannot fulfill the general requirement under 8 C.F.R. § 208.9(g) to provide an interpreter for
the asylum interview. The Asylum Office should follow standard procedures for arranging for
telephonic interpretation. If any issues or questions arise, contact the Headquarters Asylum point
of contact for the interpreter contract.

### H. Handling of case upon entry of final decision

Where the Asylum Office decides to grant asylum to a UAC in removal proceedings, standard
grant procedures are followed. The Asylum Office will serve the grant on the applicant and
place a copy of the grant letter in the file, per standard procedures. Additionally, the Asylum
Office UAC point of contact (see below) should contact the local ICE Office of Chief Counsel in
order to alert them to the nature of the decision, so that ICE can move the Immigration Court to
terminate proceedings.

Where the Asylum Office decides that a UAC in removal proceedings is not eligible for a grant
of asylum, case processing will depend on the individual's procedural posture before EOIR. The
Asylum Office should coordinate with ICE for the transfer of the A-file to ICE.
1. If the UAC's removal proceedings are still pending, due to the hearing date having been
   continued for good cause pending USCIS adjudication of the asylum claim, the Asylum
   Office will be unable to issue an NTA, as an active NTA already exists. The Asylum
   Office should proceed in issuing a referral notice, but not issue an NTA.
2. If the UAC's removal proceedings are still pending, due to the case having been
   administratively closed pending USCIS adjudication of the asylum claim, the Asylum
   Office should proceed in issuing a referral notice, but not issue an NTA.
3. If the UAC's removal proceedings were terminated without prejudice pending
   adjudication by USCIS of the asylum claim, standard referral procedures should be
   followed by the Asylum Office, including issuance of the NTA.

Until further notice, the Asylum Office will not serve a court packet on the Immigration Court
for those UACs whom the Asylum Office refers for whom there is an active NTA (i.e., scenarios
#1 and 2 above). Nonetheless, the Asylum Office should prepare the court packet and the A-file
as usual. After the file has been transferred to Immigration Court, ICE will serve court packet on

Implementation of Statutory Change Providing USCIS With Initial Jurisdiction over Asylum
Applications Filed by Unaccompanied Alien Children
Page 7

the Immigration Court.  Additionally, the Asylum Office should ensure that a copy of the CSTA
screen in RAPS is attached to the outside of the A-file before transferring it to ICE.

## I. UAC points of contact for each office

Each Asylum Office should designate a UAC point of contact (POC).  This person will be
responsible for interacting with local ICE Office of Chief Counsel, local EOIR Immigration
Court staff, and ORR DUCS staff.   The POC may also manage the interview scheduling process
for the Asylum Office's UAC cases.

We recommend that the POC coordinate with the local ICE Office of Chief Counsel to inform
ICE of the UAC's asylum application, to arrange for ICE to forward the A-file to the Asylum
Office, and to verify whether the UAC's case is continued, administratively closed, or terminated
pending the asylum interview.  Following the entry of a decision, the Asylum Office UAC POC
should contact ICE to alert them to the decision and to arrange for transfer of the file, where
necessary.

Additionally, the Asylum Office UAC POC may need to coordinate with the Asylum Office
POC for clock issues in order to interact with EOIR to resolve any asylum clock issues that arise.

If you have any questions concerning the guidance contained in this memorandum, please
contact Mary Margaret Stone at 202-272-1651.

Attachments (4):
1. DHS UAC Instruction Sheet (internal use only).
2. USCIS Update: USCIS Initiates Procedures for Unaccompanied Alien Children in
   Removal Proceedings Seeking Asylum (March 25, 2009).
3. USCIS Questions and Answers: USCIS Initiates Procedures for Unaccompanied
   Alien Children in Removal Proceedings Seeking Asylum (March 25, 2009).
4. Map of current ORR DUCS facilities and USCIS asylum interview locations (internal
   use only).

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Asylum Division*
Washington, DC  20529-2100



April 2, 2009                                                        HQRAIO 120/12a

# Memorandum

TO:          All Asylum Office Staff

FROM:      Joseph E. Langlois /s/
             Chief, USCIS Asylum Division

SUBJECT:  Special Group Code for Unaccompanied Alien Children Defensive Asylum Filings
             Changed To "PRL"

This memorandum provides to the USCIS Asylum Offices a change to the March 25, 2009,
memorandum *Implementation of Statutory Change Providing USCIS with Initial Jurisdiction
over Asylum Applications Filed by Unaccompanied Alien Children* regarding the special group
code the Nebraska Service Center (NSC) will use to identify unaccompanied alien children
(UAC) in removal proceedings who have filed for affirmative asylum.

Section III of the memo states that at the time of receipt of a UAC's Form I-589 application, the
NSC will verify whether the UAC is in removal proceedings.  In such cases, the NSC will enter
the special group code "KRD" into the Refugees, Asylum and Parole System (RAPS).  Testing
has indicated that code "KRD" does not fulfill the case processing needs of the Asylum Division,
therefore all affirmative asylum applications filed by UACs in removal proceedings will instead
be identified by special group code "PRL" (formerly "parole," presently defensive
unaccompanied child).

If you have any questions concerning the guidance contained in this memorandum, please
contact the Asylum Division's Chief of Operations.