**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
***Southern Division***

**J.O.P, et al.** *

**Plaintiffs,** *

**v.** * **Case No.: GJH-19-1944**

**U.S. DEPARTMENT OF HOMELAND SECURITY et al.,** *

**Defendants.** *

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiffs J.O.P. (by and through next friend, G.C.P.), M.A.L.C., M.E.R.E., and K.A.R.C.,[1] on behalf of themselves and other similarly situated individuals seeking asylum, filed a class action complaint against Defendants U.S. Department of Homeland Security (DHS), Kevin McAleenan in his official capacity as Acting Secretary of DHS, U.S. Citizenship and Immigration Services (USCIS) and Kenneth Cuccinelli in his official capacity as Acting Director of USCIS. ECF No. 1. Plaintiffs challenge a new policy that changes the rights held by unaccompanied children who are now seeking asylum. *Id.* Pending before the Court is Plaintiffs' Motion for a Temporary Restraining Order, which requests that the Defendants' previous policies for unaccompanied children seeking asylum be maintained until the Court may consider the new policy's validity. ECF No. 14. A hearing was held on July 19, 2019. ECF No. 43. For the following reasons, Plaintiffs' motion will be granted.

[1] The Court will grant Plaintiffs' unopposed motion seeking permission to proceed under pseudonyms. ECF No. 12.

## I. BACKGROUND

In 2008, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA or the Act). TVPRA, Pub. L. No. 110-457 § 235(d), 122 Stat. 5044, 5074, codified at 8 U.S.C. §§ 1158, 1232(d). The Act extended legal protections to children who entered the United States without a parent or other legal guardian and were determined to be "unaccompanied alien children" (UACs). A UAC is a child who:

> (A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom—(i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody.

6 U.S.C. § 279(g)(2). The TVPRA requires that after an unaccompanied child is discovered by federal government officers (often U.S. Customs and Border Protection (CBP) or U.S. Immigration and Customs Enforcement (ICE) officers), she must be transferred to the custody of the Office of Refugee Resettlement within the Department of Health and Human Services, typically within a 72-hour period, for care and further screening. Unlike the agencies whose mission is to enforce immigration laws, the Department of Health and Human Services has social workers trained to work with children. 8 U.S.C. § 1232(a)(3).

The TVPRA also provides that USCIS, not an immigration court, has initial jurisdiction over a UAC's asylum application. 8 U.S.C. § 1158(b)(3)(c). The USCIS asylum process is a less adversarial system more sensitive to the special needs of children who do not know how to navigate an immigration system designed for adults, and who likely sought safety in the United States without understanding their legal options. ECF No. 1 ¶ 5. Instead of having to be cross-examined in an adversarial courtroom by trained government lawyers, unaccompanied children engage with USCIS officers trained to conduct non-adversarial interviews and to apply child-

sensitive and trauma-informed interview techniques. *Id.* ¶¶ 11, 49. The TVPRA also directs USCIS to help make counsel available to these children. 8 U.S.C. § 1232(c)(5). Additionally, while asylum applicants generally must file their asylum applications within one year of entering the United States, *id.* § 1158(a)(2)(B), the TVPRA exempts unaccompanied children from this one-year filing deadline, *id.* § 1158(a)(2)(E).

The TVPRA delegates authority to federal agencies to enact "regulations which take into account the specialized needs of unaccompanied alien children and which address both procedural and substantive aspects of handling unaccompanied alien children's cases." *Id.* § 1232(d)(8). The Act neither directs USCIS to redetermine an individual's UAC status at the time of an application for asylum when a federal agency has initially determined the child meets the UAC definition nor expressly prohibits the agency from making a redetermination at that time. *See id.* §§ 1158, 1232. Similarly, the TRVPA neither expressly authorizes nor expressly prohibits USCIS from rescinding an earlier UAC determination. *Id.* However, in a memorandum authored by Asylum Chief Ted Kim in May 2013 (Kim Memo), USCIS implemented a policy of accepting jurisdiction of asylum applications filed by individuals previously determined to be UACs without having asylum officers make redeterminations regarding the children's status. ECF No. 15-6.

The Kim Memo came shortly after a 2012 report by the Citizenship and Immigration Services Ombudsman recommended that USCIS implement the policy of not rescinding UAC determinations. ECF No. 15-5. In an independent analysis of problems encountered by unaccompanied children seeking asylum in the United States, the Ombudsman started from the understanding that when a child is placed in removal proceedings, the apprehending entity,

whether ICE or CBP "must make a finding that the child is unaccompanied." *Id.* at 7.[2] Prior to the 2012 Ombudsman Report, USCIS had been performing redeterminations of a child's UAC status upon receipt of an asylum application and again during the asylum interview. *Id.* at 5–6. The Ombudsman outlined several problems with re-determining UAC status, including difficulty rescheduling UAC interviews, and inadequate methods and approaches to adjudication. *Id.* The Ombudsman was concerned that instead of "facilitating expedited, non-adversarial interviews envisioned by Congress," the USCIS policy of undertaking a redetermination of UAC status at every asylum interview created "delay and confusion." *Id.* at 6.

In the Ombudsman's view, "TVPRA's procedural and substantive protections were designed to remain available to UACs throughout removal proceedings, housing placement, and the pursuit of any available relief," and "[s]ubjecting a child seeking asylum to multiple UAC determinations as [was] required by USCIS' temporary guidance appears at odds with the TVPRA's express purpose, namely, to provide timely, appropriate relief for vulnerable children." *Id.* Further, the Ombudsman acknowledged that "Congress did not provide language indicating that the filing of an asylum application should trigger a new or successive UAC determinations that could eliminate statutory protections or remove the UAC from [removal] proceedings." *Id.* at 7. The Ombudsman concluded that "[e]liminating the practice of USCIS re-determining UAC status during the asylum interview would also restore a level of fairness that comes from having a predictable and uniform process." *Id.* at 8.

Under the policy adopted by the Kim Memo, which was consistent with the Ombudsman report's recommendations, asylum officers were required to accept determinations by CBP and ICE regarding UAC status even if an individual had turned eighteen or been reunited with a

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

parent or guardian by the time he applied for asylum. ECF No. 15-6 at 3. As recently as May 20, 2019, USCIS confirmed that the asylum policy set forth in the 2013 Kim Memo remained in effect. ECF No. 15-8 at 4. But on June 14, 2019, USCIS published a memorandum on its website that changed the rules for determining whether a child is eligible for TVPRA protections. ECF No. 15-2. The 2019 Redetermination Memo is dated May 31 2019, but was not made available on the USCIS website until June 14, 2019. *Id.*; ECF No. 1 ¶ 8. The policy set forth in the Redetermination Memo became effective on June 30, 2019. *Id.*

Pursuant to the Redetermination Memo, all asylum officers are now required to "mak[e] independent factual inquiries in all cases in order to determine whether the individual met the UAC definition on the date of first filing the asylum application." ECF No. 15-2 at 3. The Redetermination Memo states that the "updated procedures" "apply to <u>any</u> USCIS decision issued on or after the effective date" of the memorandum. *Id.* at 2 (emphasis in original). Under the new rules, an individual originally designated as a UAC who, perhaps relying on the former policy, applied for asylum after reaching the age of eighteen or after being reunited with a parent or guardian, will arrive at an asylum interview to find that USCIS must now decline jurisdiction because of a redetermination that the applicant was not a UAC at the time he filed an application. *See id.* Under the prior rule, individuals determined to be UACs by CBP or ICE had two opportunities to present their claims on the merits: first through the USCIS process and again, if necessary, in an immigration court. ECF No. 1 ¶ 81. But under the new policy, some individuals will no longer be eligible to participate in the first half of this process because by the time they applied for asylum they had attained the age of eighteen or had been reunited with a parent or guardian. *Id.* ¶ 9. Further, under the new rules, an individual who had previously been determined to be a UAC and who applied for asylum outside of the one-year filing deadline

could lose all right to asylum due to the imposition of the one-year bar from which he believed he was exempt. *Id.* ¶ 81.

According to a leaked internal memorandum from 2017, unknown members of the administration considered rescinding the 2013 Kim Memo as one of a number of proposed "Policy Options to Respond to Border Surge of Illegal Immigration." ECF No. 15-3 at 2. However, a comment on the memo, also by an unknown author, noted that "DOJ allows immigration judges to make independent determinations as to when a minor is a UAC" and "it would be good for DHS to have the same policy." ECF No. 15-3 at 2. Consistent with this comment, the Redetermination Memo explained that USCIS decided to change course from the 2013 policy to ensure that the agency is making "jurisdictional determinations in a manner consistent with Immigration Judge determinations." ECF No. 15-2 at 3. Under Board of Immigration Appeals precedent, Immigration Judges also have initial jurisdiction over asylum applications filed by individuals previously determined to be UACs who have turned eighteen before filing their application. *Id.* (citing *Matter of M-A-C-O-*, 27 I&N Dec. 477 (BIA 2018)). Thus, both USCIS and immigration judges have initial jurisdiction over UAC asylum applications. *Id.* However, where USCIS officers were not making redeterminations about previously granted UAC status pursuant to the 2013 policy, immigration judges were making such redeterminations. *Id.* The new policy eliminated that distinction.

The Redetermination Memo did not address whether the facts and circumstances that underlay the agency's prior policy (and that were described in detail in the 2012 Ombudsmen's report) had changed. *See id.* The Redetermination Memo also did not address whether USCIS had taken into account any interests of those individuals who had been relying on the prior policy to make decisions about when to file an asylum application. *See id.*

Plaintiffs came to the United States as children to escape violence, abuse, or persecution in their home countries. ECF No. 16 ¶¶ 2, 5, 6; ECF No. 18 ¶ 5; ECF No. 19 at 4; ECF No. 20 ¶ 4. They each arrived in the United States as children without a parent or guardian to care for them and the government determined them to be UACs. *See* ECF No. 1 ¶¶ 15–36. Since arriving in the United States, Plaintiffs have each either turned eighteen or been reunited with a parent or guardian. ECF No. 16 ¶¶ 8, 10; ECF No. 18 ¶¶ 5, 8; ECF No. 19 ¶ 5; ECF No. 20 ¶¶ 7, 9. However, because they were relying on USCIS's former policy of not rescinding UAC status, Plaintiffs did not file asylum applications until after they had either been reunited with a parent or guardian or attained the age of eighteen. *Id.*

Plaintiffs filed a Complaint challenging the implementation of USCIS's redetermination policy as violating the Administrative Procedure Act (APA) and the Due Process Clause of the Fifth Amendment of the United State Constitution on July 1, 2019. ECF No. 1. On that date, they also moved for a Temporary Restraining Order. ECF No. 14. The Court held a hearing on July 19, 2019 at which both parties had an opportunity to be heard. ECF No. 43. At the hearing, Defendants conceded that Plaintiffs are entitled to at least a limited temporary restraining order ordering Defendants to apply the policies outlined in the 2013 Kim Memo to the four named Plaintiffs and to avoid re-determining their UAC status.

## II. STANDARD OF REVIEW

Plaintiffs seek temporary injunctive relief prohibiting Defendants from implementing the May 31, 2019 policy memo until the Court has an opportunity to consider the policy's validity. The purpose of a temporary restraining order (TRO) or a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft*

*Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). The substantive requirements for a TRO and a preliminary injunction are identical. *See U.S. Dept. of Labor v. Wolf Run Mining Co., Inc.*, 452 F.3d 275, 281 n. 1 (4th Cir. 2006). Specifically, parties moving for a TRO or preliminary injunction must show: (1) they are likely to succeed on the merits; (2) they will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) maintaining the status quo is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008)). The final two factors generally "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

Plaintiffs argue that the Redetermination Memo did not go through the required notice-and-comment procedure for agency rulemaking in violation of the APA, is inconsistent with the TVPRA, is arbitrary and capricious in violation of the APA, and violates Plaintiffs' due process rights. As described in more detail below, the Court finds that Plaintiffs and those similarly situated to them are likely to succeed on their claim that the redetermination policy violates the APA because the agency failed to go through required notice-and-comment procedures and failed to consider reliance interests created by the 2013 Kim Memo. The Court also concludes that Plaintiffs and those similarly situated to them are likely to experience irreparable harm if the redetermination policy is not enjoined and the balance of harms favors temporary injunctive relief.

Because the Defendants consent to the named Plaintiffs' requested temporary relief as to their due process claims based on the issue of retroactive application of the policy to those Plaintiffs, the Court briefly addresses whether Plaintiffs' request for a temporary restraining order is moot or whether Plaintiffs can still achieve broader injunctive relief. Given that the

remedy Congress provides for unlawful agency action is setting aside that agency action, not simply prohibiting the application of that action to individuals, Plaintiffs' request for broader injunctive relief still presents a live controversy. 5 U.S.C. §§ 706(2)(A)–(D); *See also Guilford Coll. v. McAleenan*, No. 1:18cv891, — F.Supp.3d —, 2019 WL 1980132, at *11 (M.D.N.C. May 3, 2019) (granting an injunction setting aside a different unlawful USCIS policy in its entirety because that injunction had the "breadth . . . necessary to give the prevailing parties the relief to which they are entitled.") (quoting *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987))). Further, courts may enter class-wide injunctive relief before certification of a class. *Rodriguez v. Providence Community Corrections*, 155 F. Supp. 3d 758, 766 (M.D. Tenn. 2015); *Newberg on Class Actions* § 4:30 (5th ed. 2013) ("[A] court may issue a preliminary injunction in class suits prior to a ruling on the merits."); *see also Mullins v. Cole*, 218 F. Supp. 3d 488 (S.D.W. Va. 2016) (considering harms to putative class as a whole in awarding preliminary injunction prior to class certification).

Because, as described below, the Court finds Plaintiffs are likely to succeed on the merits of some of their APA claims—claims relevant to potential class members—Plaintiffs' request for a broader injunction than the relief consented to by Defendants is not moot. There remains a controversy regarding whether the redetermination policy should ultimately be set aside as violating the APA—a remedy that would resolve not only the named Plaintiffs' claims but also the claims of those similarly situated who Plaintiffs seek to represent through a class action. In this context, Plaintiffs' request for preliminary injunctive relief beyond that consented to by Defendants is still proper. Having resolved these threshold concerns, the Court turns to Plaintiffs' likelihood of success on their specific claims.

### A. Likelihood of Success on the Merits

#### i. Notice and Comment

Plaintiffs are likely to succeed on the claim that USCIS failed to engage in the required notice-and-comment procedure for rulemaking. Under the APA, legislative rules must go through notice-and-comment rulemaking before they become effective. *See* 5 U.S.C. § 553(a)–(c); *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 619–20 (4th Cir. 2018). This requirement does not apply to interpretive rules. *Children's Hosp*, 896 F.3d at 620. A rule is "legislative," rather than "interpretive," if it "effects a substantive change in existing law or policy." *Id.* When a rule affects "individual rights and obligations" it is "a substantive rule—or a 'legislative-type rule.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979) (internal citation omitted) (quoting *Morton v. Ruiz*, 415 U.S. 199, 232, 236 (1974)). Additionally, legislative rules "are rules issued by agencies pursuant to statutory authority and which implement the statute." *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1340 (4th Cir. 1995). Because the new policy did not go through a notice-and-comment procedure, the question for the Court is whether it is a legislative or interpretive rule.

Plaintiffs are likely to succeed in demonstrating that the redetermination policy is legislative in nature because the policy is inconsistent with prior agency policy, thus affecting a "substantive change in existing law or policy." *Children's Hosp*, 896 F.3d at 620. Pursuant to the new policy, which is binding on "any USCIS decision" regarding jurisdiction over an asylum case, ECF No. 15-2 at 2 (emphasis in original), USCIS officers must now determine whether an individual met the UAC definition on the date the individual filed an asylum application rather than adopting the UAC status determination made by another federal agency. Thus, under the new policy, if Plaintiffs or similar individuals wanted USCIS to accept jurisdiction over their

asylum applications, they were obligated to file those applications before they attained the age of eighteen or before they were reunited with a parent or guardian. Additionally, the new policy retroactively affects the rights of Plaintiffs and those similarly situated to Plaintiffs by taking away their exemption to the one-year filing deadline, meaning some will lose their opportunity to seek asylum.

Beyond the ways in which the redetermination policy affects substantive rights and obligations, the rule is also legislative in nature because USCIS issued it pursuant to the agency's statutory authority under the TVPRA to implement the Act. *Chen Zhou Chai*, 48 F.3d at 1340 (legislative rules "are rules issued by agencies pursuant to statutory authority and which implement the statute."). When Congress directs an agency to implement key statutory provisions through regulation, courts "should lean toward finding" that an agency's attempt to exercise delegated policymaking responsibility under the statute "requires notice and comment." *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 71 (1st Cir. 2018). That is the situation here where Congress has delegated authority through the TVPRA to USCIS to enact "regulations which take into account the specialized needs of unaccompanied alien children and which address both procedural and substantive aspects of handling unaccompanied alien children's cases." 8 U.S.C. § 1232(d)(8). The Redetermination Memo skirts this instruction from Congress that USCIS issue regulations to implement procedures related to UAC's asylum applications.[3]

In sum, even though the redetermination policy is likely a legislative rule, Defendants did not engage in the notice-and-comment process, which would violate the APA.

[3] The fact that the Kim Memo did not go through notice-and-comment does not impact whether the policy should have since the Kim Memo was not challenged on this basis.

**ii. Arbitrary and Capricious Review**

Plaintiffs are also likely to succeed on their claim that the redetermination policy is arbitrary and capricious in violation of the APA because the USCIS failed to consider serious reliance interests engendered by the agency's longstanding prior policy. The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1922). Section 706(2) provides that, in a suit challenging agency action, "[t]he reviewing court shall . . . hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A)–(D). Section 706(2) review is to be "thorough, probing, [and] in-depth." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see id.* at 416.

Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). While agencies may change their policies, they must provide "a reasoned explanation" for the shift. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009). Moreover, the agency must "provide a reasoned explanation" for a change in instances where the agency's "prior policy has engendered serious reliance interests that must be taken into account." *Id.* at 515–16. In other words, while an agency is free to change its policies, it must address the "facts and circumstances

that underlay or were engendered by the prior policy." *Id.* at 516. If an agency ignores such reliance interests it may have "entirely failed to consider an important aspect of the problem," rendering the agency's action arbitrary and capricious. *See id.*; *State Farm*, 463 U.S. at 43.

Here, Defendants entirely failed to consider reliance interests in the decision memorandum outlining the agency's new policy. *See* ECF No. 15-2. While USCIS may be justified in changing course to create consistency between the jurisdictional determinations made by USCIS and immigration judges, *id.* at 3, it needs to at least provide a "reasoned explanation" for why it is disregarding the facts that underlay the earlier policy as well as the serious reliance interests engendered by the prior rules. Given the agency's failure to do so, Plaintiffs are likely to succeed on their claim that the redetermination policy is arbitrary and capricious in violation of the APA.

**iii. TVPRA**

While Plaintiffs are likely to succeed on some of their claims, the Court is not convinced that Plaintiffs remaining claims will be meritorious. Plaintiffs' argument that the USCIS acted in excess of statutory authority because the redetermination policy is inconsistent with the TVPRA is likely without merit. The TVPRA neither expressly authorizes nor expressly prohibits USCIS from rescinding a determination that a child is a UAC. 8 U.S.C. § 1232(d)(8). And although the Act discusses the "[s]pecialized needs of unaccompanied alien children" under the heading "Permanent protection for certain at-risk children," it never expressly addresses the rights of individuals who no longer qualify as UACs. *Id.*

**iv. Pretext**

Plaintiffs' claim that the agency's justification for its policy change was pretextual in violation of the APA also likely fails. To the extent that the Court can draw any conclusions from

the "leaked internal memorandum" of unknown authorship that Plaintiffs point to as evidence of pretext, the Court finds that at least one of the reasons provided is consistent with the justification given in the Redetermination Memo. Specifically, according to the Redetermination Memo, USCIS decided to change course from the 2013 policy to ensure that USCIS is making "jurisdictional determinations in a manner consistent with Immigration Judge determinations." ECF No. 15-2 at 3. Consistent with this justification, the leaked internal memo indicates that administration officials were considering ordering USCIS to make changes to the 2013 policy in part because "DOJ allows immigration judges to make independent determinations as to when a minor is a UAC" and "it would be good for DHS to have the same policy." ECF No. 15-3 at 2.

Although agencies must "examine the relevant data and articulate a satisfactory explanation for its action," there is no rule prohibiting an agency from supporting its action with several explanations so long as there is a "rational connection between the facts found and the choice made." *See State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Therefore, even to the extent that the reasons articulated in the Redetermination Memo do not match the primary explanation for the action offered in the "leaked internal memorandum" (i.e., responding to a surge in illegal border crossings), that at least one of the reasons provided in that memo is consistent with the justifications given in the Redetermination Memo indicates that the agency's reasoning is not pretextual.

Ultimately, though, Plaintiffs need only demonstrate that they are likely to succeed on the merits of some of their claims, and they have done so here.

**B. Irreparable Harm and Balance of the Equities**

Plaintiffs have also met their burden to demonstrate that the redetermination policy will cause irreparable harm if the status quo is not maintained. As previously discussed, individuals

who relied on USCIS's longstanding policy of not rescinding UAC status may miss their opportunity to file for asylum all together if the one-year filing deadline from which they would have otherwise been exempt is now imposed. Similarly, under the redetermination policy, individuals who, relying on USCIS's policy of adopting earlier UAC determinations, did not file for asylum until after they had aged out of UAC status or until after they had been reunited with a parent or guardian will be forced to proceed before an adversarial system where they will be subject to cross-examination by trained government lawyers even though they believed that they would be able to proceed before an asylum officer trained in trauma-informed interviewing.

Finally, analysis of the last two factors—the balance of the equities and the public interest—merge here because the Government is a party, and they favor maintaining the status quo. Defendants have conceded that Plaintiffs are likely to succeed on the merits of their constitutional claims and "upholding the Constitution undeniably promotes the public interest." *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 604 (4th Cir. 2017). Defendants' argument that a more fully developed record will show that prioritizing consistency between jurisdictional determinations by USCIS officers and immigration judges will benefit UACs does not change the Court's conclusion that on the existing record the balance of equities tips in Plaintiffs' favor. There is no evidence in the existing record that either Defendants or children applying for asylum will be harmed by pressing pause on enforcing the redetermination policy, but Plaintiffs have shown that the new policy will cause them harm. Thus, at this time, the balance of the harms favors temporary injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a Temporary Restraining Order will be granted. A separate Order shall issue.

Date: August 2, 2019

/s/

GEORGE J. HAZEL
United States District Judge