# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

J.~~O.P. (by and through Next Friend G.CO.P.),~~**.,** **M.A.L.C.**, **M.E.R.E.**, ~~and~~ **K.A.R.C.,** and **E.D.G.** on behalf of themselves as individuals and on behalf of others similarly situated~~,~~

Plaintiffs,

v.

**U.S. DEPARTMENT OF HOMELAND SECURITY**, ~~KEVIN MCALEENAN~~**CHAD WOLF** (in his official capacity as Acting Secretary of Homeland Security), **U.S. CITIZENSHIP & IMMIGRATION SERVICES**, ~~and~~ **KENNETH CUCCINELLI** (in his official capacity as Acting Director of U.S. Citizenship & Immigration Services~~))~~**)**, **U.S. IMMIGRATION & CUSTOMS ENFORCEMENT**, and **MATTHEW T. ALBENCE** (in his official capacity as Acting Director of U.S. Immigration & Customs Enforcement),

Defendants.

Civil Action No. ~~————————~~**8:19-CV-01944-GJH**

**FIRST AMENDED** CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**PUBLIC VERSION**

## FIRST AMENDED COMPLAINT

Plaintiffs J.O.P., M.A.L.C., M.E.R.E., ~~and~~ K.A.R.C.**, and E.D.G.**, on behalf of themselves and other similarly situated children seeking asylum, bring this class action complaint against Defendants U.S. Department of Homeland Security ("DHS"); ~~Kevin McAleenan~~**Chad Wolf**, in his official capacity as Acting Secretary of DHS; U.S. Citizenship and Immigration Services

1

("USCIS"); ~~and~~ Kenneth Cuccinelli, in his official capacity as Acting Director of USCIS~~.~~; U.S. Immigration and Customs Enforcement ("ICE"); and Matthew T. Albence, in his official capacity as Acting Director of ICE.  Plaintiffs allege as follows~~.~~:

## INTRODUCTION

1.      Plaintiffs are among thousands of unaccompanied immigrant children who have made the long and perilous journey to the United States to seek protection, fleeing violence and persecution in their countries of origin.  This class action challenges a federal agency's sudden shift in policy that retroactively strips Plaintiffs of critical, statutory asylum protections.

2.      Recognizing the vulnerability and special needs of unaccompanied immigrant children, Congress has enacted laws specifically designed to protect them.  In 2008, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA").  The TVPRA provides multiple protections to unaccompanied immigrant children, who are often vulnerable to trafficking, persecution, trauma, and other harms en route to or while in the United States.

3.      The TVPRA draws on a prior statutory definition according to which an "unaccompanied alien child" ("UAC") is one whom the federal government determines to be without lawful immigration status, under the age of 18, and without a parent or legal guardian in the United States available to provide care and physical custody.  6 U.S.C. § 279(g)(2).  ~~Plaintiffs were each apprehended by Defendant DHS upon entering the United States and determined by a DHS agent to satisfy this definition.~~

4.      Defendant DHS apprehended each Plaintiff upon entering the United States and determined that each Plaintiff satisfied this definition.  At or about the same time, Defendant DHS prepared legal documents to initiate proceedings in a United States immigration court

2

pursuant to Section 240 of the Immigration and Nationality Act ("INA") against each Plaintiff to determine whether each Plaintiff should be removed from the United States ("removal proceedings"). Such removal proceedings are conducted by immigration judges within the Executive Office for Immigration Review ("EOIR"), an agency of the U.S. Department of Justice.

4.5. The TVPRA relieves unaccompanied immigrant children of two procedural hurdles to accessing the asylum system, providing a more child-appropriate way for the government to process their claims to protection under U.S. and international law fairly.

5.6. First, the TVPRA creates an exception to the general requirement that asylum applicants facing removal proceedings present their asylum claims in an adversarial setting before the immigration court. InsteadInstead, through a grant of initial jurisdiction over their asylum claims to USCIS, the TVPRA allows unaccompanied immigrant children to pursue asylum in the first instance through a non-adversarial administrative interview with a trained asylum officer within USCIS, a process more appropriate for traumatized young applicants.

6.7. Second, the TVPRA exempts unaccompanied immigrant children from a one-year filing deadline that otherwise applies to asylum applicants. Without that TVPRA exemption, asylum applicants filing later than one year after entering the United States mustare ineligible for asylum unless they can establish that they merit an exception to the one-year filing deadline.

7.8. Under a policy USCIS adopted effective June 2013 to implement these TVPRA asylum protections, Plaintiffs, and all other unaccompanied immigrant children seeking asylum in the United States, were entitled to access the TVPRA asylum process once they had been determined to be a UAC upon their initial apprehension by DHS, andas long as that determination remained in place. when the child initially applied for asylum. Under thethis

2013 policy, USCIS exercised initial jurisdiction over an unaccompanied immigrant child's asylum claim ~~regardless of whether~~even if the applicant had turned 18 or ~~been~~had been reunited with a parent or appointed a legal guardian before applying for asylum.

9. ~~The~~This rule was subject to a limited exception where the UAC determination had been terminated before the child filed for asylum, by an intervening "affirmative act" of the Department of Health and Human Services ("HHS"), or by the DHS component agencies ICE or U.S. Customs and Border Protection ("CBP").

10. Moreover, under the 2013 policy, USCIS exercised its initial jurisdiction regardless of whether EOIR had made findings or determinations with respect to the statutory UAC definition or the merits of the asylum claim.

11. In 2019, DHS unlawfully curtailed the permanent protections enacted by Congress in the TVPRA ~~are unlawfully curtailed by Defendants' recent actions~~. On June 14, 2019, Defendant USCIS posted a memorandum dated May 31, 2019 (the "2019 Redetermination Memo") to its website announcing significant changes to ~~how USCIS will implement~~USCIS's implementation of the TVPRA, effective ~~on~~June 30, 2019.[1]

~~8.~~12. USCIS did not publish the 2019 Redetermination Memo in the Federal Register, and the agency did not invite public comment on any of the new directives set forth in the memorandum.

~~9.~~13. The 2019 Redetermination Memo ~~now mandates~~mandated that, beginning on June 30, 2019, an asylum officer must make an independent factual inquiry to redetermine

---

[1] Ex. 1, U.S. Citizenship and Immigration Services, Updated Procedures for Asylum Applications Filed by Unaccompanied Alien Children (May 31, 2019), https://www.uscis.gov/humanitarian/refugees-asylum/asylum/minor-children-applying-asylum-themselves.

whether an applicant met the statutory definition of a UAC on their filing date—even if that filing date was years ago, when the prior policy was in effect.  ~~If USCIS determines~~Under the 2019 Redetermination Memo, if USCIS determined that the individual no longer satisfied the definition on the date the individual applied for asylum, USCIS ~~will~~would decline jurisdiction over the asylum application.  Moreover, based on the same determination, USCIS ~~must~~was also directed to conclude that an applicant ~~is~~was not entitled to the related protection that exempts UACs from the one-year deadline for filing asylum applications.

14.     The 2019 Redetermination Memo ~~applies~~also required that, if EOIR had explicitly determined that USCIS did not have jurisdiction over an asylum application because it was not one filed by a UAC, the asylum officer would defer to that determination.

15.     The  2019 Redetermination Memo thus called for USCIS to defer to intervening determinations by EOIR, abdicating USCIS's initial jurisdiction over a UAC asylum claim if an immigration court concluded, based on its own factual finding, that USCIS lacks jurisdiction over a child's case.  In this way, the 2019 Redetermination Memo purported to authorize EOIR to preempt the statutory grant to USCIS of initial jurisdiction over an asylum application based solely on EOIR's own determination of jurisdictional factors and allow EOIR to adjudicate the merits of an asylum claim  simply by reaching it more quickly than USCIS.  The policy thus undermined the core purpose of the TVPRA to provide procedural protections to vulnerable children seeking asylum.

~~10.~~16.  By its terms, the 2019 Redetermination Memo applied to any USCIS decision issued on or after its effective date of June 30, 2019.  Thus, the policy ~~will~~was to be implemented retroactively—applying to individuals who already had asylum applications pending before

USCIS, even those whom USCIS already interviewed, as of June 30, 2019, as well as to others who have relied upon USCIS's 2013 policy.

11.17. The 2019 Redetermination Memo marksmarked a drastic change in USCIS policy and a departure from the protections in the TVPRA that profoundly undermines Plaintiffs' rights, and the rights of other unaccompanied immigrant children who have filed for or plan to file for asylum in the United States. Under the policy in place since 2013, Plaintiffs were entitled to seek asylum before USCIS, regardless of any EOIR determination to the contrary, and were relieved from the requirement to show that they either had filed within one year or qualified for an exception to that general deadline. Under the new policy2019 Redetermination Memo, they will be deprived of their right to seek asylum before USCIS, and they will face an adversarial process in which a DHSan ICE prosecutor subjects them to cross examination and advocates for their deportation. Further, Plaintiffs may lose their eligibility to seek asylum entirely by retroactive imposition of a filing deadline that was inapplicable to their applications at the time they were filed. The policy thus undermines the core purpose of the TVPRA to provide procedural protections to vulnerable children seeking asylum.

18. The 2019 Redetermination Memo is the latest in a long line of recent policies adopted in an effort to curtail the rights of unaccompanied children and others seeking asylum and other protections in the United States, as revealed by a leaked DHS memorandum, titled "Policy Options to Respond to Border Surge of Illegal Immigration" (herein, the "Policy Options List") (The 2019 policy, in calling for USCIS to defer to EOIR's jurisdictional determinations, results in EOIR taking action on a case where USCIS holds initial jurisdiction. Defendants have acted to ensure precisely this result: ICE, in its role as prosecutor in immigration court,

frequently advocates for EOIR to assert and/or exercise its jurisdiction in these cases so as to deprive USCIS of the opportunity to exercise initial jurisdiction.

19. Following the filing of the initial Complaint in this action on July 1, 2019 and in response to Plaintiffs' motion for a temporary restraining order ("TRO") filed the same day, Defendants conceded during the July 19, 2019 hearing in this litigation that the policy set forth in the 2019 Redetermination Memo was unconstitutionally retroactive, offering entry of an order that would "take the retroactivity part of the case off the table." 7/19/19 Hearing Tr. at p. 6.

20. The Court recognized Plaintiffs' likelihood of success on the merits of both the retroactivity and procedural claims, and entered a TRO on August 2, 2019 (extended multiple times) and then, on Plaintiffs' unopposed motion, a preliminary injunction ("PI") on October 15, 2019, all requiring Defendants to continue to adjudicate UAC asylum cases pursuant to the 2013 policy.

21. Despite the Court's TRO and PI, Defendants continued to attempt to displace USCIS's statutory initial jurisdiction over UAC asylum claims with determinations by the immigration courts.

22. On information and belief, Defendant ICE has a policy or practice of advocating for immigration judges to conclude, contrary to the 2013 policy and despite the TRO and the PI, that applicants who have turned 18 or reunited with a parent before applying for asylum are not within USCIS's jurisdiction. In so doing, ICE furthers USCIS's unlawful abdication of jurisdiction over those cases.

12.      ~~Ex. 2).² Among the listed "options" for responding to a "border surge" is a~~ ~~summary of the policies announced in the 2019 Redetermination Memo, appearing alongside the~~ ~~Trump Administration's policy to separate children from their families after entry as a means of~~ ~~deterrence. Ex. 2 at 1-2. Despite acknowledging that the 2013 USCIS asylum policy "affords~~ ~~the minors the protections under the Trafficking in Victims Protection Reauthorization Act~~ ~~(TVPRA)," the author proposed to rescind that policy, which is referred to in a margin~~ ~~annotation as "misguided." *Id.* at 2.~~

~~13.~~23.  In making these significant and harmful policy changes that undermine the purpose of and are inconsistent with the TVPRA, without providing notice or opportunity to comment, and by announcing their intent to apply the new policy retroactively, Defendants have violated the TVPRA itself, the Administrative Procedures Act ("APA"), and the constitutional due process rights of children who seek to access the statutory asylum system in the United States.

~~14.~~24.  Plaintiffs seek the Court's ~~immediate~~ intervention so that they and others similarly situated may exercise their right to seek asylum before USCIS and maintain their statutory exemption from the general one-year filing deadline. Defendants' actions have caused and, unless <u>fully</u> enjoined, will continue to cause serious and irreparable harm to Plaintiffs and to the proposed class. Plaintiffs therefore seek declaratory and injunctive relief from this Court to end these violations and harms.

---

² ~~Available at~~ ~~https://www.documentcloud.org/documents/5688664-Merkleydocs2.html.~~ ~~On~~ ~~information and belief, the leaked memorandum was provided to NBC News by the office of~~ ~~Sen. Jeff Merkley, which obtained the memorandum from a government whistleblower.~~

**PLAINTIFFS**

~~15.~~25.   Plaintiff J.O.P. is ~~a 17~~an 18-year-old from Guatemala, who currently resides with his mother at 8734 Edmonston Road, College Park, Maryland (located in Prince George's County).  ~~He brings suit through his mother and next friend, G.C.P.~~

~~16.~~26.  J.O.P. fled Guatemala and came to the United States after witnessing a murder and receiving violent threats.

~~17.~~27.  J.O.P. is currently in removal proceedings under 8 U.S.C. § 1229a, INA § 240.

~~18.~~28.  On or about November 25, 2015, agents for ~~defendant~~Defendant Department of Homeland Security determined that J.O.P. is a UAC.

~~19.~~29.  J.O.P. subsequently was reunified with his mother.

~~20.~~30.  On February 20, 2018, J.O.P. filed his asylum application with USCIS, exercising his right to seek asylum before USCIS based on the policy that has been in place since 2013.  He has yet to obtain an interview from USCIS for his asylum application.

~~21.~~31.  Plaintiff M.A.L.C. is a ~~20~~21-year-old from Guatemala, who currently resides at 1617 South Hoover Street, Los Angeles, California.

~~22.~~32.  M.A.L.C.'s parents were murdered in Guatemala, and thereafter, he continued to experience repeated threats of violence and extortion in Guatemala.  M.A.L.C. fled to the United States in August 2016.

~~23.~~33.  M.A.L.C. is currently in removal proceedings under 8 U.S.C. § 1229a, INA § 240.

~~24.~~34.  In August 2016, agents for ~~defendant~~Defendant Department of Homeland Security determined that M.A.L.C. is a UAC.

~~25.~~35.  On February 14, 2018, when he was 19 years old, M.A.L.C. filed his asylum application with USCIS, exercising his right to seek asylum before USCIS based on the policy in place since June 2013.  M.A.L.C. has yet to be interviewed by USCIS on his asylum application.

26.36.  Plaintiff M.E.R.E. is a 20-year-old from El Salvador, who currently resides at 2711 Colebrooke Drive, Temple Hills, Maryland (located in Prince George's County).

27.37.  M.E.R.E. fled El Salvador because of abuse, discrimination, and persecution that he experienced based on his sexual orientation.

28.38.  M.E.R.E. is currently in removal proceedings under 8 U.S.C. § 1229a, INA § 240.

29.39.  On or about November 15, 2014, agents for ~~defendant~~Defendant Department of Homeland Security determined that M.E.R.E. is a UAC.

30.40.  M.E.R.E. subsequently was reunified with his mother.

31.41.  On March 30, 2018, when he was 18 years old, M.E.R.E. filed his asylum application with USCIS, exercising his right to seek asylum before USCIS based on the policy that has been in place since 2013.  USCIS has not yet scheduled M.E.R.E. for an asylum interview.

32.42.  Plaintiff K.A.R.C. is a 20-year-old from El Salvador, who currently resides at 726 Clopper Road, Gaithersburg, Maryland (located in Montgomery County).

33.43.  K.A.R.C. fled El Salvador because of abuse, discrimination, and persecution that he experienced based on his perceived sexual orientation.

34.44.  K.A.R.C. is currently in removal proceedings under 8 U.S.C. § 1229a, INA § 240.

35.45.  Around May 2016, agents for Defendant Department of Homeland Security determined that K.A.R.C. is a UAC.

36.46.  In the fall of 2017, when K.A.R.C. was 18 years old, he filed his asylum application with USCIS, exercising his right to seek asylum before USCIS based on the policy in place since June 2013.  In November 2017, USCIS conducted the asylum interview with K.A.R.C.  USCIS has not yet issued a decision in K.A.R.C.'s case.

47.     Plaintiff E.D.G. is a 20-year-old from Honduras, who current resides at 4509 E 19th Street, Kansas City, Missouri.

48.     E.D.G. fled Honduras after years of being sexually, physically, and emotionally abused—as well as being targeted by a gang for recruitment and being grievously harmed by that gang for refusing to join.

49.     On or about July 4, 2016, agents for Defendant Department of Homeland Security determined that E.D.G. is a UAC.

50.     E.D.G. was placed into removal proceedings under 8 U.S.C. § 1229a, INA § 240 on July 5, 2016.

51.     In late 2017, when E.D.G. was 18 years old, he filed his asylum application with USCIS, exercising his right to seek asylum before USCIS based on the policy in place since June 2013.  On March 6, 2018, USCIS conducted the asylum interview with E.D.G.

52.     Before USCIS issued a decision on E.D.G.'s asylum claim, an immigration judge ordered E.D.G. removed on October 10, 2018, after concluding that it had jurisdiction over E.D.G.'s asylum application and denying it on the merits. E.D.G.'s removal order is on appeal before the Board of Immigration Appeals ("BIA").

53.     On July 25, 2019, USCIS rejected jurisdiction over E.D.G.'s asylum application under the 2019 Redetermination Memo because he had not established that he was under 18 years old at the time he filed it.  On August 5, 2019, USCIS reopened E.D.G.'s case in compliance with this Court's TRO.

54.     On September 30, 2019, while the Court's TRO remained in effect, USCIS again rejected jurisdiction over E.D.G.'s asylum application relying on the 2019 Redetermination

Memo.  USCIS issued a Notice of Lack of Jurisdiction on grounds that the "Immigration Judge made an affirmative act to terminate UAC status on October 10, 2018."

55.     On November 22, 2019, Plaintiffs' counsel filed a motion to enforce the preliminary injunction now in effect, seeking an order requiring Defendants to retract USCIS's September 30, 2019 jurisdictional rejection in E.D.G.'s case and to adjudicate his case under the 2013 policy.

## DEFENDANTS

37.56.  Defendant U.S. Department of Homeland Security ("DHS") is a federal cabinet department responsible for implementing and enforcing the Immigration and Nationality Act ("INA") (*see* 8 U.S.C. § 1103) and an "agency" within the meaning of the APA (5 U.S.C. § 551(1)).

38.57.  Defendant Kevin McAleenanChad Wolf is the Acting Secretary of Homeland Security and therefore the "head" of the Department of Homeland Security.  6 U.S.C. § 112(a)(2).  He is charged with administering and enforcing the federal immigration and nationality laws.  8 U.S.C. § 1103(a)(1), (3).  He is sued in his official capacity.

39.58.  Defendant U.S. Citizenship and Immigration Services ("USCIS") is a bureau within DHS (6 U.S.C. § 271) and an "agency" within the meaning of the APA (5 U.S.C. § 551(1)).  USCIS is the "agency" that issued the 2019 Redetermination MemorandumMemo.

59.     Defendant Kenneth T. Cuccinelli is the Acting Director of U.S. Citizenship and Immigration Services and therefore the "head" of that agency (6 U.S.C. §§§ 113(a)(1)(E) & 271(a)(2)).  He is sued in his official capacity.

60.     Defendant U.S. Immigration and Customs Enforcement ("ICE") is a bureau within DHS (6 U.S.C. § 252) and an "agency" within the meaning of the APA (5 U.S.C. § 551(1)).  ICE attorneys act as prosecutors before the immigration courts, advocating for the

government's position with respect to, *inter alia*, an immigration judge's jurisdiction, the removability of respondents in removal proceedings, and whether a continuance or other postponement of the immigration court case is warranted to allow USCIS to adjudicate an application pending before that agency.  6 U.S.C. § 252(c).[3]

40.61.  Defendant Matthew T. Albence is the Acting Director of U.S. Immigration and Customs Enforcement and is therefore the "head" of that agency (6 U.S.C. §§ 113(a)(1)(G) & 252(a)(2)).  He is sued in his official capacity.

## JURISDICTION AND VENUE

41.62.  This Court has federal question jurisdiction over Plaintiffs' complaint under 28 U.S.C. § 1331.  It has the authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202; 5 U.S.C. §§ 705, 706(1), 706(2)(A)-(D); and its general equitable powers.

42.63.  The APA provides a cause of action for parties adversely affected by final agency action when "there is no other adequate remedy in a court."  5 U.S.C. § 704.  That condition is met in this case because the 2019 Redetermination Memo is a "final agency action" within the meaning of the statute, as is the declining or preemption of USCIS's initial jurisdiction over asylum in a particular UAC's case, and there is no other adequate remedy available in any other court.

43.64.  Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because Defendants are officers or agencies of the United States and one or more Plaintiffs reside in the district within the meaning of 28 U.S.C. § 1391(d).

---

[3] Defendants ICE and Mr. Albence are added in this First Amended Complaint for clarity of pleading and in an abundance of caution, in light of the additional allegations regarding ICE's role in furthering the unlawful policy of the 2019 Redetermination Memo.  Because ICE is an instrumentality of original Defendant DHS, under the control and acting at the direction of original Defendant Acting Secretary of DHS, it would be bound by this Court's interim orders and final judgment whether or not it and its acting director were separately named.

44.65.  This case is properly assigned to the Southern Division of the District of Maryland because the majority of Plaintiffs reside in that Division.  *See* Local Rule 501.

**FACTUAL BACKGROUND**

**Passage of the TVPRA in 2008**

45.66.  Before 2002, the care and placement of unaccompanied immigrant children in the United States was the responsibility of the Office of Juvenile Affairs in the former Immigration and Naturalization Service ("INS").  In 2002, Congress enacted the Homeland Security Act ("HSA").  Pub. L. No. 107-296, 116 Stat. 2153.  The HSA created DHS and transferred most immigration functions formerly performed by INS to the newly formed DHS and its components, including USCIS, Custom Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE").CBP, and ICE.

46.67.  The HSA defined an "unaccompanied alien child" as a child who: "(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom—(i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody."  HSA 462(g)(2); 6 U.S.C. § 279(g)(2).  Congress transferred to the Office forof Refugee Resettlement ("ORR"), within the Department of Health and Human Services ("HHS"),. the responsibility for the care of UACs "who are in Federal custody by reason of their immigration status."  HSA 462(a), (b)(1)(A); 6 U.S.C. § 279(a), (b)(1)(A).

47.68.  Six years later, Congress passed the TVPRA, which was signed into law on December 23, 2008 and took effect in March 2009.  In addition to measures to combat international and domestic human trafficking, including trafficking of children, the TVPRA recognized the vulnerability of children fleeing their countries of origin to seek protection in the

United States, and responded with multiple provisions addressing safe custody and child-appropriate procedures for unaccompanied ~~immigrant~~ children.

48.69.   In structuring the TVPRA, Congress placed legal protections for UACs, including provisions on asylum, in a section of the statute titled "Permanent protection for certain at-risk children."  TVPRA § 235(d~~).~~); *see* 8 U.S.C. § 1232(d).

49.70.   Among other safeguards, the TVPRA provides that USCIS has "initial jurisdiction" over a UAC's asylum application, even where the UAC is in removal proceedings—a deviation from the ordinary rule that "affirmative" asylum before USCIS is only available to those who are not in removal proceedings.  TVPRA § 235(d)(7); 8 U.S.C. § 1158(b)(3)(C).  Conferring initial jurisdiction on USCIS instead of an ~~Immigration Judge~~immigration judge provides a non-adversarial system more sensitive to the special needs of child immigrants who lack understanding of how to navigate an immigration system designed for adults~~, and who likely sought safety in the United States without understanding the legal options that exist, including asylum.~~.  Instead of having to be cross-examined in an adversarial courtroom by trained government lawyers (without the right to appointed counsel), a UAC applicant is seen by USCIS asylum officers trained to conduct non-adversarial interviews and apply child-sensitive and trauma-informed interview techniques.

50.71.   Generally, asylum applicants must file their asylum application within one year after entering the United States~~, subject to~~ unless they can prove that they fall within one of two limited exceptions.  8 U.S.C. § 1158(a)(2)(B).  Recognizing that children were forced to struggle through a system designed for adults, even though they lack the capacity to understand nuanced legal principles, let alone courtroom and administrative procedures, the second TVPRA protection at issue here makes the one-year filing deadline inapplicable to UACs.  TVPRA

§ 235(d)(7); 8 U.S.C. § 1158(a)(2)(E).  Accordingly, a UAC who was unable to file within one year will not be required to demonstrate changed or extraordinary circumstances relating to the delay in filing the application, and that the application was nonetheless filed in a reasonable time.  *See* 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 208.4(a)(5).

~~51.~~72.  The TVPRA also requires that federal officials who discover a UAC must transfer the UAC to the custody of HHS within a 72-hour period (absent exceptional circumstances), for care and custody.  TVPRA § 235(b)(3); 8 U.S.C. § 1232(b)(3).  This requirement places UACs under the care of an agency set up to provide for their safety and welfare, rather than an agency whose mission is to enforce immigration laws.  For example, HHS contracts with agencies who have social workers on staff who are trained to work with children.

~~52.~~73.  Nothing in the TVPRA directs or authorizes any government agency to rescind a determination that a child is a UAC, or to abrogate the asylum procedures that apply to a child determined to be a UAC.

~~53.~~74.  In the words of Senator Dianne Feinstein, a co-author of the TVPRA provisions, their purpose was "to ensure that unaccompanied children receive humane and appropriate treatment while in the custody of the U.S. Government"[4] and to "give unaccompanied minors access to pro bono legal counsel and someone to look after their best interest."  154 Cong. Rec. S10886 (daily ed. Dec. 10, 2008).  Senator Feinstein explained that:

> I believe we have a special obligation to ensure that these children are treated humanely and fairly.  Unfortunately, without this legislation, there would be no procedure to make sure that happens.  Currently, when a child is apprehended by immigration authorities, that child usually knows nothing about U.S. courts or immigration policies and frequently does not speak English.

---

[4] July 31, 2008 Press Release, available at https://www.feinstein.senate.gov/public/index.cfm/press-releases?ID=7b292e44-b306-86d0-a0b4-981389abaf5d.

*Id.*

54.75.  Congress instructed USCIS, in order to properly administer the TVPRA, to enact "regulations which take into account the specialized needs of unaccompanied alien children and which address both procedural and substantive aspects of handling unaccompanied alien children's cases."  TVPRA § 235(d)(8); 8 U.S.C. § 1232(d)(8).  USCIS has failed to enact any such regulations in the ten years since Congress passed the TVPRA.

### Initial Implementation of the TVPRA and the September 2012 Office of the Citizenship and Immigration Services Ombudsman's Report

55.76.  In 2009, USCIS issued a memorandum instructing asylum officers on the rules to follow for evaluation of asylum applications filed by UACs in removal proceedings.  Ex. 32 (March 25, 2009 Memorandum re: *Implementation of Statutory Change Providing USCIS with Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children*).  The memorandum instructs asylum officers that they must make an initial determination as to USCIS's jurisdiction for all asylum applications filed by UACs in removal proceedings.  *Id.* at 4. Further, according to the 2009 memorandum, asylum officers are to determine whether, at the time of filing, the child was under 18 years of age and unaccompanied.  *Id.* at 4-5.  The 2009 memorandum states that "[f]ederal regulations will ultimately be promulgated in order to reflect the procedures established for USCIS initial jurisdiction."  *Id.* at 1.

56.77.  The procedures set forth in the 2009 memorandum were contrary to the TVPRA, as acknowledged by the Citizenship and Immigration Services Ombudsman ("Ombudsman").[5]

_____

[5] The Citizenship and Immigration Services Ombudsman, established by the Homeland Security Act of 2002, provides independent analysis of problems encountered by individuals interacting with U.S. Citizenship and Immigration Services, and proposes changes to mitigate those problems.  *See* 6 U.S.C. § 272.

On September 20, 2012, the Ombudsman issued a report, titled *Ensuring a Fair and Efficient Asylum Process for Unaccompanied Minor Children* (the "2012 Ombudsman Report") (Ex. 4̶3), providing an independent analysis of problems encountered by UACs seeking asylum in the United States, and recommendations to improve the process. The Ombudsman recognized that USCIS had failed to implement the "statutorily required regulations" for UACs seeking asylum. Instead, USCIS had "developed and implemented certain temporary policies and procedures for UAC asylum-seekers." *Id.* at 3.

57.78. To complete its review, the Ombudsman "interviewed USCIS Asylum Division manager and staff at Headquarters and seven of the eight Asylum Offices, EOIR officials, and stakeholders throughout the country." Ex. 4̶3 at 2. The Ombudsman "also studied case assistance requests and reported incidents submitted directly to [its] office by stakeholders." *Id.*

58.79. According to the Ombudsman, "Congress did not provide language indicating that the filing of an asylum application should trigger a new or successive UAC determinations that could eliminate statutory protections or remove the UAC from [removal] proceedings." *Id.* at 5.

59.80. The Ombudsman also recognized that the "TVPRA's procedural and substantive protections were designed to remain available to UACs throughout removal proceedings, housing placement, and the pursuit of any available relief. Subjecting a child seeking asylum to multiple UAC determinations as is required by USCIS' temporary guidance appears at odds with the TVPRA's express purpose, namely, to provide timely, appropriate relief for vulnerable children." *Id.*

60.81. The Ombudsman recognized that, when a child is placed in removal proceedings, the apprehending entity, whether ICE or CBP, "must make a finding that the child is unaccompanied." *Id.* at 5. However, in the period between enactment of the TVPRA and

promulgation of the 2013 policy, USCIS routinely revisited determinations that a child was a UAC, inquiring into whether the applicant was a UAC at the date of filing an asylum application and at the date of the asylum interview.  *Id.* at 3-4.  Based on such redeterminations, USCIS declined to exercise its initial jurisdiction over some children who had filed applications with USCIS pursuant to the TVPRA provisions.  *Id.* at 6.

61.82.  In the 2012 Ombudsman Report, the Ombudsman outlined numerous problems that flowed from redetermining UAC status at asylum interviews, including inefficiencies attendant upon scheduling and conducting interviews only to disclaim jurisdiction in nearly half the cases (*id.* at  6); officers assessing complex parent-child relationships without specialized training (*id.* at 7); and undermining predictability and uniformity in the handling of children's cases (*id.* at 6).  The Ombudsman explained that instead of "facilitating expedited, non-adversarial interviews envisioned by Congress," the USCIS policy of undertaking a redetermination of UAC status at every asylum interview created "delay and confusion."  *Id.* at 4.

62.83.  Recognizing the deficiencies in this process, the Ombudsman made a number of recommendations "[t]o address confusion related to UAC redeterminations, facilitate improved interview techniques and adjudications, and reduce post-interview processing delays."  *Id.* at 1-2.  As the Ombudsman noted:

> A child's living circumstances or relationship with his or her family may be dynamic, so the child may fall both within and without of the UAC definition while present in the United States.  Given this fluidity, as well as inconsistencies in practice by DHS and EOIR, legal advocates believe that the UAC definition itself is too vague and impractical, and that the status, once attached, should remain with a child through the pendency of his or her case.

*Id.* at 4.[6]

63.84.   The Ombudsman recommended that USCIS accept jurisdiction of an asylum

application filed by a child whom a federal agency had previously determined to be a UAC.  *Id.*

at 4-5.

64.85.   As the Ombudsman correctly concluded based on its extensive assessment,

"[e]liminating the practice of USCIS redetermining UAC status during the asylum interview

would also restore a level of fairness that comes from having a predictable and uniform process."

*Id.* at 6.  According to the Ombudsman, the practice of "adopt[ing a] UAC determination made

for custody purposes by CBP and ICE . . . will positively affect all minors apprehended and

placed into federal custody with the HHS, helping to ensure a consistent process for scores of

children who seek asylum in the United States."[7]

**USCIS Response to the Ombudsman's Report and the 2013 Kim Memorandum**

65.86.   On April 11, 2013, USCIS responded to the Ombudsman's Report, thanking the

Ombudsman "for the opportunity to respond to [the Ombudsman's recommendation] to ensure a

fair and effective asylum process."  Ex. 87 at 1.  USCIS recognized that "there is room to

improve," and agreed with the Ombudsman's recommendation that USCIS should accept

jurisdiction of asylum applications filed by children in federal custody under DHS.DHS

previously determined to be UACs.  *Id.* at 2-3.

66.87.   On May 28, 2013, USCIS issued a memorandum authored by Ted Kim, Acting

Chief, Asylum Division, regarding "*Updated Procedures for Determination of Initial*

---

[6] The Ombudsman's report quotes an article from the American Immigration Lawyers
Association, Immigration Practice Pointers 2011- 2012 Edition, "The ABCs of Representing
Unaccompanied Children," (June 2011) at p. 588.

[7] Ex. 65, Annual Report 2013, Citizenship and Immigration Services Ombudsman (June 27,
2013).

*Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children*" (the "2013 Kim

Memorandum") (Ex. ~~54~~).  The 2013 Kim Memorandum provides procedures for "determining

jurisdiction in applications for asylum filed by unaccompanied alien children (UACs) under the

initial jurisdiction provision of the [TVPRA]."  Ex. ~~54~~ at 1.

    ~~67.~~88.  The 2013 Kim Memorandum implemented the Ombudsman's recommendation

that USCIS accept jurisdiction of the asylum applications of those children whom a federal

agency had already determined met the statutory definition of <u>a</u> UAC.  *Id.* at 2.  Under the 2013

Kim Memorandum, "[i]n cases in which CBP or ICE has already determined that the applicant is

a UAC, Asylum Offices will adopt that determination and take jurisdiction over the case."  *Id.*

Further, if as of the date of initial filing of the asylum application, that UAC status determination

was still in place~~,~~ "—<u>not having been terminated by an "affirmative act" of HHS, ICE, or CBP—</u>

"USCIS will take initial jurisdiction over the case, even if there appears to be evidence that the

applicant may have turned 18 years of age or may have reunited with a parent or legal guardian

since the CBP or ICE determination."  *Id.*

    ~~68.~~  The ~~procedures set forth in the~~ 2013 Kim Memorandum ~~are consistent with the~~

~~TVPRA,~~<u>does not refer to EOIR</u> as ~~acknowledged by the Ombudsman.~~

    89.  <u>an agency whose determination would be binding upon</u> USCIS ~~adopted the~~

~~procedures set forth in~~<u>or even relevant to USCIS's jurisdictional determination.</u>

    ~~69.~~90.  <u>Under</u> the 2013 Kim Memorandum ~~based on the Ombudsman's analysis and~~

~~recommendations~~<u>, USCIS is not permitted to defer to an EOIR's jurisdiction determination</u>.

    91.  ~~In reliance on the rules set forth in~~<u>While</u> the 2013 Kim Memorandum~~, Plaintiffs~~

~~and other unaccompanied children similarly situated, filed~~ <u>was in effect, USCIS</u> asylum

applications with USCIS prior to June 30, officers were not instructed that immigration judges had the authority to make any determinations about UAC status or to terminate UAC findings.

70.	Just weeks before issuing the 2019.

71.92.	As recently as Redetermination Memo, on May 20, 2019, USCIS confirmed to public stakeholders that the asylum policy and procedures set forth in the 2013 Kim Memorandum remained in effect. Ex. 6 (USCIS Asylum Division Quarterly Meeting Agenda (, May 20, 2019).) Ex. 7 at 3. This was the most recent reaffirmation in a series of public statements to stakeholders in which USCIS confirmed that "[t]he May 28, 2013 Memorandum on initial jurisdiction over asylum applications filed by UACs and the related June 2013 policy documents remain in effect." *Id.*

93.	In reliance on the rules set forth in the 2013 Kim Memorandum, Plaintiffs and other unaccompanied immigrant children similarly situated, filed asylum applications with USCIS prior to June 30, 2019. In anticipation of this Court's order of injunctive relief, or pursuant to this Court's TRO and PI, additional unaccompanied immigrant children amenable to USCIS jurisdiction under the 2013 Kim Memorandum filed asylum applications with USCIS on or after June 30, 2019.

**The 2019 Redetermination Memo Issued by USCIS**

72.94.	On June 14, 2019, USCIS published a memorandum on its website that drastically changed the rules for determining whether a child is eligible to seek asylum before USCIS. The 2019 Redetermination Memo, dated May 31, 2019, is authored by John Lafferty (Chief, Asylum Division) and titled "*Updated Procedures for Asylum Applications Filed by Unaccompanied Alien Children*" (Ex. 1). Although the memorandum is dated May 31, 2019, USCIS did not publish this memorandum on its website until June 14, 2019.

73.95.  The 2019 Redetermination Memo acknowledges that the asylum policy in place since 2013 allowed "asylum officers to adopt prior UAC determinations made by U.S. Customs and Border Protection (CBP) or U.S. Immigration and Customs Enforcement (ICE) without further factual inquiry, so long as those determinations were still in place on the date of filing the asylum application."  Ex. 1 at 2.

74.96.  Reversing the 2013 policy, the 2019 Redetermination Memo directsdirected that all asylum officers must "mak[e] independent factual inquiries in all cases in order to determine whether the individual met the UAC definition on the date of first filing the asylum application" which in turn determines whether USCIS will exercise jurisdiction, and "examine whether the individual was a UAC at the time of first filing for the purposes of determining whether the one-year filing deadline applies."  *Id. Id.*  The 2019 Redetermination Memo also instructs that if EOIR has explicitly determined that USCIS does not have jurisdiction over an asylum application because it is not one filed by a UAC, the asylum officer is to defer to that determination.  *Id.* at 4 n.5.

75.97.  Under the new policy set forth in the 2019 Redetermination Memo, a UACan individual who was previously determined to be a UAC and who applied for asylum with USCIS after turning 18 or reunifying with a parent or legal guardian relying on existing USCIS policy would have their asylum application rejected by USCIS for lack of jurisdiction.  That UACThe same is true if EOIR had determined that USCIS lacked jurisdiction over the asylum application because it was not filed by a UAC.  That individual could also lose eligibility for asylum in any forum due to the retroactive application of the one-year bar on filing.

76.98.  The 2019 Redetermination Memo states that its "updated procedures" "apply to **any** USCIS decision issued on or after the effective date" of the memorandum (emphasis in

original).  *Id.* at 1.  The 2019 Redetermination Memo is dated May 31, 2019 and ~~therefore purports~~purported to take effect on June 30, 2019, which is 30 calendar days from the date of the memorandum.

~~77.~~99.  Under the 2019 Redetermination Memo, an individual who was previously determined to be a UAC, and who applied for asylum relying on the procedures set forth in the 2013 Kim Memorandum, could arrive at an asylum interview to find that USCIS ~~will~~would decline jurisdiction because the asylum officer determined~~-~~, based on an independent decision or in deference to an EOIR pronouncement, that the applicant was not a UAC at the time of application.  Indeed, the 2019 Redetermination Memo called for the same retroactive jurisdictional denial ~~could be made for~~ in cases ~~that were~~ interviewed years ago and ~~are~~ still awaiting decision when the 2019 Redetermination Memo took effect.  In those and other postures, if an asylum officer determines that, at the time the application was filed, the child was over 18 or had a parent or legal guardian in the United States who the asylum officer determines was "available to provide care and physical custody," or if the asylum officer is aware of an EOIR determination to that effect, then the asylum officer ~~must~~had to decline jurisdiction.  For those unaccompanied immigrant children in removal proceedings who applied for asylum when they were 18 or older or ~~who later found~~after joining a parent or guardian, USCIS will, based on its redetermination, ~~USCIS will~~ refer the children's asylum claims to the ~~Immigration Court~~immigration court where they will await an adversarial process.  Moreover, as the CIS Ombudsman noted with reference to the initial 2009 policy, any record made in the USCIS interview is then transmitted to ICE, ~~where it can be used~~allowing an ICE attorney to use it to cross-examine the applicant in the adversarial immigration court process.  The UAC applicant

has no opportunity to challenge those USCIS notes, taken in the course of a process USCIS now claims not to have jurisdiction to conduct.

78.100.    There are many reasons an unaccompanied child may have filed for asylum after one year, after turning 18, or after a parent or legal guardian in the United States became able to take custody of the child.

79.101.    As Congress recognized in passing the TVPRA, unaccompanied immigrant children are particularly unable to access complex immigration systems without the aid of a legal representative, and it could take a child a substantial period of time to find legal representation—if she ever does.  The TVPRA's procedural protections allow a child additional time to find legal representation and access the asylum process.  Many unaccompanied immigrant children, including one or more of Plaintiffs, find legal representation after turning 18 or more than one year after entry, and subsequently file for asylum before USCIS.

80.102.    Other children may find legal representation, but then pursue a form of immigration relief or protection other than asylum first, knowing that that the TVPRA asylum process remains available.  For example, many unaccompanied immigrant children suffered neglect, abandonment, or abuse by a parent that qualifies them for special immigrant juvenile status ("SIJS") under 8 U.S.C. § 1101(a)(27)(J)(iii)—a form of protection that was substantially broadened by the TVPRA—or qualify for forms of relief such as T and U visas for victims of trafficking and other crimes.  For many reasons, including speed of processing, ability to avoid revisiting trauma, and availability of visas, a UAC and his or her legal representative may decide to pursue SIJS or another form of potential relief prior to filing for asylum before USCIS.

81.103.    In applying for one of these other forms of relief since 2013, a child applicant could rely on the opportunity to later file for asylum before USCIS, exempt from the

one-year filing deadline, and still be entitled to the child-appropriate non-adversarial interview process in the first instance.  Then, under the system Congress created, if the child were unsuccessful in the USCIS process, she would have the case referred back to immigration court, where she could again present her asylum evidence to the immigration judge in an adversarial procedure.

82.104.    USCIS has during a period of many months delayed scheduling asylum interviews for unaccompanied child applicants, preventing them from securing relief under the established policy.  Upon information and belief, USCIS delayed scheduling interviews in anticipation of the pronouncement of a new policy.  Further, USCIS may have delayed interviews and adjudications in anticipation of an effective date such as that of the 2019 Redetermination Memo, with the effect of applying the policy retroactively to bar otherwise qualified children from benefitting from the protections of the TVPRA.

83.105.    USCIS asserts asserted in the 2019 Redetermination Memo that USCIS has adopted the new asylum policy in order to bring USCIS practice in line with a precedential Board of Immigration Appeals ("BIA") decision regarding jurisdiction over asylum applications. According to USCIS, the new rule is 2019 Redetermination Memo was necessary "[t]o ensure USCIS is making these jurisdictional determinations in a manner consistent with Immigration Judge determinations on the same issue."  Ex. 1 at 2.

84.106.    The BIA decision referenced in the 2019 Redetermination Memorandum Memo, *Matter of M-A-C-O-*, 27 I. & N. Dec. 477 (BIA 2018), does not divest USCIS of its authority to determine whether it has jurisdiction over an asylum application. Indeed, USCIS recognized this in the 2019 Redetermination Memo, stating "both the Immigration Judge and USCIS have authority to make this jurisdictional determination."  Ex. 1

at 2.  USCIS also recognized in its May 20, 2019 report that the *Matter of M-A-C-O-* decision "does not address USCIS determinations about its own jurisdiction.  USCIS continues to make its jurisdictional determinations under its own procedures."  Ex. 6 at 3.  However, the 2019 Redetermination Memo does state that if EOIR has explicitly determined that USCIS does not have jurisdiction over an asylum application because it is not one filed by a UAC, the asylum officer will defer to that determination.  Ex. 7 at 31 at 4 n.5.

85.107.    The BIA decision does not mandate any changes to USCIS policy.  It does not invalidate the asylum policy set forth in the 2013 Kim Memorandum or direct USCIS to implement new procedures.  And it only addresses the question of UAC applicants over the age of 18 at time of filing, not the other elements of the UAC statutory definition.

108.    Nonetheless, through ICE's advocacy before the immigration courts, Defendants have implemented a policy that abdicates USCIS's statutorily mandated role of determining and taking initial jurisdiction and instead permits EOIR to determine such cases on the merits despite initial jurisdiction lying with USCIS, thus denying UAC applicants the initial non-adversarial hearing to which the TVPRA entitles them.  In the absence of affirmative steps by USCIS to give effect to its initial jurisdiction, and/or due to substantial delays in USCIS's processing of these cases, ICE is regularly in a position to advocate that an immigration court act on a case notwithstanding a pending UAC asylum claim before USCIS.  By affirmatively arguing that EOIR has jurisdiction and by opposing requests by applicants that EOIR stay its hand, ICE facilitates USCIS's abdication of its exercise of initial jurisdiction.

86.109.    Neither the BIA decision nor the 2019 Redetermination Memo undertakesundertake any examination of the reasons USCIS adopted the asylum policy set forth

in the 2013 Kim Memorandum.  Nor do they consider any of the legislative history or ~~Congressional~~congressional intent in enacting the TVPRA.

~~87.~~110.     The 2019 ~~Memorandum~~Redetermination Memo is a final agency action under 5 U.S.C. § 704.  The action "mark[s] the 'consummation' of the agency's decisionmaking process" and it is not "of a merely tentative or interlocutory nature."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  The memorandum marks the culmination of USCIS's process for setting rules governing its jurisdiction and legal consequences will flow from it, as existing asylum applicants will lose the right to seek relief from the asylum office and, in some instances, will have their applications denied as time barred unless they can establish an exception to the bar.

111.    For any particular Plaintiff or class member whose asylum application under the TVPRA is rejected by USCIS on jurisdictional grounds, that rejection is itself a final action of USCIS on the case.

112.    For any particular Plaintiff or class member in whose case ICE advocates for EOIR's exercise of jurisdiction in derogation of USCIS's initial jurisdiction, ICE acts to bring about the final action of foreclosing a hearing of the claim in a non-adversarial setting and effectively transferring initial jurisdiction of the case to EOIR.

~~88.~~113.     The directives in the 2019 Redetermination Memo establish a binding norm and leave asylum officers with no discretion.  Specifically, the 2019 Redetermination Memo states, "The asylum officer ***must*** evaluate whether the asylum application was filed by a UAC by making an independent factual inquiry as to whether the individual met the UAC definition at the time of first filing the asylum application."  Ex. 1 at 3 (emphasis added).  Additionally, "[i]f EOIR has explicitly determined that USCIS does not have jurisdiction over an

asylum application because it is not one filed by a UAC, the asylum officer ***will*** defer to that determination." Ex. 1 at 4 n.5 (emphasis added).

89.114.    The 2019 Redetermination Memo imposes new legal burdens on and alters the legal rights and interests of asylum seekers who have previously been determined to be UACs. Specifically, the 2019 Redetermination Memo provides, "As the party invoking USCIS jurisdiction, the individual filing for asylum bears the burden to establish that he or she met the UAC definition, which includes the applicant's burden to establish his or her age, and that the applicant was unaccompanied, at the time of first filing the asylum application." *Id*Ex. 1 at 3. It also specifically defers to EOIR's determination that USCIS lacks jurisdiction because the asylum application is not one filed by a UAC. Ex. 1 at 4 n.5.

90.115.    Defendants did not undertake notice-and-comment rulemaking prior to issuing the 2019 Redetermination Memo.

91.116.    The policy announced in the 2019 Redetermination Memo sets forth legislative rules and is thus not exempt from the APA's requirements of notice and comment. The 2019 Redetermination Memo reflects a legislative policy judgment, not merely interpretative guidance.

**Defendants' Failure to Promulgate Regulations Despite the TVPRA's Mandate to Do So**

92.117.    The TVPRA expressly directs USCIS to promulgate regulations governing the handling of asylum claims by UACs: "Applications for asylum and other forms of relief from removal in which an unaccompanied alien child is the principal applicant shall be governed by regulations which take into account the specialized needs of unaccompanied alien children and which address both procedural and substantive aspects of handling unaccompanied children's cases." TVPRA § 235(d)(8); 8 U.S.C. § 1232(d)(8).

93.118.　　　　In the fall of 2011, DHS and USCIS included in the Unified Agenda a proposed rule titled "Application of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 to Unaccompanied Alien Children Seeking Asylum." RIN 1615-AB96.[8] The notice indicated that the proposed "rule implements the provisions of the TVPRA" and acknowledged that "[t]he TVPRA mandated promulgation of regulations taking into account the specialized needs of unaccompanied alien children and addressing both procedural and substantive aspects of handling unaccompanied children's cases." The agencies did not publish the text of the proposed rule.

94.119.　　　　DHS and USCIS included the same notice in the Unified Agenda again in 2012, Spring 2013, Fall 2013, Spring 2014, Fall 2014, Spring 2015, Fall 2015, Spring 2016, Fall 2016, Spring 2017, Fall 2017, Spring 2018, and Fall 2018. Yet in the almost eight years since first including this notice in the Unified Agenda, the agencies have not published a Notice of Proposed Rulemaking, and have made no progress toward promulgating regulations implementing the UAC provisions of the TVPRA.

### Plaintiffs Relied on USCIS's 2013 Policy and the TVPRA and Will Be Deprived of Their Right to Seek Asylum Before USCIS Under the New Policy and Will Be Severely Harmed

95.120.　　　　Plaintiff M.E.R.E. entered the United States when he was 15 years old. Upon apprehension, he was determined by DHS to be a UAC.

96.121.　　　　In reliance on the 2013 policy, M.E.R.E. first sought other forms of protection from removal, ultimately applying for asylum in March 2018 after reaching the age of

---

[8] Available at https://reginfo.gov/public/do/eAgendaViewRule?pubId=201110&RIN=1615-AB96. Available at https://reginfo.gov/public/do/eAgendaViewRule?pubId=201110&RIN=1615-AB96.

18. ~~Almost 15 months later, M.E.R.E. has not had an interview scheduled~~As of this filing, USCIS has not interviewed M.E.R.E. and his asylum application is still pending.

~~97.~~122.    Under the new policy set forth in the ~~in~~ 2019 Redetermination Memo, USCIS will decline jurisdiction over M.E.R.E.'s asylum application because he filed after turning 18. M.E.R.E. remains in removal proceedings before an immigration judge wherein an ICE prosecutor may advocate for EOIR jurisdiction and against USCIS jurisdiction. If the immigration judge makes a determination that USCIS does not have jurisdiction over M.E.R.E.'s asylum application, USCIS will reject jurisdiction over M.E.R.E.'s asylum application under the 2019 Redetermination Memo. M.E.R.E. will lose the protections associated with USCIS jurisdiction over his asylum application and instead will be subject to an adversarial process in ~~Immigration Court~~immigration court where he will be cross-examined about the abuse and persecution he suffered as a child. This will further delay the already extended period of time M.E.R.E. has waited for his asylum application to be decided. The added delay will continue to prevent M.E.R.E. from pursuing his education.

~~98.~~123.    Because of the new policy set forth in the ~~in~~ 2019 Redetermination Memo, the government may conclude that M.E.R.E. is ineligible for asylum since he filed his application more than one year after entering the United States.

~~99.~~124.    Plaintiff M.A.L.C. entered the United States when he was 17 years old. Upon apprehension, he was determined by DHS to be a UAC.

~~100.~~125.    In reliance on the 2013 policy, M.A.L.C. applied for asylum in February 2018, when he was 19 years old. ~~Over 16 months later~~As of this filing, USCIS has not interviewed M.A.L.C. and his asylum application is still pending.

101.126.     Under the new policy set forth in the in 2019 Redetermination Memo, USCIS will decline jurisdiction over M.A.L.C.'s asylum application because he filed after turning 18. M.A.L.C. remains in removal proceedings before an immigration judge wherein an ICE prosecutor may advocate for EOIR jurisdiction and against USCIS jurisdiction.  If the immigration judge makes a determination that USCIS does not have jurisdiction over M.A.L.C.'s asylum application, USCIS will reject jurisdiction over M.A.L.C.'s asylum application under the 2019 Redetermination Memo.  M.A.L.C. will lose the protections associated with USCIS jurisdiction over his asylum application and instead will be subject to an adversarial process in Immigration Court immigration court where he will be cross-examined about the abuse and persecution he suffered as a child.  This will further delay the already extended period of time M.A.L.C. has waited for his asylum application to be decided.

102.127.     Further, M.A.L.C. may be deemed ineligible for asylum at all because his application was filed more than one year after he entered the United States.

103.128.     Plaintiff K.A.R.C. entered the United States when he was 17 years old. Upon apprehension, he was determined by DHS to be a UAC.

104.129.     In reliance on the 2013 policy, K.A.R.C. applied for asylum in the fall of 2017, when he was 18 years old.  K.A.R.C. had an asylum interview in November 2017.  Over 19 months later As of this filing, K.A.R.C. has not received a decision on his asylum application.

105.130.     Under the new rules set forth in the 2019 Redetermination Memo, USCIS will decline jurisdiction over K.A.R.C.'s asylum application because he filed after turning 18. K.A.R.C. remains in removal proceedings before an immigration judge wherein an ICE prosecutor may advocate for EOIR jurisdiction and against USCIS jurisdiction.  If the immigration judge makes a determination that USCIS does not have jurisdiction over K.A.R.C.'s

asylum application, USCIS will reject jurisdiction over K.A.R.C.'s asylum application under the 2019 Redetermination Memo.  K.A.R.C. will lose the protections associated with USCIS jurisdiction over his asylum application and instead will be subject to an adversarial process in Immigration Court immigration court where he will be cross-examined about the physical abuse he suffered at the hands of his father and brother and the rape and threats of physical violence by gang members.  This will further delay the already extended period of time K.A.R.C. has waited for his asylum application to be decided.  The added delay will prevent K.A.R.C. from pursuing a college education.

106. 131.	Further, K.A.R.C. may be deemed ineligible for asylum at all because his application was filed more than one year after he entered the United States.

107. 132.	Plaintiff J.O.P. entered the United States when he was 15 years old.  Upon apprehension, DHS determined him to be a UAC.

108. 133.	In reliance on the 2013 policy, J.O.P. applied for asylum in February 2018, still under the age of 18, but after being reunited with his mother in the United States. As of this filing, J.O.P. has not been scheduled for an asylum interview.

109. 134.	Under the new policy set forth in the in 2019 Redetermination Memo, USCIS will decline jurisdiction over J.O.P.'s asylum application because he filed after reuniting with his mother.  J.O.P. remains in removal proceedings before an immigration judge wherein an ICE prosecutor may advocate for EOIR jurisdiction and against USCIS jurisdiction.  If the immigration judge makes a determination that USCIS does not have jurisdiction over J.O.P.'s asylum application, USCIS will reject jurisdiction over J.O.P.'s asylum application under the 2019 Redetermination Memo.  J.O.P. will lose the protections associated with USCIS jurisdiction over his asylum application and instead will be subject to an adversarial process in

~~Immigration Court~~immigration court where he will be cross-examined about the murder he witnessed and threats he received in his home country.  This will further delay the already extended period of time J.O.P. has waited for his asylum application to be decided.

135.    Plaintiff E.D.G. entered the United States when he was 17 years old.  Upon apprehension, he was determined by DHS to be a UAC.

136.    In reliance on the 2013 policy, E.D.G. applied for asylum with USCIS in late 2017, when he was 18 years old.  E.D.G. had an asylum interview with USCIS in March 2018.  On October 10, 2018, before USCIS issued a decision on E.D.G.'s asylum claim, an immigration judge issued a decision concluding that it had jurisdiction over E.D.G.'s asylum application, denying it on the merits, and ordering E.D.G. removed.  E.D.G. appealed his removal order to the BIA, and that appeal remains pending.

137.    Under the new rules set forth in the 2019 Redetermination Memo, USCIS rejected jurisdiction over E.D.G.'s asylum application in July 2019 because he had not established that he was under 18 years old at the time he filed it.  On August 5, 2019, USCIS reopened E.D.G.'s case in compliance with this Court's TRO.  On September 30, 2019, while the Court's TRO remained in effect, USCIS again rejected jurisdiction over E.D.G.'s asylum application relying on the 2019 Redetermination Memo, this time deferring to the IJ's October 10, 2018 determination that E.D.G. was not a UAC.  Specifically, USCIS issued a Notice of Lack of Jurisdiction on grounds that the "Immigration Judge made an affirmative act to terminate UAC status on October 10, 2018."  On November 22, 2019, Plaintiffs' counsel filed a motion to enforce the preliminary injunction now in effect, seeking an order requiring Defendants to retract USCIS's September 30, 2019 jurisdictional rejection and to adjudicate E.D.G.'s case under the 2013 policy.

138.     Because of the application of the new rules set forth in the 2019 Redetermination Memo, E.D.G. has lost the protections associated with USCIS jurisdiction over his asylum application.  USCIS's denial of jurisdiction over E.D.G.'s asylum application robs him of a basis upon which to move the BIA to remand his removal proceedings to the IJ to await USCIS's decision on the asylum application.  Had USCIS found jurisdiction over E.D.G.'s asylum application and granted E.D.G. asylum, E.D.G. could have moved the IJ or the BIA to terminate his removal proceedings.  USCIS's delay in adjudicating his asylum claim forced E.D.G. into the painful position of having to testify for the second time to traumatic events that included sexual abuse for years as a child, this time in an adversarial setting that involved cross-examination by a DHS attorney.

**Defendants Have Continued to Delay or Obstruct USCIS Adjudication of Properly Filed Cases, Resulting in the Abdication of USCIS's Exercise of Initial Jurisdiction Through Delay or Deference to EOIR**

139.     This Court has issued a temporary restraining order (extended three times) and a preliminary injunction, each of which required Defendants to proceed with "consideration of such case[s] applying the 2013 UAC Memorandum."  Yet, Defendant USCIS has rejected jurisdiction over asylum applications where EOIR has wrongly asserted its own jurisdiction based on its own factual determination as to a child's age or the availability of a parent or guardian prior to the application date.

140.     ICE acts as the prosecuting entity in the immigration courts.  Rather than acting in furtherance of longstanding USCIS policy regarding the scope of USCIS initial jurisdiction, ICE actively opposes unaccompanied immigrant children's efforts to hold their asylum claims in removal proceedings in abeyance while those claims are properly before the USCIS asylum office.  ICE is a component of Defendant DHS, and therefore subject to this Court's Orders, yet

ICE regularly takes the position in immigration court that EOIR, not USCIS, has jurisdiction over an asylum claim that was properly filed with USCIS, and regularly advocates for the scheduling of an adversarial hearing on that claim in immigration court, rather than agreeing to continuances or other postponement to allow USCIS time to exercise and act on its initial jurisdiction over the claim.

141.    Defendants have maintained a policy and practice that erroneously deprives Plaintiffs and the putative class members of USCIS's statutory initial jurisdiction over their asylum applications, including through USCIS's failure to act upon pending cases, and in continuing to follow the instruction in the 2019 Redetermination Memo that USCIS defer to EOIR's determinations of USCIS's jurisdiction.  ICE not only fails to contest such EOIR action but actively opposes immigration court postponements to allow USCIS to exercise its initial jurisdiction.  These practices are inconsistent with the TVPRA's conferral of "initial jurisdiction" to USCIS in those cases.

## CLASS ALLEGATIONS

~~110.~~142.    Plaintiffs incorporate by reference the preceding allegations of this Complaint.

~~111.~~143.    Plaintiffs bring this action under Federal Rule of Civil Procedure 23(b)(2) on behalf of themselves and a nationwide class of all other persons similarly situated.

~~112.~~144.    Plaintiffs seek to represent the following nationwide class:

All individuals nationwide who prior to the effective date of a lawfully promulgated policy prospectively altering the policy set forth in the 2013 Kim Memorandum  (1) were determined to be an Unaccompanied Alien Child ~~before June 30, 2019~~; and (2) who had filed an asylum application that was pending with United States Citizenship and Immigration Services ("USCIS~~") as of June 30, 2019;~~");_ and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) ~~as of June 30, 2019,~~for whom USCIS has not adjudicated the individual's asylum

36

application on the merits.

113.145.    Plaintiffs are each adequate representatives of the proposed class.

114.146.    The proposed class satisfies the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members is impracticable.

115.147.    On information and belief, there are thousands of individuals who fit within the class.

116.148.    The class meets the commonality requirements of Rule 23(a)(2).  The members of the class are all subject to the 2019 Redetermination Memo and will lose their right to proceed before USCIS on the basis of the new policy.  This lawsuit raises questions of law common to all members of the class, including whether Defendants have violated the class members' due process rights; whether the 2019 Redetermination Memo is arbitrary and capricious under the APA; and whether the 2019 Redetermination Memo is unlawful because it was not promulgated pursuant to notice-and-comment as required by the APA.

117.149.    The proposed class meets the typicality requirements of Rule 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class.  Plaintiffs and the proposed class share the same legal claims, which assert the same substantive and procedural rights under the due process clause, the APA, and the TVPRA.

118.150.    The proposed class meets the adequacy requirements of Rule 23(a)(4). The representative Plaintiffs seek the same relief as other members of the class and have identical interests to the class members in vigorously pursuing that relief.  In defending their own rights, Plaintiffs will defend the rights of all proposed class members fairly and adequately.

119.151.     The proposed class also ~~satisfied~~satisfies Federal Rule of Civil Procedure 23(b)(2).  Defendants have acted on grounds that are generally applicable to each class member.  Injunctive and declaratory relief is thus appropriate with respect to the class as a whole.

### COUNT I
**(Administrative Procedure Act – The 2019 Redetermination Memo is Arbitrary, Capricious, or Otherwise Not in Accordance ~~With~~with Law)**

120.152.     Plaintiffs incorporate by reference the preceding allegations of this Complaint.

121.153.     Title 5, U.S. Code § 706(2) authorizes a court to hold unlawful and set aside final agency action found to be arbitrary, capricious, an abuse of discretion (e.g., irrational), or otherwise not in accordance with law, or in excess of statutory jurisdiction or authority.

122.154.     The asylum policy set forth in the 2019 Redetermination Memo is arbitrary, capricious, an abuse of discretion, not in accordance with law, and is inconsistent with the TVPRA, and therefore in violation of 5 U.S.C. § 706(2).

123.155.     The 2019 Redetermination Memo violates the TVPRA because the asylum rules set forth therein are contrary to its plain language.  The 2019 Redetermination Memo mandates that all asylum officers must evaluate, in all cases, whether an applicant met the statutory definition of a UAC at the time of filing the asylum application, and that all asylum officers must defer to EOIR's determination that USCIS lacks jurisdiction over an asylum application because it is not one filed by a UAC.  This mandate applies in all cases, even where an individual had previously been determined to be a UAC.  These mandates are contrary to the structure and text of the TVPRA, which plainly establish that a child's UAC status determination occurs upon the child's initial contact with a federal government department or agency and is not

subject to redetermination by USCIS~~.~~, and that once filed, USCIS has initial jurisdiction over the application.

~~124.~~156.	The 2019 Redetermination Memo is arbitrary and capricious because, for example, it does not address, nor acknowledge, any of the reasons for adopting the asylum policy in place since 2013 for UACs seeking asylum before USCIS.  Defendants have failed to provide any explanation, much less a reasoned explanation, of how the 2019 Redetermination Memo addresses the issues leading to the adoption of the 2013 Kim Memorandum, or why consistency with Board of Immigration Appeals precedent relates to whether a UAC has subsequently been reunited with a parent or assigned a legal guardian.

~~125.~~157.	The 2019 Redetermination Memo is also arbitrary and capricious because it fails to consider the reliance interests of children, including Plaintiffs, with pending asylum applications who had relied in good faith on the asylum policy in place since 2013.

158.	Notwithstanding the Court's preliminary injunction, Defendants have perpetuated this arbitrary and capricious policy by advocating for EOIR determinations of UAC status, by delaying USCIS determination of cases and thereby allowing EOIR adversarial merits hearings to go forward without any USCIS adjudication.

### COUNT II
### (~~Violation of~~The 2019 Redetermination Memo Violates Due Process)

~~126.~~159.	Plaintiffs incorporate by reference the preceding allegations of this Complaint.

~~127.~~160.	Defendants violate Plaintiffs' ~~Due Process~~due process rights by retroactively applying the asylum rules set forth in the 2019 Redetermination Memo.  Plaintiffs filed for asylum reasonably expecting to benefit from all the protections and rights accorded by the TVPRA to UACs, as outlined by the 2013 Kim Memorandum.  Yet the 2019

Redetermination Memo will actually penalize the Plaintiffs' past conduct taken in reliance on USCIS policy in place since 2013.

128.161.	The asylum policy set forth in the 2019 Redetermination Memo changes the legal landscape for child asylum applicants by radically rewriting the terms under which applicants like the Plaintiffs, who have been determined to be UACs, can seek asylum.  Pursuant to the asylum policy promulgated by the 2013 Kim Memorandum, USCIS had initial jurisdiction over each of the Plaintiffs' asylum applications based on DHS's prior determination that each Plaintiff was a UAC.  Without any meaningful notice to the public, USCIS has changed the rules and stated unequivocally that it will apply its new jurisdictional requirements even to applications that were pending with the agency before the new policy's effective date. Application of the new asylum policy will prevent USCIS from hearing the Plaintiffs' asylum claims, thereby depriving them of the protections Congress provided for UACs in the TVPRA.  By subjecting Plaintiffs to a one-year bar on filing an asylum applications, application of the new asylum policy will render Plaintiffs completely ineligible for asylum unless they are able to carry the burden of establishing one of two narrow exceptions to the bar in immigration court.

129.162.	The 2019 Redetermination MemorandumMemo violates the procedural protections of the Fifth Amendments' Due Process Clause.  The 2019 Redetermination MemorandumMemo is therefore "contrary to constitutional right, power, privilege, or immunity" and invalid under 5 U.S.C. § 706(2)(B).

## COUNT III
### (Failure to Follow APA Procedure with the 2019 Redetermination Memo)

130.163.	Plaintiffs incorporate by reference the preceding allegations of this Complaint.

131.164.      Under the Administrative Procedure Act, an agency must provide "[g]eneral notice of proposed rulemaking . . . published in the Federal Register" whenever the agency seeks to promulgate a rule.  5 U.S.C. § 553(b).  Exempt from this requirement are "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice."  *Id.*  After the agency has published the required notice, "the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments."  *Id.* § 553(c).

132.165.      Defendants did not provide notice of proposed rulemaking, nor did they invite comments from interested persons before issuing the 2019 Redetermination Memo.

133.166.      None of the statutory exceptions to the requirement of notice-and-comment rulemaking is applicable here.  *See* 5 U.S.C. § 553(b).

134.167.      The asylum rules set forth in the 2019 Redetermination Memo are legislative rules, not interpretive rules, because, for example, they effect a substantive change in existing law.

135.168.      The 2019 Redetermination Memo is not a statement of policy that is exempt from public notice, including because it establishes binding rules on all asylum officers without leaving room for any exercise of discretion.

136.169.      The asylum policy set forth in the 2019 Redetermination Memo does not constitute rules of agency organization, procedure, or practice.

137.170.      The May 2019 Policy Memorandum was issued "without observance of procedure required by law" and is invalid under 5 U.S.C. § 706(2)(D).

**COUNT IV**
**(Administrative Procedure Act – Failure to Exercise Initial Jurisdiction is Arbitrary, Capricious, and Otherwise Not in Accordance with Law**

171.   Plaintiffs incorporate by reference the preceding allegations of this Complaint.

172.   Title 5, U.S. Code § 706(2) authorizes a court to hold unlawful and set aside final agency action found to be arbitrary, capricious, an abuse of discretion (e.g., irrational), or otherwise not in accordance with law, or in excess of statutory jurisdiction or authority.

173.   USCIS's adoption of a policy to defer to an EOIR determination as to whether an asylum applicant is a UAC, as specifically announced in the 2019 Redetermination Memo, is arbitrary and capricious because it departs from the 2013 Kim Memorandum without acknowledgement or adequate explanation and is contrary to the TVPRA.  Under the statutory grant of UAC asylum initial jurisdiction in the TVPRA, USCIS must make its own jurisdiction determinations and may not merely defer to another agency's jurisdictional findings.  Under the 2013 Kim Memorandum, UAC asylum applicants are entitled to seek asylum before USCIS, regardless of any EOIR determination to the contrary.

174.   A USCIS policy to defer to an immigration judge's determination as to whether an asylum applicant is a UAC is arbitrary and capricious because it fails to consider the serious reliance interests of asylum applicants who relied on the 2013 Kim Memorandum.

### COUNT V
### (USCIS's and DHS's Acts Fail to Follow APA Procedure)

175.   Plaintiffs incorporate by reference the preceding allegations of this Complaint.

176.   Under the Administrative Procedure Act, an agency must provide "[g]eneral notice of proposed rulemaking . . . published in the Federal Register" whenever the agency seeks to promulgate a rule.  5 U.S.C. § 553(b).  Exempt from this requirement are "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice."  *Id.*  After the agency has published the required notice, "the agency shall give interested persons an

opportunity to participate in the rule making through submission of written data, views, or arguments." *Id.* § 553(c).

177. USCIS did not provide notice of proposed rulemaking, and did not invite comments from interested persons, before engaging in a policy of deferring to an immigration judge as to whether an asylum applicant qualifies as a UAC, as it announced in the 2019 Redetermination Memo.

178. None of the statutory exceptions to the requirement of notice-and-comment rulemaking is applicable here. *See* 5 U.S.C. § 553(b).

179. USCIS's policy was adopted "without observance of procedure required by law" and is invalid under 5 U.S.C. § 706(2)(D).

**PRAYER FOR RELIEF**

For the foregoing reasons, Plaintiffs request that the Court:

a) ~~declare~~Declare that the 2019 Redetermination Memorandum is unlawful;

b) ~~vacate~~Vacate the 2019 Redetermination Memorandum;

c) ~~enjoin~~Enjoin Defendants DHS, USCIS, and the respective Acting Directors from enforcing or applying any aspect of the 2019 Redetermination Memorandum;

d) ~~enjoin Defendants from taking~~Order that Defendants are permanently enjoined and restrained from relying on the 2019 Redetermination Memorandum as a basis to decline jurisdiction over asylum applications, to subject an asylum applicant to the one-year time limit for filing described at 8 U.S.C. § 1158(a)(2)(B), or for any other purpose;

e) Enjoin USCIS from deferring to EOIR determinations in assessing its jurisdiction over asylum applications filed by Plaintiffs and members of the proposed class;

f) Order that, consistent with the terms of the 2013 Kim Memorandum, with respect to Plaintiffs and members of the proposed class, USCIS shall:

    1. Exercise initial jurisdiction over such individuals' asylum applications;

    2. Adjudicate such applications on the merits regardless of whether EOIR has asserted jurisdiction over the asylum claim; and

3.  In conducting such merits adjudications, apply 8 U.S.C. § 1158(a)(2)(E) to hold such applicants exempt from the one-year time limit for filing asylum applications;

g)  Enjoin Defendants ICE and Albence from ICE advocacy during the immigration court removal proceedings of any Plaintiff or member of the proposed class (including EOIR proceedings before immigration judges and members of the Board of Immigration Appeals) seeking any of the following where such individual's asylum application is pending before USCIS:

1.  Determinations of jurisdictional facts pertaining to age or unaccompanied status;

2.  Denials of continuances or other postponements in order to await adjudication of an asylum application that has been or will be filed with USCIS;

3.  EOIR exercise of jurisdiction over any asylum claim where USCIS has initial jurisdiction under the terms of the 2013 Kim Memorandum; or

4.  Otherwise taking the position in such individual's removal proceedings that USCIS does not have initial jurisdiction over the individual's asylum application; and

h)  Order that USCIS will retract any adverse decision already rendered in an individual case applying the 2019 Redetermination Memorandum and reinstate consideration of such case under the 2013 Kim Memorandum by a date certain;

d)i)  Enjoin Defendants from taking adverse adjudicatory or enforcement action against Plaintiffs or members of the proposed class during the pendency of this litigation;

e)j)  grantGrant Plaintiffs their costs in this action, including reasonable attorneys' fees incurred pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

f)k)  awardAward other relief that the Court deems just and proper.

Dated: July 1, 2019

Respectfully submitted,

/s/Brian Burgess

Brian Burgess (Bar No. 19251)
Stephen R. Shaw*
Goodwin Procter LLP
901 New York Avenue, NW
Washington, DC 20001-4432
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com
SShaw@goodwinlaw.com

Elaine Herrmann Blais*
Sarah K. Frederick*
Kevin J. DeJong*
Christie Larochelle*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
SFrederick@goodwinlaw.com
KDejong@goodwinlaw.com
CLarochelle@goodwinlaw.com

*Attorneys for Plaintiffs*

*\* pro hac vice application forthcoming*

Scott Shuchart*
Kids in Need of Defense
1201 L Street, NW, Floor 2
Washington, DC 20005
Phone: 202-318-0595
Fax: 202-824-0702
sshuchart@supportkind.org

Wendy Wylegala*
Kids in Need of Defense
1251 Avenue of the Americas (c/o
Lowenstein Sandler LLP)
New York, NY 10020
Phone: 862-926-2069
Fax: 202-824-0702
wwylegala@supportkind.org

Michelle N. Mendez
Catholic Legal Immigration Network
(CLINIC)
8757 Georgia Avenue, Suite 850
Silver Spring, MD 20910
Phone: 301-565-4824
Fax: 301-565-4824
mmendez@cliniclegal.org

Rebecca Scholtz*
Catholic Legal Immigration Network
(CLINIC)
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 651-962-4833
Fax: 301-565-4824
rscholtz@cliniclegal.org

Kristen Jackson*
Mary Tanagho Ross*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
kjackson@publiccounsel.org
mross@publiccounsel.org

Dated: December 20, 2019

Respectfully submitted,

/s/ Brian T. Burgess

Brian T. Burgess (Bar No. 19251)
Stephen R. Shaw*
Goodwin Procter LLP
901 New York Avenue, NW
Washington, DC 20001-4432
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com
SShaw@goodwinlaw.com

Elaine Herrmann Blais*
Sarah K. Frederick*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
SFrederick@goodwinlaw.com
KDejong@goodwinlaw.com

Scott Shuchart*
Kids in Need of Defense
1201 L Street, NW, Floor 2
Washington, DC 20005
Phone: 202-318-0595
Fax: 202-824-0702
sshuchart@supportkind.org

Wendy Wylegala*
Kids in Need of Defense
1251 Avenue of the Americas (c/o
Lowenstein Sandler LLP)
New York, NY 10020
Phone: 862-926-2069
Fax: 202-824-0702
wwylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
Catholic Legal Immigration Network
(CLINIC)
8757 Georgia Avenue, Suite 850
Silver Spring, MD 20910
Phone: 301-565-4824
Fax: 301-565-4824
mmendez@cliniclegal.org

Rebecca Scholtz*
Catholic Legal Immigration Network
(CLINIC)
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 651-962-4833
Fax: 301-565-4824
rscholtz@cliniclegal.org

Kristen Jackson*
Mary Tanagho Ross*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
kjackson@publiccounsel.org
mross@publiccounsel.org

*Attorneys for Plaintiffs*

* *admitted pro hac vice*