## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

**J.O.P.**, **M.A.L.C.**, **M.E.R.E.**, **K.A.R.C.,** and **E.D.G.,** on behalf of themselves as individuals and on behalf of others similarly situated,

      Plaintiffs,

      v.

**U.S. DEPARTMENT OF HOMELAND SECURITY**, et al.,

      Defendants.

Civil Action No. 8:19-CV-01944-GJH

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.     FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 3

    A.     The TVPRA and USCIS's Policy Memos .......................................... 3

         *1.    USCIS's 2009 Policy* .............................................................. 3

         *2.    USCIS's 2013 Policy* .............................................................. 5

         *3.    USCIS's 2019 Policy* .............................................................. 6

    B.     USCIS Deference to Immigration Judge Jurisdictional Determinations ............... 7

    C.     Plaintiffs' Original Complaint and Requested Relief ............................................ 9

    D.     The Court's TRO and Preliminary Injunction ...................................... 10

    E.     Defendants' Original Motion to Dismiss and Plaintiffs' Amended Complaint .... 11

    F.     Defendants' Second Motion to Dismiss ...................................... 12

II.    ARGUMENT ...................................................................................... 13

    A.     Plaintiffs' Original Claims Are Not Abandoned or Moot ................... 15

    B.     Plaintiffs Have Standing to Challenge USCIS and ICE's Unlawful Practices ..... 16

    C.     Defendants' Motion to Dismiss Should Be Denied Because It Relies on Unsupported Assertions and Extrinsic Evidence Without an Administrative Record ...................................................................................... 19

    D.     Defendants' Motion Provides No Basis for Dismissal ....................... 22

         *1.    Count IV states a claim for relief* ............................................ 23

         *2.    Count V states a claim for relief* ............................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
367 F.3d 212 (4th Cir. 2004) ..................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................13

*Barjo v. Cherian*,
349 F. Supp. 3d 510 (D. Md. 2018) ........................................................................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................13

*Camp v. Pitts*,
411 U.S. 138 (1973) (per curiam) ..........................................................................20

*Children's Hosp. of the King's Daughters, Inc. v. Azar*,
896 F.3d 615 (4th Cir. 2018) ..................................................................................30

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ................................................................................................21

*Dep't of Commerce v. New York*,
139 S. Ct. 2551 (2019) ............................................................................................20

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) ..................................................................................13

*Holbrook v. Gelsinger*,
2018 WL 1114593 (D. Md. Feb. 26, 2018) ............................................................13

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ..................................................................................16

*Jimenez-Cedillo v. Sessions*,
885 F.3d 292 (4th Cir. 2018) ..................................................................................24

*Kenny v. Wilson*,
885 F.3d 280 (4th Cir. 2018) ..................................................................................17

*La Union del Pueblo Entero v. Ross*,
353 F. Supp. 3d 381 (D. Md. 2018) ........................................................................19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................... 16

*Matter of M-A-C-O-*,
    27 I. & N. Dec. 477 (BIA 2018) ............................................................. 7, 14, 27

*Mayor & City Council of Baltimore v. Trump*,
    2019 WL 6970631 (D. Md. Dec. 19, 2019) ....................................................... 20

*In re McConnell*,
    370 U.S. 230 (1962) ............................................................................................... 32

*U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*,
    745 F.3d 131 (4th Cir. 2014) ............................................................................... 21

*Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*,
    334 F. Supp. 3d 697 (D. Md. 2018) .................................................................. 19

*Reed v. Innovative Mgmt. Strategists, Inc.*,
    2017 WL 193528 (D. Md. Jan. 18, 2017) .......................................................... 13

*Romero v. Barr*,
    937 F.3d 282 (4th Cir. 2019) ............................................................................... 27

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ................................................................................................. 19

*SEC v. Chenery Corp.*,
    318 U.S. 80 (1943) ................................................................................................. 20

*Smith v. Md. State Police Dep't*,
    2019 WL 4805680 (D. Md. Sept. 30, 2019) .................................................... 20

*Spokeo, Inc. v. Robbins*,
    136 S. Ct. 1540 (2016) .......................................................................................... 16

*Stone v. Trump*,
    280 F. Supp. 3d 747 (D. Md. 2017) .................................................................. 18

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) .......................................................................................... 17

*Swedish Am. Hosp. v. Sebelius*,
    691 F. Supp. 2d 80 (D.D.C. 2010) .................................................................... 23

*United Student Aid Funds, Inc. v. King*,
    200 F. Supp. 3d 163 (D.D.C. 2016) .................................................................. 23

*Vargus v. McHugh*,
    87 F. Supp. 3d 298 (D.D.C. 2015) ........................................................................23

## Statutes

5 U.S.C. § 706 ...........................................................................................................19, 23

8 U.S.C. § 1158 .......................................................................................................7, 24, 25

8 U.S.C. § 1232 ..............................................................................................................26

TVPRA § 235 .................................................................................................................22

## Other Authorities

8 C.F.R. §§ 208.2(a)-(b), 1003.14(b), 1208.2(a)-(b), 1240.1(a)(1)(ii) ........................................26

Fed. R. Civ. P. 12(b)(6)...............................................................................................13, 20, 21

Plaintiffs brought this litigation to stop Defendants from implementing a policy—the 2019 Redetermination Memo—that would have upended the rights and protections offered to asylum applicants who came to this country as "unaccompanied alien children" ("UACs"). This Court entered a temporary restraining order and later converted it to a preliminary injunction, finding that Plaintiffs were likely to prevail on their claims that the 2019 Redetermination Memo was arbitrary and capricious and enacted without following proper notice-and-comment procedure under the Administrative Procedure Act ("APA"). Despite the injunction, Defendants continue to implement aspects of the enjoined 2019 Redetermination Memo. Based on a policy set forth in the 2019 Redetermination Memo, Defendant U.S. Citizenship and Immigration Services ("USCIS") continues to refuse to exercise jurisdiction over applications that would have been accepted under the agency's 2013 Kim Memo—specifically, by deferring to immigration judge ("IJ") determinations that an asylum application was not one filed by a UAC. In addition, Defendants U.S. Department of Homeland Security ("DHS") and U.S. Immigrations and Customs Enforcement ("ICE") continue to advocate for the policies outlined in the 2019 Redetermination Memo in immigration court proceedings.

Faced with Defendants' continued efforts to implement the enjoined 2019 Redetermination Memo, Plaintiffs amended the complaint to include allegations relating to Defendants' post-injunction conduct. Plaintiffs added new plaintiff E.D.G., whose asylum application USCIS should have adjudicated on the merits under the 2013 Kim Memo (which USCIS should now be following) but denied in deference to an IJ's jurisdictional determination as required by the enjoined 2019 Redetermination Memo. Plaintiffs also added as Defendants ICE and its Acting Director, to eliminate any gquestion that ICE, an arm of DHS, is barred by

the Court's injunction from advocating for redetermining an asylum applicant's UAC status in exactly the manner the enjoined 2019 Redetermination Memo sets forth.

Defendants, in their haste to avoid any further inquiry into the agencies' policy-making process, have filed a motion to dismiss the First Amended Complaint. Their motion is deeply flawed, both procedurally and substantively. When evaluating a motion to dismiss, a court must assess whether a complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Yet Defendants' arguments ignore the allegations in the First Amended Complaint or are premised on their *own* allegations—frequently advanced without any support or citation.

Defendants' argument challenging Plaintiffs' standing should be rejected because the First Amended Complaint includes detailed allegations that establish a substantial risk that Plaintiffs will be deprived of their right to seek asylum before USCIS because of USCIS's unlawful policy—articulated in the 2019 Redetermination Memo—to defer to an IJ's factual finding that the asylum application is not one filed by a UAC. Indeed, one of the named plaintiffs (E.D.G.) *already has* been subjected to this unlawful policy. Defendants' argument for dismissal of Plaintiffs' APA claims should be rejected as it calls for determination of an APA case without production of an administrative record, and they rely on improper extrinsic evidence along with purported "facts" that have absolutely no record support. Finally, Defendants' argument for dismissal of ICE as a defendant should be rejected because Plaintiffs' allegations make clear that ICE is harming Plaintiffs by arguing for application of the enjoined 2019 Redetermination Memo.

For these reasons, as set forth in more detail below, this Court should deny Defendants' motion and allow this case to proceed to a resolution on the merits.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As an initial matter, Plaintiffs note that Defendants' characterization of the facts is unreliable. Defendants fail to provide even the most basic citations to the "facts" upon which they rely. *See, e.g.*, D.I. 101-1 at 6-9. The reason for Defendants' omissions is self-evident: Many of the purported facts that they advance as though were uncontested were not pled in Plaintiffs' First Amended Complaint and are not otherwise in evidence before the Court. Before even having produced an administrative record, Defendants rely upon extrinsic evidence and then overstate that evidence's contents. Plaintiffs here present the facts as pled in their First Amended Complaint, attempt to correct Defendants' mischaracterizations, and engage with extrinsic evidence only to the extent necessary to dispute Defendants' unsupported assertions.

### A. The TVPRA and USCIS's Policy Memos

The 2008 William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA") establishes critical protections for vulnerable immigrant children. As relevant here, the TVPRA provides two procedural protections to UACs seeking asylum. First, it grants USCIS initial jurisdiction over their asylum claims even if they are in removal proceedings before an IJ. This allows applicants to pursue asylum in the first instance through a non-adversarial administrative interview with a trained asylum officer within USCIS, a process more appropriate for traumatized young applicants. D.I. 91 ¶ 6. Second, the TVPRA provides an exemption to UACs from the one-year filing deadline that otherwise applies to asylum applicants. D.I. 91 ¶ 7.

Since Congress enacted the TVPRA, USCIS has issued three policy memos—in 2009, 2013, and 2019—instructing asylum officers on the circumstances for exercising jurisdiction over asylum applications filed by UACs in removal proceedings.

#### 1. USCIS's 2009 Policy

USCIS's original policy ("2009 Policy") instructed asylum officers to make an initial determination as to USCIS's jurisdiction for all asylum applications filed by UACs in removal proceedings. D.I. 91 ¶ 76. Under the 2009 Policy, asylum officers were to determine whether, at the time of filing, the child was under 18 years of age and unaccompanied. *Id.* Thus, even if another component of DHS had already determined a child to be a UAC, the 2009 Policy directed asylum officers to redetermine UAC status during the asylum interview, which was often time-intensive and difficult. *Id*. ¶ 82.

The 2009 Policy stated that its procedures "have been established in consultation with Immigration and Customs Enforcement and the Executive Office for Immigration Review ["EOIR"]." D.I. 91-2 at 1. The 2009 Policy did *not* instruct asylum officers to defer to an IJ's jurisdictional determination; instead, it stated that USCIS may have jurisdiction even when the individual's case was pending at the Board of Immigration Appeals ("BIA") or federal court, if that individual had previously filed for asylum while a UAC. *Id.* at 2. Thus, although Defendants claim (without any record support) that while the 2009 Policy was in effect, USCIS would defer to an IJ's finding that an application was not filed by a UAC, D.I. 101-1 at 6,[1] in fact, the 2009 Policy did not establish any such policy of deference to EOIR.

---

[1] Defendants provide no citation for this assertion. Elsewhere, Defendants rely on a declaration they submitted along with their opposition to Plaintiffs' November 22, 2019 Motion to Enforce the Preliminary Injunction (the "Sicard Declaration," D.I. 101-2). *See, e.g.*, D.I. 101-1 at 12. Not only is this document outside the pleadings, *see infra* pp. 23-24, but the Sicard Declaration does not specify when the alleged deference practice began and does not support Defendants' assertion that USCIS "has always deferred to [] an IJ determination" since 2009. D.I. 101-1 at 14.

The 2009 Policy undermined key objectives of the TVPRA, as was later acknowledged by the Citizenship and Immigration Services Ombudsman in a 2012 report. D.I. 91 ¶ 77; *see* D.I. 91-3. The report recognized:

> [The] TVPRA's procedural and substantive protections were designed to remain available to UACs throughout removal proceedings, housing placement, and the pursuit of any available relief. Subjecting a child seeking asylum to multiple UAC determinations as is required by USCIS' temporary guidance appears at odds with the TVPRA's express purpose, namely, to provide timely, appropriate relief for vulnerable children.

D.I. 91 ¶ 80 (quoting D.I. 91-3 at 4). The report outlined numerous problems flowing from the 2009 Policy, and thus recommended that USCIS accept jurisdiction of asylum applications filed by children whom a federal agency had previously determined to be UACs. D.I. 91 ¶¶ 82, 84. Although the report recommended that USCIS accept jurisdiction when an IJ referred a UAC case to USCIS, it did not recommend that USCIS should defer to any agency's determination that a particular individual was *not* a UAC. *But see* D.I. 101-1 at 9 n.2 (mischaracterizing the report as recommending a general policy of deference to IJ actions).

### 2. USCIS's 2013 Policy

The year after the Ombudsman's report, USCIS adopted a new policy—the 2013 Kim Memo. Under the 2013 Kim Memo, USCIS would exercise initial jurisdiction over asylum claims of those whom DHS had previously determined to be UACs as long as that determination remained in place when the child initially applied for asylum—regardless of whether the applicant had turned 18 or had been reunited with a parent or appointed a legal guardian before applying for asylum. D.I. 91 ¶¶ 8, 88. This rule was subject to a limited exception in which the UAC determination had been terminated, before the child filed for asylum, by an intervening "affirmative act" of the Department of Health and Human Services ("DHS"), or by DHS

component agencies ICE or U.S. Customs and Border Protection.[2]  D.I. 91 ¶¶ 9, 88; D.I. 91-4 at 2.

The 2013 Kim Memo does *not* authorize USCIS to reject jurisdiction based on an affirmative act of EOIR to redetermine UAC status—nor to defer to EOIR jurisdictional determinations in any other way.  *See* D.I. 91 ¶¶ 89-90.  In fact, under the 2013 Kim Memo, USCIS exercised its initial jurisdiction *regardless* of whether an IJ had made findings or determinations with respect to the statutory UAC definition or the merits of the asylum claim.  D.I. 91 ¶¶ 10, 89-91.

As late as May 20, 2019, USCIS confirmed to public stakeholders that the asylum policy and procedures set forth in the 2013 Kim Memo remained in effect.  D.I. 91 ¶ 92.

### 3. USCIS's 2019 Policy

Without following notice-and-comment procedures under the APA, USCIS worked a drastic reversal of the 2013 Kim Memo with the 2019 Redetermination Memo.  D.I. 91 ¶¶ 11-12.  The 2019 Redetermination Memo mandates that asylum officers make an independent factual inquiry to redetermine whether an applicant met the statutory definition of a UAC on their filing date—even if the applicant had filed years earlier when the 2013 Policy was in effect.  D.I. 91 ¶ 13.  Under the 2019 Redetermination Memo, if USCIS determines that the individual no longer satisfies the UAC definition on the date the individual applied for asylum, USCIS must decline jurisdiction over the asylum application and conclude that the applicant was not exempt from the

---

[2] The 2013 Kim Memo does not define or elaborate on what constitutes an "affirmative act." *See* D.I. 91 Ex. 4.  Defendants assert that "if . . . ICE had examined the evidence about the applicant's age and determined he was over 18 before filing the asylum application (such as if ICE determined the alien was over 18 and therefore detained him as an adult), the 2013 [Kim] Memo recognized that ICE's new determination would void the prior UAC factual findings." D.I. 101-1 at 10-11.  Defendants' interpretation of "affirmative act" to include an adult detention, however, is not found in the 2013 Kim Memo—nor in any other evidence before this Court.

one-year filing deadline for asylum applications.  *Id.*  The 2019 Redetermination Memo also requires that if EOIR had explicitly determined that USCIS did not have jurisdiction over an asylum application because it was not one filed by a UAC, the asylum officer must defer to that determination.  D.I. 91 ¶ 14.

The 2019 Redetermination Memo asserts that its new asylum policy is necessary to bring USCIS practice in line with a precedential BIA decision regarding jurisdiction over asylum applications, *Matter of M-A-C-O-*, 27 I. & N. Dec. 477 (BIA 2018).  D.I. 91 ¶ 105.  But, as the 2019 Redetermination Memo acknowledges, *Matter of M-A-C-O-* does not divest USCIS of its authority to determine whether it has jurisdiction over an asylum application.  D.I. 91 ¶ 106.  Nor does *Matter of M-A-C-O-* mandate any changes to USCIS policy or invalidate the 2013 Policy.  D.I. 91 ¶ 107.  Despite this, the 2019 Redetermination Memo—unlike the 2009 and 2013 Policies—requires asylum officers to defer to explicit EOIR determinations that USCIS does not have jurisdiction over an asylum application because it is not one filed by a UAC.  D.I. 91 ¶ 106.

### B.  USCIS Deference to Immigration Judge Jurisdictional Determinations

The TVPRA's grant to USCIS of "initial jurisdiction over any asylum application filed by" a UAC, 8 U.S.C. § 1158(b)(3)(C), creates a statutory exception to the general rule that an IJ has exclusive jurisdiction over asylum applications filed by individuals in removal proceedings.  D.I. 101-1 at 15.  Defendants insist that an IJ's determinations of UAC status have long been conclusive of whether this statutory exception applies, but they produce an unsupported, skewed history of USCIS's allegedly varied practices of deference to EOIR.  *Id.* at 14-16.

Defendants fixate on the fact that none of the three USCIS memoranda—2009, 2013, 2019—explicitly divest IJs of their authority to determine their own jurisdiction.  D.I. 101-1 at 15.  But this is beside the point, because it was *Congress* who divested IJs of authority to assert initial jurisdiction over "any asylum application filed by" a UAC, effective March 2009.  This

jurisdiction was granted to USCIS, and USCIS has accordingly interpreted its authority through its implementing memoranda.

Under the 2013 Kim Memo, USCIS has jurisdiction based on a prior UAC determination "even if there appears to be evidence that the applicant may have turned 18 years of age or may have reunited with a parent or legal guardian" before applying for asylum. D.I. 91-4 at 2. Ms. Sicard's claim that in 2013 IJs were "generally not conducting any fact-finding into whether the individual was a UAC on the filing date," D.I. 88-1 ¶ 9, is unsurprising: Under the 2013 Kim Memo, USCIS's jurisdiction does not turn on an IJ's determination whether an asylum applicant is a UAC.

Nevertheless, Defendants insist that "USCIS has always deferred to" any IJ determination of USCIS jurisdiction. D.I. 101-1 at 6, 14. According to Defendants, although such IJ determinations were few under the 2009 Policy, they allegedly increased at some unspecified time after 2013. D.I. 101-1 at 6, 16; D.I. 101-2 ¶ 9. Yet neither Defendants' brief, nor the declaration they point to, estimates or documents actual instances when USCIS was confronted with conflicting IJ jurisdictional determinations. D.I. 101-1 at 5-6, 9-16; D.I. 101-2 ¶¶ 9-16. Defendants concede that, at least as of April 2013 (the date of USCIS's response to the Ombudsman's September 2012 report), "there were not generally IJ jurisdictional determinations that USCIS could simply accept." D.I. 101-1 at 9 n.2. And while Defendants refer to a statement made by the agency in 2017 asserting that USCIS "currently defers" to an IJ finding, D.I. 101-1 at 12, D.I. 101-2 ¶¶ 13-14, subsequent statements call that assertion into question: As recently as February 2019, a supervisory asylum officer advised that USCIS's current procedures on jurisdiction "still come from the 2013 Ted Kim memo . . . . These are the procedures that are at issue for EOIR in the MACO decision but which we still follow." D.I. 78-1 at 1. Moreover, in

connection with their pending Motion to Enforce the Preliminary Injunction, Plaintiffs have

furnished sworn declarations by two former asylum officers, both of whom were responsible for

training others and both of whom document that deference to EOIR jurisdictional determinations

was not policy within the agency. Jennifer Bibby-Girth, addressing the time between the

issuance of the 2013 Kim Memo and September 2013, stated:

> I was told and I taught that immigration judges did not have the authority to make
> any determinations about UAC status or to terminate UAC findings. I was never
> told and I never taught that if an immigration judge made a determination that
> USCIS lacked jurisdiction over an asylum application because it was not one filed
> by a UAC, the asylum officer would defer to that determination.

D.I. 82 ¶ 6. Lauren Esterle likewise stated that:

> from June 2016 to January 2019, I was aware of no USCIS trainings, verbal
> instructions, or written materials that allowed, much less required, asylum officers
> to defer to a determination by EOIR that USCIS lacked jurisdiction over an
> asylum application because it was not one filed by a UAC.

D.I. 81 ¶ 12. Even Defendants recognize that "[t]he 2013 memorandum was silent as to USCIS

deferring to IJ determinations that an application was not filed by a UAC." D.I. 101-1 at 9 n.2.

In that light, assertions from Defendants that a USCIS practice or policy of deference to

IJ determinations "arose long before" the 2019 Redetermination Memo, D.I. 101-1 at 16, are

untethered to the terms of USCIS's 2009 or 2013 policies. At the very most, Defendants'

assertions—even if credited—may suggest that USCIS's compliance with its own 2013 Kim

Memo was inconsistent and had already begun to erode even before it published the 2019

Redetermination Memo.

## C.     Plaintiffs' Original Complaint and Requested Relief

Plaintiffs brought this class action to challenge Defendants' sudden shift in policy, which

retroactively stripped Plaintiffs and the proposed class members of critical asylum protections.

The 2019 Redetermination Memo deprives Plaintiffs of their right to seek asylum before USCIS and instead directs that they face an adversarial process in which an ICE prosecutor subjects them to cross examination and advocates for deportation. D.I. 1 ¶ 17. Under the 2019 Redetermination Memo, Plaintiffs may also lose their eligibility to seek asylum entirely by retroactive imposition of the one-year filing deadline. *Id.* Even though Plaintiffs, in reliance on the 2013 Kim Memo, filed their asylum applications while that policy was in effect, the 2019 Redetermination Memo applies retroactively to them and requires USCIS to reject their claims for lack of jurisdiction. D.I. 1 ¶ 97.

Plaintiffs' initial Complaint sought the Court's intervention so that they and others similarly situated may exercise their right to seek asylum before USCIS instead of being limited to an adversarial hearing before an IJ. D.I. 1 ¶ 14. In their prayer for relief, Plaintiffs sought a declaration that the 2019 Redetermination Memo is unlawful, an order that the 2019 Redetermination Memo be vacated, and an injunction to prevent Defendants from enforcing or applying any aspect of the 2019 Redetermination Memo. *Id.* at 31.

## D.    The Court's TRO and Preliminary Injunction

On August 2, 2019, the Court granted Plaintiffs' Motion for Temporary Restraining Order, which enjoined Defendants from implementing any aspect of the 2019 Redetermination Memo, and on October 15, 2019, the Court converted the order into a preliminary injunction by Plaintiffs' unopposed motion. D.I. 55; D.I. 71. In granting the TRO and preliminary injunction, the Court held that Plaintiffs are likely to succeed on their claims that (1) "USCIS failed to engage in the required notice-and-comment procedure for rulemaking," D.I. 54 at 10-11, and (2) "that the [2019] policy is arbitrary and capricious in violation of the APA because USCIS failed to consider serious reliance interests engendered by the agency's longstanding prior policy." *Id.* at 12-13. The Court did not address Plaintiffs' due process claim, but only because

Defendants consented to an injunction under that claim at the July 19, 2019 TRO hearing, evidently recognizing that the 2019 Redetermination Memo's retroactive application was indefensible. D.I. 54 at 8.

The Court's Order enjoined Defendants "from applying the asylum eligibility policy, as set forth in USCIS's May 31, 2019 memorandum, to bar individuals previously determined to be unaccompanied alien children ('UACs') from seeking asylum before the agency." D.I. 55 at 1; D.I. 71 at 1. Defendants are also "enjoined and restrained from rejecting jurisdiction over the application of any UAC . . . under the [TVPRA] whose application would have been accepted under the USCIS policy predating the May 31, 2019 memorandum." D.I. 55 at 1; D.I. 71 at 2.

### E.    Defendants' Original Motion to Dismiss and Plaintiffs' Amended Complaint

On November 13, 2019—after the parties' attempts to resolve this litigation stalled— Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment based on the premise that "plaintiffs have obtained everything they sought." D.I. 73-1 at 7. On December 20, 2019, Plaintiffs opposed that motion, which remains pending. D.I. 95. That same day, Plaintiffs also amended their Complaint as of right to name additional parties and to elaborate on allegations with respect to USCIS and ICE policies and practices that result in the ceding of USCIS statutory initial jurisdiction to EOIR.[3]

---

[3] In the interim, on November 22, 2019, Plaintiffs filed a Motion to Enforce the Preliminary Injunction on behalf of E.D.G., a young person later named as a plaintiff in the First Amended Complaint. D.I. 75; D.I. 91 ¶¶ 135-38. The motion argues that Defendants are violating this Court's order by rejecting jurisdiction over asylum applications based on the 2019 Redetermination Memo—specifically, in E.D.G.'s case, by rejecting jurisdiction based on an "affirmative act" by EOIR that post-dated E.D.G.'s filing for asylum with USCIS. D.I. 76 at 1. That motion, opposed by Defendants, remains pending. Plaintiffs' pending motion is highly relevant to the First Amended Complaint, as it presents a specific application of the 2019 Redetermination Memo that Plaintiffs challenge, and relevant here in that it demonstrates Defendants are not following the 2013 Kim Memo.

The First Amended Complaint adds Plaintiff E.D.G., who, like the original Plaintiffs, exercised his right to pursue asylum before USCIS under the 2013 Policy; however, E.D.G. was ordered removed by an IJ while still awaiting a decision from USCIS on the merits of his asylum claim. D.I. 91 ¶¶ 52-54. The First Amended Complaint also names as Defendants ICE and its Acting Director, although Plaintiffs regard both as bound by the Court's orders directed at DHS, of which ICE is an instrumentality. *Id.* ¶¶ 60-61.

Supplementing the allegations of the original Complaint, the First Amended Complaint explains that the 2019 Redetermination Memo expressly instructs USCIS to defer to any EOIR determination that USCIS lacks jurisdiction over an asylum application because it is not one filed by a UAC, while the 2013 Kim Memo contained no such directive. *Id.* ¶¶ 10, 14-18, 89-91. The First Amended Complaint alleges that such deference is unlawful for the same reasons that gave rise to this Court's preliminary injunction. *Id.* In addition, the First Amended Complaint alleges that Defendants ICE and Albence have caused or permitted a practice whereby ICE attorneys, appearing as prosecutors in immigration court proceedings, advocate for EOIR to assert jurisdiction over an asylum claim filed with USCIS by a child previously determined to be a UAC. *Id.* ¶¶ 18, 22, 108. In so doing, these Defendants perpetuate the unlawful 2019 Redetermination Memo and violate this Court's injunctions by undermining USCIS's exercise of its initial jurisdiction over asylum claims.

### F. Defendants' Second Motion to Dismiss

On January 3, 2020, Defendants filed a second Motion to Dismiss, this time aimed at the new parties and allegations introduced in the First Amended Complaint. D.I. 101. Though the motion cursorily cites Federal Rules of Civil Procedure 12 and 56, *id*., its accompanying memorandum contains no legal standard section nor any attempt to justify its moving for summary judgment in the absence of an administrative record, *see* D.I. 101-1. It erroneously

contends that the First Amended Complaint "largely omits the operative allegations from the original complaint," and fails to recognize that the new allegations regarding DHS's policy of deferring to EOIR's jurisdictional determinations implicate *all* of the First Amended Complaint's counts—including Count II's due process claim. D.I. 101-1 at 3. As noted above, the motion makes bald factual assertions unsupported by *any* evidence before the Court, and to the extent it cites to the Sicard Declaration it distorts that declaration's contents. D.I. 101-1 at 3-15. It also introduces additional extrinsic evidence in the absence of an administrative record, this time in the form of a DHS brief filed with the BIA in 2018. *See* D.I. 101-3.

## II.    ARGUMENT

"The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint." *Holbrook v. Gelsinger*, 2018 WL 1114593, at *2 (D. Md. Feb. 26, 2018) (Hazel, J.) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, when evaluating a motion to dismiss, a court must assess whether a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In practice, then, whether a complaint survives a motion to dismiss depends on "allegations in the complaint and necessary documents attached or integral to that complaint." *Reed v. Innovative Mgmt. Strategists, Inc.*, 2017 WL 193528, at *4 (D. Md. Jan. 18, 2017).

Defendants' motion ignores these well-settled rules in favor of a motion to dismiss premised on their *own* allegations—ones frequently advanced without any support or citation. In some instances, Defendants make claims about the sufficiency of Plaintiffs' allegations that are demonstrably untrue. For example, they claim that Plaintiffs have abandoned the allegations in the original complaint, which in fact remain in the First Amended Complaint. They also argue

that Plaintiffs (though they discuss only the four original Plaintiffs and not Plaintiff E.D.G.) did not adequately allege standing, though again the First Amended Complaint shows this to be untrue. Where Defendants make such representations that are contradicted by the clear record in this case, they should not be credited.

More perniciously, Defendants attempt to create an alternative account of the facts surrounding Plaintiffs' First Amended Complaint by relying on a declaration they created for purposes of this litigation and a brief that ICE filed in a 2018 BIA appeal. Defendants' reliance on such extrinsic materials is inappropriate at the motion to dismiss stage and this Court should not consider them. If these materials are disregarded, then all that remains in Defendants' motion are unsupported representations by Defendants' counsel. Compounding this absence of support, Defendants inappropriately seek dismissal of Plaintiffs' APA claims without the benefit of an administrative record, the *sine qua non* against which APA claims must be measured.

These failings suffice to warrant denying Defendants' motion. But even taken on their merits, they should be rejected. Defendants argue that USCIS has had a practice of deferring to IJ jurisdictional determinations; even if true, Defendants' previous failure to comply with the TVPRA and USCIS's binding policy does not justify their continuing refusal to comply with the TVPRA and USCIS's binding policy. Defendants argue that their hand was forced by the BIA's decision in *M-A-C-O-*, but they have previously acknowledged that this decision was not determinative of USCIS's authority. And although Defendants contend that ICE is not a proper defendant, its conduct in advocating that IJs exercise jurisdiction at the expense of USCIS's initial jurisdiction clearly acts to subvert the preliminary injunction issued by this Court.

Defendants' motion is procedurally improper in multiple respects and, even taken on its merits, fails to establish that Plaintiffs' First Amended Complaint should be dismissed. This Court should accordingly deny the motion.

## A.     Plaintiffs' Original Claims Are Not Abandoned or Moot

Defendants assert that "[t]he amended complaint largely omits the operative allegations from the original complaint," suggesting that Plaintiffs have abandoned their original claims. D.I. 101-1 at 3. To the contrary, Plaintiffs have not abandoned any claims as the First Amended Complaint continues to include all relevant allegations from the original complaint. *See* D.I. 91; D.I. 99 (red-lined version of amended complaint versus original complaint).

Plaintiffs' original claims are also not moot. According to Defendants, Plaintiffs' original claims are moot because "[t]he parties agreed to temporary restraining orders (TROs) and a preliminary injunction (PI), essentially concluding that aspect of the case." D.I. 101-1 at 3. Defendants raised this argument before in their original Motion to Dismiss or, in the Alternative, for Summary Judgment, which was directed at the original complaint. D.I. 73. As set forth in Plaintiffs' opposition to that motion, the original complaint was *not* moot even after this Court granted the TROs and preliminary injunction. D.I. 95. Even after these orders were entered, the parties "have continued to dispute multiple aspects of the policy's scope and what it would mean to restore the policy that predated the unlawful 2019 Redetermination Memo." D.I. 95 at 6. As a case in point, Plaintiffs found it necessary to file a motion to enforce the judgment in light of Defendants' continued implementation—in spite of the Court's TROs and preliminary injunction—of the 2019 Redetermination Memo's policy of deferring to IJ determinations regarding UAC status. D.I. 75. Plaintiffs dispute whether this practice predates the 2019 Redetermination Memo, but even if it did, it is inconsistent with the 2013 Kim Memo. *See* D.I. 76 at 2-3. Further, Defendants have not rescinded the 2019 Redetermination Memo and appear

still to oppose a finding by this Court that it is either substantively or procedurally unlawful (which would have preclusive effect), all key elements of Plaintiffs' requested relief. *See* D.I. 95 at 10-12.

Defendants' previous motion to dismiss and Plaintiffs' motion to enforce are both still pending before this Court. Plaintiffs' First Amended Complaint still maintains all its previous claims and Plaintiffs have not yet received adequate relief, and therefore the claims raised by Plaintiffs in the original complaint are not moot.

### B. Plaintiffs Have Standing to Challenge USCIS and ICE's Unlawful Practices

Defendants contend that the four originally-named Plaintiffs lack standing because an IJ has not yet made a UAC determination and USCIS has not yet acted on their asylum applications.[4] D.I. 101-1 at 16. Although Defendants discuss only injury-in-fact, they assert that the First Amended Complaint "fails to allege the three elements of standing" as to these four Plaintiffs. Defendants are wrong. The original four Plaintiffs each have standing because they are in removal proceedings in immigration court, and each faces a substantial risk that USCIS will unlawfully defer to an IJ's factual finding that they are no longer a UAC, depriving them of their right to seek asylum before USCIS.

To establish standing, "a plaintiff must allege that they have: '(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Hutton v. Nat'l Bd. of Examiners in Optometry,*

---

[4] Defendants appear to raise a standing argument only with respect to Counts IV and V of the First Amended Complaint, not the original three counts that were also in Plaintiffs' original complaint. The Court has already issued a TRO, and later a preliminary injunction, enjoining Defendants from applying the 2019 Redetermination Memo. D.I. 55; D.I. 71. Defendants never asserted that Plaintiffs lacked standing to seek a TRO or a preliminary injunction enjoining Defendants from applying the 2019 Redetermination Memo, and therefore should not be heard to complain that Plaintiffs lack standing to bring any of the claims asserted in the original complaint.

*Inc.*, 892 F.3d 613, 619 (4th Cir. 2018) (quoting *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016)). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 620 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Moreover, "[a]n allegation of future injury may suffice if . . . there is a substantial risk that the harm will occur." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)).

Each of the four original Plaintiffs has alleged facts that establish a substantial risk that they will be deprived of their right to seek asylum before USCIS because of USCIS's new unlawful policy to defer to an IJ's factual finding that they are no longer a UAC. For example, Plaintiff M.E.R.E. alleges that he was determined by DHS to be a UAC and, in reliance on the 2013 Kim Memo, he first sought other forms of protection from removal before applying to USCIS for asylum after reaching the age of 18. D.I. 91 ¶¶ 120-21. M.E.R.E. further alleges that he remains in removal proceedings before an IJ, where an ICE prosecutor could advocate for EOIR jurisdiction and against USCIS jurisdiction. *Id.* ¶ 122. If the IJ complies with ICE's request, then USCIS would, under its current avowed practice, reject jurisdiction over M.E.R.E.'s asylum application under the 2019 Redetermination Memo and Defendants' practice of deferring to IJ determinations in furtherance of that policy. *Id.* M.E.R.E. alleges that if this occurs, he will lose the protections associated with USCIS jurisdiction over his asylum application, will be subject to an adversarial process in immigration court, will be forced to wait

even longer for a determination on his asylum claim, which has been pending since March 2018, and will be prevented from continuing his education during this delay.[5]  *Id.*

These allegations establish a "substantial risk" of injury even though the four originally-named Plaintiffs' asylum applications pending before USCIS have not (yet) been rejected in deference to an IJ determination.  Even where it is possible that a policy *may* not be applied to a particular plaintiff, that plaintiff still has standing if there is a substantial risk that the policy *may* injure them.  In *Stone v. Trump*, 280 F. Supp. 3d 747 (D. Md. 2017), for instance, a group of transgender active-service military members challenged an executive order banning transgender individuals from joining the military that did not immediately affect current military, but called for future implementation of the order.  *Id.* at 752-59.  Defendants in that case argued that there was no guarantee that the plaintiffs would be subject to this as-yet-unimplemented policy.  *Id.* at 763.  However, the court recognized that "[w]hile it is possible, as Defendants contend, that none of the Plaintiffs will be discharged [at the first opportunity], they certainly face a substantial risk of being discharged solely on the basis of being transgender."  *Id.*

Similarly here, Plaintiffs have not *yet* received an IJ determination that they are not UACs, at the urging of ICE, and USCIS has not *yet* declined jurisdiction over their asylum applications on that basis.  But Defendants' current practice, as exemplified by E.D.G.'s own circumstances and as Defendants now claim to be their policy, shows that this danger is far from hypothetical.  Under the facts of *Stone*, it is as if the military in that case were *already*

---

[5] The other three originally-named Plaintiffs present similar allegations that, if Defendants are permitted to continue their current practice of implementing the 2019 Redetermination Memo through informal channels by asking IJs to exercise jurisdiction and then deferring to that determination, they will suffer injuries in fact through denial of USCIS jurisdiction and its attendant protections as well as extended delays.  *See id.* ¶¶ 126-27 (M.A.L.C.); 130-31 (K.A.R.C.); 134 (J.O.P.).

discharging transgender service members and simply had not yet discharged the plaintiffs. In this case, where Defendants are actively engaging in the conduct that would injure Plaintiffs, Plaintiffs have alleged an imminent, substantial risk of injury sufficient to establish standing.

Finally, even if the four originally-named Plaintiffs had no standing, Defendants' argument lacks merit because there is no dispute that Plaintiff E.D.G. has standing. USCIS has *already* unlawfully deferred to an IJ's finding that E.D.G. was not a UAC at the time he filed his application, and rejected his asylum application for that reason. *See* D.I. 76. Under Supreme Court precedent, "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *La Union del Pueblo Entero v. Ross*, 353 F. Supp. 3d 381, 390 (D. Md. 2018) (quoting *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n. 2 (2006)). Because E.D.G. has standing, this Court need not determine whether the rest do as well. *See, e.g.*, *La Union del Pueblo Entero*, 353 F. Supp. 3d at 390-91 ("Because the seven Individual Plaintiffs have sufficiently pled standing's three elements, the Court need not consider whether the Organizational Plaintiffs have standing.").

### C. Defendants' Motion to Dismiss Should Be Denied Because It Relies on Unsupported Assertions and Extrinsic Evidence Without an Administrative Record

Defendants' motion is procedurally improper and should be denied on that basis alone. Among other failings, it seeks determination of an APA case without production of an administrative record, it relies on improper extrinsic evidence in what is styled as a motion to dismiss, and it relies on "facts" that are not even supported by that improper evidence.

Four of the five counts in the First Amended Complaint are challenges under the APA, and Defendants address their motion only to these four claims. However, this Court does not have before it the record that is necessary to resolve an APA claim, nor do Plaintiffs have access to the record in order to respond to any potential summary judgment motion. "Generally, claims

brought under the APA are adjudicated without a trial or discovery, on the basis of an existing administrative record[.]" *Outdoor Amusement Bus. Ass'n v. Dep't of Homeland Sec.*, 334 F. Supp. 3d 697, 711 (D. Md. 2018). This principle is in keeping with the APA's review provision, which mandates that "[t]he reviewing court shall . . . review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Accordingly, "'the focal point for judicial review' under the APA 'should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Mayor & City Council of Baltimore v. Trump*, 2019 WL 6970631, at *6 (D. Md. Dec. 19, 2019) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam)).

Effectively ignoring this established body of law, Defendants seek disposition of the four APA counts here without producing *any* administrative record. As a result, this Court does not have the record before it that is necessary to "evaluat[e] the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019). That is fatal to Defendants' motion, because "in order to permit meaningful judicial review, an agency must disclose the basis of its action." *Id.* (citation and internal quotation marks omitted); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.").

Compounding the procedural flaws of their premature motion to dismiss, Defendants rely on improper extrinsic materials. In general, a court "may not consider extrinsic evidence when ruling on a motion to dismiss pursuant to Rule 12(b)(6)," but must instead look only to the sufficiency of the complaint's allegations. *Smith v. Md. State Police Dep't*, 2019 WL 4805680, at *4 (D. Md. Sept. 30, 2019); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367

F.3d 212, 234 (4th Cir. 2004) ("[A]s a general rule extrinsic evidence should not be considered at the 12(b)(6) stage[.]").  In blatant disregard of this black-letter rule, Defendants repeatedly put forward factual assertions that are highly disputed, relying only on a post-hoc declaration prepared for this litigation by asylum officer Kimberly Sicard and a supplemental brief filed in an individual's asylum appeal to the BIA in 2018.  D.I. 101-2; D.I. 101-3.  That is obviously improper under Rule 12(b)(6).  *See U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

To the extent Defendants are really seeking premature summary judgment and relying on the declaration and brief as a substitute for the administrative record,[6] they also contradict settled law.  The Supreme Court made this clear almost fifty years ago in a foundational administrative law case, holding that "litigation affidavits" provide "an inadequate basis for review" under the APA because they offer only "'post hoc' rationalizations" of agency conduct and "clearly do not constitute the 'whole record' compiled by the agency."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971).  Defendants cite *Overton Park* in passing, D.I. 101-1 at 21, but inexplicably ignore that the decision forecloses their attempt to resolve this case on a single declaration prepared for litigation.  401 U.S. at 419 (remanding to the district court to conduct a review "based on the full administrative record that was before the Secretary at the time he made his decision").

---

[6] In their motion, Defendants state that "[t]he Due Process claims in count II do not appear to relate to this aspect of the amended complaint," namely, USCIS deference to an IJ determination. D.I. 101-1 at 3.  Because Defendants address their entire motion to the question of whether USCIS deference to an IJ determination is proper, they appear not to intend to challenge the Due Process count.  Plaintiffs do not, however, concede that the Due Process count does not extend to the question of USCIS deference to an IJ's determination that an individual is not a UAC.

Moreover, Defendants' arguments and factual recitations repeatedly stray beyond even the (improper) Sicard Declaration, leaving them without *any* evidentiary support. For example, Defendants purport to describe USCIS's rationale for adopting the 2019 Redetermination Memo, D.I. 101-1 at 13-14, which is not even a subject of the Sicard Declaration. Plaintiffs' action directly challenges whether USCIS's explanations for its policy shifts were both adequate and genuine. D.I. 91 ¶¶ 152-58, 171-74. Defendants cannot defeat those allegations based on mere *ipse dixit* from litigation counsel. In short, there is clearly no basis for granting summary judgment on the current, entirely undeveloped record. *Cf. Barjo v. Cherian*, 349 F. Supp. 3d 510, 516-17 (D. Md. 2018) (declining to convert motion to dismiss to one for summary judgment because "Defendants included with their 12(b)(6) Motion three affidavits and two exhibits presenting their own version of events, but discovery has yet to even begin").

### D. Defendants' Motion Provides No Basis for Dismissal

To the extent the Court even considers Defendants' arguments for dismissal in the face of the evident procedural failings of their motion, those arguments lack merit and provide no basis to dismiss the new claims asserted in the First Amended Complaint.

Rather than focusing on the precise counts asserted in the First Amended Complaint, Defendants purport to distill the allegations to "three questions," D.I. 101-1 at 18, and then respond without regard to the record or the governing legal standards. By proceeding in this manner, Defendants advance arguments in defense of USCIS policy that, even on their own terms, provide no possible basis for dismissal. The First Amended Complaint includes five counts that challenge the 2019 Redetermination Memo, in whole or in part. Defendants focus only on Counts IV and V,[7] which were added in the First Amended Complaint and specifically

---

[7] Defendants state in their motion that "[t]he counts in the amended complaint that appear to relate to the IJ UAC deferral practice are counts I, III, IV, and V." D.I. 101-1 at 3. While

target the USCIS policy of deferring to IJs when determining the agency's own "initial jurisdiction" to adjudicate asylum claims filed by UACs.  TVPRA § 235(d)(7).  Thus, Defendants offer no basis for dismissing the first three counts.  Even as to the new counts, Defendants' arguments are misguided and, as discussed above, wholly inappropriate on a motion to dismiss.

### 1.    *Count IV states a claim for relief*

Count IV challenges USCIS's deference policy that was announced in the 2019 Redetermination Memo as unlawful under the APA both because (1) it is contrary to the TVPRA, and (2) is arbitrary and capricious because it departs from the 2013 Kim Memo without adequate acknowledgement or explanation.  D.I. 91 ¶ 173.  Thus, to support their claim to dismiss this count, Defendants must show that the First Amended Complaint does not state a claim under *either* APA theory.  But as discussed, *supra* pp. 19-20, Defendants' attempt to dismiss an arbitrary and capricious challenge is clearly premature.  Such a claim must be reviewed based on the "*whole record*," 5 U.S.C. § 706, which is not possible before Defendants have produced the administrative record.  *United Student Aid Funds, Inc. v. King*, 200 F. Supp. 3d 163, 172–73 (D.D.C. 2016) (recognizing that the court could not undertake arbitrary and capricious review without the administrative record) (emphasis added); *see also, e.g.*, *Swedish Am. Hosp. v. Sebelius*, 691 F. Supp. 2d 80, 88 (D.D.C. 2010) (same); *see also Vargus v. McHugh*, 87 F. Supp. 3d 298, 301 (D.D.C. 2015) (recognizing that review based on "less than

---

Counts I and III may relate to the IJ UAC deferral practice insofar as this practice is effectively taken in furtherance of the enjoined 2019 Redetermination Memo, Defendants' motion directly addresses only the IJ UAC deferral practice itself.  Accordingly, whatever Defendants may mean to imply without arguing, Plaintiffs address their arguments below to the arguments Defendants actually made.

the full administrative record" is inconsistent with the APA, because it "might allow a party to withhold evidence unfavorable to its case").

Here, Defendants insist, D.I. 101-1 at 22, that USCIS has always deferred to IJ determinations about whether an asylum applicant qualifies as a UAC, and they argue, *id.* at 22-23, that such a policy is reasonable.  But Defendants' assertions about agency policy before the 2019 Redetermination Memo are unsupported, and their defenses of USCIS's deference policy appear to be nothing more than post-hoc rationalizations by litigation counsel—Defendants make no attempt to ground them in contemporaneous reasoning from the agency itself and have produced no administrative record on which such assertions might be judged.  *See, e.g.*, *Jimenez-Cedillo v. Sessions*, 885 F.3d 292, 299 (4th Cir. 2018) ("[A] reviewing court may not speculate on reasons that might have supported a change in agency position, nor supply a reasoned basis for the agency's action that the agency itself has not given." (quotation marks and citations omitted)).  Defendants' arguments in favor of a USCIS deference policy, and their insistence that the agency has not shifted its position on this issue, thus miss the point.  Plaintiffs' arbitrary and capricious challenge will turn on the contemporaneous reasoning given by the agency itself, including whether their assertions of continuity are supported by the administrative record.  *See* D.I. 76 at 13.  The rationalizations offered by litigation counsel cannot save the USCIS policy, and they certainly do not support dismissal.

The Court need go no further to deny Defendants' motion to dismiss Count IV of the First Amended Complaint.  It is worth noting, however, that Defendants' substantive arguments for dismissal are also flawed.  For example, Defendants assert, D.I. 101-1 at 18-20, that "[t]he practice of deferring to IJ UAC determinations is consistent with the TVPRA" which directs that a USCIS "asylum officer . . . shall have initial jurisdiction over any asylum application filed by

an unaccompanied alien child." 8 U.S.C. § 1158(b)(3)(C). Defendants reason that once an IJ

concludes an asylum application was not one filed by a UAC, then "the TVPRA's initial

jurisdiction provision is not at issue because a court of competent jurisdiction" has resolved the

question. D.I. 101-1 at 19; *id.* at 23 (stating that IJs "clearly have the authority" to decide

whether an asylum applicant qualifies as a UAC who can pursue asylum relief before USCIS).

But that argument begs the question, because it assumes that USCIS may regard the immigration

court as a "court of competent jurisdiction" even though (1) the TVPRA expressly assigns

"initial jurisdiction" to USCIS, 8 U.S.C. § 1158(b)(3)(C), and (2) the USCIS's own policies

under the 2013 Kim Memo would produce a different jurisdictional outcome.

Contrary to Defendants' arguments, there is no way to square a policy that requires

USCIS to defer to the jurisdictional determinations of another agency with a statute that

delegates responsibility to USCIS to exercise initial jurisdiction over applications filed by UACs.

Under the 2013 Kim Memo, USCIS had publicly promulgated and followed a policy defining the

scope of its initial jurisdiction and it represents a clear abdication of the initial jurisdiction

granted to USCIS by Congress for the agency to defer to an IJ jurisdictional determination that

conflicts with USCIS's stated policy on the scope of its own jurisdiction.[8]

### 2. *Count V states a claim for relief*

Count V of the First Amended Complaint alleges that the deference policy is

procedurally defective because USCIS did not undertake notice and comment. D.I. 91 ¶¶ 177-

---

[8] Plaintiffs continue to assert that the TVPRA compels USCIS to accept asylum applications
filed by individuals who previously were found to be UACs. D.I. 22 at 15-18. Significantly,
however, Plaintiffs' statutory challenge to USCIS's deference policy does not depend on this
argument. Even if USCIS could make redeterminations about whether an asylum applicant
continued to be a UAC at the time she filed an asylum application (which Plaintiffs dispute), the
statute's "initial jurisdiction" provision does not allow the agency to defer to IJ jurisdictional
determinations that contradict USCIS's own standards for determination.

79.  This Court has previously recognized that Plaintiffs are likely to succeed in their claims that the overall 2019 Redetermination Memo violates the APA because the memo set forth a legislative rule and "USCIS failed to engage in the required notice-and-comment procedure for rulemaking."  D.I. 54 at 10-11.  The same reasoning applies with respect to the deference policy, which USCIS announced in the same 2019 Redetermination Memo.  As with the agency's redetermination policy, the deference policy is a rule because it binds USCIS asylum officers in all cases in a manner that affects the substantive rights of asylum applicants; the 2019 Redetermination Memo states asylum officers "*will* defer" to a jurisdictional determination made by EOIR.  D.I. 91-1 at 4 n.5 (emphasis added); *accord* D.I. 54 at 10 (recognizing that the new redetermination policy "is binding on *any* USCIS decision") (quotation marks and citation omitted).  Moreover, the Court's recognition that "[t]he Redetermination Memo skirts th[e] instruction from Congress that USCIS issue *regulations* to implement procedures related to UAC's asylum applications," D.I. 54 at 11 (emphasis added), is equally applicable to the deference policy.

Defendants nevertheless attempt to exempt the deference policy announced in that same 2019 Redetermination Memo from the Court's APA holding regarding the memo as a whole. None of their arguments provide any basis for dismissal.

First, Defendants assert that notice and comment was not required because USCIS's deference policy supposedly is compelled by "longstanding regulations that were properly promulgated under the APA [and that] require USCIS deference" to an IJ's jurisdictional determinations.  D.I. 101-1 at 23-24.  But the regulations Defendants cite merely recognize that *if* the TVPRA's initial jurisdiction does not apply, *then* USCIS would lack jurisdiction to accept the filing of an asylum applicant in removal proceedings.  *Id.* at 24 (citing 8 C.F.R. §§ 208.2(a)-

(b), 1003.14(b), 1208.2(a)-(b), 1240.1(a)(1)(ii)).  The regulations simply do not speak to the critical question here, which is *whether* the TVPRA's initial jurisdiction provision is satisfied and *how* that question should be determined.  On that issue, Congress expressly delegated authority to the agencies to issue regulations when it passed the TVPRA, *see* 8 U.S.C. § 1232(d)(8), but none have done so.  Indeed, Defendants acknowledge earlier in their motion to dismiss memorandum that there were no regulations in place at the time of TVPRA's enactment addressing whether IJs "could or should make a determination whether an applicant in proceedings seeking to file an asylum application was a UAC."  D.I. 101-1 at 4.  Defendants' inconsistent contention that this issue is somehow resolved by general regulations governing IJ jurisdiction that *predate the TVPRA* is implausible and should receive no deference from this Court.  *See Romero v. Barr*, 937 F.3d 282, 291-92 (4th Cir. 2019) (setting limits on deference to an agency's interpretation of its regulation).

Defendants try to fill in the gap left by regulations by arguing that the USCIS deference policy is dictated by the BIA's decision in *Matter of M-A-C-O-*, which they say is binding on all DHS employees.  D.I. 101-1 at 24-25.  But among other problems, Defendants' argument is inconsistent with USCIS's own reasoning in the challenged 2019 Redetermination Memo.  There, the agency recognized that the BIA decision itself did "not divest USCIS of its authority to determine whether an application before it was filed by a UAC, such that USCIS has jurisdiction over it."  D.I. 91-1 at 3.  Rather, the agency correctly understood that *M-A-C-O-* addressed only an IJ's jurisdiction to make certain UAC determinations without circumscribing USCIS's authority, which USCIS believed created a risk of "incongruous results."  *Id.*  Of course, Plaintiffs disagree that this risk justified USCIS's decision to depart from the 2013 Kim Memo by adopting the redetermination and deference policies.  But the point for Plaintiffs'

notice-and-comment claim is that USCIS understood that the *M-A-C-O-* decision was not self-executing, as it did not compel USCIS to take any particular action. *See also* D.I. 76 at 11 (describing public statement by USCIS in May 2019 acknowledging that *M-A-C-O-* "does not address USCIS determination about its own jurisdiction"). The Court should reject Defendants' new litigation-driven assertion to the contrary.

Second, Defendants insist that the USCIS deference policy is an "interpretive rule," which is not subject to the APA's notice-and-comment requirement. D.I. 101-1 at 26-27. Defendants' argument on this point relies entirely on their premise that the portion of the 2019 Redetermination Memo setting forth a deference policy merely "articulated the existing and long-standing interpretation" of the agency; according to Defendants, the memo "articulated nothing new" on this issue. *Id.* at 27. Once again, this argument depends on an evidentiary claim that is contested and cannot be fairly evaluated on a motion to dismiss before Defendants have produced the administrative record. And based on the allegations in the First Amended Complaint, the truth of which must be assumed at this stage, this deference policy is more than an interpretive rule because it created a change in policy that impacted the substantive rights afforded to UACs. *See, e.g.*, D.I. 91 ¶¶ 89-92 (under the 2013 Kim Memo, USCIS was not permitted to defer to EOIR and USCIS publicly reaffirmed that the 2013 Kim Memo's policies were in effect on May 20, 2019).

Moreover, based on the limited record that does exist at this early stage, Defendants' claims of unbroken USCIS continuity on this deference issue are highly dubious. As set forth in greater detail in Plaintiffs' briefing on the motion to enforce the preliminary injunction, the USCIS deference policy is facially inconsistent with the polices set forth in the 2013 Kim Memo. D.I. 76; Plaintiffs' Reply Brief in Support of their Motion to Enforce the Preliminary Injunction;

*see also supra* pp. 6-9.  Under that memo, an individual whom DHS had previously determined was a UAC generally would remain eligible for heightened asylum protections, and USCIS would take initial jurisdiction over the case, regardless of whether there is evidence that the applicant turned 18 years of age or may have been reunited with a parent or legal guardian.  D.I. 91-4 at 2.  The *sole* exception recognized by the 2013 Kim Memo in which USCIS may decline initial jurisdiction over an applicant previously found to be a UAC is if HHS, ICE, or CBP took an "affirmative act" "to terminate the UAC finding before the applicant filed the initial application for asylum."  *Id.*

The new deference policy does not fit within this exception under the 2013 Kim Memo for two reasons.  First, IJs sit in EOIR, which is not listed as an agency whose affirmative acts may terminate UAC status.  Second, the 2013 Kim Memo considers only whether an affirmative act terminated UAC status *before* an applicant filed for asylum.  But the deference policy has no such restriction, as USCIS now takes the position that an adverse IJ finding made long after the applicant filed for asylum with USCIS will divest the agency of its initial jurisdiction.  D.I. 88 at 9**.**  Defendants ignore this fundamental difference when they incorrectly assert that "[t]he outcome of deference to IJ jurisdictional determinations is, functionally, entirely consistent with the USCIS practice of declining to make new factual inquiries into UAC status as of the filing date if there was an undisturbed prior UAC determination in place *on that filing* date."  D.I. 101-1 at 22.  In fact, under the deference policy, an applicant with just such "an undisturbed prior UAC determination in place" as of the "filing date" may now lose her TVPRA protections.

Defendants, through the Sicard Declaration, ultimately acknowledge that the 2013 Kim Memo has "no reference" to a deference policy, and that "no other formal memorandum issued to articulate this practice" before it was set forth in the 2019 Redetermination Memo.  D.I. 101-2

¶ 12.  Nevertheless, Defendants insist that, over time, USCIS had developed such a practice before the agency issued the 2019 Redetermination Memo; they point primarily to a single stakeholder meeting in November 2017 that discussed the issue, as well as unspecified "case-related emails" that Defendants say they are unable to produce.  *Id.* ¶¶ 13-15.  On the other side, Plaintiffs have identified several examples in which USCIS applied a *different* practice before the 2019 Redetermination Memo by holding interviews and granting asylum to a UAC *after* an IJ made negative findings about UAC status.  D I. 79 (Ross Decl.) ¶¶ 10, 12, 14; D.I. 78 (Vega Decl.) ¶¶ 6, 7.  And two former USCIS asylum officers (both of whom trained other officers) have stated they were not aware of any agency policy "that allowed, much less required" deference to an IJ's UAC determination.  D.I. 81 (Esterle Decl.) ¶¶ 6, 7, 12; D.I. 82 (Bibby-Gerth Decl.) ¶ 6.  At a minimum, this preliminary evidence suggests that USCIS took an inconsistent approach to the issue of deference to IJ determinations before the 2019 Redetermination Memo, and that any change may have been part of unwritten policy decisions brought in by the current Administration in 2017.  If so, a decision by USCIS in the 2019 Redetermination Memo to transform what (may) have been an informal practice followed by *some* asylum officers into a formal, binding policy surely qualifies as a legislative rule subject to notice-and-comment, because it "impose[s] new requirements" that modify the rules in place under the 2013 Kim Memo.  *See* D.I. 54 at 10-11 (citing *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 620 (4th Cir. 2018)).  But the Court does not need to answer this question now: it should await production of the administrative record.

### E.    ICE Should Not Be Dismissed

ICE is a proper defendant in this action.  ICE is an arm of DHS, which has been a defendant in this litigation since its inception.  Since the Court issued a TRO on August 2, 2019,

DHS has been subject to a court order "enjoin[ing] and restrain[ing]" it "from applying their new asylum eligibility policy, as set forth in USCIS's May 31, 2019 memorandum, to bar individuals previously determined to be [UACs] from seeking asylum before the agency."  D.I. 55 at 1. Yet—as detailed in Plaintiffs' First Amended Complaint—DHS is using ICE to apply the 2019 Redetermination Memo:  "ICE, in its role as prosecutor in immigration court, frequently advocates for EOIR to assert and/or exercise its jurisdiction in these cases so as to deprive USCIS of the opportunity to exercise initial jurisdiction."  D.I. 91 ¶ 18.  "On information and belief, Defendant ICE has a policy or practice of advocating for immigration judges to conclude, contrary to the 2013 policy and despite the TRO and the PI, that applicants who have turned 18 or reunited with a parent before applying for asylum are not within USCIS's jurisdiction."  D.I. 91 ¶ 22.  Plaintiffs also alleged that "Defendants have implemented a policy that abdicates USCIS's statutorily mandated role of determining and taking initial jurisdiction and instead permits EOIR to determine such cases on the merits despite initial jurisdiction lying with USCIS, thus denying UAC applicants the initial non-adversarial hearing to which the TVPRA entitles them," and that "ICE is regularly in a position to advocate that an immigration court act on a case notwithstanding a pending UAC asylum claim before USCIS."  *Id.* ¶ 108.

There is no question that, taking these allegations as true as is required on a motion to dismiss, ICE is harming Plaintiffs by arguing for application of the 2019 Redetermination Memo.[9]  Moreover, Defendants' opposition effectively concedes that ICE is engaged in this practice.  *See* D.I. 101-1 at 29-30 (stating "ICE, and indeed DHS as a whole, has taken a position

---

[9] Defendants' primary argument is that Plaintiffs "fail[] to allege harm by ICE and merely state[] that ICE attorneys 'may' make arguments in immigration court."  D.I. 101-1 at 28.  Defendants do not attribute their assertion to any particular location in Plaintiffs' complaint.  Indeed, that language does not even appear in the First Amended Complaint.

as regards the interpretation of the TVPRA … which requires a determination of UAC status by different agencies that encounter aliens at different times."). In other words, DHS and ICE are advocating for re-assessing UAC status in exactly the manner the enjoined 2019 Redetermination Memo sets forth. Thus, it is entirely proper for ICE to remain a defendant in this case.

Indeed, Defendants' motion makes clear how important it is for ICE to be a part of this case. Defendants argue, under the guise of the rules of professional conduct, that it must advocate for UAC redeterminations, regardless of this Court's orders. D.I. 101-1 at 29. As an initial matter, Defendants cite no authority for why this overbroad and generalized view of the duty of client loyalty merits ICE's dismissal on the pleadings.[10] Defendants make additional arguments about Department of Justice policies (a department in which ICE does not fall) and DHS regulations—none of which addresses the particular factual situation presented by this case, which is whether DHS, or its component agency ICE, may, from one side of its mouth, say that it will not enforce the 2019 Redetermination Memo, and then, from the other side, enforce that memorandum. That is the issue that needs to be addressed before Plaintiffs can obtain the relief that they seek.

## III. CONCLUSION

The Court should deny Defendants' Motion to Dismiss and direct the parties to meet and confer on a schedule for expeditious production of the administrative record and appropriate motions once it is produced.

---

[10] Defendants' reliance on *In re McConnell* is entirely misplaced. *See* D.I. 101-1 at 29. In that case, a criminal contempt proceeding against a lawyer, the Supreme Court stated that lawyers should "be able to make honest good-faith efforts to present their clients' case." *In re McConnell*, 370 U.S. 230, 236 (1962). That unremarkable assertion, however, has no bearing on whether an ICE attorney is allowed to take a position that violates this Court's orders and is contrary to the law.

Dated: January 24, 2020

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Stephen R. Shaw*
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com
SShaw@goodwinlaw.com

Elaine Herrmann Blais*
Sarah K. Frederick*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
SFrederick@goodwinlaw.com
KDejong@goodwinlaw.com

Scott Shuchart*
Kids in Need of Defense
1201 L Street, NW, Floor 2
Washington, DC 20005
Phone: 202-318-0595
Fax: 202-824-0702
sshuchart@supportkind.org

Wendy Wylegala*
Kids in Need of Defense
1251 Avenue of the Americas (c/o
Lowenstein Sandler LLP)
New York, NY 10020
Phone: 862-926-2069
Fax: 202-824-0702
wwylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
Catholic Legal Immigration Network
(CLINIC)
8757 Georgia Avenue, Suite 850
Silver Spring, MD 20910
Phone: 301-565-4824
Fax: 301-565-4824
mmendez@cliniclegal.org

Rebecca Scholtz*
Catholic Legal Immigration Network
(CLINIC)
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 651-962-4833
Fax: 301-565-4824
rscholtz@cliniclegal.org

Kristen Jackson*
Mary Tanagho Ross*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
kjackson@publiccounsel.org
mross@publiccounsel.org

*Attorneys for Plaintiffs*

*\* admitted pro hac vice*