**IN THE UNITED STATES DISTRICT COURT**
<u>**FOR THE DISTRICT OF MARYLAND**</u>
*Southern Division*

| | | |
|---|---|---|
| **J.O.P.**, *et al.*, | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Case No.: GJH-19-1944** |
| **U.S. DEPARTMENT OF** | * | |
| **HOMELAND SECURITY**, *et al.*, | * | |
| **Defendants.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

<u>**MEMORANDUM OPINION**</u>

Pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"), and the Due Process Clause of the Fifth Amendment to the United States Constitution, a group of undocumented immigrants who entered the United States as unaccompanied children ("Plaintiffs") bring this action against the U.S. Department of Homeland Security and several of its officials and components ("Defendants") alleging that the government unlawfully modified policies governing treatment of asylum applications by unaccompanied immigrant children in a May 2019 Memorandum. On August 2, 2019, the Court granted Plaintiffs' Motion for a Temporary Restraining Order enjoining enforcement of the new Memorandum, ECF No. 54, and on October 15, 2019 granted Plaintiffs' consent motion converting the Order into a preliminary injunction. ECF Nos. 70, 71. Several overlapping motions are now before the Court, including Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment as to the Complaint, ECF No. 73, Plaintiffs' Motion to Enforce the Preliminary Injunction, ECF No. 75, and Defendants' Motion to Dismiss the Amended Complaint, ECF No. 101. No hearing is

necessary. *See* Loc. R. 105.6 (D. Md.). For the following reasons, each of these motions will be denied, while three pending procedural motions, ECF Nos. 74, 92, 93, will be granted.

## I.      BACKGROUND

Because of the unusual posture of this action, the Court begins by describing the complex procedural history of the case before turning to the statutory and regulatory regime at issue and Plaintiffs' specific allegations.

### A.  Procedural History

Pseudonymous Plaintiffs J.O.P. (by and through next friend, G.C.P.), M.A.L.C., M.E.R.E., and K.A.R.C. filed a Complaint on July 1, 2019, against the U.S. Department of Homeland Security ("DHS"), its then-Acting Secretary Kevin McAleenan, U.S. Citizenship and Immigration Services ("USCIS"), and USCIS's Acting Director Kenneth Cuccinelli, alleging that a change in Defendants' policy with respect to asylum applications filed by unaccompanied alien children violated the APA and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. ECF No. 1.[1] Plaintiffs simultaneously filed a Motion for a Temporary Restraining Order ("TRO"). ECF No. 14. Both the Complaint and the TRO Motion were accompanied by several exhibits. *See* ECF Nos. 3, 15. Each of the Plaintiffs also submitted a personal declaration describing their departures from their countries of birth and their arrivals in the United States. ECF Nos. 16, 18, 19, 20.

The Court held a hearing on the TRO Motion on July 19, 2019. ECF Nos. 43, 53. On August 2, 2019, the Court issued a Memorandum Opinion and an Order granting the TRO. ECF Nos. 54, 55. The Court's decision was based on the allegations in the Complaint, Plaintiffs' affidavits, and the exhibits accompanying the TRO Motion. *See* ECF No. 54. In its Order, the

---

[1] Plaintiffs filed motions to seal an unredacted version of their Complaint, ECF No. 5, and to proceed under pseudonyms, ECF No. 12, which the Court has granted, ECF Nos. 55, 114.

Court enjoined Defendants from enforcing the new asylum policy, which was set forth in a USCIS memorandum dated May 31, 2019, and ordered Defendants to retract any adverse asylum decisions already rendered under that policy. ECF No. 55. On August 9, 2019, Defendants filed a Motion for Extension of Time to comply with the Court's order because of logistical challenges in reviewing decisions that may have been rendered under the policy. ECF No. 57. Following a teleconference, ECF No. 59, the Court extended the TRO to September 3, 2019, ECF No. 60, and accordingly denied Defendants' Motion as moot, ECF No. 114.

The Court extended the TRO two additional times at the parties' joint request. ECF Nos. 63, 66. On October 9, 2019, Plaintiffs filed a consent motion to convert the TRO into a preliminary injunction, ECF No. 70, which the Court granted on October 15, 2019, ECF No. 71. On November 13, 2019, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment with respect to Plaintiffs' Complaint, seeking entry of a final judgment order containing the language in the preliminary injunction. ECF No. 73. The Motion also asserted that Defendants had conceded to the relief requested in the Complaint by consenting to the injunction. *Id.* Defendants' Memorandum in Support of the Motion additionally argued that the case was moot as a result of Defendants' concessions. ECF No. 73-1. On November 21, 2019, Plaintiffs filed an unopposed Motion for Extension of Time to Respond to Defendants' Motion to Dismiss and to File an Amended Complaint. ECF No. 74.[2]

The following day, Plaintiffs filed a Motion to Enforce the Preliminary Injunction, asserting that Defendants were failing to fully comply with the Court's Order by continuing to implement some portions of the May 2019 USCIS memorandum. ECF Nos. 75, 76. Plaintiffs attached and cited a number of materials, including declarations from two former USCIS asylum

---

[2] This Motion remains pending and will be granted.

officers and from three attorneys who have represented asylum applicants. ECF Nos. 78, 79, 80, 81, 82. On December 19, 2019, Defendants filed an Opposition to the Motion to Enforce, ECF No. 88, and attached a Declaration from a current asylum officer, ECF No. 88-1. On December 20, 2019, Plaintiffs filed an Amended Complaint that added a new Plaintiff, E.D.G., replaced former Defendant McAleenan with new Acting DHS Secretary Chad Wolf, and added as Defendants U.S. Immigration & Customs Enforcement ("ICE") and its Acting Director Matthew T. Albence. ECF No. 91.

As with the original Complaint, Plaintiffs attached several exhibits and filed a motion for permission for new Plaintiff E.D.G. to proceed under a pseudonym and omit his home address from the caption of the pleading, ECF No. 92, and to seal a copy of the Amended Complaint containing that information, ECF No. 93.[3] Plaintiffs simultaneously filed an Opposition to Defendants' motion to dismiss or for summary judgment, ECF No. 95, attaching multiple exhibits, *see* ECF No. 96. On January 3, 2020, Defendants filed a Motion to Dismiss the Amended Complaint, which also attached and cited multiple exhibits. ECF No. 101. On January 10, 2020, Defendants filed a Reply in support of their motion to dismiss or for summary judgment with respect to the original Complaint. ECF No. 104. On January 24, Plaintiffs filed a Reply in support of their motion to enforce the preliminary injunction, ECF No. 107, attaching and citing additional exhibits, *see* ECF Nos. 107-1, 108. Plaintiffs simultaneously filed an Opposition to the Motion to Dismiss the Amended Complaint, ECF No. 109. Defendants filed a Reply in Support of the Motion to Dismiss on February 10, 2020. ECF No. 111.

Review of the parties' extensive filings demonstrates that there is some ambiguity as to what is contained in the "record" presently before the Court. One aspect of the issue is easily

---

[3] As with the corresponding Motions for the existing Plaintiffs that accompanied the original Complaint, ECF Nos. 4, 12, these Motions will be granted.

resolved, however. Defendants have not opposed Plaintiffs' filing of their Amended Complaint, ECF No. 91, and have instead moved to dismiss it on substantive grounds, ECF No. 101. The Amended Complaint will thus be treated as the operative pleading for this action. Accordingly, the allegations it contains will be presumed to be true for purposes of assessing Defendants' Motion to Dismiss, ECF No. 101, and the Court includes those allegations in the following background discussion.

### B. Statutory and Regulatory Framework, Initial Complaint, and Enjoined Policy

While the Court's prior Memorandum Opinion, ECF No. 54, described the statutory and regulatory regime at issue in this case, it is useful to again review it in some depth. In 2002, Congress enacted the Homeland Security Act, Pub. L. No. 107-296, 116 Stat. 2135 ("HSA"). Among other provisions, the HSA assigned the care of "unaccompanied alien children who are in Federal custody by reason of their immigration status" to the Director of the Office of Refugee Resettlement of the Department of Health and Human Services ("HHS"). *See id.* § 462(a), (b), *codified at* 6 U.S.C. § 279(a), (b). The statute defines "unaccompanied alien child" ("UAC") as a child who: "(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom-- (i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody." *Id.* § 462(g), *codified at* 6 U.S.C. § 279(g).

In 2008, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). Pub. L. No. 110-457, 122 Stat. 5044. Among a variety of provisions establishing protections for at-risk immigrant children, the statute provides that any federal agency that apprehends or discovers a UAC must notify HHS within 48 hours and must transfer custody of the child to HHS within 72 hours. *Id.* § 235(b), *codified at* 8 U.S.C.

§ 1232(b)(2), (3). Importantly, the TVPRA also provides that USCIS asylum officers "shall have initial jurisdiction over any asylum application filed by an unaccompanied alien child." *Id.* § 235(d)(7)(B), *codified at* 8 U.S.C. § 1158(b)(3)(C). Demonstrating the significance of this provision to the issues raised in the parties' pending motions requires a brief overview of the regime governing asylum claims.

By regulation, the Department of Justice has established the Executive Office for Immigration Review ("EOIR"). *See* 8 C.F.R. § 1003.0. Within EOIR is the Office of the Chief Immigration Judge, a DOJ component consisting of a Chief Immigration Judge and other immigration judges ("IJs"), who are appointed by the Attorney General to conduct specified classes of immigration proceedings. *See id.* §§ 1003.9, 1003.10. These include hearings under section 240 of the Immigration and Nationality Act ("INA"), which concern "the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a)(1). Individuals enter section 240 proceedings after receiving a "notice to appear." 8 U.S.C. § 1229(a). Under the TVPRA, when DHS apprehends children that it determines are UACs and then seeks to remove them, DHS must place them in section 240 proceedings before transferring them to HHS custody. 8 U.S.C. § 1232(a)(5)(D). Under regulations predating the TVPRA, IJs in section 240 cases are authorized to adjudicate asylum applications filed under section 208 of the INA, 8 U.S.C. § 1158. *See* 8 C.F.R. § 1240.1(a)(1)(ii). Other pre-TVPRA regulations provide that IJs "shall have exclusive jurisdiction over asylum applications filed by an alien who has been served" with a notice to appear or similar notices. 8 C.F.R. § 1208.2(b).

The alternative path for filing an asylum application is through USCIS. When USCIS has jurisdiction over an application, the applicant appears before an asylum officer who conducts a private interview "in a nonadversarial manner." *Id.* § 208.9(b). Asylum officers are specially

trained by USCIS in "international human rights law, nonadversarial interview techniques, and other relevant national and international refugee laws and principles." *Id.* § 208.1(b). Generally, USCIS has jurisdiction over asylum applications only if the applicant has not been served with a notice to appear or other notice commanding appearance before an IJ; if the applicant has been served, IJs "shall have exclusive jurisdiction" and may adjudicate the application during adversarial immigration court proceedings. *Id.* § 208.2(a), (b). The TVPRA's initial jurisdiction provision, however, permits UACs to pursue asylum claims before USCIS even if removal proceedings have been initiated. The statute also exempts UACs from the requirement that a potential asylee file an application within a year of arriving in the United States. *See* 8 U.S.C. § 1158(a)(2)(B), (E).

The TVPRA delegates authority to adopt regulations governing UAC asylum applications that "take into account the specialized needs of [UACs] and which address both procedural and substantive aspects of handling [UACs'] cases." 8 U.S.C. § 1232(d)(8). The statute does not specify which agency should promulgate such rules, however, and to date no agency has done so, leaving the relationship between pre-TVPRA asylum regulations and the statute's special provisions for UAC applicants somewhat unspecified. USCIS has partially filled this gap with a series of agency memoranda that have addressed, among other issues, if and how asylum officers should assess whether asylum applicants are UACs. The memoranda, as well as other USCIS publications, are included as exhibits and cited in Plaintiffs' Amended Complaint. The first memorandum, issued March 25, 2009 by USCIS Asylum Division Chief Joseph Langlois ("2009 Langlois Memo"), directed that the agency would assess, both when an asylum application was received and during the applicant's interview, whether the applicant qualified as a UAC at the

time of filing the application. ECF No. 91 ¶ 76; *see* ECF No. 91-2 at 5.[4] Such an inquiry was necessary, Chief Langlois explained, because USCIS lacks jurisdiction over applications not filed by UACs. ECF No. 91-2 at 5.

In September 2012, the Citizenship and Immigration Services Ombudsman, an oversight official within DHS, *see* 6 U.S.C. § 272, issued a report finding that "USCIS' policy of redetermining UAC status creates delay and confusion." ECF No. 91-3 at 6. The report used the term "redetermination" to describe USCIS's practice under the 2009 memo of reexamining whether each claimed UAC asylum applicant was in fact a UAC and disregarding the earlier UAC determination by the DHS component that apprehended the applicant – either U.S. Customs and Border Patrol ("CPB") or U.S. Immigration and Customs Enforcement ("ICE") – that enabled the individual to file an application with USCIS. *See id.* at 4, 7; *see also* ECF No. 91 ¶ 81. The report noted that USCIS's redeterminations frequently resulted in the agency rejecting applications for lack of jurisdiction, producing unfairness and unpredictability for applicants, as well as significant waste of time and resources. ECF No. 91-3 at 8. The Ombudsman further stated that "[s]ubjecting a child seeking asylum to multiple UAC determinations as is required by USCIS' temporary guidance appears at odds with the TVPRA's express purpose, namely, to provide timely, appropriate relief for vulnerable children." *Id.* at 6. The report thus recommended that USCIS eliminate redeterminations and simply accept and adjudicate the applications of individuals previously determined to be UACs by ICE or CBP. *Id.* at 4–6; *see* ECF No. 91 ¶ 84.

USCIS adopted this recommendation in a May 28, 2013 memorandum by Acting Asylum Division Chief Ted Kim ("2013 Kim Memo"), which modified the procedures established in the 2009 Langlois Memo. ECF No. 91-4 at 2. Under the new policy, in cases in which CPB or ICE

---

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

had already determined that an applicant was a UAC and that determination "was still in place on the date the asylum application was filed," USCIS would adopt that determination without another factual inquiry. *Id.* at 2–3. The memo further clarified that "[u]nless there was an affirmative act by HHS, ICE or CBP to terminate the UAC finding before the applicant filed the initial application for asylum," USCIS would adopt the previous determination that the applicant was a UAC "and take initial jurisdiction over the case." *Id.* at 3. USCIS would follow this procedure and decline to "question the applicant regarding his or her age and whether he or she is accompanied by a parent or legal guardian . . . even if there appears to be evidence that the applicant may have turned 18 years of age or may have reunited with a parent or legal guardian since the CPB or ICE determination." *Id.*; *see* ECF No. 91 ¶¶ 87–88.

Six years later, on June 14, 2019, USCIS published on its website the memorandum at issue in this case, which revised the procedures established in the 2013 Kim Memo. ECF No. 91-1 at 2. The memo ("2019 Redetermination Memo"), which was dated May 31, 2019, discussed a decision by the Board of Immigration Appeals ("BIA"), an appellate body within EOIR that among other duties reviews IJ decisions in section 240 proceedings, *see* 8 C.F.R. § 1003.1(a), (b)(1). ECF No. 91-1 at 3. In *Matter of M-A-C-O-*, 27 I&N Dec. 477 (BIA 2018) ("*MACO*"), the memo explained, the BIA concluded that IJs have jurisdiction to determine whether an individual previously determined to be a UAC but who turned 18 years old before filing an asylum application no longer qualifies as a UAC; if the IJ makes such a finding, the BIA held, the IJ should conclude that the TVPRA's initial jurisdiction provision no longer applies and that jurisdiction over the application is held solely by the immigration court. *Id.* (citing *MACO*, 27 I&N Dec. at 478). The memo clarified that *MACO* does not divest USCIS of its authority to

determine whether an application was filed by a UAC, however, with the result that both IJs and

USCIS have authority to determine whether USCIS has jurisdiction over a given application. *Id.*

The memo then stated the policy change it was implementing:

> To ensure that USCIS is making these jurisdictional determinations in a
> manner consistent with Immigration Judge determinations on the same
> issue under *Matter of M-A-C-O-*, USCIS is returning to making
> independent factual inquiries in all cases in order to determine whether the
> individual met the UAC definition on the date of filing the asylum
> application. This will help prevent incongruous results where USCIS
> would otherwise have deferred to a prior UAC determination that fails to
> take into consideration the age and other circumstances of the applicant at
> the time of filing the application.

*Id.* at 3–4. The memo proceeded by setting forth the procedures for asylum officers to make a

determination whether applicants qualified as UACs at the time of filing, stating that "[t]he

asylum officer must evaluate whether the asylum application was filed by a UAC by making an

independent factual inquiry." *Id.* at 4. Additionally, citing *MACO* for the proposition that "EOIR

has jurisdiction to determine its own jurisdiction," the memo stated in a footnote ("Footnote 5")

that "[i]f EOIR has explicitly determined that USCIS does not have jurisdiction over an asylum

application because it is not one filed by a UAC, the asylum officer will defer to that

determination." *Id.* at 5 n.5. Finally, the memo stated that it becomes effective 30 days from its

issuance and that its new procedures apply to "any USCIS decision issued on or after the

effective date." *Id.* at 2.

In their initial Complaint and TRO Motion, Plaintiffs alleged that the 2019

Redetermination Memo's requirement that USCIS reevaluate whether each claimed UAC asylum

applicant was a UAC at the time of filing violated the APA, the TVPRA, and Plaintiffs' due

process rights. ECF No. 1 ¶¶ 123–25, 127–29, 132–37; ECF No. 14 at 2. As described

previously, the Court on August 2, 2019 granted the TRO Motion and issued an Order barring

enforcement of the 2019 Redetermination Memo. Specifically, the Court enjoined Defendants:
(1) "from applying their new asylum eligibility policy, as set forth in USCIS's May 31, 2019
memorandum, to bar individuals previously determined to be unaccompanied alien children
('UACs') from seeking asylum before the agency;" and (2) "from rejecting jurisdiction over the
application of any UAC (as defined in the Homeland Security Act, 6 U.S.C. § 279(g)(2)) under
the Trafficking Victims Protection Reauthorization Act ("TVPRA") whose application would
have been accepted under the USCIS policy predating the May 31, 2019 memorandum." ECF
No. 55 at 1.

The Court also ordered USCIS to "retract any adverse decision already rendered in an
individual case applying the 2019 UAC Memorandum within one week following entry of this
Order, and reinstate consideration of such case applying the 2013 UAC Memorandum." *Id.*[5] The
basis of the Court's ruling was the finding that Plaintiffs were likely to succeed on claims that
Defendants violated the APA by failing to use notice and comment rulemaking to implement the
policies in the 2019 memo and by failing to consider the reliance interests created by the 2013
Kim Memo. ECF No. 54 at 8.

### C.  Plaintiffs, Specific Allegations, and Amended Complaint

Plaintiffs in this action allege that they came to the United States as children to escape
violence, abuse, and persecution in their home countries. *See* ECF No. 91 ¶¶ 25–26, 32, 37, 43,
48. Plaintiff J.O.P. is an 18-year-old from Guatemala currently residing with his mother in
College Park, Maryland who fled his home country after witnessing a murder and receiving
violent threats when he was 15 years old. *Id.* ¶¶ 25–26, 132. DHS agents determined that he was
a UAC on or about November 25, 2015, after which he was reunified with his mother. *Id.* ¶¶ 28–

---

[5] The Court's later Preliminary Injunction Order indefinitely extending the TRO included the same language with
minor immaterial modifications, as discussed further below. ECF No. 71 at 1–2.

29. He filed an asylum application with USCIS on February 20, 2018, when he was 17 years old, but he has yet to obtain an interview and is currently in section 240 removal proceedings. *Id.* ¶¶ 27, 30, 133. 21-year-old Plaintiff M.A.L.C. is also from Guatemala, where he experienced repeated threats of violence and extortion after his parents were murdered. *Id.* ¶¶ 31–32. He fled to the United States in August 2016 when he was 17 years old and was determined to be a UAC by DHS agents at that time. *Id.* ¶¶ 32, 34, 124. On February 14, 2018, when he was 19 years old, he filed an asylum application with USCIS. *Id.* ¶ 35. Currently residing in Los Angeles, California, he has yet to obtain an asylum interview and is now in section 240 removal proceedings. *Id.* ¶¶ 31, 35.

Plaintiff M.E.R.E. is a 20-year-old currently residing in Temple Hills, Maryland. *Id.* ¶ 36. He fled his home country of El Salvador at 15 years old because of abuse, discrimination, and persecution he experienced based on his sexual orientation. *Id.* ¶¶ 37, 120. On or about November 15, 2014, DHS agents determined that M.E.R.E. was a UAC, though he was subsequently reunified with his mother. *Id.* ¶¶ 39–40. On March 30, 2018, when he was 18 years old, M.E.R.E. filed an asylum application with USCIS. *Id.* ¶ 41. He has not yet been scheduled for an interview and is now in section 240 removal proceedings. *Id.* ¶¶ 38, 41, 122. 20-year-old Plaintiff K.A.R.C., who currently resides in Gaithersburg, Maryland, is also from El Salvador and fled the country when he was 17 years old because of abuse, discrimination, and persecution based on his perceived sexual orientation. *Id.* ¶¶ 42–43, 128, 130. In approximately May 2016, DHS agents determined that K.A.R.C. was a UAC. *Id.* ¶ 45. K.A.R.C. filed an asylum application with USCIS in the fall of 2017 when he was 18 years old and was interviewed in November 2017, but USCIS has not yet issued a decision. *Id.* ¶¶ 46, 129. K.A.R.C. is now in section 240 removal proceedings. *Id.*

Finally, Plaintiff E.D.G., who was added to this action in the Amended Complaint, is a 20-year-old from Honduras who currently resides in Kansas City, Missouri. *Id.* ¶ 47. E.D.G. fled Honduras when he was 17 years old after years of sexual, physical, and emotional abuse and grievous harm inflicted by a gang whose recruitment efforts he had refused. *Id.* ¶¶ 48, 135. DHS agents determined that E.D.G. was a UAC on or about July 4, 2016, and he was placed in section 240 removal proceedings the following day. *Id.* ¶¶ 49–50. E.D.G. filed an asylum application with USCIS in late 2017, when he was 18 years old, and was interviewed on March 6, 2018. *Id.* ¶ 51. Before a decision was issued, however, an IJ ordered E.D.G. removed on October 10, 2018 after concluding that the immigration court had jurisdiction over E.D.G.'s asylum application and denying the application on the merits. *Id.* ¶ 52. E.D.G.'s appeal is currently pending before the BIA. On July 25, 2019, in reliance on the 2019 Redetermination Memo, USCIS rejected jurisdiction over E.D.G.'s asylum application because he had not established that he was under 18 years old at the time he filed it. *Id.* ¶ 53.

The Court's TRO barring enforcement of the 2019 Redetermination Memo was issued on August 2, 2019, ECF No. 55, and USCIS reopened E.D.G.'s case in compliance with the Order on August 5, 2019, ECF No. 91 ¶¶ 53, 137. On September 30, 2019, however, while the TRO remained in effect, USCIS again rejected jurisdiction over E.D.G.'s application in reliance on the 2019 Redetermination Memo. ECF No. 91 ¶ 54. The agency this time issued to E.D.G. a Notice of Lack of Jurisdiction stating that the "Immigration Judge made an affirmative act to terminate UAC status on October 10, 2018." *Id.* ¶ 137. In the Amended Complaint, Plaintiffs allege that this decision was made pursuant to Footnote 5 of the 2019 Redetermination Memo, which directs USCIS to defer to EOIR determinations that USCIS lacks jurisdiction over an application because it was not filed by a UAC. *Id.* ¶¶ 15, 137.

Plaintiffs further allege in the Amended Complaint that "Defendants have maintained a policy and practice that erroneously deprives" Plaintiffs and a class of similarly situated UAC asylum applicants that they seek to represent "of USCIS's statutory initial jurisdiction over their asylum applications." *Id.* ¶ 141. Newly added Defendant ICE, Plaintiffs contend, contributes to this deprivation in its role as a prosecutor in immigration courts. *Id.* ¶¶ 60, 134. According to Plaintiffs, ICE maintains a policy or practice of advocating for IJs to conclude that applicants who have turned 18 or reunified with a parent before applying for asylum are not within USCIS's jurisdiction. *Id.* ¶ 22.

Specifically, Plaintiffs assert, ICE attorneys argue before IJs that EOIR should assert its jurisdiction in such cases in order to deprive USCIS of the opportunity to exercise initial jurisdiction, given the IJ deferral policy in the 2019 Redetermination Memo. *Id.* ¶¶ 18, 108. Further, Plaintiffs allege, ICE prosecutors actively oppose efforts by UACs in removal proceedings to delay IJ consideration of their asylum claims while USCIS considers them. *Id.* ¶ 140. Instead, ICE advocates for scheduling of IJ hearings on the asylum claims and actively opposes continuances or postponements. *Id.* ¶¶ 140–41. Plaintiffs allege that this advocacy before IJs is directly related to USCIS's decision to defer to IJ jurisdictional determinations, composing a concerted, cross-agency strategy of attempting to evade or minimize the impact of the TVPRA's initial jurisdiction provision for UACs. *Id.* ¶¶ 18, 141.

## II.   DISCUSSION

Though the parties' pending motions contain overlapping arguments as a result of the ongoing procedural and factual evolution of the case, the Court discusses them separately and in the order they were filed for maximum clarity.

### A.  Defendants' Motion to Dismiss or for Summary Judgment

Defendants' Motion to Dismiss Or, in the Alternative, for Summary Judgment with respect to the original Complaint, ECF No. 73, was filed on November 13, 2019, one month after the Court entered a preliminary injunction indefinitely extending the directives in the TRO. In their Memorandum in support of the Motion, Defendants state that they concede to entry of an order transforming the preliminary injunction into a final judgment that enjoins Defendants "from enforcing or applying the 2019 Redetermination Memo." ECF No. 73-1 at 1. Defendants then assert that because they have consented to such an order, "the case is moot and there is no longer a live case or controversy." *Id.* Therefore, Defendants claim, "[t]he Complaint should be dismissed." *Id.* at 5.

Defendants' argument is paradoxical and contradictory. Defendants simultaneously seek both dismissal of the original Complaint as moot and a final judgment ordering the relief sought in the Complaint. ECF No. 73-1 at 5. But a case becoming moot deprives the court of subject matter jurisdiction, precluding the entry of a judgment. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011). It is thus unclear what Defendants intend to achieve with their Motion. The Court need not probe this confusion further, however, because Defendants' Reply Memorandum in Support of the Motion, ECF No. 104 at 2, concedes that Plaintiffs' Amended Complaint, ECF No. 91, has raised new allegations that produce a live controversy, as Plaintiffs also argue in their Opposition, ECF No. 95 at 10–15. The Court will thus deny as moot the Motion to Dismiss Or, in the Alternative, for Summary Judgment, and will turn to the remaining motions.

**B. Plaintiffs' Motion to Enforce the Preliminary Injunction**

Plaintiffs' Motion to Enforce the Preliminary Injunction, filed November 22, 2019, seeks an order enforcing the Court's preliminary injunction and barring Defendants from continuing to reject jurisdiction over asylum applications based on the 2019 Redetermination Memo. ECF No. 75 at 1; ECF No. 76 at 4. According to Plaintiffs, while USCIS has not resumed conducting redeterminations of the UAC status of asylum applicants, it has continued to apply Footnote 5 of the 2019 Redetermination Memo directing USCIS asylum officers to defer to EOIR determinations that an applicant was not a UAC at the time of filing. ECF No. 76 at 4. Plaintiffs assert that the 2013 Kim Memo did not permit such deference by USCIS and that because the Court's Order directed Defendants to revert to the policies in force under that memo, Defendants are violating the Order. *Id.*

With respect to the 2013 Kim Memo, Plaintiffs assert that the memo required USCIS to accept initial jurisdiction over applications by individuals previously determined to be UACs in all cases "[u]nless there was an affirmative act by HHS, ICE or CBP to terminate the UAC finding before the applicant filed the initial application for asylum." *Id.* at 7 (quoting ECF No. 77-3 at 3). By listing only those agencies, Plaintiffs argue, the 2013 Kim Memo "does not allow an action taken by an immigration judge" within EOIR "to qualify as an 'affirmative act' that would divest USCIS of initial jurisdiction over an asylum application." *Id.* (quoting ECF No. 77-3 at 3). Further, Plaintiffs argue, an action by one of the enumerated agencies only qualifies as an "affirmative act" if it takes place before the individual filed for asylum rather than after. *Id.* As a result, Plaintiffs conclude, any denial of jurisdiction by USCIS based on an IJ's determination that an asylum applicant was not a UAC at the time of filing would be inconsistent with the 2013 Kim Memo. *Id.* at 13–14.

16

Plaintiffs' Motion is premised on the issuance of exactly such a denial in the case of E.D.G., as described in an attached declaration by his immigration attorney Miguel Mariscal. *See id.* at 9–10 (citing ECF No. 80). Mariscal testifies to facts about E.D.G.'s case that Plaintiffs also allege in their Amended Complaint: that an IJ held in October 2018 that E.D.G. was not a UAC when he filed his asylum application, that USCIS rejected his application in July 2019 under the 2019 Redetermination Memo, that USCIS reopened the application following the Court's entry of the TRO in August 2019, and that on September 30, 2019, USCIS notified E.D.G. that it lacked jurisdiction over his application because "the Immigration Judge made an affirmative act to terminate UAC status on October 10, 2018." ECF No. 80 ¶¶ 13, 15, 17, 18 (quoting ECF No. 80-1 at 3). Plaintiffs argue that USCIS's deference to the IJ ruling as the basis for denying jurisdiction over E.D.G.'s application "effectively implements the enjoined 2019 Redetermination Policy, as such deference is expressly called for by that Policy in a marked departure from the 2013 Kim Memo." ECF No. 76 at 12. "It was plainly improper for USCIS to reject E.D.G.'s asylum application based on a policy adopted in the 2019 Redetermination Policy that this Court has enjoined," Plaintiffs conclude. *Id.*

The Court's Preliminary Injunction Order, which restated the terms of the Court's prior TRO, was adopted from a Proposed Order submitted by Plaintiffs, ECF No. 70 at 6–7. In relevant part, the Order states that:

> Defendants are, during the pendency of this litigation and until further Order of this Court:
>
> a. enjoined and restrained from applying the asylum eligibility policy, as set forth in USCIS' May 31, 2019 memorandum, to bar individuals previously determined to be unaccompanied alien children ("UACs") from seeking asylum before the agency; and
> b. enjoined and restrained from rejecting jurisdiction over the application of any UAC (as defined in the Homeland Security Act, 6 U.S.C. § 279(g)(2)) under the Trafficking Victims Protection [Reauthorization] Act

> ("TVPRA") whose application would have been accepted under the
> USCIS policy predating the May 31, 2019 memorandum;
> . . .
> 2. Defendant United States Citizenship and Immigration Services will
> retract any adverse decision already rendered in an individual case
> applying the 2019 UAC Memorandum and reinstate consideration of such
> case applying the 2013 UAC Memorandum.

ECF No. 71 at 1–2. Whether Defendants violated the injunction when USCIS deferred to the IJ

determination of E.D.G.'s UAC status turns on whether doing so constituted either "applying the

asylum eligibility policy, as set forth in USCIS' May 31, 2019 memorandum," or "rejecting

jurisdiction over the application of any UAC . . . whose application would have been accepted

under the USCIS policy predating the May 31, 2019 memorandum." *Id.* Because the IJ deferral

policy was first established in Footnote 5 of the 2019 Redetermination Memo, Plaintiffs argue,

applying it in E.D.G.'s case constitutes applying the asylum policy as set forth in the memo. ECF

No. 76 at 12. Plaintiffs further argue that E.D.G.'s application would have been accepted under

the 2013 Kim Memo and that USCIS's decision thus violates the Court's Order in two ways. *Id.*

　　In an Opposition, as well as in a prior email from defense counsel that Plaintiffs attached

and described in the Motion to Enforce, Defendants argue that the USCIS practice of deferring to

UAC jurisdictional determinations made by IJs predates the 2019 Redetermination Memo. ECF

No. 88 at 2; ECF No. 77-2 at 2. Defendants assert that the 2013 Kim Memo neither addressed

nor prohibited USCIS deference to IJ determinations that applications were not filed by UACs,

and that "[d]ropping a footnote to articulate existing law and practice did not define new policy."

ECF No. 88 at 6, 8–9. Additionally, Defendants contend that because none of Plaintiffs' filings

preceding the Motion to Enforce raised the issue of USCIS deferral to IJs, the Court's Order fails

to reach the policy. *Id.* at 7–9. Finally, Defendants assert that because none of the original

Plaintiffs claim that their asylum applications were rejected by USCIS on the basis of deference to an IJ ruling, the original Plaintiffs lack standing to challenge the policy. *Id.* at 5.

As support for their assertions about USCIS' alleged deferral practices before the 2019 Redetermination Memo, Defendants offer the declaration of Kimberly R. Sicard, "an Asylum Officer within Asylum Division Headquarters" at USCIS who has been with the agency since 2006. ECF No. 88-1 ¶ 1. According to Sicard, as time passed following the 2013 Kim Memo, IJs increasingly began conducting factfinding on the status of claimed UACs and asserting jurisdiction over their asylum applications. ECF No. 88-1 ¶ 9. Sicard states that "[i]n the years prior to the 2019 memorandum," having realized that IJs and USCIS could reach conflicting results regarding jurisdiction over claimed UACs' asylum applications and the merits of the applications, "USCIS began the practice of deferring to IJ UAC determinations." *Id.* ¶¶ 10–11. Sicard declares that while USCIS did not formally document this policy, it "existed well before the 2019 memorandum." *Id.* ¶ 12.

Sicard notes that the policy was articulated in a set of written answers to questions that were raised at a USCIS "quarterly stakeholder meeting in November 2017." *Id.* ¶ 13. The document, which is attached to the declaration, states that "under current guidance, asylum offices defer to IJ determinations where IJs have made a finding that an asylum application was not filed by a UAC." *Id.* (quoting *id.* at 13). Another agency answer in the document states that "[i]f an immigration judge determines that an application was not filed by a UAC, USCIS currently defers to that finding." *Id.* ¶ 14 (quoting *id.* at 13). The answer goes on to state that "[a]lthough immigration judges are not listed in the May 2013 USCIS memo on UAC jurisdictional determinations, that memo does not provide an exclusive list of all the agency actions that may affect a prior UAC determination." *Id.* (quoting *id.* at 13).

Sicard additionally declares that the practice of deferring to IJ UAC determinations "is reflected in case-related emails sent to and from various personnel at USCIS about specific individual cases over the years," but that she is not able to produce any such messages because they are privileged or "implicate privacy issues under statute or agency policy." *Id.* ¶ 15. Sicard also notes that because IJs often do not issue written decisions clearly stating whether an asylum applicant was a UAC at the time of filing, USCIS has asked ICE attorneys either to complete "a memo to the file" memorializing IJ jurisdictional decisions announced from the bench or to request that IJs issue written orders on this issue. *Id.* ¶ 16. In June 2018, USCIS developed a template for ICE file memos "that would include the type of information that [USCIS] would need to have in the record in order to recognize an IJ jurisdictional determination to which we would defer." *Id.* Finally, Sicard describes E.D.G.'s case, explaining that USCIS determined that his application could not be accepted after the case was reopened because of the prior IJ ruling that E.D.G. was not a UAC on the date he filed his application. *Id.* ¶¶ 18–19.

Plaintiffs have offered multiple competing declarations, including two from asylum attorneys who state that their UAC clients were granted asylum by USCIS despite prior negative IJ findings about the applicants' UAC status. ECF No. 76 at 15 (citing ECF No. 78 ¶¶ 6, 7; ECF No. 79 ¶¶ 10, 12, 14). Plaintiffs also provide declarations by two former USCIS asylum officers, Lauren Esterle and Jennifer Bibby-Gerth. *Id.* Esterle declares that she was employed at USCIS's Los Angeles Asylum Office from June 2016 to January 2019, first as an asylum officer, then as a senior asylum officer, and finally as a training officer. ECF No. 81 ¶¶ 3–4. Esterle was taught that under the TVPRA and the 2013 Kim Memo, asylum officers were to adopt prior DHS UAC determinations for all applicants unless ICE had taken the "affirmative act" of placing the individual into adult custody before the application was filed. *Id.* ¶ 6.

Esterle states that she was never taught that USCIS should defer to an EOIR determination that an applicant was not a UAC at the time of filing. *Id.* ¶ 7. She also never personally so deferred in adjudicating an asylum application, nor was her jurisdictional analysis ever overruled by a supervisor. *Id.* ¶¶ 7, 9. After she became a training officer in February 2018, she trained new asylum officers consistent with her own training, and she was never made aware of any USCIS trainings or verbal or written instructions that allowed or required officers to defer to IJ determinations on UAC status. *Id.* ¶¶ 11–12.

In her declaration, Bibby-Gerth states that she was an asylum officer at the USCIS Arlington Asylum office from December 2007 until October 2012 and served as the office's "Quality Assurance / Trainer" until September 2013. ECF No. 82 ¶¶ 3–4. In her training role, she was responsible for instructing asylum officers on application of the 2013 Kim Memo. *Id.* ¶ 4. Bibby-Gerth was told that IJs did not have the authority to make determinations about UAC status or to terminate UAC findings, and she was never told or taught that an asylum officer should defer to an IJ determination that USCIS lacked jurisdiction over an application because it was not filed by a UAC. *Id.* ¶ 6.

Notably, Defendants' Opposition does not acknowledge Plaintiffs' declarations, while Plaintiffs' Reply challenges the accuracy and relevance of the facts in the Sicard Declaration. *See* ECF No. 107 at 12–16. Plaintiffs premise their arguments in part on a supplemental declaration by Esterle, who states that she was aware that Sicard was the point of contact at USCIS Asylum Division Headquarters "for issues related to the special jurisdictional rules that apply to asylum applications" by UACs. ECF No. 107-1 ¶ 9. Esterle further states, however, that she received no communications from Sicard or anyone else at Asylum Division headquarters, sent either to her individually or to all asylum officers, stating that deference to IJ UAC determinations was

allowed, let alone required. *Id.* ¶ 10. Esterle also denies knowledge or awareness of any such

practice or of trainings, verbal instructions, written materials, or other guidance documenting

such a policy, including the November 2017 stakeholder meeting notes and the alleged USCIS

template for ICE attorneys that Sicard described. *Id.* ¶¶ 13–14, 16–17.

By offering these declarations and arguments, the parties have presented conflicting

factual accounts from ostensibly knowledgeable sources about the existence of an informal

policy predating the 2019 Redetermination Memo under which USCIS would defer to IJ

determinations that asylum applications were not filed by UACs. Their arguments imply that the

Court should make findings of fact about USCIS's practices on the basis of the competing

declarations, and from those findings make conclusions of law with respect to whether following

a practice that is consistent with Footnote 5 of the Redetermination Memo and deferring to IJ

determinations is consistent with the preliminary injunction. The Court will decline to do so at

this procedural juncture for multiple reasons.

First, the parties' underlying dispute concerns federal agency decisionmaking, and

ultimately, the Defendant agencies' compliance with the Constitution and federal statutes. While

the exigent nature of the TRO proceedings required the Court to make determinations based on a

limited record that was not challenged for the purposes of that motion, non-emergency APA

cases typically involve the production of an administrative record for the Court to review.

"Generally, 'claims brought under the APA are adjudicated without a trial or discovery, on the

basis of an existing administrative record....'" *Outdoor Amusement Bus. Ass'n, Inc. v. Dep't of

Homeland Sec.*, 334 F. Supp. 3d 697, 711 (D. Md. 2018) (quoting *Audubon Naturalist Soc'y of

the Cent. Atl. States, Inc. v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 660 (D. Md. 2007)).

Importantly, "'the focal point for judicial review' under the APA 'should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Mayor & City Council of Balt. v. Trump*, No. ELH-18-3636, 2019 WL 6970631, at *6 (D. Md. Dec. 19, 2019) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam)). Courts "'consider the record made before the agency at the time the agency acted,' so 'post-hoc rationalizations . . . have traditionally been found to be an inadequate basis for review.'" *Roe v. Dep't of Def.*, 947 F.3d 207, 220 (4th Cir. 2020) (quoting *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 467–68 (4th Cir. 2013)). "Courts may consider 'affidavits not contained in the agency record . . . where 'there was such failure to explain administrative action as to frustrate effective judicial review.'" *Id.* (quoting *Dow AgroSciences*, 707 F.3d at 468).

To be sure, the parties' limited presentations leave some ambiguity as to the specific final action or actions at issue in USCIS's adoption of the policy of deferring to UAC determinations by IJs. But it is precisely because of that lack of clarity that it would be unwise for the Court to make a binding determination on the legality of the policy based only on the briefing and conflicting factual assertions surrounding the Motion to Enforce the Preliminary Injunction. Instead, the most effective means of furthering "the truth-seeking mission of the judicial system" and fairly resolving the issues Plaintiffs have raised is by adjudicating those issues in the context of the Amended Complaint, ECF No. 91, in which Plaintiffs have presented them squarely. *Day v. Johns Hopkins Health Sys. Corp.*, 907 F.3d 766, 771 (4th Cir. 2018).

Specifically, the Amended Complaint directly raises the questions at issue in the Motion to Enforce by alleging that the 2019 Redetermination Memo established the IJ deferral policy in a reversal of the 2013 Kim Memo, and that Defendants have violated the Court's Orders by

continuing to enforce the policy in E.D.G.'s case. ECF No. 91 ¶¶ 14, 18, 21, 54–55, 90–91, 95–97, 99, 105, 113–14, 137–39, 141. These allegations fully incorporate the issues raised by the Motion to Enforce. The Amended Complaint also includes two new counts alleging that the deferral policy, as stated in the 2019 Redetermination Memo, is arbitrary and capricious in violation of the APA because it departs from the 2013 Kim Memo without explanation, is contrary to the TVPRA, fails to consider the reliance interests of asylum applicants who relied on the 2013 memo, and was unlawfully adopted without notice and comment procedures. *Id.* ¶¶ 173–79. The Amended Complaint's prayer for relief also makes a detailed request for injunctive relief barring USCIS from deferring to EOIR determinations in assessing its jurisdiction over asylum applications by Plaintiffs and the class of similarly situated applicants that they seek to represent. *Id.* at 43.

By including these new allegations, claims, and requests for relief in the Amended Complaint, Plaintiffs have effectively superseded the Motion to Enforce the Preliminary Injunction. Were the Court to make the findings of fact and conclusions of law that deciding the Motion to Enforce would appear to necessitate, that would presumably resolve or narrow issues presented by the Amended Complaint without the benefit of the record and briefing that litigating the Amended Complaint would entail. Instead of findings premised on an abbreviated record, a resolution of the new claims on their merits will most effectively address Plaintiffs' objections to the 2019 Redetermination Memo, whether or not the policies it incorporates were preexisting. For these reasons, the Court will deny the Motion to Enforce the Preliminary Injunction and will proceed to consideration of Defendants' Motion to Dismiss the Amended Complaint. This denial is without prejudice, however, to Plaintiffs' right to move for emergency

equitable relief to enjoin enforcement of the IJ deferral policy if Plaintiffs believe such enforcement threatens impending irreparable harm.

### C. Defendants' Motion to Dismiss the Amended Complaint

The Court finally turns to Defendants' Motion to Dismiss the Amended Complaint, ECF No. 101. Before considering the arguments in the Motion, it is beneficial to first review in detail the claims asserted in the Amended Complaint.

The Amended Complaint includes five counts, the first three of which are largely or entirely unchanged from the original Complaint. Count I alleges that the policies set forth in the 2019 Redetermination Memo are arbitrary and capricious and therefore violate 5 U.S.C. § 706(2) of the APA for three reasons: (1) because the Memo's directives to USCIS asylum officers to evaluate whether an applicant was a UAC at the time of filing, and to defer to EOIR determinations that an applicant was not a UAC and that USCIS thus lacks jurisdiction, are contrary to the text and structure of the TVPRA, ECF No. 91 ¶ 155; (2) because the Memo does not address or acknowledge "any of the reasons for adopting the asylum policy in place since 2013 for UACs seeking asylum before USCIS," nor explain how the 2019 Memo addresses the issues that led to the adoption of the 2013 Kim Memo, nor "why consistency with [BIA] precedent relates to whether a UAC has subsequently been reunited with a parent or assigned a legal guardian," *id.* ¶ 156; and (3) because the Memo "fails to consider the reliance interests of children, including Plaintiffs, with pending asylum applications, who had relied in good faith on the asylum policy in place since 2013," *id.* ¶ 157. While the Amended Complaint does not identify specific paragraphs of § 706(2) that the 2019 Redetermination Memo allegedly violates, it states that the Memo is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law," echoing the language of 5 U.S.C. § 706(2)(A), and "in excess of statutory jurisdiction or authority," invoking § 706(2)(C). *Id.* ¶ 153.

Count II, unchanged from the original Complaint, asserts that the 2019 Redetermination Memo violates the procedural protections of the Fifth Amendment's Due Process Clause and is therefore "contrary to constitutional right, power, privilege or immunity" and invalid under 5 U.S.C. § 706(2)(B). *Id.* ¶ 162 (quoting 5 U.S.C. § 706(2)(B)). Plaintiffs allege that Defendants violate their due process rights by retroactively applying the asylum rules set forth in the 2019 Redetermination Memo to their applications, despite Plaintiffs' reasonable expectations that they would "benefit from the rights and protections accorded by the TVPRA to UACs, as outlined by the 2013 Kim Memorandum." *Id.* ¶¶ 160–61. Count III alleges that the asylum rules established in the 2019 Redetermination Memo are legislative rules required to be promulgated through notice and comment rulemaking under 5 U.S.C. § 553(b). *Id.* ¶¶ 166–69. Accordingly, Plaintiffs allege, because Defendants failed to use notice and comment procedures in promulgating the 2019 Redetermination Memo, the asylum policies it set forth were adopted "without observance of procedure required by law," violating 5 U.S.C. § 706(2)(D). *Id.* ¶¶ 165, 170.

Counts IV and V mirror the claims in Counts I and III but specifically concern USCIS's adoption of the policy of deferring to EOIR determinations of an asylum applicant's UAC status, as announced in the 2019 Redetermination Memo. Count IV alleges that the policy and its adoption violate 5 U.S.C. § 706(2) for three reasons: (1) because the policy departs from the 2013 Kim Memorandum without acknowledgement or adequate explanation; (2) because the policy is contrary to the TVPRA; and (3) because the policy fails to consider the reliance interests of asylum applicants who relied on the 2013 Kim Memo. *Id.* ¶¶ 173–74. As with Count I, the Amended Complaint does not link these allegations to specific provisions of 5 U.S.C.

§ 706(2), but the language used again makes clear that Plaintiffs allege violations of § 706(2)(A) and § 706(2)(C). *Id.* ¶ 172. Finally, Count V alleges that USCIS's deferral policy was adopted "without observance of procedure required by law," in violation of 5 U.S.C. § 706(2)(D), because notice and comment rulemaking under 5 U.S.C. § 553(b) was required. *Id.* ¶¶ 177–79.

Before turning to Defendants' arguments for dismissal of these claims, the Court must address procedural and threshold issues presented by Defendants' Motion. In *Goldfarb v. Mayor and City Council of Baltimore*, the Fourth Circuit explained that:

> In a Rule 12(b)(6) context, the reviewing court must determine whether the complaint alleges sufficient facts "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). This directive ordinarily limits a court's review to the "well-pled facts in the complaint[, which it must view] in the light most favorable to the plaintiff." *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011); *see also Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).

791 F.3d 500, 508 (4th Cir. 2015).

"Under narrow circumstances, a court may rely on extrinsic materials to determine a motion to dismiss without converting the proceeding into a motion for summary judgment." *Id.* (citing Fed. R. Civ. P. 12(d)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits....'" *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). Courts may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. "To be 'integral,' a document must be one 'that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"

27

*Brennan*, 361 F. Supp. 3d at 502 (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).

Here, Defendants have attached to their Motion to Dismiss the Sicard Declaration, ECF No. 101-2, as well as a January 2018 brief filed by ICE counsel in a BIA appeal that Defendants say demonstrates DHS's position concerning the effect of USCIS procedures on IJ consideration of asylum applications, ECF No. 101-3. *See* ECF No. 101-1 at 12. These documents are not properly before the Court at the Rule 12(b)(6) stage. They are neither expressly incorporated in the Complaint nor integral to it, nor is it clear that they would properly be subject to judicial notice had Defendants requested it. *See Brennan*, 361 F. Supp. 3d at 501 (noting that courts may also take judicial notice of matters of public record at the motion to dismiss stage). Accordingly, the Court will decline to consider these materials in evaluating the Amended Complaint and Motion to Dismiss.

The Court also notes that Defendants' Memorandum in support of their Motion begins with a lengthy narrative purporting to detail the history and evolution of USCIS and EOIR policy with respect to UAC asylum applications, focusing on the assertion that USCIS has had a longstanding practice of deferring to EOIR determinations of UAC status. ECF No. 101-1 at 3– 16. This extended presentation, which alludes to various documents and decisions but includes few citations other than to the two exhibits discussed previously, resembles a summary of an administrative record, despite the absence of any of the contents of such a record. By including this discussion, Defendants in effect ask the Court to look past the allegations in the Amended Complaint, accept a different and mostly unsubstantiated set of factual assertions, including claimed reasons the Defendant agencies took certain actions, and to rely on those assertions in evaluating Defendants' arguments for dismissal of the Amended Complaint.

The Court will decline to do so. Aside from the exceptions described previously, none of which apply here, a court's evaluation of a motion to dismiss is "limited to a review of the allegations of the complaint itself." *Goines*, 822 F.3d at 165–66. It is therefore procedurally improper for Defendants to present their own set of facts in support of their Motion to Dismiss, particularly without supporting materials, and to ask the Court to credit and apply them to make legal conclusions.[6] Doing so would, at best, result in a premature and underinformed adjudication of the issues in the Amended Complaint. Instead, as Plaintiffs argue cogently in their Opposition, Defendants must produce an administrative record to substantiate the numerous unsupported assertions on which they apparently intend to rely. ECF No. 109 at 24–27.

In their only apparent response to this argument, Defendants contend that their Motion can be resolved "in its present posture" because the questions Defendants say are at issue in the Amended Complaint – whether USCIS's interpretation of the relationship between the TVPRA's UAC provisions and the preexisting EOIR asylum regulatory scheme is consistent with the TVPRA, and whether the memorialization of that interpretation required notice and comment rulemaking – are merely matters of "statutory construction" and "the interplay of existing regulations with the TVPRA." ECF No. 111 at 1, 9, 14–16; *see id.* at 15 ("These are matters that this Court may determine on the present record because they involve the interplay of existing statutes and regulations").

This argument overlooks several components of Plaintiffs' claims. Whether the Defendant agencies' interpretation of the statutory and regulatory provisions at issue is consistent with the TVPRA, and whether the operationalizing of that interpretation in the IJ deferral policy

---

[6] To be clear, Plaintiffs have attached some of the relevant materials to the Amended Complaint, but Defendants do not purport to quote or draw from these documents when they describe them, and their explanations and discussions of agency reasoning and decisionmaking extend well beyond the contents of Plaintiffs' exhibits.

required notice and comment rulemaking, are only two aspects of the extensive claims Plaintiffs

assert in the Amended Complaint. As described previously, Plaintiffs also allege that the

adoption of the deferral policy violated the APA because Defendants failed to provide an

explanation for the change in USCIS practice and failed to consider reliance interests of the

UACs who applied for asylum under the 2013 Kim Memo policy. *Id.* ¶¶ 165, 170, 173–74. A

policy that an agency is empowered to enact may nonetheless be subject to judicial invalidation

if it is adopted in a manner that violates the APA. *See, e.g.*, *Dep't of Commerce v. New York*, 139

S. Ct. 2551, 2566–67, 2571–76 (2019). Accordingly, even if Defendants are correct that the IJ

deferral policy is consistent with the TVPRA and that notice and comment rulemaking was not

required, that would not resolve all of the matters in dispute.

For this reason, dismissal of the Amended Complaint on the limited grounds Defendants

advance is unwarranted. However, while Defendants' arguments do not reach the entirety of the

Amended Complaint, aspects of Plaintiffs' claims concern only Defendants' statutory and

regulatory authority to adopt the policies at issue. While typically an agency's authority to take a

challenged action is considered in light of an administrative record, nothing appears to prevent a

court from dismissing a claim that an action was unauthorized, despite the absence of a record, if

the claim entirely misapprehends the authorizing statutory or regulatory provisions. Accordingly,

the Court may consider Defendants' arguments concerning their authority to adopt the

challenged policies and may assess whether they merit dismissal of the relevant aspects of

Plaintiffs' claims.

Two threshold issues must be addressed before turning to these arguments, however.

First, as Defendants note, the parties have already agreed to preliminary relief that enjoins

USCIS from applying the asylum eligibility policy set forth in the 2019 Redetermination Memo

to bar individuals previously determined to be UACs from seeking asylum before USCIS, and from rejecting jurisdiction over the application of any UAC whose application would have been accepted under USCIS policy in place before the 2019 Memo. *See* ECF No. 71. Because the original Complaint and the TRO proceedings focused solely on USCIS redeterminations of UAC status, Defendants argue, the relief the Court has entered at the parties' joint request "essentially conclud[ed] that aspect of the case." ECF No. 101-1 at 3. This argument thus appears to reassert Defendants' mootness arguments from their initial Motion to Dismiss or, in the Alternative, for Summary Judgment with respect to the original Complaint, ECF No. 73, without an explicit reference to mootness doctrine. Defendants also incorrectly state that the Amended Complaint "largely omits the operative allegations from the original complaint." *Id.*

Plaintiffs respond that they have not abandoned any of the claims from the original Complaint. They note that "the parties have continued to dispute multiple aspects of the [2019 Redetermination Memo's] scope and what it would mean to restore the policy that predated the unlawful 2019 Redetermination Memo." ECF No. 109 at 20. This assertion appears to reference two subjects: USCIS's IJ deferral policy, and the Amended Complaint's allegations that "ICE, in its role as prosecutor in immigration court, frequently advocates for EOIR to assert and/or exercise its jurisdiction in [cases in which USCIS has initial jurisdiction] so as to deprive USCIS of the opportunity to exercise initial jurisdiction," and "has a policy or practice of advocating for [IJs] to conclude, contrary to the 2013 policy and despite the TRO and PI, that applicants who have turned 18 or reunited with a parent before applying for asylum are not within USCIS's jurisdiction." ECF No. 91 ¶¶ 18, 22, 108; *see* ECF No. 109 at 36 (summarizing these allegations as asserting that "DHS is using ICE to apply the 2019 Redetermination Memo").

Plaintiffs' allegations about the IJ deferral policy and ICE's practices in immigration

court are both entirely new to the Amended Complaint. *See* ECF No. 99 ¶¶ 155, 158, 171–79.

And Plaintiffs do not contest that USCIS has ceased conducting the redeterminations of asylum

applicants' UAC status that Plaintiffs specifically challenged in the original Complaint and TRO

proceedings. Defendants are thus correct in some sense that their agreement to an injunction

barring such redeterminations has addressed Plaintiffs' claims about the specific issues presented

in the original Complaint. But for two reasons Plaintiffs have identified, that does not render the

claims abandoned or defunct. First, Plaintiffs have plausibly alleged that USCIS first introduced

a written policy of deferring to IJ determinations of UAC status in the 2019 Redetermination

Memo. If that allegation is true, as the Court must take it to be in weighing a Motion to Dismiss,

Defendants' continued enforcement of the deferral policy would appear to be barred by the

Court's Order granting the preliminary injunction. ECF No. 71. At the very least, Plaintiffs have

raised an issue of Defendants' compliance with the Order that requires review of a complete

administrative record to resolve.

Second, Plaintiffs assert, and Defendants do not contest, that Defendants have not

rescinded the 2019 Redetermination Memo and appear to oppose a finding by the Court that it is

"substantively or procedurally unlawful." ECF No. 109 at 20–21. As Plaintiffs note, while

Defendants' motion to dismiss or for summary judgment with respect to the original Complaint

"offered to transform [the Court's] preliminary injunction into a Final Judgment," ECF No. 73-1

at 7, and argued that "plaintiffs have obtained everything they sought," the original Complaint in

fact requested that the Court declare "that the 2019 Redetermination Memorandum is unlawful,"

that it be vacated, and that Defendants be enjoined from "enforcing or applying any aspect of the

2019 Redetermination Memorandum," ECF No. 1 at 31. *See* ECF No. 95 at 13–15. Even before

the Amended Complaint was filed, therefore, Plaintiffs had not obtained all of the relief they

sought. That Plaintiffs have now raised a challenge to an additional "aspect of the 2019

Redetermination Memorandum," ECF No. 1 at 31, confirms that the claims and relief sought in

the initial Complaint are the proper subject of further litigation.

Defendants' second threshold argument is that the original four Plaintiffs lack standing to

challenge USCIS's IJ deferral policy because they have not alleged that the policy has played

any role in their cases. ECF No. 101-1 at 16. "Federal courts are limited to resolving cases and

controversies, U.S. Const. art. III, § 2, and a case or controversy does not exist unless the

plaintiff possesses standing to challenge the defendant's alleged misconduct." *S.C. Coastal*

*Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015) (citing

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To satisfy Article III's standing

requirement, '[t]he plaintiff must have suffered or be imminently threatened with a concrete and

particularized injury in fact that is fairly traceable to the challenged action of the defendant and

likely to be redressed by a favorable judicial decision.'" *Id.* (alteration in original) (quoting

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014)).

Here, Defendants essentially argue that the original four Plaintiffs have received all of the

relief they sought in the original Complaint, that they are not harmed by the aspects of the 2019

Redetermination Memo newly challenged in the Amended Complaint, and that they therefore

lack an injury in fact and must be dismissed. But in addition to ignoring that the four Plaintiffs'

claims have not been fully resolved, this argument overlooks the basic principle that "the

presence of one party with standing is sufficient to satisfy Article III's case-or-controversy

requirement." *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (quoting *Rumsfeld v. Forum*

*for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006)). Defendants do not dispute

that new Plaintiff E.D.G. has standing to challenge the IJ deferral policy, nor could they given that the policy was allegedly applied to reject USCIS jurisdiction over his asylum application. ECF No. 91 ¶¶ 54, 137–38. Accordingly, because E.D.G. has standing to challenge the deferral policy, the Court need not determine whether the original Plaintiffs do as well.

The Court thus finally turns to Defendants' substantive arguments in support of the Motion to Dismiss. To state a claim that survives a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a claim has crossed "the line from conceivable to plausible," the Court must employ a "context-specific" inquiry, drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570). The Court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court must "draw all reasonable inferences in favor of the plaintiff." *Id.* at 253 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "[B]ut [the Court] need not accept the legal conclusions drawn from the facts, and . . . need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id.* (first alteration in original) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

As noted previously, Defendants' arguments primarily concern whether USCIS's policy of deferring to IJ determinations of asylum applicants' UAC status is consistent with the TVPRA

and existing asylum and removal regulations. According to Defendants, in providing that USCIS "shall have initial jurisdiction over any asylum application filed by an unaccompanied alien child," the TVPRA granted USCIS initial jurisdiction over *only* applications by individuals who were UACs at the time of filing. ECF No. 101-1 at 18–19 (quoting 8 U.S.C. § 1158(b)(3)(C)). When an IJ has found that an individual was *not* a UAC when they filed their application, Defendants maintain, "the TVPRA's initial jurisdiction provision is not at issue because a court of competent jurisdiction" has determined that it "has no relevance to the applicant." *Id.* at 19–20. In support, Defendants point to the multiple pre-TVPRA regulations that vest in IJs exclusive jurisdiction over asylum applications of individuals in removal proceedings before them. *Id.* at 24 (citing 8 C.F.R. §§ 1003.14(b), 208.2(a), 1208.2(a), 1240.1(a)(1)(ii)). "Where [the initial jurisdiction] provision does not apply, USCIS is bound by these regulations, which provide that USCIS has no authority to accept" an application from an applicant whom an IJ has determined was not a UAC at the time of filing, Defendants conclude. *Id.*

Plaintiffs respond that this argument assumes without support that USCIS can regard the immigration court as a "'court of competent jurisdiction' even though (1) the TVPRA expressly assigns 'initial jurisdiction' to USCIS, 8 U.S.C. § 1158(b)(3)(C), and (2) the USCIS's own policies under the 2013 Kim Memo would produce a different jurisdictional outcome." ECF No. 109 at 30. Expanding on the second point, Plaintiffs cite allegations in the Amended Complaint that under the 2013 Kim Memo, USCIS exercised jurisdiction over asylum applications filed by individuals who had been initially deemed UACs by DHS, even if an IJ had subsequently determined that they were not UACs when they filed their applications. *See id.* at 11 (citing ECF No. 91 ¶¶ 10, 89–91). Plaintiffs also state that "there is no way to square a policy that requires USCIS to defer to the jurisdictional determinations of another agency with a statute that

delegates responsibility to USCIS to exercise initial jurisdiction over applications by UACs." *Id.* at 30. Finally, Plaintiffs argue that the TVPRA's initial jurisdiction provision "does not allow the agency to defer to IJ jurisdictional determinations that contradict UCSIS's own standards for determination," referring to the 2013 Kim Memo. *Id.* at 30 n.8.

It is clear from these arguments that the parties' dispute centers on the proper interpretation of the initial jurisdiction provision and whether the interpretation the Defendant agencies have adopted in developing the IJ deferral policy is consistent with the statute. Typically, when a case "concerns a challenge to an agency's construction of a statute, [courts] apply the familiar two-step analytic framework set forth in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984)." *King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014), *aff'd*, 135 S. Ct. 2480 (2015). Strangely, however, the parties have not presented the issue in *Chevron* terms. While Defendants discuss general statutory interpretation principles and cite *Chevron*-applying cases in support, Defendants do not address the *Chevron* framework itself. *See* ECF No. 111 at 3–4. And Plaintiffs sidestep the issue by implicitly asserting that the initial jurisdiction provision has only one possible meaning and by declining to meaningfully engage with Defendants' interpretation. *See* ECF No. 109 at 29–30.

As a result, the Court is left with an incomplete presentation of the issues raised by Plaintiffs' claim that the asylum policies established in the 2019 Redetermination Memo are inconsistent with the TVPRA. ECF No. 91 ¶¶ 155, 173. For that reason, the Court will decline to settle that issue at this stage and will await production of the administrative record and argument from the parties as to whether *Chevron* deference to Defendants' interpretation is appropriate. For partly related reasons, the Court will also decline to resolve the issue of whether promulgation of the IJ deferral policy required notice and comment rulemaking. Defendants

argue that notice and comment was unnecessary because the policy was simply the result of "interpreting the interplay of the TVPRA and the pre-existing regulatory scheme," and that "[a]rticulating that interpretation again in footnote 5 of the 2019 memorandum was, as a matter of law, consistent with the applicable authorities and imposed no new requirements or burdens of the type that require notice and comment rulemaking." ECF No. 111 at 11–12. Thus, by Defendants' own explanation, the issue of whether notice and comment was required turns in part on the question whether Defendants' interpretation of the TVPRA is permissible. *See also id.* at 15 ("As a matter of law, the plaintiffs' claims [that notice and comment was required] fail because the applicable statutes and regulations simply do not support the result vied for.").

Further, despite Defendants' assertions to the contrary, whether notice and comment rulemaking was necessary in this case is an issue that requires an administrative record to properly resolve. Defendants' argument that it was not required relies largely on the repeated claim that in adopting its interpretation of the TVPRA, "USCIS engaged in no new decision making that imposed a new obligation or requirement" and that the agency simply "analyzed the existing statutory and regulatory structure" before applying the interpretation that it reached in setting the IJ deferral policy. ECF No. 111 at 11. But no evidence or documentation of this alleged agency analysis and policymaking is before the Court. "[I]n order to permit meaningful judicial review, an agency must 'disclose the basis' of its action." *New York*, 139 S. Ct. at 2573 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–69 (1962)). Because "post-hoc rationalizations . . . have traditionally been found to be an inadequate basis for review," the Court must "consider the record made before the agency at the time the agency acted." *Roe*, 947 F.3d at 220 (quoting *Dow AgroSciences LLC*, 707 F.3d at 467–68)).

37

Therefore, before the Court can determine whether the IJ deferral policy was consistent with statutory authority and past practice as Defendants allege, Defendants must produce an administrative record and ground their arguments in the materials it includes, which Plaintiffs must also have the chance to examine and address. And the same conclusion applies to Defendants' additional argument that adopting the IJ deferral policy was not substantively arbitrary and capricious because USCIS's decisionmaking was reasonable and consistent with existing agency practice. ECF No. 101-1 at 22–23, 26–27; ECF No. 111 at 15–16. "Generally, an agency decision is arbitrary and capricious if 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Court cannot determine solely from representations by litigation counsel whether Defendants' actions and decisionmaking were adequately reasoned and grounded, let alone whether they lacked the various flaws that Plaintiffs have alleged and that Defendants have failed to address.

Defendants' final argument is that the Amended Complaint fails to state a claim against the newly added Defendants, ICE and its acting Director Michael Albence. Defendants first argue that the Amended Complaint fails to allege harm by ICE and "merely states that ICE attorneys 'may' make arguments in immigration court." ECF No. 101-1 at 28. This argument appears to respond to allegations in the Amended Complaint that ICE prosecutors "may advocate for EOIR jurisdiction and against USCIS jurisdiction" in the original Plaintiffs' ongoing removal proceedings. ECF No. 91 ¶¶ 122, 126, 130, 134. Defendants ignore, however, Plaintiffs'

additional allegations that Defendants have together implemented a policy of depriving USCIS

of jurisdiction over applications by UACs. *See id.* ¶¶ 18, 108. While USCIS's contribution to the

alleged policy is Footnote 5 of the 2019 Redetermination Memo, ICE allegedly participates by

advocating in immigration court for IJs to take or exercise jurisdiction over asylum applications

by claimed UACs, with the effect of preventing USCIS adjudication of those applications. *See*

*id.* ¶¶ 18, 22. The purpose of this policy, Plaintiffs allege, is to "deny[] UAC applicants the initial

non-adversarial hearing to which the TVPRA entitles them." *Id.* ¶ 108.

These allegations are incorporated into Count I of the Amended Complaint, which alleges

that "Defendants have perpetuated [the] arbitrary and capricious policy [adopted in the 2019

Redetermination Memo] by advocating for EOIR determinations of UAC status, by delaying

USCIS determination of cases and thereby allowing EOIR adversarial merits hearings to go

forward without any USCIS adjudication." *Id.* ¶ 158; *see also id.* at 12 n.2 (explaining that ICE

has been added as a party because of its "role in furthering the unlawful policy of the 2019

Redetermination Memo"). Because Count I asserts that the policies adopted in the 2019

Redetermination Memo violate the TVPRA, Plaintiffs have set forth an APA claim against ICE

and Acting Director Albence based on their implementation of those policies. *See id.* ¶¶ 155–57.

Further, as Plaintiffs note, Defendants' Motion states that "ICE, and indeed DHS as a

whole, has taken a position as regards the interpretation of the TVPRA," and cites a brief filed in

a BIA proceeding in which "DHS and ICE provided to the [BIA] the agency interpretation of the

TVPRA" with respect to UAC asylum applications. ECF No. 101-1 at 29–30. While the Court

neither treats this assertion in a Motion to Dismiss as a statement of fact, nor considers the

contents of the cited material, the statement demonstrates the plausibility of Plaintiffs'

allegations that ICE's advocacy before EOIR concerning UACs is part of a broader, cross-

agency policy of interpreting the TVPRA's initial jurisdiction provision in a certain manner. Because the permissibility of that interpretation is a matter that the parties must litigate more comprehensively, as discussed previously, dismissing the ICE Defendants on any ground related to the substance of Plaintiffs' claims is unwarranted at this stage.

Defendants finally argue that "it is problematic to suggest that the conduct of ICE attorneys is wrongful in any sense" and that "ICE has the right and the professional obligation to act as an advocate during immigration court removal proceedings." ECF No. 101-1 at 29. Defendants also state that ICE attorneys "have a duty of candor to the tribunal and must recognize the existence of pertinent legal authorities" and that "Plaintiffs essentially ask the Court to bar ICE attorneys from making legal arguments that are based on binding precedent," referring to the *MACO* decision. ECF No. 111 at 16. These arguments conflate separate considerations and misapprehend Plaintiffs' position. The Amended Complaint cannot be read to demand that the Court bar ICE attorneys from identifying relevant precedent in immigration court proceedings in violation of their professional obligations. Rather, Plaintiffs argue that ICE attorneys are implementing an unlawful agency policy by advocating for IJs to inquire into asylum applicants' UAC status. While ICE attorneys act in EOIR proceedings as both prosecutors and agency staff acting pursuant to official policy, Plaintiffs' allegations are plainly targeted at the latter role rather than the former. Accordingly, Defendants' argument lacks merit.

Because Defendants' arguments for dismissal of the Amended Complaint are either unpersuasive, premature, or unsupported by necessary evidence, Defendants' Motion to Dismiss will be denied. Defendants must produce an administrative record so that the Court may "consider the record made before the agency at the time the agency acted." *Roe*, 947 F.3d at 220 (quoting *Dow AgroSciences LLC*, 707 F.3d at 467–68)). The Court's denial of the present

Motion is without prejudice, however, to Defendants' right to reassert the same arguments of law in a subsequent dispositive motion with proper support in the administrative record.

## III.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs' Unopposed Motion for Extension of Time to Respond to Defendants' Motion to Dismiss, and to File an Amended Complaint, ECF No. 74, Plaintiff E.D.G.'s Motion for Permission to Proceed Under Pseudonym and to Omit His Address from the Caption in the First Amended Complaint, ECF No. 92, and Plaintiffs' Motion to Seal, ECF No. 93. The Court will deny Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment, ECF No. 73, Plaintiffs' Motion to Enforce the Preliminary Injunction, ECF No. 75, and Defendants' Motion to Dismiss the Amended Complaint, ECF No. 101. A separate Order shall issue.


Date: June 3,  2020                                    /s/_____
                                                       GEORGE J. HAZEL
                                                       United States District Judge