# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

**J.O.P.**, *et al.*,

       Plaintiffs,

    v.

**U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*,

       Defendants.

Civil Action No. 8:19-CV-01944-GJH

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
## AND APPOINTMENT OF CLASS COUNSEL

## TABLE OF CONTENTS

**Page**

I.    BACKGROUND ................................................................................................. 3

II.   ARGUMENT ..................................................................................................... 6

    A.    The Proposed Class Meets the Requirements of Rule 23(a) .................................. 7

        1.    The Proposed Class Easily Satisfies the Numerosity Requirement ........... 7

        2.    The Proposed Class Presents Common Questions of Law and Fact ......... 8

        3.    Plaintiffs' Claims Are Typical of Proposed Class Members' Claims ................................................................................................. 11

        4.    The Named Plaintiffs Will Adequately Protect the Interests of the Proposed Class Members, and Counsel Are Qualified To Litigate this Action ................................................................................................ 12

        5.    The Proposed Class Is Ascertainable ...................................................... 14

    B.    Plaintiffs Satisfy the Requirements of Rule 23(b) ............................................... 15

III.  CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaya v. DGS Constr., LLC,*
  326 F.R.D. 439 (D. Md. 2018)..................................................................11, 14, 15

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)................................................................................12

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
  155 F.3d 331 (4th Cir. 1998) .................................................................8, 11

*Cent. Wesleyan Coll. v. W.R. Grace & Co.,*
  6 F.3d 177 (4th Cir. 1993) .....................................................................8

*Deiter v. Microsoft Corp.,*
  436 F.3d 461 (4th Cir. 2006) ................................................................11

*Doe v. Charleston Area Med. Ctr., Inc.,*
  529 F.2d 638 (4th Cir. 1975) ................................................................8

*EQT Prod. Co. v. Adair,*
  764 F.3d 347 (4th Cir. 2014) ...............................................................8, 14

*Fangman v. Genuine Title, LLC,*
  2016 WL 6600509 (D. Md. Nov. 8, 2016) ............................................7

*Moreno Galvez v. Cuccinelli,*
  2019 WL 3219418 (W.D. Wa. July 17, 2019)......................................15

*Guilford Coll. v. McAleenan,*
  389 F. Supp. 3d 377 (M.D.N.C. 2019) .................................................9

*Gunnells v. Healthplan Servs., Inc.,*
  348 F.3d 417 (4th Cir. 2003) ...............................................................12

*Harris v. Rainey,*
  299 F.R.D. 486 (W.D. Va. 2014).........................................................8

*J.L. v. Cissna,*
  2019 WL 415579 (N.D. Cal. Feb. 1, 2019) .........................................15

*Krakauer v. Dish Network, LLC,*
  925 F.3d 643 (4th Cir. 2019) ...............................................................14, 15

ACTIVE/100478224.8

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)..................................................................................16

*Newsome v. Up-To-Date Laundry, Inc.*,
    219 F.R.D. 356 (D. Md. 2004).....................................................................8

*R.F.M. v. Nielsen*,
    365 F. Supp. 3d 350 (S.D.N.Y. 2019).........................................................15

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)....................................................................................6

*Soutter v. Equifax Info. Servs., LLC*,
    307 F.R.D. 183 (E.D. Va. 2015)..................................................................13

*Spotswood v. Hertz Corp.*,
    2019 WL 498822 (D. Md. Feb. 7, 2019) ....................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..............................................................................10, 16

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ......................................................................12

**Other Authorities**

7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1760 (3d ed.
    2005) ...........................................................................................................14

Federal Rule of Civil Procedure 23 ................................................................. *passim*

## INTRODUCTION

Plaintiffs J.O.P., M.A.L.C., M.E.R.E., K.A.R.C., and E.D.G. ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated to challenge the policies set forth in Defendants' May 31, 2019 memorandum (the "2019 Redetermination Memo"). The 2019 Redetermination Memo enacts restrictions on the scope of Defendant USCIS's initial jurisdiction over asylum claims, corresponding restrictions on exemption from a time bar to asylum claims, and deference to EOIR jurisdictional determinations, which deny Plaintiffs the non-adversarial forum and associated protections Congress provided to those who fled their home countries to escape violence and came to the United States as unaccompanied children. Defendants' 2019 Redetermination Memo—entered with no public notice but for a June 14, 2019 internet posting—reverses the USCIS policy that has been in place since 2013 (the "2013 Kim Memorandum") and applies it to all children (even those determined to be a UAC before the June 30, 2019 policy start date), retroactively stripping jurisdiction over the claims of asylum applicants.[1] In their haste to reverse the 2013 Kim Memorandum and replace it with one that is inconsistent with the governing statute, Defendants dispensed with the process required by the Administrative Procedure Act. Notwithstanding this Court's preliminary injunction requiring Defendants to continue to adjudicate UAC asylum cases as it had under the 2013 Kim Memorandum and prohibiting them from applying the 2019 Redetermination Memo, Defendants persist in practices that advance the policy set forth in the 2019 Redetermination Memo,

---

[1] Although Defendants offered the Court a proposed temporary restraining order prohibiting the retroactive application of the new policy at a July 19, 2019 hearing on Plaintiffs' Motion for a Temporary Restraining Order, Defendants in fact applied the policy retroactively both before *and after* the hearing, even after this Court entered its August 2, 2019 temporary restraining order and its October 15, 2019 preliminary injunction. *See* D.I. 76. Accordingly, Defendants' offer appears to have represented a bargaining position and not Defendants' position on the application of the new policy, and thus its retroactive application is still a live issue.

including withholding USCIS adjudication of asylum applications where jurisdiction is proper

under the 2013 policy, and deferring to EOIR jurisdictional determinations.  This advancement

of the 2019 Redetermination Memo has resulted in improper denials of USCIS jurisdiction over

UAC asylum applications, which previously would have been accepted by USCIS, despite this

Court's order requiring Defendants to return to their previous practice.

Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs

respectfully move this Court to certify the following class with the named Plaintiffs as class

representatives:

> All individuals nationwide who prior to the effective date of a lawfully
> promulgated policy prospectively altering the policy set forth in the 2013 Kim
> Memorandum (1) were determined to be an Unaccompanied Alien Child; and (2)
> who had filed an asylum application that was pending with United States
> Citizenship and Immigration Services ("USCIS"); and (3) on the date they filed
> their asylum application with USCIS, were 18 years of age or older, or had a
> parent or legal guardian in the United States who is available to provide care and
> physical custody; and (4) for whom USCIS has not adjudicated the individual's
> asylum application on the merits.[2]

Plaintiffs also move for an order appointing Kids in Need of Defense (KIND), Catholic Legal

Immigration Network (CLINIC), Public Counsel, and Goodwin Procter LLP as class counsel

pursuant to Federal Rule of Civil Procedure 23(g).

The proposed class satisfies each of the requirements set forth in Rule 23(a) and is

appropriate for certification under Rule 23(b)(2), as Defendants have "acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The

---

[2] This class definition was revised in Plaintiffs' First Amended Complaint to account for
individuals whose asylum applications were unlawfully denied adjudication in violation of the
preliminary injunction in place in this case.

proposed class consists of individuals who, like Plaintiffs, have suffered or stand to suffer common harms from Defendants' unlawful policy.

First, each member of the proposed class has already suffered a common harm when Defendants instituted their new policy without engaging in notice-and-comment rulemaking or even considering unaccompanied children's interests; the proper remedy for this denial of procedural rights is vacating the policy. Second, until this Court enjoined Defendants from applying the policy, Defendants had begun using it to reject asylum applications for lack of jurisdiction, denying some proposed class members the rights they had had under the 2013 Kim Memorandum and punishing their reasonable reliance on that policy, and threatening to deny these rights to the rest of the proposed class. Even after the preliminary injunction was entered, Defendants have continued to implement the 2019 Redetermination Memo—for example, by deferring to EOIR jurisdictional determinations as first required under the 2019 Redetermination Memo based on a novel and unsupported interpretation of the 2013 Kim Memorandum's "affirmative act" language. Consequently, Plaintiffs and other unaccompanied children are losing valuable rights merely for following guidance that Defendants issued as recently as two weeks before the date reflected on the 2019 Redetermination Memo. This Court has already entered a temporary restraining order, later converted to a preliminary injunction, based on these harms, which affect the proposed class uniformly. *See* D.I. 55, 71. Accordingly, this Court should grant class certification.

## I.    BACKGROUND

The historical and factual background of Plaintiffs' claims are set forth in more detail in their First Amended Complaint and memorandum in support of their Motion to Enforce the Preliminary Injunction, D.I. 91, 76, and in extensive detail in this Court's order denying the motions to dismiss and to enforce the preliminary injunction, D.I. 115.

3

Plaintiff J.O.P. was born in Guatemala and is currently 18 years old.  Plaintiff J.O.P. left Guatemala in 2015, when he was 14, after witnessing a murder and receiving violent threats. After Plaintiff J.O.P. reached the United States, DHS officials apprehended him, determined him to be a UAC on or about November 25, 2015, and placed him in removal proceedings.  After being held in a shelter for UACs in Texas, in December 2015, Plaintiff J.O.P. was reunited with his mother in Maryland, where he enrolled in high school.  On February 20, 2018, Plaintiff J.O.P. filed an asylum application with USCIS.  In March 2018, Plaintiff J.O.P. complied with a USCIS notice for biometrics collection, but USCIS has not scheduled him for an interview on his asylum application.  *See* D.I. 91 ¶¶ 25-30.

Plaintiff M.A.L.C. was born in Guatemala and is currently 21 years old.  Plaintiff M.A.L.C.'s family received repeated death threats when he was a child; his father was murdered in 2010 and his mother was murdered in 2011.  Guatemalan authorities neither investigated the murders nor arrested anyone.  Afterward, Plaintiff M.A.L.C. continued to receive threats of violence and extortion.  In fear for his life, Plaintiff M.A.L.C. fled to the United States at the age of 17.  In August 2016, Plaintiff M.A.L.C. was apprehended by DHS officials who determined him to be a UAC and placed him in removal proceedings.  After a short period in a shelter for UACs, Plaintiff M.A.L.C. was released to his older sister in California, where he lives and attends school.  Plaintiff M.A.L.C. filed an application for asylum with USCIS on February 14, 2018, when he was 19 years old, and USCIS has not scheduled him for an interview on his application.  *See* D.I. 91 ¶¶ 31-35.

Plaintiff M.E.R.E. was born in El Salvador and is currently 21 years old.  Plaintiff M.E.R.E. fled El Salvador in October 2014 at the age of 15 because of discrimination, persecution, and abuse he experienced based on his sexual orientation.  In November 2014,

Plaintiff M.E.R.E. was apprehended by DHS officials in Texas, determined to be a UAC, and placed in removal proceedings. After being transferred to a shelter for UACs in November 2014, Plaintiff M.E.R.E. was released to live with his parents in Maryland, where he attended and graduated from high school. Plaintiff M.E.R.E. filed an asylum application with USCIS on March 30, 2018, at the age of 18. In April 2018, he had his biometrics collected, but USCIS has not scheduled him for an interview on his asylum application. *See* D.I. 91 ¶¶ 36-41.

Plaintiff K.A.R.C. was born in El Salvador and is currently 21 years old. Plaintiff K.A.R.C. fled from El Salvador in May 2016 when he was 17 years old. He had experienced sustained physical abuse from his father and brother for his perceived sexual orientation, and in April 2016 Plaintiff K.A.R.C. was gang-raped by MS-13 gang members. One week later, the gang threatened him with a firearm. In May 2016, Plaintiff K.A.R.C. was arrested by DHS officials and determined to be a UAC, placed in removal proceedings, and transferred to a shelter for UACs in Texas. In October 2016, Plaintiff K.A.R.C. was released from the shelter to live with an aunt in Maryland, who did not treat him well. In 2017, shortly before turning 18, Plaintiff K.A.R.C. moved to housing run by an organization that helps homeless youth and subsequently moved into a shared apartment with friends. He graduated from high school with a 3.7 GPA. In the fall of 2017, Plaintiff K.A.R.C. filed an application for asylum with USCIS. He has not been scheduled for an interview on his asylum application. K.A.R.C. attended a biometrics appointment in October 2017 and attended an interview at the asylum office in November 2017. USCIS has yet to issue a decision on his asylum application. *See* D.I. 91 ¶¶ 42-46.

Plaintiff E.D.G. was born in Honduras and is currently 21 years old. Plaintiff E.D.G. fled Honduras in June 2016, when he was 17 years old. He had been sexually, physically, and

emotionally abused in Honduras for years, and he was targeted by a gang for recruitment and grievously harmed by that gang for refusing to join. In July 2016, after Plaintiff E.D.G. reached the United States, DHS officials determined he was a UAC and placed him in removal proceedings. He was transferred to a shelter for UACs. In May 2017, he was released from the shelter to an unrelated sponsor in Missouri. In late 2017, when Plaintiff E.D.G. was 18 years old, he filed his asylum application with USCIS. A USCIS asylum officer interviewed Plaintiff E.D.G. on his asylum application in March 2018, but never issued a decision on the merits of his application. On October 10, 2018, an immigration judge ordered Plaintiff E.D.G. removed after concluding that EOIR had jurisdiction over his asylum application and denying it on the merits. An appeal from his removal order remains pending before the Board of Immigration Appeals. On July 25, 2019, USCIS relied on the 2019 Redetermination Memo to reject jurisdiction over Plaintiff E.D.G.'s asylum application, and the agency reopened his case in compliance with this Court's temporary restraining order on August 5, 2019. On September 30, 2019, while the Court's temporary restraining order remained in effect, USCIS again rejected jurisdiction over Plaintiff E.D.G.'s asylum application based on the 2019 Redetermination Memo and its instruction to defer to EOIR jurisdictional determinations. *See* D.I. 91 ¶¶ 47-54.

## II.    ARGUMENT

Federal Rule of Civil Procedure 23 "creates a categorical rule entitling a plaintiff whose suit" satisfies "the criteria set forth in subdivision (a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation)" and "fit[s] into one of the three categories described in subdivision (b)" to "pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). As detailed further below, Plaintiffs' proposed class satisfies each requirement in Rule 23(a) and qualifies for certification under Rule 23(b)(2).

### A.    The Proposed Class Meets the Requirements of Rule 23(a)

#### 1.    The Proposed Class Easily Satisfies the Numerosity Requirement

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The Fourth Circuit has held that '[n]o specified number is needed to maintain a class action.'" *Fangman v. Genuine Title, LLC*, 2016 WL 6600509, at *8 (D. Md. Nov. 8, 2016) (quoting *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984)). However, "[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical." *Id.* (citation omitted).

Here, the number of prospective class members greatly exceeds the requirement to establish numerosity. USCIS's own published statistics show that thousands of UACs who have already filed asylum applications are likely to be affected by the policy set forth in the 2019 Redetermination Memo. At the end of March 2019, USCIS's records reflect that there were 27,106 pending asylum cases filed under the initial jurisdiction provision of the TVPRA while applicants were in removal proceedings.[3] Of these 27,106 pending cases, USCIS's public statements suggest that a substantial proportion, if not a majority, involve UACs who have been placed with one or more parents.[4] These statistics provided by USCIS do not specify how many of the total number turned 18 before filing their asylum applications, as they were entitled to do under the 2013 policy, nor do they include individuals who have not yet filed an asylum

---

[3] U.S. Citizenship & Immigration Servs., *MPA and PRL Report – Fiscal Year 2019* (2019), https://www.uscis.gov/outreach/asylum-division-quarterly-stakeholder-meeting-10 (27,106 pending "PRL" cases); U.S. Citizenship & Immigration Servs., *Asylum Statistics Key* (2019), https://www.uscis.gov/outreach/asylum-division-quarterly-stakeholder-meeting-10 (defining "PRL" as "[a]sylum applicants of any age filing with USCIS under the initial jurisdiction provision of the [TVPRA] while in removal proceedings").

[4] Memorandum from John Kelly, Secretary of the U.S. Dep't of Homeland Sec. 10 (Feb. 20, 2017), https://www.dhs.gov/sites/default/files/publications/17_0220_S1_Implementing-the-Presidents-Border-Security-Immigration-Enforcement-Improvement-Policies.pdf ("Approximately 60% of minors initially determined to be 'unaccompanied alien children' are placed in the care of one or more parents[.]").

application.  The Court can reasonably conclude that the proposed class, which likely numbers in

the thousands, is sufficiently numerous.  *See, e.g.*, *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6

F.3d 177, 183 (4th Cir. 1993) (noting without dispute district court's finding "that some 480

potential class members would easily satisfy the numerosity requirement"); *Harris v. Rainey*,

299 F.R.D. 486, 489 (W.D. Va. 2014) ("[I]t is not required that the exact size of a class be

established.  Indeed, where general knowledge and common sense would indicate that it is large,

the numerosity requirement is satisfied." (citation and internal quotation marks omitted));

*Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 360-61 (D. Md. 2004) ("Generally,

fewer than 20 employees will not satisfy numerosity although more than 40 will.").  Where Rule

23(b)(2) is concerned, even "speculative and conclusory representations" regarding numerosity

suffice for class certification.  *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th

Cir. 1975) (citation omitted).

### 2.    The Proposed Class Presents Common Questions of Law and Fact

To establish commonality, Plaintiffs must show that "there are questions of law or fact

common to the class."  Fed. R. Civ. P. 23(a)(2).  "Although the rule speaks in terms of common

questions, 'what matters to class certification . . . [is] the capacity of a classwide proceeding to

generate common *answers* apt to drive the resolution of the litigation."  *EQT Prod. Co. v. Adair*,

764 F.3d 347, 360 (4th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350

(2011)).  "A single common question will suffice, but it must be of such a nature that its

determination 'will resolve an issue that is central to the validity of each one of the claims in one

stroke.'"  *Id.* (internal citations omitted) (quoting *Wal-mart Stores*, 564 U.S. at 350).  The factual

and legal claims of proposed class members need not be "identical . . . in all respects."

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998).

There is a single question at the core of this case: the legality, in substance and in process, of the 2019 Redetermination Memo. That question includes several facets: whether the 2019 Redetermination Memo was implemented without adequate process under the APA, whether the 2019 Redetermination Memo is fatally inconsistent with the TVPRA, whether implementation of the 2019 Redetermination Memo constitutes arbitrary and capricious agency action, whether it violates due process to apply the 2019 Redetermination Memo's policy to individuals who had been determined to be UACs while the 2013 Kim Memorandum has been in effect but did not file asylum applications until after turning 18 or before being reunited with parents or legal guardians, and whether USCIS may deny jurisdiction based on novel "affirmative acts" such as EOIR jurisdictional determinations consistent with their practice under the 2013 Kim Memorandum. Each of these subsidiary questions is common to the entire class, and each admits to a common answer. No factual distinctions between the situations of individual class members will affect the procedural legitimacy of Defendants' choice to forego notice-and-comment rulemaking, and if this Court finds that Defendants' actions violate the APA, the only appropriate remedy is to vacate the agency action entirely to the benefit of the entire class. *See, e.g.*, *Guilford Coll. v. McAleenan*, 389 F. Supp. 3d 377, 396-97 (M.D.N.C. 2019) ("[W]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." (quoting *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998))). The same goes for Defendants' arbitrary and capricious failure to consider reliance interests and their decision to implement a policy upending established substantive rights. Plaintiffs all raise the same due process rights, and all of their challenges to the 2019 Redetermination Memo present the same legal questions of whether Defendants may abruptly

and unilaterally strip them of a non-adversarial forum to address their asylum claims and, as a result, impose a time bar on those claims. And the inescapable conflict between Defendants' new policy, of inventing "affirmative acts" to carry out the policy behind the 2019 Redetermination Memo, and the aims and provisions of the TVPRA is a matter of pure law distinct from any of the proposed class members' individual circumstances. Any of these common questions would suffice to satisfy the commonality requirement of Rule 23(a)(2). *Walmart Stores*, 564 U.S. at 350.

The answers to these common questions will unquestionably "drive the resolution" of the case. *Id.* In short, if any one of these questions is answered in Plaintiffs' favor, then Defendants will be required to withdraw their policy entirely and the proposed class members will *all* be free from Defendants' attempt to strip USCIS of jurisdiction over their asylum claims. Each of these questions of law, which do not rely on the individual facts of the proposed class members' situations, has the potential to "drive" the provision of relief to all class members, in one fell swoop, by invalidating the 2019 Redetermination Memo. The proposed class members thus have raised a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 352.

Any factual distinctions between the proposed class members are immaterial in light of the common harm they have suffered and will suffer from Defendants and the nature of the common issues they seek to resolve. The relevant facts for resolving this case are all common to every class member: each was determined to be a UAC while the 2013 Kim Memorandum was in effect; each has since turned 18 or joined a parent or legal guardian such that they would not be determined to be UACs if reevaluated today; each, pursuant to USCIS's consistent practice

10

under the 2013 Kim Memorandum, was entitled to pursue their asylum claim at the time of their

choosing; and each, with the illegitimate introduction of the 2019 Redetermination Memo, was

subjected to USCIS's rejection of their asylum claims on jurisdictional grounds for filing an

application after turning 18 or after joining a parent or legal guardian.  Plaintiffs, through this

case, do not seek any resolution of the merits of their asylum claims, which may turn on the

specific facts of their history or origin.  Instead, they ask this Court to deny Defendants' attempt,

on a categorical and context-blind basis, to strip jurisdiction over their asylum claims from

USCIS.  They ask for this based on Defendants' failure to follow the rules that apply to

Defendants, namely the APA, the TVPRA, and the Due Process Clause of the U.S. Constitution.

Accordingly, the proposed class satisfies the commonality requirement of Rule 23(a)(2) because

all class members allege the same injuries and seek the same relief, which would follow from the

resolution of any of the aforementioned common questions of law.

### 3.    *Plaintiffs' Claims Are Typical of Proposed Class Members' Claims*

Under Rule 23(a)(3), class representatives must show that their claims are "typical of the

claims . . . of the class."  Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims "cannot be so different from

the claims of absent class members that their claims will not be advanced by" proof of Plaintiffs'

individual claims.  *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006).  "In

analyzing this question, a court compares the class representative's claims and defenses to those

of the absent class members, considers the facts needed to prove the class representative's

claims, and assesses the extent to which those facts would also prove the claims of the absent

class members."  *Amaya v. DGS Constr., LLC*, 326 F.R.D. 439, 447 (D. Md. 2018).  The

commonality and typicality requirements "tend to merge, with commonality and typicality

serv[ing] as guideposts for determining whether  . . . maintenance of a class action is economical

and whether the named plaintiff's claim and the class claims are so interrelated that the interests

of the class members will be fairly and adequately protected in their absence." *Broussard*, 155

F.3d at 337 (internal quotation marks omitted) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147,

157 n.13 (1982)); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)

(same).

Plaintiffs' claims are typical of those of the class for the same reasons that the class

claims rely on common questions of law and fact:  the claims operate on the same legal theories

and seek the same relief to remedy the same injury.  The underlying issue here is the illegal

manner in which Defendants took injurious action against the proposed class *on a categorical*

*basis* and *as a class*.  In fact, even if each proposed class member did challenge the 2019

Redetermination Memo in their own individual suit, each such case would still rely upon the

same evidence (*e.g.*, the administrative record or lack thereof) to establish the same legal

conclusions (*i.e.*, that Defendants violated the APA, acted arbitrarily and capriciously, and

violated due process rights).  There is no danger that the present case will devolve into inefficient

mini-trials, but rather that unconsolidated cases would constitute a kaleidoscopic multiplication

of identical lawsuits.

> 4.    *The Named Plaintiffs Will Adequately Protect the Interests of the*
> *Proposed Class Members, and Counsel Are Qualified To Litigate this*
> *Action*

To satisfy Rule 23(a)(4), the named Plaintiffs must establish that "[t]he representative

parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

This inquiry "serves to uncover conflicts of interest between named parties and the class they

seek to represent."  *Amchem*, 521 U.S. at 625.  For a conflict to preclude class certification, the

conflict "must be more than merely speculative or hypothetical;" instead, it "must be

fundamental" and "go to the heart of the litigation."  *Gunnells v. Healthplan Servs., Inc.*, 348

F.3d 417, 430-31 (4th Cir. 2003) (citations omitted); *see also Ward v. Dixie Nat'l Life Ins. Co.*,

595 F.3d 164, 180 (4th Cir. 2010) ("For a conflict of interest to defeat the adequacy requirement, that conflict must be fundamental." (citation and internal quotation marks omitted)).

The named Plaintiffs have no interests at odds with the proposed class members and do not seek any individual benefit from this litigation beyond that which would inure to the class as a whole. *See* Ex. A, J.O.P. Decl.; Ex. B., M.A.L.C. Decl.; Ex. C, M.E.R.E. Decl.; Ex. D, K.A.R.C. Decl.; Ex. E, E.D.G. Decl. Plaintiffs and the proposed class members all aim to obtain injunctive relief to protect them from the application of the 2019 Redetermination Memo and petition this Court to vacate the unlawful agency action entirely to vindicate all proposed class members' rights. Because there is no conflict of interest between the named Plaintiffs and the proposed class members and because the named Plaintiffs' interests are coextensive with those of the class, the named Plaintiffs are adequate representatives.

Plaintiffs' counsel will also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(g)(4).[5] Rule 23(g) requires the Court to consider four non-exhaustive factors: "the work counsel has done in identifying or investigating potential claims in the action;" "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" "counsel's knowledge of the applicable law;" and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs are represented by attorneys from Kids in Need of Defense (KIND), Catholic Legal Immigration Network (CLINIC), Public Counsel, and Goodwin Procter LLP. Collectively, counsel have broad experience in class action litigation and complex immigration litigation, and counsel's experience has resulted in a thorough understanding of the governing

---

[5] Although adequacy of class counsel has traditionally been analyzed under Rule 23(a)(4), since 2003 it has been governed by Rule 23(g). *See Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 212 (E.D. Va. 2015). However, counsel will address it here in order to inform the Court's complete analysis of the adequacy of the proposed class members' representation.

law. *See* Ex. F, Burgess Decl.; Ex. G, Shuchart Decl.; Ex. H, Jackson Decl.; Ex. I, Mendez Decl.

Counsel have vigorously pursued Plaintiffs' claims in this suit, especially in light of the

suddenness of Defendants' implementation of the 2019 Redetermination Memo, the urgency of

responding to it, and multiple lapses in Defendants' compliance with the Court's preliminary

injunction. Plaintiffs seek no monetary damages, so there is no potential for a financial conflict

of interest in this case. Counsel have the experience, ability, and willingness to zealously

represent the proposed class members.

5. <em>The Proposed Class Is Ascertainable</em>

In addition, the Fourth Circuit has held that "Rule 23 contains an implicit threshold

requirement that the members of a proposed class be readily identifiable," creating an

"ascertainability requirement." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)

(citations and internal quotation marks omitted); *see also Krakauer v. Dish Network, LLC*, 925

F.3d 643, 658 (4th Cir. 2019). Under this rule, "[a] class cannot be certified unless a court can

readily identify the class members in reference to objective criteria." *Id.*; *see also* 7A Charles

Alan Wright et al., *Federal Practice & Procedure* § 1760 (3d ed. 2005) ("[T]he requirement that

there be a class will not be deemed satisfied unless . . . it is administratively feasible for the court

to determine whether a particular individual is a member."). Plaintiffs cannot "merely identify a

mass of data which could aid the process of identifying class members," but must also "provide

an efficient method of using this information." *Spotswood v. Hertz Corp.*, 2019 WL 498822, at

*6 (D. Md. Feb. 7, 2019). "While it is not necessary to identify every class member at the time

of certification . . . , a class cannot be certified if its membership must be determined through

individualized fact-finding or mini-trials." *Amaya*, 326 F.R.D. at 446 (citation and internal

quotation marks omitted); *see also Krakauer*, 925 F.3d at 658 ("The goal is not to identify every

class member at the time of certification, but to define a class in such a way as to ensure that

14

there will be some administratively feasible [way] for the court to determine whether a particular individual is a member at some point." (citation and internal quotation marks omitted)).

The proposed class here is suitably ascertainable because it will be a simple matter, based on clear and objective criteria, to identify class members. *See, e.g.*, *Amaya*, 326 F.R.D. at 448 (finding classes ascertainable where members could be identified "without a significant administrative burden"). A threshold marker of class membership is action taken by Defendants themselves, namely, DHS's determination that a child is a UAC. The filing of an asylum application with USCIS is also a matter established in government records, and an applicant's age and custodial circumstances at the time of filing are also objectively verifiable. Given these unambiguous and objective considerations for identifying class members, the class meets the ascertainability requirement. *See, e.g.*, *Krakauer*, 925 F.3d at 658 (finding class ascertainable when a series of records would allow class members to be identified "on a large-scale basis" even though it required cross-referencing different data sets). Several recent class actions against Defendant USCIS have involved certification of classes of young applicants through examination of USCIS records, consistent with this requirement. *See, e.g.*, *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350 (S.D.N.Y. 2019); *Moreno Galvez v. Cuccinelli*, 2019 WL 3219418 (W.D. Wa. July 17, 2019); *J.L. v. Cissna*, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019).

B.    **Plaintiffs Satisfy the Requirements of Rule 23(b)**

In addition to satisfying Rule 23(a)'s four requirements, a class must also fall under one of Rule 23(b)'s three subsections. A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). According to the U.S. Supreme Court, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that

15

the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360 (citation and internal quotation marks omitted). Thus, certification under Rule 23(b)(2) is appropriate only when "a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

The proposed class here easily satisfies Rule 23(b)(2). The basis of Plaintiffs' First Amended Complaint is that Defendants improperly instituted a new policy through the 2019 Redetermination Memo that would, for all members of the proposed class, result in USCIS's rejecting jurisdiction over their asylum applications. Accordingly, Plaintiffs ask this Court to vacate Defendants' 2019 Redetermination Memo entirely, which would have the effect of returning all class members to the status quo. Among the bases for Plaintiffs' claims are that the new policy is arbitrary and capricious and its introduction violated the APA; these violations harm all proposed class members equally and with identical effect. If Plaintiffs succeed in these claims, a single injunction vacating the policy would protect all proposed class members from its effects equally and with identical effect.

Plaintiffs' due process claim also warrants certification under Rule 23(b)(2). The effect of Defendants' new policy is to retroactively "attach[] new legal consequences to events completed before its enactment," namely proposed class members' decision not to file their asylum applications with USCIS earlier. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). Each proposed class member was either over 18 or had joined a parent or legal guardian prior to filing their asylum application; each class member was determined to be a UAC and decided, for any number of reasons, not to file their asylum application before their circumstances changed such that they would not meet the definition of UAC if their status were to be redetermined. Before the implementation of the 2019 Redetermination Memo, these

16

decisions to postpone filing their applications had no legal consequences for their eventual asylum applications to USCIS.  As a direct result of the policy, each class member stands to lose access to this forum and exemption from the time bar because of the new legal significance of actions taken, or not, in the irretrievable past.  Even if this Court were to find that Defendants' new policy complied in all respects with the APA (as it should not), Defendants' implementation of that policy would still be impermissibly retroactive as to every member of the proposed class, and every member of the proposed class would receive relief if this Court enjoined Defendants from applying it retroactively.

Plaintiffs do not seek monetary damages nor any individualized relief relating to their personal asylum claims but instead only ask this Court for declaratory and injunctive relief that would protect all proposed class members.  Therefore, as a result of Defendants' actions on grounds applying generally to the class, the only appropriate remedy is final injunctive relief or corresponding declaratory relief.  Fed. R. Civ. P. 23(b)(2).

III.    CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that the Court: (i) certify the class as defined; (ii) appoint Plaintiffs to serve as representatives of the class; and (iii) appoint KIND, CLINIC, Public Counsel, and Goodwin Procter LLP as class counsel.

Dated: June 15, 2020

Respectfully submitted,

/s/ *Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Stephen R. Shaw*
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com
SShaw@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
SFrederick@goodwinlaw.com
KDejong@goodwinlaw.com

Scott Shuchart*
Kids in Need of Defense
1201 L Street, NW, Floor 2
Washington, DC 20005
Phone: 202-318-0595
Fax: 202-824-0702
sshuchart@supportkind.org

Wendy Wylegala*
Kids in Need of Defense
1251 Avenue of the Americas (c/o Lowenstein
Sandler LLP)
New York, NY 10020
Phone: 862-926-2069
Fax: 202-824-0702
wwylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
Catholic Legal Immigration Network
(CLINIC)
8757 Georgia Avenue, Suite 850
Silver Spring, MD 20910
Phone: 301-565-4824
Fax: 301-565-4824
mmendez@cliniclegal.org

Rebecca Scholtz*
Catholic Legal Immigration Network
(CLINIC)
30 S. 10th Street (c/o University of St. Thomas
Legal Services Clinic)
Minneapolis, MN 55403
Phone: 651-962-4833
Fax: 301-565-4824
rscholtz@cliniclegal.org

Kristen Jackson*
Mary Tanagho Ross*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
kjackson@publiccounsel.org
mross@publiccounsel.org

*Attorneys for Plaintiffs*

* *admitted pro hac vice*

18