## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **J.O.P.**, *et al.*, | * | |
| *Plaintiffs*, | * | Civil No. 8:19-CV-01944-GJH |
| **v.** | * | |
| **U.S. DEPARTMENT OF HOMELAND** | * | |
| **SECURITY**, *et al.*, | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANTS' OPPOSITION TO MOTION TO CERTIFY CLASS

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**......................................................................................................................**4**

**BACKGROUND** ......................................................................................................................**6**

**ARGUMENT** .........................................................................................................................**10**

    **A.The Proposed Class Does Not Satisfy the Threshold Requirement of Ascertainability Implicit in Rule 23(a)**...................................................................................................**11**

      **1. Plaintiffs' class is not ascertainable because USCIS cannot identify those individuals who were not UACs on their filing date without engaging in individualized fact-finding**. ...**12**

      **2. Plaintiffs' class is also not ascertainable because the definition is too vague to enable the court to identify a relevant class**..........................................................................**15**

      **3. Plaintiffs' class is further not ascertainable because Plaintiffs misunderstand the USCIS process of receiving and reviewing potential UAC applications and those it considers to be pending**. ...........................................................................................**16**

    **B. The Proposed Class Does Not Satisfy the Commonality Requirement Under Rule 23(a)(2)**. ...**18**

      **1. Plaintiffs' proposed class should not be certified because there is no question of law or fact common to all class members**. ...................................................................**19**

      **2. Plaintiffs' proposed class should also not be certified because members of the proposed class are in a variety of procedural postures regarding their asylum applications**. ..............**20**

      **3. Plaintiffs' proposed class should further not be certified because a class action is not the appropriate method for resolving Plaintiffs' alleged Due Process harms**. ............................**21**

    **C. The Proposed Class Does Not Satisfy the Typicality Requirement Under Rule 23(a)(3)**. .........**22**

**CONCLUSION** ......................................................................................................................**23**

## **TABLE OF AUTHORITIES**

**Cases**

*Amaya v. DGS Constr., LLC*, 326 F.R.D. 439 (D. Md. 2018) ..................................................... 12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1982) ............................................................. 10

*EQT Production Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) ............................................... passim

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) .......................................................... 22

*Goss v. Lopez*, 419 U.S. 565 (1975) ......................................................................................... 21

*Hammond v. Powell*, 462 F.2d 1053 (4th Cir. 1972) .................................................................. 10

*Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) .......................................................................... 21

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) .................................................. 22

*Matter of M-A-C-O-*, 27 I&N Dec. 477 (BIA 2018) ..................................................................... 8

*Spotswood v. Hertz Corp.*, Civil Action No. RDB-16-1200, 2019 WL 498822
 (D. Md. Feb. 7, 2019) ............................................................................................................ 11

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) .......................................... 10

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ............................................... 10, 11, 18, 19

**Other Authorities**

7A Charles Alan Wright et al., *Federal Practice & Procedure* (3d ed. 2005) ............................. 11

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................................... 10, 18, 22

**Regulations**

8 C.F.R. 208 ................................................................................................................. 20

## INTRODUCTION

Plaintiffs brought this action challenging the policies set forth by the Department of Homeland Security's ("DHS") United States Citizenship and Immigration Services ("USCIS") in its May 31, 2019 memorandum titled "Updated Procedures for Asylum Applications Filed by Unaccompanied Alien Children" ("2019 Memo").  However, by agreeing to temporary restraining orders ("TROs") and a preliminary injunction ("PI"), Defendants have conceded Plaintiffs' primary allegation in the original Complaint about USCIS' implementation of the 2019 Memo as regards requiring asylum officers to conduct *de novo* inquiries regarding applicants' UAC status on the date they filed their asylum applications in every case where USCIS determines its jurisdiction over an application filed by an applicant in removal proceedings who seeks to file with USCIS as an unaccompanied alien child ("UAC").  That aspect of this case is long concluded.

The Amended Complaint focuses on a footnote in the 2019 Memo that discussed the USCIS pre-existing practice of deferring to determinations by immigration judges ("IJs") about who has jurisdiction over an application filed by an individual in removal proceedings before them where that individual claims to have filed an application as a UAC.  The Amended Complaint alleges that this practice originated in the 2019 Memo and that it is unlawful on a variety of bases.  As the Defendants have established, however, USCIS had a long-standing practice prior to 2019 of interpreting applicable statutes, regulations, and binding precedent to require deferring to IJ UAC determinations in cases where IJs made such determinations.  *See* Exhibit 1 ¶¶ 13-14 (2019 Sicard Decl.).[1]

---

[1] This declaration is the same declaration filed in support of the defendants' opposition to the plaintiffs' motion to enforce the preliminary injunction, ECF 88-1, and defendants' motion to dismiss the amended complaint, ECF 101-2.  It is included here a third time for ease of reference.

Plaintiffs now move to certify a class consisting of all individuals nationwide who prior to the effective date of a lawfully promulgated policy prospectively altering the policy set forth in the 2013 Kim Memorandum ("2013 Memo") (1) were determined to be an Unaccompanied Alien Child; and (2) who had filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits.  ECF No. 117-1 at 2.

The Court should deny this motion.  First, the proposed class is not ascertainable.  The class definition is vague and it cannot be objectively determined through the information currently available to DHS which individuals, of all those who have or have had an asylum application pending with USCIS, failed to meet the UAC requirements on the date they filed their asylum application with USCIS.  This inquiry would force the Court to engage in individualized fact-finding, directly counter to Plaintiffs' assertion that identifying the class is a "simple matter." Ascertainability is a key threshold requirement, and the inability of the parties or the Court to ascertain the class members is alone sufficient basis on which to deny the motion.

Next, however, this proposed class definition is overly broad and includes individuals that USCIS would not have jurisdiction over under the 2013 Memo, undercutting Plaintiffs' arguments on commonality and typicality.  Since jurisdiction has not yet been determined for many of those described in the proposed class, and it is inaccurate to speculate that all members of this class will even receive IJ jurisdictional determinations, much less IJ determinations that USCIS lacks jurisdiction, it would be impossible for the Court to make a classwide resolution.  Furthermore, as currently defined, this class would contain individuals who are outside the scope of Plaintiffs'

alleged harms because their applications were not adjudicated on the merits for reasons other than USCIS deferrals to IJs, such as an applicant's failure to comply with identity check or interview requirements. For all of these reasons, the Court should deny Plaintiffs' motion for class certification.

## BACKGROUND

The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Public Law 110-457, was signed into law on December 23, 2008 and became effective 90 days thereafter, on March 23, 2009. Section 235(d)(7)(B) of the TVPRA provides asylum officers with "initial jurisdiction over any asylum application filed by" a UAC. In 2009, USCIS issued a memorandum describing certain aspects of the manner by which asylum officers would review and evaluate asylum applications under the TVPRA. Exhibit 1 ¶ 5 (2019 Sicard Decl.). At the time the TVPRA came into effect, the Department of Justice's Executive Office for Immigration Review ("EOIR") had not issued any guidance addressing whether IJs could or should make the determination about whether an alien in removal proceedings before them who wished to apply for asylum was in fact a UAC. *Id.* at ¶ 7. The practice of deferring to IJ determinations arose only after USCIS issued the 2013 Memo, when IJs began regularly to assert their jurisdiction to make determinations about whether USCIS had jurisdiction over an asylum application because it was filed by a UAC, or whether the IJ retained jurisdiction over the application because it was not filed by a UAC.

USCIS issued the 2013 Memo to address issues that had developed under the 2009 procedures. *Id.* at ¶ 8. And as the Court is aware from briefing in this case, the 2013 Memo arose in part out of the USCIS Ombudsman's Report in 2012, which found the USCIS' redetermination of an applicant's UAC status at the time of filing to be time-consuming, add significant delays,

and heavily tax resources, and recommended that USCIS eliminate its practice of making new UAC determinations during the asylum interview.  *See* ECF 3-3 (2012 Ombudsman Report). Under the 2013 Memo, rather than conducting a new factual inquiry and determination in every case about whether the applicant met the UAC definition on the date of filing the asylum application, asylum officers were instructed to adopt the otherwise undisturbed UAC determinations of the U.S. Customs and Border Protection ("CBP") or the U.S. Immigration and Customs Enforcement ("ICE") that had been made for custody purposes.  *See* Exhibit 1 ¶ 8 (2019 Sicard Decl.).  This meant that in such cases the asylum officers would not conduct any fact-finding into the applicant's age or unaccompanied status on the date the application was filed.  *Id.*

However, if there was an affirmative act by one of the agencies or components involved in UAC custody, specifically CBP, ICE, or the U.S. Department of Health and Human Services ("HHS"), that terminated the UAC finding prior to the date the asylum application was first filed, USCIS could not adopt the prior determination, and would make an independent factual inquiry into and determination regarding UAC status on the filing date.  *Id.*  Thus, for example, if subsequent to entry and being encountered, ICE had occasion to again encounter an individual and examined the evidence about the applicant's age and determined he was over 18 before filing the asylum application, the 2013 Memo recognized that ICE's new determination would void the prior UAC factual findings.  In that scenario, there would be no undisturbed prior determination to adopt and USCIS would make a new factual determination on whether the applicant met all elements of the UAC definition on the date of filing.

In 2013, IJs were generally not conducting any fact-finding into whether an individual was a UAC on the filing date.  *Id.* at ¶ 9.  As time passed, however, IJs increasingly began to assert their authority and undertake fact-finding on UAC status to determine their own jurisdiction where

an alien in removal proceedings before them claimed to be filing an asylum application as a UAC. *Id.* USCIS recognized that IJ assertions of jurisdiction to determine jurisdiction over UAC asylum applications increasingly raised the possibility that USCIS and the IJ might both assert jurisdiction over the asylum application of the same person. *Id.* at ¶ 10. And where USCIS and an IJ may have asserted jurisdiction, the possibility also existed for an asylum officer and the IJ to reach conflicting results on the merits of their adjudications. *Id.* In the years prior to the 2019 Memo, and in order to avoid the situation where an asylum officer and an IJ reached conflicting conclusions, USCIS interpreted its governing statutes and regulations to require that it defer to the jurisdictional determination made by the IJ who had jurisdiction over the removal proceedings at issue. *Id.* at ¶ 11. IJs increasingly asserted such jurisdiction, and in October 2018, the Board of Immigration Appeals issued a precedential decision holding that IJs did indeed have the jurisdiction to determine the status of alleged UACs in proceedings before them, and hence to determine who had jurisdiction over the asylum application of such alleged UACs. *Matter of M-A-C-O-*, 27 I&N Dec. 477 (BIA 2018).

USCIS did not include any reference to this practice of deferring to IJ determinations in the 2013 Memo because USCIS had as of 2013 not seen frequent conflicts that raised the need to memorialize the practice. Exhibit 1 ¶ 12 (2019 Sicard Decl.). But as IJs gradually began to assert their authority to determine UAC jurisdiction, the possibility of conflicting decisions grew. *Id.* Accordingly, while there is no reference in the 2013 Memo and no other formal memorandum issued to articulate this practice, the practice represented USCIS' plain reading of the law governing such potential conflicts that existed well before the 2019 Memo and was articulated publicly. Specifically, in a quarterly stakeholder meeting in November 2017, USCIS responded to a question about jurisdiction that "***under current guidance, asylum offices defer to IJ***

***determinations where IJs have made a finding that an asylum application was not filed by a UAC***," and "***[i]f an immigration judge determines that an application was not filed by a UAC, USCIS currently defers to that finding.***"   *Id.* at ¶ 12-14 (quoting USCIS Asylum Division Quarterly Stakeholder Meeting Agenda, Friday, November 3, 2017, publicly available at https://www.uscis.gov/outreach/asylum-division-quarterly-stakeholder-meeting-8 at page 4) (emphasis added).  The practice of deferring to IJ UAC determinations before the promulgation of the 2019 Memo is also reflected in case-related emails sent to and from various personnel at USCIS about specific individual cases over the years, however the great majority of these emails are privileged.  *Id.* at ¶ 15.

In order to assist in determining in such cases whether the IJ had in fact made a determination that an application was not filed by a UAC, USCIS asked ICE trial attorneys (TAs) to ask the IJ to issue a written order on this point, or in the alternative to memorialize IJ decisions on jurisdiction made from the bench by completing a memo to the file.  *Id.* at ¶ 16.  In June 2018, USCIS developed a template for an ICE TA memo to file, that would include the type of information that USCIS would need to have in the record in order to recognize and defer to an IJ jurisdictional determination.  *Id.* (citing Template Memo to File).  This template was designed to allow USCIS to review the ICE TA memo and ascertain whether the IJ engaged in fact finding to determine whether the asylum applicant was a UAC on the date of filing.  *Id.*

Here, Plaintiff E.D.G. is the only named plaintiff in whose case USCIS has deferred to an IJ determination that he was not a UAC on the date he filed his asylum application.  The asylum office reviewed the record in his case and determined that the IJ had conducted a factual inquiry to determine that the IJ, not USCIS, had jurisdiction over the asylum application.  *Id.* at ¶ 18. (citing IJ Decision and Order).  The IJ's decision clearly concludes that E.D.G. was not a UAC on

the date he filed his asylum application and therefore the immigration court had jurisdiction over it.  *Id.*  The immigration court determined that it had jurisdiction as E.D.G. filed his asylum application after the age of 18 and no longer met the definition of a UAC due to his age at that time.  *Id.* at ¶ 19.  Thus, consistent with its practice under the 2013 Memo, USCIS determined that it should defer to the jurisdictional determination made by the IJ.  *Id.*

## ARGUMENT

Plaintiffs' Motion for Class Certification should be denied because the proposed class fails to meet the requirements of Fed. R. Civ. P. 23(a).  The Fourth Circuit has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that members of the proposed class be 'readily identifiable.'"  *EQT Production Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)).  Additionally, the party seeking class certification must satisfy the four requirements listed in Fed. R. Civ. P. 23(a):  (1) a class so numerous that joinder of all members is impracticable (numerosity); (2) common questions of law or fact to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative will adequately protect the class (adequacy).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1982); Fed. R. Civ. P. 23(a)(1)-(4); *see also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 344 (2011).

In the Fourth Circuit, it is well settled that "**it is the plaintiff** who bears the burden of showing that the class **does comply** with Rule 23."  *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006) (emphasis in original).  As the Supreme Court explained, "Rule 23 does not set forth a mere pleading standard."  *See Wal-Mart Stores, Inc.,* 564 U.S. at 350.  Instead, a "party seeking class certification must affirmatively demonstrate his compliance with the Rule– that is, he must be prepared to prove that there are **in fact** sufficiently numerous parties, common

questions of law or fact, etc." *Id.* (emphasis in original). In light of this burden, district courts must undertake a "rigorous analysis" to determine if Rule 23 requirements have been met. *See id.* at 351. Plaintiffs here have failed to satisfy the ascertainability, commonality, and typicality requirements because individualized fact-finding is required to ascertain those individuals that were not UACs at the time of filing their asylum application and members of the proposed class are markedly different from each other and the named Plaintiffs.

### A. THE PROPOSED CLASS DOES NOT SATISFY THE THRESHOLD REQUIREMENT OF ASCERTAINABILITY IMPLICIT IN RULE 23(A).

"A class cannot be certified unless a court can readily identify the class members in reference to objective criteria," which courts refer to as an "ascertainability" requirement. *EQT Production*, 764 F.3d at 358. This requirement "will not be deemed satisfied unless…it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (quoting 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1760 (3d ed. 2005) (internal quotation marks omitted). As explained below, identifying who did not meet the UAC definition at the time of filing their asylum application – a pivotal element of Plaintiffs' proposed class definition – entails substantial administrative difficulties. Additionally, Plaintiffs' class definition lacks sufficient clarity to even identify such relevant class. Having failed to acknowledge these difficulties, let alone propose an administratively feasible solution, Plaintiffs cannot meet their burden on class certification.

Plaintiffs' claim that identifying the relevant class in this case is a "simple matter, based on clear and objective criteria," is misguided. ECF No. 117-1 at 15. It is not enough to "merely identify a mass of data which could aid the process of identifying class members*." Spotswood v. Hertz Corp.*, Civil Action No. RDB-16-1200, 2019 WL 498822, at *6 (D. Md. Feb. 7, 2019). "Plaintiff[s] must also provide an efficient method of using this information." *Id.* "[A] class

cannot be certified if its membership must be determined through individualized fact-finding or mini-trials." *Amaya v. DGS Constr., LLC*, 326 F.R.D. 439, 446 (D. Md. 2018). Thus, the Fourth Circuit vacated and remanded a district court's class certification decision that relied on "local land records" to determine class membership because "resolving ownership based on land records can be a complicated and individualized process" potentially requiring the resolution of "title defect issues." *EQT*, 764 F.3d at 359. Similarly, ascertaining which individuals "on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody," is a "complicated and individualized process" and would in many cases require exactly the kind of "mini-trials" that defeat a proposed class under the standard Plaintiffs themselves argue. *Id.*

> ### 1. Plaintiffs' class is not ascertainable because USCIS cannot identify those individuals who were not UACs on their filing date without engaging in individualized fact-finding.

For many cases, no entity has ever considered or determined whether an applicant "on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody." CBP and ICE UAC determinations are made solely for custody purposes and do not address whether these elements are met on the date of filing. Exhibit 2 ¶ 12 (2020 Sicard Decl.). In fact, such determinations are usually made upon initial apprehension, before an asylum application is even filed. *Id.* Further, IJs make determinations of UAC status once the case has come before them, which may not happen for years after an application has been filed with USCIS. *Id.* at ¶ 26. Since enjoining the 2019 Memo, which provided USCIS with the ability to determine whether an applicant met the UAC criteria at the time of filing, USCIS can no longer make these determinations. *Id.* at ¶ 10-12. And the 2013 Memo, which USCIS is currently operating under,

only provides USCIS make such determinations where there is no prior UAC determination in place on the date of filing (i.e. where another agency took an affirmative act that terminated any previous UAC determination that had been made). *Id.*

Plaintiffs' proposed class would require USCIS to ascertain whether every applicant who ever had an asylum claim pending with USCIS either turned 18 before filing or had a parent or legal guardian available to provide care and physical custody on the date they filed the asylum application. Even if USCIS were required to reinstate procedures similar to those of the 2019 Memo, the assessment needed to determine who was not a UAC at the time of filing their asylum application is not a simple matter. *Id.* at ¶ 16. While the age determination may usually be relatively straightforward from record documents, there are also cases where there is a factual dispute regarding age because documents are contested. *Id.* at ¶ 18. Additionally, the question of whether a parent or legal guardian was available on the filing date can be an extremely complex factual issue and generally cannot be determined without USCIS conducting additional fact-finding through an interview. *Id.* at ¶ 19. Conducting individualized case reviews, which in many cases would require interviews of the applicants, of the over 27,000 individuals cited by Plaintiffs would not be "administratively feasible." *EQT Production*, 764 F.3d at 358.

Plaintiffs cite to USCIS public statements suggesting that a substantial proportion of applicants who claim UAC status when filing asylum applications with USCIS have at some point been placed with one or more parents. However, this does not resolve the question at issue, which is whether there was a parent or legal guardian available to provide care and physical custody on the date the asylum application was filed with USCIS. An applicant may have been released to a parent, for example, and later, before the filing, the parent may have been taken into immigration custody themselves or been deported, been incarcerated, or may have become unable or unwilling

to care for the child for other reasons, such that they were not "available" to provide care and physical custody of the child at the time the asylum application was filed. Additionally, a child may have been unaccompanied even if he or she was in the informal care and physical custody of other adults, including family members who are not parents or legal guardians of the child. Exhibit 2 ¶ 19 (2020 Sicard Decl.). In some cases, there may be evidence that a non-parent is a legal guardian. In such cases, determining whether an individual qualifies as a legal guardian requires USCIS to engage in significant investigative work, including searching for a formal court order or its equivalent in a foreign system and reviewing various types of documents. *Id.*

Determinations about the "availability" of a parent or legal guardian to provide care and physical custody can also present difficult and nuanced issues. *Id.* at ¶ 20. When CBP or ICE take a child into custody they make a determination about the availability of a parent or legal guardian at the time of apprehension. *Id.* However, CBP and ICE do not generally examine whether this unavailability is temporary by looking into the underlying reasons that the parent was unavailable at the time of apprehension (e.g., the agency was unable to contact the parent, or the parent was detained or incarcerated, ill, unwilling to take the child, or undocumented and unwilling to make contact with immigration authorities) or assess the impact of those reasons on the parent's later availability because the inquiry is limited to custody at the time of encounter. *Id.* At the asylum office, these UAC determinations become more complex. Regardless of whether an applicant brings a parent to the interview, there still must be an inquiry into whether the parent was available to provide care and physical custody at the time of filing, which may have been months or even years before the interview. *Id.* at ¶ 21. Prior to the 2013 Memo, USCIS in some cases determined that a parent was "available" (and therefore the child was not a UAC) on the asylum filing date, where the child stated that he was not living with that parent, but provided evidence that the parent

was in fact caring for the child.  *Id.*  Conversely, USCIS would have to examine the "availability" of parents with whom the child was in fact living in complex situations involving, for example, mental illness of the parent.  *Id.*

> ### 2.  Plaintiffs' class is also not ascertainable because the definition is too vague to enable the court to identify a relevant class.

Even if it were administratively feasible to identify those individuals that failed to satisfy the UAC definition at the time of filing, Plaintiffs' class is further not ascertainable because it lacks sufficient specificity to enable the court to "readily identify" the relevant class members.  *EQT Production*, 764 F.3d at 358.  First, Plaintiffs fail to identify by whom the UAC determination need be made, under what authority, and through which means of documentation in order to identify those individuals who "were determined to be a UAC."  CBP, ICE, HHS, USCIS, and IJs all make determinations about applicants' UAC status at different times, for different purposes, and under different authorities.  In addition, USCIS frequently receives communications from advocates making assertions about the UAC status of applicants.  It is not clear which of these determinations would satisfy this element of the proposed class definition as it is written.  Exhibit 2 ¶ 25 (2020 Sicard Decl.).

Next, Plaintiffs fail to take into account how a USCIS determination that it did not have jurisdiction under the 2013 Memo or an applicant's change of UAC status would affect the "pending" nature of the application. Further, in some cases an applicant may file asylum applications with both USCIS and EOIR.  *Id.* at ¶ 16.  The proposed class definition fails to consider how filing first with EOIR would affect the operative filing date in determining whether an individual was a UAC "on the date they filed their asylum application with USCIS."

**3. Plaintiffs' class is further not ascertainable because Plaintiffs misunderstand the USCIS process of receiving and reviewing potential UAC applications and those it considers to be pending.**

It is also not clear exactly what Plaintiffs mean by applications that are or were "pending" with USCIS.  USCIS does not recognize the applications of applicants in proceedings who claim to be filing as UACs as pending with USCIS until those applications are assessed at the USCIS Nebraska Service Center ("NSC") and determined to be *potential* UAC applications.  But it is not at all clear that Plaintiffs intend the term "pending" to relate only to applications that were accepted under the NSC's intake process, as evidenced by their position that this Court's 2019 Order for USCIS to retract adverse jurisdictional determinations made while the 2019 Memo was in effect should include cases that the NSC declined to accept as potential UAC applications.

The NSC's processes, and their relationship to USCIS UAC jurisdictional determinations, require some explanation in order for this point to be understood.  Prior to the TVPRA's initial jurisdiction provision, USCIS did not have jurisdiction over the asylum claim of any applicant in removal proceedings.  *Id.* at ¶¶ 4-5. Applicants seeking to file asylum claims with USCIS generally must file them with a USCIS service center rather than directly with an asylum office.  *Id.* at ¶ 4. When a service center receives an asylum application from an applicant in removal proceedings, it generally rejects the filing because USCIS does not have jurisdiction over it.  *Id.*  In order to implement the TVPRA's UAC asylum jurisdiction provision, therefore, the NSC, which is the single USCIS service center designated to process potential UAC applications, required UAC specific procedures.  *Id.* at ¶ 6.  In order to identify and avoid rejecting applications over which USCIS might determine it has jurisdiction under the 2013 Memo, current guidance instructs the NSC to accept filings from applicants even if they are in removal proceedings if the date of birth on the application indicates they were under 18 at the time of filing, or if they submitted with the

filing a copy of the UAC Instruction Sheet (which ICE TAs disseminate to applicants who appear

to be UAC in removal proceedings), or if they provided documentation from the Office of Refugee

Resettlement ("ORR") showing the applicant was in ORR custody as a UAC. *Id.* at ¶ 7. The NSC

accepts such applications and codes them as "PRL" to indicate that they are *potential* UAC

applications over which USCIS *may* determine that it has jurisdiction.[2] *Id.* at ¶ 8.

It is not until applications are so accepted and coded that USCIS could track them as

pending as potential UAC applications. *Id.* at ¶¶ 8-9. If an applicant in removal proceedings fails

to satisfy one of the requirements to be accepted as a "PRL" filing, the application will not be

accepted as an asylum application, but rather will be processed as a "DEFA" submission. *Id.* at ¶

7. The "DEFA" submission process is one administered by the NSC through which other

applicants in removal proceedings who wish to apply for asylum defensively before the IJ may

submit the first three pages of their I-589 in order to initiate security check for purposes of the IJ

adjudication of that defensive application. *Id.* at ¶ 6. The NSC does not process these submissions

as asylum applications and instead processes them as "DEFA" submissions, indicating that they

relate to defensive filings in removal proceedings and were submitted pursuant to this special

process. *Id.* However, USCIS does not keep a record of specifically why the application was not

accepted and would code all such filings, whether the applicant claimed to be filing as a UAC or

not, as "DEFA" submissions. *Id.* at 7.

Thus, while USCIS could identify the applications that it considers to be "pending" because

they were accepted and coded as "PRL" by the NSC, it is not clear that this understanding of the

---

[2] However, the fact that an application has been coded as "PRL" does not represent a definitive determination of
jurisdiction. *Id.* USCIS would still have to make the factual determination of whether it can consider the applicant
to have been a UAC on the date of filing, which, as previously discussed, is a fact-intensive analysis under with the
asylum office must first determine whether there is a prior UAC determination that it can adopt, and if there is not,
must then determine whether the applicant met the UAC definition on the date of filing. As also discussed, this
latter determination would often require an interview of the applicant. *Id.* at ¶¶ 8-9.

term "pending" aligns with Plaintiffs' understanding of the term "pending." And USCIS could not easily determine the entire universe of applicants in removal proceedings who ever attempted to file an application with USCIS that was rejected or processed as a "DEFA" submission and who also met the other elements of the proposed class definition. For example, an application submitted by an applicant in removal proceedings who was over 18 years old at the time of filing but who did not provide a copy of the UAC Instruction Sheet or documentation that they were in ORR custody as a UAC would be processed as a "DEFA" submission, would not be considered pending by USCIS, and could not be tracked as a pending case. It is not clear whether Plaintiffs intend the term "pending" in the proposed class definition to include such an application.

As the variety of issues above exemplify, Plaintiffs' proposed class definition is vague, overly broad, and at best, merely identifies a group of potential class members that would require detailed fact-finding to determine which individuals failed to meet the UAC definition on the date they filed their asylum application with USCIS.

### B. THE PROPOSED CLASS DOES NOT SATISFY THE COMMONALITY REQUIREMENT UNDER RULE 23(A)(2).

Plaintiffs fail to demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The putative class' "claims must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 349. "What matters to class certification . . . is not the raising of common questions — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 350 (citation omitted). Taken

as a whole, there are too many dissimilarities between and among the class members, making it impossible for the Court to make a classwide resolution "in one stroke." *Id.* at 349.

>    1. **Plaintiffs' proposed class should not be certified because there is no question of law or fact common to all class members.**

Plaintiffs argue that "a single question at the core of this case: the legality, in substance and in process, of the 2019 Redetermination Memo" and its "subsidiary questions" are common to the entire class. ECF No. 117-1 at 16. This is clearly not the case. "Whether implementation of the 2019 Redetermination Memo constitutes arbitrary and capricious agency action, whether it violates due process to apply the 2019 Redetermination Memo's policy to individuals who had been determined to be UACs while the 2013 Kim Memorandum has been in effect but did not file asylum applications until after 18 or before being reunited with parents or legal guardians" are not questions that currently affect any applicants who have filed with USCIS because USCIS has rescinded the 2019 Memo, retracted all its jurisdictional determinations under it, and has not applied it to any case since it was rescinded. *Id.*; Exhibit 2 ¶¶ 10-11 (2020 Sicard Decl.).

Further, "[w]hether USCIS may deny jurisdiction based on novel 'affirmative acts' such as EOIR jurisdictional determinations consistent with their practice under the 2013 Kim Memorandum" is not a question common to all members of the proposed class because not all individuals so described have received EOIR jurisdictional determinations. ECF No. 117-1 at 16. Nor is it even accurate to speculate that all members of this class will eventually receive EOIR jurisdictional determinations because their cases could be resolved in other ways, such as by obtaining another remedy or not being found removable.

**2. Plaintiffs' proposed class should also not be certified because members of the proposed class are in a variety of procedural postures regarding their asylum applications.**

If it were possible to identify all members of the proposed class, the class members would include applicants in whose cases the determinative legal issues vary widely.  For example, the class would include applicants over whose applications USCIS has taken jurisdiction under the 2013 Memo, but for whom USCIS has not yet completed adjudication, and applicants over whose applications USCIS will ultimately take jurisdiction under the 2013 Memo, but where the jurisdictional determination has not yet been made.  Exhibit 2 ¶ 28 (2020 Sicard Decl.).  Further, the class includes applicants that USCIS would not have adjudicated even under the 2013 Memo, including those individuals who turned 18 while in HHS custody who were then transferred to ICE and filed asylum applications subsequent to this change in custody.  It would also include applicants whose applications were not accepted because they are subject to 8 C.F.R. 208(a)(2)(c)'s bar to applying for an alien who had previously applied for asylum and had such application denied.

Additionally, Plaintiffs' proposed class would include applicants whose claims USCIS did not adjudicate on the merits but for whom closing of the case was still warranted because of the applicant's failure to comply with identity check or interview requirements.  *Id.* at ¶ 29.  Under 8 C.F.R. 208.10 (and the Affirmative Asylum Procedures Manual ("AAPM"), Section III.I, Failure to Appear), all applicants, regardless of age, are required to submit press prints, a digital signature, and a full-frontal photograph for biometrics collection.  If an applicant fails without good cause to appear for a biometrics appointment, USCIS may close the case and return it to removal proceedings.  Similarly, if an applicant is scheduled for an asylum office interview and fails to appear, the case can also be closed and returned to removal proceedings.  For unrepresented UAC

applicants, the AAPM provides for one automatic rescheduled interview.  If a represented UAC applicant fails to appear, or if an unrepresented UAC applicant fails to appear for a rescheduled interview, USCIS can excuse the failure if the applicant shows good cause for the failure to appear within 45 days.  If no good cause is shown within this period of time, however, USCIS may close the case and return it to removal proceedings.  An applicant might also seek to withdraw their asylum application and waive any right they might have to USCIS initial jurisdiction over the asylum claim.  If such an applicant executes a knowing, willing, and effective withdrawal and waiver, USCIS may close the case and not adjudicate the merits for this reason.  *Id.* at ¶ 30.

> **3.  Plaintiffs' proposed class should further not be certified because a class action is not the appropriate method for resolving Plaintiffs' alleged Due Process harms.**

To the extent the Due Process issue remains in the case, the Supreme Court has recognized that a class action may not be the proper vehicle to resolve such issues because of the flexibility inherent in a Due Process analysis.  *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) ("[D]ue process is flexible…and it calls for such procedural protections as the particular situation demands.") (citation omitted); *see also Goss v. Lopez*, 419 U.S. 565, 577 (1975) ("the interpretation and application of the Due Process Clause are intensely practical matters and [] the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.") (citation omitted).  Plaintiffs' Due Process claim depends on USCIS' retroactive application of the 2019 Memo to those applications USCIS would have otherwise adjudicated on the merits under the 2013 Memo.  However, as discussed above, Plaintiffs' class definition includes purported UAC applicants whose applications would have been outside the jurisdiction of the 2013 Memo.  Thus, because due process is a flexible concept, the dissimilarities in Plaintiffs' proposed class – particularly, the inclusion of UACs whose asylum applications

USCIS would not have adjudicated on the merits even under the 2013 Memo – would require the Court to engage in fact-intensive analyses of each putative class member.

### C. THE PROPOSED CLASS DOES NOT SATISFY THE TYPICALITY REQUIREMENT UNDER RULE 23(A)(3).

Plaintiffs fail to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement of Rule 23(a)(3) "derives its independent legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012). Accordingly, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class member." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982). As the Supreme Court has explained, the inquiries under the typicality and commonality requirements of Rule 23(a) "tend to merge." *Id.* at 157 N.13. Thus, Plaintiffs' proposed class does not meet the typicality requirement for similar reasons as those explained above in the commonality section.

Plaintiffs cannot establish that USCIS "acted or refused to act" on a ground that applies generally to the class since USCIS has not issued any decisions to J.O.P., M.A.L.C., or M.E.R.E. regarding the acceptance or rejection of their asylum applications.[3] The class as framed turns on the application of the 2019 Memo to class members. However, jurisdiction has not yet been determined for many of those described in the proposed class. Without jurisdictional decisions, the Plaintiffs cannot assert that the 2019 Memo has been applied to them. In fact, Defendants maintain that they have retracted decisions applying the 2019 Memo to decline USCIS jurisdiction for all of the named Plaintiffs as well as for all applications pending before it, and that they have

---

[3] On July 1, 2020, USCIS issued a letter to K.A.R.C. granting him asylum.

applied the 2013 Memo to all of these cases.  Exhibit 2 ¶¶ 10-11 (2020 Sicard Decl.).  While there is a factual question as to whether deference to IJ jurisdiction predated the 2019 Memo, this only applies to E.D.G and likely only a small subsection of Plaintiffs' proposed class.

Additionally, class members have not suffered the same injury as USCIS has various reasons for not adjudicating an individual's asylum application on the merits outside of deferring to IJ jurisdictional determinations.  Plaintiffs allege that all members of the class are harmed by USCIS' failure to independently adjudicate UAC asylum applications per the 2013 Memo.  However, as discussed in the commonality section above, Plaintiffs' class definition would contain individuals whose asylum applications were not adjudicated on the merits but nonetheless who are outside the scope of Plaintiffs' alleged harms.  Overall, these dissimilarities between and among the class members make the legal and factual positions of the representatives markedly different from that of other members of the class.

## CONCLUSION

For the foregoing reasons, because Plaintiffs have failed to satisfy their burden under Rule 23(a), this Court should deny Plaintiffs' Motion for Class Certification.

Respectfully submitted,

Robert K. Hur
United States Attorney

   */s/  Allen Loucks*
Allen Loucks
Assistant United States Attorneys
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
(410) 209-4800

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 13th day of July a copy of the foregoing

Defendants' Opposition To Motion To Certify Class was electronically filed and served on all

counsel of record via the Court's CM/ECF system.

Respectfully submitted,


_____/s/_____
Allen Loucks
Assistant United States Attorney