IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| J.O.P., et al., | : |
| *Plaintiffs,* | : |
| v. | : Civil No. GJH-19-1944 |
| U.S. DEPARTMENT OF HOMELAND SECURITY, et al., | : |
| *Defendants.* | : |

...oOo...

# DECLARATION OF KIMBERLY SICARD

I, Kimberly R. Sicard, pursuant to 28 U.S.C. § 1746, hereby state as follows:

1. I am an Asylum Officer within Asylum Division Headquarters at United States Citizenship and Immigration Services (USCIS), within the Department of Homeland Security (DHS). I have held this position since April 2006. As part of my duties, I develop operational procedures and assist in administering the affirmative asylum program. My area of responsibility includes oversight of USCIS procedures for determining whether an Asylum Officer has initial jurisdiction over the asylum applications of applicants in removal proceedings who claim to be filing as unaccompanied alien children (UAC).

2. I began my career in federal service in September 2001 as an Attorney-Advisor with the Board of Immigration Appeals at the Executive Office for Immigration Review (EOIR), within the Department of Justice (DOJ). Since then, I served as a field Asylum Officer at the Arlington Asylum Office for a year before beginning my job as an Asylum Officer at USCIS Headquarters.

3. The statements made herein are based on my personal knowledge and the applications at issue, as well as information made available to me in the course of carrying

out my duties and responsibilities as an Asylum Officer.

4. The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Public Law 110-457, was signed into law on December 23, 2008 and became effective 90 days thereafter, on March 23, 2009. Section 235(d)(7)(B) of the TVPRA provides Asylum Officers with "initial jurisdiction over any asylum application filed by" a UAC.

5. USCIS issued a memorandum in 2009 describing certain aspects of the manner by which Asylum Officers would review and evaluate asylum applications under the TVPRA.

6. At the time I began my current role involving oversight of USCIS procedures for determining whether an Asylum Officer has initial jurisdiction over the asylum applications of applicants in removal proceedings who claim to be filing as UACs, USCIS was operating under the USCIS 2009 memorandum.

7. My understanding is that, at the time the TVPRA came into effect, DOJ EOIR had not issued any guidance addressing whether Immigration Judges (IJs) could or should make the determination about whether an alien in removal proceedings before them who wished to apply for asylum was in fact a UAC.

8. USCIS issued revised procedures in 2013 to address issues that had developed under the 2009 procedures. Under the procedures that USCIS put in place in 2013, USCIS would adopt undisturbed UAC findings made by ICE or CBP. The Asylum Offices were directed to not expend resources to make an independent factual determination about UAC status on the filing date unless there was no prior determination

in place on the filing date. This meant that in such cases the Asylum Offices would not conduct any fact-finding into the applicant's age or unaccompanied status. However, if there was an affirmative act by one of the agencies or components involved in UAC custody, specifically CBP, ICE or HHS, that terminated the UAC finding prior to the date of first filing of the asylum application, whether with EOIR or USCIS, USCIS could not adopt the prior determination, and would make an independent factual inquiry into and determination regarding UAC status on the filing date.

9. In 2013, although IJs were generally allowing possible UACs to pursue their claims that they were filing asylum applications as UACs before USCIS, they were also generally not conducting any fact-finding into whether the individual was a UAC on the filing date. As time passed, however, IJs increasingly began to assert jurisdiction over asylum applications of persons before them who claimed to be UACs and undertaking fact-finding on the UAC status of the individual before them.

10. As time passed after the promulgation of the 2013 memorandum, USCIS recognized that IJ assertions of jurisdiction over UAC asylum applications increasingly raised the possibility that USCIS and the IJ might both assert jurisdiction over the asylum application of the same person. USCIS recognized that where it and an IJ may have asserted jurisdiction, the possibility also existed for an asylum officer and the IJ to reach conflicting results as regards both the question of who had jurisdiction over the claim and the merits of the asylum application.

11. In the years prior to the 2019 memorandum, and in order to avoid the situation where an Asylum Officer and an IJ reached conflicting results, USCIS began the

practice of deferring to IJ UAC determinations.

12. USCIS did not include any reference to this practice of deferring to IJ determinations in the 2013 memorandum because USCIS had as of 2013 not seen frequent conflicts that raised the need to memorialize the practice. As IJs gradually began to assert the authority to determine UAC jurisdiction in the years that passed after 2013, the possibility of conflicting decisions grew. Accordingly, while there is no reference in the 2013 memorandum, and no other formal memorandum issued to articulate this practice, the practice existed well before the 2019 memorandum.

13. The USCIS practice of deferring to IJ determinations was articulated publicly. USCIS hosted a quarterly stakeholder meeting in November 2017 where the following questions and answers were on the agenda:

> Question: Upon information and belief, EOIR has provided guidance to immigration judges on Unaccompanied Alien Child determinations. What is the Asylum Division's position on the authority of an immigration judge finding that an individual is no longer an unaccompanied alien child?
>
> Response: Although the May 2013 USCIS memo does not explicitly address all scenarios in which another agency may make determinations that implicate UAC status, ***under current guidance, asylum offices defer to IJ determinations where IJs have made a finding that an asylum application was not filed by a UAC***.

Exhibit 1 (USCIS Asylum Division Quarterly Stakeholder Meeting Agenda Friday, November 3, 2017 publicly available at https://www.uscis.gov/outreach/asylum-division-quarterly-stakeholder-meeting-8) at page 4 (emphasis added).

14. At the same November 2017 meeting, the following question and answer were also on the agenda:

Question: For a UAC in removal proceedings, who has jurisdiction and authority to rescind UAC status? Can the IJ do it?

Response: Under the Trafficking Victims Protection Reauthorization Act (TVPRA), USCIS has initial jurisdiction over an asylum application filed by a UAC. Under the May 2013 USCIS memo, when USCIS is the agency determining whether an application was filed by a UAC, the Asylum Division will adopt a prior UAC determination as long as the prior UAC determination has not been terminated at the time of filing the application with either EOIR or USCIS. *__If an immigration judge determines that an application was not filed by a UAC, USCIS currently defers to that finding__*. Although immigration judges are not listed in the May 2013 USCIS memo on UAC jurisdictional determinations, that memo does not provide an exclusive list of all the agency actions that may affect a prior UAC determination, nor does it bind immigration judges or limit their jurisdiction to determine their own jurisdiction over an asylum claim.

Id. (emphasis added).

15. The practice of deferring to IJ UAC determinations before the promulgation of the 2019 memorandum is reflected in case-related emails sent to and from various personnel at USCIS about specific individual cases over the years. In preparing this declaration, I attempted to locate relevant emails that could be produced, but the great majority of the emails are privileged because they either include USCIS counsel or

represent deliberative process, or implicate privacy issues under statute or agency policy. In deference to these privilege and privacy issues, I have not appended hereto any of these pre-2019 emails in individual cases that reflect the application of the IJ deferral practice.

16. IJ decisions about their jurisdiction over potential UAC asylum applications were varied in form and content. Some IJs did not issue written decisions reflecting a clear determination whether the asylum application in question was filed by a UAC. In order to assist in determining in such cases whether the IJ had in fact made a determination that an application was not filed by a UAC, USCIS asked ICE trial attorneys (TAs) to ask the IJ to issue a written order on this point, or in the alternative to memorialize IJ decisions on jurisdiction made from the bench by completing a memo to the file. In June of 2018, USCIS developed a template for an ICE TA memo to file, that would include the type of information that we would need to have in the record in order to recognize an IJ jurisdictional determination to which we would defer. Exhibit 2 (Template Memo to File). This template was designed to allow USCIS to review the ICE TA memo and ascertain whether the IJ engaged in fact finding to determine whether the asylum applicant was a UAC on the date of filing.

17. I am familiar with the facts of the E.D.G. case that Plaintiffs have raised. We rejected this applicant's application for lack of jurisdiction under the 2019 memorandum. After the TRO was issued we reconsidered the jurisdictional issue and made a determination on whether we were able to accept the filing of his asylum application following the procedures of the 2013 memorandum.

6

18. The Asylum Office reviewed the record in E.D.G. and determined that the IJ had conducted a factual inquiry to determine that he, not USCIS, had jurisdiction over the asylum application. <u>Exhibit 3</u> (IJ Decision and Order). The IJ's decision clearly concludes that E.D.G. was not a UAC on the date he filed his asylum application and therefore the immigration court had jurisdiction over it.

19. As previously explained, the 2013 memorandum did not specifically address how to handle IJ determinations regarding jurisdiction because at that time, IJs rarely made such determinations. However, when we operated under the 2013 memorandum, we still applied our regulations under which we do not have the authority to accept asylum applications filed by applicants in removal proceedings who are not UACs. The immigration court determined that it had jurisdiction as E.D.G. filed his asylum application after the age of 18 and no longer met the definition of a UAC due to his age at that time. We determined, consistently with our practice while the 2013 memorandum was in effect, that we should defer to the jurisdictional determination made by the IJ. This means that we could not accept E.D.G.'s asylum application.

20. In notifying the applicant in E.D.G. that it did not have jurisdiction over his asylum claim, the Asylum Office characterized the IJ's jurisdictional determination as an "affirmative act" that terminated the applicant's UAC determination. The 2013 memorandum did not discuss IJ jurisdictional determinations, either as "affirmative acts" that terminate UAC determinations or otherwise, because IJs were not generally making such jurisdictional determinations at the time the 2013 memorandum was developed. As IJs began to make these determinations with increasing frequency and we had occasion to

consider them, we have generally viewed them as distinct from the kind of "affirmative acts" relating to the care and custody of UAC that ICE, CBP or HHS might take. Because of the complex history surrounding the development of our policies and practices, there may be some variance in the language officers have used to discuss these issues. However, regardless of how the IJ's jurisdictional determination was characterized in the Asylum Office's notice of lack of jurisdiction, the decision appropriately accorded deference to the IJ's jurisdictional determination, consistent with USCIS practice under the 2013 memorandum.

21. I declare under penalty of perjury that the foregoing is true and correct.

_____  _____12-18-19_____
Kimberly R. Sicard                Date