IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J.O.P., et al.,                                              :

       *Plaintiffs,*                                   :

       v.                                              :   **Civil No. GJH-19-1944**

U.S. DEPARTMENT OF                                           :
HOMELAND SECURITY, et al.,

                                         :
       *Defendants.*                                   :
                                         :

...o0o...

## DECLARATION OF KIMBERLY SICARD

I, Kimberly R. Sicard, pursuant to 28 U.S.C. § 1746, hereby state as follows:

    1.    I am an Asylum Officer within Asylum Division Headquarters at United States Citizenship and Immigration Services (USCIS), within the Department of Homeland Security (DHS). I have held this position since April 2006. As part of my duties, I develop operational procedures and assist in administering the affirmative asylum program. My area of responsibility includes oversight of USCIS procedures for determining whether an Asylum Officer has initial jurisdiction over the asylum applications of applicants in removal proceedings who claim to be filing as unaccompanied alien children (UAC).

    2.    I began my career in federal service in September 2001 as an Attorney-Advisor with the Board of Immigration Appeals at the Executive Office for Immigration Review (EOIR), within the Department of Justice (DOJ). Since then, I served as a field Asylum Officer at the Arlington Asylum Office for a year before beginning my job as an Asylum Officer at USCIS Headquarters.

    3.    The statements made herein are based on my personal knowledge and the applications at issue, as well as information made available to me in the course of carrying out my duties and responsibilities as an Asylum Officer.

    4.    USCIS generally does not have jurisdiction over asylum applications filed by

individuals in removal proceedings. When a new asylum application is filed, the general practice is to verify our jurisdiction over the case by checking for evidence that the applicant is/has been in removal proceedings. Generally, asylum applications filed by applicants in removal proceedings must be filed with the immigration judge (IJ) who has jurisdiction over the removal proceedings and are referred to as defensive asylum claims because they are raised as a defense to removal. Applicants seeking to file asylum claims with USCIS generally file them with a USCIS Service Center rather than directly with an Asylum Office.  When a Service Center receives an asylum application from an applicant in removal proceedings, it generally rejects the filing because USCIS does not have jurisdiction over it.

5.      As amended by the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA "), however, section 208(b)(3)(C) of the Immigration and Nationality Act provides that USCIS has initial jurisdiction over asylum applications filed by UACs, even if they are in removal proceedings. USCIS issued procedures on May 28, 2013 (2013 Memo) which Asylum Officers currently apply when they determine whether USCIS has jurisdiction over claims under this provision.  Individuals seeking USCIS initial jurisdiction under this provision may file their asylum applications directly with USCIS in accordance with UAC specific instructions for Form I-589, Application for Asylum and for Withholding of Removal, available at https://www.uscis.gov/i-589. These instructions require applicants who seek to file as UACs to file their applications with the USCIS Nebraska Service Center (NSC).

6.      The NSC is the only USCIS Service Center that handles filings from applicants in removal proceedings who seek to file applications with USCIS as UACs. In addition to handling applications from potential UAC applicants, the NSC also has a special process through which other applicants in removal proceedings who wish to apply for asylum defensively before the IJ may submit the first three pages of their I-589 to the NSC pursuant to the *Instructions for*

*Submitting Certain Applications in Immigration Court and For Providing Biometric and Biographic Information to U.S. Citizenship and Immigration Services* (Pre-Order Instructions). This process allows for the initiation of security checks for purposes of the IJ adjudication. The NSC does not process these submissions as asylum applications and instead processes them as "DEFA" submissions, indicating that they relate to defensive filings in removal proceedings and were submitted pursuant to these instructions. If the NSC receives a full Form I-589 from someone in removal proceedings who does not meet the requirements for filing as a potential UAC applicant, it does not accept it as an asylum application, but rather treats it as a "DEFA" submission. When an applicant in removal proceedings submits an asylum application to a Service Center other than the NSC, that Service Center generally rejects the application and returns it to the applicant. If it appears that the applicant is attempting to file as a UAC, however, the other Service Center may forward the misfiled application to the NSC to assess it as a potential UAC filing.

7.     Guidance on UAC procedures for the NSC was issued on June 4, 2013 and is currently in effect. In order to identify and avoid rejecting applications over which USCIS might determine it has jurisdiction under the 2013 Memo, this guidance instructs the NSC to accept filings from applicants even if they are in removal proceedings if the date of birth on the application indicates they were under 18 at the time of filing, or if they submitted with the filing a copy of the UAC Instruction Sheet (which ICE trial attorneys disseminate to applicants who appear to be UAC in removal proceedings), or if they provided documentation from the Office of Refugee Resettlement (ORR) showing the applicant was in ORR custody as a UAC. If the application indicates that the applicant was over 18 on the date of filing and the applicant did not submit either the UAC Instruction Sheet or evidence that they were in ORR custody as a UAC, however, the NSC would not accept it as an asylum application over which USCIS might determine it has jurisdiction under the TVPRA. Rather, the NSC would process it as a "DEFA"

submission.  USCIS does not keep a record of which applications that are rejected or treated as "DEFA" submissions because the applicant was in removal proceedings may have been from applicants who claimed to be filing as UACs.

8.      Before issuing a receipt for the Form I-589 from an applicant who is under 18 at the time of filing, has provided a copy of the UAC Instruction Sheet or has submitted documentation that he or she was previously designated a UAC and placed in ORR custody, the NSC verifies whether the applicant is in removal proceedings. Where it has verified that such an applicant is in removal proceedings, the NSC applies the special group code "PRL" (formerly used for parolees and now used for potential UAC applicants in removal proceedings) into our case management system, so that USCIS can track these applications. Once the NSC has accepted and coded an application as "PRL," that application is pending with USCIS unless or until USCIS determines that it does not have jurisdiction over it, or determines that it does and adjudicates it, or closes the case for another reason.  The fact that the NSC coded an application as "PRL" does not represent a definitive determination that USCIS has initial jurisdiction over it under INA section 208(b)(3)(C). It simply means that the application will not be rejected by the NSC on the basis that the applicant is in removal proceedings because it is possible that a USCIS Asylum Office will determine, generally after the applicant has been scheduled for an interview with an Asylum Officer, that it considers the application as one filed by a UAC.

9.      Before exercising initial jurisdiction over the application of an individual in removal proceedings that has been coded "PRL" as described above, a USCIS Asylum Office must determine whether it can consider the applicant to have been a UAC on the date of filing. Each filing must be assessed individually to make this determination.  The Asylum Office generally does not make this determination until the applicant is scheduled for an interview.  In some cases, the Asylum Office might be able to determine its jurisdiction based on evidence in the file, when that

file is routed to the office in anticipation of a scheduled interview.  Often, however, USCIS does

not make the jurisdictional determination until it has both scheduled and conducted the interview.

Depending on when an interview can be scheduled, the interview may take place months or even

years after the NSC accepts an application and codes it as "PRL."

      10.     USCIS agreed to be enjoined from implementing the UAC procedures it issued on

May 31, 2019 (2019 Memo). USCIS has not relied upon the 2019 Memo since August 2, 2019. We

provided notice on our website that USCIS may not rely on the 2019 memorandum to reject

jurisdiction over any asylum application filed by a UAC (as defined in the Homeland Security Act,

6 U.S.C. § 279(g)(2)) under the Trafficking Victims Protection Reauthorization Act (TVPRA) if

that application would have been accepted under the May 28, 2013 Memo. *See*

https://www.uscis.gov/legal-resources/legal-settlement-notices/jop-v-us-dept-homeland-security-

et-al-information.

      11.     Guidance was sent to all Asylum Offices on Saturday, August 3, 2019 notifying

them of this court's August 2, 2019 order and instructing them to cease applying the 2019 UAC

Memo and resume processing all cases under the 2013 UAC Memo.

      12.     Under the 2013 Memo, USCIS Asylum Offices may in many cases adopt UAC

determinations made by CBP or ICE. CBP and ICE make UAC determinations at the time they

apprehend an individual for the purpose of placing the individual in the appropriate custodial

setting. In cases where either CBP or ICE decided that the applicant was a UAC at the time of

apprehension for custody purposes, and that determination was still in place on the date the asylum

application was filed, Asylum Offices will generally adopt that determination without another

factual inquiry into whether that applicant still met the UAC definition on the date he or she filed

the asylum application. If there was an affirmative act by another agency that terminated the UAC

finding before the applicant filed the asylum application, however, Asylum Offices will not adopt

the previous UAC determination.

13.      Asylum Officers look for evidence of these prior UAC determinations and whether there has been a subsequent affirmative act terminating the determination in A-files or in our systems on the:

- Form 1-213, Record of Deportable Alien;
- Form 93 (the CBP UAC screening form);
- ORR Initial Placement Form;
- ORR Verification of Release Form; and
- Encounters tab in the ENFORCE Alien Removal Module (EARM).

14.      Examples of the types of affirmative acts that terminate a prior UAC determination under the 2013 Memo include:

- ICE takes an individual into adult custody. This would require ICE to make a new factual determination regarding the appropriate custodial setting. If ICE determines the individual is 18 years of age or older and subsequently places him or her in adult custody, USCIS would view the UAC determination as "terminated" as of that date;
- CBP or ICE generates a new I-213, treating the individual as an adult or stating that the individual is no longer a UAC or no longer a juvenile;
- ORR determines that an individual in their custody is 18 years of age or older.

15.      Under the 2013 Memo, in cases where no prior UAC determination was made or where the prior UAC determination was terminated before the asylum application was filed, Asylum Officers conduct independent fact-finding to determine whether the applicant met the statutory definition of a UAC (i.e., had no lawful immigration status in the United States, was under 18 years of age and had no parent or legal guardian available in the United States to provide care and physical custody) on the date the asylum application was filed. Under USCIS's 2009 procedures that were in effect before the 2013 Memo was issued, USCIS made this independent factual inquiry and determination in all cases where it had to determine whether it had initial jurisdiction over an application under the TVPRA. USCIS therefore has experience with the

complexities involved in making an independent factual determination about whether an applicant met the UAC definition on the date the asylum application was filed.

16.     The independent factual inquiry and determination about whether an individual was a UAC on the date of filing their asylum application is a multi-step factual inquiry that can be complex. If an applicant filed an application with both USCIS and EOIR, USCIS determines whether the applicant met the UAC definition on the date the first application was filed.

17.     When making an independent factual determination about whether an applicant was a UAC on the date of filing the asylum application, the Asylum Officer must first determine whether an applicant had lawful immigration status in the United States at the time of filing.

18.     Second, the Asylum Officer must determine whether the applicant was under 18 years of age at the time of filing the asylum application. This age determination is often relatively straightforward, but in some cases there can be evidence about the applicant's age that is conflicting or in dispute.  In such cases, the age determination may be more complex.

19.     Third, the Asylum Officer must assess whether the applicant was unaccompanied at the time of filing the asylum application. This requires USCIS to determine whether at the time of filing the applicant had no parent or legal guardian in the United States who was available to provide care and physical custody. Assessing this aspect of the UAC definition can be complex and difficult. Legal guardianship refers to a formal (legal/judicial) arrangement. A child may have been unaccompanied even if he or she was in the care and physical custody of other adults, including family members who are not parents or legal guardians of the child. For instance, release of a UAC from ORR custody to a sponsor who is not a parent or legal guardian would not mean that the child was no longer unaccompanied. To determine whether a non-parent can be considered a legal guardian, USCIS looks for a formal court order or its equivalent in a foreign system.  If a sponsor or other adult presents formal documents from foreign systems, questions about whether

they create legal guardianship may be relevant to whether an applicant had a legal guardian available to provide care and physical custody at the time the asylum application was filed and must be carefully assessed.

20.     Determinations about the availability of a parent or legal guardian to provide care and physical custody can also present difficult and nuanced issues for Asylum Officers. When CBP or ICE take a child into custody they make a determination about the availability of a parent or legal guardian at the time of apprehension, for purposes of custody arrangements.  If a parent or legal guardian is not available at that time, the child is designated as a UAC for custody purposes and transferred promptly to ORR.  In that context, CBP and ICE do not generally examine whether this unavailability is temporary by looking into the underlying reasons that the parent was unavailable at  the time of apprehension (e.g., the agency was unable to contact the parent, or the parent was detained or incarcerated, ill, unwilling to take the child, or simply undocumented and unwilling to make contact with immigration authorities) or assess the impact of those reasons on the parent's later availability because the inquiry is limited to custody at the time of encounter.

21.     At the Asylum Office, however, months or years after the applicant's arrival, these UAC determinations can be much more complicated.  A child may come to the asylum interview without a parent, but that does not resolve the question whether a parent was "available" to provide care and physical custody when the child filed the asylum application.  There must be an inquiry into whether the parent was available to provide care and physical custody at the time of filing, which may have been many months or even years before the interview, and months or years after the applicant arrived and was designated a UAC for custody purposes.  In making these determinations under the 2009 procedures that pre-dated the 2013 Memo, USCIS in some cases determined that a parent was "available" (and therefore the child was not a UAC) on the asylum filing date, where the child stated that he was not living with that parent, but provided evidence

that the parent was in fact providing care and physical custody for the child. Conversely, USCIS would have to examine the "availability" of parents with whom the child was in fact living in complex situations involving, for example, mental illness of the parent.

22.     When an Asylum Office determines that it does not have jurisdiction over an asylum application filed by an individual seeking USCIS initial jurisdiction as a UAC, it issues a Non-UAC Notice of Lack of Jurisdiction. We administratively close these cases and the application is returned to the immigration court.

23.     There is no identifier in our case management systems that would indicate the reason for issuing a Non-UAC Notice of Lack of Jurisdiction. In order to determine if the reason for the lack of jurisdiction was due to age or the availability of a parent or legal guardian, or why USCIS determined that there was no undisturbed prior UAC determination it could adopt under the 2013 Memo, USCIS would have to locate and order A-files from around the country and then conduct a manual review to determine the reason for lack of jurisdiction.

24.     I am aware that Plaintiffs in this case have proposed that this court certify a class defined as "[a]ll individuals nationwide who prior to the effective date of a lawfully promulgated policy prospectively altering the policy set forth in the 2013 Kim Memorandum (1) were determined to be an Unaccompanied Alien Child; and (2) who had filed an asylum application that was pending with United States Citizenship and Immigration Services ("USCIS"); and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits."

25.     I do not know how the element of this proposed definition specifying that class members "were determined to be an Unaccompanied Alien Child" could be interpreted. CBP, ICE, HHS, USCIS and Immigration Judges all make determinations about applicants' UAC status

at different times, for different purposes, under different authorities.  In addition, USCIS frequently

receives communications from advocates making assertions about the UAC status of applicants.  I

do not know which of these determinations would satisfy this element of this proposed class

definition as it is written.

26.     Assuming that it could be ascertained what "were determined to be an

Unaccompanied Alien Child" means, it would be extremely difficult to determine which

applicants, among "[a]ll individuals nationwide who prior to the effective date of a lawfully

promulgated policy prospectively altering the policy set forth in the 2013 Kim Memorandum . . .

had filed an asylum application that was pending with United States Citizenship and Immigration

Services" were also "18 years of age or older, or had a parent or legal guardian in the United States

who is available to provide care and physical custody" on the date they filed their asylum

application with USCIS.  This element of the proposed class definition would essentially require a

determination that an applicant was not a UAC on the date they filed their asylum application with

USCIS.  As described in this declaration, an asylum application from an applicant in removal

proceedings can be pending with USCIS because the NSC accepted and coded it "PRL" as a

potential UAC application long before either USCIS or an IJ examines whether the applicant was

over 18 years of age or had a parent or legal guardian in the United States who was available to

provide care and physical custody on the date the application was filed.  USCIS and EOIR are the

government entities that would determine UAC status as of the date an asylum application was

filed for purposes of determining jurisdiction over asylum applications. It can be many months or

even years before an applicant is scheduled for either an IJ hearing (where the IJ might consider

this jurisdictional issue) or for an Asylum Office interview (where an Asylum Officer would

generally consider it).  Further, under the 2013 Memo which USCIS currently applies, where an

Asylum Office adopts an undisturbed prior UAC determination, it would not conduct fact finding

about whether the applicant was over 18 or had a parent or legal guardian in the United States who was available to provide care and physical custody on the date the application was filed.   There are many applications, therefore, that are pending with USCIS for which no entity has yet examined or determined in the ordinary course of processing whether the applicant was over 18 years of age or had a parent or legal guardian in the United States who was available to provide care and physical custody on the date they filed their asylum application.

27.    Where this determination regarding UAC status as of the date of filing the asylum application has not already been made, undertaking to make it for the purpose of establishing class membership would be extremely burdensome.  It would be possible to identify through USCIS case management systems which applicants were 18 years of age or older on the date of filing based on the date of birth provided in the asylum application filed with USCIS.  However, this would not account for any discrepancies or disputes about the evidence regarding the applicant's age.  Further, as described above, an independent factual determination about whether an applicant had a parent or legal guardian in the United States who was available to provide care and physical custody on the date the application was filed is frequently far more complex, cannot be determined from our systems, and generally requires an interview with the applicant.

28.    Assuming USCIS could determine who meets these elements of the proposed class definition, USCIS could determine from its case management system the applicants "for whom USCIS has not adjudicated the individual's asylum application on the merits."  The cases of these applicants, however, may involve many different procedural postures, potential outcomes, and legal issues. An applicant described by this proposed class might have an application pending with USCIS because the NSC accepted the application and coded it "PRL" but might not have been scheduled yet for an interview. Or an applicant might have an application pending with USCIS and might have been scheduled for an interview in the future. An applicant might have had an

application pending with USCIS at some time in the past (i.e., prior to the effective date of a

lawfully promulgated policy prospectively altering the policy set forth in the 2013 Kim

Memorandum) and USCIS might have determined that it did not have jurisdiction under the 2013

Memo.  An applicant might also have an application pending with USCIS and USCIS might have

determined that it had jurisdiction under the 2013 Memo and still be in the process of completing

its adjudication on the merits.

29.     The 2013 Memo is not an exhaustive statement of all procedures that apply to UAC

applications. There are scenarios where USCIS may have jurisdiction under the 2013 Memo, but

the case would be administratively closed and returned to the IJ without conducting a merits

adjudication. For example, all applicants, regardless of age, must appear at an Application Support

Center for biometrics collection.  If an applicant fails without good cause to appear for a

biometrics appointment the case might be closed.  The same would be true for an applicant who is

scheduled for an asylum office interview and fails to appear. USCIS does provide unrepresented

applicants seeking to file as UACs with one automatic rescheduled interview.  If a represented

applicant fails to appear, or if an unrepresented applicant seeking to file as a UAC fails to appear

for a rescheduled interview, USCIS can excuse the failure if the applicant shows good cause for the

failure to appear within 45 days.  If no good cause is shown within this period of time, however,

USCIS may close the case and return it to removal proceedings.  Thus, an applicant might have

had an application pending with USCIS at some time in the past (i.e., prior to the effective date of a

lawfully promulgated policy prospectively altering the policy set forth in the 2013 Kim

Memorandum), and USCIS might not have adjudicated the individual's asylum application on the

merits for these reasons.

30.     An applicant might also seek to withdraw their asylum application and waive any

right they might have to USCIS initial jurisdiction over the asylum claim.  If such an applicant

executes a knowing, willing and effective withdrawal and waiver, USCIS may close the case. Thus, such an applicant might have had an application pending with USCIS at some time in the past (i.e., prior to the effective date of a lawfully promulgated policy prospectively altering the policy set forth in the 2013 Kim Memorandum), and USCIS might not have adjudicated the individual's asylum application on the merits for this reason.

31.     When USCIS determines that it can exercise initial jurisdiction under the TVPRA over the filing of an applicant in removal proceedings, it does not issue a separate notice of this determination. This decision is not recorded separately in our systems. Rather, after determining that USCIS can exercise jurisdiction, the officer will conduct an adjudication and issue a decision on the merits of the asylum claim. When USCIS adjudicates an asylum application of an applicant as one filed by a UAC, it can issue a merits decision granting asylum or finding that the applicant is not eligible.

32.     Decisions to grant asylum may take several months to be issued after an interview because Asylum Officers must wait until security checks are complete. Recommended decisions to grant or not grant after the interview also are often reviewed by a supervisor before they are finalized. Thus, there may be asylum applications pending with USCIS where USCIS has taken or will take jurisdiction, but where USCIS has not yet adjudicated the application on the merits.

33.     As explained in this declaration, it would be extremely difficult to identify all individuals who meet the proposed class definition. First, it is not clear what "were determined to be an Unaccompanied Alien Child" means. Second, while it would be possible to identify through the USCIS case management system which applicants were 18 years of age or older on the date of filing based on the date of birth provided in the asylum application filed with USCIS, there are sometimes discrepancies or disputes about the evidence regarding the applicant's age that could not be addressed through a search of the case management system. Third, and of most

significance, there are many applications that are or have been pending with USCIS for which no entity has ever examined or determined whether the applicants, on the date they filed their asylum application, had a parent or legal guardian in the United States who was available to provide care and physical custody. For the reasons described in this declaration, making this determination can be difficult and complex and requires individualized assessment of the facts in each case.

34.     Even assuming they could be identified, the cases of applicants who are described by this proposed class could involve a wide variety of procedural postures, potential outcomes and legal issues. For example, applicants described by this proposed class could include those for whom no jurisdictional determination has yet been made, those over whom USCIS has found that it lacks jurisdiction under the 2013 Memo, those over whom USCIS has found jurisdiction but has not yet completed its adjudication, those who have withdrawn their applications, and those whose cases USCIS has closed because they failed to appear for a biometrics appointment or an asylum interview.

I declare under penalty of perjury that the foregoing is true and correct.


Kimberly R. Sicard                              7-10-20
_____                     _____
Kimberly R. Sicard                              Date