# EXHIBIT 1

<u>**SETTLEMENT AGREEMENT**</u>

*J.O.P. v. D.H.S. et al.*
District of Maryland
Civil Action No. 8:19-CV-01944-SAG

  Plaintiffs J.O.P., M.E.R.E., K.A.R.C., E.D.G., and L.M.Z. (the "Named Plaintiffs"), and the Class (defined in Section II of this Settlement Agreement) (collectively, "Plaintiffs"), and Defendants U.S. Department of Homeland Security ("DHS"); Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security; U.S. Citizenship and Immigration Services ("USCIS"); Ur Mendoza Jaddou, in her official capacity as Director of USCIS; U.S. Immigration and Customs Enforcement ("ICE"); and  Patrick J. Lechleitner, in his official capacity as ICE Deputy Director and Senior Official Performing the Duties of the Director (collectively, "Defendants") (together with the Plaintiffs, the "Parties"), by and through their attorneys, hereby enter into this Settlement Agreement, as of the date it is executed by all Parties hereto and effective upon final approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure.

# I.  RECITALS

  **A.** On July 1, 2019, Plaintiffs J.O.P., M.A.L.C., M.E.R.E., and K.A.R.C. commenced this litigation for declaratory and injunctive relief (the "Action") based on allegations that USCIS had adopted policies, as reflected in the May 31, 2019 memorandum titled "Updated Procedures for Asylum Applications Filed by Unaccompanied Alien Children" ("2019 Redetermination Memo"), that changed how USCIS would implement protections provided to Unaccompanied Alien Children ("UAC") under the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), which policies were contrary to the TVPRA, and violative of the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.  Under the 2019 Redetermination Memo, a child in immigration court removal proceedings who had previously been determined to be a UAC and who applied for asylum after turning 18 or reunifying with a parent or legal guardian would have their asylum application rejected by USCIS for lack of jurisdiction.  The 2019 Redetermination Memo also directed that a child previously determined to be a UAC would be subject to the One-Year Deadline for filing asylum applications—a deadline from which UACs are statutorily exempt—if they applied for asylum after turning 18 or reunifying with a parent or legal guardian.

  **B.** The Court entered a temporary restraining order on August 2, 2019, and converted it to a preliminary injunction on October 15, 2019, enjoining and restraining Defendants, during the pendency of the litigation, from (i) applying the policy set forth in the 2019 Redetermination Memo, to bar individuals previously determined to be UACs from seeking asylum before USCIS; and (ii) rejecting jurisdiction over the application of any UAC (as defined in the Homeland Security Act, 6 U.S.C. § 279(g)(2)) under the TVPRA whose application would have been accepted under the USCIS policy predating the 2019 Redetermination Memo.  The Court also ordered Defendant USCIS to retract any adverse decision already rendered in an individual case applying the 2019

Redetermination Memo and reinstate consideration of such case applying the 2013 UAC Memorandum (also known as the 2013 Kim Memo).

**C.** On December 20, 2019, Plaintiffs J.O.P., M.A.L.C., M.E.R.E., K.A.R.C., and E.D.G. filed an amended complaint that included their prior allegations and also alleged, *inter alia*, that USCIS had adopted an unlawful policy, as reflected in the 2019 Redetermination Memo, to defer to a determination by an Executive Office for Immigration Review ("EOIR") immigration judge that USCIS does not have jurisdiction over an asylum application because it was not one filed by a UAC.

**D.** On December 21, 2020, the Court entered an amended preliminary injunction, such that Defendants, during the pendency of this litigation, are "(1) enjoined and restrained from relying on the policies set forth in the 2019 [Redetermination Memo] as a basis to decline jurisdiction over asylum applications of individuals previously determined to be unaccompanied alien children ("UACs"), to subject an asylum applicant to the one-year time limit for filing described at 8 U.S.C. § 1158(a)(2)(B), or for any other purpose; (2) enjoined and restrained from rejecting jurisdiction over any asylum application filed by Plaintiffs and members of the class whose applications would have been accepted under the 2013 Kim Memo; (3) enjoined and restrained from deferring to EOIR determinations in assessing jurisdiction over asylum applications filed by Plaintiffs and members of the proposed class; and (4) enjoined and restrained during the removal proceedings of any Plaintiff or member of the class (including EOIR proceedings before immigration judges and members of the Board of Immigration Appeals) from seeking denials of continuances or other postponements in order to await adjudication of an asylum application that has been filed with USCIS, from seeking EOIR exercise of jurisdiction over any asylum claim where USCIS has initial jurisdiction under the terms of the 2013 Kim Memo, or from otherwise taking a position in such individual's removal proceedings that, inconsistent with the 2013 Kim Memo, USCIS does not have initial jurisdiction over the individual's asylum application." The Court also ordered Defendant USCIS to "retract any adverse decision rendered on or after June 30, 2019 that is based in whole or in part on any of the actions enjoined and restrained by (1), (2), or (3) above."

**E.** On December 21, 2020, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, the Court certified the following Class:

All individuals nationwide who prior to the effective date of a lawfully promulgated policy prospectively altering the policy set forth in the 2013 Kim Memorandum (1) were determined to be an Unaccompanied Alien Child; and (2) who filed an asylum application that was pending with the United States Citizenship and Immigration Services ("USCIS"); and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits.

F. On January 11, 2021, Plaintiffs J.O.P., M.A.L.C., M.E.R.E., K.A.R.C., E.D.G., and L.M.Z. filed a second amended complaint that included their prior allegations and also alleged, *inter alia*, that USCIS had adopted an unlawful policy or practice of treating recognitions or notations as to evidence that a child has turned 18 or been reunited with a parent or legal guardian as "affirmative acts" under the 2013 Kim Memo.

G. On February 19, 2021, Defendants filed an appeal from the Court's December 21, 2020 Order with the U.S. Court of Appeals for the Fourth Circuit.

H. On March 4, 2021, Defendants agreed as follows: that USCIS will not make jurisdictional determinations under INA § 208(b)(3)(C) that rely solely on a UAC redetermination noted in ENFORCE Alien Removal Module ("EARM") or other ICE or DHS systems as terminating a prior UAC Determination, unless it documents that ICE placed the individual in ICE custody as an adult detainee; and that while this agreement remains in effect, USCIS will place on hold cases involving any other type of act that might qualify under the 2013 Kim Memo as an "affirmative act" before filing.

I. The Parties, through counsel, have conducted discussions and arm's length negotiations regarding a compromise and settlement of the Action with a view to settling all matters in dispute.

J. Considering the benefits that the Class (including Named Plaintiffs) will receive from settlement of the Action and the risks of litigation, counsel for the Class ("Class Counsel") have concluded that the terms and conditions of this Settlement Agreement are fair, reasonable, adequate, equitable, and in the best interests of the Class.

**NOW, THEREFORE**, in recognition that the Parties and the interests of justice are best served by concluding this Action, subject to the Court's approval and entry of an order consistent with this Agreement, the undersigned Parties, through counsel, hereby STIPULATE and AGREE as follows:

## II.    DEFINITIONS

As used throughout this Settlement Agreement, the following definitions shall apply:

A. **"Action"** means the civil action captioned *J.O.P. et al. v. D.H.S. et al.*, Civil Action No. 8:19-CV-01944-SAG, United States District Court for the District of Maryland.

B. **"Adjudicate on the merits"** means to render a decision on the substance of an asylum claim by either granting an approval or issuing a determination of non-eligibility.

C. **"Adverse Jurisdictional Determination"** means a determination by USCIS that it lacks jurisdiction over an asylum claim.

D.  **"Appeal"** means the Defendants' appeal from the December 21, 2020 decision in the Action, filed in the United States Court of Appeals for the Fourth Circuit, C.A. No. 21-1187.

E.  **"Class"** means all individuals nationwide who prior to the effective date of the superseding memorandum discussed in Section III(A): (1) were determined to be a UAC; and (2) who filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits. As the Class is defined more specifically under this Settlement Agreement than in the Court's class certification order, the Parties agree to seek a modification of the Class definition from the Court.

F.  **"Class Counsel"** means Goodwin Procter LLP, Public Counsel, National Immigration Project of the National Lawyers Guild ("NIPNLG"), Kids in Need of Defense ("KIND"), and Bet Tzedek Legal Services.  Should any of the foregoing entities change their name or merge with other entities, those new entities shall also qualify as Class Counsel.

G.  **"Class Member"** means a member of the Class.

H.  **"Court"** means the U.S. District Court for the District of Maryland.

I.  **"Defendants"** means DHS; Alejandro Mayorkas, in his official capacity as Secretary of DHS; USCIS; Ur Mendoza Jaddou, in her official capacity as Director of USCIS; ICE; and Patrick J. Lechleitner, in his official capacity as Deputy Director and Senior Official Performing the Duties of the Director of ICE.

J.  **"Effective Date"** means the date this Settlement Agreement receives final approval by the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure.

K.  **"EOIR"** means the Executive Office for Immigration Review, the U.S. Department of Justice body tasked with hearing immigration court proceedings and adjudicating appeals, which includes immigration judges and appellate immigration judges assigned to the Board of Immigration Appeals.

L.  **"Final Determination"** means either that: (a) USCIS has made an adjudication on the merits, as defined in Paragraph II.B; or (b) USCIS has provided notice to the applicant that the asylum application has been dismissed, terminated, or returned to immigration court due to an Adverse Jurisdictional Determination as defined in Paragraph II.C, except that no Adverse Jurisdictional Determination shall give rise to a Final Determination: (1) while the Class Member is challenging the Adverse Jurisdictional Determination via the procedure described in Paragraph V.D; (2) if the Adverse Jurisdictional Determination was issued under Paragraph III.C, while the Class

Member is still within the time period to file a rebuttal as described in that paragraph and while the Class Member's rebuttal is pending before USCIS; or (3) if the Adverse Jurisdictional Determination must be re-examined under Paragraph III.E and that re-examination is not yet complete.

M. **"Initial Jurisdiction"** means USCIS jurisdiction over an individual's asylum claim pursuant to 8 U.S.C. § 1158(b)(3)(C) despite the individual's being in removal proceedings.

N. **"Named Plaintiffs"** means J.O.P., M.E.R.E., K.A.R.C., E.D.G., and L.M.Z.  The full names of the Named Plaintiffs have been provided to the Court under seal.

O. **"One-Year Deadline"** means the general requirement for asylum seekers to file any asylum application within one year of their last arrival in the United States, set forth at 8 U.S.C. § 1158(a)(2)(B).

P. **"Parties"** means Plaintiffs and Defendants in the Action.

Q. **"Settlement Agreement" or "Agreement"** means this Class Action Settlement Agreement between the Parties in the Action, including all exhibits.

R. **"Settled Claims"** means all claims for relief that were brought in the Action on behalf of Named Plaintiffs and Class Members alleged in Plaintiffs' Complaints.

S. **"Termination Date"** means the date that is 548 days after the Effective Date.

S.1 **"Termination Date – USCIS Memo"** means the date that is three years after the superseding memorandum's effective date as set forth in paragraph III.A of this Settlement Agreement.

T. **"TVPRA"** means the William Wilberforce Trafficking Victims Protection Reauthorization Act, Public Law 110-457, 122 Stat. 5044 (December 23, 2008).

U. **"Unaccompanied Alien Child" or "UAC"** means "a child who—(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom—(i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody," as set forth in 6 U.S.C. § 279(g)(2).

V. **"Prior UAC Determination"** means a finding by ICE or U.S. Customs and Border Protection that an individual is a UAC as defined in 6 U.S.C. § 279(g)(2).

W. **"2013 Updated Procedures Memo"** means the May 28, 2013 Memorandum, titled "Updated Procedures for Determination of Initial Jurisdiction over Asylum

Applications Filed by Unaccompanied Alien Children" from Ted Kim (Acting Chief, Asylum Division, USCIS).

X. **"2019 Redetermination Memo"** means the May 31, 2019 Memorandum, titled "Updated Procedures for Asylum Applications Filed by Unaccompanied Alien Children" from John Lafferty (Chief, Asylum Division, USCIS).

## III.    AGREED UPON TERMS

A. USCIS has fully rescinded the 2019 Redetermination Memo. USCIS labelled the website with the 2019 Redetermination Memo with a banner stating the memo is no longer current. USCIS will also issue a superseding memorandum explaining and implementing this Settlement Agreement no later than 90 days after the Court's final approval of this Settlement Agreement. The superseding memorandum's effective date will be 90 days after the Court's final approval of this Settlement Agreement. The superseding memorandum will apply to Class Members as well as other individuals with Prior UAC Determinations who file an asylum application when the memorandum is in effect. The superseding memorandum will remain in effect for at least three years from the superseding memorandum's effective date.

B. USCIS will exercise Initial Jurisdiction over Class Members' asylum applications in accordance with the terms of this Settlement Agreement and adjudicate them on the merits, and USCIS will hold such applications exempt from the One-Year Deadline.

C. **1.** Notwithstanding Paragraph III.B of this Settlement Agreement, USCIS may determine it lacks Initial Jurisdiction over the asylum application of a Class Member if the Class Member was placed in adult immigration detention after a Prior UAC Determination but before filing their asylum application. "Placed in adult immigration detention" does not include custody for the sole purposes of processing the Class Member prior to release on their own recognizance or release through another alternative to detention, such as an order of supervision, parole, enrollment in an alternative to detention program, or ICE bond. The Class Member must submit evidence of a Prior UAC Determination that USCIS may adopt. If the individual had contact with ICE as an adult, they may also submit evidence of any custodial determinations made by ICE after they attained 18 years of age, including but not limited to the Class Member's declaration made in accordance with 28 U.S.C. § 1746.

**2.** When USCIS declines Initial Jurisdiction based on this provision, USCIS must provide the Class Member and counsel, if any, with: (a) the jurisdictional rejection; (b) a detailed description of the information leading USCIS to believe that the Class Member was placed in adult immigration detention; and (c) an opportunity to rebut the information within 30 days (or 33 days if the rejection and accompanying detailed description are served by mail). USCIS shall simultaneously provide the Class Member and counsel, if any, with Class Counsel's contact information, using the language found at Exhibit A. USCIS shall retract the jurisdictional rejection within 30 days of having

received the Class Member's rebuttal if the Class Member has successfully rebutted the information USCIS relied upon to reject Initial Jurisdiction.

    **3.**  For Class Members who fall within this paragraph due to USCIS's rejection of Initial Jurisdiction and whose applications could otherwise be deemed untimely, DHS generally will agree to stipulate in their removal proceedings that the Class Member qualifies for an extraordinary circumstances exception under 8 U.S.C. § 1158(a)(2)(D), 8 C.F.R. § 208.4(a)(5), and has filed within a reasonable period given the circumstances under 8 C.F.R. § 208.4(a)(5) for purposes of the One-Year Deadline such that the One-Year Deadline does not bar the asylum application.

**D.**  In assessing its jurisdiction over asylum applications filed by a Class Member, USCIS will not defer to any determinations by EOIR, including but not limited to determinations made pursuant to *Matter of M-A-C-O-*, 27 I&N Dec. 477 (BIA 2018). Notwithstanding the previous sentence, USCIS may adopt a previous EOIR determination that a Class Member was a UAC at the time of filing their asylum application for purposes of USCIS's accepting Initial Jurisdiction over a Class Member's asylum application.

**E.  1.**  Defendants shall retract any Adverse Jurisdictional Determinations rendered on or after June 30, 2019 that merit retraction under the process described in Paragraph III.C.2 no later than 240 days after USCIS's issuance of the superseding memorandum described in Paragraph III.A.

    **2.**  Defendants shall retract all other Adverse Jurisdictional Determinations rendered on or after June 30, 2019 that are inconsistent with Paragraphs III.B and/or III.D no later than 180 days after USCIS's issuance of the superseding memorandum described in Paragraph III.A.

    **3.**  No later than 60 days after the Effective Date, Defendants shall mail to Class Members whose cases will be reviewed under this paragraph a notice of re-examination of jurisdictional determination indicating that USCIS will make a jurisdictional determination in the case pursuant to this Settlement Agreement. Defendants shall include in the notice Class Counsel's contact information, using the language found at Exhibit A.

**F.**  No later than 60 days after USCIS's issuance of the superseding memorandum described in Paragraph III.A of this Settlement Agreement, Defendants shall release the holds placed beginning in March 2021 on certain Class Members' asylum applications involving acts that in USCIS's view might have qualified under the 2013 Kim Memo as an affirmative act before filing and shall mail to such Class Members a notice that their asylum application has been released from the hold. Defendants shall include in the notice Class Counsel's contact information, using the language found at Exhibit A.

**G.** Defendants will adopt procedures permitting Class Members to request that USCIS exercise its discretion to expedite adjudication of asylum applications pending with USCIS on the basis of circumstances that include but need not be limited to:

    **1.** The Class Member's immigration detention;

    **2.** The Class Member received a Notice of Lack of Jurisdiction that was retracted under Paragraph III.C or Paragraph III.E of this Settlement Agreement; or

    **3.** The Class Member has an order of removal.

All Class Members, including Class Members whose asylum applications were released from hold pursuant to Paragraph III.F of this Settlement Agreement, may also avail themselves of the general expedite procedures available at their local asylum offices.

**H.** With respect to DHS's treatment of Class Members in removal proceedings, DHS will refrain from taking the position that USCIS does not have Initial Jurisdiction over a Class Member's asylum application. DHS will join or non-oppose Class Members' motion(s) for a continuance, administrative closure unless unavailable under controlling law in a particular jurisdiction, and, where available, assignment of cases to the EOIR status docket, that have been filed or made orally on the record in immigration proceedings in order to await USCIS exercise of Initial Jurisdiction over their asylum application. Nothing in this provision prevents DHS from either filing a motion to dismiss or terminate removal proceedings of a Class Member to await USCIS's adjudication of the asylum application or as a matter of prosecutorial discretion, or from joining or non-opposing a motion to dismiss or terminate proceedings filed or made orally on the record by a Class Member. DHS will generally join or non-oppose Class Members' motion(s) to dismiss or terminate filed or otherwise made in order to await USCIS exercise of Initial Jurisdiction over their asylum application. Defendants retain discretion to oppose Class Members' motion(s) if it deems such opposition warranted based on the individual facts of the cases, as long as DHS's opposition is not based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application. Pursuant to this paragraph, Defendants agree that in cases where DHS chooses not to file any response with EOIR indicating its position on the Class Members' properly served motions for continuance, dismissal or termination, administrative closure unless unavailable under controlling law in a particular jurisdiction, adjournments or, where available, assignment of cases to the EOIR status docket, this provision of the Settlement Agreement serves as evidence of DHS's non-opposition.

**I.** With respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement. In order to comply with this provision, ICE Enforcement and Removal

Operations (ERO), the agency responsible for executing removal orders, will make an entry indicating there is a stay in its system of records for all identified Class Members, including Class Members identified by USCIS. This alert will not be removed from any individual case until such time as USCIS indicates it is appropriate to remove it.

**J.**   Following a grant of asylum by USCIS to a Class Member with a removal order:

   **1.**   Defendants agree that, where DHS has chosen not to file a response to a properly filed and served Class Member's motion to reopen, this provision of the Settlement Agreement serves as evidence of DHS's non-opposition to the motion filed on behalf of a Class Member described in this section. To avoid the time and number bars for motions to reopen, Defendants agree that Class Members may style their motions to reopen as a "joint motion to reopen" and include language that "Pursuant to the Settlement Agreement in *J.O.P. v. U.S. Department of Homeland Security,* No. 19-01944 (D. Md.), DHS is joining in the motion unless DHS files a response within 30 days opposing the motion." DHS will generally join or not oppose a motion to reopen. The use of this provision of the Settlement Agreement as evidence of joinder is solely limited to DHS's joinder for the purposes of acknowledging class membership and the terms of the Settlement Agreement, and as a factor for the applicability of any time or number bars that may otherwise apply to the motion. This provision may not be used for any other purpose. The Defendants agree that any opposition to the motion to reopen will not be based on a position that USCIS did not have Initial Jurisdiction over the Class Member's asylum application. The joinder framework found in this paragraph only applies to motions to reopen and shall have no effect on any combination or concurrently filed motions, e.g., motions to reopen and dismiss.

   **2.**   In conjunction with or following reopening of such proceedings, DHS will generally join or non-oppose termination or dismissal of removal proceedings, but retains discretion to oppose termination or dismissal if it deems such opposition warranted based on the individual facts of a case, as long as DHS's opposition is not based, in whole or in part, on a position that USCIS did not have Initial Jurisdiction over the Class Member's asylum application.

   **3.**   Nothing in this provision prevents DHS from filing an unopposed or joint motion to reopen the removal proceedings of a Class Member described in this section, or from filing an unopposed or joint motion to dismiss or terminate proceedings of a Class Member described in this section.

**K.**   For any provision of this Settlement Agreement wherein DHS will join or non-oppose motions filed or made by Class Members, DHS will join or non-oppose such motions when they are submitted with sufficient evidence of Class membership. Any one of the following documents provides sufficient evidence of Class membership for purposes

9

of DHS's obligations to join or non-oppose motions as specified elsewhere in the Settlement Agreement. In its discretion, DHS may treat evidence other than that specified below as sufficient evidence of Class membership.

1. A copy of a receipt for an asylum application filed pursuant to INA § 208(b)(3)(C);

2. A copy of an asylum application cover letter sent to USCIS, along with a screenprint of the USCIS Case Status Online tool reflecting that USCIS has accepted the application for processing; or

3. A declaration made in accordance with 28 U.S.C. § 1746 stating that the individual was determined to be a UAC, filed an asylum application with USCIS that USCIS has not adjudicated on the merits, and on the date they filed their asylum application with USCIS they were 18 years of age or older, or had a parent or legal guardian in the United States available to provide care and physical custody.

## IV. CONDITIONS AND APPROVAL OF THE SETTLEMENT

A. **Effective Date of Agreement.** After this Agreement has been signed by all Parties, it will become effective upon final approval by the Court.

B. **Preliminary Approval.** As soon as practicable after the execution of this Agreement, the Parties shall jointly move for a Preliminary Approval Order, substantially in the form of Exhibit B, preliminarily approving this Settlement Agreement and finding this settlement to be fair, just, reasonable, and adequate, approving the Class Notice to the Class Members, substantially in the form of Exhibit C, and setting a hearing to consider final approval of the Settlement and any objections thereto.

C. **Effect of the Court's Rejection of the Agreement.** If the Court rejects this Agreement, in whole or in part, or other otherwise finds that the Agreement is not fair, just, reasonable, and adequate, the Parties agree to meet and confer to work to resolve the concerns articulated by the Court and modify the Agreement accordingly.

D. **Fairness Hearing.** At the fairness hearing, as required for final approval of the settlement pursuant to Federal Rule of Civil Procedure 23(e)(2), the Parties will jointly request that the Court approve the Settlement Agreement as fair, final, reasonable, adequate, and binding on the Class, all Class Members, and all Plaintiffs; and issue a Final Approval Order, substantially in the form of Exhibit D.

E. **Notice for Fairness Hearing.** Not later than 14 days after entry of the Preliminary Approval Order (unless this time period is modified by written agreement of the Parties' counsel or by order of the Court), the Parties shall effectuate the following:

1. Class Counsel shall post the Class Notice (in English and Spanish), including a copy of this Settlement Agreement, on Public Counsel's, NIPNLG's, and KIND's websites;

2. USCIS shall post the Class Notice (in English and Spanish), including a copy of the Settlement Agreement, on USCIS's website on the "USCIS Class Action, Settlement Notices and Agreements" and the "Asylum" sections;

3. ICE shall post the Class Notice (in English and Spanish), including a copy of the Settlement Agreement, on ICE's website on the "Legal Notices" section;

4. Class Counsel shall distribute the Class Notice (in English and Spanish), including a copy of the Settlement Agreement, on relevant (as determined by Class Counsel) email or list serv mailing lists for legal services providers; and

5. USCIS's Office of Public Affairs shall email the Class Notice (in English and Spanish), including a copy of the Settlement Agreement, to its approximately 47,000 subscribed users.

F. **Objections.**   Any Class Member who wishes to object to the Settlement and/or be heard at the fairness hearing must submit a written notice of objection and/or request to be heard at the fairness hearing, postmarked within 60 days of entry of the Preliminary Approval Order (or such other deadline as the Court may order), by mailing the notice of objection and/or request to be heard to the District Court for the District of Maryland, or by filing the notice of objection and/or request to be heard with the Court. Each notice of objection or request to be heard must be served on the Parties as set forth in the Class Notice and must include: (i) the case name and number, *JOP v. DHS*, No. 8:19-CV-01944-SAG, (ii) the Class Member's name, (iii) the Class Member's current address and telephone number, or current address and telephone number of the Class Member's legal representative, (iv) the grounds upon which the claimed Class membership is based; (v) an explanation of why the Class Member objects to the Settlement, including the grounds therefore, any supporting documentation, and (vi) whether the Class Member requests the opportunity to be heard at the fairness hearing.  Any such objection or notice of request to be heard may be filed under seal to avoid disclosure of any personal identifying information on the public record.  Failure to comply with all requirements of this section shall constitute grounds for striking an objection or denying a request to be heard, if any. The Parties will have 14 days following the objection period in which to submit answers to any objections that are filed.

G. **Opt-Outs.**  Due to the nature of the relief offered to the Class Members, there are no grounds for Class Members to opt-out.

**H. Final Approval.** The Court's final approval of the settlement set forth in this Agreement shall consist of its Final Approval Order granting each of the Parties' requests made in connection with the fairness hearing, resolving all claims before the Court, giving effect to the releases as set forth in Section VI, dissolving the preliminary injunction, and dismissing the Action with prejudice, with the exception that following final approval of this Agreement, the Court shall retain jurisdiction over only the following matters as provided in this section and only until the date the Agreement terminates as described in Section IV.K:

    **1.** Claims by any Party in accordance with the provisions laid out in Section V of this Agreement that any other Party has committed a violation of this Agreement;

    **2.** The express repudiation of any of the terms of this Agreement by any Party; and

    **3.** Plaintiffs' claims for attorney fees and/or litigation costs.

**I. Withdrawal of Appeal**. Upon final approval, Defendants shall withdraw their Appeal.

**J. Notice of Final Approval.** Not later than 14 days after entry of final approval of the Agreement (unless this time period is modified by written agreement of the Parties' counsel or by order of the Court), the Parties shall provide an Updated Class Notice (in English and Spanish), substantially in the form of Exhibit E, to the same websites and distribution lists as set forth in Section IV.E.

**K. Termination.** This Settlement Agreement shall terminate 548 days after the Effective Date, except that the Court shall have jurisdiction to enforce Paragraph III.A of this Agreement until three years after the superseding memorandum's effective date.

**V. RETENTION OF JURISDICTION, NON-COMPLIANCE, AND ENFORCEMENT**

**A. Retention of Jurisdiction.** This Court shall retain exclusive jurisdiction to supervise the implementation of this Settlement Agreement and to enforce its provisions and terms until the Termination Date, except that the Court shall retain jurisdiction over Paragraph III.A (USCIS superseding memorandum) until the Termination Date – USCIS Memorandum, and the terms of this Agreement shall be incorporated into the order of the Court approving the Agreement.

**B. Compliance Reports.** Defendants shall report to the Court and Class Counsel on their compliance with Paragraphs III.E and III.F of this Agreement within 30 days of the end of each time period for compliance that is specified within those paragraphs. No later than 180 days after the Effective Date, and each 180 days thereafter, Defendants will report on compliance with Paragraphs III.A through G inclusive of this Settlement Agreement. Such Compliance Reports will be substantially in the form of the relevant sections of Exhibit F to this Settlement Agreement.

**C. Response to Compliance Reports**. Following the provision of each Compliance Report described in Paragraph V.B, Plaintiffs, through Class Counsel, shall submit a response to any Compliance Report within 30 days of service, and allow Defendants 30 days to respond to any concerns Plaintiffs raise in their response. The Parties shall meet and confer regarding any issues related to the Compliance Report, and if the Parties are unable to resolve any such issues, either party may request a hearing with the Court.

**D. Noncompliance with This Agreement.** In the event of an alleged noncompliance with this Settlement Agreement, on an individual or class-wide basis, the complaining Class Member(s) or their legal representative(s) shall provide written notice of the alleged noncompliance, to Class Counsel at the email address identified in Section VIII.L. Defendants shall send a written response to Class Counsel within a reasonable period of time not to exceed 60 days after receiving written notice of the alleged noncompliance from Class Counsel. Within 90 days of Defendants' receipt of the written notice of the alleged noncompliance from Class Counsel, Defendants and Class Counsel shall meet and confer in a good faith effort to resolve the dispute informally. If the dispute cannot be resolved, the complaining Class Member(s) may move to enforce the Agreement on an individual basis before the Court and Class Counsel may elect to move to enforce the Agreement on an individual or class-wide basis before the Court. Once such a motion to enforce is initiated, the complaining Class Member shall not be removed from the United States unless and until the matter has been resolved in favor of Defendants.

## VI. RELEASES

**A.** As of the Effective Date, Plaintiffs, by operation of the final approval entered by the Court, shall have fully, finally, and forever released, relinquished, and discharged the Defendants of and from any and all Settled Claims, and the Plaintiffs shall forever be barred and enjoined from bringing or prosecuting any Settled Claim against any of the Defendants. This release shall not apply to claims that arise or accrue after termination of this Agreement.

**B.** Nothing in this Agreement shall be construed as affecting any Class Member's right or interest in challenging the adjudication of their individual asylum application, or challenging any related removal order. Individual Class Members expressly maintain the right to challenge the adjudication of such applications and orders.

**C.** The above releases do not include any release of claims to enforce the terms of this Agreement prior to termination of obligations under this Agreement as provided in Section IV.K.

## VII. ATTORNEY FEES, COSTS, AND EXPENSES

Plaintiffs may attempt to negotiate, request, seek, or solicit attorney fees and/or litigation costs in this Action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other provision independent of this Agreement. Any application for fees and/or costs shall be filed no later than 30 days after the Court issues its final approval of this Settlement Agreement. Nothing in this Settlement Agreement shall be understood to limit Plaintiffs' right to seek such fees and/or costs.

## VIII.   ADDITIONAL PROVISIONS

**A. Best Efforts.**  The Parties' counsel shall use their best efforts to cause the Court to grant preliminary approval of this Agreement and Settlement as promptly as practicable, to take all steps contemplated by this Agreement to effectuate the Settlement on the stated terms and conditions, and to obtain final approval of this Agreement and Settlement.

**B. Change of Time Periods.**  The time periods and/or dates described in this Agreement with respect to providing notice of the preliminary approval of the Agreement, the fairness hearing, and the final approval of the Agreement are subject to approval and change by the Court or by the written agreement of the Parties' counsel, without notice to Class Members.

**C. Time for Compliance.**  The dates described herein refer to calendar days, unless otherwise stated. If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

**D. Entire Agreement.**  The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties relating the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement constitute the complete and exclusive statement of its terms as between the Parties, and that no extrinsic evidence whatsoever may be introduced in any judicial or other proceeding, if any, involving the interpretation of this Agreement.

**E. No Modification.** No change or modification of this Agreement shall be valid unless it is contained in writing and signed by or on behalf of Plaintiffs and Defendants and approved by the Court.

**F. Severability.** If any provision of this Agreement is declared null, void, invalid, illegal, or unenforceable in any respect, the remaining provisions shall remain in full force and effect.

**G. Advice of Counsel.** The determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel.

**H. Joint Drafting.** In the event of ambiguity in or dispute regarding the interpretation of the Agreement, interpretation of the Agreement shall not be resolved by any rule providing for interpretation against the drafter. The Parties expressly agree that in the event of an ambiguity or dispute regarding the interpretation of the Agreement, the Agreement will be interpreted as if each Party participated in the drafting.

**I. Binding Agreement.** This Agreement shall be binding upon and inure to the benefit of the Parties' respective heirs, successors, and assigns.

**J. No Waiver.** The waiver by any Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

**K. Extensions of Time.** The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

**L. Notices.** Except as specified elsewhere in this Agreement, all notices required or permitted under or pertaining to this Agreement shall be made in writing. Any notice shall be deemed to have been completed upon mailing or emailing. Notices shall be delivered to the Parties at the following addresses until a different address has been designated by notice to the other Party:

*For the Plaintiffs:*

DG-JOPClassCounsel@goodwinlaw.com

Kevin J. DeJong
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
KDeJong@goodwinlaw.com

*For the Defendants*:

Vickie LeDuc
Matthew Haven
U.S. Attorney's Office
District of Maryland
36 S. Charles St., 4th Floor
Baltimore, MD 21201
Vickie.LeDuc@usdoj.gov
Matthew.Haven@usdoj.gov

**IN WITNESS WHEREOF**, the Parties have executed this Agreement, which may be executed in counterparts, and the undersigned represent that they are authorized to execute and deliver this Agreement on behalf of their respective Parties.

Consented and agreed to by:

DATED: June 7, 2024

For the Plaintiffs:

_____

Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
KDeJong@goodwinlaw.com

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project of the
National Lawyers Guild
1200 18th St. NW, Suite 700
Washington, DC 20036
Phone: 540-907-1761
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project of the
National Lawyers Guild
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495

For the Defendants:

Digitally signed by MATTHEW HAVEN
Date: 2024.06.17 15:54:42 -04'00'

_____

Vickie LeDuc
Matthew Haven
U.S. Attorney's Office
District of Maryland
36 S. Charles St., 4th Floor
Baltimore, MD 21201
Phone: 410-209-4800
Vickie.LeDuc@usdoj.gov
Matthew.Haven@usdoj.gov

Rebecca@nipnlg.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: (323) 939-0506
Fax: (213) 471-4568

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

*admitted pro hac vice

# EXHIBIT A

## <u>CONTACTING CLASS COUNSEL LANGUAGE</u>

You are receiving this notice because the person named above may have certain legal rights based on the settlement of the lawsuit called *J.O.P. et al. v. D.H.S. et al.*, Civil Action No. 8:19-CV-01944-SAG (D. Md.). You can find a copy of the *J.O.P. v. D.H.S.* settlement agreement here: [link]. Counsel appointed by the court to represent the class members in the *J.O.P. v. D.H.S.* lawsuit has asked that this office provide you class counsel's contact information if you would like to discuss class member rights that may be relevant in your situation. Class counsel is available to provide information and advice at no cost to class members. You are not obligated to consult class counsel about your rights, but class members have a right to do so. You may communicate confidentially with class counsel by sending an email to: DG-JOPClassCounsel@goodwinlaw.com.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

**J.O.P.,** *et al.*,

           Plaintiffs,

    v.

**U.S. DEPARTMENT OF HOMELAND
SECURITY,** *et al.*,

           Defendants.

Civil Action No. 8:19-CV-01944-SAG

**[PROPOSED] ORDER GRANTING THE PARTIES' JOINT MOTION FOR
PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT
AND TO AMEND THE CLASS DEFINITION**

The Parties have filed a Joint Motion for Preliminary Approval of a settlement agreement, and to amend the definition of the class certified in this Court's December 21, 2020 order.  The Court has carefully considered the settlement agreement (the "Agreement") together with all exhibits thereto (annexed to the Parties' motion as Exhibit 1), all the filings related to the instant motion, and the record in this case.  The Court hereby gives its preliminary approval of this settlement; finds that the Agreement is sufficiently fair, reasonable, and adequate to allow dissemination of notice of the Agreement ("Class Notice") to the certified Class, as amended herein, and to hold a Fairness Hearing; orders the Class Notice be made available to the certified Class, as amended herein, in accordance with the Agreement and this Order; and schedules a Fairness Hearing to determine whether the proposed settlement is fair, adequate, and reasonable.

1

**IT IS HEREBY ORDERED THAT:**

1.     The Agreement is hereby incorporated by reference in this Order, and all terms or phrases used in this Order shall have the same meaning as in the Agreement.

2.     The Court preliminarily approves the Agreement, provisionally finding that the terms of the Agreement are fair, reasonable, and adequate as required by Fed. R. Civ. P. 23(e)(2), and within the range of possible approval and sufficient to warrant providing notice to the certified Class, as amended herein.

3.     The Court previously certified the class as "All individuals nationwide who prior to the effective date of a lawfully promulgated policy prospectively altering the policy set forth in the 2013 Kim Memorandum (1) were determined to be an Unaccompanied Alien Child; and (2) who filed an asylum application that was pending with the United States Citizenship and Immigration Services ("USCIS"); and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits."

4.     The Parties agree, as set forth in the Agreement, that the definition of the certified Class should be amended as follows:  "All individuals nationwide who prior to the effective date of the superseding memorandum discussed in Section III(A) [of the Agreement]: (1) were determined to be a UAC; and (2) who filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical

custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits." The Court adopts the parties' amended Class definition as set forth in the Agreement.

5.      The Court finds that the proposed Class Notice and the proposed plan of distribution of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(e)(1) and hereby directs the parties to proceed with the notice distribution in accordance with the terms of the Agreement. Distribution of the Class Notice must be completed within 14 days of this Order.

6.      The Court also approves the procedures set forth in Section IV(F) of the Agreement for any objections to the settlement. Any Class Member who wishes to object to the Agreement must do so within 60 days of this Order. The Parties will have 14 days following the objection period in which to submit answers to any objections that are filed.

7.      The Court directs that a hearing be held on ____, 2024 (the "Fairness Hearing") to assist the Court in finally determining whether the settlement is fair, reasonable, and adequate; and whether Final Judgment should be entered dismissing with prejudice the claims in the above-captioned case but retaining jurisdiction in this Court to interpret and enforce the Agreement for its duration and to resolve any request for attorneys' fees and costs.

8.      If the Agreement is not finally approved, then (a) all parties will proceed as if the Agreement had not been executed and this order not entered, preserving in that event all of their respective claims and defenses in this action; and (b) all releases given will be null and void. In such an event, this Court's orders regarding the Agreement, including this Order, shall not be used or referred to in litigation for any purpose. Nothing in this paragraph is intended to alter the terms of the Agreement with respect to the effect of the Agreement if not approved.

9.      The Parties' Joint Motion for Preliminary Approval of Proposed Class Action Settlement and to Amend the Class Definition is hereby GRANTED. The Court hereby

3

preliminarily approves the proposed class-wide relief set forth in the Agreement, hereby approves the proposed form and plan of notice (addressed in the Agreement), and hereby schedules the Fairness Hearing.  The Court also adopts the amended class definition, as set forth above.

**IT IS SO ORDERED.**

 Dated this ____ day of ____, 2024.                _____

                                                                          U.S. District Judge Stephanie A. Gallagher

4

# EXHIBIT C

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

---

**United States District Court for the District of Maryland**
*J.O.P., et al. v. U.S. Department of Homeland Security, et al.*
**Case No. 19-cv-01944-SAG**

---

*A federal court has authorized this notice. This is not an advertisement. You are not being sued or restrained.*

---

| If you were determined to be an "Unaccompanied Alien Child," | And you filed an asylum application with U.S. Citizenship and Immigration Services, | You may be part of a federal class action settlement. |

---

## PLEASE READ THIS NOTICE CAREFULLY.

THIS NOTICE RELATES TO A PENDING CLASS ACTION LAWSUIT AND CONTAINS IMPORTANT INFORMATION ABOUT CLASS MEMBERS' RIGHTS TO OBJECT TO THE SETTLEMENT.

This notice is to tell you about a proposed Settlement Agreement of a class action lawsuit, *J.O.P. et al. v. U.S. Department of Homeland Security, et al.*, Case No. 19-cv-01944-SAG, pending in the United States District Court for the District of Maryland. The Court has granted preliminary approval of the proposed Settlement Agreement and has set a Final Approval Hearing (referred to as a Fairness Hearing in the proposed Settlement Agreement) to take place on **[DATE] at [TIME]** in Courtroom [X], [ADDRESS], to decide if the proposed Settlement Agreement is fair, reasonable, and adequate.

## Final Approval Hearing:
## [DATE] at [TIME]

**<u>Note</u>**: this date and time are subject to change by Court Order and may change without further notice to the Class.

## 1. What is the purpose of this notice?

This notice has three purposes. The notice:

A.  Tells you about the proposed Settlement Agreement and the Final Approval Hearing;

B.  Explains how you may object—**and the deadline for doing so**—if you disagree with the proposed Settlement Agreement's terms; and

C.  Explains how you can get more information.

 **If you are a Class Member, your legal rights are affected regardless of whether you act.**

2

## 2. What is the *J.O.P. v. DHS* lawsuit about?

*J.O.P. v. DHS* is a class action lawsuit that was filed in federal court in Maryland in July 2019. A class action lawsuit is filed on behalf of a large group of people, rather than one person.

The Plaintiffs who brought the *J.O.P. v. DHS* lawsuit claimed that a 2019 policy created by the federal government about how to treat asylum applications filed by people previously determined to be an "Unaccompanied Child" (referred to as "Unaccompanied Alien Child" in the immigration laws) was unlawful.

Under that 2019 policy, U.S. Citizenship and Immigration Services ("USCIS") rejected the asylum applications of people in immigration court removal proceedings who had "Unaccompanied Child" determinations if they no longer met the definition of "Unaccompanied Child" on the date they filed the asylum application—even though under the policy that came before the 2019 policy, USCIS accepted such applications.

Under the challenged 2019 policy, USCIS also applied a one-year filing deadline to the asylum applications of individuals with previous "Unaccompanied Child" determinations if they no longer met the definition of "Unaccompanied Child" on the date they filed their asylum application—even though under the policy in place before the 2019 policy, USCIS held such applications exempt from the one-year deadline.

The Parties in this case are Plaintiffs J.O.P., M.E.R.E., K.A.R.C., E.D.G., and L.M.Z., all asylum seekers with previous "Unaccompanied Child" determinations ("Plaintiffs"), and the Defendants are U.S. Department of Homeland Security; Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security; U.S. Citizenship and Immigration Services; Ur Mendoza Jaddou, Director of U.S. Citizenship and Immigration Services; U.S. Immigration and Customs Enforcement; and Patrick J. Lechleitner, ICE Deputy Director and Senior Official Performing the Duties of the Director ("the Government").

3

Since August of 2019, the U.S. District Court for the District of Maryland ("Court") has ordered the Government to stop applying the 2019 policy. On December 21, 2020, the Court decided that this case could go forward as a nationwide class action.

The certified class includes all people nationwide who were determined to be an "Unaccompanied Child," filed an asylum application with USCIS that USCIS has not yet adjudicated on the merits, and on the date they filed the application were 18 years old or older or had a parent or legal guardian in the United States available to provide care and physical custody.

The Court also ordered the Government not to advocate against postponements of the immigration court proceedings of Class Members while they were waiting for USCIS to decide their pending asylum applications.

The Plaintiffs and the Government subsequently reached this Settlement Agreement. The Government denies any wrongdoing, but is settling the case in order to avoid the expense and resources to keep fighting the case. The Plaintiffs and their lawyers ("Class Counsel") believe that the proposed Settlement Agreement provides important rights and benefits for the Class, and that it is in the best interest of the Class to settle the case, while avoiding the expense and delay of continuing to fight the case in court. The Court has preliminarily approved the Settlement Agreement.

4

## 3. How do I know if I am part of the class?

The Court has certified the following class for purposes of this Settlement Agreement (the "Class"): "all individuals nationwide who prior to the date that is **90 days** after the date of the Court's final approval of this Settlement Agreement

(1) were determined to be an [Unaccompanied Child]; and

(2) who filed an asylum application that was pending with USCIS; and

(3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and

(4) for whom USCIS has not adjudicated the individual's asylum application on the merits."

In other words, you are part of the Class covered by the Settlement Agreement ("Class Member") if, before the date that is 90 days after the date the Court grants final approval of the Settlement Agreement, you (1) were determined to be an Unaccompanied Child; (2) filed an asylum application that was pending with USCIS; (3) on the date you filed your asylum application with USCIS, you were 18 years of age or older, or you had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) have not received an adjudication from USCIS on the merits of your asylum application. You do not need to live in Maryland to be part of the Class and benefit from the proposed Settlement Agreement.

> **Important**: Some individuals who were previously determined to be Unaccompanied Children but have **not yet filed for asylum** with USCIS **can** become Class Members if they file an asylum application with USCIS before the deadline described above and meet the other requirements described above.

5

## 4. What does the Settlement Agreement provide?

This notice summarizes the proposed Settlement Agreement. You can learn how to get a copy of the full proposed Settlement Agreement in Part 7 below. In brief, under the proposed Settlement Agreement:

A. **USCIS asylum adjudications**. Class Members have a right to have USCIS decide their asylum applications on the merits, even if they are in removal proceedings, and USCIS will not apply the one-year deadline for filing asylum applications to Class Members' asylum applications. USCIS will decide the asylum application even if an Immigration Judge found that the Immigration Judge and not USCIS had the power to decide the asylum application. USCIS will decide the asylum application even if an Immigration Judge refuses to postpone the immigration court case while the asylum application is pending with USCIS.

   o **Limited exception**. USCIS can only refuse to decide a Class Member's asylum application on the merits if the Class Member was placed in immigration detention as an adult (meaning the person was 18 years old or older) before the Class Member filed their asylum application. If USCIS refuses to consider a Class Member's asylum application because of the Class Member's placement in adult immigration detention, the Class Member is entitled to certain protections specified in the proposed Settlement Agreement.

B. **Retractions of previous rejections**. USCIS will retract previous rejections of the asylum applications of qualifying Class Members and reinstate them for consideration under this proposed Settlement Agreement.

C. **Expedite process**. USCIS will create a process for Class Members in certain specified urgent circumstances to request that USCIS expedite their cases.

6

D. **New USCIS memo**. USCIS will issue a memo explaining the procedures it is agreeing to under the Settlement Agreement. This memo will apply to Class Members and other people who were previously determined by the Government to be an "Unaccompanied Child." USCIS will keep this memo in place for at least three years from its effective date.

E. **Motion practice in immigration court**. In a Class Member's removal proceedings, the Government lawyer representing the Department of Homeland Security will not argue against USCIS's authority over the Class Member's asylum application. The Government lawyer will generally join or not oppose the Class Member's request for dismissal of the removal proceedings or for a postponement to await USCIS's decision on the asylum application.

F. **Stays of removal**. ICE will not remove Class Members with final orders of removal from the United States while they are waiting for USCIS to decide their asylum application under the proposed Settlement Agreement.

G. **Motions to reopen**. If USCIS grants a Class Member asylum and the Class Member has a removal order, the Government lawyer who represents the Department of Homeland Security in the Class Member's removal proceedings will generally not oppose the Class Member's motion to reopen their removal case.

H. **Time period:** The Settlement Agreement will be in effect for a year and a half (548 days) after it goes into effect; except that the USCIS memo will remain in effect for at least three years.

I. **Suspected violations:** While the Settlement Agreement is in effect, if a Class Member believes the Government has violated the Settlement Agreement, that Class Member or their counsel may notify Class Counsel in writing of the suspected violation, and the Parties will seek to resolve the issue.

**All of the terms of the proposed Settlement Agreement are subject to Court approval at a "Final Approval Hearing," discussed below.**

7

## 5. What are the procedures for objections by class members?

 If you **are** satisfied with the proposed Settlement Agreement, you do not have to do anything.

 If you **are not** satisfied with the proposed Settlement Agreement, you do not have the right to opt out of the Settlement Agreement. However, you have the right to ask the Court to deny approval of the proposed Settlement Agreement by filing **a written objection**. You cannot ask the Court to order a different settlement; the Court can only approve or reject the proposed Settlement Agreement. If the Court denies approval, this lawsuit will continue. If that is what you want to happen, you must object.

Any **objection** to the proposed Settlement Agreement and/or notice of request to be heard at the Final Approval Hearing must be in writing and must:

A. Clearly identify the case name and number: *J.O.P. et al. v. U.S. Department of Homeland Security, et al.*, Case No. 19-cv-01944;

B. Include the Class Member's name (using only initials if the Class Member is under the age of 18), current address, and telephone number (or current address and telephone number of the Class Member's legal representative);

C. State the grounds upon which the claimed Class membership is based;

D. Include an explanation of why the Class Member objects to the proposed Settlement Agreement, including any supporting documentation;

E. Indicate whether the Class Member requests the opportunity to be heard at the Final Approval Hearing;

F. Be served on the Parties <u>and</u> filed with the Court.

- To serve a notice of objection and/or request to be heard on the Parties, you must email the document to [X] or mail it to [X]. **It must be emailed or postmarked on or before [DATE]**; and

- To file a notice of objection and/or request to be heard with the Court, you must mail it to [X] Clerk, United States District Court for the District of Maryland, Southern Division, [address], or file it in person at any location of the United States District Court for the District of Maryland. **It must be filed in person or postmarked on or before [DATE].**

**Note:** If your objection does not comply with all of the above requirements, the Court can ignore it or deny your request to be heard.

Any objection or notice of request to be heard can be filed under seal to avoid disclosure of personal identifying information on the public record.

## 6. When is the Final Approval Hearing, what is its purpose, and what are the potential outcomes?

**WHEN:**

The Final Approval Hearing is scheduled for **[DATE] at [TIME]** in Courtroom **[X], [ADDRESS].**

**Note**: this date and time are subject to change by Court Order and may change without further notice to the Class. The purpose of the Final Approval Hearing is for the Court to determine if the Settlement Agreement is fair, reasonable, and adequate.

9

> If you file a timely written objection that complies with the requirements listed in Part 5 above, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney at the Final Approval Hearing, you are responsible for hiring and paying that attorney.

If the Court **grants** final approval of the Settlement Agreement, Class Members will settle the legal claims identified in the Settlement Agreement and agree to stop fighting this lawsuit.

If the Court **does not grant** final approval of the proposed Settlement Agreement, the proposed Settlement Agreement will be void, and the Parties will continue to litigate this case in front of the Court. If that happens, there is no guarantee that: (1) the Court will rule in favor of the Class Members; (2) a favorable Court decision, if any, would be as favorable to the Class Members as this Settlement Agreement; or (3) any favorable Court decision would be upheld if the Government filed an appeal.

## 7. Where can I view a copy of the proposed Settlement Agreement or get additional information?

This notice summarizes the proposed Settlement Agreement. You can read the full proposed Settlement Agreement:

   A. By visiting this web page: [X]

   B. By accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.mdd.uscourts.gov/cgi-bin/iquery.pl;

   C. By visiting the office of the Clerk of Court for the United States District Court, District of Maryland, Southern Division, [ADDRESS], between the hours of 9:00 am and 4:00 pm, Monday through Friday, excluding Court holidays; or

   D. By contacting Class Counsel at the following mail or email addresses: DG-JOPClassAction@goodwinlaw.com.

10

**PLEASE DO <u>NOT</u> CONTACT THE COURT OR THE JUDGE WITH QUESTIONS ABOUT THE PROPOSED SETTLEMENT.**

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

---

**J.O.P.,** *et al.*,

        Plaintiffs,

    v.

**U.S. DEPARTMENT OF HOMELAND**
**SECURITY,** *et al.*,

        Defendants.

---

Civil Action No. 8:19-CV-01944-SAG

**[PROPOSED] ORDER GRANTING JOINT MOTION FOR FINAL**
**APPROVAL OF SETTLEMENT AGREEMENT**

In consideration of the Parties' Joint Motion for Final Approval of Settlement Agreement, and the supporting Memoranda and documents referenced therein, having considered the entirety of the record in this case, and having held a Fairness Hearing on the Settlement Agreement dated June 17, 2024 (the "Agreement"), this Court hereby finds that:

1.    The class action settlement of all claims asserted against Defendants in this action, as reflected in the Agreement, constitutes a fair, reasonable, and adequate settlement of all claims and is hereby given final approval under Fed. R. Civ. P. 23(e).

2.    As amended in Paragraph [4] of the Preliminary Approval Order (ECF No. ⬜), the definition of the certified Class is:  All individuals nationwide who prior to the effective date of the superseding memorandum discussed in Section III(A) of the Settlement Agreement: (1) were determined to be a UAC; and (2) who filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years

of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits.

3.      The Agreement was reached through arms-length negotiation and provides significant and certain benefits for the certified Class, and protects and serves the interests of the members of the certified Class.

4.      The record shows, and this Court finds, that the notice to the Certified Class has been implemented in the manner approved by the Court in its Preliminary Approval Order (ECF No. ▯ ).

5.      Due and adequate notice of the proceedings having been given to the Certified Class, and a full opportunity having been offered to class members to participate in the Fairness Hearing, it is hereby determined that all class members are bound by this Final Approval Order.

6.      This Court finds that the Agreement is reasonable because (i) the negotiations were extensive, contentious, arms-length, and facilitated by this Court; and (ii) the proponents of the Agreement are represented by experienced counsel.

7.      The Court hereby finally approves in all respects the Agreement, and finds that the Agreement, the benefits to Class members, and all other aspects of the Agreement are fair, reasonable, adequate, and in the best interests of the certified Class, and within a range that responsible and experienced attorneys could accept considering all relevant factors and the relative merits of Plaintiffs' claims and Defendants' defenses, and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the U.S. Constitution, and the Class Action Fairness Act.  Therefore, the Agreement shall be consummated with its terms and provisions.

8.    In making all of its findings, this Court has exercised its discretion in granting final approval of the Agreement based upon the entirety of the record, including all facts and circumstances of this litigation as presented to the Court in the submissions in support of approval of the Agreement.

**ACCORDINGLY, IT IS HEREBY ORDERED, THAT:**

A.    The Motion for Final Approval of Settlement is GRANTED;

B.    All claims asserted in this action against Defendants are hereby DISMISSED WITH PREJUDICE;

C.    The Preliminary Injunction is hereby DISSOLVED;

D.    The Parties are hereby directed to implement and consummate the Agreement according to the terms and provisions of the Agreement;

E.    Should any party to the Agreement fail to honor the terms of this Order, the non-breaching party may petition for enforcement of this Order; and

F.    The Court retains jurisdiction to enforce the Agreement during the term of the Agreement, and to resolve any request for attorneys' fees and costs.

**IT IS SO ORDERED.**

Dated this ___ day of ___, 2024.

_____
U.S. District Judge Stephanie A. Gallagher

# EXHIBIT E

# NOTICE OF FINAL CLASS ACTION SETTLEMENT

---

> **United States District Court for the District of Maryland**
> *J.O.P., et al. v. U.S. Department of Homeland Security, et al.*
> **Case No. 19-cv-01944-SAG**
>
> **MORE INFORMATION: [X]**

| | | |
|---|---|---|
| **If you were determined to be an "Unaccompanied Alien Child,"** | **And you filed an asylum application with U.S. Citizenship and Immigration Services before [DATE],** | **You may have rights under a federal class action settlement.** |

A federal court has approved a Settlement Agreement in a class action lawsuit called *J.O.P. v. DHS*, Case No. 19-cv-01944-SAG (D. Md.). The *J.O.P. v. DHS* lawsuit is about the rights of people seeking asylum with U.S. Citizenship and Immigration Services who were previously determined to be an "Unaccompanied Child" (referred to as "Unaccompanied Alien Child" in the immigration laws).

The purpose of this notice is to tell you about the rights of *J.O.P. v. DHS* class members under the Settlement Agreement. **If you think this Settlement Agreement may relate to you, please read this notice.**

## What is the *J.O.P. v. DHS lawsuit about?*

*J.O.P. v. DHS* is a class action lawsuit that was filed in federal court in Maryland in July 2019. A class action lawsuit is filed on behalf of a large group of people, rather than one person.

The Plaintiffs who brought the *J.O.P. v. DHS* lawsuit claimed that a 2019 policy created by the federal government about how to treat asylum applications filed by people previously determined to be an "Unaccompanied Child" was unlawful.

Under that 2019 policy, U.S. Citizenship and Immigration Services ("USCIS") rejected the asylum applications of people in immigration court removal proceedings who had "Unaccompanied Child" determinations if they no longer met the definition of "Unaccompanied Child" on the date they filed the asylum application—even though under the policy that came before the 2019 policy, USCIS accepted such applications.

Under the challenged 2019 policy, USCIS also applied a one-year filing deadline to the asylum applications of individuals with previous "Unaccompanied Child" determinations if they no longer met the definition of "Unaccompanied Child" on the date they filed their asylum application—even though under the policy in place before the 2019 policy, USCIS held such applications exempt from the one-year deadline.

The Parties in this case are Plaintiffs J.O.P., M.E.R.E., K.A.R.C., E.D.G., and L.M.Z., all asylum seekers with previous "Unaccompanied Child" determinations ("Plaintiffs"), and the Defendants are U.S. Department of Homeland Security; Alejandro Mayorkas, Secretary of the U.S. Department of Homeland Security; U.S. Citizenship and Immigration Services; Ur Mendoza Jaddou, Director of U.S. Citizenship and Immigration Services; U.S. Immigration and Customs Enforcement; and Patrick J. Lechleitner, ICE Deputy Director and Senior Official Performing the Duties of the Director ("the Government").

2

In 2019, the U.S. District Court for the District of Maryland ("Court") ordered the Government to stop applying the 2019 policy. On December 21, 2020, the Court decided that this case could go forward as a nationwide class action. The Court also ordered the Government not to advocate against postponements of the immigration court proceedings of Class Members while they were waiting for USCIS to decide their pending asylum applications. The Plaintiffs and the Government subsequently reached a Settlement Agreement, and the Court approved the Settlement Agreement on [DATE].

## How do I know if I am part of the class?

You are part of the Class covered by the Settlement Agreement ("Class Member") if, before [DATE], you

(1) were determined to be an Unaccompanied Child;

(2) filed an asylum application that was pending with USCIS;

(3) on the date you filed your asylum application with USCIS, you were 18 years of age or older, or you had a parent or legal guardian in the United States who is available to provide care and physical custody; and

(4) have not received an adjudication from USCIS on the merits of your asylum application.

**Important**:

Some individuals who were previously determined to be Unaccompanied Children but have not yet filed for asylum with USCIS can become Class Members if they file an asylum application with USCIS before [DATE] and meet the other requirements described above.

3

## What does the Settlement Agreement provide?

This notice summarizes the final Settlement Agreement. If you want to know more, you should read the Settlement Agreement or talk to your immigration lawyer, if you have one.

In brief, under the final Settlement Agreement:

A. **USCIS asylum adjudications**. Class Members have a right to have USCIS decide their asylum applications on the merits, even if they are in removal proceedings, and USCIS will not apply the one-year deadline for filing asylum applications to Class Members' asylum applications. USCIS will decide the asylum application even if an Immigration Judge found that the Immigration Judge and not USCIS had the power to decide the asylum application. USCIS will decide the asylum application even if an Immigration Judge refuses to postpone the immigration court case while the asylum application is pending with USCIS.

   o **Limited exception**. USCIS can only refuse to decide a Class Member's asylum application on the merits if the Class Member was placed in immigration detention as an adult (meaning the person was 18 years old or older) before the Class Member filed their asylum application. If USCIS refuses to consider a Class Member's asylum application because of the Class Member's placement in adult immigration detention, the Class Member is entitled to certain protections specified in the Settlement Agreement.

B. **Retractions of previous rejections**. USCIS will retract previous rejections of the asylum applications of qualifying Class Members and reinstate them for consideration under this Settlement Agreement.

C. **Expedite process**. USCIS will create a process for Class Members in certain specified urgent circumstances to request that USCIS expedite their cases.

4

D. **New USCIS memo**. USCIS will issue a memo explaining the procedures it is agreeing to under the Settlement Agreement. This memo will apply to Class Members and other people who were previously determined by the Government to be an "Unaccompanied Child." USCIS will keep this memo in place for at least three years from its effective date.

E. **Motion practice in immigration court**. In a Class Member's removal proceedings, the Government lawyer representing the Department of Homeland Security will not argue against USCIS's authority over the Class Member's asylum application. The Government lawyer will generally join or not oppose the Class Member's request for dismissal of the removal proceedings or for a postponement to await USCIS's decision on the asylum application.

F. **Stays of removal**. ICE will not remove Class Members with final orders of removal from the United States while they are waiting for USCIS to decide their asylum application under the Settlement Agreement.

G. **Motions to reopen**. If USCIS grants a Class Member asylum and the Class Member has a removal order, the Government lawyer who represents the Department of Homeland Security in the Class Member's removal proceedings will generally not oppose the Class Member's motion to reopen their removal case.

H. **Time period:** The Settlement Agreement will be in effect for a year and a half (548 days) after it goes into effect; except that the USCIS memo will remain in effect for at least three years.

I. **Suspected violations:**  While the Settlement Agreement is in effect, if a Class Member believes the Government has violated the Settlement Agreement, that Class Member or their counsel may notify Class Counsel in writing of the suspected violation, and the Parties will seek to resolve the issue.

5

## Where can I get more information?

This notice summarizes the Settlement Agreement. If you want to know more, you should read the full Settlement Agreement and talk to your immigration lawyer, if you have one. You can read the Settlement Agreement:

A. By visiting this web page: [X]

B. By accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.mdd.uscourts.gov/cgi-bin/iquery.pl;

C. By visiting the office of the Clerk of Court for the United States District Court, District of Maryland, Southern Division, [ADDRESS], between the hours of 9:00 am and 4:00 pm, Monday through Friday, excluding Court holidays; or

D. By contacting Class Counsel at the following mail or email addresses: DG-JOPClassAction@goodwinlaw.com.

6

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| **J.O.P.**, *et al.*, | |
| Plaintiffs, | Civil Action No. 8:19-CV-01944-SAG |
| v. | **DEFENDANTS'**<br>**COMPLIANCE REPORT** |
| **U.S. DEPARTMENT OF HOMELAND**<br>**SECURITY,** *et al.*, | |
| Defendants. | |

Pursuant to the settlement agreed to by the Parties and approved by the Court (ECF. No. X), Defendants respectfully submit the following Compliance Report.  For their [first/second/etc.] Compliance Report, Defendants report the following steps taken pursuant to Section III of the Settlement Agreement between the Effective Date of the Settlement Agreement and [DATE OF COMPLIANCE REPORT]:

**A.**  [Relating to Paragraph III.A] On [DATE], USCIS issued a superseding memorandum in accordance with Paragraph III.A of the Settlement Agreement.  The public may find this memorandum online at [specify].

**B.**  [Relating to Paragraph III.B] USCIS has complied with Paragraph III.B of the Settlement Agreement in determining jurisdiction over Class Members' asylum applications.

**C.**  [Relating to Paragraph III.C] USCIS has issued Adverse Jurisdictional Determinations to [#] Class Members based on USCIS's determination that EOIR has jurisdiction because the Class Member did not meet the statutory UAC definition

(found at 6 U.S.C. § 279(g)(2)) at the time of filing their asylum application. USCIS certifies that all of those determinations were issued pursuant to Paragraph III.C of the Settlement Agreement, in that the basis for each Adverse Jurisdictional Determination was the Class Member's placement in adult immigration detention after a Prior UAC Determination but before filing their asylum application.

**D.**   [Relating to Paragraph III.D] USCIS has complied with Paragraph III.D of the Settlement Agreement in determining its jurisdiction over Class Members' asylum applications.

**E.**   [Relating to Paragraph III.E]

  1. [Relating to Paragraph III.E.1] As of [DATE], USCIS has retracted Adverse Jurisdictional Determinations in the cases of [#] Class Members, as required by Paragraph III.C.2 of the Settlement Agreement.  As of [DATE], USCIS [has/has not] fully complied with Paragraph III.E.1 of the Settlement Agreement.

  2. [Relating to Paragraph III.E.2] As of [DATE], USCIS has retracted Adverse Jurisdictional Determinations in the cases of [#] Class Members, as required by Paragraphs III.B and/or III.D of the Settlement Agreement.  As of [DATE], USCIS [has/has not] fully complied with Paragraph III.E.2 of the Settlement Agreement.

  3. [Relating to Paragraph III.E.3] As of [DATE], USCIS has mailed notices of re-examination of jurisdictional determinations to [#] Class Members.  As of [DATE], USCIS [has/has not] fully complied with Paragraph III.E.3 of the Settlement Agreement.

**F.**  [Relating to Paragraph III.F] As of [DATE], USCIS has mailed notices to [#] Class Members notifying them that USCIS has released a hold placed on the application in or after March 2021.  As of [DATE], USCIS [has/has not] fully complied with Paragraph III.F of the Settlement Agreement.

**G.**  [Relating to Paragraph III.G] As of [DATE], USCIS has adopted procedures for expediting Class Members' cases as provided under Paragraph III.G of the Settlement Agreement.  The public may find those procedures online at [specify].

Dated:

Respectfully submitted,

_/s/_