IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | |
|---|---|
| J.O.P., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>    Defendants. | Civil Action No.<br>8:19-CV-01944-SAG |

**CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF THEIR EMERGENCY
<u>MOTION TO ENFORCE THE SETTLEMENT AGREEMENT</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 1

    A. This Litigation and the Settlement Agreement ............................................. 1

    B. President Trump's Proclamation and Orders of Removal ........................... 4

    C. Defendants' Removal of Cristian .................................................................. 5

    D. Defendants Delayed a Meet and Confer While at Least One Class Member Was Imprisoned in a Foreign Country ................................................................ 6

III. ARGUMENT ................................................................................................................... 7

    A. Cristian Is a Class Member ........................................................................... 8

    B. Defendant ICE Removed Cristian in Violation of the Settlement Agreement ......... 9

    C. Defendants Should Be Ordered to Return Cristian and Any Other Removed Class Members to the United States and Refrain from Removing Any Other Class Members in Violation of the Agreement. ................................................ 13

IV. CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrego Garcia v. Noem*,
  No. 25-1345, 2025 WL 1021113 (4th Cir. Apr. 7, 2025) ..........................................................14

*Abrego Garcia v. Noem*,
  No. 8:25-cv-00951 (D. Md. Apr. 4, 2025) ................................................................................14

*Alexander v. Hill*,
  707 F.2d 780 (4th Cir. 1983) ....................................................................................................13

*Bennett v. Spear*,
  520 U.S. 154 (1997) ..................................................................................................................11

*Cox v. Shah*,
  No. 98-1357, 1999 WL 492664 (4th Cir. July 13, 1999) ...........................................................9

*Fairfax Countywide Citizens Ass'n v. Fairfax County*,
  571 F.2d 1299 (4th Cir. 1978) ..............................................................................................7, 13

*Hamilton v. Nakai*,
  453 F.2d 152 (9th Cir. 1971) ....................................................................................................13

*Hensley v. Alcon Labs., Inc.*,
  277 F.3d 535 (4th Cir. 2002) ......................................................................................................7

*J.G.G. v. Trump*,
  No. 1:25-cv-00766 (D.D.C. Mar. 18, 2025) .........................................................................5, 11

*J.L. v. Cuccinelli*,
  No. 5:18-cv-04914 (N.D. Cal. Feb. 14, 2020) .........................................................................14

*Noem v. Abrego Garcia*,
  No. 24-A949, 604 U.S. __ (2025) ............................................................................................14

*Petty v. Timken Corp.*,
  849 F.2d 130 (4th Cir. 1988) ....................................................................................................13

*Trump v. J.G.G.*,
  No. 25-5067, 604 U.S. ___ (Apr. 7, 2025) .........................................................................10, 12

*United States v. City of Detroit*,
  329 F.3d 515 (6th Cir. 2003) ....................................................................................................13

*United States v. New York Tel. Co.*,
    434 U.S. 159 (1977) ........................................................................................................... 13

*United States v. S. Coal Corp.*,
    64 F.4th 509 (4th Cir. 2023) ........................................................................................... 7, 12

*W. Virginia Highlands Conservancy v. ERP Env't Fund, Inc.*,
    99 F.4th 194 (4th Cir. 2024) ............................................................................................... 10

*Wells v. Chevy Chase Bank, F.S.B.*,
    363 Md. 232 (2001) ............................................................................................................ 10

**Statutes**

8 U.S.C. § 1158(a)(1) ................................................................................................................... 3

8 U.S.C. § 1158(b)(3)(C) ............................................................................................................. 1

Alien Enemies Act, 50 U.S.C. § 21 ..................................................................................... *passim*

All Writs Act, 28 U.S.C. § 1651 ............................................................................................. 7, 13

**Other Authorities**

8 C.F.R. § 208.8(a) .................................................................................................................. 4, 11

I. INTRODUCTION

The Settlement Agreement, approved by this Court in November 2024, prohibits removal of any Class Member from the United States, provided that the Class Member has a pending asylum application with Defendant U.S. Citizenship and Immigration Services ("USCIS"). On or around March 15, 2025, Defendant U.S. Immigration and Customs Enforcement ("ICE") removed Cristian,[1] a 20-year-old Class Member from Venezuela, with a pending asylum application, to a maximum security prison in El Salvador, in clear violation of the Settlement Agreement. Class Counsel seek the Court's intervention to order Defendants to remedy this violation of the Settlement Agreement and prevent any further such violations.

This motion does not implicate the merits of any Class Member's asylum application. Nor does the motion ask the Court to determine the scope of the Government's removal authority under the Alien Enemies Act ("AEA"). The Court does not need to decide whether the AEA applies to any Class Member. By this motion, Class Counsel simply seeks to enforce the existing Settlement Agreement such that all Class Members can receive the benefits of the Agreement that Defendants voluntarily entered with terms they represented to the Court are fair and reasonable.

II. FACTUAL BACKGROUND

A. This Litigation and the Settlement Agreement

For most noncitizens seeking asylum, an immigration court has jurisdiction over their asylum application. Unaccompanied children, however, are entitled by statute to have their asylum applications decided through a non-adversarial interview by a USCIS asylum officer, even if the young person is concurrently facing adversarial removal proceedings in immigration court. 8

---

[1] Class Counsel has filed, contemporaneously with this motion, a motion to proceed using a pseudonym for the Class Member's real name.

U.S.C. § 1158(b)(3)(C). Pursuant to a May 28, 2013 memorandum known as the 2013 Kim Memo, USCIS policy was to exercise its statutory initial jurisdiction over any asylum application filed by a noncitizen whom federal immigration authorities had determined to be an unaccompanied child, provided that determination had not been rescinded before the noncitizen filed the application, and even if the applicant had reached the age of 18 or reunited with a parent or legal guardian before filing the asylum application. USCIS, Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children (May 28, 2013), ECF No. 3-4.

USCIS's 2019 Redetermination Memo drastically restricted the group of young asylum seekers who would benefit from the statutory asylum protections provided for unaccompanied children. ECF No. 3. Under the 2019 Redetermination Memo, if an individual in removal proceedings with a previous unaccompanied child determination applied for asylum after turning 18 or reunifying with a parent or legal guardian, USCIS would decline jurisdiction over their asylum application. *Id.* at 5. In those circumstances, the 2019 Redetermination Memo also subjected an applicant previously determined to be an unaccompanied child to the one-year deadline for filing an asylum application. *Id.* at 6.

On July 1, 2019, four named plaintiffs commenced this litigation for declaratory and injunctive relief, alleging that the USCIS policy changes reflected in the 2019 Redetermination Memo were adopted in violation of the Administrative Procedure Act ("APA"), the Immigration and Nationality Act, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. ECF No. 1. The Court enjoined the policy, entering a temporary restraining order ("TRO") and later converting the TRO into a preliminary injunction. ECF Nos. 54, 55, 60, 63, 66, 71. In 2024, the parties reached a final settlement agreement that provided relief to the certified class of young

2

asylum seekers previously determined to be unaccompanied children. ECF No. 199-2. On November 25, 2024—just four months ago—the Court granted Final Approval of the Settlement Agreement. ECF No. 205.

Under the Settlement, a core protection for Class Members is the requirement that "USCIS will exercise Initial Jurisdiction over Class Members' asylum applications in accordance with the terms of this Settlement Agreement and adjudicate them on the merits." ECF No. 199-2 at 7, Section III.B.[2] Other provisions of the Settlement Agreement are designed to prevent actions by Defendants that would contravene USCIS's exercise of its initial jurisdiction. For example, one section prohibits Defendant ICE from taking a position in a Class Member's immigration court proceedings "that USCIS does not have Initial Jurisdiction over a Class Member's asylum application" and from opposing a Class Member's motion to postpone their removal proceedings. ECF No. 199-2 at 9, Section III.H.

Particularly relevant to this motion, the Settlement Agreement provides that, "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." ECF No. 199-2 at 9, Section III.I. In short, ICE cannot remove a Class Member whose asylum application is pending with USCIS. *Id*. This is particularly important because the right to seek asylum is afforded to a noncitizen "who is physically present in the United States or who arrives in the United States," 8 U.S.C. § 1158(a)(1), because a pending asylum application is typically deemed abandoned upon departure from the United States, and because USCIS cannot grant asylum to someone who is not in the United States.

---

[2] A copy of the Settlement Agreement is also attached as Exhibit 1 to the Declaration of Kevin J. DeJong, filed contemporaneously with this motion.

3

8 C.F.R. § 208.8(a); USCIS, Affirmative Asylum Procedures Manual III.D ("AAPM") (attached as DeJong Decl., Ex. 2) ("AAPM"). To give effect to the Settlement Agreement, therefore, a Class Member must be permitted to remain in the United States until USCIS completes its adjudication of the Class Member's asylum application. ECF No. 199-2 at 6, Section III.B.

If Class Counsel notifies Defendants of an alleged violation of the Settlement Agreement, "Defendants shall send a written response to Class Counsel within a reasonable period of time not to exceed 60 days," and the parties shall meet and confer in good faith within 90 days of Class Counsel's notice. ECF No. 199-2 at 14, V.D. This Court has "exclusive jurisdiction to supervise the implementation of this Settlement Agreement and to enforce its provisions and terms until the Termination Date." ECF No. 199-2 at 13, V.A; ECF No. 205 at 3 (the "Court retains jurisdiction to enforce the Agreement during the term of the Agreement...").[3]

### B. President Trump's Proclamation and Orders of Removal

On March 15, 2025, President Trump issued a Proclamation titled *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua*. DeJong Decl., Ex. 3. Section 1 of the Proclamation directed that "Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." *Id.* Section 3 of the Proclamation provides that "all Alien Enemies described in section 1 of this proclamation are subject to immediate apprehension, detention, and removal, and . . . they shall not be permitted residence in the United States." *Id.* § 3. The

---

[3] The term of the agreement is 548 days after the effective date, which is defined as the date the Settlement Agreement received final approval. ECF No. 199-2 at 4. The Court granted final approval on Nov. 25, 2024. ECF No. 205. Thus, the Court has jurisdiction over Defendants' violation of the agreement.

4

Proclamation instructed the Attorney General and the Secretary of Homeland Security "to cause the apprehension, detention, and removal of all members of TdA who otherwise qualify as Alien Enemies under section 1 of this proclamation." *Id.* § 6. According to Robert Cerna, Acting Field Office Director Enforcement and Removal Operations at ICE, on March 15, 2025, Venezuelan individuals were removed to El Salvador pursuant to the President Trump's March 15, 2025 Proclamation. Declaration of Robert L. Cerna ¶¶ 5–6, *J.G.G. v. Trump*, No. 1:25-cv-00766 (D.D.C. Mar. 18, 2025), ECF No. 28-1 (attached as DeJong Decl., Ex. 4).

### C.  Defendants' Removal of Cristian

Cristian is a 20-year-old Class Member from Venezuela. Bocanegra Decl. ¶ 5. After Cristian entered the United States, he was determined by federal immigration officials to be an "Unaccompanied Alien Child" ("UAC"). *Id.* ¶ 5, Ex. 1. In December 2022, when he was 18 years old, Cristian filed an asylum application (Form I-589) with USCIS, and on December 20, 2022, it was received by USCIS. *Id.* ¶ 6, Ex. 2. Cristian's asylum application remains pending with USCIS, and he has yet to be scheduled for an interview. *Id.* ¶ 6.

On about January 7, 2025, Defendant ICE took Cristian into custody. *Id.* ¶ 8. On or about January 8, 2025, ICE commenced removal proceedings against Cristian by filing a Notice to Appear in the Conroe, Texas Immigration Court. *Id.* ¶ 9. At a hearing on March 26, 2025, the immigration judge continued Cristian's removal proceedings, which remain pending, with his next master calendar hearing scheduled for May 2025. *Id.* ¶ 9.

On or around March 15, 2025, ICE removed Cristian to El Salvador in violation of the Settlement Agreement. In their March 20, 2025 response to class counsel's inquiry, Defendants contend that Cristian was removed "pursuant to 50 U.S.C. § 21 (Alien Enemies Act)." DeJong Decl., Ex. 6 (Mar. 20, 2025 email from Richard Ingebretsen). Defendants contend that "removal

pursuant to Title 50 does not require an administratively final order of removal under Title 8" and "[t]herefore, even if a class member, Section III.I does not apply." *Id.* Contrary to these meritless assertions, Cristian is a Class Member, and his removal by ICE violated the Settlement Agreement.

### D. Defendants Delayed a Meet and Confer While at Least One Class Member Was Imprisoned in a Foreign Country

Class Counsel has complied with Section V.D of the Settlement Agreement, which provides a mechanism to attempt to resolve a noncompliance. ECF No. 199-2 at 14. Class Counsel notified Defendants of the violation of the Settlement Agreement on March 18, 2025, and, on March 20, Defendants replied by disputing the existence of a violation. Class Counsel then repeatedly requested a meet and confer with Defendants in an attempt to resolve the dispute informally. On March 24, 2025, Defendants agreed to confer that week, but then unilaterally canceled. After repeated requests, Defendants agreed to confer on April 11, 2025. DeJong Decl., Ex. 6.

During the parties' meet-and-confer held on April 11, Defendants confirmed that Cristian was removed to El Salvador. DeJong Decl. ¶ 10. Defendants took the position that Cristian is not a Class Member, although they did not dispute that Cristian meets each element of the Class Definition. *Id.* Class Counsel understands Defendants' position to be that individuals whom Defendants claims are subject to the AEA cannot be Class Members because, according to Defendants, they are not eligible for asylum. Defendants further stated that they will not agree to return Cristian to the United States. *Id.* Defendants declined Class Counsel's request that they identify (1) any other persons who meet the Class Definition and have been removed from the United States under the AEA; and (2) persons in the United States who meet the Class Definition whom the Government intends to remove pursuant to the AEA. *Id.*

6

The parties were unable to resolve this dispute informally. Pursuant to Section V.D of the Agreement, if the dispute cannot be resolved, "Class Counsel may elect to move to enforce the agreement on an individual or class-wide basis before the Court." ECF No. 199-2 at 14. Accordingly, Class Counsel now seek the Court's intervention to enforce the Settlement Agreement to remedy Defendants' violation and to prevent any such further violations.

## III.     ARGUMENT

As detailed above, this Court has exclusive jurisdiction to order a remedy for Defendants' failure to comply with the Settlement Agreement. ECF No. 199-2 at 13, V.A; ECF No. 205 at 3. *See Fairfax Countywide Citizens Ass'n v. Fairfax County*, 571 F.2d 1299, 1303 n.8 (4th Cir. 1978) ("Where the settlement agreement is approved and incorporated into an order of court, the district court possesses jurisdiction to enforce its own order."), *cert. denied*, 439 U.S. 1047 (1978). The Court also has equitable jurisdiction to order a remedy, and authority to issue a writ in support of its jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651.

A motion to enforce a settlement agreement draws on standard contract principles. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). The Court must first look to the plain meaning of the agreement, and may also consider the circumstances surrounding the agreement and "the general nature of the remedy agreed upon." *United States v. S. Coal Corp.*, 64 F.4th 509, 514 (4th Cir. 2023). Here, the plain meaning of the Settlement Agreement prohibits removal of Class Members while their asylum applications are pending with USCIS, consistent with the circumstances underlying the Settlement Agreement, which concerns the rights of certain young people in removal proceedings to have their asylum application adjudicated by USCIS in the first instance. The removal of Cristian violates the Settlement Agreement and demands a remedy.

**A.     Cristian Is a Class Member.**

As a preliminary matter, Cristian is a Class Member. As defined in the Settlement Agreement, and pursuant to the Court's Final Approval Order, the Class is defined as:

> All individuals nationwide who prior to the effective date of the superseding memorandum discussed in Section III(A) of the Settlement Agreement: (1) were determined to be a UAC; and (2) who filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits.

ECF No. 205 ¶ 2; ECF No. 199-2 at 5, Section II.E. Cristian meets each element of the Class Definition because: (1) he was previously determined to be a UAC on or about July 5, 2022, before the February 24, 2025 effective date of the superseding memorandum[4] (Bocanegra Decl. ¶ 5, Ex. 1); (2) he filed an asylum application with USCIS on December 20, 2022, and his application was pending with USCIS before the February 24, 2025 effective date of the superseding memorandum) (Bocanegra Decl. ¶ 6, Ex. 2); (3) at the time he filed his asylum application, he was 18 years old (Bocanegra Decl. ¶¶ 5-6); and (4) USCIS has not adjudicated his asylum application on the merits (Bocanegra Decl. ¶ 6).

Defendants do not dispute that Cristian meets each element of the Class Definition; rather, Defendants' position appears to be that an individual who otherwise meets the Class Definition is not a Class Member if the Governments contends he is subject to the Alien Enemies Act. Defendants' position is untenable. The Class Definition does not exclude individuals that

---

[4] Per the Settlement Agreement, Defendant USCIS was obligated to issue a memorandum explaining and implementing the terms of the agreement. ECF No. 199-2 at 7, III.A. The memorandum was issued by USCIS on January 30, 2025 and went into effect on February 24, 2025. DeJong Decl., Ex. 7. Although not the subject of this motion, Class Counsel has identified several ways in which the memorandum violates the Settlement Agreement. ECF No. 224 at 1–2.

Defendants allege are subject to the Alien Enemies Act. The Class Definition has been ordered by this Court in a final judgment (ECF No. 205), and therefore is not subject to after-the-fact alteration by the Government. *See Cox v. Shah*, No. 98-1357, 1999 WL 492664, at *7 (4th Cir. July 13, 1999) ("Although Rule 23(c)(1) of the Federal Rules of Civil Procedure provides that a district court may alter or amend the class 'before the decision on the merits,' that rule is inapplicable, absent egregious error, where the district court has already entered a final judgment approving a settlement of the class action suit."). Defendants were aware of the AEA when they entered into the Settlement Agreement, but still agreed to the terms of the Agreement. Simply put, the AEA does not allow Defendants to disregard the binding commitments it made. All Class Members are entitled to the benefits of the Settlement Agreement that Defendants agreed are fair and reasonable, and Defendants' attempt to circumvent that Agreement should be rejected.

**B.     Defendant ICE Removed Cristian in Violation of the Settlement Agreement.**

The Settlement Agreement provides that, "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." ECF No. 199-2 at 9, Section III.I. ICE cannot remove a Class Member from the United States if the Class Member has a pending asylum application with USCIS.

Despite the clear prohibition on removal set forth in the Settlement Agreement, Defendants concede that ICE removed Cristian to El Salvador on or about March 15, 2025 pursuant to the AEA. DeJong Decl., Ex. 6 (Mar. 20, 2025 email from Richard Ingebretsen). Cristian's removal stems from President Trump's March 15, 2025 Proclamation, ordering the "immediate apprehension, detention, and removal" of individuals purportedly subject to the AEA. DeJong Decl. Ex. 3. According to Robert Cerna, Acting Field Officer Enforcement and Removal

Operations at ICE, on March 15, 2025, individuals (which would have included Cristian) were removed to El Salvador pursuant to the President Trump's March 15, 2025 Proclamation. DeJong Decl., Ex. 4 ¶¶ 5–6 (Cern Decl.). Indeed, the Supreme Court stated last week that AEA detainees were "subject to **removal orders under the AEA**." *Trump v. J.G.G.*, No. 25-5067, 604 U.S. ___, at 3 (Apr. 7, 2025). And the finality of the removal order cannot be disputed, because Cristian has already been removed to a prison in El Salvador. Accordingly, there is no reasonable dispute that ICE removed Cristian pursuant to a "final removal order" in violation of the Settlement Agreement.

In correspondence with Class Counsel, Defendants asserted that Cristian was not subject to an "***administratively final*** order of removal ***under Title 8***," but instead removed pursuant to the Alien Enemies Act (50 U.S.C. § 21); therefore, according to Defendants, "Section III.I [of the Settlement Agreement] does not apply." DeJong Decl., Ex. 6. Defendants' interpretation of the agreement is contrary to the plain language of the Agreement. The Settlement Agreement prohibits removal of any Class Members subject to "final removal orders," not just an "administratively final order of removal under Title 8." In fact, the terms "administratively final" and "Title 8" are not found anywhere in Section III.I of the Settlement Agreement.

The Settlement Agreement defines many other terms (ECF No. 199-2 at Section II), but does not define "final removal order," and therefore the plain meaning of that phrase controls. *W. Virginia Highlands Conservancy v. ERP Env't Fund, Inc.*, 99 F.4th 194, 202 (4th Cir. 2024) ("[A] consent decree's interpretation is governed by 'traditional rules of contract interpretation' . . . . [drawn] from the law of the state in which the consent decree was entered."); *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251 (2001) ("[A] court shall give effect to [a contract term's] plain meaning . . . ."). As the Government recently argued in *J.G.G. v. Trump*, the plain meaning of

10

"remove" or "removal," is "[t]he transfer or moving of a person or thing from one location, position, or residence to another." Response and Motion to Vacate at 3, No. 1:25-cv-00766 (D.D.C. Mar. 17, 2025), ECF No. 24 (quoting *Removal*, *Black's Law Dictionary* (9th ed. 2009)). Applying the Government's own understanding of the plain and ordinary meaning of "removal," there is no dispute that Cristian has been "removed." Furthermore, Cristian's removal necessarily was pursuant to a "final removal order"—ICE removed him to El Salvador, pursuant to President Trump's proclamation ordering the Attorney General and DHS Secretary "to cause the apprehension, detention, and removal" of all individuals whom the Government claims are Alien Enemies. *Id.* § 6. ICE, a component of DHS, relied upon the proclamation as the sole and sufficient legal basis for removing Cristian from the country, making it a "final order" under any reasonable definition. *Cf. Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (describing conditions for identifying "final" agency action).

Defendants' assertion that Cristian could have been removed from the country without implicating the terms of the Settlement Agreement also directly conflicts with another key provision of the Agreement. Under Section III.B, "USCIS will exercise Initial Jurisdiction over Class Members' asylum applications in accordance with the terms of [the] Settlement Agreement ***and adjudicate them on the merits***." ECF No. 199-1 at 7 (emphasis added). The prohibition on removal in the Agreement prevents ICE from removing a Class Member while they have an asylum application pending with USCIS, to allow USCIS time to adjudicate the application on the merits. But if an individual leaves the country, USCIS may deem his asylum application abandoned and thus not adjudicate it on the merits. 8 C.F.R. § 208.8(a). Indeed, USCIS is prohibited from granting asylum to an individual who is not in the United States. DeJong Decl. Ex. 2 (AAPM) at III.D. Thus, according to Defendants' flawed interpretation, they can remove Class Members and

11

thereby block them from receiving an adjudication on the merits of their asylum application, contradicting the express terms of the Agreement guaranteeing such a procedural right.[5]

The circumstances underlying the Settlement Agreement further reinforce that Defendants have violated the Agreement. This litigation challenged a USCIS policy that would have resulted in the improper removal of many Class Members by causing their asylum applications to be rejected for lack of jurisdiction. The Settlement Agreement allows for Class Members in removal proceedings to have their asylum applications adjudicated on the merits by USCIS while they remain in the United States with access to their counsel. It cannot be reasonably argued that, in formulating the Settlement Agreement, the parties contemplated that Class Members with pending asylum applications could be removed from the United States to places where they have no access to counsel or their family and, importantly, are rendered ineligible for asylum. Defendants' position now—that they can remove Class Members pursuant to the AEA—is an attempt to circumvent the Settlement Agreement because they no longer wish to be bound to its terms. *S. Coal Corp.*, 64 F.4th at 517 ("If Southern Coal intended such a backdoor to compliance, then it

---

[5] While Defendants have claimed to Class Counsel, without any legal authority, that individuals whom they determine are subject to the AEA are ineligible for asylum, the J.O.P. Settlement Agreement requires USCIS to provide Class Members with an adjudication on the merits where they can present testimony and evidence regarding their eligibility, including with respect to any eligibility bars USCIS may raise. ECF No. 199-2 at 7, III.B; *see also Trump v. J.G.G.*, No. 25-5067, 604 U.S. ___, at 4 (Apr. 7, 2025) ("AEA detainees must receive notice after the date of this order that they are subject to removal under the Act. The notice must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs.").

likely did not negotiate the Decree in 'good faith' to forge an agreement that was 'fair, reasonable, and in the public interest.'").

### C. Defendants Should Be Ordered to Return Cristian and Any Other Removed Class Members to the United States and Refrain from Removing Any Other Class Members in Violation of the Agreement.

In addition to the retention of jurisdiction specified in the Settlement Agreement, the Court has authority to enforce the Settlement Agreement. *Fairfax Countywide Citizens*, 571 F.2d at 1303 n.8 ("Where a settlement agreement is approved and incorporated into an order of court, the district court possesses jurisdiction to enforce its own order."); *Petty v. Timken Corp.*, 849 F.2d 130 (4th Cir. 1988) (trial courts have inherent authority to enforce settlement agreements). It is well-established that "[t]he court is invested with broad equitable powers" to penalize, compel, and sanction a party. *Alexander v. Hill*, 707 F.2d 780, 783 (4th Cir. 1983). Moreover, the All Writs Act, 28 U.S.C. § 1651, authorizes the Court "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). "Powers under [the Act] should be broadly construed," *Hamilton v. Nakai*, 453 F.2d 152, 157 (9th Cir. 1971), and a "consent judgment [is] a sufficient basis for invoking the All Writs Act," *United States v. City of Detroit*, 329 F.3d 515, 523 (6th Cir. 2003).

To enforce the Settlement Agreement's prohibition on removal of Class Members, this Court should order ICE to promptly return, or, at minimum, facilitate the return to the United States of Cristian and any other Class Members wrongfully removed, so that they can await USCIS adjudication of their asylum applications on the merits as they are entitled to under the Settlement Agreement. On the meet and confer held on April 11, 2025, Class Counsel asked Defendants to identify any other Class Members who have been removed pursuant to the AEA. Defendants

13

refused to do so and declined to state whether any other Class Members have been removed. DeJong Decl. ¶ 10.  Class Counsel are entitled to bring class-wide enforcement of the Settlement Agreement (ECF No. 199-2 at 14, V.D); therefore, if other Class Members have been removed to El Salvador, they too should be returned.

The Government "can—and does—return wrongfully removed migrants as a matter of course." *Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *6 (4th Cir. Apr. 7, 2025) (Wilkinson, J. concurring) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)) (noting that removed individuals "can be afforded effective relief by facilitation of their return").  For example, in *J.L. v. Cuccinelli*, the court ordered the return of children seeking Special Immigrant Juvenile status who had been removed in violation of the court's preliminary injunction order.  Order Holding Defendants in Civil Contempt and Ordering Sanctions, No. 5:18-cv-04914 (N.D. Cal. Feb. 14, 2020), ECF No. 249.

This case is the second in this District to seek to remedy Defendants' unlawful removal of noncitizens to a prison in El Salvador.  In *Abrego Garcia v. Noem*, the court ordered the United States to return an individual who had been unlawfully removed in violation of a final order precluding his removal to El Salvador. Order Granting Preliminary Injunction, No. 8:25-cv-00951 (D. Md. Apr. 4, 2025), ECF No. 21.  The Fourth Circuit declined to stay the court's order. *Abrego Garcia*, 2025 WL 1021113, at *1.  On April 7, 2025, the Supreme Court held that the order "properly requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador.'" *Noem v. Abrego Garcia*, No. 24-A949, 604 U.S. __ (2025).  Class Counsel here seek similar relief—that the Government facilitate the release of any Class Members from custody in El Salvador and return to the United States, ensuring their cases are handled as they

14

would have been had they not been removed to El Salvador in violation of the Settlement Agreement.

Given Defendants' past violation of the Settlement Agreement, Defendants also seek an order that removals pursuant to the March 15, 2025 Proclamation of individuals who meet the Class Definition who have not yet received a final determination on the merits of their asylum application, is a violation of the Settlement Agreement. President Trump's March 15, 2025 Proclamation remains in effect, and on the meet and confer held on April 11, 2025, Defendants refused to agree to refrain from any further removal of Class Members. DeJong Decl. ¶ 10. The Agreement provides for class-wide enforcement (ECF No. 199-2 at 14, V.D), and such enforcement is warranted here to prevent future violations.

## IV.     CONCLUSION

For all the reasons set forth above, Defendants violated the Settlement Agreement by removing a Class Member from the United States while his asylum application is pending with USCIS. This Court should order the only adequate remedy: the return of the Class Member, and any other Class Members similarly situated, to the United States, where they can await adjudication of their asylum applications; and to order that removals pursuant to the March 15, 2025 Proclamation of individuals who meet the Class Definition with a pending asylum application, is a violation of the Settlement Agreement.

Dated: April 14, 2025

Respectfully submitted,

/s/ Brian T. Burgess

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20036
Phone: 540-907-1761
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project of the
National Lawyers Guild
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5494
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*