IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | |
|---|---|
| J.O.P., *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>    Defendants. | Civil Action No.<br>8:19-CV-01944-SAG |

**CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF THEIR EMERGENCY
MOTION FOR A TEMPORARY RESTRAINING ORDER**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 2

   A.  This Litigation and the Settlement Agreement ........................................................ 2

   B.  President Trump's Proclamation and Previous Orders of Removal ........................ 3

   C.  Javier Faces Imminent Removal .............................................................................. 4

III. ARGUMENT .................................................................................................................. 5

   A.  Javier Is a Class Member. ........................................................................................ 5

   B.  A TRO Should Issue to Prevent Removal of Another Class Member ..................... 7

      1.  *Class Counsel Are Likely to Succeed on the Merits* ........................................... 7

      2.  *Javier Will be Irreparably Harm If Removed* ................................................... 10

      3.  *The Balance of Equities and Public Interest Merge in Favor of Granting a TRO* ................................................................................................................... 11

IV. CONCLUSION ............................................................................................................. 13

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrego Garcia v. Noem*,
 No. 25-1345 (4th Cir. Apr. 5, 2025) ...................................................................................12

*Abrego Garcia v. Noem*,
 No. 8:25-CV-00951-PX, 2025 WL 1014261 (D. Md. Apr. 6, 2025) ......................................11

*Al-Joudi v. Bush*,
 406 F. Supp. 2d 13 (D.D.C. 2005) .........................................................................................11

*Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.*,
 No. 22-cv-3118 (CKK), 2023 WL 1438376 (D.D.C. Feb. 1, 2023) .......................................11

*Bennett v. Spear*,
 520 U.S. 154 (1997) .................................................................................................................9

*ClearOne Advantage, LLC v. Kersen*,
 710 F. Supp. 3d 425 (D. Md. 2024) ....................................................................................7, 12

*Cox v. Shah*,
 No. 98-1357, 1999 WL 492664 (4th Cir. July 13, 1999) .........................................................7

*Doe v. Jaddou*,
 No. CV TDC-24-0650, 2024 WL 2057144 (D. Md. May 8, 2024) ..................................11, 13

*Grace v. Whitaker*,
 344 F. Supp. 3d 96 (D.D.C. 2018), *aff'd in part, rev'd in part on other
 grounds sub nom.*, *Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020) .........................................11

*Greatness v. FEC*,
 831 F.3d 500 (D.C. Cir. 2016) ...............................................................................................12

*J.G.G. v. Trump*,
 No. 1:25-cv-00766 (D.D.C. Mar. 18, 2025) .........................................................................4, 9

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
 409 F. Supp. 3d 367 (D. Md. 2019) .......................................................................................12

*Nken v. Holder*,
 556 U.S. 418 (2009) .........................................................................................................12, 13

*Real Truth About Obama, Inc. v. Fed. Election Comm'n*,
   575 F.3d 342 (4th Cir. 2009) ...................................................................................................7

*Trump v. J.G.G.*,
   No. 24A931, 2025 WL 1024097 (Apr. 7, 2025).................................................................8, 13

*Trump v. J.G.G.*,
   No. 25-5067, 604 U.S. ___ (Apr. 7, 2025) ..............................................................................8

*W. Virginia Highlands Conservancy v. ERP Env't Fund, Inc.*,
   99 F.4th 194 (4th Cir. 2024) ....................................................................................................9

*Wells v. Chevy Chase Bank, F.S.B.*,
   363 Md. 232 (2001) .................................................................................................................9

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008).....................................................................................................................7

**Statutes and Regulations**

8 U.S.C. § 1158(a)(1)......................................................................................................................2

Alien Enemies Act, 50 U.S.C. § 21 ........................................................................................ *passim*

8 C.F.R. § 208.8(a)..........................................................................................................................2

I.     **INTRODUCTION**

Class Counsel seek a temporary restraining order ("TRO") to prevent the imminent removal of another Class Member in violation of the Settlement Agreement. The Settlement Agreement, approved by this Court in November 2024, prohibits removal of any Class Member from the United States, provided that the Class Member has a pending asylum application with Defendant U.S. Citizenship and Immigration Services ("USCIS"). Javier[1] is a 18-year old Class Member from Venezuela with an asylum application pending with USCIS. A TRO should issue because Class Counsel are likely to succeed on the merits in showing that removal of Javier would be a violation of the Settlement Agreement; Javier will be irreparably harmed if he is removed to a prison in El Salvador; and the balance of the equities and public interest all favor maintaining the status quo.

This motion comes on the heels of Class Counsel's Emergency Motion to Enforce the Settlement Agreement (ECF No. 227), filed two days ago on April 14, 2025. On April 15, 2025, Class Counsel became aware that Javier was at imminent risk of being removed from the United States. Defendants have not agreed to refrain from removing Javier from the United States. A TRO should issue to maintain the status quo at least until the Court rules on Class Counsel's Emergency Motion to Enforce the Settlement Agreement, which is scheduled for a hearing on Tuesday, April 22.

---

[1] Class Counsel has filed, contemporaneously with this motion, a motion to proceed using a pseudonym for the Class Member's real name.

1

## II. FACTUAL BACKGROUND

### A. This Litigation and the Settlement Agreement

More factual background on this litigation and the Settlement Agreement are set forth in Class Counsel's Emergency Motion to Enforce the Settlement Agreement, and incorporated by reference herein. ECF No. 227-1 at 5-8. Under the Settlement, a core protection for Class Members is the requirement that "USCIS will exercise Initial Jurisdiction over Class Members' asylum applications in accordance with the terms of this Settlement Agreement and adjudicate them on the merits." ECF No. 227-2, Ex. 1 at 7, Section III.B. Other provisions of the Settlement Agreement are designed to prevent actions by Defendants that would contravene USCIS's exercise of its initial jurisdiction. For example, one section prohibits Defendant ICE from taking a position in a Class Member's immigration court proceedings "that USCIS does not have Initial Jurisdiction over a Class Member's asylum application" and from opposing a Class Member's motion to postpone their removal proceedings. ECF No. 227-2, Ex. 1 at Section III.H.

Particularly relevant to this motion, the Settlement Agreement provides that, "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." ECF No. 227-2, Ex. 1 at 9, Section III.I. In short, ICE cannot remove a Class Member whose asylum application is pending with USCIS. *Id*. This is particularly important because the right to seek asylum is afforded to a noncitizen "who is physically present in the United States or who arrives in the United States," 8 U.S.C. § 1158(a)(1), because a pending asylum application is typically deemed abandoned upon departure from the United States, and because USCIS cannot grant asylum to someone who is not in the United States. 8 C.F.R. § 208.8(a); ECF No. 227-2, Ex. 2 (USCIS, Affirmative Asylum Procedures

2

Manual III.D). To give effect to the Settlement Agreement, therefore, a Class Member must be permitted to remain in the United States until USCIS completes its adjudication of the Class Member's asylum application. ECF No. 227-2, Ex. 1 at 6, Section III.B. Indeed, the Settlement Agreement provides that "[o]nce such a motion to enforce is initiated, the complaining Class Member shall not be removed from the United States unless and until the matter has been resolved in favor of Defendants." *Id.* at 13, Section V.D.

This Court has "exclusive jurisdiction to supervise the implementation of this Settlement Agreement and to enforce its provisions and terms until the Termination Date." ECF No. 227-2, Ex. 1 at 13, V.A; ECF No. 205 at 3 (the "Court retains jurisdiction to enforce the Agreement during the term of the Agreement . . .").[2]

**B.     President Trump's Proclamation and Previous Orders of Removal**

On March 15, 2025, President Trump issued a Proclamation titled *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua*. ECF No. 227-2. Ex. 3. Section 1 of the Proclamation directed that "Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." *Id.* Section 3 of the Proclamation provides that "all Alien Enemies described in section 1 of this proclamation are subject to immediate apprehension, detention, and removal, and . . . they shall not be permitted residence in the United States." *Id.* § 3. The

---

[2] The term of the Settlement Agreement is 548 days after the effective date, which is defined as the date the Settlement Agreement received final approval. ECF No. 199-2 at 4. The Court granted final approval on Nov. 25, 2024. ECF No. 205. Thus, the Court has jurisdiction over Defendants' violation of the Settlement Agreement.

3

Proclamation instructed the Attorney General and the Secretary of Homeland Security "to cause the apprehension, detention, and removal of all members of TdA who otherwise qualify as Alien Enemies under section 1 of this proclamation." *Id.* § 6. According to Robert Cerna, Acting Field Office Director Enforcement and Removal Operations at ICE, on March 15, 2025, Venezuelan individuals were removed to El Salvador pursuant to President Trump's March 15, 2025, Proclamation. ECF No. 227-2, Ex. 4 (Declaration of Robert L. Cerna ¶¶ 5–6, *J.G.G. v. Trump*, No. 1:25-cv-00766 (D.D.C. Mar. 18, 2025), ECF No. 28-1).

### C. Javier Faces Imminent Removal

Javier is an 18-year-old Class Member from Venezuela. Decl. of Marisa Tillman ("Tillman Decl."), ¶ 5. After he entered the United States, he was determined by federal immigration authorities to be an "Unaccompanied Alien Child" ("UAC"). *Id*. ¶¶ 5-6. After spending several weeks in a shelter for children run by the Office of Refugee Resettlement, the agency responsible for the care of UACs, Javier was released to his mother. *Id.* ¶ 6. He mailed an asylum application to USCIS, which USCIS received after he had reached the age of 18. *Id.* ¶ 7, Ex. 1, Asylum Receipt Notice (listing December 12, 2024 as receipt date). Javier's asylum application is pending with USCIS, and he has not yet been scheduled for an interview. *Id.* Based on his pending asylum application, Javier filed an unopposed motion to dismiss his removal proceedings, which the immigration judge granted on January 6, 2025; DHS did not appeal the dismissal of Javier's removal proceedings. *Id*. ¶ 8.

On about March 19, 2025, while Javier was working at his job at a hair salon in Washington DC, ICE officers arrested, detained him, and a day later transferred him to Winn Correctional Center in Louisiana. *Id.* ¶¶ 9-10. According to Ms. Tillman, ICE officers told Javier that they planned to deport him. *Id.* ¶ 10. On March 21, 2025, Class Counsel raised with Defendants that

4

they had reason to believe that Javier faced imminent removal in violation of the Settlement Agreement. DeJong Decl., Ex. 3. On March 21, 2025, Defendants responded that the "individual will not be removed today," and on March 25, 2025, further responded that "there are no plans to remove the individual." *Id.*

DHS re-instituted removal proceedings against Javier on March 25, 2025, in the Oakdale, Louisiana Immigration Court, charging the same removal grounds for being present in the United States without being admitted or paroled as they had charged in the prior dismissed proceedings. Tillman Decl. ¶ 12. During the past month that Javier has been in ICE custody, ICE has denied his immigration counsel's request for his release. *Id*. ¶¶ 12-13. On Monday, April 14, 2025, ICE transferred Javier from Winn Correctional Center in Louisiana to Bluebonnet Detention Facility in Anson, Texas. *Id*. ¶ 14. Immigration counsel fears that the recent transfer's purpose is to stage him for removal to El Salvador under the Alien Enemies Act. *Id*.

On April 15, 2025, Class Counsel again asked Defendants to confirm that night that they would not remove Javier. DeJong Decl., Ex. 3. As of the time of filing this motion, Defendants have not responded. Accordingly, a TRO should issue to ensure that Javier is not removed from the United States pending resolution of the emergency motion to enforce the Settlement Agreement, which is scheduled to be heard on Tuesday, April 22.

### III.   ARGUMENT

#### A.   Javier Is a Class Member.

As a preliminary matter, Javier is a Class Member. As defined in the Settlement Agreement, and pursuant to the Court's Final Approval Order, the Class is defined as:

> All individuals nationwide who prior to the effective date of the superseding memorandum discussed in Section III(A) of the Settlement Agreement: (1) were determined to be a UAC; and (2) who filed an asylum application that was pending

5

with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits.

ECF No. 205 ¶ 2; ECF No. 199-2 at 5, Section II.E.  *Javier* meets each element of the Class Definition because: (1) he was previously determined to be a UAC, before the February 24, 2025 effective date of the superseding memorandum[3] (Tillman Decl. ¶ 6, Ex. 1); (2) he filed an asylum application with USCIS on December 2024, and his application was pending with USCIS before the February 24, 2025 effective date of the superseding memorandum) (*id.* ¶ 7, Ex. 2); (3) at the time he filed his asylum application, he was 18 years old (*id.* ¶¶ 5-7); and (4) USCIS has not adjudicated his asylum application on the merits (*id.* ¶ 7).

As explained in Class Counsel's pending Emergency Motion to Enforce the Settlement Agreement, Defendants have no basis to assert that a Class Member subject to AEA allegations falls outside the Class Definition.  ECF No. 227 at 12-13.  The Class Definition does not exclude individuals that Defendants allege are subject to the Alien Enemies Act.  The Class Definition has been ordered by this Court in a final judgment (ECF No. 205), and therefore is not subject to after-the-fact alteration by the Government.  *See Cox v. Shah*, No. 98-1357, 1999 WL 492664, at *7 (4th Cir. July 13, 1999) ("Although Rule 23(c)(1) of the Federal Rules of Civil Procedure provides that a district court may alter or amend the class 'before the decision on the merits,' that rule is inapplicable, absent egregious error, where the district court has already entered a final judgment

---

[3] Per the Settlement Agreement, Defendant USCIS was obligated to issue a memorandum explaining and implementing the terms of the Agreement. ECF No. 199-2 at 7, III.A. The memorandum was issued by USCIS on January 30, 2025, and went into effect on February 24, 2025. ECF No. 227-7. Although not the subject of this motion, Class Counsel has identified several ways in which the memorandum violates the Settlement Agreement. ECF No. 224 at 1–2.

6

approving a settlement of the class action suit."). Defendants were aware of the AEA when they entered into the Settlement Agreement, but still agreed to the terms of the Agreement. Simply put, the AEA does not allow Defendants to disregard the binding commitments it made. All Class Members are entitled to the benefits of the Settlement Agreement that Defendants agreed are fair and reasonable.

### B. A TRO Should Issue to Prevent Removal of Another Class Member.

On a motion for a TRO, a party must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that a TRO is in the public interest. *ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 431 (D. Md. 2024). Under *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), "each of [these requirements] must be satisfied as articulated." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009). Each factor weighs in favor of a TRO here.[4]

#### 1. Class Counsel Are Likely to Succeed on the Merits

The Settlement Agreement provides that, "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of

---

[4] The Supreme Court's dissolution of a TRO blocking removals under the AEA does not prevent this Court from issuing a TRO to block the removal of this Class Member. While the Supreme Court held that "[c]hallenges to removal under the AEA . . . must be brought in habeas," *Trump v. J.G.G.*, No. 24A931, 2025 WL 1024097, at *1 (Apr. 7, 2025), this motion seeks enforcement of the parties' final settlement agreement.

7

this Agreement." ECF No. 199-2 at 9, Section III.I.  ICE cannot remove a Class Member from the United States if the Class Member has a pending asylum application with USCIS.

The removal of Javier pursuant to the AEA would be a violation of the Settlement Agreement.  President Trump's March 15, 2025, Proclamation, ordered the "immediate apprehension, detention, and removal" of individuals purportedly subject to the AEA.  ECF No. 227-3.  The Supreme Court has made clear that AEA detainees are "subject to **removal orders under the AEA**." *Trump v. J.G.G.*, No. 25-5067, 604 U.S. ___, at 3 (Apr. 7, 2025).  And if Javier were to be removed, it would clearly be a "final" order.  Accordingly, there is no reasonable dispute that if ICE removes Javier, it would be pursuant to a "final removal order" in violation of the Settlement Agreement.

Defendants previously asserted that AEA detainees are not subject to an "***administratively final*** order of removal ***under Title 8***," but instead removed pursuant to the Alien Enemies Act (50 U.S.C. § 21); therefore, according to Defendants, "Section III.I [of the Settlement Agreement] does not apply."  ECF No 227-6.  Defendants' interpretation of the agreement is contrary to the plain language of the Agreement.  The Settlement Agreement prohibits removal of any Class Members subject to "final removal orders," not just an "administratively final order of removal under Title 8."  In fact, the terms "administratively final" and "Title 8" are not found anywhere in Section III.I of the Settlement Agreement.

The Settlement Agreement defines many other terms (ECF No. 199-2 at Section II), but does not define "final removal order," and therefore the plain meaning of that phrase controls.  *W. Virginia Highlands Conservancy v. ERP Env't Fund, Inc.*, 99 F.4th 194, 202 (4th Cir. 2024) ("[A] consent decree's interpretation is governed by 'traditional rules of contract interpretation' . . . . [drawn] from the law of the state in which the consent decree was entered."); *Wells v. Chevy Chase*

8

*Bank, F.S.B.*, 363 Md. 232, 251 (2001) ("[A] court shall give effect to [a contract term's] plain meaning . . . ."). As the Government recently argued in *J.G.G. v. Trump*, the plain meaning of "remove" or "removal," is "[t]he transfer or moving of a person or thing from one location, position, or residence to another." Response and Motion to Vacate at 3, No. 1:25-cv-00766 (D.D.C. Mar. 17, 2025), ECF No. 24 (quoting *Removal*, *Black's Law Dictionary* (9th ed. 2009)). Accordingly, if Javier is removed to El Salvador pursuant to the AEA, his removal would necessarily be pursuant to a "final removal order." As set forth in Class Counsel's pending Motion to Enforce, ICE, a component of DHS, previously relied upon the Proclamation as the sole and sufficient legal basis for removing another Class member from the country, making it a "final order" under any reasonable definition. *Cf. Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (describing conditions for identifying "final" agency action).

The circumstances underlying the Settlement Agreement further reinforce that the removal of Javier would violate the Settlement Agreement. This litigation challenged a USCIS policy that would have resulted in the improper removal of many Class Members by causing their asylum applications to be rejected for lack of jurisdiction. The Settlement Agreement allows for Class Members in removal proceedings to have their asylum applications adjudicated on the merits by USCIS while they remain in the United States with access to their counsel. It cannot be reasonably argued that, in formulating the Settlement Agreement, the parties contemplated that Class Members with pending asylum applications could be removed from the United States to places where they have no access to counsel or their family and, importantly, are rendered ineligible for asylum. Defendants' position now—that they can remove Class Members pursuant to the AEA—is an attempt to circumvent the Settlement Agreement because they no longer wish to be bound to its terms. *S. Coal Corp.*, 64 F.4th at 517 ("If Southern Coal intended such a backdoor to

9

compliance, then it likely did not negotiate the Decree in 'good faith' to forge an agreement that was 'fair, reasonable, and in the public interest.'").

Furthermore, pursuant to the Settlement Agreement, because Class Counsel has filed a Motion to Enforce the Settlement Agreement, ICE cannot remove Javier until resolution of that motion. Specifically, under Section V.D of the agreement, "[o]nce such a motion to enforce is initiated, the Complaining Class Member shall not be removed from the United States unless and until the matter has been resolved in favor of Defendants." ECF No. 227-2, Ex. 1 at 13, § V.D.

For all of the above reasons, Class Counsel are likely to succeed on the merit.

### 2. *Javier Will be Irreparably Harm If Removed*

Without emergency relief, Defendants' removal of Javier would subject him to grave harm. El Salvador's prisons are notorious for their harsh detention conditions.[5] The Terrorism Confine Center ("CECOT") is a "notorious supermax prison known for widespread human rights violations." *Kilmar Armando Abrego Garcia v. Kristi Noem et al.,* No. 8:25-cv-00951-PX, ECF No. 31 (Memorandum Opinion) at 5. The U.S. State Department has described these prison conditions as "life-threatening."[6] These facts more than satisfy the TRO standard for irreparable harm. *See, e.g.*, *Abrego Garcia v. Noem*, No. 8:25-CV-00951-PX, 2025 WL 1014261, at *11 (D. Md. Apr. 6, 2025) ("Obviously, the risk of torture, beatings, and even death clearly and

---

[5] *See, e.g.*, DeJong Decl., Ex. 1, Human Rights Watch, *El Salvador's prisons are no place for US deportees* (Mar. 13, 2025), https://www.hrw.org/news/2025/03/13/el-salvadors-prisons-are-no-place-us-deportees; Human Rights Watch, *Widespread Human Rights Violations Under El Salvador's "State of Emergency"* (Dec. 7, 2022), https://www.hrw.org/report/2022/12/07/we-can-arrest-anyone-we-want/widespread-human-rights-violations-under-el#2330.

[6] DeJong Decl., Ex. 2, U.S. State Dep't, *2023 Country Reports on Human Rights Practices: El Salvador*, https://www.state.gov/reports/2023-country-reports-on-human-rights-practices/el-salvador.

unequivocally supports a finding of irreparable harm." (citation omitted)); *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 20 (D.D.C. 2005) (finding harsh conditions at Guantanamo that forced detainees to go on hunger strikes amounted to irreparable harm); *Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. 22-cv-3118 (CKK), 2023 WL 1438376, at *20 (D.D.C. Feb. 1, 2023) (finding irreparable harm satisfied for claims involving a lack of access to counsel); *Grace v. Whitaker*, 344 F. Supp. 3d 96, 146 (D.D.C. 2018), *aff'd in part, rev'd in part on other grounds sub nom.*, *Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020) (finding fear of "domestic violence, beatings, shootings, and death" upon removal constitutes irreparable injury). Further, removal from the U.S. to any other country, which may prevent Javier from pursuing his asylum claim, is also an irreparable harm. *See Doe v. Jaddou*, No. CV TDC-24-0650, 2024 WL 2057144, at *16 (D. Md. May 8, 2024) (irreparable harm found where individuals would be forced to "forfeit[] their refugee status"); *J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 379 (D. Md. 2019) (irreparable harm found where applicants "may miss their opportunity to file for asylum all together" due to changing policy).

### 3. *The Balance of Equities and Public Interest Merge in Favor of Granting a TRO*

The balance of equities and the public interest factors merge in cases against the government. *See Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). Where, as here, the challenged governmental conduct would deprive Javier of his rights under the Settlement Agreement, both factors weigh in favor of granting a TRO. *See ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 437 (D. Md. 2024) ("The Defendants can suffer little cognizable hardship from the Court enforcing contracts that they agreed to sign."). The public—and therefore the government—has an interest in protecting the rights of people in detention and

11

ensuring due process. *See Nken v. Holder*, 556 U.S. 418, 436 (2009) (describing the "public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm");[7] *Jaddou*, 2024 WL 2057144, at *17 ("the public 'has an interest in seeing its governmental institutions follow the law'" (quoting *Roe v. Dep't of Defense*, 947 F.3d 207, 230-31 (4th Cir. 2020)). Furthermore, Defendants cannot argue that there is any risk to public safety if Javier is not removed pending resolution of Class Counsel's motion to enforce the Settlement Agreement, because he is already detained. Tilllman Decl. ¶ 10. *See Jaddou*, 2024 WL 2057144, at *17 (discounting the government's arguments about its interest in securing the border where the government had "not provided any basis to conclude that [the movant] poses any threat to national security."). Accordingly, the balance of equities and public interest all favor maintaining the status quo such that Javier is not removed from the United States before this Court has an opportunity to rule on Plaintiffs' motion to enforce the Settlement Agreement.

---

[7] This case triggers none of the potentially countervailing public interests identified in *Nken*, where the Court considered the public interest in preventing "continued presence of an alien lawfully deemed removable," "'prolong[ing] a continuing violation of United States law,'" and circumstances where "the alien is particularly dangerous, or has substantially prolonged his stay by abusing the processes provided to him." *Nken*, 556 U.S. at 436 citations omitted. Here, the Class Member was placed in immigration court removal proceedings for the express purpose of adjudicating the question of removability. *See Trump v. J.G.G.*, No. 24A931, 2025 WL 1024097, at *2 (U.S. Apr. 7, 2025) (holding that AEA detainees are entitled to notice and opportunity to be heard).

12

## IV.   CONCLUSION

For all the reasons set forth above, a TRO should issue to prevent the removal of Javier, at least until such time as the Court rules on Class Counsel's pending Motion to Enforce the Settlement Agreement.

Dated: April 16, 2025

Respectfully submitted,

/s/ Brian T. Burgess

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20036
Phone: 540-907-1761
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project of the
National Lawyers Guild
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5494
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300

13

Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted pro hac vice*