IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | |
|---|---|
| J.O.P., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Department of Homeland Security, *et al.*, <br><br> Defendants. | Civil Action No. <br> 8:19-CV-01944-SAG |

### MEMORANDUM OPINION

In this class action litigation, filed in 2019, a Plaintiff Class comprised of persons who entered this country as unaccompanied minors and later sought asylum sued the government Defendants.[1] The Class sought to enforce its members' rights to have their asylum applications adjudicated on the merits by USCIS while they remained physically present in the United States. The two parties in this case worked for many months, with the assistance of two different magistrate judges, to agree on the terms of a comprehensive Settlement Agreement last year. Once fully agreed, the parties executed the agreement, provided notice of the proposed agreement to the Plaintiff Class, and attended a fairness hearing before this Court. This Court granted final approval of the parties' Settlement Agreement in November, 2024 and retained jurisdiction to enforce its provisions. ECF 205. Defendants have now removed at least one Class Member from this country without adjudication of his asylum petition on the merits by USCIS. As a result, at this stage of the proceedings, both parties agree that this is just a breach of contract

---

[1] Defendants are the U.S. Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), and several officials of these agencies (collectively "Defendants" or "government Defendants").

case. It is not a habeas case, or a case assessing the propriety of the government's recent invocation of the Alien Enemies Act ("AEA").

Currently pending are three motions: Class Counsel's emergency motion to enforce the Settlement Agreement, ECF 227, and two motions to proceed by pseudonym, ECF 231, 236. Defendants have opposed the motions, ECF 248, 249, and Class Counsel filed a reply in support of their motion to enforce, ECF 250. This Court held a motions hearing on April 22, 2025. For the reasons set forth below, this Court will enforce the terms of the parties' binding Settlement Agreement and will grant the two motions to proceed by pseudonym.

## I.  Background

Pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("APA") and the Due Process Clause of the Fifth Amendment to the United States Constitution, a group of undocumented immigrants who entered the United States as unaccompanied children ("Plaintiffs") brought this action for declaratory and injunctive relief on July 1, 2019. The Complaint alleged that Defendants unlawfully modified policies governing treatment of an asylum application by an unaccompanied alien child ("UAC")[2] in a May 31, 2019 USCIS Memorandum ("2019 Redetermination Memo").[3] ECF 1. The Complaint included four named Plaintiffs, each of whom submitted personal declarations describing their departures from their countries of birth and their arrivals in the United States, ECF 16, 18, 19, 20. The named Plaintiffs

---

[2] An "unaccompanied alien child" or "UAC" means "'a child who—(A) has no lawful immigration status in the United States; (B) has not attained 18 years of age; and (C) with respect to whom—(i) there is no parent or legal guardian in the United States; or (ii) no parent or legal guardian in the United States is available to provide care and physical custody,' as set forth in 6 U.S.C. § 279(g)(2)." ECF 199-2 at 6, Section II.U.

[3] The Court incorporates herein the extensive discussion of the statutory and regulatory background in this matter from its prior opinion, ECF 54 at 2-7.

moved to proceed under pseudonyms in this litigation, ECF 12, and the Court approved that procedure, ECF 55.

In 2024, the parties reached a final Settlement Agreement providing relief to a certified class of young asylum seekers previously determined to be UACs, ECF 199-2, and the Court granted final approval of the Settlement Agreement on November 25, 2024, ECF 205. The Settlement Agreement defines the certified Class as "all individuals nationwide who prior to [February 24, 2025[4]]: (1) were determined to be a UAC; and (2) who filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits." ECF 199-2 at 5, Section II.E.

Section III.B is among the Settlement Agreement's core protections for Class Members which are relevant to the motion at issue. Section III.B provides that "USCIS will exercise Initial Jurisdiction over Class Members' asylum applications in accordance with the terms of this Settlement Agreement and adjudicate them on the merits." *Id*. at 7. Other provisions of the Settlement Agreement require USCIS's exercise of initial jurisdiction over Class Member asylum applications. *See* ECF 199-2 at 9, Section III.H ("With respect to DHS's treatment of Class Members in removal proceedings, DHS will refrain from taking the position that USCIS

---

[4] Section III.A provides that USCIS has "fully rescinded the 2019 Redetermination Memo" and will issue "a superseding memorandum explaining and implementing this Settlement Agreement" which "will remain in effect for at least three years" from its effective date. ECF 199-2 at 7. "The superseding memorandum's effective date will be 90 days after the Court's final approval of this Settlement Agreement," which is February 24, 2025. *Id*. The Defendants filed a Compliance Report stating that USCIS had issued a superseding memorandum in accordance with Section III.A of the Settlement Agreement. ECF 217 ¶ A.

does not have Initial Jurisdiction over a Class Member's asylum application.").

Particularly relevant to Class Counsel's motion to enforce the Settlement Agreement are Section III.I, which states that "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement," and Section V.D., which provides that "the complaining Class Member shall not be removed from the United States" once a motion to enforce has been filed "unless and until the matter has been resolved in favor of Defendants." ECF No. 199-2 at 9, 14.

On March 14, 2025, President Trump signed a Proclamation titled *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua* ("AEA Proclamation"). ECF 227-2 at 37. Section 1 of the Proclamation directed that "all Venezuelan citizens 14 years of age or older who are members of [Tren de Aragua ("TdA")], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." *Id*. at 40. Section 3 of the Proclamation provides that "all Alien Enemies described in section 1 of this proclamation are subject to immediate apprehension, detention, and removal, and . . . shall not be permitted residence in the United States." *Id*. Section 4 directs "the Attorney General and the Secretary of Homeland Security" to "apprehend, restrain, secure, and remove every Alien Enemy described in section 1." *Id*.

According to Robert Cerna, Acting Field Office Director Enforcement and Removal Operations ("ERO") at ICE, on March 15, 2025, "aliens" were removed to El Salvador after the AEA Proclamation took effect. ECF 227-2 at 46. On that date, ICE removed Cristian, a 20-year-old Class Member from Venezuela with a pending asylum application, to prison in El Salvador,

4

which Class Counsel argue is "in clear violation of the Settlement Agreement." ECF 227-1 at 5. Class Counsel filed an Emergency Motion to Enforcement the Settlement Agreement, ECF 227, seeking "the Court's intervention to order Defendants to remedy this violation of the Settlement Agreement and prevent any further such violations." *Id*.

## II.     Jurisdiction

Defendants argue that this Court lacks jurisdiction over Plaintiffs' claims. ECF 248 at 13. This argument is a nonstarter. On November 25, 2024, this Court issued an Order granting final approval of the Settlement Agreement, "incorporated" the Agreement "by reference in [the] Order," and "directed" the parties "to implement and consummate the Agreement according to the terms and provisions of the Agreement." ECF 205 at 3. This Court maintains jurisdiction to enforce its own orders, and the Settlement Agreement in this matter is no different. *See Fairfax Countywide Citizens Ass'n v. Fairfax Cty.*, 571 F.2d 1299, 1303 n.8 (4th Cir. 1978) ("Where the settlement agreement is approved and incorporated into an order of court, the district court possesses jurisdiction to enforce its own order.").

Moreover, the Settlement Agreement and this Court's final Order approving the Settlement Agreement both clearly provide this Court with jurisdiction to enforce the Agreement's terms. ECF 199-2 at 13, Section V.A ("This Court shall retain exclusive jurisdiction to supervise the implementation of this Settlement Agreement and to enforce its provisions and terms…"); ECF 205 at 3 ("The Court retains jurisdiction to enforce the Agreement during the term of the Agreement[.]"). Contrary to Defendants' assertions, the instant motion does not sound in habeas because Plaintiffs are not asking the Court to determine the scope of Defendants' removal authority under the AEA or challenging the application of the AEA to Cristian or any other individual Class Member. Rather, Plaintiffs' motion "seeks to enforce the existing

5

Settlement Agreement," ECF 227, which the Court clearly has jurisdiction to do. *See* ECF 199-2 at 13, Section V.A; ECF 205 at 3 ("Should any party to the Agreement fail to honor the terms of this Order, the breaching party may petition for enforcement of this Order[.]"); *Williams v. Pro. Transp., Inc.*, 388 F.3d 127, 132 (4th Cir. 2004) ("District courts have inherent authority, derived from their equity power, to enforce settlement agreements.").

At bottom, this case, unlike other cases involving the government's removal of individuals under the AEA, is a contractual dispute because of the Settlement Agreement, ECF 199-2. *See Davis v. Wash. Metro. Area Transit Auth.*, No. 23-1171, 2023 WL 7410855, at *2 (D. Md. Nov. 8, 2023) ("The question of whether to enforce a settlement agreement is governed by 'standard contract principles,' because a settlement agreement is nothing more nor less than a contract."); *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540-41 (4th Cir. 2002) ("[T]o exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions."). Neither party disputes the existence of the Settlement Agreement, the terms of which are readily ascertainable and were mutually agreed upon by both parties. *See Lopez v. XTEL Const. Grp., LLC*, 796 F. Supp. 2d 693, 699 (D. Md. 2011). This Court will thus apply standard contract principles to assess the enforceability of the Settlement Agreement. *See Hayward v. Brown*, No. PWG-15-3381, 2017 WL 2117364, at *2 (D. Md. May 16, 2017) ("Under Maryland law, '[s]ettlement agreements are enforceable as independent contracts, subject to the same general rules of construction that apply to other contracts.'" (citation omitted)).

### III. The Settlement Agreement

#### A. The Class Definition Does Not Exclude Individuals Who are Subject to the AEA.[5]

---

[5] This Court assumes, without deciding, for purposes of interpreting the Settlement Agreement

Defendants argue that removal of Cristian did not violate the Settlement Agreement because "his designation as an alien enemy pursuant to the AEA results in him ceasing to be a member" of the Class as defined in Section II.E. ECF 248 at 16. Specifically, Defendants contend that "aliens designated as alien enemies pursuant to the AEA are no longer eligible for asylum, a requirement for class membership." *Id*.

The Class Definition contains four elements. ECF 205 ¶ 2, ECF 199-2 at 5, Section II.E. Defendants contend that as to Cristian (and any Class Member against whom the AEA is invoked), "prong No. 4 of the class definition is unmet" because the "AEA invocation moots the asylum application such that USCIS cannot adjudicate" and thus "adjudication is not pending." ECF 248 at 17. But, nothing in the plain language of the Class Definition or in the larger Settlement Agreement "requires that USCIS have a present ability to adjudicate the application on the merits." *Id*. Rather, the fourth prong of the Class Definition unambiguously states that the Class includes individuals "for whom USCIS has not adjudicated the individual's asylum application on the merits." ECF 199-2 at 5, Section II.E. Section II.B defines "[a]djudicate on the merits" as "to render a decision on the substance of an asylum claim by either granting an approval or issuing a determination of non-eligibility." ECF 199-2 at 4. Defendants attempt to import a temporal limitation into the fourth prong of the Class Definition for which there is no support within the four corners of the Settlement Agreement. *See ACAS, LLC v. Charter Oak Fire Ins. Co.*, 626 F. Supp. 3d 866, 874 (D. Md. 2022) ("When interpreting a contract's terms, courts must look to the entire language of the agreement, not merely a portion thereof, and must consider the customary, ordinary and accepted meaning of the language used." (cleaned up)).

The Settlement Agreement makes no mention of the AEA. As this Court has stated,

---

that Cristian is subject to the AEA Proclamation and that the AEA Proclamation is lawful.

7

"[n]othing in the plain language of the Class definition mentions the AEA or exempts any persons otherwise meeting the Class definition from the protections the Settlement Agreement affords." ECF 247 at 3. Allegations that Class Members, like Cristian, are subject to the AEA do not exclude those individuals from the Class under the plain terms of the Settlement Agreement.

Defendants do not dispute that Cristian meets the first three elements of the Class Definition in Section II.E. ECF 248 at 17. As to the fourth element, "USCIS has not adjudicated" Cristian's application for asylum "on the merits" because USCIS has not "render[ed] a decision on the substance of [his] asylum claim by either granting an approval or issuing a determination of non-eligibility." ECF 199-2 at 4, Section II.B & at 5, Section II.E; ECF 228 (under seal) ¶ 6 & at 9. Thus, Cristian remains a Class Member and is still entitled to all rights afforded to him under the Settlement Agreement.

### B. Removal of a Class Member Who Has Not Received Final Adjudication on the Merits by USCIS of a Properly Filed Asylum Application is a Violation of the Settlement Agreement.

Under Section III.I, the Settlement Agreement provides that "ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed application under the terms of this Agreement." ECF 199-2 at 9. According to Defendants, "final removal order" as used in Section III.I "only applies to final orders of removal in removal proceedings under Title 8." ECF 248 at 21. Thus, Defendants contend, "removal pursuant to the AEA does not violate the settlement agreement" and therefore, removal of Cristian did not violate the Settlement Agreement. *Id*.

Here again, Defendants attempt to add language to the Settlement Agreement that does not comport with the Agreement's plain terms. The Settlement Agreement does not define "final removal order," and as such, the Court "must give effect to its plain meaning and not contemplate

what the parties may have subjectively intended…at the time of formulation." *ACAS, LLC*, 626 F. Supp. 3d at 874 (citation omitted). In giving the terms their "customary" and "ordinary" meaning, the Court looks to "the entire language of the agreement" and considers "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Id*. (citations omitted). The Defendants' narrow definition of "final removal order" is not supported by the language of the Settlement Agreement or the facts and circumstances surrounding its execution. The Settlement Agreement specifically defines many terms in Section II, ECF 199-2 at 4-7, but it does not define or limit the phrase "final removal order." Here, the AEA Proclamation served as a final removal order. Defendants executed Cristian's final removal from the United States under the AEA Proclamation in contravention of their obligations under the Settlement Agreement. Defendants to date, in the motions hearing and elsewhere, have repeatedly asserted that AEA removal is final and irrevocable.

The Settlement Agreement does not limit the protection against removal provided in Section III.I to any specific statutory mechanism for removal. In a separate section dealing with protection against removal when a motion to enforce the Settlement Agreement has been initiated, the Agreement also contains no limitation on the type of removal, stating only that "the complaining Class Member shall not be removed from the United States unless and until the matter has been resolved in favor of Defendants." ECF No. 199-2 at 14, Section V.D.

Finally, Defendants' proposed interpretation of Section III.I is not supported by the general purpose of the Settlement Agreement, which was to address "a USCIS policy that would have resulted in the improper removal of many Class Members by causing their asylum applications to be rejected for lack of jurisdiction" and to allow "Class Members in removal proceedings to have their asylum applications adjudicated on the merits by USCIS while they

9

remain in the United States with access to their counsel." ECF 227-1 at 16. Indeed, a core purpose of the Settlement Agreement would be nullified if Class Members with pending asylum applications could be summarily removed from the United States and thus rendered ineligible for asylum. The Class Members' "benefit of the bargain," which they procured in exchange for releasing, relinquishing, and discharging their class-wide claims, *see* ECF 199-2 at 14, consisted primarily of the assurance that they would not be removed from the United States until USCIS adjudicated their asylum claims on their merits. *See* Restatement (Second) of Contracts § 17 (Am. Law Inst. 1981) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."). Construing the undefined phrase "final removal order" in the narrow manner advocated by Defendants would relieve Defendants of their obligation to uphold the promises they made to Class Members as consideration for the relinquishment of Class Members' action. Excepting removal under the AEA from the requirements of the Settlement Agreement would also render Defendants' promises illusory, a construction that violates the illusory promises doctrine. *See M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015) (finding that the illusory promises doctrine "instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract"); 3 Williston on Contracts § 7:7 (4th ed. May 2024 Update). And permitting Defendants to remove a Class Member without holding up their end of the bargain (which is to afford particular process to the pending asylum claims before removal) undermines the implied duty of good faith and fair dealing incorporated in every contract. *See* Restatement (Second) of Contracts § 205 (Am. Law Inst. 1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

Therefore, under the plain terms of the Settlement Agreement and fundamental tenets of contract law, removal from the United States of a Class Member, including but not limited to Cristian, without a final determination on the merits by USCIS on the Class Member's pending asylum application violates the Settlement Agreement.

### C. The Court Will Enforce the Terms of the Settlement Agreement.

Defendants' arguments that this Court should find Section III of the Settlement Agreement "void and unenforceable" because it "violates public policy," ECF 248 at 26, carry no weight. Defendants have not even attempted to meet their burden under Federal Rule of Procedure 60(b) to procure relief from a final order and instead merely argue common law principles. *See* Fed. R. Civ. P. 60(b); *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 380 (1992) ("[A] party may obtain relief from a court order when it is no longer equitable that the judgment should have prospective application, not when it is no longer convenient to live with the terms of a consent decree." (citation omitted)). The parties finalized the Settlement Agreement just five months ago. ECF 205. While Defendants now assert "there is a strong public interest in ensuring the safety of citizens of the United States and protecting them from foreign invasions and designated terrorist organizations," ECF 248 at 26, Defendants have provided no evidence, or even any specific allegations, as to how Cristian, or any other Class Member, poses a threat to public safety. *Cf.* ECF 248-1 ¶¶ 13-14 ("ICE determined that [Cristian] was subject to the [AEA] Proclamation…On March 15, 2025, [Cristian] was removed under the [AEA]…as a Venezuelan citizen 14 years of age or older who is a member of TdA."). This Court is a court of evidence, resolving disputes by determining the facts based on evidence presented and applying relevant law to those facts.

At the motions hearing, Defendants suggested that evidence would be prohibited, citing

11

Section VIII.D of the Settlement Agreement, which states "that no extrinsic evidence whatsoever may be introduced in any judicial or other proceeding, if any, involving the interpretation of this Agreement." ECF 199-2 at 15. But here, Defendants are not asking this Court to make a determination "involving the interpretation of this Agreement." Defendants are asking this Court to void the Settlement Agreement, which it just approved. The high bar of Rule 60(b) is not met by conclusory assertions alone.

Even if Rule 60(b) did not apply, this Court would decline, in the absence of any particularized showing, to void Section III of the Settlement Agreement on public policy grounds. In enforcing the Agreement's terms, this Court takes into account the "public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm," *Nken v. Holder*, 556 U.S. 418, 436 (2009), and the public's "interest in seeing its governmental institutions follow the law," *Vitkus v. Blinken*, 79 F.4th 352, 368 (4th Cir. 2023) (citing *Roe v. Dep't of Def.*, 947 F.3d 207, 230-31 (4th Cir. 2020)). *See also Alston v. TowneBank*, No. GJH-20-690, 2022 WL 971008, at *6 (D. Md. Mar. 31, 2022) (noting that "public policy considerations favor the enforcement of settlement agreements"). The fact that Defendants may have "second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement." *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997).

### D. Remedies

Defendants have breached the terms of the Settlement Agreement by removing at least one Class Member from the United States while his asylum application remains pending with USCIS. It is an axiomatic principle of contract law that when a defendant breaches a contract, that defendant must restore the situation that existed before the breach. *See* Restatement (Second)

of Contracts § 347 cmt. a (Am. Law Inst. 1981) ("Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain…[and] put him in as good a position as he would have been in had the contract been performed."); *id*. § 344 cmt. a ("Ordinarily, when a court concludes that there has been a breach of contract, it enforces the broken promise by protecting the expectation that the injured party had when he made the contract…[and] attempting to put him in as good a position as he would have been in had the contract been performed, that is, had there been no breach."); *Hewitt v. Dyck-O'Neal, Inc.*, No. 20-1322, 2021 WL 3784867, at *1 (D. Md. Aug. 26, 2021) (describing a motion to enforce a settlement agreement as "tantamount to an action for specific performance of a contract" (citation omitted)). In the case of Cristian, this requires putting him in the position "to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem v. Abrego Garcia*, No. 24-A949, 604 U.S. __, 2025 WL 1077101, at *1 (Apr. 10, 2025). In other words, under contract law principles, Cristian, and any other Class Member who has been removed in violation of the Settlement Agreement, must be returned to the United States to await adjudication of his asylum application on the merits by USCIS. *See* ECF 199-2 at 9, Section III.I.

Of course, that ruling puts this case squarely into the procedural morass that has been playing out very publicly, across many levels of the federal judiciary, in *Abrego Garcia v. Noem*, No. 8:25-cv-00951 (D. Md.). As of the date of this order, discovery is underway regarding the government's efforts to comply with court orders (including from the United States Supreme Court) to "facilitate" Mr. Abrego Garcia's return to the United States. *See id*. at ECF 79. This Court is mindful of the Supreme Court's reminder to afford the "deference owed to the Executive Branch in the conduct of foreign affairs." *Noem*, 2025 WL 1077101, at *2. However, this Court

is also guided by, and fully agrees with, the definition of "facilitate" espoused by Judge Xinis and the United States Court of Appeals for the Fourth Circuit in *Abrego Garcia*. *See* No. 8:25-cv-00951, ECF 79 at 4 (D. Md. Apr. 15, 2025) ("Defendants therefore remain obligated, at a minimum, to take the steps available to them toward aiding, assisting, or making easier Abrego Garcia's release from custody in El Salvador and resuming his status quo ante."); No. 25-1404 (4th Cir. Apr. 17, 2025) ("'Facilitate' is an active verb. It requires steps to be taken as the Supreme Court has made perfectly clear…The plain and active meaning of the word cannot be diluted by its constriction…to a narrow term of art."); *Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *6 (4th Cir. Apr. 7, 2025) (Wilkinson, J. concurring) (noting that removed individuals "can be afforded effective relief by facilitation of their return"). Standing by and taking no action is not facilitation. In prior cases involving wrongfully removed individuals, courts have ordered, and the government has taken, affirmative steps toward facilitating return. *See Nat'l Immigr. Project of Nat'l Laws. Guild*, No. 11-CV-3235 JSR, ECF No. 79-4 at 40-46 (S.D.N.Y. July 16, 2014) (describing "the government's procedures for facilitating return" after removal of noncitizen); *id.*, ECF 16-4 at 19-25 (engaging ICE Attaché in South Africa to facilitate the return of a removed noncitizen in Ethiopia); *id.*, ECF No. 38-6 at 31 (working with U.S. Embassy in Tokyo to secure return of removed noncitizen); *Hamama v. Adducci*, No. 2:17-cv-11910, ECF 513 (E.D. Mich. Jan. 15, 2019) (ordering defendants to "use all best efforts to ensure" return of noncitizen who was removed in violation of court's order and providing specific directives to facilitate return).

  Thus, like Judge Xinis in the *Abrego Garcia* matter, this Court will order Defendants to facilitate Cristian's return to the United States so that he can receive the process he was entitled to under the parties' binding Settlement Agreement. This Court further orders that facilitating

Cristian's return includes, but is not limited to, Defendants making a good faith request to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States to await the adjudication of his asylum application on the merits by USCIS.[6]

### E. Motions to Proceed Under Pseudonym

Class Counsel filed two motions, ECF 231, 236, seeking to maintain the anonymity of the Class Members at issue in their filings by proceeding under pseudonym.[7] Specifically, Class Counsel notes that the Court has previously permitted the Named Plaintiffs in this litigation to proceed by pseudonym, ECF 55, 116, and requests that other Class Members be permitted to do the same because of "the strong public interest in restricting the asylum seeker's identity from the public;" the "risk of retaliation to the Class Member if his identity is made public;" and the lack of any prejudice to Defendants, who are aware of the Class Members' identities. ECF 231 at 2, ECF 236 at 2. Defendants object, arguing that Plaintiffs "have not established that the privacy concerns at issue outweigh the significant public interest in open proceedings." ECF 249 at 1.

Federal Rule of Civil Procedure 10(a) mandates generally that pleadings contain the names of parties. However, courts may exercise their discretion in allowing parties to proceed by pseudonym and consider "the circumstances of particular cases," including "that privacy or confidentiality concerns are sometimes sufficiently critical." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) (noting "a judicial duty to inquire into the circumstances of particular cases to

---

[6] Of course, the Settlement Agreement does not entitle Class Members to USCIS approval of an asylum application. The Agreement does not guarantee results, but it does guarantee process. Defendants have deprived Cristian of the benefit of the Class's bargain.

[7] ECF 236 relates to a motion for Temporary Restraining Order concerning a Class Member called "Javier." ECF 235. At present, to this Court's understanding, Javier remains in the United States.

determine whether the dispensation is warranted"). The Fourth Circuit has articulated a list of non-exhaustive factors "as guides to a proper exercise of discretion":

> [(1)] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [(2)] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [(3)] the ages of the persons whose privacy interests are sought to be protected; [(4)] whether the action is against a governmental or private party; and [(5)] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*James v. Jacobson*, 6 F.3d 233, 238–39 (4th Cir. 1993).

The Class Members at issue here are two "Venezuelan youth seeking asylum in the United States." ECF 231-1 at 4; ECF 236-1 at 4. Courts have addressed "the unique vulnerabilities of asylum seekers" and "allowed them to proceed pseudonymously as a result." *Doe v. U.S. Immigr. & Customs Enf't*, No. 1:23-cv-00971-MLG-JMR, 2024 WL 4389461, at *2 (D.N.M. Oct. 3, 2024) (collecting cases). Here, Plaintiffs' declarations make clear that they do not seek to proceed under pseudonym "merely to avoid…annoyance and criticism" but "to preserve privacy" and security in a "sensitive" matter. *See James*, 6 F.3d at 238; ECF 228 (under seal) ¶ 5 (Class Member Cristian came to the United States "fleeing danger and threats in Venezuela"); ECF 242 (under seal) ¶¶ 5-6 (Class Member Javier came to the United States "to escape political violence in Venezuela that directly targeted his family."). Relatedly, Plaintiffs have sufficiently alleged that disclosure of their identities poses a risk of retaliatory harm. Plaintiffs clearly face the risk of retaliatory harm in their home country, as well as in detention in El Salvador and potentially within the United States, if their identities are made public. The threat of physical retaliatory harm within El Salvador's prisons and within the United States has prompted other courts considering analogous factual circumstances to permit pseudonymity. *See, e.g.*, *D.B.U. v. Trump*, No. 25-cv-1163, ECF 11 (D. Colo. Apr. 14, 2025); *G.F.F. v. Trump*, No. 25-cv 2886, ECF 10 (S.D.N.Y. Apr. 8, 2025). The first and second *James* factors thus weigh in favor of permitting Plaintiffs to proceed under pseudonym.

As to the third *James* factor, Cristian is 20 years old, ECF 231-1 at 5, and Javier is 18 years old, ECF 236-1 at 5. While these Plaintiffs are no longer minors, this Court has previously permitted Named Plaintiffs, who were all at least 18 years old when this litigation was filed, to proceed using a pseudonym, *see* ECF 91, 55, 116. Moreover, early in this litigation, this Court approved a Protective Order that directs the parties to maintain the confidentiality of Class Members' "identifying information" including "their names." ECF 136-1 at 2-3 ("Plaintiffs' and other putative class members' identifying information, including their names…shall be subject to the terms of this Order, and pursuant to the Court's orders granting Plaintiffs' motions to proceed using pseudonyms, the Parties will, in all public documents or Court filings or discussions in open Court, reference Plaintiffs and other putative class members only by their initials"); ECF 144 at 3 (order entering proposed protective order). Thus, this factor also leans in favor of maintaining Plaintiffs' anonymity via using pseudonyms.

The final two *James* factors also weigh in favor of Plaintiffs. While "there is a heightened public interest when an individual or entity files a suit against the government," Plaintiffs' individual identities here are "incidental to the adjudication of [their] claims," which seek to enforce their rights under the Settlement Agreement. *P.K. v. U.S. Customs & Border Prot.*, No. 22-1983, 2022 WL 22626436, at *3 (D.D.C. July 12, 2022) (citation omitted). Finally, Plaintiffs' identities are already known to Defendants, and Defendants do not argue that they are prejudiced in any way if Cristian and Javier proceed by pseudonym.

### IV. Conclusion

For the reasons set forth above, Class Counsel's Emergency Motion to Enforce the Settlement Agreement, ECF 227, and Motions to Proceed Under Pseudonym, ECF 231, 236, will be GRANTED. A separate Order follows.


Dated: <u>April 23, 2025</u>　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　Stephanie A. Gallagher
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge