1

```
                   IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
                           SOUTHERN DIVISION

J.O.P., et al.,                    )
                                   )
          Plaintiffs,              )
       vs.                         )
                                   ) CIVIL NO.:
U.S. DEPARTMENT OF HOMELAND        ) 8:19-cv-01944-SAG
SECURITY, et al.,                  )
                                   )
          Defendants.              )
_____)
```

                                        Baltimore, Maryland
                                        April 22, 2025
                                        1:30 p.m.

                       TRANSCRIPT OF PROCEEDINGS
                          **MOTIONS HEARING**
              BEFORE THE HONORABLE STEPHANIE A. GALLAGHER
                           Courtroom 7C

<u>For the Plaintiffs</u>:

     KEVIN J. DeJONG, Esquire
     ELAINE BLAIS, Esquire
        Goodwin Procter LLP
        100 Northern Ave.
        Boston, MA 02210

     BRIAN BURGESS, Esquire
        Goodwin Procter LLP
        1900 N Street, NW
        Washington, DC 20036

     MICHELLE N. MENDEZ, Esquire
        National Immigration Project
        1201 Connecticut Ave. NW, Suite 531
        Washington, DC 20036

<u>For the Defendants</u>:

     YAMILETH G. DAVILA, Esquire
        Department of Justice - Civil
        Office of Immigration Litigation
        1100 L St., N.W.
        Washington, DC 20530

*Patricia G. Mitchell, RMR, CRR  Federal Official Court Reporter*
*101 W. Lombard Street, Fourth Floor*
*Baltimore, MD 21201*

For the Defendants:   (Continued)

    ERHAN BEDESTANI, Esquire
      Department of Justice - Civil
      Office of Immigration Litigation
      District Court National Security Section
      Suite 5223
      Washington, DC 20044

    RICHARD G.W. INGEBRETSEN, Esquire
      Department of Justice - Civil
      Office of Immigration Litigation
      P.O. Box 868, Ben Franklin Station
      Washington, DC 20044

    (Computer-aided transcription of stenotype notes)

P R O C E E D I N G S

(1:29 p.m.)

THE COURT:  Good afternoon, everyone.  You may be seated.  We are here in J.O.P., et al., versus U.S. Department of Homeland Security.  It is Case Number SAG-19-1944.

Counsel, would you please identify yourselves for the record.

MR. DEJONG:  Good afternoon, Your Honor.  This is Kevin DeJong from Goodwin Procter on behalf of the plaintiff class.  I'll let my co-counsel introduce themselves.

MR. BURGESS:  Good afternoon, Your Honor.  Brian Burgess, also from Goodwin Procter for the plaintiff class.

MS. MENDEZ:  Good afternoon, Your Honor.  Michelle Mendez with the National Immigration Project, also for the plaintiff class.

MS. BLAIS:  Elaine Blais from Goodwin Procter, also for the plaintiff class.

THE COURT:  All right, good afternoon.

MS. DAVILA:  Good afternoon, Your Honor, Yamileth Davila on behalf of the defendants, the Department of Homeland Security, USCIS and ICE, and I'm joined by co-counsel Richard Ingebretsen and Erhan Bedestani.

THE COURT:  Good afternoon to all of you.

All right.  We are here to hear argument on three pending motions:  First, Class Counsel's Emergency Motion to Enforce

the Settlement Agreement which is ECF 227, and then two Motions to Proceed Under Pseudonym, ECF 231 and 236.

So those are the general topics for discussion this afternoon, and I'm happy to get started and perhaps let plaintiffs go first.

MR. DEJONG:  Thank you, Your Honor.  May I proceed?

THE COURT:  Yes.

MR. DEJONG:  Your Honor, we conferred this afternoon on the pseudonym motion.  We have not, in fact, had a chance to file a reply.  If we could proceed today at least with using the pseudonym at issue instead of -- and if we're able to file a reply and defer that issue, we would prefer to do it that way.  Of course, we can argue it as well if you prefer us to proceed.

THE COURT:  Well, I guess the issue is -- certainly yes, my sort of interim order that everyone should proceed using the pseudonyms until we have an adjudication remains in force.  I assume I will be entering a written opinion in this matter sooner, rather than later, and if I do that, I would like to be able to resolve all the motions together.  If there's something you really feel like has to be put in writing to reply, I could consider entertaining that, but to the extent we can address it by argument this afternoon, it would allow me to adjudicate everything together.

MR. DEJONG:  I appreciate that, Your Honor.  With

that in mind, I think we will just proceed with argument today on the pseudonym motion.

THE COURT:  Okay.

MR. DEJONG:  Your Honor, just five months ago this Court ordered final approval of a Settlement Agreement that provided certain rights to a class of noncitizens seeking asylum --

THE COURT:  Let me ask you this, Mr. DeJong.  Can you move the microphone -- you're kind of tall.  You can bend it upwards so you're speaking a little more directly into it.  It should be flexible so it will bend.

MR. DEJONG:  Is that better?

THE COURT:  That's the best it will do?  Okay.

(Discussion off the record regarding audio.)

MR. DEJONG:  I'll try to talk a little louder as well.

THE COURT:  Great.

MR. DEJONG:  Your Honor, just five months ago, this Court ordered final approval of a Settlement Agreement that provided certain rights to a class of noncitizens who were seeking asylum who came here as unaccompanied children. Including among those rights are the rights to have their asylum application adjudicated on the merits and to have -- and for the right to not be removed from the United States while their asylum application was adjudicated.  We're here today, of

course, because at least one class member has been removed. We're referring to him as Cristian. And he has already been moved to El Salvador.

The motion at issue today to enforce the Settlement Agreement seeks to enforce that procedural right to not be removed, an important right which the government agreed to. The issues today, of course, are whether the removal of that class member and others is a violation of that agreement and how do we remedy that violation.

Before I have turn to the merits issues, I would say, of the violation, I do want to address their argument about the lack of jurisdiction here. First and foremost, pursuant to the agreement, it's explicit that this Court has exclusive jurisdiction over any noncompliance of the Settlement Agreement. That's in the agreement itself and that's written into this Court's Final Approval Order. I don't think there's any dispute on those points, but I do want to make that clear. We've styled this as a Motion to Enforce the Settlement Agreement, but in fact it's a motion also to enforce this Court's order for the Government to comply with.

So in response to what the Government has argued for lack of jurisdiction, this is not a habeas claim. We are not here arguing or asking for the Court to rule on the scope of the AEA or whether any class member falls under the AEA. The substance of the motion is not in habeas. We recognize that. We've been

explicit about that.  We're merely seeking to enforce the procedural rights for these class members, not AEA at large or anyone that's subject to that, only these class members.

The Government has relied heavily on the Supreme Court's *J.G.G.* case.  That's not controlling here because that case did not involve the violation of a settlement agreement.  In fact, the Supreme Court is very clear what was at issue in that case were challenges that necessarily implied the invalidity of their confinement and removal under the AEA.  We are not arguing that.  That is, as I'm sure the Court is well aware, subject of other litigation that's not at issue here.

THE COURT:  Let me ask you, back on some factual points that we discussed somewhat in the teleconference recently.  My understanding is that there is no comprehensive list of who the class members are in this case.  How do plaintiffs' class counsel become advised when there's an issue pertaining to a member of the class?  Is it that a class member has to recognize the situation, recognize they're a class member and reach out to you, or is there some other mechanism that class counsel use to identify individuals who may have been removed like Cristian?

MR. DEJONG:  It is the mechanism that you've just identified.  We have in the Settlement Agreement itself, and published widely amongst my co-counsel's websites and on listservs, is the Settlement Agreement which includes an email

address to reach out to us.  Through that, we have become aware of many violations.  Obviously there's the specific violation that's at issue here but I will say, Your Honor, without getting into details, there are other issues that have been bubbling up in the last several months, and we have been able to resolve some of them.  There are others that are pending.

But in response to your question, Your Honor, we don't have a full list, so they are literally people that are reaching out to us.

THE COURT:  Okay.

MR. DEJONG:  That is how -- either pro se or through their actual immigration counsel.  To be clear, we are class counsel.  We are not representing these individual asylum seekers in their cases.

THE COURT:  Okay.  And so you learned about Cristian because you were contacted; and then you learned about Javier, the person who was potentially going to be subject to removal, until the TRO last week, the same way?

MR. DEJONG:  That's correct.

THE COURT:  So far you have not learned specifically about other individuals, but we can't rule out whether other individuals have been removed?

MR. DEJONG:  Government counsel would need to answer that question.  We have asked.  In fact, I would appreciate if they would give us an answer to that question, but I do not

know.

THE COURT:  All right, thank you.  Continue.

MR. DEJONG:  Your Honor, I guess I want to reiterate the point under the AEA.  The Government is arguing that if the instant motions are granted, it would somehow defeat the class members' basis for their removal under the AEA.  It's just not true.  We recognize and we are not challenging a class member's removal under the AEA.  Those issues are being litigated elsewhere, and we expect, even if the Court were to rule on our motion, that they're going to maintain those allegations.  That can proceed separately; we understand that.

With that in mind, Your Honor, I want to turn now to the actual violation at issue and walk through what we think, why Cristian is a class member, and also why he was removed in violation of the Settlement Agreement.

First off, the Class Member definition.  It's set forth in paragraph Section II.E. of the Agreement.  It starts saying "all individuals nationwide."  All individuals nationwide who meet four criteria.  I'm not going to list them here.  I know Your Honor is probably very well aware of them.  My understanding is the Government is now only disputing the fourth element which says "for whom USCIS has not adjudicated the individual's asylum application on the merits."

Before I get into that, Your Honor, I will say we are surprised that they are arguing this point.  In response, Your

Honor had raised this question, I believe, on the last status conference, and I gave you my candid view that I did not think there was any dispute on this point.  I think they've shifted now to try to make an argument here to find some sort of hook in the language.  But, Your Honor, we strongly disagree that this class member falls outside the class definition.

So we look at it, for whom USCIS has not adjudicated the individual's asylum application on the merits.  There's no dispute on these facts.  We know that USCIS has not adjudicated Cristian's asylum application on the merits.

THE COURT:  Let me stop and ask another question that you may not be the best person to ask.  Presently is USCIS continuing to adjudicate asylum applications?  Do we know whether they have adjudicated any for any members of this class?  Again, you might not be the right person.

MR. DEJONG:  What I can say, Your Honor, is that we looked right before this hearing.  There is a method to go online and look to see if a class member -- you can type in an "A" number and figure out if an application is still pending.  Cristian's application is still pending, according to their own records.  That is pretty clear then that they have not yet adjudicated his application on the merits.

THE COURT:  I guess my question was more generally though.  Do we know what the current posture of adjudications in USCIS is?  Are they continuing to move along?  Do we have no

way of knowing that one way or the other?

MR. DEJONG:  Your Honor, I wish we knew that.  I'm going to have to let government counsel speak to that.

THE COURT:  Okay.

MS. MENDEZ:  I'm going to tell you.

(Plaintiff counsel confer.)

MR. DEJONG:  Thank you, Your Honor.  My co-counsel has informed me that, in fact, we are aware that they are continuing to do interviews for class members.  Obviously, that's not possible with Cristian here being removed to El Salvador, but in terms of other class members, we have become aware that there have been interviews that have been occurring in the last month or so.

THE COURT:  Thank you, that's helpful.

MR. DEJONG:  Your Honor, what I think the Government is now saying with respect to the class definition is that they're arguing that somehow USCIS doesn't have a present ability to adjudicate his asylum application.  Let's set aside whether or not that's in fact correct, but that's not what the class definition says.  They're changing what the definition is.  There's no requirement for this present ability to adjudicate an application.  That's not what they agreed to.  I think that alone should be enough to be clear that Cristian is a class member.

I think what the Government is doing is also ignoring that

class members have a right to have their application -- asylum application be adjudicated on the merits.  If they're saying now that USCIS doesn't have a present ability to do so, that's also an issue that we'll take issue with.  That's not an issue presently before the Court, but the way that they're interpreting it is contrary to the class definition.

Your Honor, I'm going to turn now to the removal clause at issue.  It's pretty straightforward.  I'll read it.  It's in Section III.I.  It states "With respect to any class member with a final removal order, ICE will refrain from executing the class member's final removal order until USCIS issues a final determination on one properly-filed asylum application under the terms of this agreement."  ICE cannot remove a class member until USCIS issues a final determination on their asylum application.

THE COURT:  How do you respond to the Government's argument about the phrase "final removal order"?

MR. DEJONG:  Your Honor, that final removal order is not limited to any particular type of removal.  In terms of that clause, a removal order is a removal order.  There's nothing limiting it to a Title 8 removal order which is what the Government is trying to seek.

There's no question as well that, in fact, he was removed. We know he was removed pursuant to a final removal order.  He's no longer here.  What they are arguing then is trying to recast

the language here to just limit it to removal by an immigration judge under Title 8.  That's just not in the language of the agreement.  Under this clause which is broader, any removal pursuant to this clause is a problem.  There's just no basis to rewrite the phrase, to limit it as what the Government is trying to do.

There's no -- well, Your Honor, I would point to another section, Section V.D., which has a very similar clause that comes into play when there's a motion to enforce such as here, where there's a noncompliance with the Settlement Agreement. And that section also includes broad language.  It doesn't limit it in any way.  And it reads, "Once such a motion in force is initiated, the complaining class member shall not be removed from the United States unless and until the matter has been resolved in favor of defendants."  It does not limit removal as to only Title 8 as the Government is arguing.

Your Honor, in a way, what it seems to me like they're trying to do is to limit the term "final removal order."  It's similar to what they tried to do in their interpretation of the word "facilitate" in the Supreme Court's *Kilmar Abrego Garcia* case which I'm sure the Court is very much aware.  They're trying to take a very narrow view of that term; they're trying to do a very narrow view here with no basis.  The plain meaning controls and the plain meaning is broad in this context.

Your Honor, the Court can also look to the circumstances

underlying what was happening with this Settlement Agreement. This litigation was challenging a USCIS policy that would have resulted in the removal of class members by causing their asylum applications to be rejected for lack of jurisdiction. The Settlement Agreement allowed for class members to have their asylum application adjudicated on the merits while they remained in the United States with access to their counsel.

The removal of class members through any means before their asylum application is adjudicated, it makes little sense in that context.  They would have no access to counsel, their family, and they would be rendered ineligible for asylum.  It doesn't make any common sense in terms of the agreement.

I'll address sort of their specific arguments.  They're pointing to other sections of the agreement which provide different protections.  The way we look at this, or the way I look at it, is that it's like an interlocking web of protections for the class members while their asylum application is pending.  Some are specific to Immigration Court proceedings and some are broader.  The one at issue here is certainly broader because it's not limited to any particular type of removal order.

They pointed to Section III.H. which it's clear in context that section specifically relates to removal proceedings in Immigration Court.  How do we know that?  Because it specifically is talking about motions that we file in

Immigration Court; it's providing different protections.  What that section of the agreement is doing is ensuring that ICE cannot argue that USCIS does not have initial jurisdiction over a class member's asylum application.  And it provides certain protections that a class member can avail themselves of.  That section agreement addressed that issue.  The section refers to motions for continuance, administrative closure.  All of those things are specific in context in that section of the agreement, relates to Immigration Court proceedings.

That language is nowhere to be seen in Section III.I.  And that's -- they're trying to import this concept that it's somehow limiting other parts of the agreement; it's not.  The Section III.I. relates to final order of removal with no sort of limitation.  It doesn't say anything about Immigration Court proceedings, doesn't say anything about motions to be made. It's a broad stay of removal for any type of removal.

Your Honor, I'm happy to address any questions.  I'd like to talk through what the appropriate remedy would be.

THE COURT:  Okay, yes, we can turn to appropriate remedy and then also address the pseudonym situation.

MR. DEJONG:  Yes.  Your Honor, as the Court is well aware, there's the pending case in this district with Kilmar Abrego Garcia.

THE COURT:  Yes.

MR. DEJONG:  We're also aware that it's continuing to

be litigated.  What I would say is what we are asking for now is the same remedy.  We are asking the government to facilitate the prompt return of Cristian to the United States.  The Government, for some reason, did not address this issue at all in their opposition.  They certainly had room to do so.  I'm not going to try to speculate on why they didn't do that.  I don't know what they're going to say today.  It's hard for me to respond because I don't know what their position is.

What I would say then though, Your Honor, is that the Fourth Circuit has certainly provided controlling law that it is permissible for this Court to order that the individual should be returned or, at the very least, that the Court should issue an order that the government should facilitate the return of this class member.  That issue -- obviously the individual at issue in that case was different circumstances, but the underlying remedy was the same.  Here we have a violation of the Settlement Agreement.  The remedy, so to speak, should be the same.

THE COURT:  Okay.  Does class counsel take any position -- obviously there has been litigation at various court levels regarding "facilitate" and what it means, and we're, I guess, awaiting additional guidance from the Supreme Court.  Does class counsel take any position as to whether, if this Court were to enter such an order, the same language is appropriate to be used, whether more specificity can be used,

or which way the Court should go on those issues -- again, if I reach that point?

MR. DEJONG:  If Your Honor reaches this point, we would like an order that mimics the order that has been put in place in the *Kilmar Abrego Garcia* case.  I will acknowledge that the Supreme Court may weigh in on these issues perhaps soon, and I think we all will need to see how that turns out, but I don't view that as a means to slow down issuing an order. To the extent something like -- if the Supreme Court were to issue such an opinion, I think we'd all obviously be probably submitting briefs to figure out how do we interpret that.

But until that time, the Fourth Circuit has made clear that the government should, in fact, facilitate the return of Kilmar Abrego Garcia; and they should do so here.

THE COURT:  All right.  Did you wish to say something about the pseudonym?

MR. DEJONG:  I'll keep it brief, Your Honor.  First off, the Government has completely ignored that we actually have a protective order in place here.  I will apologize, Your Honor, I don't think we brought it up either.  Maybe that's why they didn't either.  But I will bring that to the Court's attention, we have a protective order.  It's an agreement between the parties, and that agreement specifically says that we are allowed to keep the names and the personal information of class members under seal.

THE COURT:  You don't know the ECF number?

MR. DEJONG:  I do actually.  It's ECF 136, Your Honor.

THE COURT:  Okay.  That was, I assume, some time ago.

MR. DEJONG:  Your Honor, I had not recalled it because it was about four years ago and we had not used it, so I apologize.  But, yes, we do have a protective order in place that actually governs in this situation.

THE COURT:  Okay.

MR. DEJONG:  So I think that's number one.  I have yet to hear the prejudice to defendants if this information is made public.  We have already provided the information to the Government.  They have the sealed declaration; they know the name.  We've also provided that to Your Honor under seal.  The Government has not articulated any real reason why they need to file that publicly.  I don't want to speculate on why they want it to be made public, but there doesn't seem to be any real prejudice to them if, in fact, it is maintained under seal.

On the other hand, there is potential here, I would say pretty serious potential, of damage to this class member, retaliation.  There are allegations being made, as the Court is aware.  If those allegations are made public, whether they're true or not, it's damaging to that individual, potentially their family.  There's just no reason to keep that -- to make

that information be made public.  I think that's really -- to us, they haven't shown there's any real prejudice to them to proceeding, and there's significant prejudice to the class members if that information is made public.

THE COURT:  And by the allegations being made, you refer to the allegations of gang membership?

MR. DEJONG:  That's correct, Your Honor.  I will note they are allegations.  We don't -- I think a declaration was provided but there was no detail.  We don't -- we obviously are class counsel; we do not represent that person in their immigration proceedings or any of the actual -- with respect to the AEA allegations.  But they -- it's neither here nor there whether or not those are true for the purposes of this motion. If the Court -- there's just no reason why they need to make that information public unless it's sort of a media -- I don't want to speculate exactly what they're doing, but there's no real reason that they need to make it public.

THE COURT:  Let me ask, while we're talking about the declaration, something that I failed to ask you about earlier which was the Government's argument that the Settlement Agreement should be declared void as contrary to the public interest.

MR. DEJONG:  Your Honor, first off, as I recall -- well, let me step back.  We find that argument alarming when we literally entered into this agreement last year.  We were

sitting in this courtroom.  I was sitting here, and we all argued -- I argued, and the Government agreed that the terms were fair, reasonable, adequate.  And to have the Government turn around five months later and say it's void, is against public policy, I was surprised.

Now I will say that they also haven't met the bar needed to actually amend the order.  What they have cited to in their briefing are cases where a court would void a settlement agreement between private parties.  Those are not even court-ordered cases.  The law that applies here is Federal Rule of Civil Procedure 60.  They haven't come close to making -- or even attempted to make out why it should be void.  I don't -- they can't possibly suggest that something new has come up that would require voiding an agreement from five months ago.

So, Your Honor, I don't -- in our view, they haven't even come close to making out the standard to amend the agreement.

THE COURT:  Okay.  Thank you.  Are there any other topics you wanted to touch on?

MR. DEJONG:  I'll respond to any questions.  I would like the opportunity to respond, depending on what the Government says.

THE COURT:  Yes, I'll give you a rebuttal at the end.

MR. DEJONG:  Thank you, Your Honor.

THE COURT:  All right, thank you.  All right.

MS. DAVILA:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.  You may need to adjust the microphone too just so you're speaking into it as much as possible.

MS. DAVILA:  Is that good?  Can you hear me all right?

THE COURT:  Yes.

MS. DAVILA:  Wonderful.  Your Honor, any individual removed under the AEA is not a class member and even if they were a class member, this Settlement Agreement does not provide relief from removal under every conceivable possible removal under the United States Code.  Plaintiffs would have this Court read this Settlement Agreement entirely out of context, and pursuant to their own case law, this Court must review the terms of the contract consistent with the context and the circumstances by which the parties entered.  What were those circumstances here?

This case was filed in 2019 and the operative pleadings are all keyed to plaintiffs' challenges to the 2019 Redetermination Memorandum.  Every preliminary injunction, the class definition, the explicit terms of the Settlement Agreement itself, all of it are key to the interplay of jurisdiction between USCIS when it deals with an Unaccompanied Alien Child and the exclusive jurisdiction of the Immigration Court in Title 8 removal proceedings.  No other context was

relevant to the Settlement Agreement.  It was not pled in more than 200 entries on the docket in this litigation.

Moreover, Your Honor, the Settlement Agreement --

THE COURT:  Wait, I'm not sure I understand your argument.  Your argument is that they should have pled that the people couldn't be removed under the Alien Enemies Act?

MS. DAVILA:  Your Honor, my argument is that the Settlement Agreement specifically says that the settled claims are the claims for relief that were brought in the action on behalf of named plaintiffs and class members alleged in plaintiffs' complaint.  Plaintiffs' complaint only addresses the interplay between USCIS's initial jurisdiction and Title 8 removal proceedings.  That is the entire problem with the Redetermination Memo that was issued in 2019 that was rescinded as part of the Settlement Agreement and was replaced, in substantive part, by the 2013 Kim Memorandum which was the relief plaintiffs sought.  They received the full compliance, the full benefit that they sought in their operative pleadings.

The preliminary injunctions that were issued by this Court also speak to the same 2019 memorandum.  This Court cannot accept plaintiffs' argument today, months after the Settlement Agreement was entered and years after the litigation was commenced, to expand the scope to include every conceivable removal under the Immigration Act.  Again, the Court must read the contract within -- must read the terms within the context

and the circumstances of the case --

THE COURT:  But, again, it seems like you're suggesting they should have foreseen this type of removal which hasn't happened in decades.

MS. DAVILA:  No, Your Honor.  Plaintiff and the Government negotiated for relief that plaintiffs sought in their complaint, and their complaint only addressed the 2019 memorandum.  And, of course, that is why the Settlement Agreement says the settled claims were as plaintiffs' complaint alleges.  Moreover, it is the matters in dispute pursuant to Section I.I. that are addressed in the Settlement Agreement.

There were no disputes in 2019 or in 2024 about the AEA. We also didn't have a dispute --

THE COURT:  But no one knew that the AEA was in play until the day Cristian was removed, right?

MS. DAVILA:  Which is why in this very simple contract interpretation argument, the context simply cannot be expanded to include arguments and issues that were not contemplated by the parties when contracting.

By the same token, we did not contract about extradition under Title 18, although we can remove under Title 18 because that was not in any way part of the operative complaint or the parties' matters in dispute, and explicitly the Settlement Agreement says those are the only issues that are resolved by this contract.

Also, Your Honor, as to their argument on Section III.I., it's very important to keep in mind that the term "final removal order" doesn't have a plain meaning.  It has a different meaning and it's not clear to a layman what it is.  How it is interpreted very much is specific and technical.  And here that technical definition and meaning is given life by the 2019 Redetermination Memorandum which is specifically key to the interplay between 8 C.F.R. 208.2(b) which has to do with the exclusive jurisdiction --

THE COURT:  You might need to slow down a little bit.  I'm trying to keep up with you but it's a little difficult.

MS. DAVILA:  Yes, Your Honor.  The 2019 Redetermination Memorandum is key to 8 C.F.R. 208.2(b) which has to do with exclusive jurisdiction of the Immigration Court in Title 8 removal proceedings, and it addresses the interplay with 8 USC 1158(b)(3)(C) which has to do with the initial jurisdiction of USCIS when there is an Unaccompanied Alien Child.  That is the universe that the 2019 Redetermination Memorandum addressed.

And so that is the context in which the parties entered into the Settlement Agreement.  Consistent with *Wells* and *Empire Fire* and plaintiffs' own cases in *Southern Coal* and *Hensley*, the Court must look to the underlying litigation, the issues actually settled, the circumstances surrounding the foundation of the agreement, to give meaning to a word -- or

the phrase "final removal order".

THE COURT:  I want to go back to something you said earlier about extradition under Title 18.  I'm not sure I understood your point.  Was your point that even with the existing Settlement Agreement there are ways other than a Title 8 final removal order that persons, members of the class, could have been removed?

MS. DAVILA:  The Government's position is that the Settlement Agreement only addresses Title 8 in the context of UAC determinations.  It doesn't address every other conceivable removal under the United States Code.  That is why Title 50 was not negotiated between the parties, it was not addressed.  As plaintiffs have conceded, this is not a habeas case where they can challenge Title 50.  That is not this case.  This is a simple contract dispute.  This is not a habeas, there's not a constitutional claim.  The Court must interpret the contract within the context and the circumstances in which it was entered.

Additionally, the Court cannot look to extrinsic evidence to give those terms or the contract meaning, and that is because the parties agreed that this is the full and entire agreement.  It is the complete exclusive statement of terms.  Those terms, again, are set out by plaintiffs' own complaint and the matters in dispute pursuant to Section I.I. of the agreement.

There was no dispute about the Alien Enemies Act and that is not an accident.  That's simply not what this lawsuit was about when it was filed in 2019 or when it was settled in 2024.

Today it's still not about that.  If plaintiffs have a challenge to the AEA, a designation, a determination as to someone's corrected designation under AEA, that is a habeas suit and that is not a motion to enforce this contract.

The Government's position --

THE COURT:  Can I ask you some questions along the lines of what I posed to class counsel about number of class members, whether some of them are proceeding through this process?  Because at this point the scope of individuals who could potentially be in this class is fixed -- right? -- because they would have had to have filed their asylum applications by now under the terms of the settlement?

MS. DAVILA:  That's correct, Your Honor.

THE COURT:  So at this point, the numbers should not be growing at any point; they should only be shrinking based on whether asylum applications are adjudicated by USCIS?

MS. DAVILA:  That's correct, Your Honor.  To respond to the Court's questions earlier, asylum adjudications for UACs for class members and for all individuals continue.  There hasn't been any stop to adjudications.  What we will say is that the President on March 15th did invoke Title 50 and

pursuant to that title, individuals designated as -- under AEA, there is a determination that they are not eligible for any relief and may not be residents of the United States --

THE COURT:  But why can't USCIS just adjudicate their applications then and avoid this whole issue?  The Settlement Agreement here doesn't promise result.  It simply promises process.

MS. DAVILA:  CIS is unable to adjudicate on the merits which is what is required by a settlement agreement because upon designation, an individual is not eligible for any relief for removal, and that is the President's prerogative. That is --

THE COURT:  But one of the possible outcomes is an adjudication that says you're ineligible for asylum, right? That's something that USCIS can do.

MS. DAVILA:  Your Honor, the Settlement Agreement says adjudication on the merits which CIS cannot grant or deny on the merits after a Title 50 designation.  What happens to the asylum application is very similar to a moot habeas claim that this Court might receive from a detained individual.  Once that detained individual following the removal order is actually removed from the United States, this Court would lose jurisdiction --

THE COURT:  Once they're removed, you can't adjudicate it, but while they're still here, they could be

adjudicated on the merits, correct?

MS. DAVILA:  In Cristian's case, the designation and the removal all occurred before there was a dispute with opposing counsel.  So there is no room to say could USCIS have adjudicated.  Upon designation, it was not an asylum application that could be resolved on the merits.

Could CIS close the asylum application?  It can but it cannot adjudicate on the merits, and the Government's position is that the moment he was designated under the AEA, he also ceased to be a class member for which none of the relief of the Settlement Agreement benefits him.

THE COURT:  How did he cease to be a class member?  It hadn't been adjudicated on the merits.  AEA isn't mentioned in the agreement.  What removed him?  There's four criteria.  What removed him from being a class member?

MS. DAVILA:  Your Honor, the Government's position is that prong 4 could not be met once he was determined to be subject to the AEA --

THE COURT:  But what in the agreement says it has to be feasible that the prongs be met?  I don't understand what text -- as you keep saying, this is a contract case, I'm construing the text.  What text removes Cristian from the four-pronged class membership?

MS. DAVILA:  Your Honor, prong 4 says "for whom USCIS has not adjudicated the individual's asylum application on the

merits."  Upon designation, USCIS could not adjudicate this individual's asylum application on the merits.  To accept plaintiffs' read of prong 4 would be to replace the word "has not adjudicated" to "cannot adjudicate" or "was not adjudicated."  This is written in the present tense.  That means the first three prongs were things that had to have happened before.  The fourth must continue for the adjudication to remain live with USCIS.

THE COURT:  But couldn't it also be true that he just -- assuming I accept your point that he's gone and there's nothing we can do, wouldn't he just remain a member of the class for life?  You never would have -- USCIS never would have adjudicated his application on the merits.  I don't understand how he would be removed from the class.

MS. DAVILA:  Because he does not meet the fourth prong, Your Honor.

THE COURT:  How does he not meet it?  USCIS -- you would agree with me USCIS has not adjudicated his application on the merits, correct?

MS. DAVILA:  No, Your Honor.  Cannot adjudicate his application --

THE COURT:  I'm not asking to change the language.  Would you agree with me that USCIS has not adjudicated his application on the merits?

MS. DAVILA:  Because it cannot, Your Honor --

THE COURT:  But -- is that a yes?  They have not adjudicated his application on the merits?

MS. DAVILA:  No, Your Honor.  Because our position is that it is not a condition that will someday be met which is what the fourth prong is written --

THE COURT:  Where does it say it someday will be met?  It doesn't say that.

MS. DAVILA:  It's written in the present tense, "has not."  What it would have to say for the fourth prong to be met now is cannot/may never adjudicate on the merits.  And that is a condition anybody who is designated under AEA falls into.

But, Your Honor, even if he is a class member, the relief in the Settlement Agreement does not benefit him because, again, it is key to the 2019 Redetermination Memo, and that has to do with removals under Title 8.  He was not removed under Title 8.  He was removed under Title 50, and any challenge to that sounds in habeas.  As counsel said in the briefing and said again today, this is not a habeas case.  So any challenge that he has, plaintiffs have the right to pursue a habeas challenge to that, a constitutional claim, or whatever they think they can pursue in his benefit.

But as to this very straightforward contract disagreement, the entire case for years was key to the 2019 Redetermination Memorandum.  The parties made no kind of limitations on other removals that the Government might have available to it.

Your Honor, as to the point on severance, the Government would like to make clear that our position is that individuals designated under the AEA are no longer class members.  As to the vast majority of individuals, that is not going to affect the Settlement Agreement.  The Settlement Agreement is enforceable.

However, if the Court were to expand the Settlement Agreement now to address every conceivable possible removal that the Government has at its disposal even though that wasn't litigated in this litigation, then our position is that Section III, which is the value of the Settlement Agreement, is now contrary to law.  Specifically because this Court has no jurisdiction to enjoin or limit the President's power under Section 50 -- under Title 50.  And to the extent that plaintiffs now seek to limit the AEA by virtue of this Settlement Agreement executed months before the proclamation in March, then the term has now become unenforceable and void.  We would ask --

THE COURT:  Where is the public policy -- what exactly is the public policy that you are arguing is the problem here?

MS. DAVILA:  Sure.  Pursuant to the President's Proclamation issued on March 15th, the public policy is the safety of the United States from Tren De Aragua members and the criminal enterprise of that group.  As plaintiffs have said

today and in the briefing, they don't challenge Cristian's designation.  To the extent that they would like to, that's another lawsuit --

THE COURT:  Right, and they're not challenging it here.  But wouldn't I have to have evidence of Cristian, or at least some class members' membership, in order to find in your favor on your public policy, slash, public safety argument here?  I'm understanding they are not challenging it; they don't have a burden to put forth any evidence about this.  But you are essentially mounting an affirmative defense in this contract case -- right? -- saying that this provision should be deemed void as contrary to public policy.  Isn't the burden on you to give me some evidence that some member of this class, whether it's Cristian or not, is a member of this gang and poses a threat?

MS. DAVILA:  Your Honor, the Government's position is that this is a contract dispute.  To the extent that Section III is now being read to limit Title 50, then our position is this Court has no jurisdiction.  That's not key to any individual.  That's key to the Supreme Court's determination in *J.G.G., Ludecke* --

THE COURT:  I'm talking about this as a contract case.  You're advancing an affirmative defense -- right? -- in a contract case.  How do I lack jurisdiction over the affirmative defense?  Wouldn't I need some evidence -- if I'm

going to consider it as a contract case with the defense that you're bringing, don't I -- it's your burden to show me something that allows me to assess it, right?  How do I lack jurisdiction over a defense that you're posing?

MS. DAVILA:  I think as a threshold matter, Your Honor, it's important to keep in mind that the parties agree that this Court has no jurisdiction to review an AEA designation, nor do plaintiffs challenge the AEA designation as to anybody in this litigation.  So we go back to *Ludecke*, *J.G.G.*, *Citizens Protective Leave*, all of the cases addressed in the Government's briefing in Section I of our brief that this Court lacks jurisdiction to limit the AEA in any way.

So if the Court is going to do that through the Settlement Agreement, then that portion of the Settlement Agreement is actually void and --

THE COURT:  I'm not saying I am going to do that. You, the Government is trying to assert an affirmative defense here.  You are trying to say:  You, Judge, should make a finding that this agreement or this portion of the agreement is contrary to public policy because this gang poses a risk of harm, et cetera, et cetera.  You're the one that's trying to bring those concepts in, and what I'm asking is:  Isn't it then your burden to give me evidence on that point?  Somehow linking this class of people who are part of this agreement to some sort of risk to public safety, some sort of public policy

violation?

I'm not saying they're trying to bring it in; I'm not trying to bring it in.  As far as I can see, it's the Government that's trying to bring it in, and it seems to me that puts some kind of burden on the Government to make some sort of showing if you want me to agree with your affirmative defense.

MS. DAVILA:  Our initial position, Your Honor, is that AEA designees are not members of this class, but if the Court were to disagree with that, is looking for evidence as to public safety, we would point directly to the President's Proclamation on March 15th which lays out in several pages the concerns about individuals who are members of TDA and the safety of the United States, and then we would point to the declaration of ICE concerning this individual that was filed in response to the motion to enforce.  Again --

THE COURT:  That declaration has very little information, if any.  It says we've found he is, but it doesn't say on what basis that finding was made.

MS. DAVILA:  Again, Your Honor, the parties negotiated and agreed that there would not be extrinsic evidence as to disputes in motions to enforce.  So we aren't here to debate even whether or not Cristian was properly designated under AEA.  That is a different lawsuit.  We are simply here to discuss whether or not there is a breach of a

contract.

The Government's threshold position is that there's no breach of the contract.  This is exactly the contract that the parties negotiated to revoke the 2019 Redetermination Memorandum, and they negotiated for that benefit to their class.  They have been receiving that benefit and even portions of it before the Settlement Agreement was entered in good faith negotiations.

Now their attempt to expand it into every possible removal, including Title 50, which has very little avenue for judicial review and is very much in the plenary powers of the President as part of his war powers and ability to govern foreign affairs --

THE COURT:  What other types of removal other than Title 50 and Title 18?  You keep referring to other types of removal.  Are there other sorts that are not, in your view, contemplated in this agreement?

MS. DAVILA:  Your Honor, top of my head, I can't point to any, but clearly nowhere in the pleadings and over 200 docket entries was anything other than Title 8 removal proceedings involving UAC's part of the matters in dispute. That is very important because Section I.I. of the agreement says that this is the resolution of matters in dispute, that the settled claims under I.R. are as pled in plaintiffs' complaint.  They did not plead that other removals should also

be swept in to this Settlement Agreement.  This is, under Section VIII.D., the entire agreement of the parties.  There is no additional extrinsic evidence of other things that the Court can consider.

If I can also point out, Section III.A. and B. make this really, really clear because the very first term of relief says USCIS will revoke the 2019 Redetermination Memorandum.  That's prong number 1.  The second is you will act in conformity with the Settlement Agreement.  Everything is key to the 2019 memorandum, and that is crucial to this case because that memorandum deals only with 8 C.F.R. 208.2(b), 8 U.S.C. 1158(b)(3)(C) and 8 C.F.R. 1208.2(b), all of which speak to this interlocking interplay of jurisdiction between USCIS and the exclusive jurisdiction of an Immigration Court under Title 8.

There is nothing else at issue.  There was nothing else at issue in the operative complaint, and there were no other injunctions issued by this Court during the four years of litigation.  This agreement was negotiated in good faith to cover the entirety of plaintiffs' concerns and that they wish to expand it months later for a proclamation that was not in place and of nobody's concern under the circumstances is really interesting given that the class benefits from this agreement, and now if the agreement is expanded to include issues that are not justiciable by this Court, then the agreement is contrary

to law and should be voided.

THE COURT:  All right.  Do you want to be heard on either pseudonyms or remedies if I find that the agreement should be enforced?

MS. DAVILA:  Yes, Your Honor.  As we pointed out in our briefing and I've repeated here today, this Court is without jurisdiction to review the question of anyone's designation under AEA and, by extension, order the return of anyone designated under AEA.  That is also not a term in any way covered in the Settlement Agreement.  Nowhere does the Settlement Agreement, by the way, mention that anybody will have to be returned.  Section V.D. says that once a dispute is flagged, then no one should be removed, but --

THE COURT:  They didn't have a chance to flag anything here.  He was removed the same day that the proclamation issued.

MS. DAVILA:  Your Honor, again, that's by operation of the proclamation which makes everyone designated ineligible for relief.  That is how Title 50 works.  That wasn't something that the parties negotiated in the Settlement Agreement to strip the President of, and our position is that we couldn't because that would be contrary to law.  We don't think the return of an individual can be ordered by this Court in this litigation.

As to other litigation, we're not going to offer any

comment on open litigation and briefing and decisions that are ongoing there. We will say the plaintiffs are free to file a habeas complaint or whatever claim they might think they have to address a return, but that doesn't fall within the four corners of this Settlement Agreement or in this litigation. Also we don't offer any views on scoping an order that, as a threshold matter, the Government considers to be beyond this Court's jurisdiction.

THE COURT: Okay.

MS. DAVILA: As to pseudonyms, Your Honor, may I have my co-counsel address that briefly?

THE COURT: Sure.

MR. INGEBRETSON: Thank you, Your Honor. Richard Ingebretson for defendants. Real quick, the defendants filed their opposition to the Motion to Proceed Under Pseudonym for their Motion to Enforce the Settlement Agreement, not the TRO but the arguments would largely align for the same. Namely, that plaintiffs haven't met the burden of the -- upon examination of the factors in *Jacobson* which is the test used to determine whether to proceed under pseudonym.

Beginning just to quickly address what plaintiffs brought up is that they mainly seem to focus on that the Government hasn't established any prejudice to the Government and that a protective order exists in here already. First, addressing prejudice to the Government, it's not so much that prejudice

may not exist to the Government, Your Honor, but that there is a presumption that proceedings are public and open and that in order to overcome that presumption, certain factors must be met.  And the Government's position is that those factors have been met here.

Secondly --

THE COURT:  So the Government isn't arguing that it is prejudiced; it is simply arguing that the factors haven't been met?

MR. INGEBRETSON:  Yes, Your Honor.  Furthermore, that in regard to the proposed protective order, notably while it doesn't -- it doesn't grant the specific class wide -- not class wide -- the specific broad relief.  Plaintiffs still bury burden under the terms of the protective order in order to proceed under pseudonym.  As I think you'll see in footnote 2 of our brief, of our opposition, which it does quote from the protective order and specifically notes that it does not confer blanket protection on all information and that it must seek leave from the Court before proceeding under pseudonym.

Quickly addressing the factors in *Jacobson*, there are five factors, Your Honor.  The first one is whether it is of nature that is sensitive and highly personal.  Plaintiffs appear to mainly -- and the courts that they cite to mainly look to the regulations which do specify that whether someone has applied for asylum should be kept confidential.  However, there

is specific exemptions in those regulations which permit disclosure to a tribunal in cases where the issue arises out of asylum.  The two regs specifically are 8 C.F.R. 28.6 and 1208.6.

Whether -- the other factors, whether identification poses risk of retaliatory harm to a requesting party.  Plaintiffs have alleged that harm is here and, specifically within Cristian's case in their Motion to Proceed Under Pseudonym to Enforce the Settlement Agreement, they provide a declaration. However, the declaration only speaks to broad alleged harms of national conversation and fear of if he were to be returned.

They also speak to concerns about retaliation --

THE COURT:  Wouldn't identifying these people as potential members of a gang that is certainly being widely discussed potentially subject them to retaliation, them or family members who may still be here?

MR. INGEBRETSON:  Again, Your Honor, the specific point here, though, is that the nature is tied to the asylum -- the fact that they filed an asylum application.

THE COURT:  The fact that there would be information in the public asserting that they were gang members, that wouldn't be tied specifically to the asylum application.  It seems to me that most of the cases that are habeas cases that are proceeding in courts around the country on these issues regarding removal under the Alien Enemies Act are proceeding

either under pseudonym or anonymously by use of initials, something to that effect.  Isn't it a similar type of analysis here?

MR. INGEBRETSON:  Our read of plaintiffs' motion, Your Honor, is it is tied to the fact in that the nature that is alleged is not that he's a member of TDA but rather that he filed for asylum.  And that was also the premise that was in discussions of the protective order.  That is the context in which the need to proceed under pseudonym arises.

The other factors outside of whether -- the final other factor for consideration is the age of the individual.  Here Cristian is of the age of 20.  Now plaintiffs have pointed to cases where a young adult can still proceed in pseudonym.  In those cases, I believe it was 18 or 19 years old of the individual, a year or two outside of the year of being a minor.  Cristian is of age 20 and a cut-off should occur at some point.

Moreover, his name is part of court proceedings already via his criminal conviction in Texas.  So his name is already out there in the public -- is already in other court proceedings.  Admittedly, not related to this one but is out there in the public.

For those reasons, Your Honor, we would urge the Court to deny the motions.

THE COURT:  All right, thank you.  Mr. DeJong.

MR. DEJONG:  Your Honor, I just have a few brief

points.  First off, Your Honor, we heard numerous times just now that it was a simple contract dispute, a contract dispute.  I heard it a number of times.  That in my view is a concession on this jurisdictional issue.  It seemed to be in agreement this is not a challenge under the AEA.

Second, they've said several times today and in the briefing that they're unable to proceed on the merits of this class member's asylum application because he's not entitled to asylum.  Your Honor, as I had said earlier, his application is actually still pending.

I will also point out that they have said this numerous times that the proclamation supposedly says that individuals are not entitled to asylum.  If we look at that, it's not there.  It doesn't say that in the proclamation.  I would point Your Honor -- it's ECF 227-2; that's the proclamation.  It doesn't say what they are saying it says now.  They're going further.  And perhaps there's another order that we don't see, but certainly there's no public order saying what they're saying.

Lastly, we've heard a lot today about the counsel recounted sort of the history of this litigation.  Your Honor, the Settlement Agreement is what it is.  This is the agreement they've entered into.  We're not expanding the litigation.  We're simply seeking as class counsel to enforce the agreement that the Government entered into.  How we got here, it's not a

here nor there at this point.  We have an agreement.  They never carved out certain types of removals.

And a core right under this agreement has always been that these class members have a right to have their asylum application adjudicated on the merits, and this state of removal is so that they're not removed while that right is being enforced --

THE COURT:  Let me ask you this.  The point the Government was making about extradition which is a different type of removal that was not mentioned.  How do you respond to that contention?

MR. DEJONG:  In our view, that clause precludes any sort of removal.  It's not limited to any type of removal.  If they had wanted to bargain for certain types of removals, they should have said so.  That's not what we agreed to.  It would completely undermine this idea that's built into the agreement that these class members have the right to have their asylum application adjudicated on the merits and not shipped somewhere else while that's happening.  That's a fundamental part of the agreement.  It has always been there.

I just have one point on the pseudonym motion.  Your Honor, I just take issue with the interpretation of the protective order.  We have a protective order in place.  It specifically calls out that names, addresses, date of births, those things can be maintained confidential.  They've already

agreed to this so we shouldn't be having this argument.  He should be allowed to proceed in pseudonym because his name should be maintained as public; they've already agreed to this.  Thank you, Your Honor.

THE COURT:  All right, thank you.  Unless anyone has anything else they want to put on the record today, I'm going to take this under advisement and issue a written order as soon as I can turn it around.

MR. DEJONG:  Thank you, Your Honor.

MS. DAVILA:  Thank you, Your Honor.

THE COURT:  All right, thank you-all.

THE CLERK:  All rise.  This Honorable Court is now adjourned for the day.

(Proceedings concluded at 2:32 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Patricia G. Mitchell, Registered Merit Reporter, Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 23rd day of April 2025.


*Patricia G. Mitchell*
_____
Patricia G. Mitchell, RMR, CRR
Federal Official Reporter

**< Dates >** .

**23rd day of April 2025.**
  45:10 .
**April 22, 2025**  1:18 .
**March 15th**  26:25, 34:12 .
**March 15th,**  31:23 .
**March,**  31:17 .
**May**  4:6 .
  .
  .
**< 0 >** .
**02210** 1:32 .
  .
  .
**< 1 >** .
**1** 1:19, 3:2, 36:8 .
**100** 1:31 .
**1100** 1:49 .
**1158(b)(3)(c** 24:16, 36:12 .
**1201** 1:41 .
**1208.2(b** 36:12 .
**1208.6** 40:4 .
**136** 18:2 .
**18** 23:21, 25:3, 35:15, 41:14 .
**19** 41:14 .
**1900** 1:36 .
  .
  .
**< 2 >** .
**2** 39:15, 44:14 .
**20** 41:12, 41:16 .
**200** 22:2, 35:19 .
**20036** 1:37, 1:42 .
**20044** 2:8, 2:14 .
**2013** 22:16 .
**2019** 21:18, 21:19, 22:14, 22:20,
  23:7, 23:12, 24:7, 24:12, 24:18,
  26:3, 30:14, 30:23, 35:4, 36:7,
  36:9 .
**2024** 23:12, 26:4 .
**20530** 1:50 .
**208.2(b** 24:8, 24:13, 36:11 .
**227** 4:1 .
**227-2** 42:15 .
**231** 4:2 .
**236** 4:2 .
**28** 45:5 .
**28.6** 40:3 .
**29** 3:2 .
  .

**.**
**< 3 >** .
**30** 1:19 .
**32** 44:14 .
  .
  .
**< 4 >** .
**4** 28:17, 28:24, 29:3 .
  .
  .
**< 5 >** .
**50** 25:11, 25:14, 26:25, 27:18,
  30:16, 31:14, 32:18, 35:10,
  35:15, 37:19 .
**5223** 2:7 .
**531** 1:41 .
  .
  .
**< 6 >** .
**60** 20:11 .
  .
  .
**< 7 >** .
**753** 45:5 .
**7C** 1:24 .
  .
  .
**< 8 >** .
**8** 12:21, 13:2, 13:16, 21:25, 22:12,
  24:8, 24:13, 24:15, 24:16, 25:6,
  25:9, 30:15, 30:16, 35:20,
  36:11, 36:12, 36:15, 40:3 .
**868** 2:13 .
**8:** 1:10 .
  .
  .
**< 9 >** .
**9-cv-01944-sag** 1:10 .
  .
  .
**< A >** .
**A.** 36:5 .
**ability** 11:18, 11:21, 12:3,
  35:12 .
**able** 4:11, 4:20, 8:5 .
**above-entitled** 45:7 .
**Abrego** 13:20, 15:23, 17:5,
  17:14 .
**accept** 22:21, 29:2, 29:10 .
**access** 14:7, 14:10 .

**accident** 26:2 .
**according** 10:20 .
**acknowledge** 17:5 .
**Act** 22:6, 22:24, 26:1, 36:8,
  40:25 .
**action** 22:9 .
**actual** 8:12, 9:13, 19:11 .
**actually** 17:18, 18:2, 18:9, 20:7,
  24:24, 27:22, 33:15,
  42:10 .
**additional** 16:22, 36:3 .
**Additionally** 25:19 .
**address** 4:23, 6:11, 8:1, 14:13,
  15:17, 15:20, 16:4, 25:10, 31:8,
  38:4, 38:11, 38:21 .
**addressed** 15:6, 23:7, 23:11,
  24:19, 25:12, 33:10 .
**addresses** 22:11, 24:15, 25:9,
  43:24 .
**addressing** 38:24, 39:20 .
**adequate** 20:3 .
**adjourned** 44:13 .
**adjudicate** 4:24, 10:13, 11:18,
  11:22, 27:4, 27:8, 27:25, 28:8,
  29:1, 29:4, 29:20, 30:10 .
**adjudicated** 5:23, 5:25, 9:22, 10:7,
  10:9, 10:14, 10:22, 12:2, 14:6,
  14:9, 26:20, 28:1, 28:5, 28:13,
  28:25, 29:4, 29:13, 29:18,
  29:23, 30:2, 43:5, 43:18 .
**adjudicated.** 29:5 .
**adjudication** 4:17, 27:14, 27:17,
  29:7 .
**adjudications** 10:24, 26:22,
  26:24 .
**adjust** 21:2 .
**administrative** 15:7 .
**Admittedly** 41:20 .
**adult** 41:13 .
**advancing** 32:23 .
**advised** 7:16 .
**advisement** 44:7 .
**AEA** 6:23, 6:24, 7:2, 7:9, 9:4, 9:6,
  9:8, 19:12, 21:9, 23:12, 23:14,
  26:6, 26:7, 27:1, 28:9, 28:13,
  28:18, 30:11, 31:3, 31:15, 33:7,
  33:8, 33:12, 34:9, 34:24, 37:8,
  37:9, 42:5 .
**affairs** 35:13 .
**affect** 31:4 .

**affirmative** 32:10, 32:23, 32:25,
  33:17, 34:6 .
**afternoon** 3:3, 3:8, 3:11, 3:13, 3:18,
  3:19, 3:23, 4:4, 4:8, 4:23, 21:1,
  21:2 .
**age** 41:11, 41:12, 41:16 .
**ago** 5:4, 5:18, 18:5, 18:7,
  20:14 .
**agree** 29:18, 29:23, 33:6,
  34:6 .
**agreed** 6:6, 11:22, 20:2, 25:21,
  34:21, 43:15, 44:1, 44:3 .
**agreement.** 12:13 .
**al** 1:5, 1:11, 3:4 .
**alarming** 19:24 .
**Alien** 21:24, 22:6, 24:17, 26:1,
  40:25 .
**align** 38:17 .
**allegations** 9:10, 18:22, 18:23,
  19:5, 19:6, 19:8, 19:12 .
**alleged** 22:10, 40:7, 40:10,
  41:6 .
**alleges** 23:10 .
**allow** 4:23 .
**allowed** 14:5, 17:24, 44:2 .
**allows** 33:3 .
**alone** 11:23 .
**already** 6:2, 18:13, 38:24, 41:17,
  41:18, 41:19, 43:25, 44:3 .
**although** 23:21 .
**amend** 20:7, 20:16 .
**among** 5:22 .
**amongst** 7:24 .
**analysis** 41:2 .
**anonymously** 41:1 .
**answer** 8:23, 8:25 .
**anybody** 30:11, 33:9, 37:11 .
**apologize** 17:19, 18:8 .
**appear** 39:22 .
**applications** 10:13, 14:4, 26:16,
  26:20, 27:5 .
**applied** 39:25 .
**applies** 20:10 .
**appreciate** 4:25, 8:24 .
**appropriate** 15:18, 15:19,
  16:25 .
**Approval** 5:5, 5:19, 6:16 .
**Aragua** 31:24 .
**argue** 4:13, 15:3 .
**argued** 6:21, 20:2 .

arguing 6:23, 7:10, 9:4, 9:25, 11:17, 12:25, 13:16, 31:20, 39:7, 39:8 .
argument 3:24, 4:23, 5:1, 6:11, 10:4, 12:17, 19:20, 19:24, 22:5, 22:7, 22:21, 23:17, 24:1, 32:7, 44:1 .
arguments 14:13, 23:18, 38:17 .
arises 40:2, 41:9 .
around 20:4, 40:24, 44:8 .
articulated 18:16 .
aside 11:18 .
assert 33:17 .
asserting 40:21 .
assess 33:3 .
assume 4:18, 18:4 .
assuming 29:10 .
attempt 35:9 .
attempted 20:12 .
attention 17:22 .
audio. 5:14 .
avail 15:5 .
available 30:25 .
Ave. 1:31, 1:41 .
avenue 35:10 .
avoid 27:5 .
awaiting 16:22 .
aware 7:10, 8:1, 9:20, 11:8, 11:12, 13:21, 15:22, 15:25, 18:23 .
.
.
< B > .
B. 36:5 .
back 7:12, 19:24, 25:2, 33:9 .
Baltimore 1:17 .
bar 20:6 .
bargain 43:14 .
based 26:19 .
basis 9:6, 13:4, 13:23, 34:19 .
become 7:16, 8:1, 11:11, 31:17 .
Bedestani 2:3, 3:22 .
Beginning 38:21 .
behalf 3:9, 3:20, 22:10 .
believe 10:1, 41:14 .
Ben 2:13 .
bend 5:9, 5:11 .
benefit 22:18, 30:13, 30:21, 35:5,

35:6 .
benefits 28:11, 36:23 .
best 5:13, 10:12 .
better 5:12 .
beyond 38:7 .
births 43:24 .
bit 24:10 .
Blais 1:29, 3:16 .
blanket 39:18 .
Boston 1:32 .
Box 2:13 .
breach 34:25, 35:3 .
Brian 1:34, 3:11 .
brief 17:17, 33:11, 39:16, 41:25 .
briefing 20:8, 30:17, 32:1, 33:11, 37:6, 38:1, 42:7 .
briefly 38:11 .
briefs 17:11 .
bring 17:21, 33:22, 34:2, 34:3, 34:4 .
bringing 33:2 .
broad 13:11, 13:24, 15:16, 39:13, 40:10 .
broader 13:3, 14:19, 14:20 .
brought 17:20, 22:9, 38:21 .
bubbling 8:5 .
built 43:16 .
burden 32:9, 32:12, 33:2, 33:23, 34:5, 38:18, 39:14 .
Burgess 1:34, 3:11, 3:12 .
bury 39:13 .
.
.
< C > .
C. 36:11, 45:5 .
calls 43:24 .
candid 10:2 .
cannot/may 30:10 .
carved 43:2 .
Case 3:5, 7:5, 7:7, 7:15, 13:21, 15:22, 16:15, 17:5, 21:14, 21:18, 23:1, 25:13, 25:14, 28:2, 28:21, 30:18, 30:23, 32:11, 32:23, 32:24, 33:1, 36:10, 40:8 .
cases 8:14, 20:8, 20:10, 24:22, 33:10, 40:2, 40:23, 41:13, 41:14 .
causing 14:3 .

cease 28:12 .
ceased 28:10 .
certain 5:6, 5:20, 15:4, 39:3, 43:2, 43:14 .
certainly 4:15, 14:20, 16:5, 16:10, 40:14, 42:18 .
CERTIFICATE 45:1 .
Certified 45:3 .
certify 45:4 .
cetera 33:21 .
challenge 25:14, 26:6, 30:16, 30:18, 30:20, 32:1, 33:8, 42:5 .
challenges 7:8, 21:19 .
challenging 9:7, 14:2, 32:4, 32:8 .
chance 4:9, 37:14 .
change 29:22 .
changing 11:20 .
Child 21:24, 24:18 .
children 5:21 .
Circuit 16:10, 17:12 .
circumstances 13:25, 16:15, 21:16, 21:17, 23:1, 24:24, 25:17, 36:22 .
CIS 27:8, 27:17, 28:7 .
cite 39:23 .
cited 20:7 .
Citizens 33:10 .
Civil 1:9, 1:47, 2:4, 2:11, 20:11 .
claim 6:22, 25:16, 27:19, 30:20, 38:3 .
claims 22:8, 22:9, 23:9, 35:24 .
clause 12:7, 12:20, 13:3, 13:4, 13:8, 43:12 .
clear 6:17, 7:7, 8:12, 10:21, 11:23, 14:22, 17:12, 24:4, 31:2, 36:6 .
clearly 35:19 .
CLERK 44:12 .
close 20:11, 20:16, 28:7 .
closure 15:7 .
co-counsel 3:10, 3:21, 7:24, 11:7, 38:11 .
Coal 24:22 .
Code 21:12, 25:11 .
comes 13:9 .
commenced 22:23 .

comment 38:1 .
common 14:12 .
complaining 13:13 .
complaint 22:11, 23:7, 23:9, 23:22, 25:23, 35:25, 36:17, 38:3 .
complete 25:22 .
completely 17:18, 43:16 .
compliance 22:17 .
comply 6:20 .
comprehensive 7:14 .
Computer-aided 2:19 .
conceded 25:13 .
conceivable 21:11, 22:23, 25:10, 31:8 .
concept 15:11 .
concepts 33:22 .
concern 36:22 .
concerning 34:15 .
concerns 34:13, 36:20, 40:12 .
concession 42:3 .
concluded 44:14 .
condition 30:4, 30:11 .
confer 39:17 .
confer. 11:6 .
Conference 10:2, 45:9 .
conferred 4:8 .
confidential 39:25, 43:25 .
confinement 7:9 .
conformance 45:8 .
conformity 36:8 .
Connecticut 1:41 .
consider 4:22, 33:1, 36:4 .
consideration 41:11 .
considers 38:7 .
Consistent 21:15, 24:21 .
constitutional 25:16, 30:20 .
construing 28:22 .
contacted 8:16 .
contemplated 23:19, 35:17 .
contention 43:11 .
context 13:24, 14:10, 14:22, 15:8, 21:13, 21:15, 21:25, 22:25, 23:17, 24:20, 25:9, 25:17, 41:8 .
continuance 15:7 .
Continue 9:2, 26:23, 29:7 .
Continued 2:1 .
continuing 10:13, 10:25, 11:9, 15:25 .

contract 21:15, 22:25, 23:17, 23:20, 23:25, 25:15, 25:16, 25:20, 26:8, 28:21, 30:22, 32:11, 32:17, 32:22, 32:24, 33:1, 35:1, 35:3, 42:2 .
contracting 23:19 .
contrary 12:6, 19:21, 31:12, 32:12, 33:20, 36:25, 37:22 .
controlling 7:5, 16:10 .
controls 13:24 .
conversation 40:11 .
conviction 41:18 .
core 43:3 .
corners 38:5 .
correct 8:19, 11:19, 19:7, 26:17, 26:21, 28:1, 29:19, 45:6 .
corrected 26:7 .
Counsel 3:6, 3:25, 7:16, 7:20, 8:12, 8:13, 8:23, 11:3, 11:6, 14:7, 14:10, 16:19, 16:23, 19:10, 26:11, 28:4, 30:17, 42:20, 42:24 .
country 40:24 .
course 4:13, 6:1, 6:7, 23:8 .
court-ordered 20:10 .
Courtroom 1:24, 20:1 .
courts 39:23, 40:24 .
cover 36:20 .
covered 37:10 .
criminal 31:25, 41:18 .
Cristian 6:2, 7:21, 8:15, 9:14, 10:10, 10:20, 11:10, 11:23, 16:3, 23:15, 28:2, 28:22, 32:1, 32:5, 32:14, 34:23, 40:8, 41:12, 41:16 .
criteria 9:19, 28:14 .
CRR 45:16 .
crucial 36:10 .
current 10:24 .
cut-off 41:16 .

< D > .
D. 13:8, 36:2, 37:12 .
damage 18:21 .
damaging 18:24 .
date 43:24 .
Dated 45:10 .
day 23:15, 37:15, 44:13 .
DC 1:37, 1:42, 1:50, 2:8, 2:14 .

De 31:24 .
deals 21:23, 36:11 .
debate 34:23 .
decades 23:4 .
decisions 38:1 .
declaration 18:14, 19:8, 19:19, 34:15, 34:17, 40:9, 40:10 .
declared 19:21 .
deemed 32:12 .
defeat 9:5 .
Defendants 1:13, 1:44, 2:1, 3:20, 18:12, 38:14 .
defendants. 13:15 .
defense 32:10, 32:23, 32:25, 33:1, 33:4, 33:17, 34:7 .
defer 4:12 .
definition 9:16, 10:6, 11:16, 11:20, 12:6, 21:21, 24:6 .
deny 27:17, 41:23 .
Department 1:10, 1:47, 2:4, 2:11, 3:4, 3:20 .
depending 20:20 .
designated 27:1, 28:9, 30:11, 31:3, 34:24, 37:9, 37:18 .
designation 26:6, 26:7, 27:10, 27:18, 28:2, 28:5, 29:1, 32:2, 33:8, 37:8 .
designees 34:9 .
detail 19:9 .
details 8:4 .
detained 27:20, 27:21 .
determination 12:12, 12:14, 26:6, 27:2, 32:21 .
determinations 25:10 .
determine 38:20 .
determined 28:17 .
different 14:15, 15:1, 16:15, 24:4, 34:24, 43:9 .
difficult 24:11 .
directly 5:10, 34:11 .
disagree 10:5, 34:10 .
disagreement 30:22 .
disclosure 40:2 .
discuss 34:25 .
discussed 7:13, 40:15 .
Discussion 4:3, 5:14 .
discussions 41:8 .
disposal 31:9 .
dispute 6:17, 10:3, 10:9, 23:10, 23:13, 23:23, 25:15, 25:24,

26:1, 28:3, 32:17, 35:21, 35:23, 37:12, 42:2 .
disputes 23:12, 34:22 .
disputing 9:21 .
District 1:1, 1:2, 2:6, 15:22, 45:4 .
DIVISION 1:3 .
docket 22:2, 35:20 .
doing 11:25, 15:2, 19:16 .
down 17:8, 24:10 .
during 36:18 .

< E > .
E. 9:17 .
earlier 19:19, 25:3, 26:22, 42:9 .
ECF 4:1, 4:2, 18:1, 18:2, 42:15 .
effect 41:2 .
either 8:11, 17:20, 17:21, 37:3, 41:1 .
El 6:3, 11:10 .
Elaine 1:29, 3:16 .
element 9:22 .
eligible 27:2, 27:10 .
elsewhere 9:9 .
email 7:25 .
Emergency 3:25 .
Empire 24:22 .
end 20:23 .
Enemies 22:6, 26:1, 40:25 .
Enforce 3:25, 6:4, 6:5, 6:18, 6:19, 7:1, 13:9, 26:8, 34:16, 34:22, 38:16, 40:9, 42:24 .
enforceable 31:6 .
enforced 37:4, 43:7 .
enjoin 31:13 .
enough 11:23 .
ensuring 15:2 .
enter 16:24 .
entered 19:25, 21:16, 22:22, 24:20, 25:18, 35:7, 42:23, 42:25 .
entering 4:18 .
enterprise 31:25 .
entertaining 4:22 .
entire 22:13, 25:21, 30:23, 36:2 .
entirely 21:13 .
entirety 36:20 .

entitled 42:8, 42:13 .
entries 22:2, 35:20 .
Erhan 2:3, 3:22 .
Esquire 1:28, 1:29, 1:34, 1:39, 1:46, 2:3, 2:10 .
essentially 32:10 .
established 38:23 .
et 1:5, 1:11, 3:4, 33:21 .
everyone 3:3, 4:16, 37:18 .
Everything 4:24, 36:9 .
evidence 25:19, 32:5, 32:9, 32:13, 32:25, 33:23, 34:10, 34:22, 36:3 .
exactly 19:16, 31:20, 35:3 .
examination 38:19 .
exclusive 6:13, 21:24, 24:9, 24:14, 25:22, 36:14 .
executed 31:16 .
executing 12:10 .
exemptions 40:1 .
exist 39:1 .
existing 25:5 .
exists 38:24 .
expand 22:23, 31:7, 35:9, 36:21 .
expanded 23:18, 36:24 .
expanding 42:23 .
expect 9:9 .
explicit 6:13, 7:1, 21:21 .
explicitly 23:23 .
extension 37:8 .
extent 4:22, 17:9, 31:14, 32:2, 32:17 .
extradition 23:20, 25:3, 43:9 .
extrinsic 25:19, 34:21, 36:3 .

< F > .
facilitate 13:20, 16:2, 16:13, 16:21, 17:13 .
fact 4:9, 6:19, 7:6, 8:24, 11:8, 11:19, 12:23, 17:13, 18:19, 40:19, 40:20, 41:5 .
factor 41:11 .
factors 38:19, 39:3, 39:4, 39:8, 39:20, 39:21, 40:5, 41:10 .
facts 10:9 .
factual 7:12 .
failed 19:19 .
fair 20:3 .

**faith** 35:7, 36:19 .
**fall** 38:4 .
**falls** 6:24, 10:6, 30:11 .
**family** 14:11, 18:25, 40:16 .
**far** 8:20, 34:3 .
**favor** 13:15, 32:7 .
**fear** 40:11 .
**feasible** 28:20 .
**Federal** 20:10, 45:17 .
**feel** 4:21 .
**few** 41:25 .
**figure** 10:19, 17:11 .
**file** 4:10, 4:11, 14:25, 18:17, 38:2 .
**filed** 21:18, 26:3, 26:15, 34:15, 38:14, 40:19, 41:7 .
**Final** 5:5, 5:19, 6:16, 12:10, 12:11, 12:14, 12:17, 12:18, 12:24, 13:18, 15:13, 24:2, 25:1, 25:6, 41:10 .
**find** 10:4, 19:24, 32:6, 37:3 .
**finding** 33:19, 34:19 .
**Fire** 24:22 .
**First** 3:25, 4:5, 6:12, 9:16, 17:17, 19:23, 29:6, 36:6, 38:24, 39:21, 42:1 .
**five** 5:4, 5:18, 20:4, 20:14, 39:20 .
**fixed** 26:14 .
**flag** 37:14 .
**flagged** 37:13 .
**flexible** 5:11 .
**focus** 38:22 .
**following** 27:21 .
**footnote** 39:15 .
**force** 4:18, 13:13 .
**foregoing** 45:5 .
**foreign** 35:13 .
**foremost** 6:12 .
**foreseen** 23:3 .
**format** 45:8 .
**forth** 9:16, 32:9 .
**found** 34:18 .
**foundation** 24:25 .
**four** 9:19, 18:7, 28:14, 36:18, 38:4 .
**four-pronged** 28:23 .
**Fourth** 9:22, 16:10, 17:12, 29:7, 29:15, 30:5, 30:9 .
**Franklin** 2:13 .

**free** 38:2 .
**full** 8:8, 22:17, 22:18, 25:21 .
**fundamental** 43:19 .

.

.

**< G >** .
**G.** 1:46, 7:5, 32:21, 33:10, 45:2, 45:16 .
**gang** 19:6, 32:14, 33:20, 40:14, 40:21 .
**Garcia** 13:20, 15:23, 17:5, 17:14 .
**gave** 10:2 .
**general** 4:3 .
**generally** 10:23 .
**getting** 8:4 .
**give** 8:25, 20:22, 24:25, 25:20, 32:13, 33:23 .
**given** 24:6, 36:23 .
**Goodwin** 1:30, 1:35, 3:9, 3:12, 3:16 .
**govern** 35:12 .
**governs** 18:9 .
**grant** 27:17, 39:12 .
**granted** 9:5 .
**Great** 5:17 .
**group** 31:25 .
**growing** 26:19 .
**guess** 4:15, 9:3, 10:23, 16:22 .
**guidance** 16:22 .

.

.

**< H >** .
**H.** 14:22 .
**habeas** 6:22, 6:25, 25:13, 25:15, 26:7, 27:19, 30:17, 30:18, 30:19, 38:3, 40:23 .
**hand** 18:20 .
**happened** 23:4, 29:7 .
**happening** 14:1, 43:19 .
**happens** 27:18 .
**happy** 4:4, 15:17 .
**hard** 16:7 .
**harm** 33:21, 40:6, 40:7 .
**harms** 40:10 .
**head** 35:18 .
**hear** 3:24, 18:12, 21:5 .
**heard** 37:2, 42:1, 42:3, 42:20 .
**HEARING** 1:22, 10:17 .
**heavily** 7:4 .

**held** 45:7 .
**helpful** 11:14 .
**Hensley** 24:23 .
**hereby** 45:4 .
**highly** 39:22 .
**history** 42:21 .
**Homeland** 1:10, 3:5, 3:20 .
**Honorable** 1:23, 44:12 .
**hook** 10:4 .

.

.

**< I >** .
**I.** 12:9, 15:10, 15:13, 23:11, 24:1, 25:24, 35:22 .
**ICE** 3:21, 12:10, 12:13, 15:2, 34:15 .
**idea** 43:16 .
**identification** 40:5 .
**identified** 7:23 .
**identify** 3:6, 7:20 .
**identifying** 40:13 .
**ignored** 17:18 .
**ignoring** 11:25 .
**II** 9:17 .
**III** 12:9, 14:22, 15:10, 15:13, 24:1, 31:11, 32:18, 36:5 .
**Immigration** 1:40, 1:48, 2:5, 2:12, 3:14, 8:12, 13:1, 14:18, 14:24, 15:1, 15:9, 15:14, 19:11, 21:24, 22:24, 24:14, 36:14 .
**implied** 7:8 .
**import** 15:11 .
**important** 6:6, 24:2, 33:6, 35:22 .
**in.** 34:3 .
**include** 22:23, 23:18, 36:24 .
**includes** 7:25, 13:11 .
**Including** 5:22, 35:10 .
**individual** 8:13, 9:23, 10:8, 16:11, 16:14, 18:24, 21:8, 27:10, 27:20, 27:21, 28:25, 29:2, 32:20, 34:15, 37:23, 41:11, 41:15 .
**individuals** 7:20, 8:21, 8:22, 9:18, 26:13, 26:23, 27:1, 31:2, 31:4, 34:13, 42:12 .
**ineligible** 14:11, 27:14, 37:18 .
**information** 17:24, 18:12, 18:13, 19:1, 19:4, 19:15, 34:18, 39:18, 40:20 .

**informed** 11:8 .
**Ingebretsen** 2:10, 3:22 .
**INGEBRETSON** 38:13, 38:14, 39:10, 40:17, 41:4 .
**initial** 15:3, 22:12, 24:16, 34:8 .
**initials** 41:1 .
**initiated** 13:13 .
**injunction** 21:20 .
**injunctions** 22:19, 36:18 .
**instant** 9:5 .
**instead** 4:11 .
**interest** 19:22 .
**interesting** 36:23 .
**interim** 4:16 .
**interlocking** 14:16, 36:13 .
**interplay** 21:22, 22:12, 24:8, 24:15, 36:13 .
**interpret** 17:11, 25:16 .
**interpretation** 13:19, 23:17, 43:22 .
**interpreted** 24:5 .
**interpreting** 12:6 .
**interviews** 11:9, 11:12 .
**introduce** 3:10 .
**invalidity** 7:8 .
**invoke** 26:25 .
**involve** 7:6 .
**involving** 35:21 .
**issue** 4:11, 4:12, 4:15, 6:4, 7:7, 7:11, 7:16, 8:3, 9:13, 12:4, 12:8, 14:19, 15:6, 16:4, 16:13, 16:14, 16:15, 17:10, 27:5, 36:16, 36:17, 40:2, 42:4, 43:22, 44:7 .
**issued** 22:14, 22:19, 31:23, 36:18, 37:16 .
**issues** 6:7, 6:10, 8:4, 9:8, 12:11, 12:14, 17:1, 17:6, 23:18, 23:24, 24:24, 36:24, 40:24 .
**issuing** 17:8 .
**itself** 6:15, 7:23, 21:22 .

.

.

**< J >** .
**J.** 1:28 .
**Jacobson** 38:19, 39:20 .
**Javier** 8:16 .
**joined** 3:21 .
**Judge** 13:2, 33:18 .

**Judicial** 35:11, 45:8 .
**jurisdiction** 6:12, 6:14, 6:22, 14:4, 15:3, 21:23, 21:24, 22:12, 24:9, 24:14, 24:17, 27:23, 31:13, 32:19, 32:24, 33:4, 33:7, 33:12, 36:13, 36:14, 37:7, 38:8 .
**jurisdictional** 42:4 .
**Justice** 1:47, 2:4, 2:11 .
**justiciable** 36:25 .
.
.
**< K >** .
**keep** 17:17, 17:24, 18:25, 24:2, 24:11, 28:21, 33:6, 35:15 .
**kept** 39:25 .
**Kevin** 1:28, 3:9 .
**key** 21:22, 24:7, 24:13, 30:14, 30:23, 32:19, 32:20, 36:9 .
**keyed** 21:19 .
**Kilmar** 13:20, 15:22, 17:5, 17:14 .
**Kim** 22:16 .
**kind** 5:9, 30:24, 34:5 .
**knowing** 11:1 .
.
.
**< L >** .
**lack** 6:12, 6:21, 14:4, 32:24, 33:3 .
**lacks** 33:12 .
**language** 10:5, 13:1, 13:2, 13:11, 15:10, 16:24, 29:22 .
**large** 7:2 .
**largely** 38:17 .
**last** 8:5, 8:18, 10:1, 11:13, 19:25 .
**Lastly** 42:20 .
**later** 4:19, 20:4, 36:21 .
**law** 16:10, 20:10, 21:14, 31:12, 37:1, 37:22 .
**lawsuit** 26:2, 32:3, 34:24 .
**layman** 24:4 .
**lays** 34:12 .
**learned** 8:15, 8:16, 8:20 .
**least** 4:10, 6:1, 16:12, 32:6 .
**Leave** 33:10, 39:19 .
**levels** 16:21 .
**life** 24:6, 29:12 .
**limit** 13:1, 13:5, 13:12, 13:15, 13:18, 31:13, 31:15, 32:18,

33:12 .
**limitation** 15:14 .
**limitations** 30:24 .
**limited** 12:19, 14:20, 43:13 .
**limiting** 12:21, 15:12 .
**lines** 26:11 .
**linking** 33:23 .
**list** 7:15, 8:8, 9:19 .
**listservs** 7:25 .
**literally** 8:8, 19:25 .
**litigated** 9:8, 16:1, 31:10 .
**Litigation** 1:48, 2:5, 2:12, 7:11, 14:2, 16:20, 22:2, 22:22, 24:23, 31:10, 33:9, 36:19, 37:24, 37:25, 38:1, 38:5, 42:21, 42:23 .
**little** 5:10, 5:15, 14:9, 24:10, 24:11, 34:17, 35:10 .
**live** 29:8 .
**LLP** 1:30, 1:35 .
**longer** 12:25, 31:3 .
**look** 10:7, 10:18, 13:25, 14:15, 14:16, 24:23, 25:19, 39:23, 42:13 .
**looked** 10:17 .
**looking** 34:10 .
**lose** 27:22 .
**lot** 42:20 .
**louder** 5:15 .
**Ludecke** 32:21, 33:9 .
.
.
**< M >** .
**MA** 1:32 .
**mainly** 38:22, 39:23 .
**maintain** 9:10 .
**maintained** 18:19, 43:25, 44:3 .
**majority** 31:4 .
**Maryland** 1:2, 1:17, 45:4 .
**matter** 4:19, 13:14, 33:5, 38:7, 45:7 .
**matters** 23:10, 23:23, 25:24, 35:21, 35:23 .
**meaning** 13:23, 13:24, 24:3, 24:4, 24:6, 24:25, 25:20 .
**means** 14:8, 16:21, 17:8, 29:6 .
**mechanism** 7:19, 7:22 .
**media** 19:15 .

**meet** 9:19, 29:15, 29:17 .
**Member** 6:1, 6:8, 6:24, 7:17, 7:19, 9:7, 9:14, 9:16, 10:6, 10:18, 11:24, 12:9, 12:11, 12:13, 13:13, 15:4, 15:5, 16:14, 18:21, 21:9, 21:10, 28:10, 28:12, 28:15, 29:11, 30:12, 32:13, 32:14, 41:6, 42:8 .
**members** 7:2, 7:3, 7:15, 9:6, 10:14, 11:9, 11:11, 12:1, 14:3, 14:5, 14:8, 14:17, 17:25, 19:4, 22:10, 25:6, 26:12, 26:23, 31:3, 31:24, 32:6, 34:9, 34:13, 40:14, 40:16, 40:21, 43:4, 43:17 .
**membership** 19:6, 28:23, 32:6 .
**Memo** 22:14, 30:14 .
**Memorandum** 21:20, 22:16, 22:20, 23:8, 24:7, 24:13, 24:19, 30:24, 35:5, 36:7, 36:10, 36:11 .
**MENDEZ** 1:39, 3:13, 3:14, 11:5 .
**mention** 37:11 .
**mentioned** 28:13, 43:10 .
**merely** 7:1 .
**Merit** 45:2 .
**merits** 5:23, 6:10, 10:8, 10:10, 10:22, 12:2, 14:6, 27:9, 27:17, 27:18, 28:1, 28:6, 28:8, 28:13, 29:2, 29:13, 29:19, 29:24, 30:2, 30:10, 42:7, 43:5, 43:18 .
**merits.** 9:23, 29:1 .
**met** 20:6, 28:17, 28:20, 30:4, 30:6, 30:9, 38:18, 39:4, 39:5, 39:9 .
**method** 10:17 .
**Michelle** 1:39, 3:13 .
**microphone** 5:9, 21:3 .
**mimics** 17:4 .
**mind** 5:1, 9:12, 24:2, 33:6 .
**minor** 41:15 .
**Mitchell** 45:2, 45:16 .
**moment** 28:9 .
**month** 11:13 .
**months** 5:4, 5:18, 8:5, 20:4, 20:14, 22:21, 31:16, 36:21 .
**moot** 27:19 .
**Motion** 3:25, 4:9, 5:2, 6:4, 6:18, 6:19, 6:25, 9:10, 13:9, 13:12, 19:13, 26:8, 34:16, 38:15,

38:16, 40:8, 41:4, 43:21 .
**Motions** 1:22, 3:25, 4:1, 4:20, 9:5, 14:25, 15:7, 15:15, 34:22, 41:23 .
**mounting** 32:10 .
**move** 5:9, 10:25 .
**moved** 6:3 .
.
.
**< N >** .
**N.** 1:39 .
**name** 18:15, 41:17, 41:18, 44:2 .
**named** 22:10 .
**Namely** 38:17 .
**names** 17:24, 43:24 .
**narrow** 13:22, 13:23 .
**National** 1:40, 2:6, 3:14, 40:11 .
**nationwide** 9:18 .
**nationwide.** 9:18 .
**nature** 39:21, 40:18, 41:5 .
**necessarily** 7:8 .
**need** 8:23, 17:7, 18:16, 19:14, 19:17, 21:2, 24:10, 32:25, 41:9 .
**needed** 20:6 .
**negotiated** 23:6, 25:12, 34:21, 35:4, 35:5, 36:19, 37:20 .
**negotiations** 35:8 .
**neither** 19:12 .
**new** 20:13 .
**NO.** 1:9 .
**nobody** 36:22 .
**noncitizens** 5:6, 5:20 .
**noncompliance** 6:14, 13:10 .
**none** 28:10 .
**nor** 19:12, 33:8, 43:1 .
**Northern** 1:31 .
**not.** 30:9 .
**notably** 39:11 .
**note** 19:7 .
**notes** 2:19, 39:17 .
**nothing** 12:21, 29:11, 36:16 .
**Nowhere** 15:10, 35:19, 37:10 .
**Number** 3:5, 10:19, 18:1, 18:11, 26:11, 36:8, 42:3 .
**numbers** 26:18 .
**numerous** 42:1, 42:11 .
**NW** 1:36, 1:41 .

**< O >.**

**O.** 2:13 .

**Obviously** 8:2, 11:9, 16:14, 16:20, 17:10, 19:9 .

**occur** 41:16 .

**occurred** 28:3 .

**occurring** 11:12 .

**offer** 37:25, 38:6 .

**Office** 1:48, 2:5, 2:12 .

**Official** 45:1, 45:17 .

**Okay** 5:3, 5:13, 8:10, 8:15, 11:4, 15:19, 16:19, 18:4, 18:10, 20:17, 38:9 .

**old** 41:14 .

**Once** 13:12, 27:20, 27:24, 28:17, 37:12 .

**one** 6:1, 11:1, 12:12, 14:19, 18:11, 23:14, 27:13, 33:21, 37:13, 39:21, 41:20, 43:21 .

**ongoing** 38:2 .

**online** 10:18 .

**open** 38:1, 39:2 .

**operation** 37:17 .

**operative** 21:18, 22:18, 23:22, 36:17 .

**opinion** 4:18, 17:10 .

**opportunity** 20:20 .

**opposing** 28:4 .

**opposition** 16:5, 38:15, 39:16 .

**order.** 13:18 .

**ordered** 5:5, 5:19, 37:23 .

**others** 6:8, 8:6 .

**outcomes** 27:13 .

**outside** 10:6, 41:10, 41:15 .

**overcome** 39:3 .

**own** 10:20, 21:14, 24:22, 25:23 .

**< P >.**

**P.** 1:5, 3:4 .

**p.m.** 1:19, 3:2, 44:14 .

**page** 45:7 .

**pages** 34:12 .

**paragraph** 9:17 .

**part** 22:15, 22:16, 23:22, 33:24, 35:12, 35:21, 41:17,

43:19 .

**particular** 12:19, 14:20 .

**parties** 17:23, 20:9, 21:16, 23:19, 23:23, 24:20, 25:12, 25:21, 30:24, 33:6, 34:20, 35:4, 36:2, 37:20 .

**parts** 15:12 .

**party** 40:6 .

**Patricia** 45:2, 45:16 .

**pending** 3:24, 8:6, 10:19, 10:20, 14:18, 15:22, 42:10 .

**people** 8:8, 22:6, 33:24, 40:13 .

**perhaps** 4:4, 17:6, 42:17 .

**permissible** 16:11 .

**permit** 40:1 .

**person** 8:17, 10:12, 10:15, 19:10 .

**personal** 17:24, 39:22 .

**persons** 25:6 .

**pertaining** 7:17 .

**phrase** 12:17, 13:5, 25:1 .

**place** 17:5, 17:19, 18:8, 36:22, 43:23 .

**plain** 13:23, 13:24, 24:3 .

**Plaintiff** 1:26, 3:9, 3:12, 3:15, 3:17, 11:6, 23:5 .

**Plaintiffs** 1:7, 4:5, 7:16, 21:12, 21:19, 22:10, 22:11, 22:17, 22:21, 23:6, 23:9, 24:22, 25:13, 25:23, 26:5, 29:3, 30:19, 31:15, 31:25, 33:8, 35:24, 36:20, 38:2, 38:18, 38:21, 39:13, 39:22, 40:6, 41:4, 41:12 .

**play** 13:9, 23:14 .

**plead** 35:25 .

**pleadings** 21:19, 22:18, 35:19 .

**please** 3:6 .

**pled** 22:1, 22:5, 35:24 .

**plenary** 35:11 .

**point** 9:4, 9:25, 10:3, 13:7, 17:2, 17:3, 25:4, 26:13, 26:18, 26:19, 29:10, 31:1, 33:23, 34:11, 34:14, 35:19, 36:5, 40:18, 41:16, 42:11, 42:14, 43:1, 43:8, 43:21 .

**pointed** 14:22, 37:5, 41:12 .

**pointing** 14:14 .

**points** 6:17, 7:13, 42:1 .

**policy** 14:2, 20:5, 31:19, 31:20, 31:23, 32:7, 32:12, 33:20, 33:25 .

**portion** 33:14, 33:19 .

**portions** 35:6 .

**posed** 26:11 .

**poses** 32:15, 33:20, 40:5 .

**posing** 33:4 .

**position** 16:8, 16:20, 16:23, 25:8, 26:9, 28:8, 28:16, 30:3, 31:2, 31:10, 32:16, 32:19, 34:8, 35:2, 37:21, 39:4 .

**possible** 11:10, 21:4, 21:11, 27:13, 31:8, 35:9 .

**possibly** 20:13 .

**posture** 10:24 .

**potential** 18:20, 18:21, 40:14 .

**potentially** 8:17, 18:24, 26:14, 40:15 .

**power** 31:13 .

**powers** 35:11, 35:12 .

**precludes** 43:12 .

**prefer** 4:12, 4:13 .

**prejudice** 18:12, 18:19, 19:2, 19:3, 38:23, 38:25 .

**prejudiced** 39:8 .

**preliminary** 21:20, 22:19 .

**premise** 41:7 .

**prerogative** 27:11 .

**present** 11:17, 11:21, 12:3, 29:5, 30:8 .

**Presently** 10:12, 12:5 .

**President** 26:25, 27:11, 31:13, 31:22, 34:11, 35:12, 37:21 .

**presumption** 39:2, 39:3 .

**pretty** 10:21, 12:8, 18:21 .

**private** 20:9 .

**pro** 8:11 .

**probably** 9:20, 17:10 .

**problem** 13:4, 22:13, 31:21 .

**procedural** 6:5, 7:2 .

**Procedure** 20:11 .

**Proceed** 4:2, 4:6, 4:10, 4:14, 4:16, 5:1, 9:11, 38:15, 38:20, 39:15, 40:8, 41:9, 41:13, 42:7, 44:2 .

**proceeding** 19:3, 26:12, 39:19, 40:24, 40:25 .

**Proceedings** 1:21, 14:19, 14:23,

15:9, 15:15, 19:11, 21:25, 22:13, 24:15, 35:21, 39:2, 41:17, 41:20, 44:14, 45:6 .

**process** 26:13, 27:7 .

**Proclamation** 31:16, 31:23, 34:12, 36:21, 37:16, 37:18, 42:12, 42:14, 42:15 .

**Procter** 1:30, 1:35, 3:9, 3:12, 3:16 .

**Project** 1:40, 3:14 .

**promise** 27:6 .

**promises** 27:6 .

**prompt** 16:3 .

**prong** 28:17, 28:24, 29:3, 29:16, 30:5, 30:9, 36:8 .

**prongs** 28:20, 29:6 .

**properly** 34:23 .

**properly-filed** 12:12 .

**proposed** 39:11 .

**protection** 39:18 .

**protections** 14:15, 14:17, 15:1, 15:5 .

**Protective** 17:19, 17:22, 18:8, 33:10, 38:24, 39:11, 39:14, 39:17, 41:8, 43:23 .

**provide** 14:14, 21:10, 40:9 .

**provided** 5:6, 5:20, 16:10, 18:13, 18:15, 19:9 .

**provides** 15:4 .

**providing** 15:1 .

**provision** 32:11 .

**Pseudonym** 4:2, 4:9, 4:11, 5:2, 15:20, 17:16, 38:15, 38:20, 39:15, 39:19, 40:8, 41:1, 41:9, 41:13, 43:21, 44:2 .

**pseudonyms** 4:17, 37:3, 38:10 .

**public** 18:13, 18:18, 18:23, 19:1, 19:4, 19:15, 19:17, 19:21, 20:5, 31:19, 31:20, 31:23, 32:7, 32:12, 33:20, 33:25, 34:11, 39:2, 40:21, 41:19, 41:21, 42:18, 44:3 .

**publicly** 18:17 .

**published** 7:24 .

**purposes** 19:13 .

**Pursuant** 6:12, 12:24, 13:4, 21:14, 23:10, 25:24, 27:1, 31:22, 45:5 .

**pursue** 30:19, 30:21 .

put 4:21, 17:4, 32:9, 44:6 .
puts 34:5 .
.
.
< Q > .
question 8:7, 8:24, 8:25, 10:1,
   10:11, 10:23, 12:23, 37:7 .
questions 15:17, 20:19, 26:10,
   26:22 .
quick 38:14 .
Quickly 38:21, 39:20 .
quote 39:16 .
.
.
< R > .
R. 24:8, 24:13, 35:24, 36:11, 36:12,
   40:3 .
raised 10:1 .
rather 4:19, 41:6 .
reach 7:19, 8:1, 17:2 .
reaches 17:3 .
reaching 8:9 .
read 12:8, 21:13, 22:24, 22:25,
   29:3, 32:18, 41:4 .
reads 13:12 .
Real 18:16, 18:18, 19:2, 19:17,
   38:14 .
really 4:21, 19:1, 36:6, 36:22 .
Realtime 45:3 .
reason 16:4, 18:16, 18:25, 19:14,
   19:17 .
reasonable 20:3 .
reasons 41:22 .
rebuttal 20:22 .
recall 19:23 .
recalled 18:6 .
recast 12:25 .
receive 27:20 .
received 22:17 .
receiving 35:6 .
recently 7:14 .
recognize 6:25, 7:18, 9:7 .
record 3:7, 5:14, 44:6 .
records 10:21 .
recounted 42:21 .
Redetermination 21:20, 22:14,
   24:7, 24:13, 24:18, 30:14,
   30:23, 35:4, 36:7 .
refer 19:6 .
referring 6:2, 35:15 .

refers 15:6 .
refrain 12:10 .
regard 39:11 .
regarding 5:14, 16:21, 40:25 .
Registered 45:2 .
regs 40:3 .
regulations 39:24, 40:1, 45:8 .
reiterate 9:3 .
rejected 14:4 .
related 41:20 .
relates 14:23, 15:9, 15:13 .
relevant 22:1 .
relied 7:4 .
relief 21:11, 22:9, 22:17, 23:6, 27:3,
   27:11, 28:10, 30:12, 36:6,
   37:19, 39:13 .
remain 29:8, 29:11 .
remained 14:7 .
remains 4:17 .
remedies 37:3 .
remedy 6:9, 15:18, 15:20, 16:2,
   16:16, 16:17 .
removals 30:15, 30:25, 35:25,
   43:2, 43:14 .
remove 12:13, 23:21 .
removed 5:24, 6:1, 6:6, 7:21, 8:22,
   9:14, 11:10, 12:23, 12:24,
   13:14, 21:9, 22:6, 23:15, 25:7,
   27:22, 27:24, 28:14, 28:15,
   29:14, 30:15, 30:16, 37:13,
   37:15, 43:6 .
removes 28:22 .
rendered 14:11 .
repeated 37:6 .
replace 29:3 .
replaced 22:15 .
reply 4:10, 4:12, 4:22 .
Reporter 45:1, 45:2, 45:3,
   45:17 .
represent 19:10 .
representing 8:13 .
requesting 40:6 .
require 20:14 .
required 27:9 .
requirement 11:21 .
rescinded 22:14 .
residents 27:3 .
resolution 35:23 .
resolve 4:20, 8:6 .
resolved 13:15, 23:24, 28:6 .

respect 11:16, 12:9, 19:11 .
respond 12:16, 16:8, 20:19, 20:20,
   26:21, 43:10 .
response 6:21, 8:7, 9:25,
   34:16 .
result 27:6 .
resulted 14:3 .
retaliation 18:22, 40:12,
   40:15 .
retaliatory 40:6 .
return 16:3, 16:13, 17:13, 37:8,
   37:23, 38:4 .
returned 16:12, 37:12, 40:11 .
review 21:14, 33:7, 35:11,
   37:7 .
revoke 35:4, 36:7 .
rewrite 13:5 .
Richard 2:10, 3:21, 38:13 .
rights 5:6, 5:20, 5:22, 7:2 .
rise 44:12 .
risk 33:20, 33:25, 40:6 .
RMR 45:16 .
room 16:5, 28:4 .
Rule 6:23, 8:21, 9:9, 20:10 .
.
.
< S > .
safety 31:24, 32:7, 33:25, 34:11,
   34:14 .
SAG-19-1944 3:5 .
Salvador 6:3, 11:11 .
saying 9:17, 11:16, 12:2, 28:21,
   32:11, 33:16, 34:2, 42:16,
   42:18, 42:19 .
says 9:22, 11:20, 17:23, 20:21,
   22:8, 23:9, 23:24, 27:14, 27:17,
   28:19, 28:24, 34:18, 35:23,
   36:6, 37:12, 42:12, 42:16 .
scope 6:23, 22:23, 26:13 .
scoping 38:6 .
se 8:11 .
seal 17:25, 18:15, 18:19 .
sealed 18:14 .
seated 3:4 .
Second 36:8, 42:6 .
Secondly 39:6 .
Section 2:6, 9:17, 12:9, 13:8,
   13:11, 14:22, 14:23, 15:2, 15:6,
   15:8, 15:10, 15:13, 23:11, 24:1,
   25:24, 31:11, 31:14, 32:18,

33:11, 35:22, 36:2, 36:5,
   37:12 .
sections 14:14 .
Security 1:11, 2:6, 3:5, 3:21 .
seek 12:22, 31:15, 39:18 .
seekers 8:14 .
seeking 5:6, 5:21, 7:1, 42:24 .
seeks 6:5 .
seem 18:18, 38:22 .
seemed 42:4 .
seems 13:17, 23:2, 34:4,
   40:23 .
seen 15:10 .
sense 14:9, 14:12 .
sensitive 39:22 .
separately 9:11 .
serious 18:21 .
set 9:16, 11:18, 25:23 .
settled 22:8, 23:9, 24:24, 26:3,
   35:24 .
several 8:5, 34:12, 42:6 .
severance 31:1 .
shall 13:13 .
shifted 10:3 .
shipped 43:18 .
shouldn't 44:1 .
show 33:2 .
showing 34:6 .
shown 19:2 .
shrinking 26:19 .
significant 19:3 .
similar 13:8, 13:19, 27:19,
   41:2 .
simple 23:16, 25:15, 42:2 .
simply 23:17, 26:2, 27:6, 34:25,
   39:8, 42:24 .
sitting 20:1 .
situation 7:18, 15:20, 18:9 .
slash 32:7 .
slow 17:8, 24:10 .
someday 30:4, 30:6 .
Somehow 9:5, 11:17, 15:12,
   33:23 .
someone 26:7, 39:24 .
somewhat 7:13 .
somewhere 43:18 .
soon 17:7, 44:7 .
sooner 4:19 .
sort 4:16, 10:4, 14:13, 15:13,
   19:15, 33:25, 34:6, 42:21,

43:13 .

**sorts** 35:16 .

**sought** 22:17, 22:18, 23:6 .

**sounds** 30:17 .

**Southern** 1:3, 24:22 .

**speaking** 5:10, 21:3 .

**speaks** 40:10 .

**specific** 8:2, 14:13, 14:18, 15:8, 24:5, 39:12, 39:13, 40:1, 40:17 .

**Specifically** 8:20, 14:23, 14:25, 17:23, 22:8, 24:7, 31:12, 39:17, 40:3, 40:7, 40:22, 43:24 .

**specificity** 16:25 .

**specify** 39:24 .

**speculate** 16:6, 18:17, 19:16 .

**St.** 1:49 .

**standard** 20:16 .

**started** 4:4 .

**starts** 9:17 .

**state** 43:5 .

**statement** 25:22 .

**States** 1:1, 5:24, 12:9, 13:14, 14:7, 16:3, 21:12, 25:11, 27:3, 27:22, 31:24, 34:14, 45:3, 45:9 .

**Station** 2:13 .

**status** 10:1 .

**stay** 15:16 .

**stenographically-reported** 45:6 .

**stenotype** 2:19 .

**step** 19:24 .

**STEPHANIE A. GALLAGHER** 1:23 .

**stop** 10:11, 26:24 .

**straightforward** 12:8, 30:22 .

**Street** 1:36 .

**strip** 37:21 .

**strongly** 10:5 .

**styled** 6:18 .

**subject** 7:3, 7:11, 8:17, 28:18, 40:15 .

**submitting** 17:11 .

**substance** 6:24 .

**substantive** 22:16 .

**suggest** 20:13 .

**suggesting** 23:3 .

**suit** 26:8 .

**Suite** 1:41, 2:7 .

**supposedly** 42:12 .

**Supreme** 7:4, 7:7, 13:20, 16:22, 17:6, 17:9, 32:20 .

**surprised** 9:25, 20:5 .

**surrounding** 24:24 .

**swept** 36:1 .

.

.

**< T >** .

**tall** 5:9 .

**TDA** 34:13, 41:6 .

**technical** 24:5, 24:6 .

**teleconference** 7:13 .

**tense** 29:5, 30:8 .

**term** 13:18, 13:22, 24:2, 31:17, 36:6, 37:9 .

**terms** 11:11, 12:13, 12:19, 14:12, 20:2, 21:15, 21:21, 22:25, 25:20, 25:22, 25:23, 26:16, 39:14 .

**test** 38:19 .

**Texas** 41:18 .

**text** 28:21, 28:22 .

**themselves** 3:10, 15:5 .

**They've** 10:3, 42:6, 42:23, 43:25, 44:3 .

**though** 10:24, 16:9, 31:9, 40:18 .

**threat** 32:15 .

**three** 3:24, 29:6 .

**threshold** 33:5, 35:2, 38:7 .

**tied** 40:18, 40:22, 41:5 .

**Title** 12:21, 13:2, 13:16, 21:25, 22:12, 23:21, 24:15, 25:3, 25:6, 25:9, 25:11, 25:14, 26:25, 27:1, 27:18, 30:15, 30:16, 31:14, 32:18, 35:10, 35:15, 35:20, 36:15, 37:19 .

**Today** 4:10, 5:1, 5:25, 6:4, 6:7, 16:7, 22:21, 26:5, 30:18, 32:1, 37:6, 42:6, 42:20, 44:6 .

**together** 4:20, 4:24 .

**token** 23:20 .

**top** 35:18 .

**topics** 4:3, 20:18 .

**touch** 20:18 .

**TRANSCRIPT** 1:21, 45:6, 45:7 .

**transcription** 2:19 .

**Tren** 31:24 .

**tribunal** 40:2 .

**tried** 13:19 .

**TRO** 8:18, 38:16 .

**true** 9:7, 18:24, 19:13, 29:9, 45:5 .

**try** 5:15, 10:4, 16:6 .

**trying** 12:22, 12:25, 13:6, 13:18, 13:22, 15:11, 24:11, 33:17, 33:18, 33:21, 34:2, 34:3, 34:4 .

**turn** 6:10, 9:12, 12:7, 15:19, 20:4, 44:8 .

**turns** 17:7 .

**two** 4:1, 40:3, 41:15 .

**type** 10:18, 12:19, 14:21, 15:16, 23:3, 41:2, 43:10, 43:13 .

**types** 35:14, 35:15, 43:2, 43:14 .

.

.

**< U >** .

**U.S.** 1:10, 3:4 .

**UAC** 25:10, 35:21 .

**Uacs** 26:22 .

**unable** 27:8, 42:7 .

**Unaccompanied** 5:21, 21:23, 24:17 .

**underlying** 14:1, 16:16, 24:23 .

**undermine** 43:16 .

**understand** 9:11, 22:4, 28:20, 29:13 .

**understanding** 7:14, 9:21, 32:8 .

**understood** 25:4 .

**unenforceable** 31:17 .

**United** 1:1, 5:24, 13:14, 14:7, 16:3, 21:12, 25:11, 27:3, 27:22, 31:24, 34:14, 45:3, 45:9 .

**universe** 24:18 .

**Unless** 13:14, 19:15, 44:5 .

**until** 4:17, 8:18, 12:11, 12:14, 13:14, 17:12, 23:15 .

**upwards** 5:10 .

**urge** 41:22 .

**USC** 24:16 .

**USCIS** 3:21, 9:22, 10:7, 10:9, 10:12, 10:25, 11:17, 12:3, 12:11, 12:14, 14:2, 15:3, 21:23, 22:12, 24:17, 26:20, 27:4, 27:15, 28:4, 28:24, 29:1, 29:8,

29:12, 29:17, 29:18, 29:23, 36:7, 36:13 .

**using** 4:10, 4:17 .

.

.

**< V >** .

**value** 31:11 .

**various** 16:20 .

**vast** 31:4 .

**versus** 3:4 .

**via** 41:18 .

**view** 10:2, 13:22, 13:23, 17:8, 20:15, 35:16, 42:3, 43:12 .

**views** 38:6 .

**VIII** 36:2 .

**violation** 6:8, 6:9, 6:11, 7:6, 8:2, 9:13, 9:15, 16:16, 34:1 .

**violations** 8:2 .

**virtue** 31:15 .

**void** 19:21, 20:4, 20:8, 20:12, 31:17, 32:12, 33:15 .

**voided** 37:1 .

**voiding** 20:14 .

**vs** 1:8 .

.

.

**< W >** .

**W.** 1:49, 2:10 .

**Wait** 22:4 .

**walk** 9:13 .

**wanted** 20:18, 43:14 .

**war** 35:12 .

**Washington** 1:37, 1:42, 1:50, 2:8, 2:14 .

**ways** 25:5 .

**web** 14:16 .

**websites** 7:24 .

**week** 8:18 .

**weigh** 17:6 .

**Wells** 24:21 .

**whatever** 30:20, 38:3 .

**Whether** 6:7, 6:24, 8:21, 10:14, 11:19, 16:23, 16:25, 18:23, 19:13, 26:12, 26:20, 32:14, 34:23, 34:25, 38:20, 39:21, 39:24, 40:5, 41:10 .

**whole** 27:5 .

**whom** 9:22, 10:7, 28:24 .

**wide** 39:12, 39:13 .

**widely** 7:24, 40:14 .

4/22/2025 Motions Hearing
54

**will** 4:18, 5:1, 5:11, 5:13, 8:3, 9:24, 12:10, 17:5, 17:7, 17:19, 17:21, 19:7, 20:6, 26:24, 30:4, 30:6, 36:7, 36:8, 37:11, 38:2, 42:11 .

**wish** 11:2, 17:15, 36:20 .

**within** 22:25, 25:17, 38:4, 40:7 .

**without** 8:3, 37:7 .

**Wonderful** 21:8 .

**word** 13:20, 24:25, 29:3 .

**works** 37:19 .

**writing** 4:21 .

**written** 4:18, 6:15, 29:5, 30:5, 30:8, 44:7 .

.

.

**< Y > .**

**Yamileth** 1:46, 3:19 .

**year** 19:25, 41:15 .

**years** 18:7, 22:22, 30:23, 36:18, 41:14 .

**you-all** 44:11 .

**young** 41:13 .

**yourselves** 3:6 .