**REDACTED**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | |
|---|---|
| J.O.P., *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 8:19-cv-01944-SAG |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.* | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO VACATE PARAGRAPH TWO OF THE COURT'S ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT OR, IN THE ALTERNATIVE, TO STAY PARAGRAPH TWO PENDING APPEAL**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... ii
TABLE OF AUTHORITIES .................................................................................................... iii
INTRODUCTION ...................................................................................................................... 1
BACKGROUND ........................................................................................................................ 2
ARGUMENT .............................................................................................................................. 6
   I.   THE COURT SHOULD VACATE SECTION TWO OF ITS ORDER DIRECTING FACILITATION OF CRISTIAN'S RETURN ............................................................................ 6
   II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT A STAY PENDING APPEAL ............................................................................................................................... 10
      A.   Legal Standard ................................................................................................ 10
      B.   The Government is Likely to Succeed on the Merits ..................................... 10
      C.   The Remaining Factors Favor a Stay ............................................................. 12
CONCLUSION ......................................................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Bixby v. Stirling*,
   90 F.4th 140 (4th Cir. 2024) ............................................................................................... 7

*Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*,
   843 F.3d 583 (4th Cir. 2016) ............................................................................................... 8

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
   333 U.S. 103 (1948) .......................................................................................................... 10

*Citizens Protective Leaguev. Clark*,
   155 F.2d 290 (D.C. Cir. 1946) ............................................................................................ 9

*Eden, LLC v. Just.*,
   36 F.4th 166 (4th Cir. 2022) ............................................................................................... 8

*Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*,
   117 Md. App. 72, 699 A.2d 482 (1997) ........................................................................... 11

*Fleet Feet, Inc. v. NIKE, Inc.*,
   986 F.3d 458 (4th Cir. 2021) ............................................................................................... 8

*Haig v. Agee*,
   453 U.S. 280 (1981) ............................................................................................................ 9

*L.J. v. Wilbon*,
   633 F.3d 297 (4th Cir. 2011) .......................................................................................... 6, 8

*Nken v. Holder*,
   556 U.S. 418 (2009) .......................................................................................................... 10

*Reid v. Angelone*,
   369 F.3d 363 (4th Cir. 2004) ............................................................................................... 7

*Thomas v. Patriot Square Homeowners' Ass'n, Inc.*,
   No. 2189, Sept.term,2023, 2025 WL 427747 (Md. Ct. Spec. App. Feb. 5, 2025) ..................... 8

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
   513 U.S. 18 (1994) .............................................................................................................. 6

*United States v. CurtissWright Export Corp.*,
   299 U.S. 304 (1936) .......................................................................................................... 10

*Valero Terrestrial Corp. v. Paige*,
   211 F.3d 112 (4th Cir. 2000) .................................................................................................. 6

*Wells v. Chevy Chase Bank, F.S.B.*,
   363 Md. 232 (2001) ............................................................................................................ 11

## Statutes

50 U.S.C. Ch. 3 ............................................................................................................................ 3

## Rules

Federal Rule of Civil Procedure 62(d) ........................................................................................ 10

Federal Rules of Civil Procedure 60(b) ........................................................................................ 1

## Regulations

8 C.F.R. § 1241.1 ....................................................................................................................... 11

**INTRODUCTION**

The government requests that this Court vacate Section Two of its April 23, 2024, Memorandum Order granting Plaintiffs' Emergency Motion to Enforce the Settlement Agreement, ECF 227. Order ECF Nos. 253, 254. In that order, this Court concluded that Defendants had breached the settlement agreement by removing Cristian from the United States before adjudicating his asylum application, and ordered Defendants to facilitate Cristian's return as a remedy for that breach. Defendants respectfully maintain that the Court erred by finding a breach, but in all events, factual developments have made the Court's "facilitation" order inequitable. Specifically, USCIS has now issued an Indicative Asylum Decision making clear that, if Cristian returned, it would deny his asylum application both (1) on Terrorist-Related Inadmissibility Grounds (TRIG) based ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ in the designated terrorist organization, Tren de Aragua (TdA), and (2) as a matter of discretion, based on both ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Exhibit A, May 1, 2025 Indicative Asylum Decision.

This action by USCIS establishes that the Court's order directing Defendants to facilitate Cristian's return is no longer warranted or equitable and indeed is now effectively moot. Cristian is no longer a member of the class in light of USCIS's determination of non-eligibility in its Indicative Asylum Decision and hence is no longer entitled to relief. In addition, the equitable balancing underlying this Court's original orders no longer holds—particularly as (1) equitable relief to return Cristian so that his asylum application could be processed would now be a futile enterprise and (2) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ make clear that he is ineligible for asylum and that, even if he were, discretionary denial of asylum is amply warranted. Under these circumstances, ordering Defendants to facilitate the return of a foreign

1

gang member from El Salvadoran custody–a remedy that raises constitutional concerns and is difficult if not impossible to fulfill–is clearly no longer equitable or appropriate. This would be the most empty gesture, but also a very challenging one. The Court should therefore grant relief.

The Court should accordingly vacate its order requiring facilitation of his return. In the alternative, this Court should stay Section Two of its order pending appeal.

## BACKGROUND

**1.** On July 1, 2019, named Plaintiffs commenced this litigation relating to USCIS's policies for implementing asylum protections provided to Unaccompanied Alien Children ("UAC") under the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA").

Following entry of a preliminary injunction the Parties reached a settlement agreement. ECF No. 199-2 at 3, Section I.I. The agreement defines the "settled claims" as "all claims for relief that were brought in the Action on behalf of Named Plaintiffs and Class Members alleged in Plaintiffs' Complaints." *Id.* at 5, Section II.R. The agreement provides that the "class" is defined as:

> all individuals nationwide who prior to the effective date of the superseding memorandum discussed in Section III(A): (1) were determined to be a UAC; and (2) who filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits.

*Id.* at 4, Section II.E.

As a core matter, the agreement provided that USCIS assume initial jurisdiction of most asylum applications filed by individuals previously determined to be UACs, and that DHS will refrain from taking the position that USCIS does not have Initial Jurisdiction over a Class Member's asylum application in removal proceedings. *Id.* at 6, Section III.A-B; *Id.* at 8 Section

2

III.H. The agreement also provides that "ICE will refrain from executing [a] Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." *Id.* at 8, Section III.I.

**2.** On January 7, 2025, Cristian—a JOP Class member—was transferred into ICE custody from the Harris County Jail in Texas based on an ERO detainer following his felony conviction for possession of cocaine. Cerna Declaration, ECF No. 248-1 at ¶¶ 11–12. He was served with a Notice to Appear charging him as inadmissible pursuant to 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(II), as an alien present in the United States without being admitted or paroled and as an alien convicted of a controlled substance offense. *Id.* ¶ 12.

Following Presidential Proclamation 10,903, *Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua*, ICE determined that Cristian was a TdA member and subject to the Proclamation. *Id.* ¶ 13. Cristian's membership in TdA ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit A at 2. On March 15, 2025, Cristian was removed under the Alien Enemies Act, 50 U.S.C. Ch. 3, as a Venezuelan citizen 14 years of age or older who is a member of TdA. ECF No. 248-1 at ¶ 14.

**3.** Plaintiffs filed an Emergency Motion to Enforce the Settlement Agreement on April 19, 2025, alleging that Defendants' removal of Cristian was a violation of the settlement agreement because he had a pending asylum application that had not been adjudicated before his removal. *See* Memo Mot. Enforce at 15, ECF No. 227-1. Plaintiffs specifically acknowledge they were not challenging the President's invocation of the AEA or the applicability of the Proclamation to Cristian.  ECF No. 227 at 1; Reply Memo. at 3-4, ECF No. 250.

3

In their Opposition, Defendants argued that there was no breach of the settlement agreement because aliens subject to AEA (as Cristian admittedly was) cannot claim asylum and are thus no longer class members. *Id.* at 13-15. Alternatively, Defendants argued that the settlement agreement was keyed to the actual "matters in dispute" since 2019, and "settled claims" were specifically those challenges raised in "Plaintiffs' complaints," which only addressed ordinary removal proceedings under Title 8, not under the AEA. *Id.* at 17-21.

**4.** Following a hearing, the Court granted Plaintiffs' Motion. The Court determined it had jurisdiction to enforce the Agreement's terms. ECF Nos. 253, 254. In its Opinion, the Court held "the instant motion does not sound in habeas because Plaintiffs are not asking the Court to determine the scope of Defendants' removal authority under the AEA or challenging the application of the AEA to Cristian or any other individual Class Member." Op., ECF No. 253 at 5. The Court determined Cristian is a class member because the Settlement Agreement "does not define or limit the phrase 'final removal order,'" concluding "the AEA Proclamation served as a final removal order," and "Defendants executed Cristian's final removal from the United States under the AEA Proclamation in contravention of their obligations under the Settlement Agreement." *Id.* at 9. The Court held that "under contract law principles, Cristian, and any other Class Member who has been removed in violation of the Settlement Agreement, must be returned to the United States to await adjudication of his asylum application on the merits by USCIS." *Id.* at 13.

In its Order, in Paragraph 1 the Court directed Defendants "not to remove from the United States members of the certified 'Class,' defined in Section II.E of the Settlement Agreement," noting that "[o]nce USCIS adjudicates a Class Member's asylum application on its merits, the individual is no longer a Class Member and no longer enjoys the protection of the Settlement

4

Agreement." ECF No. 254 at 1. In Section Two, the Court ordered Defendants to "facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement." *Id.* at 2. In Paragraph 3, the Court ordered the parties to proceed using pseudonyms. *Id.*

**5.** On May 1, 2025, USCIS issued an Indicative Asylum Decision on Cristian's asylum application. USCIS determined that, if Cristian were to return to the United States and thus confer jurisdiction to adjudicate his asylum application, "the application for asylum would be DENIED because there is evidence indicating that a mandatory bar to asylum would apply to the applicant and USCIS would not exercise its favorable discretion to grant asylum." Exhibit A at 1–3.

*First*, the Indicative Decision notes that "a mandatory bar to asylum applies to the applicant" because "evidence indicates the applicant would be subject to TRIG and inadmissible under INA 212(a)(3)(B)(i)(V) [8 U.S.C. § 1182(a)(3)(B)(i)(V)] as an alien who is a member of a designated terrorist organization, namely Tren de Aragua (TdA)." USCIS based this decision on ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ based on reviewed evidence, the applicant would be subject to TRIG" and "would therefore be barred from asylum under INA 208(b)(2)(A)(v) as an alien subject to TRIG." *Id.*

*Second,* USCIS also concluded that it would deny Cristian's asylum application as a matter of discretion because "even if he met the refugee definition, the severity of the negative factors would still weigh against an exercise of discretion to grant asylum." *Id.* at 3. USCIS based this

5

decision on Cristian being ▆▆▆▆▆▆▆▆▆▆ TdA," which has been designated as a Foreign Terrorist Organization and described as "a brutal organization 'that uses murder and torture to achieve its aims.'" *Id.* at 2 (citation omitted). Indeed, USCIS concluded this factor "would weigh so heavily against any favorable exercise of discretion in this case that they would be impossible to be outweighed." *Id.* USCIS also relied on Cristian's felony conviction in Texas for possession of cocaine, for which he was sentenced to 120 days confinement. *Id.* at 3.

## ARGUMENT

I. **THE COURT SHOULD VACATE SECTION TWO OF ITS ORDER DIRECTING FACILITATION OF CRISTIAN'S RETURN**

In light of USCIS's Indicative Asylum Decision explaining that Cristian's application for asylum would be denied upon his return, foreclosing his ability to obtain asylum, the Court should vacate its order requiring facilitation of Cristian's return to the United States. This factual development establishes that facilitation of Cristian's return would serve no legitimate purpose, while it would impose severe constitutional burdens on the United States by interfering with Article II foreign affairs. As a matter of equitable and remedial discretion, relief is warranted.

"Rule 60(b)(5) provides: On motion and just terms, the court may relieve a party or its legal representative from a final judgment [or] order…[if] the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." *L.J. v. Wilbon*, 633 F.3d 297, 304 (4th Cir. 2011). "A party seeking modification of a decree as 'no longer equitable' has the 'burden of establishing that a significant change in circumstances warrants revision of the decree.'" *Id.* at 304 . The relief of vacatur under Rule 60 "is equitable in nature." *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000) (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-25 (1994) (discussing the common "equitable tradition of vacatur")). In addition, under Rule 60(b)(6),

a court may grant relief from an order for "any other reason that justifies relief." It has long been established by the Fourth Circuit that this provision "provides the court with a grand reservoir of equitable power to do justice in a particular case." *Reid v. Angelone*, 369 F.3d 363, 374 (4th Cir. 2004); *Bixby v. Stirling*, 90 F.4th 140, 147 (4th Cir. 2024).

Because USCIS has issued an Indicative Asylum Decision on Cristian's asylum application, determining that he is barred from a grant of asylum and that his application does not warrant an asylum grant in the exercise of discretion based on ▮▮▮▮▮ in a violent terrorist gang, Cristian's claim to return is no longer equitable or appropriate. Cristian does not dispute that he is subject to the AEA in this litigation. *See* Exhibit A at 2 ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮. The Court held that, under the settlement agreement, he should nonetheless not have been removed while his asylum application remained pending. ECF No. 253 at 11. But even assuming the Court was correct in its interpretation and application of the settlement, USCIS has now determined Cristian is not eligible for that discretionary asylum-based relief that is the subject of the settlement. *Id.* at 3. Given that determination of non-eligibility, Cristian is no longer a class member. *See* ECF No. 533 at 8 ("As to the fourth element [of the Class definition], 'USCIS has not adjudicated' Cristian's application for asylum 'on the merits' because USCIS has not 'render[ed] a decision on the substance of [his] asylum claim by either granting an approval or issuing a determination of non-eligibility.'"). Nor does it make sense to order Defendants to facilitate his return to allow for adjudication of his asylum application, because USCIS has determined that should he be returned to the U.S., he is barred from a grant of asylum and does not warrant an asylum grant in the exercise of discretion. Because the entire basis for equitable relief vis-à-vis Cristian was a return to the U.S. so that his asylum claim could be adjudicated, it is

"'no longer equitable'" to order such a return, where it would serve no purpose. *L.J.*, 633 F.3d at 304.

Indeed, Cristian's claims for relief are also now effectively moot. Article III limits the Court's jurisdiction to cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1; *Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021). The mootness doctrine is an important part of that limitation, preventing the Court from advising on legal questions "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fleet Feet*, 986 F.3d at 463 (internal quotation marks omitted). That limit applies "throughout the course of litigation to the moment of final appellate disposition," so a case may become moot after entry of a district court's judgment and while an appeal is pending. *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016) (internal quotation marks omitted).

Under a straightforward application of those principles, Cristian's case is moot. Cristian has already received the "precise relief" sought in the motion to enforce the Settlement Agreement: USCIS adjudication on the merits. *Eden, LLC v. Just.*, 36 F.4th 166, 169–70 (4th Cir. 2022). And the denial of that relief means he has no purpose being in the United States. Additionally, in making a determination of non-eligibility as to Cristian's asylum application, the government has now substantially complied with the terms of the settlement agreement. *Cf. Thomas v. Patriot Square Homeowners' Ass'n, Inc.*, No. 2189, Sept.term,2023, 2025 WL 427747, at *7 (Md. Ct. Spec. App. Feb. 5, 2025) ("At bottom, '[t]he touchstone of substantial compliance is whether the alleged 'notice' was sufficient to fulfill the purpose of the requirement.'"). This significant change in fact warrants vacatur of Section Two of the Court's Order.

Although facilitating Cristian's return would no longer serve any legal or practical purpose given the Indicative Asylum Decision, that order would impose serious harms on the government

and the public interest. There is a strong public interest in ensuring the safety of the citizens of the United States and protecting them from foreign invasion and designated terrorist organizations. *See Haig v. Agee*, 453 U.S. 280, 307 (1981) ("It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation.") (quotation omitted). The AEA gives the President the exclusive and plenary power to make determinations regarding the Act's invocation and its execution in order to carry out this important public interest. *Citizens Protective League v. Clark*, 155 F.2d 290, 294 (D.C. Cir. 1946) ("Unreviewable power in the President" is "the essence of the Act."). The President has determined that members of TdA pose a threat to the United States and are part of an "invasion" of the United States and invoked the AEA. *See* Proclamation No. 10,903 § 1 (Mar. 14, 2025), 90 Fed. Reg. 13,033 (Mar. 20, 2025). And there is no dispute in this case that Cristian is subject to the Proclamation–indeed, he admitted to being a TdA member. *See* ECF No. 248-1; Exhibit A at 2.

Beyond impairing the public interest, the order directing Defendants to facilitate Cristian's return is both constitutionally and practically problematic. Cristian is currently in the custody of a foreign sovereign. *See* ECF No. 227-1 at 5. Defendants lack the power to direct his return. *See* Defs.' Mem. Opp. Prelim. Inj. at 8–9, *J.G.G. et al. v. Trump, et al.*, No. 1:25-cv-766 (D.D.C. May 1, 2025), ECF No. 108; Declaration of Deputy Secretary of State Robert Christopher Landrau at 2, *J.G.G. et al. v. Trump, et al.*, No. 1:25-cv-766 (D.D.C. May 1, 2025), ECF No. 108-1 ("El Salvador is a sovereign, independent nation, with its own domestic law and international obligations governing the detention of individuals. El Salvador makes its own sovereign decisions, including with respect to detention."); *cf.* ECF No. 253 at 2 ("[This case] is not a habeas case, or a case assessing the propriety of the government's recent invocation of the Alien Enemies Act."). And requesting his return would be an act of foreign affairs, an area constitutionally assigned to

the Executive Branch, and which courts must be very cautious not to intrude upon. *See, e.g.*, *United States v. CurtissWright Export Corp.*, 299 U.S. 304, 320 (1936); *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948); *see also* ECF No. 253 at 13 ("This Court is mindful of the Supreme Court's reminder to afford the 'deference owed to the Executive Branch in the conduct of foreign affairs.'"). Even if that extraordinary remedy could be appropriate in some cases, it is clearly inequitable here with respect to Cristian.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT A STAY PENDING APPEAL

If this Court declines to vacate Paragraph 2 of its Order, it should stay that order pending the government's anticipated appeal to the Fourth Circuit. The government is likely to prevail on the merits of its appeal for the reasons we have already explained to the Court, including the fact that the JOP settlement agreement was never intended to override the President's wartime authority to remove alien enemies pursuant to the AEA, and based on the factual development discussed above.

### A.   Legal Standard

Federal Rule of Civil Procedure 62(d) allows a district court to stay an injunction pending appeal. In deciding whether to grant a stay, the court considers the following four factors: (1) the applicant's likelihood of success on the merits; (2) whether the applicant will suffer irreparable injury; (3) the balance of hardships to other parties interested in the proceeding; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009).

All four of the *Nken* factors favor a stay.

### B.   The Government is Likely to Succeed on the Merits

The government respectfully submits that for all of the reasons explained previously, as well as above, that it is likely to succeed on an appeal of the Court's Order.

Defendants are likely to succeed on the merits of their appeal because the Court erred in concluding that "final removal order" in Section III.I of the settlement agreement bars removal pursuant to Title 50 in addition to Title 8. As explained in Defendants' opposition brief and at oral argument, such a reading exceeds the claims in Plaintiffs' Complaints which the settlement agreement resolved, and runs afoul of standards for interpreting contracts under applicable law. The Court concluded "[t]he Settlement Agreement does not limit the protection against removal provided in Section III.I to any specific statutory mechanism for removal." ECF No. 253 at 9. But such a reading conflicts with how contracts are interpreted under Maryland law, which specifies that "[t]he words employed in the contract are to be given their ordinary and usual meaning, *in light of the context within which they are employed.*" *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251 (2001) (emphasis added); *see also Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72, 106, 699 A.2d 482, 498–99 (1997) ("In so doing, we note that, absent a provision to the contrary, the same words used in different clauses will be construed to have been used in the same sense."). Both the context of the litigation which the settlement agreement resolved and the use of the term "final removal order" in the contract require a conclusion that the agreement only prohibits removal under Title 8 and not Title 50. Indeed, no pleadings or orders in this litigation commenced in 2019 establish that either party ever intended the settlement to apply to any context outside of Title 8. Further "final order of removal" is defined at 8 C.F.R. § 1241.1. As such, it is a term of art that both parties would understand to be defined by § 1241.1. Thus, there would be no need to explicitly define it in the settlement.

The Court in its decision did not grapple with how "final removal order" in Section III.I and III.J of the settlement agreement compel a reading that the term only refers to removal under Title 8. The Court instead looked to Section V.D, which governs noncompliance with the

11

agreement, to support its conclusion that there "is no limitation on the type of removal." ECF No. 253, at 9. This, however, ignores the fact that the exact phrase "final removal order" does not appear in V.D., and as such, cannot be used to define the scope of the phrase. Defendants are alleged by Plaintiffs to have violated Section III.I of the settlement agreement, not section V.D. *See* ECF No. 227-1 at 13. Both Section III.I and Section III.J make clear that "final removal order" only applies to Title 8 removal—consistent with the subject of Plaintiffs' Complaints. *See* ECF No. 248, 22 – 25.

### C. The Remaining Factors Favor a Stay

The balance of equities also calls for this Court to stay Section Two. The Court's Order requires the Government to "facilitate" the return of a member of a designated terrorist organization to the United States in order for him to receive an adjudication of an application for relief to which he is not entitled to, and which would not otherwise prevent his removal pursuant to Title 50. This is particularly futile in light of USCIS's indicative determination that Cristian is not eligible for asylum. *See* Exhibit A.

On the other side of the ledger, there is no private interest now in facilitating Cristian's return. It is clear that he is barred from a grant of asylum, and that he does not warrant a grant of asylum in the exercise of discretion and he has no purpose being in the United States, even under the Court's reading of the settlement. Cristian will not suffer any irreparable injury because he has already been lawfully removed from the United States and his asylum application would be denied even if he was returned. The balance of interests thus strongly militates against requiring enforcement of the facilitation order pending the government's appeal.

## CONCLUSION

For the foregoing reasons, the Court should vacate Section Two of the April 23, 2025, Order, ECF No. 253, or, in the alternative, stay Section Two pending appeal.

Dated: May 4, 2025                      Respectfully submitted,

                                                 YAAKOV M. ROTH
                                                 Acting Assistant Attorney General
                                                 Civil Division

                                                 WILLIAM C. PEACHEY
                                                 Director
                                                 Office of Immigration Litigation

                                                 YAMILETH G. DAVILA
                                                 Assistant Director

                                                 ERHAN BEDESTANI
                                                 Trial Attorney

                                                 */s/Richard Ingebretsen*
                                                 RICHARD G. INGEBRETSEN
                                                 Trial Attorney (DC Bar No. 1736200)

                                                 U.S. Department of Justice
                                                 Civil Division
                                                 Office of Immigration Litigation
                                                 P.O. Box 868, Ben Franklin Station
                                                 Washington, DC 20044
                                                 Telephone: (202) 616-4848
                                                 Fax: (202) 305-7000
                                                 richard.ingebretsen@usdoj.gov

                                                 Attorneys for Defendants