**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| J.O.P., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 8:19-cv-01944-SAG |
| | ) |
| U.S. DEPARTMENT OF HOMELAND | ) |
| SECURITY, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

**APPROVED**

/s/                    June 13, 2025
The Honorable Stephanie A. Gallagher
United States District Judge

**STIPULATED ESI DISCOVERY PROTOCOL**

This joint stipulation for an ESI Discovery Protocol is entered by and between Plaintiff and Defendants (hereinafter "Parties"), with terms and scope recited herein.

**TERMS AND SCOPE OF STIPULATION**

After conferring on these matters, the Parties propose to the Court the following terms, which are adopted and entered as the Order governing production of electronic discovery.

I. **DEFINITIONS**

A. The "Action" means the case captioned *J.O.P., et al., v. D.H.S. et al.*, No. 8:19-CV-01944-SAG (District of Maryland).

B. "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a), exclusive of alien files (A-Files).

C. "Document(s)" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes, ESI, Hard Copy Discovery and tangible things, exclusive of A-files. A draft or non-identical copy is a separate document within the meaning of this term and includes a preliminary version of a document that has been shared by the author with

another person (by Email, print or otherwise).

D.  "Format" means the internal structure of a file, which defines the way it is stored and used.

E.  "Hard Copy Discovery" means Documents existing in paper or other tangible form at the time of collection.

F.  "Native File(s)" means ESI that is a file or datum created by a computer-based, cloud-based, or artificial intelligence-based application (including, for example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.pst, and *.pdf files).

G.  "Non-Custodial Data Source" means a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container, such as an enterprise system or database.

H.  "Producing Party" means a Party that produces documents.

I.  "Receiving Party" means a Party to whom documents are produced.

J.  "Responsive Document" means any document that the Producing Party has agreed to produce or log, and/or that the Producing Party has been ordered to produce by the Court.

K.  "Bates Numbers" means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of (1) an alphabetic portion identifying the producing party and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the producing party's discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically

stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than 16 characters in length.

L.  "Metadata" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File;  (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system; and (iii) any other data describing the context, content, and structure of Native Files and their management throughout time.

M.  "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

N.  "Load/Utilization File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Utilization File also contains data relevant to the individual Documents, including extracted and user-created Metadata, coded data, as well as OCR or Extracted Text.

O.  "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

3

P.  "Extracted Text" means the text extracted from a Native File and including all header, footer, document body information, and tracked changes content (comments, markup, etc.).

## II.  PURPOSE AND LIMITATIONS

A.  This Order supplements all other discovery rules and orders. Nothing in this Order shall be construed (1) to prohibit the undersigned Parties from agreeing to modify any provision of this Order or seeking relief from the Court; (2) as a waiver of any Party's rights under the Federal Rules of Civil Procedure, Local Rules, or order of this Court; (3) to require disclosure of information that is not relevant to the claims or defenses in this case or that is protected by applicable privilege; (4) to justify delays in production of ESI responsive to discovery requests; or (5) to waive any objections as to the production, discoverability, or confidentiality of ESI.

B.  This Order may be modified for good cause by a Stipulated Order of the Parties or by the Court. The Parties shall try to resolve any proposed modifications in good faith and comply with the meet and confer process procedures laid out by the Court. If the Parties cannot resolve this dispute, they may proceed under the Federal and Local Rules of Civil Procedure and this Court's procedures addressing discovery disputes.

C.  Notwithstanding any other provision of this Protocol, provided a copy of the ESI subject to preservation in this matter remains accessible and unaltered or a new copy is created that preserves the ESI, including any metadata (to the extent it exists), the Parties may:

   i.  Edit non-final Documents to the extent necessary to carry out their ordinary duties, provided that all drafts and final versions of the Document created as a

result are preserved and, if subject to production based upon the parties' respective requests for production, objections, search terms, and date limiters, produced;

ii.   move unfiled Documents or ESI into files or folders to adhere to an organizational scheme that was created before the complaint was filed in this matter providing doing so does not alter the parent-child relationship (or any other form of unitization) of the Documents or ESI. Nothing in this subparagraph prevents the Parties from implementing an organizational scheme that applies only to Documents or ESI not subject to preservation in this matter;

iii.  delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of a lease;

iv.   copy data from one device to another, or from one location to another;

v.    undertake routine maintenance of a database, including input additional data, access data, update the software running the database, and append new data;

vi.   compress or decompress data, provided doing so does not significantly degrade the quality of the data.

## III.  SEQUENCE AND PROCEDURE OF ESI DISCOVERY

### A.  The Parties agree that discovery of ESI shall proceed as follows:

Requests for production of ESI should, in compliance with Fed. R. Civ. P. 34(b)(1)(A), describe with reasonable particularity each item or category of items to be inspected or produced. After receiving requests for document production, the Producing Party shall conduct a reasonable and good faith search for responsive documents and ESI. A Producing Party will

disclose to a Requesting Party at the time of production the existence of those sources of ESI that it believes contain responsive information and that are not reasonably accessible.

**B.  ESI of Limited Accessibility.**

If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that party shall identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI at the time of production.

**C.  Privilege Logs.**

A Producing Party shall produce privilege logs along with each document production. The Privilege Log must contain the following information corresponding to each Document being withheld or redacted that will allow the Receiving Party to assess the privilege claim:

1.  Beginning Bates Number;

2.  Ending Bates Number;

3.  Whether the Document is being withheld or redacted;

4.  Whether the Document is a parent or attachment

5.  Applicable Privilege;

6.  A short description of all bases justifying the privilege assertion;

7.  Custodian (CUSTODIAN) (if applicable);

8.  Title, file name, and/or Subject Line (SUBJECT) (if applicable and not privileged);

9.  Author(s) or Sender (FROM) (if applicable);

10. Recipients (TO) (if applicable);

11. Carbon Copy Recipients (CC) (if applicable);

12. Blind Carbon Copy Recipients (BCC) (if applicable).

13. Date of the Document (if applicable)

Additional fields may be added. The log should identify e-mail chains as a single entry and note that they are chains, as long as all persons participating in the chains are identified. A Privilege Log may omit any field from the above-listed fields when such field would contain no information (i.e., if an applicable production has no BCC recipients, the BCC field may be omitted from the Privilege Log).

Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B) and do not need to be included on a privilege log.

The Parties have separately stipulated to a Clawback Agreement and Federal of Evidence 502(d) Order to govern the standards and procedures for addressing claims of privilege and inadvertently disclosed privileged materials in this Action.

## IV.  THIRD PARTY ESI

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Protocol and the Protective Order with the subpoena and state that the relevant Party in the action has requested that non-parties produce documents in accordance with the specifications set forth herein.

The Issuing Party shall produce a copy to all other Parties of any Documents and ESI (including any metadata) obtained under subpoena to a non-Party within three (3) business days of receipt.

If the non-Party production is not Bates-stamped, the Issuing Party shall endorse the non-Party production with unique Bates prefixes and numbering prior to reproducing them to all

other Parties and provide notice that it has done so.

### V.  <u>ESI FORMAT</u>

The Parties will produce ESI and Documents in the format pursuant to Attachment A: "Specifications for the Production of ESI and Digitized ("Scanned") Images," except as otherwise specified in this agreement or otherwise stipulated to in writing by the parties. These exceptions include:

    a.  The designation and production of confidential information shall be governed by the Protective Order separately stipulated to by the Parties in this action.

    b.  The Parties agree that the A-file need not be subject to Attachment A specifications, and that scanned copies of the physical a-file may be produced in .PDF form;

    c.  Parties shall only be required to produce or log inclusive e-mail threads, as well as any responsive attachments. The use of e-mail threading shall not relieve a party from ensuring the review and production of all responsive and unique content, including attachments from e-mails prior to the longest inclusive thread, or conversations that diverge from the longest inclusive thread. If a Producing Party intends to produce threaded e-mails, it shall disclose its intent to do so to the Receiving Party as soon as is practicable. Inclusive e-mails shall only be withheld in full as privileged to the extent that they are, in their entirety, so privileged. Inclusive e-mails containing partially privileged content shall be produced with appropriate redactions and logged in accordance with Section III.C. If the Receiving Party has concerns that the approach being taken is resulting in a less than complete production, it may raise its concerns and, if no agreement is

8

reached, seek relief.

d.  Prior to any production of responsive data from a database, a structured database
    (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, proprietary timekeeping,
    accounting, sales rep call notes, CRMs, SharePoint, etc.), other proprietary
    database, or any location or native form not covered by the Production
    Specifications, the Parties must confer and reach agreement on what information
    to extract and how to produce it prior to any production. Parties must make best
    efforts to meet and confer in a timely manner to comply with court-ordered
    discovery deadlines.

e.  To the extent responding to a discovery request requires production of ESI
    contained in a database, the Producing Party may comply with the discovery
    request by querying the database and generating a report ("Structured Data
    Report") in a reasonably useable and exportable electronic format (for example,
    Excel format).

f.  The parties acknowledge that certain documents may be requested that can be
    readily located without the need for an eDiscovery search and collection and
    promptly produced (e.g., a specified policy).  In such instances, the Producing
    Party may produce such discrete documents as a Bates-stamped PDF.
    Nevertheless, if the Producing Party produces any such document pursuant to this
    paragraph, the Receiving Party reserves the right to request production of the
    original document and all associated ESI.

Dated: June 12, 2025

Respectfully submitted,

*/s/ Brian Burgess*
Brian T. Burgess
Attorney for Plaintiffs
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
202-346-4000
BBurgess@goodwinlaw.com

*Attorney for Plaintiff*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

YAMILETH G. DAVILA
Assistant Director

ERHAN BEDESTANI
Trial Attorney

*/s/ Richard Ingebretsen*
Richard Ingebretsen (DC No. 1736200)
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box. 868, Washington, DC 20044
(202) 616-4848
richard.ingebretsen@usdoj.gov

*Attorneys for Defendants*

# Exhibit A

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

<hr>

### Collection of Electronically Stored Information (ESI)

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process. Consideration should also be given as to whether production media should be encrypted when producing if required by law (i.e. Health Insurance Portability and Accountability Act (HIPAA), Family Educational Rights and Privacy Act (FERPA), etc.

### 1.    Specification Modifications

Any modifications or deviations from the Production Specifications may be done only with the express permission of the Requesting Party and these modifications or deviations should be communicated to the Requesting Party and approved by the Requesting Party in written form. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the Requesting Party to facilitate their production per Section V.d of the Order.

### 2.    Production Format of ESI and Imaged Hard Copy Documents

Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 10 – 15, shall be rendered to TIFF image format, and accompanied by an Opticon/Concordance® Image Cross Reference file. All applicable metadata/database (see section 3 below) shall be extracted and provided in Concordance® load file format.

    a.  **Image File Format:** All documents shall be produced in black and white TIFF format. unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.

    b.  When producing black and white Hard Copy Discovery Documents scanned to images, or rendered ESI, they shall be produced as 300 dpi, 1 bit, single-page TIFF files, CCITT Group IV (2D Compression). When producing in *color,* Hard Copy Discovery Documents scanned to images, or rendered ESI, they shall be produced as 300 dpi single-page JPG. Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

        i.  All TIFF file names shall include the unique Bates number burned into the image. (See section 19, below, regarding Bates number instructions.)
        ii.  All TIFF image files shall be stored with the ".tif" extension.
        iii.  Images without corresponding extracted text shall be OCR'd using standard COTS products.
            1.  An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow

1

Case 8:19-cv-01944-SAG    Document 298    Filed 06/13/25    Page 13 of 26
**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

    iv. All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.

    v. No image folder shall contain more than 2,000 images.

c. **Opticon/Concordance® Image Cross Reference file:** Images should be accompanied by an Opticon load file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the relative image file path for each Bates numbered page. The Opticon/Concordance® Image Cross Reference file is a page level load file, with each line representing one image.

Below is a sample:

    REL000000001,,.\IMAGES\001\REL000000001.TIF,Y,,,
    REL000000002,,.\IMAGES\001\REL000000002.TIF,,,,
    REL000000003,,.\IMAGES\001\REL000000003.TIF,,,,
    REL000000004,,.\IMAGES\001\REL000000004.TIF,Y,,,
    REL000000005,,.\IMAGES\001\REL000000005.TIF,,,,

The fields are, from left to right:

- Field One – (REL000000001) – the Bates Number. This value must be unique for each row in the OPT file. The first page of each document must match the DOCID or BEGDOC# value of the respective document.
- Field Two – (blank) – the volume identifier. This field is not required.
- Field Three – (.\IMAGES\001\REL000000001.TIF) – The relative file path to the image to be loaded.
- Field Four – (Y) – the document marker. A "Y" indicates the start of a unique document.
- Field Five – (blank) – The folder indicator. This field is not required, and typically is not used.
- Field Six – (blank) – The box indicator. This field is not required, and typically is not used.
- Field Seven – (blank) – The page count. This field is not required.

d. **Concordance® Load File**: Images should also be accompanied by a flat, document-level load file to provide the metadata and native files containing delimited text that will populate fields in a searchable, flat database environment. The file encoding must be one of four types: Western European (Windows), Unicode (UTF16), Big-Endian Unicode or UTF8. The file should contain the required fields listed below in section 3.

2

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

1. Text delimited load files are defined using the standard Concordance delimiters. For example:

    | | |
    |---|---|
    | *Field Separator* | *¶ or Code 020* |
    | *Text Qualifier* | *þ or Code 254* |
    | *Newline* | *® or Code 174* |
    | *Multi-value* | *; or Code 059* |
    | *Nested values* | *\ or Code 092* |

2. This load file should contain the relative file path to the individual multi-page, document level text files.
3. This load file should also contain the relative file path to all provided native files, such as Microsoft Excel or PowerPoint files.
4. There should be one line for every record in a collection.
5. The load file must contain a header listing the metadata/database fields contained within. For example, if the data file consists of a First Page of a Record (BegDoc#), Last Page of a Record (ending Bates / ENDDOC#), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

    þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

d. **The extracted/OCR** text should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

e. **Directory and folder structure:** The directory structure for productions should be:

    \\*CaseName*\\**LoadFiles**
    \\*CaseName*\\**Images** < For supporting images (can include subfolders as needed, should not include more than 2,000 files per folder)
    \\*CaseName*\\**Natives** <Native Files location (can include subfolders as needed, should not include more than 2,000 files per folder)
    \\*CaseName*\\**Text** <Extracted Text files location (can include subfolders as needed, should not include more than 2,000 files per folder)
    \\*CaseName*\\**Translated Images** < For supporting images of translated documents (as needed for rendered translated documents; can include subfolders as needed, should not include more than 2,000 files per folder)
    \\*CaseName*\\**Translated Text** <Translated Text files location (as needed for translated text; can include subfolders as needed, should not include more than 2,000 files per folder).

3

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

3.    **Required Metadata/Database Fields**

A "✓" denotes that the indicated field should be present in the load file produced. "Other ESI" includes data discussed in sections 10 – 15 below, but does not include email, email repositories (section 12), "stand alone" items (section 13), and imaged hard copy material (section 10). Email, email repositories, and "stand alone" materials should comply with "Email" column below. Imaged hard copy materials should comply with the "Hard Copy" column. The parties will meet and confer about any field which cannot be populated automatically (i.e. would require manual population of information).

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| DUPECUSTODIAN | Custodian/Source – all custodians who had the document before de-duplication; format: Last, First or ABC Dept. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| DUPECUSTODIAN FILE PATH | Listing of all the file locations of the document before de-duplication | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |

4

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of parent | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other.  If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Sender (i.e.: e-mail address, Last name, First name) | Text | 160 | | ✓ | ✓ |
| TO | Recipient (i.e.: e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients (i.e.: e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients (i.e.: e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line of email | Text | Unlimited | | ✓ | |
| TITLE | Document Title | Text | Unlimited | | | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. Do not provide 00/00/0000. | Date | MM/DD/YYYY | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date and time Sent (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |

6

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM:S S | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM:S S | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/ YYYY HH:MM:S S | | ✓ | ✓ |
| TIME ZONE OFFSET | Time zone of collection locality, relative to Coordinated Universal Time (UTC). E.g., for US Central Standard Time (CST), the value for this field should be -6.0 | Decimal | 10 | | ✓ | |
| FILE SIZE | Native File Size in KBs | Decimal | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |

7

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | |
| HASH VALUE | Identifying value of an electronic record that is used for deduplication during processing. MD5 or SHA1 hash algorithms may be used, but must be kept consistent throughout all productions and communicated to Government. | Text | Unlimited | | ✓ | ✓ |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Description that represents the file type to the Windows Operating System. E.g., Adobe Portable Document Format, Microsoft Word 97 – 2003, or Microsoft Office Word Open XML Format. | Text | 160 | | ✓ | ✓ |

8

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| HAS HIDDEN CONTENT | Identifies whether the document has comments, track changes or other hidden content or data associated with it | Text | Yes/No | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | | Text | Unlimited | | ✓ | ✓ |
| HAS REDACTIONS | Identifies whether a record has been produced with redactions; should be populated with Y for records with redactions and N for records without redactions. | Text | Yes/No | ✓ | ✓ | ✓ |
| HAS TRANSLATIONS | Identifies whether a document has been produced with translated text or audio contains a transcript | Text | Yes/No | ✓ | ✓ | ✓ |

4.    **Search, De-Duplication, Near-Duplicate Identification, Technology Assisted Review, E-mail Conversation Threading and Other Culling Procedures**

a.    De-duplication of exact hash copies shall be performed globally – across all custodians.  The custodian of each record shall be populated in the DupeCustodian field.

b.    All files found on the National Institute of Standards and Technology (NIST) list, commonly referred to as deNISTing, should be excluded from delivery to the Requesting Party. All available metadata from files withheld from delivery due to the deNISTing process will be available upon request.

c.    All files should be globally de-duplicated with the following conditions:

i.    The "DupeCustodian" metadata field (listing of all custodians who had the document before de-duplication) must be provided with the document production.

ii.    The "DupeCustodian File Path" metadata field (listing all the file locations of the document before de-duplication) must be provided with the document production.

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

    iii. All files and metadata for the duplicate documents removed during de-duplication must be preserved and available for production upon request.

    iv. No customization of hashing may occur without prior express approval by the Requesting Party.

    v. De-duplication must be done by document family, not by individual document.

    vi. A detailed description of the steps taken to de-duplicate (including the process of obtaining hash values) must be provided to the Requesting Party upon request. For every production after the first, a separate Unified Custodian overlay shall be provided. If no overlay is necessary due to the fact that no documents de-duped out in connection with previously produced documents, this shall be expressly stated in the cover letter accompanying the subsequent production(s).

    d. The Producing Party shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the Requesting Party. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the Requesting Party as additional metadata fields. The Producing Party will not employ analytic software or technology to search, identify, or review potentially responsive material, including but not limited to, technology assisted review or predictive coding, without first discussing with the Requesting Party.

### 5. Parent-child relationships

The association between parent documents and attachments shall be preserved, to the extent such relationships are maintained in the normal course of business and/or government operations in the source repository. The attachment(s) shall be produced adjacent to the parent document in terms of the production numbers, with the first attachment named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. Any parent-child relationship will be reflected in the DAT file.

### 6. Hidden Text

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For any files that cannot be expanded, the native files shall be produced with the image file.

### 7. Embedded Files and File Links

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

The parties shall meet and confer regarding how to treat file links, including links within e-mails to centralized document repositories (e.g. MS OneDrive and Google Drive).

10

### 8.    Image-Only Files

All image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with OCR text and metadata/database fields identified in section 3 for "Other ESI."

### 9.    Encrypted Files

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

a.   The unencrypted text shall be extracted and provided per section 2.d. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b.  The unencrypted native file shall be produced pursuant to sections 11-18.

b.   If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 26) and shall include all available metadata associated with the data, including custodian information.

### 10.    Production of Imaged Hard Copy Records

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHIDS, BEGATTACH, ENDATTACH and FOLDER ID).

a.   Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).

b.   The first document in the collection represents the parent document and all other documents will represent the children.

c.   All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression).  All documents shall be produced in black and white TIFF format unless the image requires color.  An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.  Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.

d.   All objective coding (e.g., document date or document author) should be produced to the Requesting Party as additional metadata/database fields should they be applicable.

### 11.    Production of Spreadsheets and Presentation Files

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an

associated placeholder image and endorsed with a unique Bates number. *See* section 19 below. The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata.

### 12.  Production of E-mail Repositories

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF), can contain a variety of items, including: messages, calendars, contacts, tasks, etc. E-mail database systems should not be produced without consultation with and written consent of the Requesting Party about the format for the production of such databases.

### 13.  Production of Items Originally Generated in E-mail Repositories but Found and Collected Outside of E-mail Repositories, i.e., "Stand-alone" Items

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

### 14.  Production of Structured Data

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint, etc.), the Producing Party shall first identify the database type and version number, discuss providing the database dictionary (in whole or part) and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. Upon consultation with and written consent of the Requesting Party, if a report is provided, the standard format of that report provided should be in comma separated values (.csv) format. The information contained in any such report must be thoroughly explained to the Requesting Party before production. Parties must make best efforts to meet and confer in a timely manner to comply with court-ordered discovery deadlines.

### 15.  Production of Photographs with Native File or Digitized ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

### 16.  Searchable Text

The Producing Party will produce searchable text for all ESI and for all Hard Copy Discovery Documents that have been converted into images.

Case 8:19-cv-01944-SAG    Document 298    Filed 06/13/25    Page 24 of 26
**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

### 17.  Production of Images from which Text Cannot be OCR Converted

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

### 18.  Production of Native Files (When Applicable Pursuant to These Specifications)

Production of Native Files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3 as well as a placeholder image which indicates a native file is being produced.

ESI shall be produced in a manner which is functionally usable by the Requesting Party. The following are examples:

a. AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.

b. GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.

c. Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

### 19.  Bates Number Convention

All images should be assigned Bates numbers before production to the Requesting Party. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.  The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document.  Native files should be assigned a single Bates number for the entire file which will represent the native document in the Opticon/ Concordance® Image Cross Reference file. The load file will include a reference to the native file path and utilize the NATIVE LINK metadata field).  The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given sequentially (i.e. page one of document is PREFIX0000000001, page two of the same document is PREFIX0000000002) to each page (when assigned to an image) or to each document (when assigned to a native file).  If the parties agree to a rolling production, the numbering convention shall remain consistent throughout the entire production.  There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

**Specifications for Production of ESI and Digitized ("Scanned") Images**
**("Production Specifications")**

|  | *Document #1* | *Document #2* |
|---|---|---|
| *Page #1* | PREFIX00000000001 | PREFIX00000000002 |
| *Page #2* | PREFIX00000000001.002 | PREFIX00000000002.002 |
| *Page #3* | PREFIX00000000001.003 | PREFIX00000000002.003 |

### 20.  Redactions

A Producing Party may use redactions to protect attorney-client, work product, deliberative process, or other privileges. Any redactions shall be clearly indicated on the face of the document, and a metadata field shall indicate that the document contains redactions and the basis for redaction. Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the non-redacted content and the OCR text corresponding to the non-redacted content, as well as the metadata required under this Protocol. TIFFs of redacted ESI shall convey the same non-redacted information and images as the original document, including all non-redacted elements and formatting which are visible in any view of the document in its native application. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is privileged. The production of a document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log.

### 21.  Other Production Formats

If other ESI or document production formats are required but are not included in these specifications (including, but not limited to, mobile devices, workplace collaboration sites (e.g. Teams, Slack), smart phones, social media, translated documents, audio files, non-Windows based documents and non-PC based documents), the Producing Party shall obtain written approval from the Requesting Party on the specific technical production specifications required prior to production.  The Parties must make best efforts to meet and confer in a timely manner to comply with court-ordered discovery deadlines.

### 22.  Media Formats for Storage and Delivery of Production Data

Storage media used to deliver ESI shall be appropriate to the size of the data in the production. Media should be labeled with the case name, production date, Bates range, and producing party. ESI, produced Documents, and data shall be delivered on any of the following media:

  a.  CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.
  b.  External hard drives (USB 3.0 or higher, formatted to NTFS format specifications) or flash drives
  c.  Government-approved File Transfer Protocol (FTP) technologies.

14

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

### 23.   Virus Protection and Security for Delivery of Production Data

Production data shall be free of computer viruses.  Any files found to include a virus shall be quarantined by the Producing Party and noted in a log to be provided to the Requesting Party. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions.

### 24.   Compliance and Adherence to Generally Accepted Technical Standards

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

### 25.   Read Me Text File

All deliverables shall include a "read me" text file at the root directory containing:  total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats.  The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

### 26.   Exception Report

An exception report, in .csv format, shall be included, documenting any production anomalies during the collection, processing, and production phases. The report shall provide all available BEGDOC# or DOCID values and metadata listed in section 3, including but not limited to file names and file paths for all affected files.

### 27.   Transmittal Letter to Accompany Deliverables

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates range produced.  Technical instructions on how to decrypt media should be included in the transmittal letter but the password should be transmitted separately.