IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **J.O.P.**, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. SAG-19-01944 |
| | * | |
| **U.S. DEPARTMENT OF** | * | |
| **HOMELAND SECURITY,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In 2019, a class of individuals who arrived in this country as "unaccompanied alien children" ("UACs") filed this lawsuit to challenge a revision to policies governing adjudication of their subsequent asylum applications. ECF 1. On November 25, 2024, this Court held a fairness hearing and granted the parties' joint motion for final approval of a settlement agreement in this case. ECF 205. Currently pending is the Plaintiff Class's Motion for Attorney Fees and Expenses, ECF 208. This Court has reviewed the motion, the government's opposition, ECF 216, and the Class's reply, ECF 223, along with the exhibits to those filings. This Court finds that no hearing is necessary to resolve the motion. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, the Plaintiff Class's motion will be granted in part and denied in part, and an award of fees and expenses will be entered as described herein.[1]

---

[1] Since the motion became ripe for disposition, an entirely new set of issues has arisen relating to what the Plaintiff Class alleges to be the government's violation of its obligations under the Settlement Agreement by removing a Venezuelan class member to El Salvador before USCIS had adjudicated his asylum application on its merits. *See* ECF 227, 248, 250, 253, 254. Those issues remain in dispute and are presently on appeal to the United States Court of Appeals for the Fourth Circuit. *See J.O.P., et al. v. U.S. Dep't Homeland Sec.*, No. 25-1519 (4th Cir. 2025). The award of attorneys' fees in this memorandum opinion and accompanying order does not consider whether

## I. LEGAL STANDARDS

The Equal Access to Justice Act ("EAJA") permits certain litigants who file suit against the Government to petition the Court for an award of reasonable fees and expenses. *See* 28 U.S.C. § 2412(d)(a)(A). Specifically, the statute reads:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The statute continues, "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B). The Fourth Circuit has explained that the standard is intended to "penalize unreasonable behavior on the part of the government without impairing the vigor and flexibility of its litigating position." *Crawford v. Sullivan,* 935 F.2d 655, 659 (4th Cir. 1991).

## II. ANALYSIS

The government does not contest that the Plaintiff Class qualifies as the prevailing party in this matter, but it otherwise contests this motion on two grounds. First, it argues that its position was substantially justified, making any fee award inappropriate. Second, it argues that if the Court awards fees, it should significantly reduce the award from the amount the Plaintiff Class requests.

---

any additional award might be appropriate should the Plaintiff Class eventually prevail with respect to the more recent issues it has raised.

A.     SUBSTANTIALLY JUSTIFIED

Because the EAJA employs the singular phrase "the position of the United States," the Court looks to "the totality of the circumstances" to assess substantial justification, instead of engaging in "an issue-by issue analysis of the government's posture through each phase of the litigation." *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993). This Court collectively considers both the government's prelitigation conduct and its positions taken as the litigation proceeded. *Perez v. Jaddou*, 31 F.4th 267, 271 (4th Cir. 2002). The government need not prevail in the case for its position to be substantially justified, but its position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 556 n.2 (1988). The government bears the burden of proving its position to be substantially justified. *Meyer v. Colvin*, 754 F.3d 251, 255 (4th Cir. 2014).

A brief review of the history of this case is warranted to explain the parties' respective contentions. Many asylum applications are adjudicated by the Immigration and Nationalization Service ("INS") after the government places an individual in a section 240 removal proceeding. Those asylum claims are adjudicated via an adversarial proceeding before an Immigration Judge ("IJ"). Certain asylum applications can also be reviewed by the United States Citizenship and Immigration Service ("USCIS"), where the process involves a non-adversarial private interview with a trained asylum officer. 8 C.F.R. § 208.9(b). Importantly, USCIS has initial jurisdiction to consider asylum applications filed by UACs, pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044. Also, Congress has exempted UACs from the standard requirement that potential asylees file an asylum application within a year after arrival in the United States. *See* 8 U.S.C. § 1158(a)(2)(B), (E).

In May 2013, USCIS Acting Asylum Division Chief Ted Kim issued a memorandum ("the Kim Memorandum") stating that where U.S. Customs and Border Patrol ("CPB") or Immigration and Customs Enforcement ("ICE") had previously labeled an individual as a UAC, USCIS would maintain that determination without further inquiry "[u]nless there was an affirmative act by the Department of Health and Human Services ("HHS"), ICE, or CBP to terminate the UAC filing before the applicant filed the initial application for asylum." ECF 91-4 at 3. Accordingly, pursuant to the Kim Memorandum, the applicant would still be treated as a UAC and USCIS would exercise initial jurisdiction over the asylum application, regardless of whether the applicant had subsequently turned 18 or been reunited with a parent. *Id.*

USCIS reversed that policy in a memorandum dated May 31, 2019 ("the Redetermination Memorandum"). ECF 91-1. The Redetermination Memorandum cited to a recent decision by the Board of Immigration Appeals ("BIA") addressing the responsibility of an IJ in INS removal proceedings to "redetermine" whether the asylum applicant continued to qualify for treatment as a UAC. *Id*. at 3. *See Matter of M-A-C-O-,* 27 I&N Dec. 244 (BIA 2018). In the Redetermination Memorandum, USCIS explained that under that new decision, an IJ handling INS removal proceedings had jurisdiction to determine whether an individual who previously had been determined to be a UAC, but had turned 18 before filing an asylum application, should continue to qualify as a UAC. ECF 91-1 at 3. If the IJ so concluded, then the IJ could find that jurisdiction over the application is solely held by the immigration court, not USCIS. *Id*. The Redetermination Memorandum stated that USCIS adjudicators should also make independent factual inquiries in every case to see whether an applicant continued to fulfill UAC criteria on the date of filing the asylum application. *Id*. The Redetermination Memorandum stated that the new policy would be in

effect 30 days after its issuance and that the procedures would apply to "any USCIS decision issued on or after the effective date." *Id*. at 1.

The effect of the Redetermination Memorandum is that individuals who filed asylum applications under the understanding that they had continuing UAC protections under the Kim Memorandum would instead be governed by the less favorable Redetermination Memorandum standard and might be subject to a finding that they no longer qualified as a UAC as a result of reuniting with a parent or turning 18. Their applications could therefore be processed by an INS IJ instead of a USCIS official and could be rejected as untimely filed.

Plaintiffs filed this lawsuit shortly after the Redetermination Memorandum issued in 2019, seeking a temporary restraining order ("TRO") to enjoin the policy change, arguing that it violated the Administrative Procedures Act ("APA"), the Due Process Clause, and immigration law. In their motion seeking a TRO, Plaintiffs argued that because the agency had failed to engage in notice and comment rulemaking as required by the APA, its proposed change in policy was invalid. ECF 14. The government disagreed with Plaintiffs' assertion that its Redetermination Memorandum required notice and comment rulemaking, taking the position that it was "a statement of policy intended to adjust USCIS agency practice to align with the statute and with the BIA's recent precedent, *Matter of M-A-C-O-*, 27 I&N Dec. 244 (BIA 2018)," which ICE attorneys are required to follow. ECF 216 at 5-6. However, the government conceded that the four individual named plaintiffs had a likelihood of success on the merits of their due process claims and consented to those named plaintiffs' request for temporary relief, urging Judge Hazel to find that Plaintiffs' request for TRO had therefore been mooted. ECF 73-1. Judge Hazel nevertheless agreed with Plaintiffs' contention that the Redetermination Memorandum violated the APA and granted a

nationwide TRO on August 2, 2019. He later converted his order to a preliminary injunction ("PI") on October 15, 2019. ECF 71.

The issuance of the TRO and PI did not ensure the government's continuing adherence to the Kim Memorandum. For example, in a later opinion recounting part of the procedural history of the case as it pertained to one member of the class, E.D.G., Judge Hazel described:

> The Court's TRO barring enforcement of the 2019 Redetermination Memo was issued on August 2, 2019, ECF No. 55, and USCIS reopened E.D.G.'s case in compliance with the Order on August 5, 2019, ECF No. 91 ¶¶ 53, 137. On September 30, 2019, however, while the TRO remained in effect, USCIS again rejected jurisdiction over E.D.G.'s application in reliance on the 2019 Redetermination Memo. ECF No. 91 ¶ 54. The agency this time issued to E.D.G. a Notice of Lack of Jurisdiction stating that the "Immigration Judge made an affirmative act to terminate [your] UAC status on October 10, 2018." *Id.* ¶ 137.

ECF 115 at 13. Throughout the case, the government persistently made arguments that the case was moot because the four named Plaintiffs had received all the relief they requested, without rescinding the 2019 Redetermination Memorandum. *See, e.g.*, ECF 73-1 at 1. Instead, the government continued engaging in procedures with respect to other class members that were inconsistent with the 2013 Kim Memorandum and in line with the 2019 Redetermination Memorandum. *See* ECF 76 at 4-5. Those ongoing government actions required Plaintiffs to seek (and obtain) amendment of the preliminary injunction to specifically enjoin the government's violative practices, which included: 1) instances of USCIS deference to jurisdictional determinations made by INS instead of asserting its jurisdiction over UAC applications in the first instance, and 2) Immigration and Customs Enforcement's ("ICE's") advocacy against USCIS jurisdiction in removal proceedings involving persons who had previously been deemed to be UACs. ECF 143. As examples, in Judge Hazel's memorandum opinion granting the amended Preliminary Injunction, he identified two potential class members who had been subject to these

violative practices and had not been afforded the protections guaranteed by the Kim Memorandum. *Id.*

This Court considers that background when evaluating the government's argument that its position has been substantially justified. The government argues primarily that its pre-litigation position was reasonable – that it makes sense that the government would try to align its policy with the BIA's ruling in *Matter of M-A-C-O-* because the regulations from the Executive Office for Immigration Review ("EOIR") require that BIA precedent be followed in immigration court. ECF 216. The government did not, however, follow notice and comment rulemaking to try to align its processes with the BIA's decision. It also tried to apply the 2019 Redetermination Memorandum retroactively to pending asylum applications and to UACs who may have deferred filing asylum applications in reliance upon the 2013 Kim Memorandum, an action prohibited by Supreme Court precedent. ECF 223 at 8; *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (determining that agencies cannot "promulgate retroactive rules unless that power is conveyed by Congress in express terms."). The retroactive application contravened the recommendation of USCIS's own counsel, ECF 138-24 at 4, and Defendants chose not to defend the retroactivity in this litigation. *See, e.g.*, ECF 208-6, Ex. B. In addition to those missteps in the creation and implementation of the new policy, in the face of Judge Hazel's TRO, PI, and amended PI, the government persisted in taking steps in the cases of individual class members to deprive them of their protections under the 2013 Kim Memorandum. *See* ECF 208-1 at 19.

Plaintiffs also contend that the government's actions during the protracted mediation process evidenced a lack of good faith. *See id.* This Court affords no weight to those contentions in its analysis. Settlement discussions are shielded (with good reason) from the public record in every case. Accordingly, this Court is unable to assess from the docket before it anything about

7

the years-long process occurring before the magistrate judges. It is evident that the process took a long time, but assessing blame to one side for the length or conduct of those negotiations would not be appropriate.

In totality, though, this Court finds that the government's litigation position has not been substantially justified. While certain elements of its position were reasonable (such as the agency's initial impulse to try to align its policies with the BIA's ruling), its implementation was not in accordance with the law, both in the lack of notice and comment rulemaking and the retroactive application of the new policy to existing asylum applications. And the government's repeated violative actions over the course of the litigation further lend credence to the conclusion that, in sum, it has not been substantially justified in its actions. A reasonable person could not find that the government's overall litigation position had a reasonable basis in law and in fact.

## B. ENHANCED FEES

With that finding on the issue of substantial justification, this Court next turns to calculating a reasonable fee award. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiffs generally request compensation under standard EAJA rates, adjusted for cost-of-living increases, as follows:

| Year Work Performed | Adjusted EAJA Rate |
|---|---|
| *Attorneys' Rates* | |
| 2019 | $209.88 |
| 2020 | $211.99 |
| 2021 | $220.76 |
| 2022 | $240.89 |
| 2023 | $250.01 |
| 2024 | $255.27 |
| *Paralegals' Rates* | |
| All Years | $115.00 |

ECF 208-1 at 27. Defendants agree that those hourly rates are reasonable. *See* ECF 216 at 8.

However, Plaintiffs also argue that three of Plaintiffs' counsel, Michelle N. Mendez, Esq., Kristen Jackson, Esq., and Wendy Wylegala, Esq., each possess "special factors" warranting receipt of enhanced hourly rates pursuant to 28 U.S.C. § 2412(d)(2)(A)(ii). ECF 208-1 at 28. That provision provides: "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The Supreme Court has specified that a special factor is present where the applicant has "distinctive knowledge or specialized skill needful for the litigation in question." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

Plaintiffs cite the extensive, specialized experience that the three named attorneys have in the specialized area of unaccompanied children asylum cases. ECF 208-1 at 29-35. This Court does not question the sterling credentials and expertise all three attorneys possess or the notion that their proficiency contributed meaningfully to the Plaintiffs' ability to litigate this difficult case promptly and effectively. However, this Court is unpersuaded that the enhanced rate is warranted here. First, Plaintiffs have not shown a "limited availability of qualified attorneys for the proceedings involved" – the Plaintiff Class found three such counsel to join their team. Second, Plaintiffs' arguments do not link the special skills possessed by the attorneys to the needs of this particular case. They contend that "unaccompanied children's asylum law and practice is an identifiable practice specialty not easily acquired by a reasonably competent attorney" because it "demands skills and experience that encompass trauma-informed, child centered, and culturally competent practice, as well as technical knowledge of the TVPRA and implementing policies." ECF 208-1 at 33. They further note that "attorneys engaged in unaccompanied children's asylum

law and practice draw on qualifications derived from training in basic child development and psychological concepts, as well as cultivating effective interviewing techniques and familiarity with the conditions that drive migration by unaccompanied children." *Id.* at 33-34. Of course, by virtue of their familiarity with the area of law, counsel were quickly able to recognize the importance of the Redetermination Memorandum's policy change and the harm that would accrue to a vulnerable class as a result. But a review of the billing statements in this case does not reflect that any billing counsel engaged in significant client-facing time during this litigation. In fact, many of the billing entries reflect class counsel's communications with "class member counsel," suggesting that some of the members in fact had other representation for their own cases. *See, e.g.*, ECF 208-2 at 24, 27-29; ECF 208-3 at 39, 47-48, 62. In other words, this Court does not find that the specialized experience possessed by these three attorneys, particularly the skills critical to interacting with the vulnerable client base, proved useful for the bulk of the litigation in this class action matter. This case extended over five years, consisting primarily of tasks relating to general litigation and settlement negotiation. The specialized experience was helpful, but not ultimately predominant in the needs of this case.

Moreover, the Supreme Court has cautioned that special factors in EAJA cases cannot be "of broad and general application." *Pierce*, 487 U.S. at 573. Applying the special factor analysis to three subject-matter expert attorneys of very similar expertise in a single case, particularly when those attorneys expended significant time and a high percentage of the billing entries (as discussed below) involve "team calls," runs counter to the narrowness of the "special factor" exception and would be inappropriate. This Court will therefore apply the standard EAJA rates, adjusted for cost

of living, to all of the billing attorneys in the case. With that ruling, the Plaintiff Class's fee request is now $1,070.363.73.[2]

## C. OTHER SUGGESTED REDUCTIONS

The government also asks for a general 75% reduction in Plaintiffs' requested fee award, on the basis of "countless time entries that lack the requisite level of information and detail" and "excessive and duplicative work." ECF 216 at 14. Both parties agree that Plaintiffs bear the burden of establishing their entitlement to fees by providing appropriate documentation of the hours expended. District courts have "substantial discretion in fixing the amount of an EAJA award." *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990). Courts generally recognize and approve the practice of a fixed percentage reduction where a fee petition contains a significant number of objectionable items, rather than requiring what would in this case be a line-by-line evaluation of more than five years of billing statements from multiple attorneys from five different organizations. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004); *Okla. Aerotronics, Inc. v. U.S.*, 943 F.2d 1344, 1347 (D.C. Cir. 1991). Some of the particular points of dispute leading to this Court's ultimate determination are reviewed below.

### 1. "Team Calls"

The Plaintiff Class originally requested $460,849.69 (incorporating the enhanced rates for the three experienced attorneys) for participation by various counsel in "team calls."[3] ECF 216 at

---

[2] This Court bases that number on Plaintiffs' own calculation following their agreement to remove certain time entries after reviewing the government's opposition to this motion. ECF 223 at 13.

[3] The requested amount for "team calls" would be reduced significantly because this Court declined to approve the enhanced rates. The reduction for each of those three attorneys in total billing is at least 50%. The parties did not provide this Court with an easy way to recalculate the team calls billing entries using the lower EAJA rate, but not all of the attorneys participating in "team calls" would experience a reduction.

11

15. The subject matter of the calls is not specified in many instances. *See, e.g.*, ECF 216-6 at 5, 10. On occasion, the billing attorneys who participated list inconsistent durations for the same call. *See, e.g., id*. at 34 (August 2, 2024 entries of 1.73 hours, 1.2 hours, and 1.3 hours respectively). Plaintiffs explain that they "held regular calls once or twice weekly throughout the case" to allow for collaboration and case strategy. ECF 208-1 at 23. In the context of this case, this practice is similar to an intra-office conference, for which the advisory guidelines in the Local Rules suggest that only one attorney should be billed. *See* Loc. R. App. B at 2.d ("Generally, only one lawyer is to be compensated for client, third party, and intra-office conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer."). While this Court does not adhere strictly to those guidelines and will not reduce each call down to a single billing attorney, it does consider the billing entries with greater caution given the frequency and the unspecified nature of the "team calls."

This Court, of course, acknowledges the need for coordination in a complex case like this with a broad team spanning several organizations, but is concerned that the coordination calls amount to an inordinate percentage of the overall fees billed in this case. That concern warrants some reduction in the overall number of hours billed.

### 2. "Vague Entries"

The government also argues that some of the other billing entries are excessively vague, listing tasks such as "amended complaint," "prepare for mediation," or "research" without specifying the actual nature of the work performed. ECF 216 at 18-19. Of course, billing attorneys strive to protect their work product while also affording a reviewing party sufficient specifics to assess the necessity of the work. Here, the majority of Plaintiffs' time entries fall on the "more general" side of the line, warranting some consideration in terms of a percentage-based reduction.

*See Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.")

   3.   **"Excessive Billing"**

Finally, in addition to the "team calls," the government contends that other billing entries show that Plaintiffs' counsel billed excessive hours for certain tasks. ECF 216 at 21-23. In particular, the government cites the billing for about 200 hours on *ex parte* letters to the mediating United States Magistrate Judges, and the billing for 21.99 hours preparing for the hearing on the final approval order in November, 2024. *Id*. at 21-22, 26. Once again, the Court believes these hours are marginally high, though not to the degree urged by the government. The mediation efforts in this case were extensive and although the final approval hearing turned out to be brief and uncontested, counsel appropriately came to court prepared in case it was not.

In the end, then, this Court concludes that there are reasons to exclude some percentage of time entries from reimbursement to adjust for vague or excessive billing entries. However, the government's request for a 75% reduction in the requested fees well overstates the severity of the billing issues presented in the Plaintiff Class's fee records. *See* ECF 216 at 25-27. This Court believes that a reduction of 15% from the requested number of hours accounts for the billing deficiencies described above and allows for calculation of a reasonable lodestar, using the agreed EAJA rates.

As the Supreme Court has explained, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry," as there may be additional reductions, for example, where plaintiffs achieved only partial success in the litigation's aims. *Hensley*, 461 U.S. at 434. No such factors have been argued in this case, and this Court finds no ground for further reduction.

**III.   CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for attorneys' fees and costs, ECF 208, will be granted in part and denied in part. Fees in the amount of $909,809.17 and expenses in the amount of $4,812.00 will be awarded by separate order in accordance with this memorandum opinion.

Dated: July 15, 2025

                                                                             /s/
                                                     Stephanie A. Gallagher
                                                     United States District Judge