**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

|  |  |
|---|---|
| J.O.P., *et al.*, | Civil Action No.<br>8:19-CV-01944-SAG |
| Plaintiffs, | **FILED UNDER SEAL** |
| v. | **CONTAINS INFORMATION** |
| U.S. Department of Homeland Security, *et al.*, | **DESIGNATED BY DEFENDANTS AS**<br>**CONFIDENTIAL PURSUANT TO**<br>**THE AMENDED PROTECTIVE** |
| Defendants. | **ORDER (ECF NO. 302)** |

**CLASS COUNSEL'S BRIEF IN SUPPORT OF THEIR MOTION TO FIND PROBABLE**
**CAUSE TO HOLD DEFENDANTS IN CONTEMPT**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

    A.    Defendant ICE Removed Cristian in Violation of the Settlement Agreement ........ 2

    B.    Defendants' Attempts To Vacate or Stay the Order To Facilitate Cristian's Return Were Rejected ............................................................................................ 4

    C.    Defendants' Status Reports Do Not Show Compliance with this Court's Orders.... 4

    D.    Defendants' Discovery Responses Do Not Show Compliance with this Court's Order To Facilitate Cristian's Return to the United States .................................... 7

    E.    Cristian Was Sent to Venezuela, not the United States, in Violation of the Court's Order and the Settlement Agreement ................................................................. 10

III.  LEGAL STANDARD...................................................................................... 13

IV.   ARGUMENT .................................................................................................. 14

    A.    The Court's Orders Are Clear and Specific ........................................................ 14

    B.    There Is Probable Cause to Find that the Defendants Have Repeatedly Violated this Court's Orders .................................................................................................. 17

    C.    There is Probable Cause to Find That Defendants' Violation of This Court's Orders Was Willful ................................................................................................... 20

    D.    Class Counsel's Proposed Path Forward ............................................................ 23

V.    CONCLUSION................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abrego Garcia v. Noem*,
  2025 WL 1135112 (4th Cir. Apr. 7, 2025) ................................................................. *passim*

*Common Cause v. Nuclear Regul. Comm'n*,
  674 F.2d 921 (D.C. Cir. 1982) ........................................................................15

*Gompers v. Buck's Stove & Range Co.*,
  221 U.S. 418 (1911) .......................................................................................14

*J.G.G. v. Trump*,
  No. 25-5124, 2025 WL 2264614 (D.C. Cir. Aug. 8, 2025) (*per curiam*)..............................24

*J.G.G. v. Trump*,
  No. CV 25-766, 2025 WL 1119481 (D.D.C. Apr. 16, 2025) ..................................23

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
  2025 WL 1431263 (4th Cir. May 19, 2025) ..................................................3, 4, 16

*Noem et al. v. Abrego Garcia et al.*,
  145 S. Ct. 1017 (2025)....................................................................................15

*Pabst Brewing Co. v. Brewery Workers Loc. Union No. 77, AFL-CIO*,
  555 F.2d 146 (7th Cir. 1977) ........................................................................20, 21

*United States v. Bostic*,
  59 F.3d 167, 1995 WL 371248 (4th Cir. 1995) ..................................................20

*United States v. Hendrickson*,
  822 F.3d 812 (6th Cir. 2016) ........................................................................20, 21

*United States v. Marx*,
  553 F.2d 874 (4th Cir. 1977) ........................................................................20

*United States v. McCoy*,
  828 F. App'x 910 (4th Cir. 2020) ...................................................................14

*United States v. McMahon*,
  104 F.3d 638 (4th Cir. 1997) ........................................................................15

*United States v. United Mine Workers of Am.*,
  330 U.S. 258 (1947)......................................................................................21

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
    481 U.S. 787 (1987)..................................................................................................13, 14, 15

**STATUTES**

18 U.S.C. § 401(3) ....................................................................................................................13

## I.    INTRODUCTION

The evidence available to date demonstrates probable cause that the government willfully violated the clear orders of this Court.  The Court, after finding that Defendants violated the Settlement Agreement when they removed Cristian from the United States without affording him an adjudication of his asylum application, ordered Defendants to facilitate Cristian's return to the United States.  The Court was explicit that this order included, at least, a good faith request to the government of El Salvador to release Cristian into U.S. custody for transfer back to the United States.  Defendants sought an emergency stay from the Fourth Circuit, but that request was denied. But rather than comply with the clear order and facilitate Cristian's return, the government left Cristian at CECOT for four months, where he suffered prolonged torture.  Moreover, despite a requirement to update the Court weekly on its efforts to facilitate a return, Defendants routinely and repeatedly offered empty statements concerning Cristian's whereabouts, but never provided the ordered information.  And when Defendants finally decided to coordinate Cristian's release from CECOT, instead of returning him to the United States as required by this Court's Order, they arranged for him to be sent to Venezuela, the country from which he was seeking asylum.  In short, despite this Court's clear order, Cristian endured four months of abuse at CECOT, only to be used as a pawn in a prisoner exchange orchestrated by the U.S. government.

Based upon the facts available to date, this Court should find probable cause that Defendants, and/or those working in concert with Defendants, may have committed criminal contempt.  After making this finding, the Court should permit additional discovery concerning the conduct at issue and hold a hearing or allow additional briefing on the subject.  And if the evidence warrants going forward, the next step would be a request that the contempt be prosecuted.

## II.    FACTUAL BACKGROUND

### A.    Defendant ICE Removed Cristian in Violation of the Settlement Agreement

Last year, the parties in this case entered into a class action settlement agreement (ECF No.[1] 199-2) that entitled Class Members to a "final determination on the merits" of their asylum applications prior to "removal from the United States." ECF No. 253. The Court granted final approval of the agreement on November 25, 2024. ECF No. 205. On March 15, 2025, President Trump issued a Proclamation titled, *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua*, ECF No. 227-2 Ex. 3, and that same day, Defendants began removing Venezuelan nationals to El Salvador whom the government alleged were subject to the Proclamation. Also on that same day, Judge Boasberg of the U.S. District Court for the District of Columbia issued a temporary restraining order preventing the removal of "[a]ll noncitizens in U.S. custody who are subject to" the Proclamation. Minute Order, *J.G.G. v. Trump*, No. 1:25-cv-766 (D.D.C. Mar. 15, 2025). Nevertheless, that day the government removed several hundred Venezuelans to El Salvador pursuant to the Proclamation. ECF No. 227-2 Ex. 4 (Decl. of Robert L. Cerna) ¶ 6.

One of these Venezuelan individuals was Cristian,[2] a 20-year-old Class Member who had an asylum application pending with USCIS. ECF No. 227-3 (Decl. of Maria J. Bocanegra) ¶ 5. On March 13, 2025, after learning from Defendant ICE that Cristian was to be removed from the United States, Cristian's immigration counsel alerted officials at ICE that Cristian was a *J.O.P.*

---

[1] Unless otherwise specified, "ECF No(s)." refer to the docket in this case, *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. 8:19-cv-1944 (D. Md.) and "CA4 Dkt. No(s)." refer to the docket in the government's pending appeal of this Court's order to facilitate Cristian's return to the United States, *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. 25-1519 (4th Cir.). Exhibits A-O, cited herein, are attached to the Declaration of Kevin J. DeJong.

[2] The Court ordered the parties to refer to this Class Member using a pseudonym. ECF No. 254.

class member and could not be removed.  Ex. A.  Cristian's immigration counsel provided a link

to the Settlement Agreement on Defendant USCIS's own website and informed the ICE officials

that Cristian "**cannot** be removed while he awaits USCIS adjudication of his I-589."  *Id.* (emphasis

in original).  Two days later, Defendants removed him to El Salvador.  ECF No. 227-2, Ex. 6 (Mar.

20, 2025 email from Richard Ingebretsen).  Cristian was then detained in CECOT, "a notorious

supermax prison known for widespread human rights violations," where he was incarcerated for

the four months.  *J.O.P. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1431263, at *6 (4th Cir. May

19, 2025) (Benjamin J., concurring) (quoting *Abrego Garcia v. Noem*, 2025 WL 1135112, at *1

(4th Cir. Apr. 7, 2025) (Thacker J., concurring)).  Public reporting indicates that the Venezuelan

nationals detained at CECOT endured horrific abuse and torture.[3]

On April 14, 2025, Class Counsel brought a Motion to Enforce the Settlement Agreement,

ECF No. 227, which was granted on April 23, 2025.  ECF No. 254 (the "April 23 Order").  The

Court ordered Defendants to "facilitate Class Member Cristian's return to the United States to

await the adjudication of his asylum application on the merits by USCIS under the terms of the

Settlement Agreement.  Facilitation includes, but is not limited to, a good faith request by

Defendants to the government of El Salvador to release Cristian to U.S. custody for transport back

to the United States."  ECF No. 254 ¶ 2.

---

[3] *E.g.*, Ex. B, Daniella Silva & Didi Martinez, *Venezuelans Describe Being Beaten, Sexually Assaulted and Told to 'Commit Suicide' During El Salvador Detention*, NBC News (July 28, 2025), https://www.nbcnews.com/news/us-news/venezuelans-cecot-el-salvador-returned-abuse-rcna220924; Ex. C, Jesus Mesa, *Trump's CECOT Prisoners Went on 'Blood Strike' to Protest Torture: Ex-Inmate*, Newsweek (July 25, 2025), https://www.newsweek.com/trumps-cecot-prisoners-went-blood-strike-protest-torture-ex-inmate-2103665; Ex. D, Samantha Schmidt, et al., *'Welcome to Hell': Inside the Megaprison Where the US Deported Migrants*, The Washington Post (July 31, 2025), https://www.washingtonpost.com/world/2025/07/31/venezuelans-deported-us-el-salvador-prison-cecot/.

**B.     Defendants' Attempts To Vacate or Stay the Order To Facilitate Cristian's Return Were Rejected**

Instead of taking steps to comply with the April 23 Order, Defendants filed a Motion to Vacate, arguing that even if Cristian were returned, his asylum application would be denied.  ECF No. 261.  This Court denied Defendants' attempt to vacate Paragraph 2 of the Court's April 23, Order (regarding facilitate Cristian's return to the United States), but permitted Defendants a brief stay of that paragraph of the Order to permit Defendants to file an appeal, ECF No. 270, which they filed on May 7, 2025 (ECF No. 271).

Upon docketing the appeal in the Fourth Circuit, Defendants filed a Motion for Stay Pending Appeal (CA4 Dkt. No. 8-1).  The Court of Appeals granted an administrative stay until May 15, 2025, to hear the parties' arguments on whether a stay pending appeal was warranted (CA4 Dkt. Nos. 12, 14, 21), but ultimately denied Defendants' Motion for Stay, (CA4 Dkt. No. 34); *J.O.P.*, 2025 WL 1431263, at *1.  In the decision, a panel majority explicitly agreed that this Court's requirement that Defendants make a "good faith request" was proper and aligned with the language approved by both the Supreme Court and the Fourth Circuit in *Abrego Garcia*.  *Id.* at *6 (Benjamin J., concurring, joined by Gregory, J.).

**C.     Defendants' Status Reports Do Not Show Compliance with this Court's Orders**

Despite this Court's explicit order, and the refusal of the Fourth Circuit to stay that order, Defendants have presented no evidence that they have complied with the order.  Recognizing that the April 23 Order was no longer stayed in any capacity, on May 20, 2025, this Court ordered Defendants to provide a Status Report by 5:00 PM on May 27, 2025.  ECF No. 280 (the "May 20 Order").  Defendants were ordered to provide information on three specific topics: "(1) Cristian's current physical location and custodial status; (2) what steps, if any Defendants have taken to

4

facilitate Cristian's return to the United States; and (3) what additional steps Defendants will take, and when, to facilitate Cristian's return." *Id.* at 2. On May 27, an hour after the 5:00 PM deadline, Defendants filed their Status Report. ECF No. 285. The only relevant information the status report provided in response to the May 20 Order was: "It is DHS's understanding that Cristian is in the custody of El Salvador. DHS has informed the Department of State (DOS) of the Court's order and requested DOS assistance in complying with the Court's order. DOS has acknowledged DHS's request." *Id.* at Ex. A (Decl. of Mellissa B. Harper) ¶ 10. Defendants provided no information on the second and third topics ordered by the Court.

After reviewing the "Status Report," this Court issued an Order on May 28, 2025 (ECF No. 287) (the "May 28 Order") finding that Defendants "utterly disregarded" the May 20 Order and reminding Defendants that "strict adherence to this Court's deadlines is expected and required." *Id.* at 1, 3. In the May 28 Order, the Court gave Defendants additional time to supplement their status report to comply with the May 20 Order. *Id.* at 2. On June 2, 2025, Defendants provided a supplemental status report (ECF No. 290) (the "June 2 Status Report") that provided that "Secretary Rubio has a personal relationship with President Bukele," that "he is personally handling the discussions with the government of El Salvador regarding persons subject to the Court's order," and that "he is committed to making prompt and diligent efforts on behalf of the United States to comply with that order." *Id.* Ex. A ¶ 6. But, again, Defendants failed to provide any information on what discussions had been conducted, or whether (as ordered by the Court) any one had made "a good faith request … to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." ECF No. 254 ¶ 2.

The May 28 Order also invited Class Counsel to propose "a process to create an appropriate record on Defendants' lack of compliance with this Court's orders." ECF No. 287 at 2. Class

Counsel responded with a proposed process (ECF No. 289) and the Court issued an Order on June 5, 2025 (ECF No. 293) (the "June 5 Order") ordering that Defendants on each Friday "file a weekly status report on or before noon ET in the form of a declaration by an individual with personal knowledge" concerning the same three topics previously identified by the Court: "any information regarding: (1) Cristian's current physical location and custodial status; (2) what steps, if any, Defendants have taken to facilitate Cristian's return to the United States; and (3) what additional steps Defendant will take, and when, to facilitate Cristian's return," *Id.* ¶ 1.

In response to the June 5 Order, Defendants filed eight Status Reports (ECF Nos. 294, 295, 300, 303, 307, 314, 330, 352) over the six-week period from June 6 to July 18, 2025. Of these, three were filed after the noon ET deadline set by the Court. ECF Nos. 303, 330, 352. In these Status Reports, Defendants report that the Department of State "is responsible" for "diplomatic discussions with El Salvador," *e.g.*, ECF No. 294 Ex. A ¶ 7, and has "acknowledged" the request for assistance in complying with the April 23 Order, *e.g.*, *id.* ¶ 5. The Status Reports state that a request was made "for information about Cristian's custodial status and health," *id.* ¶ 6, and some indicate that "[t]he Salvadoran government reported that Cristian is in a good state of health and has had regular medical exams, and he has put on weight," ECF No. 295 Ex. A ¶ 6. Four of the Status Reports, representing the period after June 12 and before July 18, simply stated that the State Department was awaiting a response regarding the "custodial status" and/or "health" of Cristian. *E.g.*, ECF No. 330 Ex. A ¶ 7; *see also* ECF Nos. 303, 307, 314. None of the reports addressed the second and third topics ordered by the Court, and none provided any evidence whether the State Department—or any other department of the U.S. government—made a good faith request for Cristian's "release … to U.S. custody for transport back to the United States." *See* ECF No. 254 ¶ 2.

**D.      Defendants' Discovery Responses Do Not Show Compliance with this Court's Order To Facilitate Cristian's Return to the United States**

The June 5 Order also provided for expedited discovery, ECF No. 293 ¶¶ 2, 4–6, noting that "should Defendants fail or refuse to engage in the above-described process in good faith, Class Counsel are free to seek sanctions on an expedited basis." *Id.* ¶ 7.

Defendants' responses to Class Counsel's discovery requests do not demonstrate any effort to comply with the Court's April 23 Order and provide no evidence that any good faith request to El Salvador was ever made.  Class Counsel served interrogatories on Defendants requesting that they "Describe each action [they] have already taken, and when, to Facilitate Cristian's release from custody in El Salvador" (No. 3) and "to Facilitate Cristian's return to the United States" (No. 5), and that they "Describe each action [they] plan to take in the future, and when, to Facilitate Cristian's release from custody in El Salvador" (No. 4) and "return to the United States" (No. 6). Ex. F (Defs' Resp. to Interrogatories). ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████[4]

---

[4] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Those statements are plainly inadequate.  The Fourth Circuit has held that "facilitation" requires more than merely removing "domestic barriers," *Abrego Garcia v. Noem*, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025), and this Court made clear at the July 22, 2025 Hearing that Defendants could not place the burden on Cristian to find his own way back to a port of entry.  Ex. G (7/22/25 Tr.) at 10-11. Indeed, this Court's April 23 order explained that "[f]acilitation includes, but is not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody *for transport back to the United States*."  ECF No. 254 ¶ 2 (emphasis added).

Class Counsel also requested that Defendants "Describe with specificity each Communication [they have] had with the U.S. Department of State concerning" the April 23 Order, the May 28 Order, or the June 5 Order. Ex. F (Defs' Resp. to Interrogatories), Interrogatory No. 8. ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████

Furthermore, in response to Class Counsel's discovery requests, Defendants have not produced a single document that indicates any request was made to El Salvador to release Cristian to the United States, let alone a "good faith request."[5]  The produced documents that reference communications specifically about Cristian—███████████████████████████████████

█████████████████████████████████████████████████████████████████

There is no reference in these emails to a request for Cristian's release.

---

[5] Defendants indicated in an email on July 11, 2025, that further production of documents would be forthcoming, but as of this filing, counsel has not received any additional documents. Additionally, on June 24, 2025, Defendants indicated in an email that there are responsive documents that are being withheld as classified, but have not produced a log of those documents or otherwise shared them with Class Counsel.

[6] ████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████

Defendants' apparent failure to comply with this Court's Order may stem from their disagreement with the Order itself.  In their discovery requests, Class Counsel defined the term "Facilitate" to mean the definition "adopted by the Court in this case."  However, in their responses, Defendants objected to this definition and argued that "Plaintiffs' definition of 'Facilitate' goes beyond what the Supreme Court and the Fourth Circuit Court of Appeals endorsed in *Abrego Garcia*" and is "in excess of the district court's jurisdiction," and, citing the dissent in the Fourth Circuit's order affirming this Court's use of the term "Facilitate," they argued that "[e]xpansion of the term 'Facilitate' to encompass an order requiring specific diplomatic communication from the Executive Branch is beyond the orders in *Abrego Garcia* …."  Ex. E (Defs' Resp. to Requests for Admission) at 3–5; Ex. F (Defs' Resp. to Interrogatories) at 4–5; Ex. O (Defs' Resp. to Requests for Production) at 3–5.  In their objections, Defendants note that the interpretation of "facilitate" is the subject of their "pending appeal."  *E.g.*, Ex. F (Defs' Resp. to Interrogatories) at 5.  These objections suggest that, despite this Court's explicit order and the Fourth Circuit's denial of the Defendants' request to stay that order, Defendants refused to comply with the Court's order that facilitation requires, at the very least, an explicit good faith request to transfer Cristian to U.S. custody for transport back to the United States.

Defendants' game-playing, stalling, and refusal to comply with this Court's order continued throughout the proceedings.  For example, shortly after producing this discovery,[7] on June 27, 2025, Defendants moved the Fourth Circuit to place their appeal of the April 23 Order in abeyance pending "a forthcoming motion" to "seek an indicative ruling pursuant to Fed. R. Civ. P. 62.1 from the United States District Court of Maryland" that Defendants have "complied with

---

[7] Defendants' Responses to Plaintiffs First Set of Expedited Discovery Requests are dated and were served on June 23, 2025.

the order." CA4 Dkt. No. 38 at 1–2. As of the filing of this motion, the briefing schedule for the appeal in the Fourth Circuit remains suspended (*see* CA4 Dkt. No. 42) and Defendants have not filed any such motion in this case. Defendants could have requested expedited briefing for their appeal; instead, they chose to slow-walk their appeal while failing to make any apparent effort comply with this Court's order.

Defendants also sought to avoid discovery of their conduct through procedurally flawed invocations of the state secrets privilege. When pushed to provide the procedurally necessary invocations of the state secret privilege, Defendants produced a facially inadequate declaration from Secretary of State Marco Rubio that was signed on May 23, 2025, involved an entirely different case, and was expressly limited to the contents of the privilege log in that case—despite having already been chastised for trying to recycle state-secret declarations once before. *See* ECF No. 341 at 4–5 (Reply Br. in Support of Mot. to Compel).

### E. Cristian Was Sent to Venezuela, not the United States, in Violation of the Court's Order and the Settlement Agreement

Despite Defendants' repeated assurances that the State Department was dutifully assisting Defendants in complying with the April 23 Order (*see, e.g.*, ECF No. 330 at 5-6; ECF No. 314 at 6), events on the ground and contemporaneous reporting show otherwise. On July 8, 2025, the New York Times reported that Secretary of State Marco Rubio was "overseeing a deal to free several Americans and dozens of political prisoners held in Venezuela in exchange for sending home about 250 Venezuelan migrants the United States had deported to El Salvador."[8] According to the Times, "[t]he negotiations over the swap … were led by the State Department and John

---

[8] Ex. K, Frances Robles et al., *U.S. Botched a Deal to Swap Venezuelans Held in El Salvador for Americans*, N.Y. Times (July 8, 2025), https://www.nytimes.com/2025/07/08/world/americas/trump-venezuelan-migrants-us-prisoner-swap.html.

McNamara," who works at the U.S. Embassy in Bogota.  *Id.*  Additionally, the Times reported that since the deal initially ran into a snag based on competing negotiations with Venezuela related to oil exports, "Mr. Rubio has taken the lead in talking to the Venezuelans."  *Id.*  While the initial reports suggested that any deal had stalled, on the morning of Friday, July 18, 2025, news reports began indicating that the prisoner swap reported on by the Times would be taking place that day.[9] Under the June 5 Order, Defendants were required to file their weekly Status Report by noon ET on July 18.  Despite the order, and the Court's prior reminder that Defendants must comply with both the substance and deadlines set by the Court's orders, Defendants failed to timely file the July 18 status report.

At 1:50 pm on July 18, Class Counsel contacted Defendants' counsel about the news coverage and at 3:16 pm, Defendants responded that they were "waiting for information from the Department of State."  Ex. J (7/18/25 email correspondence).  At 3:44 pm, Class Counsel notified the Court of the news coverage (ECF No. 350) and the Court ordered an additional status report on "Cristian's current location" and "whether he is being transported to Venezuela" (ECF No. 351) (the "July 18 Order").  Defendants finally responded by filing their mandated Status Report at 4:25 PM ET, reporting that Cristian had already been transferred to Venezuela as a result of "diplomatic efforts" by the United States (ECF No. 352 Ex. A ¶ 8) (the "July 18 Status Report").  Defendants' counsel represented that the status report was filed more than four hours late, a mere "inconvenience" according to Defendants, because "the arrangement discussed in Exhibit A [*i.e.*, the prisoner swap] did not come to fruition until approximately 3:45 pm Eastern Standard Time

---

[9] *E.g.*, Ex. L, Aram Roston et al., *El Salvador Sends Detained Venezuelans Home in Swap for Americans*, U.S. News & World Report (July 18, 2025), https://www.usnews.com/news/world/articles/2025-07-18/el-salvador-to-send-detained-venezuelans-to-caracas-in-exchange-for-americans-held-in-venezuela-sources-say (time stamp noting article was first published at 11:38 AM).

on July 18, 2025."[10]  ECF No. 352.  That assertion is inconsistent with public reporting of the prisoner swap before noon that same day.  *See supra* n. 9.  It also does not explain why Defendants failed to file a timely status report as ordered by the Court, which could have later been supplemented.  A more-than-reasonable inference is that Defendants and/or those working in concert with Defendants were aware that Cristian was in the process of being transported to Venezuela, and intentionally chose to delay filing their July 18 status report to prevent this Court and Class Counsel from being made aware until after he arrived in Venezuela.

At the hearing on July 22, 2025, Defendants' counsel (in apparent disregard of the Court's April 23 Order requiring that Defendants "make a good faith request"—language that the Fourth Circuit endorsed) stated that Defendants were not obligated to comply with the April 23 Order's direction to "make a good faith request" because they believed they were "in compliance" "[w]ith respect to the Supreme Court's language" and the "definition of facilitate that's with the Fourth Circuit, that was on a motion to stay" rather than "a merits decision."  Ex. G (7/22/25 Tr.) at 23-24.  Defendants thus appear to admit that they did not view themselves as bound by the express terms of this Court's Order and considered themselves free to disregard the Court's mandates based on a position they put forward in an unsuccessful stay application.

To be clear, the April 23 Order required Defendants to "facilitate Class Member Cristian's return *to the United States* to await the adjudication of his asylum application" (seeking asylum from Venezuela) on the merits by USCIS under the terms of the Settlement Agreement.  ECF No. 254 ¶ 2 (emphasis added).  Facilitation includes, but is not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian *to U.S. custody for transport back*

---

[10] Defendants' supplemental Status Report responding to the July 18 Order provided no further details.  ECF No. 353.

*to the United States.*"  *Id.* (emphasis added).  Instead, public reporting and the State Department's own press release[11] indicate that, contrary to Defendants' assertion in their June 2 Status Report, the State Department was *not* "committed to making prompt and diligent efforts on behalf of the United States to comply with [this Court's] order."  ECF No. 290 Ex. A ¶ 6.  Instead, the State Department engaged in negotiations to send Cristian to the very place from which he was seeking asylum.

In view of this factual record, there is probable cause to find Defendants, and/or others working in concert with Defendants, have committed criminal contempt in view of their repeated violation of this Court's Orders.

## III.    LEGAL STANDARD

Federal courts "possess inherent authority to initiate contempt proceedings for disobedience to their orders."  *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987).  Pursuant to 18 U.S.C. § 401(3), a federal court has the power "to punish by fine or imprisonment, or both, at its discretion, … [d]isobedience or resistance to it lawful writ, process, order, rule, decree, or command."  Indeed, "[t]he ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches."  *Young*, 481 U.S. at 796.  As the Supreme Court has explained, "[i]f a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the

---

[11] Ex. M, Marco Rubio, Secretary of State, *Welcoming the Release of U.S. Nationals and Political Prisoners Held in Venezuela*, U.S. Dep't of State (July 18, 2025), https://www.state.gov/releases/office-of-the-spokesperson/2025/07/welcoming-the-release-of-u-s-nationals-and-political-prisoners-held-in-venezuela/ ("I want to thank my team at the State Department, as well as our interagency partners … for their work to secure these long-awaited releases….").

Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911).

Criminal contempt of a court order requires finding (1) that the court order was clear and reasonably specific; (2) a violation of the order; and (3) willful intent to violate the order. *See United States v. McCoy*, 828 F. App'x 910, 911 (4th Cir. 2020). Defendants' status reports, responses to Class Counsel's discovery requests, and conduct over the last four months of Cristian's incarceration in El Salvador show probable cause for willful violations of this Court's April 23 Order (ECF No. 254) to facilitate Cristian's return to the United States; and violations of this Court's June 5 Order (ECF No. 293) to provide status reports on the steps, if any, Defendants took to facilitate Cristian's return and what additional steps Defendants will take, and when, to facilitate Cristian's return.

## IV.    ARGUMENT

The evidence to date demonstrates probable cause that Defendants, and/or those working in concert with Defendants, have engaged in conduct that constitutes criminal contempt. The Court's orders were clear and specific. Despite that, evidence shows that Defendants, and/or those working in concert with Defendants, violated the orders, and that those violations were willful; there is no other reasonable explanation for Defendants' failure to comply with the Court's clear orders. The Court should find probable cause for criminal contempt, and order further discovery to allow identification of the individuals responsible for the violation of this Court's orders.

### A.    The Court's Orders Are Clear and Specific

The first element of contempt requires that the order be "clear" and "reasonably specific," *Young*, 107 F.3d at 907. To "determin[e] whether an order is sufficiently clear and specific," courts "apply an objective standard that takes into account" not just "the language of the order" but also "the objective circumstances surrounding the issuance of the order." *Young*, 107 F.3d at 907. In

14

"assessing if an order contains the requisite specificity," the Court may "look at the defendant's own behavior and not to some hypothetical situation." *United States v. McMahon*, 104 F.3d 638, 643 (4th Cir. 1997). "[W]hether an order is clear enough depends on the context in which it [was] issued," which includes "the audience to which it [was] addressed," *Young*, 107 F.3d at 907-08 (quoting *In re Levine*, 27 F.3d 594, 596, 307 U.S. App. D.C. 144 (D.C. Cir. 1994)), as well as "the relief sought by the moving party, the evidence produced at the hearing on the injunction, and the mischief that the injunction seeks to prevent." *Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 927 (D.C. Cir. 1982) (citation modified). The Court's April 23 and June 5 Orders are both "clear" and "reasonably specific." On April 23, 2025, Defendants were ordered "to facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement. Facilitation includes, but is not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." ECF No. 254 at 3. The Court made clear that "[s]tanding by and taking no action is not facilitation." ECF No. 253 at 14. The Court's Order came on the heels of a similar order issued by Judge Xinis in this District, which the Supreme Court held "properly requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem et al. v. Abrego Garcia et al.*, 145 S. Ct. 1017, 1018 (2025). As set forth by Judge Wilkinson,

> The Supreme Court's decision does not, however, allow the government to do essentially nothing. It requires the government "to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Abrego Garcia*, *supra*, slip op. at 2. "Facilitate" is an active verb. It requires that steps be taken as the Supreme Court has made perfectly clear. *See Abrego Garcia, supra*, slip op. at 2 ("[T]he Government should be prepared to share what it can concerning the steps it has taken and the prospect of further steps."). The plain and active meaning of

15

the word cannot be diluted by its constriction, as the government would have it, to
a narrow term of art.

*Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025).  In short,

any suggestion that the language of the Order was not clear and specific is belied by the Supreme

Court and the Fourth Circuit's approval of the same language in *Abrego Garcia*.

It was also clear that Defendants understood this Court's Order.  In seeking a stay of the

Court's Order from the Fourth Circuit, Defendants never suggested that the Order was vague or

unclear.  Rather, they described what they understood to be the conduct required by the Order.

Defendants argued that the Fourth Circuit should stay this Court's order because "for the

Government to *request* [Cristian's] return would be an act of foreign affairs, an area

constitutionally assigned to the Executive Branch, and which courts must be very cautious to

intrude upon."  Appellants' Motion for Stay Pending Appeal at 17 (emphasis in original), *J.O.P.

v. United States Dep't of Homeland Sec.*, No. 25-1519 (4th Cir. May 5, 2025), CA4 Dkt. No. 8;

*see also id.* at 19 (acknowledging that the Court's order is "[d]irecting the return of Cristian to the

United States for adjudication of his asylum application pursuant to the settlement agreement" and

that it "is an injunction against the President's execution and operation of Title 50").  The Court's

Order was clear and Defendants understood it.  To comply required an explicit, good faith request

to the government of El Salvador to transfer Cristian to the United States.  Indeed, the dissenting

opinion from the Fourth Circuit panel further underscores that this Court's "facilitation" order

required a "good faith request by Defendants to the government of El Salvador to release Cristian

to U.S. custody."  *J.O.P. v. United States Dep't of Homeland Sec.*, No. 25-1519, 2025 WL

1431263, at *10 (4th Cir. May 19, 2025) (Richardson, J., dissenting).

The Court's June 5 order was also crystal clear—Defendants were ordered to:

> Beginning on Friday, June 6, 2025, and continuing each Friday thereafter until
> further order of this Court, Defendants should file a weekly status report on or

16

before noon ET in the form of a declaration by an individual with personal knowledge. The status report should include any information regarding: (1) Cristian's current physical location and custodial status; (2) what steps, if any, Defendants have taken to facilitate Cristian's return to the United States; and (3) what additional steps Defendants will take, and when, to facilitate Cristian's return.

ECF No. 293. The language itself is clear and specific—although Defendants repeatedly failed to comply, culminating in Defendants' intentionally late filing on July 15, 2025, to allow Cristian to be transported to Venezuela before Class Counsel and the Court were made aware of the secret prisoner deal.

**B.      There Is Probable Cause to Find that the Defendants Have Repeatedly Violated this Court's Orders**

There is probable cause to find that Defendants, and/or those working in concert with Defendants, repeatedly violated this Court's Orders.

Defendants removed Cristian to El Salvador in violation of the Court-approved Settlement Agreement, despite being put on notice from Cristian's immigration counsel that he was a Class Member that cannot be removed. Ex. A. Then, for the entire four months of Cristian's incarceration in CECOT, Defendants made no apparent effort to facilitate Cristian's return to the United States. Despite an explicit order that facilitating Cristian's return to the United States required affirmative conduct, and specifically included a good faith request to the government of El Salvador, Defendants have provided no evidence—none—that they ever made such a request. To the contrary, Defendants repeatedly filed status reports with the Court reporting only on Cristian's location (that he was being held in CECOT) and occasionally on his health. As recited above, even though the order concerning the status reports additionally required Defendants to provide evidence concerning its past and future efforts to facilitate Cristian's return, Defendants failed to provide any such evidence or even statements. Similarly, although the discovery requests tendered to Defendants required an explanation or identification of any such efforts, Defendants

17

were again silent on this subject. ████████████████████████████████████

████████████████████████████████████

      To the contrary, the available evidence suggests that *if* Defendants had made the ordered good faith request, Cristian would have been returned to the United States.  For example, on April 11, 2025, the Trump Administration confirmed that the United States had the power to release Cristian from prison in El Salvador and facilitate his return to the United States.  According to the President: "If the Supreme Court said, 'Bring somebody back,' I would do that. ... I respect the Supreme Court."[12]  As the Court is well aware, the Supreme Court did rule that the government must facilitate the return of another individual held at CECOT, Mr. Abrego Garcia.  The Court affirmed that the similarly worded order in *Abrego Garcia* "properly requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador."  *Noem*, 2025 WL 1077101, at *1.  On June 6, 2025, the Trump Administration finally facilitated the return of Mr. Abrego Garcia, but not Cristian, to the United States.  *See* Defendants' Notice of Compliance with Preliminary Injunction, *Abrego Garcia v. Noem*, 8:25-cv-00951 (D. Md. June 6, 2025), ECF No. 181.

      Rather than facilitate Cristian's return to the United States as ordered, Defendants instead arranged for Cristian to be sent to Venezuela, the country from which he is seeking asylum.  Cristian was a pawn in a prisoner exchange to release U.S. nationals held in Venezuela.  There is no reasonable question that the United States orchestrated the deal that sent Cristian to Venezuela.  Ms. Harper admits that "the United States engaged in diplomatic efforts to help make this

---

[12] Ex. N, Alan Feuer & Aishvarya Kavi, *White House Continues Defiant Stance on Seeking Return of Deported Man*, N.Y. TIMES (Apr. 11, 2025), https://www.nytimes.com/2025/04/11/us/politics/usmaryland-man-deportation-delay.html.

arrangement possible," ECF No. 352, which surely understates their involvement, given that 10 U.S. nationals were released from Venezuela. Indeed, on the same day of the prisoner swap, Secretary of State Rubio issued a public statement thanking his "team at the State Department, as well as our interagency partners" for securing the deal.[13]

To be clear, the April 23 Order required Defendants to "facilitate Class Member Cristian's return *to the United States* to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement. Facilitation includes, but is not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian *to U.S. custody for transport back to the United States*." (ECF No. 254 ¶ 2). Instead, public reporting and the State Department's own press release (*see* Ex. M) indicate that, contrary to the June 2 Status Report's assertion, the State Department was *not* "committed to making prompt and diligent efforts on behalf of the United States to comply with [its] order." (ECF No. 290). Instead, the State Department engaged in negotiations to send Cristian to the very country he was seeking asylum from, without an adjudication on the merits of his asylum application.

Defendants, and/or those working in concert with Defendants, also repeatedly violated the Court's orders to provide status reports regarding steps taken, and future steps, to facilitate Cristian's return. Defendants' first "status report," filed on May 27, 2025 (ECF No. 285) was woefully inadequate, as it provided **no information** on any steps taken to facilitate Cristian's return to the United States or any steps Defendants would take, and when, to facilitate his return. In

---

[13] Ex. M, Marco Rubio, Secretary of State, *Welcoming the Release of U.S. Nationals and Political Prisoners Held in Venezuela*, U.S. Dep't of State (July 18, 2025), https://www.state.gov/releases/office-of-the-spokesperson/2025/07/welcoming-the-release-of-u-s-nationals-and-political-prisoners-held-in-venezuela/ ("I want to thank my team at the State Department, as well as our interagency partners … for their work to secure these long-awaited releases ….").

response to the deficient "status report," the Court concluded that "Defendants utterly disregarded this Court's May 20, 2025 Order" by filing an untimely response which was the "functional equivalent of, 'We haven't done anything and don't intend to.'"  ECF No. 287.  And as the Court recognized, "Defendants not only ignore[d] the requirements of this Court's Order, ECF 254, 280, but also make no attempt to offer any justification for their blatant lack of effort to comply."  *Id.* at 2.  As set forth above, Defendants continued to ignore the requirements of this Court's orders, and filed deficient status reports throughout Cristian's time being held in CECOT.  *See supra* pp. 4-6.  And on July 18, Defendants filed their status report four hours late—and only after prodding by Class Counsel and the Court—to allow Cristian to be included in the prisoner swap without this Court's knowledge.  *Id.* at pp. 11-12.  There is probable cause to find Defendants, and/or those working in concert with Defendants, have violated this Court's orders.

### C.     There is Probable Cause to Find That Defendants' Violation of This Court's Orders Was Willful

Finally, there is probable cause to find that Defendants willfully violated this Court's April 23 Order.  In the criminal contempt context, "willfulness" means a volitional act done by a person who knows or should reasonably be aware that their conduct is wrongful, as opposed to an accidental violation of a court order.  *United States v. Marx*, 553 F.2d 874, 876 (4th Cir. 1977); *United States v. Bostic*, 59 F.3d 167, 1995 WL 371248, at *3 (4th Cir. 1995).  However, a defendant may not establish a lack of willfulness by stating that they believed the underlying order was not properly issued.  *See, e.g.*, *United States v. Hendrickson*, 822 F.3d 812, 821 (6th Cir. 2016) ("[A] defendant may not establish a lack of willfulness by stating that she believed the underlying order was not properly issued" because "[p]ersons who make private determinations of the law and refuse to obey an order generally risk criminal contempt"); *Pabst Brewing Co. v. Brewery Workers Loc. Union No. 77, AFL-CIO*, 555 F.2d 146, 150 (7th Cir. 1977) ("The merits of the

underlying order, in this case the preliminary injunction, cannot be challenged in the appeal from the contempt sentence for violations of that order.").  In short, an order issued by a court "must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947).

Defendants have admitted that they understood that they were ordered to take affirmative steps to facilitate Cristian's release from El Salvador, including but not limited to explicitly requesting such release in good faith, but that they failed to take such action.  For example, Defendants acknowledged that the Court's order required "the Government to *request* [Cristian's] return" objecting that the required action "would be an act of foreign affairs."  Appellants' Motion to Stay, at 17, *J.O.P. v. United States Dep't of Homeland Sec.*, No. 25-1519 (4th Cir. May 5, 2025), CA4 Dkt. No. 8.  But Defendants refused to follow the Court's Order even though their stay application failed (and they declined to seek further review in the Supreme Court or to proceed expeditiously with their Fourth Circuit appeal).  Indeed, before this Court Defendants could not have been more clear: despite this Court's order and the Fourth Circuit's refusal to stay that order, Defendants contended that they were not obligated to comply with the April 23 Order's direction to "make a good faith request" because they believed they were "in compliance" "[w]ith respect to the Supreme Court's language" and the "definition of facilitate that's with the Fourth Circuit, that was on a motion to stay" rather than "a merits decision." Ex. G (7/22/25 Tr. 23-24).  This contention is not consistent with a mistake or failure to understand the order.  Rather, it is an argument that the Defendants believed they could disregard an order because they had filed an appeal but lost on their stay application.  Such an argument attacking the validity of a binding order that has not been stayed is not a defense to a charge of criminal contempt. *Hendrickson*, 822 F.3d at 821; *Pabst Brewing Co.*, 555 F.2d at 150.

21

Defendants' apparent efforts to hide Cristian's transfer to Venezuela, in violation of the Court's order to file a timely status report on July 18, confirms the willfulness of Defendants' conduct. Each Friday, Defendants were required to file a status report by a noon filing deadline. As explained, Defendants' status reports were regularly deficient but did include a report concerning Cristian's location. While the details remain to be confirmed, it appears that preparation for Cristians' transfer to Venezuela may have been underway by at noon on July 18, 2025. Rather than comply with the Court's Order and inform the Court (and Class Counsel) of Cristian's pending or in-process transfer, Defendants simply failed to comply with the Court's Order to file the status report. After Class Counsel objected to this failure, and the Court ordered Defendants to comply, Defendants finally filed a status report at 4:25 pm. ECF No. 352. At that time, Defendants finally confirmed that Cristian had been "released" from CECOT and transferred to Venezuela in exchange for the release of "ten wrongful [American] detainees" and 80 Venezuelan political prisoners. *Id.* at 6. Defendants' counsel's statement that the filing was delayed because the events "did not come to fruition until approximately 3:45 pm" (*id.* at 1) is contrary to public reporting of the prisoner exchange that morning, and does not explain why Defendants waited until Cristian had been transferred before informing the Court or Class Counsel of the impending move. It is hard to see what could explain this sequence of events other than an intentional effort to conceal Cristian's status and whereabouts until the transfer to Venezuela was effectuated; certainly, Defendants' counsel has provided no innocent explanation for disregarding the Court's Order and deadline. Defendants' apparent efforts to hide the transfer before it occurred, in violation of the Court's orders, provides further support for a finding of probable cause of the willfulness of the contemptuous conduct.

### D.    Class Counsel's Proposed Path Forward

Class Counsel proposes the following path forward.  First, the Court should determine whether there is probable cause that Defendants and/or those working in concert with Defendants have committed criminal contempt based on violations of the Court's Orders, as set forth in this motion.[14]  As set forth above, the record amply demonstrates that there is probable cause.  Second, if the Court were to find probable cause for criminal contempt, further discovery is warranted, including to determine who amongst Defendants, or those working in concert with them, committed the contempt and should be held accountable.  *See J.G.G. v. Trump*, No. CV 25-766 (JEB), 2025 WL 1119481, at *20-21 (D.D.C. Apr. 16, 2025) (explaining that declarations, hearings, or depositions are appropriate to determine who caused the noncompliance), *vacated on other grounds*, No. 25-5124, 2025 WL 2264614 (D.C. Cir. Aug. 8, 2025).  At this second step, Class Counsel requests that the Court (1) resolve Class Counsel's previously filed motion to compel discovery (ECF No. 308); (2) allow additional discovery related to Defendants' removal of Cristian to Venezuela, which occurred after Class Counsel issued their discovery requests; and (3) require declarations from all individuals involved in compliance with this Court's Order.  *Id.* Third, after that discovery is completed, the Court may conduct a hearing to take witness testimony

---

[14] To initiate contempt proceedings, an inquiry into probable cause is not strictly necessary.  As Judge Boasberg recently explained, "[T]he statute does not include a probable-cause requirement, and as the Department of Justice has explained in an internal manual, It is unclear whether probable cause that a willful violation has occurred is a condition precedent to the commencement of a criminal contempt action. U.S. Dep't of Just., Criminal Resource Manual § 763, https://perma.cc/Z5DV-RUNU.  In practice, the vast majority of criminal contempt decisions make no mention of such a requirement.  *Id.*  Some courts, however, have opted to make or require findings of probable cause before initiating criminal-contempt proceedings."  *J.G.G. v. Trump*, No. CV 25-766 (JEB), 2025 WL 1119481, at *8 (D.D.C. Apr. 16, 2025) (citation modified) (collecting cases), *vacated on other grounds*, No. 25-5124, 2025 WL 2264614 (D.C. Cir. Aug. 8, 2025).

under oath or, allow Class Counsel to lay out the evidence in a written submission. And if the evidence warrants going forward, the next step would be a request that the contempt be prosecuted.

As the Court is likely aware, the U.S. Court of Appeals for the District of Columbia, in a 2-1 opinion, recently granted mandamus and vacated Judge Boasberg's probable-cause contempt order, relating to the government's apparent violation of the court's order to refrain from "removing members of such class (not otherwise subject to removal) pursuant to the [March 15] Proclamation for 14 days or until further Order of the Court." *See J.G.G. v. Trump*, No. 25-5124, 2025 WL 2264614, at *2 (D.C. Cir. Aug. 8, 2025) (*per curiam*). Judge Katsas, in his concurring opinion, stressed that the "TRO was insufficiently clear to support criminal contempt" on grounds that there was ambiguity in the court's order. *Id.* at *6 (Katas, J., concurring). And Judge Rao, in her concurring opinion, held that the order should be vacated on grounds that the district court had "used the threat of criminal process to coerce the government to 'purge' its contempt." *Id.* at *18 (Rao, J., concurring). Neither issue is implicated here. This Court's Order was clear and specific, and a finding of criminal contempt here would properly serve to punish Defendants for past violations, not to coerce them into compliance with the Court's previous orders.

## V.    CONCLUSION

While the evidence recited here establishes probable cause to believe that Defendants, and/or those working in concert with the Defendants, intentionally violated this Court's orders, Defendants' refusal to explain its conduct or provide any substantive discovery prevents identification of who directed or conducted the facially contemptuous conduct. The Court should find that probable cause exists for a finding of criminal contempt, and should allow further discovery into that conduct, including to determine the individuals to be held responsible for such conduct.

Dated: August 14, 2025


Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20036
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project
30 S. 10th Street (c/o University of St. Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5494
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted pro hac vice*

25