# Exhibit G

1        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MARYLAND
2                SOUTHERN DIVISION

3   J.O.P., et al.,                    )
                                        )
4            Plaintiffs,               )
          vs.                          )
5                                       ) CIVIL NO.:
    U.S. DEPARTMENT OF HOMELAND         ) 8:19-cv-01944-SAG
6   SECURITY, et al.,                   )
                                        )   **<u>SEALED</u>**
7            Defendants.               )
    _____)

8
                                    Baltimore, Maryland
9                                   July 22, 2025
                                    10:00 a.m.
10
                    TRANSCRIPT OF PROCEEDINGS
11            **MOTIONS HEARING - STATUS CONFERENCE**
          BEFORE THE HONORABLE STEPHANIE A. GALLAGHER
12                    Courtroom 7C

13  <u>For the Plaintiffs:</u>

14        KEVIN J. DeJONG, Esquire
          SIERRA PEREZ-SPARKS, Esquire
15          Goodwin Procter LLP
            100 Northern Ave.
16          Boston, MA 02210

17        JAIME A. SANTOS, Esquire
            Goodwin Procter LLP
18          1900 N Street, NW
            Washington, DC 20036
19
          MICHELLE N. MENDEZ, Esquire
20          National Immigration Project
            1201 Connecticut Ave. NW, Suite 531
21          Washington, DC 20036

22  <u>For the Defendants:</u>

23        RUTH ANN MUELLER, Esquire
            Department of Justice - Civil
24          Office of Immigration Litigation
            District Court Section
25          450 5th Street NW
            Washington, DC 20001

*Patricia G. Mitchell, RMR, CRR  Federal Official Court Reporter*
*101 W. Lombard Street, Fourth Floor*
*Baltimore, MD 21201*

1    <u>For the Defendants</u>:  (Continued)

2        YAMILETH G. DAVILA, Esquire
            Department of Justice - Civil
3           Office of Immigration Litigation
            1100 L St., N.W.
4           Washington, DC 20530

5        ERHAN BEDESTANI, Esquire
         KELARK AZER HABASHI, Esquire
6           Department of Justice - Civil
            Office of Immigration Litigation
7           P.O. Box 868, Ben Franklin Station
            Washington, DC 20044

8

9

10

11

12        (Computer-aided transcription of stenotype notes)

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  Sure.  I think you have already put on

2   the record that you have -- the public record that you have not

3   yet been able to be in contact with him but that's as far as

4   we've gotten --

5          MR. DEJONG:  Correct.

6          MS. MUELLER:  Your Honor, if I may, just to

7   reiterate, as of yesterday it is our understanding that he is

8   not in custody.  The Government stands ready to facilitate his

9   return to the United States.  We just need time to have those

10   conversations with plaintiffs.  We had a call with plaintiffs

11   yesterday.  I understand not all of the team was available

12   yesterday, but these are conversations that are ongoing that we

13   just need to have.  The U.S. government is ready and able to

14   help facilitate his return should Cristian want to return, but

15   that's the first question we need to resolve.

16          THE COURT:  I think they need to make contact with

17   him to know the answer.

18          MS. MUELLER:  Yes.

19          MR. DEJONG:  To be clear, in our view, it's not the

20   first question that needs to be resolved.  What she is omitting

21   is that what they are offering to do is to tell him he somehow

22   needs to find his way back to the United States.

23          THE COURT:  Oh, wait.  You're not offering to bring

24   him back to the United States?

25          MS. MUELLER:  Your Honor, we're ready to facilitate.

1   I think these are ongoing conversations again we can have with

2   plaintiff's counsel this week.  We've only had one brief

3   conversation yesterday.  We need to continue to talk on our end

4   about how we can help facilitate him and what we can do to

5   bring him back.  For us, the most important question is if he

6   wishes to return.

7           THE COURT:  Right --

8           MS. MUELLER:  These are just ongoing conversations

9   that are hurriedly and fast evolving, based off of the

10  declaration from Friday and our conversations with plaintiff's

11  counsel and our clients yesterday.

12          THE COURT:  Let me be clear.  To the extent he

13  desires to come back, in my view, the Government's obligation

14  will be to return him to the status quo ante which is that he

15  was here waiting for asylum under the terms -- waiting for his

16  asylum hearing under the terms of the plea agreement before he

17  was taken to El Salvador and now to Venezuela.  In my view, it

18  is going to be that it is on the Government not only to

19  facilitate by assisting in getting permission for him to come

20  back but to bring him back to the position he was in before the

21  agreement was breached.  To the extent that helps your

22  conversations with your clients, it should go in that

23  direction.

24          MS. MUELLER:  Understood, Your Honor.

25          MR. DEJONG:  Thank you, Your Honor.

1   report, her declaration on Friday demonstrate the high-level

2   communications that are occurring here and why discovery now is

3   moot or, at a minimum, should be stayed pending continued

4   discussions with plaintiffs as to how to return Cristian to the

5   United States.

6          Based off A.D. Harper's declaration on paragraph 9 of

7   docket entry 352, there are three steps that the Government is

8   working through and needs to have time to discuss with

9   plaintiff's counsel.  Should Cristian wish to return, the U.S.

10  government is ready and able to facilitate that.  The question

11  is whether or not he needs -- whether or not he wishes to

12  return once plaintiff's counsel makes that determination with

13  their client.

14         As of yesterday in discussing with our clients, it's our

15  understanding that Cristian is out of custody, and class

16  counsel would need to be the ones to reach out to him.  Those

17  conversations are ongoing.  The parties had a meet and confer

18  yesterday to begin those conversations, and I think that

19  continuing discovery on any request from plaintiffs, based off

20  plaintiff's representations today, are outside the scope of the

21  Court's June order.  This was narrowly tailored discovery with

22  respect to the April order, so any ongoing discovery is not

23  narrowly tailored and is outside of the relief this Court has

24  already provided plaintiffs.

25         THE COURT:  You would agree with me that if there

1    were a motion to compel or motion for sanctions pending, that

2    that discovery may once again be relevant?  Because that

3    presumably would relate to the overarching conduct in this case

4    and not simply the current posture?

5              MS. MUELLER:  Yes, Your Honor, but again the weekly

6    status reports and, in particular, A.D. Harper's report from

7    Friday, demonstrate that the U.S. government has been in

8    compliance with facilitating Cristian's return, especially with

9    the definition of "facilitation" from the U.S. Supreme Court in

10   *Abrego*.  We are working towards those --

11             THE COURT:  But we actually don't know that yet

12   because I defined in my order, and the Fourth Circuit at least

13   agreed, that asking the question for him to be returned from El

14   Salvador to the United States, making that request was part of

15   facilitating.  I still don't know whether that ever happened.

16   I understand that the Government has now reached an arrangement

17   by which he was sent to Venezuela which was the country he was

18   seeking asylum from, but I still have no way of knowing whether

19   anyone ever posed the question to El Salvador and said, "Hey,

20   we want Cristian to come back to the United States."  We don't

21   know if that happened or not.

22             MS. MUELLER:  Understood, Your Honor.  And, again,

23   the definition of facilitate that's with the Fourth Circuit,

24   that was on a motion to stay.  Whereas with the *Abrego*

25   decision, that was on a merits decision.  With respect to the

1   Supreme Court's language right now, we are in compliance with

2   the Court's order, and we are continuing to be in compliance

3   with the Court's order.  Again, DHS --

4              THE COURT:  So the Government's take is that it does

5   not have to comply with Fourth Circuit rulings if it's not on

6   the merits decision?

7              MS. MUELLER:  No, Your Honor.  We are in compliance

8   with the Court's order, but again --

9              THE COURT:  How?  Because what evidence do I have

10  that you were in compliance with that?  Again, I don't know the

11  answer to this question, whether anyone ever asked El Salvador

12  to return Cristian to the United States.

13             MS. MUELLER:  Yes, Your Honor.  In response to that,

14  I would refer the Court's attention to paragraph 7 and 8 in

15  A.D. Harper's declaration.  Paragraph 7 where Harper says that

16  "DOS informed me today, July 18, 2025, that the Salvadoran

17  government, in the sole exercise of its sovereign authority,

18  released Cristian from CECOT ... to be flown to their home

19  country of Venezuela, as part of an arrangement between El

20  Salvador and the Maduro regime."

21             THE COURT:  How does that answer the question of

22  whether the United States government ever asked El Salvador for

23  his return?

24             MS. MUELLER:  Your Honor, I have no further

25  information with respect to anything outside of A.D. Harper's

1    declaration, but again I think what happened with El Salvador

2    is moot now.  Now that Cristian is in Venezuela, as you

3    mentioned --

4              THE COURT:  But it wouldn't be moot to the question

5    of whether my orders were complied with or not, right?  It's

6    not moot if that's the question we're looking at.  It may be

7    moot as to the ability at present to facilitate Cristian's

8    return, but whether my orders were complied with or not is

9    still an open question.

10             MS. MUELLER:  Yes, Your Honor.  And we are complying

11   with the Court's order to the extent that we have provided

12   these weekly status reports.  The actions that were in El

13   Salvador are now moot.  The idea of facilitation now that he is

14   in Venezuela is very different; we are in a very different

15   posture which is what you said at the beginning of this

16   hearing, Your Honor.

17       Again, it's the Government's position that discovery with

18   respect to the discovery pending and the motion to compel is

19   moot.  Any ongoing discoveries outside the Court's narrowly

20   tailored June order on expedited discovery and discovery, at a

21   minimum, should be stayed here while the parties work through

22   the prongs on paragraph 9 of A.D. Harper's declaration, as well

23   as providing plaintiff's counsel time to contact and discuss

24   with their client, as well as having the Government work on

25   facilitation once we have those -- once we understand what