**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

_____
)
J.O.P., *et al.*,                                        )
                                                         )
      Plaintiffs,                                )
                                                         )
   v.                                                )  Case No. 8:19-cv-01944-SAG
                                                         )
U.S. DEPARTMENT OF HOMELAND          )
SECURITY, *et al.*                                 )
                                                         )
      Defendants.                              )
_____)

# DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO VACATE PARAGRAPH 2 OF THE COURT'S ORDER OF APRIL 23, 2025

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

LEGAL STANDARD ..................................................................................................................... 6

ARGUMENT .................................................................................................................................. 7

    I.    Paragraph 2 of the Court's April 23, 2025, Order Must be Vacated Under Rule 60(b)(5) Because Cristian Does Not Wish to Return to the United States ............................................. 7

    II.    The Court's April 23, 2025, Order Is No Longer Equitable Because Further Compliance is Impossible Without Cristian's Cooperation. ..................................................................... 11

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

## Cases

*Abrego Garcia v. Noem*,
  No. 25-1345, 2025 WL 1021113 (4th Cir. Apr. 7, 2025) ................................................. 12

*Acheson Hotels, LLC v. Laufer*,
  601 U.S. 1 (2023) ......................................................................................................... 6, 10

*Aikens v. Ingram*,
  652 F.3d 496 (4th Cir. 2011) ............................................................................................ 11

*Al-Sabah v. Agbodjogbe*,
  No. 20-2375, 2021 WL 5176463 (4th Cir. Nov. 8, 2021) .................................................. 7

*Horne v. Flores*,
  557 U.S. 433 (2009) ...................................................................................................... 6, 9

*J.G.G. v. Trump*,
  No. 25-5124, 2025 WL 2264614 (D.C. Cir. Aug. 8, 2025) ..................................... 9, 12, 13

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) ......................................................................................................... 10

*Klapprott v. United States*,
  335 U.S. 601 (1949) .................................................................................................. 12, 13

*Lighthouse Fellowship Church v. Northam*,
  20 F.4th 157 (4th Cir. 2021) .............................................................................................. 6

*Liljeberg v. Health Services Acquisition Corp.*,
  486 U.S. 847 n. 11 (1988) .................................................................................................. 7

*Liner v. Jafco, Inc.*,
  375 U.S. 301 (1964) ........................................................................................................... 6

*Powell v. McCormack*,
  395 U.S. 486 (1969) ........................................................................................................... 6

*Rose v. Berryhill*,
  694 F. App'x 190 (4th Cir. 2017) ....................................................................................... 8

*RTA Transit Servs., Inc. v. Amalgamated Transit Union, Loc. 22*,
  50 F. App'x 455 (1st Cir. 2002) ......................................................................................... 6

*Rucker v. Mathews*,
   No. 75-531, 1976 WL 13408 (D.D.C. Nov. 2, 1976) .............................................................. 8

*Trump v. J. G. G.*,
   145 S. Ct. 1003 (2025) ...................................................................................................... 10

*Valero Terrestrial Corp. v. Paige*,
   211 F.3d 112 (4th Cir. 2000) ............................................................................................... 7

**Statutes**

28 U.S.C. § 2241 .................................................................................................................... 10

50 U.S.C. Ch. 3 ........................................................................................................................ 2

50 U.S.C. § 21 ........................................................................................................................ 10

**Rules**

Federal Rule of Civil Procedure 60(b)(5) ................................................................. 1, 6, 7, 13

Federal Rule of Civil Procedure 60(b)(6) ................................................................................ 7

Rule 60(b)(1)-(5) ...................................................................................................................... 7

**Regulations**

8 C.F.R. § 1003.19 ................................................................................................................. 10

**INTRODUCTION**

Defendants request that this Court vacate Paragraph 2 of its April 23, 2025, Order granting Plaintiffs' Emergency Motion to Enforce the Settlement Agreement, ECF No. 254, pursuant to Federal Rule of Civil Procedure 60(b)(5) and (b)(6). In that order, this Court directed Defendants to facilitate Cristian's return to the United States to await an adjudication of his pending asylum application on the merits.[1] Cristian is a national and citizen of Venezuela. ECF No. 268 at 2. On July 18, 2025, "the Salvadorian Government in the sole exercise of its sovereign authority, released Cristian from CECOT, along with 251 other Venezuelan nationals, to be flown to their home country of Venezuela, as part of an arrangement between El Salvador and the Maduro regime." *See* ECF No. 352 at 6. Cristian currently remains in Venezuela and, per Class Counsel, while he has expressed "an interest in returning to the United States" he has "strong reservations" because he will be returned to immigration detention pending adjudication of his asylum application. ECF Nos. 368 at 3; 380 at 2; 384 at 2. Defendants have complied with the order to facilitate Cristian's return to the United States but all indications from Class Counsel to date support a conclusion that he does not wish to leave his native Venezuela and return to the United States if he will be subject to immigration detention. Therefore, the Court should vacate Paragraph 2 of its April 23, 2025 Order, ECF No. 254, as moot pursuant to Rule 60(b)(5). In the alternative, the Court should vacate Paragraph 2 pursuant to Rule 60(b)(6) because Cristian does not presently wish to return to the United States and foreign affairs sensitivities are implicated by the order.

---

[1] Defendants respectfully maintain that the Court erred in its conclusion that Defendants' removal of Cristian pursuant to the AEA violated the settlement agreement in this matter and that the Court lacked jurisdiction to compel his return. Defendants' appeal of the Court's April 23, 2025, Order is currently pending before the U.S. Court of Appeals for the Fourth Circuit. *See J.O.P. v. United States Department of Homeland Security*, No. 8:19-cv-01944-SAG (4th Cir.).

## BACKGROUND

On November 25, 2024, the Court granted final approval of a settlement agreement providing relief to a certified class of asylum seekers previously determined to be unaccompanied alien children. ECF No. 205. Section III.I of that agreement specified that "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." ECF No. 199-2 at 9. On March 15, 2025, Cristian[2]—a JOP Class member in ICE custody following a felony conviction for possession of cocaine—was removed under the Alien Enemies Act ("AEA"), 50 U.S.C. Ch. 3, as a Venezuelan citizen 14 years of age or older who is a member of Tren de Aragua ("TdA") following Presidential Proclamation 10,903, *Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua*. ECF No. 248-1 at ¶ 14. Plaintiffs filed an Emergency Motion to Enforce the Settlement Agreement on April 19, 2025, alleging that Defendants' removal of Cristian was a violation of the settlement agreement because he had a pending asylum application that had not been adjudicated before his removal. *See* Memo Mot. Enforce at 15, ECF No. 227-1.

On April 23, 2025, the Court granted Plaintiffs' motion. *See* ECF Nos. 253, 254. In Paragraph 2 of its order granting Plaintiffs' motion, the Court ordered Defendants to "facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement. Facilitation includes, but is not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States" *Id.* at 2. Because Cristian

---

[2] As per the Court's April 23, 2025 order (ECF 254), Plaintiff is to be referred to by his pseudonym "Cristian."

was in the sole custody of the government of El Salvador, requiring high-level diplomatic discussions to effectuate the Court's order, Defendants asked the Department of State for assistance and the Department of State "assumed responsibility on behalf of the U.S. Government for these diplomatic discussions with El Salvador." *See* ECF. No. 352. Defendants reported on facilitation efforts with what information they could share in weekly status reports filed between May 27, 2025, and July 18, 2025. *See* ECF Nos. 285, 290, 294, 295, 300, 303, 307, 314, 330, 352. In this regard, it should be noted that the State Department made repeated requests to El Salvador for updates on Cristian's custodial and health status, but El Salvador only responded to these requests twice. *See* ECF Nos. 295-1 at 3; 300-1 at 3.

On July 18, 2025, after talks in which the United States served as intermediary in light of the acrimonious relationship between El Salvador and the Maduro regime, "the Salvadoran Government in the sole exercise of its sovereign authority, released Cristian from CECOT, along with 251 other Venezuelan nationals, to be flown to their home country of Venezuela, as part of an arrangement between El Salvador and the Maduro regime." ECF 352 at 6; *see also* Comisión Interamericana de Derechos Humanos, *United States: Human rights situation of migrants, refugees and asylum seekers* (July 22, 2025) https://www.youtube.com/watch?v=5zJpvgzxnwg (State Department publicly explaining to Inter-American Commission on Human Rights how "the United States resolved to use its diplomatic good offices to help the two sides achieve the humanitarian solution [Salvadoran] President Bukele had offered" to Nicolas Maduro). "[T]he decision to release the Venezuelan nationals from CECOT, and to repatriate them to Venezuela, was made solely by the Government of El Salvador in the exercise of its sovereign authority." ECF No. 352 at 6. The United States, however, also obtained assurances from the Maduro regime that it would not impose obstacles to an individual's travel to the United States if the travel was "called

3

for in legal proceedings or required by a court" and "the individual [was] willing to travel to the United States for that purpose." *Id.* Cristian's release from El Salvador's custody, as facilitated by the United States, along with the assurances that the United States obtained from the Maduro regime, cleared the path for Cristian to return to the United States if he so desired.

The Court subsequently held a status hearing on July 22, 2025, at which Defendants made clear they were "ready and able to help facilitate [Cristian's] return should Cristian want to return…" Exhibit A, July 22, 2025 Hearing Tr. 10:14. The Court agreed that this was the first question that needed to be resolved and directed Class Counsel to make contact with Cristain to determine his wishes. *Id.* at 10:13-17; 14:6-11. The Court emphasized that "[t]o the extent [Cristian] desires to come back, in [it's] view, the Government's obligation will be to return him to the status quo ante," which meant returned to the United States to await adjudication of his asylum claim by USCIS. *Id.* at 11:12-17.

In a subsequent order on July 22, 2025, the Court directed the parties to file weekly joint status reports apprising "the Court of developments in the parties' discussions regarding the return of Cristian to the United States for adjudication on the merits of his asylum application be USCIS." ECF No. 358. Since the July 22, 2025, status hearing and issuance of the Court's order (ECF No. 358), the parties have met and conferred a total of five times and submitted to the court five weekly joint status reports. The first meeting occurred on July 23 with the subsequent joint status report (JSR) filed on July 25. ECF No. 363. In this first meeting, Plaintiffs' counsel confirmed they were able to communicate with Cristian but represented that he "would need time to attempt to recover" from alleged torture in CECOT—an allegation Defendants do not concede—"and to understand options available to him." *Id.* at 3. Defendants "confirmed that they are prepared to continue to comply with the court's order by facilitating Cristian's return to the United States should he want

4

to return" and requested information necessary to facilitate his return including his location in Venezuela and what travel documents he possessed. *Id.* at 2. The second meeting occurred on July 30 and the JSR was filed on August 1. ECF No. 366. Class Counsel did not confirm "whether Cristian wishes to return to the United States," and explained that "basic information and assurances from the government are necessary so that Cristian may make an informed decision." ECF No. 366 at 3. To that end Class Counsel conveyed thirteen separate questions regarding how Cristian would be treated should he return. Defendants answered these questions at the next meeting on August 6. ECF No. 368 at 2. In the JSR filed on August 8, Class Counsel represented that they "continued to be in contact with Cristian and that they would inform Defendants and the Court as to Cristian's intentions as soon as they are able to do so." *Id.* at 2-3. Class Counsel stated that "Cristian's interest in returning to the United States to receive his asylum adjudication is undermined by serious reservations based on the government's representations of how he will be treated upon his return, including whether he will be detained and the possibility of removal to a third country without a hearing or the opportunity to object." *Id.* at 3. The fourth meeting occurred on August 13 and the JSR was filed on August 15. ECF No. 380. During interim period between the third and fourth meet and confers, Defendants responded to a series of questions submitted by class counsel. *Id.* at 1-2. In answering these questions, Defendants confirmed that they would cover reasonable travel costs and confirmed again that Cristian would be returned to immigration detention upon his return to the United States. While Class Counsel answered one of Defendants' pending questions relating to what travel documents Cristian possessed, answers to Defendants' other questions first posed on July 22, 2025 remained pending. *Id.* at 1. Class Counsel also relayed that the government's representations had "undermined Cristian's interest in returning to the United States to receive his asylum adjudication." *Id.* at 2. The most "significant" of these concerns

5

was the fact that Cristian would again "be detained upon his return." *Id.* at 2. The fifth JSR, filed on August 22, was not preceded by a meeting, because Class Counsel did not have any updates at the time. ECF No. 384 at 1. However, on August 22, 2025, Class Counsel for the first time indicated that Cristian has expressed "an interest in returning to the United States" but continued to have "strong reservations about Defendants' stated intention to detain him indefinitely upon return." *Id.* at 2. In sum, Cristian has not expressed a present desire to return to the United States.

## LEGAL STANDARD

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 27 (2023) (Jackson, J., concurring) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). When "a case becomes moot, 'the existence of a case or controversy' is at an end, and there is therefore no basis for 'the exercise of judicial power.'" *Id.* at 15 (citing *Liner v. Jafco, Inc.*, 375 U.S. 301, 306, n.3 (1964)). A "case may become moot after the entry of the district court's judgment and while the appeal is pending." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 163 (4th Cir. 2021). And individual portions of an order may be rendered moot. *See, e.g., RTA Transit Servs., Inc. v. Amalgamated Transit Union, Loc. 22*, 50 F. App'x 455, 456 (1st Cir. 2002) ("Thus, the issue of the validity of the contempt portions of the court's orders is moot.").

Federal Rule of Civil Procedure "60(b)(5) permits relief from a judgment where '[i] the judgment has been satisfied, released or discharged; [ii] it is based on an earlier judgment that has been reversed or vacated; or [iii] applying it prospectively is no longer equitable." *Horne v. Flores*, 557 U.S. 433, 455 (2009) (citing Fed. R. Civ. P. 60(b)(5)). A critical inquiry in a Rule 60(b)(5) motion is whether "the order's continued enforcement is unnecessary and improper." *Id.* at 433. "The party seeking relief bears the burden of establishing that changed circumstances warrant

6

relief . . . but once a party carries this burden, a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'" *Id.* at 447 (quotation omitted).

Vacatur is also available under Rule 60(b)(6). The difference between Rule 60(b)(6) and Rules 60(b)(1)-(5) is that "'extraordinary circumstances' are required to bring the [Rule 60(b)(6)] motion within the 'other reason' language" of that Rule. *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 at 863 n. 11 (1988)). "The Supreme Court . . . has explicitly held that Rule 60(b)(6) 'provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice'" *Valero Terrestrial Corp.*, 211 F.3d at 118 n.2 (quoting *Liljeberg*, 486 U.S. at 863–64). Federal Rule of Civil Procedure 60(b)(6) "allows the Court to relieve a party from a final judgment for 'any other reason that justifies relief.'" *Al-Sabah v. Agbodjogbe*, No. CV SAG-17-730, 2020 WL 7351603, at *2 (D. Md. Dec. 14, 2020), *aff'd sub nom. Al-Sabah v. Agbodjogbe*, No. 20-2375, 2021 WL 5176463 (4th Cir. Nov. 8, 2021) (citing Fed. R. Civ. P. 60(b)(6)). "This final catchall provision 'may be invoked in only extraordinary circumstances when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5).'" *Al-Sabah*, 2021 WL 5176463, at *2.

## ARGUMENT

### I. Paragraph 2 of the Court's April 23, 2025, Order Must be Vacated Under Rule 60(b)(5) Because Cristian Does Not Wish to Return to the United States.

The Government has complied with the order to "facilitate" Cristian's return to the United States to the maximum extent possible, but he does not presently wish to return. The United States cannot compel a removed alien to return to the United States if he or she does not independently wish to, and the Government was only ordered to "facilitate" his return, not ensure it. *See* ECF No.

7

352 at 6. Under Rule 60(b)(5), a "court may relieve a party or its legal representative from a final judgment, order, or proceeding for" multiple reasons including when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Here, the order requiring Defendants to facilitate Cristian's return must be vacated pursuant to Rule 60(b)(5) because Cristian has not expressed a present wish to return to the United States, rendering the issue of any further facilitation of his return moot. *Cf. Rucker v. Mathews*, No. 75-531, 1976 WL 13408, at *1 (D.D.C. Nov. 2, 1976) ("The merits of plaintiff's Title VII complaint were disposed of by orders granting her back pay and dismissing her requests for review of her classification as moot since she resigned from the agency *and did not wish to return*.") (emphasis added). Defendants have complied with the Court's April 23, 2025, Order, and thus Paragraph 2 should be dissolved.

The April 23, 2025 Order turns entirely upon whether Cristian wishes to return. *See, e.g.* Exhibit A, July 22, 2025 Hearing Tr. 8:12-14 ("If counsel were to say, yes, we want you to facilitate his return, which I'm not sure they're prepared to do because I assume they would want to know his wishes . . . ."); 11:12-14 ("To the extent he desires to come back, in my view, the Government's obligation will be to return him to the status quo ante . . . ."); 14:9-11 (noting "the parties will continue to discuss, depending on his wishes, the possibility of the Government facilitating his return for his hearing pursuant to the agreement."). Although Class Counsel has communicated with Cristian since July 24, 2025, ECF No. 363 at 3, Cristian has not expressed a present wish to return to the United States. ECF Nos. 368 at 3; 380 at 2 (noting "serious reservations" with returning to the United States); 384 at 2 (noting that while Cristian had expressed "interest in returning to the United States" he still had "strong reservations about Defendants' stated intention to detain him"). Because an ordered facilitation of return to the United

8

States is the only remedy available, Cristian's present unwillingness to return to the United States renders the issue moot. It is an intervening factual development "that makes it impossible for the court to grant any effectual relief to [him]." *Rose v. Berryhill*, 694 F. App'x 190 (4th Cir. 2017) (holding an Administrative Procedure Act case was moot after administrative remedies were subsequently exhausted). Although Cristian's transport to Venezuela following talks in which the United States served as intermediary—and the Maduro regime's assurances obtained by the United States—unequivocally removed barriers to his return to the United States, Defendants cannot compel Cristian to avail himself of that relief. Accordingly, the Government has taken what actions it can to achieve the objective of Paragraph 2 of the Court's April 23, 2025, Order and continued enforcement is "unnecessary and improper" and warrants vacatur. *Horne*, 557 U.S. at 450 (noting "a critical question in this Rule 60(b)(5) inquiry is whether the objective of the District Court's 2000 declaratory judgment order—*i.e.,* satisfaction of the EEOA's "appropriate action" standard—has been achieved"); *see also J.G.G. v. Trump*, No. 25-5124, 2025 WL 2264614, at *13 (D.C. Cir. Aug. 8, 2025) (Katsas, J., concurring) (noting in vacating the district court's contempt order, "it is unclear whether the United States even could obtain custody over the detainees, who may wish to remain free in Venezuela rather than be detained in the United States pending further AEA litigation or INA removals.").

Class Counsel's arguments that additional time for Cristian to "fully consider his options—including under what conditions he believes he could safely make a return," ECF No. 380 at 3, does not alter this conclusion. Specifically, Class Counsel has stated "it is the government's representations of how he will be treated upon his return that have undermined Cristian's interest in returning to the United States to receive his asylum adjudication." *Id*. Specifically, Cristian does not wish to return to immigration detention in the United States pending the adjudication of his

9

asylum application. *Id*. But the Court has ordered Defendants to only facilitate Cristian's return to the United States to receive an adjudication of his asylum application, ECF No. 254, and at the July 22, 2025 Status Conference only directed Defendants to return Cristian to "the status quo ante . . . before he was taken to El Salvador and now Venezuela." Exhibit A, July 22, 2025 Hearing Tr. 11:13-17. And immigration detention was the "status quo ante" for Cristian before he was removed as a convicted felon unlawfully present in the United States. ECF No. 248-1 at ¶ 11. Indeed, Cristian's detention would be mandatory in light of his AEA designation and felony conviction for possession of cocaine.[3] *See* 8 U.S.C. § 1226(c)(1)(A)-(B) (specifying the categories of aliens "the Attorney General *shall* take into custody" including those convicted of certain crimes involving controlled substances); *see also Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) ("In fact, by allowing aliens to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."). There is no alternative to immigration detention available to him, and even if there were, the Court lacks the authority to compel it here, given its narrow jurisdiction over this matter restricted to enforcing the settlement agreement between the parties—a settlement agreement that has no bearing on or terms related to detention. ECF No. 253 at 5–6. Any subsequent challenge to his detention must sound in habeas, which the Court has already recognized is not the posture of this case. *Id.* at 2 (noting this matter "is not a habeas case"). If Cristian has "severe reservations" with returning to the United States because he will be detained, additional time will not change that outcome. In any event, Cristian is free to pursue legal recourse to challenge immigration detention in the regular

---

[3] Detention is also appropriate pursuant to the AEA, 50 U.S.C. § 21, the sole and exclusive mechanism of which to challenge is a habeas petition. *See Trump v. J. G. G.*, 145 S. Ct. 1003, 1005 (2025).

course. *See, e.g.*, 28 U.S.C. § 2241 (providing for habeas corpus). The Court should accordingly reject Class Counsel's request that Cristian be given more time to consider whether he wishes to return to the United States and vacate Paragraph 2 of the April 23, 2025, Order to facilitate Cristian's return as moot.

## II.  The Court's April 23, 2025, Order Is No Longer Equitable Because Further Compliance is Impossible Without Cristian's Cooperation.

Alternatively, the Court must vacate Paragraph 2 of its April 23, 2025, Order under the catchall provision of Rule 60(b)(6) because it is impossible to further comply with the Court's order without Cristian's willingness to return and in consideration of the extraordinary circumstances of the foreign policy implications of the Court's order. While this catchall reason includes few textual limitations, its context requires that it may be invoked in only "extraordinary circumstances" when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5). *Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011). The Fourth Circuit has also required "in addition to the explicitly stated requirements that the motion under Rule 60(b)(6) be filed on 'just terms' and within 'a reasonable time'—that the party filing the motion have a meritorious claim or defense and that the opposing party not be unfairly prejudiced by having the judgment set aside." *Id*. At 501. The reason asserted for the Rule 60(b)(6) motion must also not be addressable on appeal from the judgment. *Id*. Defendants meet these requirements.

As discussed above, Defendants have taken all possible steps to comply with the Court's order because Cristian is unwilling to return to the United States despite more than 30 days having passed since the status conference on July 22, 2025. *Supra* Section I.A. Because

11

Defendants are unable to compel Cristian's return to the United States against his will,[4] Defendants have taken all possible steps to comply with the Court's order, resulting in undue hardship on Defendants via an ongoing order that potentially necessitates sensitive negotiations with a foreign entity for an indefinite and indeterminate period of time entirely at Cristian's choice. *See, e.g.*, *J.G.G.*, 2025 WL 2264614, at *13 (Katas, J., concurring) ("And now, the court's order would pressure some level of engagement with a regime in Venezuela that the United States does not recognize."). The order to facilitate, resulting in an ongoing judicial interference in foreign affairs for which "no such substantive power is granted to the Judiciary," *Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *7 (4th Cir. Apr. 7, 2025) (Wilkinson, J., concurring), is also an extraordinary circumstance that warrants relief under Rule 60(b)(6). *See J.G.G.*, 2025 WL 2264614, at *14 ("This intrusion on the President's foreign affairs authority "constitute[s] an unwarranted impairment of another branch in the performance of its constitutional duties.") (Rao, J., concurring).

Because Defendants can do nothing more to facilitate the Court's order outside of cooperation from Cristian,[5] they cannot fully vindicate their rights or resolve this matter. In this, the case is akin to *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949), wherein the Supreme Court articulated that where the "allegations set up an extraordinary situation" that "tend[s] to support petitioner's argument that he was deprived of any reasonable opportunity to make a defense," relief under Rule 60(b)(6) is available. Here, as in *Klapprott*, failure to terminate the

---

[4] In this, it cannot be said that vacatur of the Court's order would prejudice Cristian. *See Aikens*, 652 F.3d at 501 (noting that "the opposing party [must] not be unfairly prejudiced by having the judgment set aside"). If Cristian does not wish to return to the United States, then setting aside an order requiring Defendants to facilitate his return cannot be said to be prejudicial.
[5] While Defendants' appeal of the Court's original order remains pending with the Fourth Circuit, it would only address the underlying merits of the Court's original order and not the intervening events that make further compliance with the Court's order impossible.

12

order due to the changed circumstances of Cristian's unwillingness to return to the United States would be inappropriate where further compliance is not feasible. "In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott*, 335 U.S. at 614–15. Justice requires relief from the order where further compliance is not possible and continued judicial interference in the conduct of sensitive foreign affairs is inappropriate. *See J.G.G.,* 2025 WL 2264614, at *18 (rejecting the district court's "attempts to control the Executive Branch's conduct of foreign affairs, an area in which a court's power is at its lowest ebb.").

## **CONCLUSION**

For the foregoing reasons, the Court should dissolve Paragraph 2 of the Court's April 23, 2025, Order (ECF 254) pursuant to Federal Rule of Civil Procedure 60(b)(5) or (b)(6) as the issue of his return is now moot and execution is impossible.

Dated: August 22, 2025                    Respectfully submitted,

                                                     BRETT A. SHUMATE
                                                    *Assistant Attorney General*
                                                    Civil Division

                                                    WILLIAM C. PEACHEY
                                                    *Director*
                                                    Office of Immigration Litigation

                                                    YAMILETH G. DAVILA
                                                    *Assistant Director*

                                                    RUTH ANN MUELLER
                                                    *Senior Litigation Counsel*

                                                    RICHARD G. INGEBRETSEN
                                                    BRANDON ZELLER
                                                    KELARK AZER HABASHI
                                                    *Trial Attorneys*

*/s/Erhan Bedestani*
ERHAN BEDESTANI
Trial Attorney (MN Bar No. 0504824)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-7451
Fax: (202) 305-7000
erhan.bedestani2@usdoj.gov

*Attorneys for Defendant*

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, I served a copy of the foregoing on counsel for Plaintiffs via the Court's CM/ECF e-filing system.

*/s/ Erhan Bedestani*
Erhan Bedestani (MN Bar 0504824)
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation

*Attorney for Defendants*