# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | |
|---|---|
| J.O.P., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Department of Homeland Security, *et al.*, <br><br> Defendants. | Civil Action No. <br> 8:19-CV-01944-SAG <br><br> **FILED UNDER SEAL** <br><br> **CONTAINS CONFIDENTIAL INFORMATION PURSUANT TO THE AMENDED PROTECTIVE ORDER (ECF NO. 302)** |

**CLASS COUNSEL'S OPPOSITION TO DEFENDANTS' MOTION TO VACATE PARAGRAPH 2 OF THE COURT'S ORDER OF APRIL 23, 2025**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| | A. Defendant ICE Removed Cristian in Violation of the Settlement Agreement | 2 |
| | B. Cristian Endured Four Months of Abuse While at CECOT Before Being Sent to Venezuela | 4 |
| | C. Class Counsel's Ongoing Communications with Cristian | 6 |
| III. | ARGUMENT | 6 |
| | A. The Court's April 23, 2025 Order Should Not be Vacated Because It Will Prejudice Cristian to Prematurely Foreclose His Access to the Settlement's Protections | 6 |
| | B. The Court May Hold the April 23 Order in Abeyance Until Cristian Decides Whether He Wishes to Return to the United States | 9 |
| IV. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Al-Sabah v. Agbodjogbe*,
  No. CV SAG-17-730, 2020 WL 7351603 (D. Md. Dec. 14, 2020) ............................................8

*Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*,
  993 F.2d 46 (4th Cir. 1993) ......................................................................................................6

*Heyman v. M.L. Mktg. Co.*,
  116 F.3d 91 (4th Cir. 1997) ......................................................................................................7

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
  No. 25-1519, 2025 WL 1431263 (4th Cir. May 19, 2025) ..................................................3, 4

*Kozak v. Fedex Kinko's, Inc.*,
  3:07CV187, 2008 WL 682580 (E.D. Va. Mar. 7, 2008) ..........................................................7

*Labrador v. Poe*,
  144 S. Ct. 921 (2024) ................................................................................................................9

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ....................................................................................................7

*Rhines v. Weber*,
  544 U.S. 269 (2005) ................................................................................................................10

*United States v. Franczak*,
  8 F. App'x 246 (4th Cir. 2001) ...............................................................................................10

*United States v. Welsh*,
  879 F.3d 530 (4th Cir. 2018) ................................................................................................7, 9

**Other Authorities**

Fed. R. Civ. P. 60(b) ........................................................................................................ *passim*

## I. INTRODUCTION

Defendants' motion to vacate the Court's April 23, 2025 order to facilitate Cristian's return to the United States should be denied. The motion is based on the false premise that Cristian has decided not to return to the United States. As Class Counsel has repeatedly relayed to Defendants, Cristian experienced months of trauma and abuse while confined in El Salvador, ███████ ███████ and to work through the weighty issues that now confront him. Defendants' arguments that the Court's order is now moot or "no longer equitable" should be rejected because Cristian may decide to return to the United States. Relief under Fed. R. Civ. P. 60(b) should also be denied because Defendants cannot meet their threshold burden to show no prejudice to Cristian if the order is vacated. Cristian will be severely prejudiced if the Court's order is vacated—he would be unable to return to the United States and have his pending asylum application adjudicated per the Court-ordered Settlement Agreement.

To give Cristian adequate time to decide whether to return to the United States, Class Counsel does not oppose an abeyance of the Court's April 23, 2025 order until Cristian is able to decide whether to return to the United States. Such an abeyance would temporarily relieve Defendants of any obligation to take steps to facilitate Cristian's return to the United States, until the order is reinstated.

Defendants' attempt to fast-track a decision by Cristian is particularly unreasonable in view of Defendants' conduct over the last six months. In March 2025, Defendants removed Cristian from the United States with full knowledge that doing so would be a violation of the Court-approved Settlement Agreement. Not only did they knowingly violate the Settlement Agreement, they sent Cristian to a maximum security prison known for human rights violations. Cristian was detained in CECOT for four months where he endured prolonged abuse, which never would have occurred if Defendants had complied with the Settlement Agreement. And during the entire time

1

he was detained in CECOT, Defendants made no apparent attempt to facilitate his return to the United States. Instead, on July 18, 2025, Cristian was sent to Venezuela, the country from which he is seeking asylum. The U.S. government used Cristian and other Venezuelans held in CECOT as pawns in a prisoner exchange to release U.S. nationals from Venezuela. And Defendants appear to have intentionally delayed filing their July 18 status report to prevent this Court and Class Counsel from becoming aware of the transaction until after Cristian arrived in Venezuela. Now Defendants seek to be relieved from the duty to remedy their violations by forcing Cristian to follow their unilaterally chosen timeline to decide whether or not he will return to the United States. That is not equitable. Cristian should be allowed the time necessary to process the trauma he has endured and to decide upon next steps in view of the horrendous treatment he has endured because of the government's actions.

## II. FACTUAL BACKGROUND

### A. Defendant ICE Removed Cristian in Violation of the Settlement Agreement

Last year, the parties in this case entered into a class action settlement agreement (ECF No.[1] 199-2) that entitled Class Members to a "final determination on the merits" of their asylum applications prior to "removal from the United States." ECF No. 253. The Court granted final approval of the agreement on November 25, 2024. ECF No. 205. On March 15, 2025, President Trump issued a Proclamation titled, *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua*, ECF No. 227-2 Ex. 3, and that same day, Defendants

---

[1] Unless otherwise specified, "ECF No(s)." refer to the docket in this case, *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. 8:19-cv-1944 (D. Md.) and "CA4 Dkt. No(s)." refer to the docket in the government's pending appeal of this Court's order to facilitate Cristian's return to the United States, *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. 25-1519 (4th Cir.).

began removing Venezuelan nationals to El Salvador whom the government alleged were subject to the Proclamation.

One of these Venezuelan individuals was Cristian,[2] a 20-year-old Class Member who had an asylum application pending with USCIS. ECF No. 227-3 (Decl. of Maria J. Bocanegra) ¶ 5. On March 13, 2025, after learning from Defendant ICE that Cristian was to be removed from the United States, Cristian's immigration counsel alerted officials at ICE that Cristian was a *J.O.P.* class member and could not be removed. ECF No. 376-2 (Ex. A). Cristian's immigration counsel provided a link to the Settlement Agreement on Defendant USCIS's own website and informed the ICE officials that Cristian "**cannot** be removed while he awaits USCIS adjudication of his I-589." *Id.* (emphasis in original). Two days later, Defendants not only removed him from the United States to El Salvador, they sent him to CECOT, "a notorious supermax prison known for widespread human rights violations." *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. 25-1519, 2025 WL 1431263, at *6 (4th Cir. May 19, 2025) (Benjamin, J., concurring); ECF No. 227-2, Ex. 6 (Mar. 20, 2025 email from Richard Ingebretsen).

On April 14, 2025, Class Counsel brought a Motion to Enforce the Settlement Agreement, ECF No. 227, which was granted on April 23, 2025. ECF No. 254 (the "April 23 Order"). The Court ordered Defendants to "facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement. "Facilitation includes, but is not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." ECF No. 254 ¶ 2. Defendants appealed this Court's order, and filed a Motion for Stay Pending Appeal (CA4 Dkt. No. 8-1). The Court of Appeals granted an

---

[2] The Court ordered the parties to refer to this Class Member using a pseudonym. ECF No. 254.

administrative stay until May 15, 2025, to hear the parties' arguments on whether a stay pending appeal was warranted (CA4 Dkt. Nos. 12, 14, 21), but ultimately denied Defendants' Motion for Stay (CA4 Dkt. No. 34); *J.O.P.*, 2025 WL 1431263, at *1.

### B. Cristian Endured Four Months of Abuse While at CECOT Before Being Sent to Venezuela

Cristian was detained in CECOT against his will for four months. It is Class Counsel's understanding that, during that time, Cristian was subjected to prolonged abuse. While this brief is not the appropriate vehicle to describe details of what Cristian personally suffered, public reporting has documented abuse of the Venezuelans held at CECOT.[3] NBC has reported allegations of "beatings that left bruises and cuts, psychological abuse and the denial of necessities such as food or bathroom access." ECF No. 376-3 (Ex. B). One detainee states that when they first arrived at CECOT, the men were shackled so tightly at the ankles that walking "would give us cuts and bruises," and the guards denied them food and access to bathrooms or showers as punishment. *Id.* The Washington Post reports that "[o]ne detainee was beaten unconscious," and "[o]thers emerged from the dark isolation room covered in bruises, struggling to walk or vomiting blood," while "[a]nother returned to his cell in tears, telling fellow detainees he'd just been sexually assaulted." ECF No. 382-2 (Ex. D).

---

[3] *E.g.*, ECF No. 376-3 (Ex. B), Daniella Silva & Didi Martinez, *Venezuelans Describe Being Beaten, Sexually Assaulted and Told to 'Commit Suicide' During El Salvador Detention*, NBC News (July 28, 2025), https://www.nbcnews.com/news/us-news/venezuelans-cecot-el-salvador-returned-abuse-rcna220924; ECF No. 382-1 (Ex. C), Jesus Mesa, *Trump's CECOT Prisoners Went on 'Blood Strike' to Protest Torture: Ex-Inmate*, Newsweek (July 25, 2025), https://www.newsweek.com/trumps-cecot-prisoners-went-blood-strike-protest-torture-ex-inmate-2103665; ECF No. 382-2 (Ex. D), Samantha Schmidt, et al., *'Welcome to Hell': Inside the Megaprison Where the US Deported Migrants*, The Washington Post (July 31, 2025), https://www.washingtonpost.com/world/2025/07/31/venezuelans-deported-us-el-salvador-prison-cecot/.

While this abuse was ongoing, it appears that Defendants made no attempt to facilitate Cristian's return to the United States. In response to Class Counsel's discovery requests, Defendants did not produce a single document that indicates that any request was made to El Salvador to release Cristian to the United States, let alone a "good faith request." The produced documents that reference communications specifically about Cristian—two brief emails exchanged between DHS and DOS on June 6, 2025—reflect only a request for "information on Cristian's custodial and health status."

On July 8, 2025, the New York Times reported that Secretary of State Marco Rubio was "overseeing a deal to free several Americans and dozens of political prisoners held in Venezuela in exchange for sending home about 250 Venezuelan migrants the United States had deported to El Salvador."[4] According to the Times, "[t]he negotiations over the swap … were led by the State Department and John McNamara," who works at the U.S. Embassy in Bogota. *Id.* While initial reports suggested that any deal had stalled, on the morning of Friday, July 18, 2025, news reports began indicating that the prisoner swap reported on by the Times would be taking place that day.[5] On the day of the transfer, Defendants failed to provide a mandatory report of Cristian's status by the Court-ordered deadline. Only after a direct inquiry from Class Counsel and yet another Court order (ECF No. 351), did Defendants confirm at 4:25 pm that, hours earlier, Cristian had been sent

---

[4] *E.g.*, ECF No. 382-5 (Ex. K), Frances Robles et al., *U.S. Botched a Deal to Swap Venezuelans Held in El Salvador for Americans*, N.Y. Times (July 8, 2025), https://www.nytimes.com/2025/07/08/world/americas/trump-venezuelan-migrants-us-prisoner-swap.html.

[5] *E.g.*, ECF No. 382-6 (Ex. L), Aram Roston et al., *El Salvador Sends Detained Venezuelans Home in Swap for Americans*, U.S. News & World Report (July 18, 2025), https://www.usnews.com/news/world/articles/2025-07-18/el-salvador-to-send-detained-venezuelans-to-caracas-in-exchange-for-americans-held-in-venezuela-sources-say (time stamp noting article was first published at 11:38 AM).

5

to Venezuela, the country from which he is seeking asylum, as a part of the prisoner swap to release U.S. nationals held in Venezuela. ECF No. 352.

### C. Class Counsel's Ongoing Communications with Cristian

Since Cristian was sent to Venezuela in July 2025, Class Counsel has been actively attempting to communicate with him to determine whether he would like to return to the United States. Mendez Decl. ¶ 4. As a preliminary matter, ███████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████ *Id.* ¶ 8. ███████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████ *Id.* ¶ 8. ███████████████████ ███████████████████████████████████████████████████████████████ *Id.* ¶ 10. ███████████████████████████████████████████████████ *Id.* ¶ 10. ███████████████████████████████████████████████████ ███████████████████████████████████████ *Id.* ¶ 9.

## III. ARGUMENT

### A. The Court's April 23, 2025 Order Should Not be Vacated Because It Will Prejudice Cristian to Prematurely Foreclose His Access to the Settlement's Protections

A movant seeking relief under Fed. R. Civ. P. 60(b) must make a threshold showing of "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (internal quotation marks omitted). If this threshold showing is made, the movant also must demonstrate one of the six enumerated grounds for relief under Rule 60(b). *See* Fed. R. Civ. P.

6

60(b); *Heyman v. M.L. Mktg. Co.*, 116 F.3d 91, 94 (4th Cir. 1997). Defendants here seek relief under Fed. R. Civ. P. 60(b)(5), which only applies when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable" and under Fed. R. Civ. P. 60(b)(6), which provides relief "for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5), (6).

In determining whether to grant relief from judgment under Fed. R. Civ. P. 60(b), a court must delicately balance "the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of [a]ll the facts." *United States v. Welsh*, 879 F.3d 530, 536 (4th Cir. 2018). The Fourth Circuit has also recognized that relief under Rule 60(b) is "an extraordinary remedy that should not be awarded except under exceptional circumstances." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (citing *Ackermann v. United States*, 340 U.S. 193, 202 (1950)).

Defendants have not met their threshold burden to show that vacating the Court's April 23 Order will not prejudice Cristian. Cristian would be severely prejudiced if the April 23 Order is vacated—he may never be able to return to the United States and his pending asylum application would not be adjudicated. For that reason alone, Defendants' motion to vacate should be denied. *Kozak v. Fedex Kinko's, Inc.*, 3:07CV187, 2008 WL 682580, at *3 (E.D. Va. Mar. 7, 2008).

Defendants argue that the Court's April 23 Order should be vacated under Fed. R. Civ. P. 60(b)(5) as moot because Cristian has not expressed a willingness to return to the United States. ECF No. 386-1 at 7-9. Cristian has been present in Venezuela for less than two months—less than half the amount of time he was imprisoned and tortured at CECOT. Cristian's right to return to the United States should not be vitiated because Defendants have not afforded Cristian an adequate opportunity to both start to recover from the torture he endured in CECOT let alone simultaneously

7

evaluate the potential for return to the United States. *See* Mendez Decl. ¶ 10. The order is not moot and vacatur of the order is premature.

Defendants also assert that the Court's April 23 Order should be vacated under Fed. R. Civ. P. 60(b)(6) because the Court's order "is no longer equitable" because "it is impossible to further comply[6] with the order … without Cristian's willingness to return and in consideration of the extraordinary circumstances of the foreign policy implications of the Court's order." ECF No. 386-1 at 11-13. Relief under Fed. R. Civ. P. 60(b)(6) is not available because this catchall provision "may be invoked only in extraordinary circumstances when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5)," and here Rule 60(b)(5) explicitly provides for relief when a judgment "is no longer equitable." *Al-Sabah v. Agbodjogbe*, No. CV SAG-17-730, 2020 WL 7351603, at *2 (D. Md. Dec. 14, 2020*), aff'd sub nom. Al -Sabah v. Agbodjogbe*, No. 20-2375, 2021 WL 5176463 (4th Cir. Nov. 8, 2021).[7] In any case, as with their argument under Fed. R. Civ. P. 60(b)(5), Defendants wrongly assume that Cristian is not willing to return. Cristian needs more time to process the trauma he has endured and to consider his options. Accordingly, vacatur under Fed. Civ. P. 60(b)(6) should also be denied.

Defendants' assertion that there are "extraordinary circumstances" due to foreign policy implications with the April 23 Order should also be rejected. ECF No. 386-1 at 11-12. First, Defendants' suggestion that Cristian's return to the United States may require "sensitive

---

[6] There is no support in the record that Defendants previously complied with the April 23, 2025 order to facilitate Cristian's return from El Salvador. *See* ECF No. 376.

[7] Defendants acknowledge that relief under Fed. R. Civ. P. 60(b)(6) is not available for circumstances that fall within the other enumerated categories of (b)(1)-(5), ECF No. 386-1 at 7, but nonetheless argue that relief is warranted under 60(b)(6) because the order "is no longer equitable," one of the circumstances explicitly called out in 60(b)(5).

8

negotiations with a foreign entity" is contrary to their assertion that the "Maduro regime's assurances obtained by the United States" served to "unequivocally remove[] barriers to his return to the United States." *Id.* at 9.  If the United States obtained such assurances from the Maduro regime, then no further "sensitive negotiations" are needed.  Second, if any "sensitive negotiations" are required with Venezuela, that is only because the U.S. government facilitated sending Cristian from El Salvador to Venezuela, and not back to the United States as directed by the Court's April 23 Order.  Defendants should not be allowed to receive equitable relief from a judgment based on "extraordinary circumstances" that are of their own making.

Finally, in reviewing Defendants' extraordinary request for vacatur of a Court order, the Court must consider "that justice be done in light of [a]ll the facts." *Welsh*, 879 F.3d at 536. Christian was removed by Defendants to a high security prison in El Salvador in willful violation of the Court-approved Settlement Agreement, where he endured months of abuse that would not have occurred if the Defendants had complied with the Settlement Agreement.  During this time, Defendants also made no apparent effort to comply with this Court's order to facilitate Cristian's return to the United States.  Justice is not served by vacating this Court's order to facilitate Cristian's return without allowing him the time needed to recover from his trauma and to allow him the time needed to make an informed decision.

### B. The Court May Hold the April 23 Order in Abeyance Until Cristian Decides Whether He Wishes to Return to the United States

While Defendants' motion to vacate should be denied for the reasons articulated above, Class Counsel would not oppose an abeyance of the Court's April 23 Order to allow Cristian adequate time to decide whether to return to the United States.  Class Counsel proposed to Defendants that the April 23 Order be held in abeyance until Cristian is able to decide whether to return to the United States.  ECF No. 380.  This would in effect relieve Defendants of any

obligation to facilitate Cristian's return until such time as the order is reinstated. Defendants rejected this proposal with no explanation. *Id.* Instead, Defendants rushed to file their motion to vacate, knowing full well that Cristian has not yet made a decision as to whether to return to the United States. Class Counsel respectfully submits that a temporary abeyance of the April 23 Order is warranted under the circumstances rather than outright vacatur of the order. As set forth above, Cristian needs additional time to process the trauma he has endured and to work through the options available to him.

Alternatively, the Court could elect to hold the motion to vacate in abeyance to allow Cristian adequate time to decide whether to return to the United States, while keeping the underlying order in place. This Court has authority to hold a motion in abeyance if resolution of a pending matter will help clarify the current issues or make currently disputed issues moot. *See, e.g.*, *Rhines v. Weber*, 544 U.S. 269 (2005); *United States v. Franczak*, 8 F. App'x 246 (4th Cir. 2001). This option, while maintaining Defendants' obligation to facilitate Cristian's return, would have the practical effect of providing Cristian with the time he needs to make a final, consequential decision about his return to the United States. Defendants themselves have requested similar treatment, moving to put their appeal in abeyance while they deliberated over whether to file an earlier Rule 60(b) motion that never materialized before the June 8 prisoner exchange. *See* CA4 Dkt. No. 38.

## IV. CONCLUSION

Defendants' motion to vacate the Court's April 23 Order should be denied because Cristian will be severely prejudiced if the order is vacated, as he would no longer be able to return to the United States and have his pending asylum application adjudicated on the merits. The Court's April 23 Order is also not moot or "no longer equitable" so as to warrant relief under Fed. R. Civ. P.

10

60(b)(5) or (6), because Cristian is still working to process the trauma he endured while at CECOT, and needs additional time to consider his options on how to proceed.

Dated: September 5, 2025

Respectfully submitted,

/s/ Brian T. Burgess

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20036
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project
30 S. 10th Street (c/o University of St. Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5494
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*