**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

_____

|  |  |  |
|---|---|---|
| J.O.P., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 8:19-cv-01944-SAG |
| | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| _____) | | |

**DEFENDANTS' BRIEF IN OPPOSITION TO CLASS COUNSEL'S MOTION TO FIND**
**PROBABLE CAUSE TO HOLD DEFENDANTS IN CONTEMPT**

## TABLE OF CONTENTS

I.    Introduction ........................................................................................................ 1

II.   Factual Background ........................................................................................... 2

III.  Legal Standard .................................................................................................. 9

IV.   Argument ......................................................................................................... 10

      A. Cristian Was Not Removed to El Salvador in Contempt of Any Order by the

      Court. ............................................................................................................... 10

      B. Defendants Complied With the Court's Orders to Facilitate Cristian's Return.

      ......................................................................................................................... 13

      C. Defendants Complied with the Court's Order to File Status Reports ............. 21

      D. Defendants Complied with the Court's Order to Produce Expedited Discovery

      and are in Compliance with the Federal Rules of Civil Procedure. .................... 27

V.    Conclusion ....................................................................................................... 30

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrego Garcia v. Noem,*
No. 8:25-CV-00951-PX, 2025 WL 1113440 (D. Md. Apr. 15, 2025)...................................29

*Abrego Garcia v. Noem,*
No. 25-1404, 2025 WL 1135112 (4th Cir. Apr. 17, 2025) .................................19, 20, 23, 29

*Cheney v. U.S. Dist. Ct. for D.C.,*
542 U.S. 367 (2004).......................................................................................................1, 26

*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.,*
333 U.S. 103 (1948).........................................................................................19, 20, 21, 26

*Consumers Gas & Oil, Inc. v. Farmland Industries, Inc.,*
84 F.3d 367 (10th Cir. 1996)..................................................................................................12

*CPC Intern., Inc. v. Skippy, Inc.,*
214 F.3d 456 (4th Cir. 2000) ................................................................................................12

*El-Masri v. United States,*
479 F.3d 296 (4th Cir. 2007) ...............................................................................................27

*Floersheim v. Engman,*
494 F.2d 949 (D.C. Cir. 1973) .............................................................................................11

*Ford v. Kammerer,*
450 F.2d 279 (3d Cir. 1971) ..............................................................................................9, 18

*Gul v. Obama,*
652 F.3d 12 (D.C. Cir. 2011)................................................................................................17

*Huisha-Huisha v. Mayorkas,*
27 F.4th 718 (D.C. Cir. 2022)...............................................................................................12

*In re Att'y Gen. of U. S.,*
596 F.2d 58 (2d Cir. 1979) .............................................................................................16, 21

*In re Res. Tech. Corp.,*
No. 08 C 4040, 2008 WL 5411771 (N.D. Ill. Dec. 23, 2008) ............................................10

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
512 U.S. 821 (1994) ...............................................................................................................9

*J.G.G. v. Trump,*
2025 WL 2264614 (D.C. Cir. Aug. 8, 2025)............................................................... passim

*J.G.G. v. Trump,*
No. CV 25-766 (JEB), 2025 WL 1577811 (D.D.C. June 4, 2025) ......................................17

*J.O.P v. United States Dep't of Homeland Sec.,*
2025 WL 1431263 (4th Cir. May 19, 2025).......................................................4, 12, 14

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)...............................................................................................................18

*Noem v. Abrego Garcia,*
145 S. Ct. 1017 (2025)....................................................................................................19, 23

*Ramos Colon v. U.S. Atty. for Dist. of Puerto Rico*,
  576 F.2d 1 (1st Cir. 1978)...............................................................................15
*Richmond Black Police Officers Ass'n v. City of Richmond, Va.*,
  548 F.2d 123 (4th Cir. 1977) ...........................................................9, 10, 12, 25
*Scott v. Clarke*,
  355 F. Supp. 3d 472 (W.D. Va. 2019)...........................................................12
*Thomas v. Brock*,
  810 F.2d 448 (4th Cir. 1987) ........................................................................13
*United States v. Crowe*,
  No. 94-5690, 77 F.3d 471, 1996 WL 67223 (4th Cir. Feb. 16, 1996)............10, 13
*United States v. Greyhound Corp.*,
  508 F.2d 529 (7th Cir. 1974) ........................................................................10
*United States v. Joyce*,
  498 F.2d 592 (7th Cir. 1974) ......................................................................9, 11
*United States v. McMahon*,
  104 F.3d 638 (4th Cir. 1997) ........................................................................10
*United States v. Nixon*,
  418 U.S. 683 (1974) .....................................................................................27
*United States v. Perry*,
  116 F.3d 952 (1st Cir. 1997)..........................................................................15
*United States v. Santos*,
  553 U.S. 507 (2008) .......................................................................................9
*United States v. Smith*,
  497 F. App'x 269 (4th Cir. 2012)..............................................................11, 13
*Woodhull Freedom Foundation v. United States*,
  72 F.4th 1286 (D.C. Cir. 2023) .....................................................................14

**Statutes**

22 U.S.C. § 2656......................................................................................14
50 U.S.C. Ch. 3 ..........................................................................................3
50 U.S.C. § 21 .......................................................................................2, 11

**Rules**

Federal Rule of Civil Procedure 62.1.........................................................29

## I.    Introduction

Defendants have complied in good faith with this Court's April 23, 2025, Order, ECF No. 254, to "facilitate" Cristian's return to the United States and the Court's May 20, 2025, Order directing the filing of status reports, ECF No. 280. The United States Department of State ("DOS")—which is not a party to this case—successfully facilitated an arrangement between El Salvador and the Maduro regime that secured Cristian's release from CECOT and obtained assurances from the Maduro regime that will allow Cristian to return to the United States if he chooses. Defendants have also taken all necessary steps to facilitate his return should he choose to return. Nearly two months after Cristian's release from CECOT and repatriation to Venezuela, however, he has still not expressed a desire to return. ECF No. 352; Ex. A, Email to Class Counsel dated Aug. 7, 2025, ECF No. 352; *see also* Ex. B, July 22, 2025 Hearing Tr. 12:1-8. Thus far, Cristian has chosen to remain in his native Venezuela. *See* ECF No. 384.

Despite all this—or perhaps to distract from it—Class Counsel invites the Court to embark on the "constitutionally fraught" enterprise of initiating criminal contempt proceedings against senior Government officials. *See J.G.G. v. Trump*, 2025 WL 2264614, at *13 (D.C. Cir. Aug. 8, 2025) (Katsas, J., concurring in grant of mandamus against finding of criminal contempt against the Government for related events). This effort is groundless and disingenuous. "[O]ccasion[s] for constitutional confrontation between the two branches should be avoided whenever possible." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 389-90 (2004).

Here, there is no cause for confrontation between the Executive and the Judiciary because Defendants have complied in good faith with the Court's Orders throughout this litigation. The Government carried out Cristian's initial removal to El Salvador based on the reasonable understanding that the Settlement Agreement in this matter did not apply to removals—like

1

Cristian's—initiated under the Alien Enemies Act, 50 U.S.C. § 21. DOS has facilitated Cristian's return to the United States by facilitating an arrangement between El Salvador and the Maduro regime and Defendants have provided status reports providing what information they can regarding Cristian's status and the efforts to facilitate his return. *See* ECF Nos. 290, 290-1, 294, 294-1, 300, 300-1, 303, 307, 314, 330, 352.

Defendants stand ready to further facilitate Cristian's return but are unable to do so where Cristian does not wish to return. *See* ECF No. 386. Neither the assurances obtained from the Maduro regime nor common sense allows Defendants to force Cristian to return against his wishes. Plaintiffs' invocation of criminal rather than civil contempt demonstrates that even they believe Defendants have complied—for if Class Counsel believed that Defendants were still out of compliance, they would be seeking civil contempt. And the absurdity of their position is highlighted by the fact that they believe filing a late status report—even by mere hours—somehow warrants *criminal* punishment. That is a deeply unserious position that warrants emphatic rejection. Moreover, Plaintiffs lack standing and any factual or legal basis to seek this extraordinary measure. So even if a late status report were actually a proper basis for criminal punishment, Class Counsel has no cognizable right to seek such a criminal sanction.

The Court should deny Class Counsel's Motion to Find Probable Cause to Hold Defendants in Contempt.

## II.    Factual Background

On July 1, 2019, a class of asylum seekers previously determined to be unaccompanied alien children sued Defendants the Department of Homeland Security (DHS), the Secretary of DHS, U.S. Citizenship and Immigration Services (USCIS), and the Director of USCIS to challenge guidance for determining initial jurisdiction over their asylum applications. On November 25,

2024, the Court granted final approval of a settlement agreement. ECF No. 205. Section III.I of that agreement specified that "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." ECF No. 199-2 at 8.

On March 15, 2025, Cristian,[1] a *J.O.P.* class member in ICE custody following a felony conviction for possession of cocaine, was removed under the Alien Enemies Act ("AEA"), 50 U.S.C. Ch. 3, as a Venezuelan citizen 14 years of age or older who is a member of Tren de Aragua ("TdA") following Presidential Proclamation 10,903, *Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua* ("Proclamation"). ECF No. 248-1 at ¶ 14. Cristian has not contested his designation under the Proclamation as a member of TdA, a designated Foreign Terrorist Organization. Class Counsel filed an Emergency Motion to Enforce the Settlement Agreement on April 19, 2025, alleging that Defendants' removal of Cristian was a violation of the settlement agreement because he had a pending asylum application that had not been adjudicated before his removal. *See* Memo. Mot. Enforce at 15, ECF No. 227-1.

On April 23, the Court issued an order granting Class Counsel's Motion to Enforce the Settlement Agreement. ECF No. 254. In that order, the Court rejected Defendants' argument that the settlement agreement was limited to removals under Title 8 and did not reach removals under the Alien Enemies Act. Accordingly, the Court directed Defendants to "facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement." *Id.* ¶ 2. The Court stated that

---

[1] As per the Court's April 23, 2025 Order (ECF 254), the class member is to be referred to by his pseudonym "Cristian."

"[f]acilitation includes, but is not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." *Id.*

Defendants filed an appeal of the Court's Order in the Fourth Circuit. *See* ECF No. 271 (Notice of Appeal); *J.O.P v. United States Dep't of Homeland Sec.*, No. 25-1519 (4th Cir. 2025). Defendants also filed a motion in the Fourth Circuit to stay the Court's April 23 Order pending appeal. The appellate court initially granted an administrative stay, but ultimately issued a divided ruling denying a stay, with each judge writing separately. *J.O.P v. United States Dep't of Homeland Sec.*, 2025 WL 1431263, at *1 (4th Cir. May 19, 2025). The merits appeal itself remains pending.

Following the Fourth Circuit's denial of Defendants' stay motion, the Court issued an order on May 20 directing Defendants to file a status report addressing "(1) Cristian's current physical location and custodial status; (2) what steps, if any, Defendants have taken to facilitate Cristian's return to the United States; and (3) what additional steps Defendants will take, and when, to facilitate Cristian's return." ECF No. 280 at 2. Defendants filed the status report on May 27. ECF No. 285. On May 28, the Court issued an order finding the May 27 status report, and the steps taken to comply with the Court's Order reported in it, "insufficient." ECF No. 287 at 2. The Court directed Defendants to supplement their status report by June 2. *Id.*

Defendants filed a supplemental status report on June 2. ECF No. 290. The June 2 status report included a declaration from Mellissa Harper, Acting Deputy Executive Associate Director of ICE Enforcement and Removal Operations (ERO), which indicated that DHS had informed DOS of the Court's April 23 Order and requested DOS assistance in complying with the Court's Order. ECF No. 290-1 ¶ 4. Ms. Harper stated that DOS had informed her that it had requested information from the government of El Salvador regarding Cristian's current physical location and

custodial status, to which the Salvadoran government had not yet responded. *Id.* ¶7. Ms. Harper

also shared a statement from DOS noting:

> Secretary [of State] Rubio has a personal relationship with President Bukele and
> senior officials in the El Salvadorean government that dates back over a decade to
> the Secretary's service on the Senate Foreign Relations Committee. Based on this
> deep experience with El Salvador and the Secretary's familiarity with political and
> diplomatic sensitivities in that country, he is personally handling the discussions
> with the government of El Salvador regarding persons subject to the Court's order
> detained in El Salvador. Secretary Rubio has read and understands this Court's
> order, and wants to assure this Court that he is committed to making prompt and
> diligent efforts on behalf of the United States to comply with that order.

*Id.* ¶ 6.

On June 5, the Court entered an order directing Defendants to file weekly status reports "in

the form of a declaration by an individual with personal knowledge" concerning the same three

topics referenced in the May 20 Order. ECF No. 293. In compliance with that order, Defendants

filed seven status reports over the six weeks from June 6 to July 18. ECF Nos. 294, 295, 300, 303,

307, 314, and 330. Those reports described information received from the Salvadoran government

that Cristian remained at CECOT, was in good health, had regular medical exams, and had put on

weight (ECF No. 295-1 ¶ 6; ECF No. 300 ¶ 6); affirmed that diplomatic discussions at the highest

levels of the Salvadoran government would be conducted by DOS (ECF No. 294-1 ¶ 7; ECF No.

300-1 ¶7; ECF No. 303 ¶ 6; ECF No. 307 ¶ 6; ECF No. 314 ¶ 6; ECF No. 330 ¶ 6); and confirmed

that DOS remained in communication with the Salvadoran government but had received no

additional updates from it regarding Cristian, despite repeated requests (ECF No. 303 p. 6 ¶ 6;

ECF No. 314 p. 6 ¶ 7; ECF No. 330 p. 6 ¶ 7)).

The June 5 Order also permitted Class Counsel to serve written discovery requests on

Defendants, which they did on June 9. ECF No. 326 at 1. Defendants provided written responses

on June 23. *Id.* In their responses, Defendants asserted various objections and privileges, including

the state secrets privilege, while providing documents and substantive responses in as much detail as possible subject to assertions of privilege. *See generally* ECF No. 326. Class Counsel filed a Motion to Compel regarding Defendants' discovery responses, ECF No. 308, to which Defendants responded. ECF No. 326. The Court set oral argument for Class Counsel's Motion to Compel for July 22.

On July 18, after talks in which the United States served as intermediary in light of the acrimonious relationship between El Salvador and the Maduro regime, "the Salvadoran Government in the sole exercise of its sovereign authority, released Cristian from CECOT, along with 251 other Venezuelan nationals, to be flown to their home country of Venezuela, as part of an arrangement between El Salvador and the Maduro regime." ECF No. 352 ¶ 7; *see also* Comisión Interamericana de Derechos Humanos, United States: Human rights situation of migrants, refugees and asylum seekers (July 22, 2025) https://www.youtube.com/watch?v=5zJpvgzxnwg (State Department publicly explaining to Inter-American Commission on Human Rights how "the United States resolved to use its diplomatic good offices to help the two sides achieve the humanitarian solution [Salvadoran] President Bukele had offered" to Nicolas Maduro); Ex. C, Declaration of Christopher Landau, ¶ 5. "[T]he decision to release the Venezuelan nationals from CECOT, and to repatriate them to Venezuela, was made solely by the Government of El Salvador in the exercise of its sovereign authority." ECF 352 ¶ 8. The United States, however, obtained assurances from the Maduro regime that it would not impose obstacles to an individual's travel to the United States if the travel was "called for in legal proceedings or required by a court" and "the individual [was] willing to travel to the United States for that purpose." *Id.* These assurances cleared the path for Cristian to return to the United States if he so desired. Defendants informed the Court of these

developments in another status report pursuant to the Court's June 5 Order, albeit after the 12 P.M. deadline set by the Court. ECF No. 352.

On July 22, following a hearing on Class Counsel's Motion to Compel, the Court issued an order tabling its June 5 Order for expedited discovery and superseding the provision of the same order that required Defendants to file weekly status reports. ECF No. 358. Instead, the Court ordered the parties to file joint weekly status reports apprising the Court of developments in the parties' discussions regarding Cristian's return to the United States. *Id.* The Court denied Class Counsel's Motion to Compel, without prejudice. *Id.*

To date, Cristian has not expressed a desire to return to the United States. *See* ECF No. 384 at 1. Since the July 22, 2025, status hearing and issuance of the Court's Order (ECF No. 358), the parties have met and conferred a total of five times and submitted to the court seven weekly joint status reports. The first meeting occurred on July 23 with the subsequent joint status report (JSR) filed on July 25. ECF No. 363. In this first meeting, Plaintiffs' counsel confirmed they were able to communicate with Cristian but represented that he "[would] need time to attempt to recover" from alleged torture in CECOT—an allegation Defendants vigorously contest—"and to understand options available to him." *Id.* at 3. Defendants "confirmed that they are prepared to continue to comply with the court's order by facilitating Cristian's return to the United States should he want to return" and requested information necessary to facilitate his return including his location in Venezuela and what travel documents he possessed. *Id.* at 2.

The second meeting occurred on July 30 and the JSR was filed on August 1. ECF No. 366. Class Counsel did not confirm "whether Cristian wishes to return to the United States," and explained that "basic information and assurances from the government are necessary so that Cristian may make an informed decision." ECF No. 366 at 3. To that end, Class Counsel conveyed

thirteen separate questions regarding how Cristian would be treated should he return. Defendants answered these questions at the next meeting on August 6. ECF No. 368 at 2. In the JSR filed on August 8, Class Counsel represented that they "continued to be in contact with Cristian and that they would inform Defendants and the Court as to Cristian's intentions as soon as they are able to do so." *Id*. at 2-3. Class Counsel stated that "Cristian's interest in returning to the United States to receive his asylum adjudication is undermined by serious reservations based on the government's representations of how he will be treated upon his return, including whether he will be detained and the possibility of removal to a third country without a hearing or the opportunity to object." *Id*. at 3. The fourth meeting occurred on August 13, and the JSR was filed on August 15. ECF No. 380. During interim period between the third and fourth meet-and-confers, Defendants responded to a series of questions submitted by class counsel. *Id*. at 1-2. In answering these questions, Defendants confirmed that they would cover reasonable travel costs and confirmed again that Cristian would be returned to immigration detention upon his return to the United States. While Class Counsel answered one of Defendants' pending questions relating to what travel documents Cristian possessed, answers to Defendants' other questions first posed on July 22, 2025, remained pending. *Id.* at 1.

Class Counsel also relayed that the government's representations had "undermined Cristian's interest in returning to the United States to receive his asylum adjudication." *Id*. at 2. The most "significant" of these concerns was the fact that Cristian would again "be detained upon his return." *Id*. at 2. The fifth JSR, filed on August 22, was not preceded by a meeting because Class Counsel did not have any updates at the time. ECF No. 384 at 1. However, on August 22, 2025, Class Counsel for the first time indicated that Cristian has expressed "an interest in returning to the United States" but continued to have "strong reservations about Defendants' stated intention

to detain him indefinitely upon return." *Id*. at 2. The sixth JSR was also not preceded by a meet and confer because once again Class Counsel indicated that they did not have any update to share with Defendants and that they had not been able to communicate with Cristian that week. ECF No. 388. So too for the seventh JSR. *See* ECF No. 390. In sum, Cristian has not expressed a present desire to return to the United States. In light of this fact, Defendants have moved to vacate the Court's Order to facilitate Cristian's return. ECF No. 386.

### III.    Legal Standard

It is "settled law that contempt will not lie for violation of an order of the court unless the order is clear and decisive and contains no doubt about what it requires to be done." *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974). "[A]mbiguities and omissions in orders redound to the benefit of the person charged with contempt." *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971). "These principles track the rule of lenity that applies in all criminal cases." *J.G.G.*, 2025 WL 2264614, *7 (Katsas, J. concurring) (citing *United States v. Santos*, 553 U.S. 507, 514 (2008)). Their application is especially important because in criminal contempt proceedings, the "fusion of legislative, executive, and judicial powers [in a single judge] summons forth the prospect of the most tyrannical licentiousness." *Id*. (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (cleaned up)).

"To support a conviction of criminal contempt for violation of a court order, it must be proved beyond a reasonable doubt that a person willfully, contumaciously, intentionally, with a wrongful state of mind, violated a decree which was definite, clear, specific, and left no doubt or uncertainty in the minds of those to whom it was addressed." *Richmond Black Police Officers Ass'n v. City of Richmond, Va.*, 548 F.2d 123, 129 (4th Cir. 1977) (citations omitted). That standard is not met where a party's conduct "indicates a good faith effort toward compliance . . . even

though the alternative conduct adopted was mistaken." *Id.*; *see also United States v. McMahon*, 104 F.3d 638, 645 (4th Cir. 1997) ("Willfulness, for the purpose of criminal contempt, does not exist where there is a good faith pursuit of a plausible though mistaken alternative.") (quoting *United States v. Greyhound Corp.*, 508 F.2d 529, 532 (7th Cir. 1974)). In short, "[i]f the defendant makes a good faith effort to comply with a court order, he may not be convicted of criminal contempt." *United States v. Crowe*, No. 94-5690, 77 F.3d 471, 1996 WL 67223, at *1 (4th Cir. Feb. 16, 1996). "At the present stage, of course, the Court assesses only whether probable cause exists, not whether [a party] has proven or could prove guilt beyond a reasonable doubt." At the present stage, of course, the Court assesses only whether probable cause exists, not whether the trustee has proven or could prove guilt beyond a reasonable doubt. *In re Res. Tech. Corp.*, No. 08 C 4040, 2008 WL 5411771, at *4 (N.D. Ill. Dec. 23, 2008).

## IV.    Argument

Class Counsel contends that Defendants engaged in criminal contempt of this Court's Orders in four ways. First, by removing Cristian to El Salvador in the first instance in violation of the settlement agreement. *See* ECF No. 375-1 (Mot.) at 17. Second, by failing to facilitate his return to the United States. *Id.* at 18–19. Third, by failing to file a timely status report on July 18, 2025. *Id.* at 22. Fourth, by their conduct in the course of expedited discovery and litigation. *Id.* at 7–10. All four arguments are meritless and do not remotely satisfy the standard for criminal contempt.

### A. Cristian Was Not Removed to El Salvador in Contempt of Any Order by the Court.

Defendants did not commit contempt by removing Cristian to El Salvador. At the time of Cristian's removal, it was not clear that the Settlement Agreement applied to removal under the AEA. Removal under the AEA was not expressly considered by the parties in negotiating the

10

Settlement Agreement, as evidenced by the fact the statute is nowhere mentioned in the settlement or in any of the many pleadings filed in this long-running class action. *See generally* ECF No. 199-2.[2] Cristian's removal was based on a good faith belief that the Settlement Agreement did not apply, not willful disregard for the Settlement Agreement. To the extent a motion for contempt is even a proper enforcement mechanism for the alleged violation, this is not enough for contempt. "Criminal contempt is essentially reserved for willful contumacy and not good faith disagreement." *United States v. Smith*, 497 F. App'x 269, 273 n.11 (4th Cir. 2012) (quoting *Floersheim v. Engman*, 494 F.2d 949, 953 (D.C. Cir. 1973)). As a result, "contempt will not lie for violation of an order of the court unless the order is clear and decisive and contains no doubt about what it requires to be done." *Joyce*, 498 F.2d at 596. The Settlement Agreement obviously was not clear enough to justify criminal contempt here.

Prior to his removal, Cristian was in ICE custody and subject to removal proceedings under the Immigration and Nationality Act. *See* ECF No. 248 at 8. The President then issued the Proclamation, which provided that "all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies" pursuant to 50 U.S.C. § 21. *Id.* at 7. ICE determined that Cristian was subject to the Proclamation, and he was then removed. *Id.* at 8. At that time, Defendants' understanding was that (1) the Proclamation mooted Cristian's asylum application such that USCIS could not adjudicate it, and therefore the class definition in the Settlement Agreement did not apply to Cristian; and (2) the term "final removal order" in Section III.I of the Settlement Agreement does

---

[2] In this, it is immaterial that Cristian's immigration counsel informed ICE at the time of his removal that Cristian was a class member, Mot. at 3, because Defendants reasonably believed at the time the Settlement Agreement did not apply to removals under the AEA.

not apply to removal under the AEA, a position Defendants have maintained throughout this matter. *Id.; see, e.g.*, ECF No. 248. Indeed, the Government continues to argue elsewhere that removals under the AEA suspend asylum claims. *See Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 730–31 (D.C. Cir. 2022). Though the Court disagreed with Defendants' position, Defendants' appeal on the issue remains pending. *See* ECF No. 271; *J.O.P v. DHS*, No. 25-1519, Doc. 42 (4th Cir. 2025). Notably, one judge on the Fourth Circuit motions panel *agreed* with Defendants' interpretation of the Settlement Agreement. *J.O.P.*, 2025 WL 1431263, at *17 (Richardson, J. dissenting); ECF 199-2 at 8. Judge Richardson reasoned that the Settlement's reference to a "final removal order" incorporated a term of art from the INA that does not apply to removals under the AEA. *J.O.P.*, 2025 WL 1431263, at *16-17 ("ICE will refrain from executing the Class Member's final removal order.") (Richardson, J. dissenting). While that view has not yet prevailed, the fact that a federal appellate judge concurred in Defendants' interpretation itself establishes that their interpretation was not contumacious.

Additionally, Defendants cannot be held in contempt for Cristian's removal to El Salvador because a finding of contempt cannot be premised on violation of a settlement agreement. Criminal contempt can be based only on "violation of *a court order*." *Richmond Black Police Officers Ass'n*, 548 F.2d at 129 (emphasis added). *See Consumers Gas & Oil, Inc. v. Farmland Industries, Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) (citation ommitted). Incorporation by reference of a settlement agreement in a court's order approving the settlement is not sufficient to make the settlement agreement an order of the court. *See Scott v. Clarke*, 355 F. Supp. 3d 472, 490-93 (W.D. Va. 2019). Rather, Rule 65(d) of the Federal Rules of Civil Procedure requires that an injunctive order "describe in reasonable detail—and not by referring to the complaint *or other document*—the act or acts restrained or required." (Emphasis added); *see also CPC Intern., Inc. v. Skippy, Inc.*, 214

F.3d 456, 459 (4th Cir. 2000) (quoting *Thomas v. Brock*, 810 F.2d 448, 450 (4th Cir. 1987) ("The terms of Rule 65(d) are mandatory and must be observed in every instance.").

At best, Defendants' actions here can be described as "good faith disagreement" that do not rise to the level of "willful contumacy." *See Smith*, 497 F. App'x at 273 n.11. Even if the Court were inclined to find probable cause for contempt proceedings based on Cristian's removal to El Salvador, the Settlement Agreement cannot be enforced through contempt; a motion to enforce was the only available remedy. *See* ECF No. 205 at 3 ("Should any party to the Agreement fail to honor the terms of this Order, the non-breaching party may petition for enforcement of this Order"). Accordingly, the Court should not order criminal contempt proceedings based on Cristian's removal.

### B. Defendants Complied with the Court's Orders to Facilitate Cristian's Return.

Following the Fourth Circuit's denial of a stay, Defendants complied with the Court's April 23 Order requiring them to facilitate Cristian's return to the United States. Defendants made a good faith effort to do so considering the complexities surrounding Cristian's situation and the foreign policy implications of the Court's Orders. *See Crowe*, 1996 WL 67223, at *1 (4th Cir. Feb. 16, 1996) ("If the defendant makes a good faith effort to comply with a court order, he may not be convicted of criminal contempt."). As a result, there is no probable cause to initiate criminal contempt proceedings.

The Court's April 23 Order directed Defendants "to facilitate Class Member Cristian's return to the United States. . . . Facilitation includes, but is not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." *See* ECF No. 254. The word "facilitate" is defined as "to make (something) easier." *See Facilitate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/facilitate

(last visited August 25, 2025); *see also Woodhull Freedom Foundation v. United States*, 72 F.4th 1286 (D.C. Cir. 2023) ("[T]he ordinary meaning of 'facilitate' is 'to make easier' . . .) (citations omitted). At the same time, the Court did not order Defendants to ensure Cristian's return, recognizing that this was beyond the government's power. *J.O.P*, 2025 WL 1431263, at *5 (Benjamin, J. concurring) (noting "that a court could order the government to 'facilitate' the return of an improperly deported individual but could not demand it").

Defendants complied with the Court's Order, just as the government made clear it would in the very early status reports. *See* ECF No. 290-1 ¶ 6. As a preliminary matter, named Defendants themselves[3] could not make "a good faith request . . . to the government of El Salvador" because foreign engagements of this degree and complexity are carried out by DOS. 22 U.S.C. § 2656 ("The Secretary of State shall perform such duties as shall from time to time be enjoined on or entrusted to him by the President relative to … negotiations with public ministers from foreign states or princes … or to such other matters respecting foreign affairs as the President of the United States shall assign to the Department …."). To that end, Defendants requested assistance from DOS to comply with the Court's Order because DOS is the primary federal agency responsible for engaging in foreign affairs. ECF No. 290-1 ¶ 4; ECF No. 295-1 ¶ 4. DOS had responsibility on behalf of the United States Government for diplomatic discussions with El Salvador, and Defendants played no role in DOS's efforts to negotiate with El Salvador and the Maduro regime. ECF No. 295-1 ¶ 7. Although not a party to the case, DOS, on behalf of Defendants, worked to facilitate the return of Cristian from El Salvador over an extended period. Eventually, DOS facilitated an arrangement between El Salvador and the Maduro regime that secured Cristian's

---

[3] U.S. Department of Homeland Security; United States Citizenship and Immigration Services; Angelica Alfonso-Royals, Acting Director U.S. Citizenship and Immigration Services; Kristi Noem, Secretary of Homeland Security; U.S. Immigration and Customs Enforcement; Todd Lyons, Acting Director U.S. Immigration and Customs Enforcement.

release from CECOT and DOS obtained assurances from the Maduro regime that clears the path for Cristian to return from Venezuela to the United States, should he wish to return. ECF No. 352 ¶¶ 7–9; Ex. C, ¶¶ 5-9. Defendants have also removed domestic barriers to Cristian's return, made it clear to Class Counsel that they will cover reasonable travel costs for Cristian's transportation back to the United States, and provided various other assurances. *See* Ex. A; Ex. B at 12:1-8; Ex. D, Email to Class Counsel dated Aug. 14, 2025. In every sense of the word, Defendants have complied with this Court's Order to "facilitate" by clearing the path for Cristian to return to the United States from Venezuela.

Class Counsel argues that "a finding of criminal contempt here would properly serve to punish Defendants for past violations, not to coerce them into compliance with the Court's previous orders" in an attempt to distinguish this matter from the vacatur of the probable cause order in *J.G.G.* Mot. at 28. That statement tellingly concedes that Defendants *have complied* with the Court's Order—else they would be seeking civil contempt to bring Defendants "into compliance with the Court's previous orders." Civil contempt is "remedial" and can be brought by a party to coerce compliance with a court order. *Ramos Colon v. U.S. Atty. for Dist. of Puerto Rico*, 576 F.2d 1, 5 (1st Cir. 1978). Because civil contempt is "designed to exact compliance with a prior court order," once the contemnor complies, the contempt is "purged" and the order of civil contempt is lifted. *United States v. Perry*, 116 F.3d 952, 956 (1st Cir. 1997).

Criminal contempt, on the other hand, "is punitive and imposed to vindicate the authority of the court," so a purge by compliance is not possible. *Id.* As a result, while a party can raise allegations to a court for the court to handle in its discretion, a "party to the original litigation has no standing to prosecute an action for criminal contempt or to take an appeal from the court's rejection of his allegation." *Ramos Colon*, 576 F.2d at 5. By seeking criminal contempt rather than

civil contempt, Plaintiffs have conceded that Defendants have complied with this Court's Orders and they merely seek vindictive punishment as a tool to gain a tactical advantage in civil litigation. Since, as Plaintiffs now admit, Defendants have complied, the only basis for any contempt is that Defendants did not do so fast enough or in a way that Plaintiffs preferred. Neither is grounds for requesting the Court take the extreme step of "last resort," criminal contempt. *In re Att'y Gen. of U. S.*, 596 F.2d 58, 65 (2d Cir. 1979).

Class Counsel then argues that the United States Government did nothing to facilitate Cristian's return to the United States. Mot. at 17-20. That argument ignores the elephant in the room: Cristian was released from CECOT and given a path to return to the United States if he wants to do so. ECF No. 352 ¶¶ 7-9. Additionally, and despite Class Counsel's protestations regarding potential dangers arising from Cristian's presence in Venezuela (Mot. at 13), DOS obtained assurances from the Maduro regime that greatly mitigate those concerns. Ex. C ¶ 8. Defendants have also taken all necessary steps to facilitate his return should he choose to return from Venezuela. In this, Defendants have complied with the plain meaning of "facilitate" because they have actively made it easier for Cristian to "return to the United States to await the adjudication of his asylum application on the merits by USCIS." To date, Cristian has simply not expressed a wish to return to the United States. ECF Nos. 368 at 3; 380 at 2 (noting "serious reservations" with returning to the United States). Far from willful contempt, this state of affairs represents *compliance* with the Court's Order.

Class Counsel next argues that Defendants acted in contempt of the Court's Orders because Cristian was removed from El Salvador to Venezuela rather than the United States. Mot. at 10-13. The argument fails on multiple levels. *First*, contrary to Class Counsel's assertions, the United States did not order or control Cristian's removal from El Salvador to Venezuela. *See J.G.G.*, 2025

WL 2264614 at *5 (Katsas, J. concurring) (noting that jurisdictional discovery in that case, which also involved Venezuelan nationals removed from the United States to El Salvador under the AEA, had revealed no evidence that detainees at CECOT were being held by El Salvador "at the behest and ongoing supervision" of the United States); *see also J.G.G. v. Trump,* No. CV 25-766 (JEB), 2025 WL 1577811, at *11 (D.D.C. June 4, 2025), *vacated and remanded*, No. 25-5217, 2025 WL 2317650 (D.C. Cir. Aug. 8, 2025) ("Rather, the picture that emerges from the current record is that El Salvador has chosen—in negotiation with the United States and for reasons far outside the ken of a federal district court—to detain Plaintiffs at CECOT, and it can choose to release them as well."); ECF Nos. 340-41; Ex. C ¶ 4 ("El Salvador had sovereign discretion over their ultimate disposition.").

Rather, the decision to remove Cristian and 251 other Venezuelan nationals from El Salvador and repatriate them to Venezuela "was made solely by the Government of El Salvador in the exercise of its sovereign authority." ECF No. 352 p. 6 ¶ 8.[4] While the United States had a role as an intermediary and ensured that it would be easier for Cristian to return to the United States if he desired (thus facilitating his return), the United States did not have custody over Cristian and did not choose to transfer him to Venezuela. Instead, two foreign entities decided for their own reasons to transfer Cristian and the other TdA members. *See Gul v. Obama*, 652 F.3d 12, 17 (D.C. Cir. 2011) (harms were "traceable to the act of a foreign sovereign" that had custody).[5] Defendants

---

[4] Class Counsel selectively quoted a DOS press release in which Secretary Rubio expressed thanks to his "team at the State Department as well as our interagency partners" for their work in securing the release of ten Americans wrongfully detained in Venezuela. Mot. at 13 n.11. Class Counsel omitted that Secretary Rubio "especially" thanked "El Salvador's President Nayib Bukele." https://www.state.gov/releases/office-of-the-spokesperson/2025/07/welcoming-the-release-of-u-s-nationals-and-political-prisoners-held-in-venezuela/. Nor do negotiations with the Maduro regime concerning ten Americans held in Venezuela establish the United States controlled El Salvador's disposition of Venezuelans held by El Salvador.

[5] Indeed, the offer to repatriate the Venezuelans detained at CECOT in exchange for the Maduro regime releasing political prisoners in its custody was first made by the Salvadoran government on April 20, 2025—three days before the Court's order to "facilitate" Cristian's return. Ex. C ¶ 5.

cannot be held in contempt for a decision over which had no control—particularly where the decision is made by an independent foreign sovereign like El Salvador or another foreign entity the United States does not control, like the Maduro regime. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (no standing where redressability "'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict.").

And the fact that Cristian has a pending asylum claim vis-à-vis Venezuela is of no moment. Again, El Salvador chose to send Cristian to Venezuela in an arrangement with the Maduro regime. The United States never had custody and was only an intermediary that was able to help El Salvador secure the deal and additionally secured assurances from Maduro. Those assurances include the ability to bring Cristian back if he desires, but he has not requested to be brought back much to Class Counsel's apparent consternation. As such, Cristian has chosen to remain in his native Venezuela despite having a pending asylum claim. Even so, Cristian's presence in Venezuela does not violate any order because Cristian was never granted asylum from Venezuela. In fact, the agency has issued an indicative ruling that his asylum claim would be denied due to his criminal conviction and membership in TdA. ECF No. 268. Thus, his asylum claim is irrelevant to the question of whether Defendants violated the Court's Order to facilitate his return.

*Second*, the Court's Order says nothing—or is at best ambiguous—about whether facilitation of Cristian's return to the United States had to be direct. *See Kammerer*, 450 F.2d at 280 ("[A]mbiguities and omissions in orders redound to the benefit of the person charged with contempt."). The Court's Order specifically notes that "facilitation includes, *but is not limited to*, a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." ECF No. 254 at 2 (emphasis added). Nor could

18

the Court's Order have included this degree of specificity regarding the diplomatic path the Executive Branch had to take to achieve the Court's identified goal of facilitating Cristian's return, given the broad deference owed to the Executive Branch in how to conduct foreign affairs and international diplomacy. *See Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) (foreign policy decisions "are wholly confided by our Constitution to the political departments of the government" and "are decisions of a kind for which the Judiciary has neither aptitude, facilities nor responsibility and have long been held to belong in the domain of political power not subject to judicial intrusion or inquiry"); *see also Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) ("The District Court should clarify its directive, with due regard for the deference owed to the Executive Branch in the conduct of foreign affairs."). Given the fact that Cristian was in the custody of El Salvador, securing assurances from the Maduro regime was the best the United States could accomplish through diplomatic means. And through those substantial efforts, which were by no means easy, the ball is now in Cristian's court.

In upholding a similar order to facilitate the return of Kilmar Abrego Garcia,[6] the Fourth Circuit explicitly noted that "facilitation" properly "leaves the Executive Branch with options in the execution to which the courts in accordance with the Supreme Court's decision should extend a *genuine deference*." *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025) (emphasis added). Because the question of how to facilitate Cristian's return to the United States was a matter of foreign affairs, to which "*genuine* deference is owed," how it was accomplished is necessarily beyond the power of the Court to review. *J.G.G.*, 2025 WL 2264614, at *21 (Rao, J., concurring) ("Decisions concerning diplomacy and foreign policy are "of a kind for which the Judiciary has neither aptitude, facilities[,] nor responsibility and which has long been

---

[6] On which this Court based its April 23, 2025 Order, ECF No. 253 at 14 ("Thus, like Judge Xinis in the *Abrego Garcia* matter, this Court will order Defendants to facilitate Cristian's return to the United States …").

held to belong in the domain of political power not subject to judicial intrusion or inquiry.") (citing *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. at 111). Defendants facilitated Cristian's return to the United States by the means ODS, in its expert diplomatic judgment, determined were practically available under the circumstances, and the path for Cristian to return to the United States is now unequivocally open. While Class Counsel may be dissatisfied with how Defendants ultimately complied with the Court's Order to facilitate Cristian's return, how best to ultimately comply with the order was not for them to decide, nor do they possess the expertise or perspective necessary to have a say in the matter. *See Abrego Garcia*, 2025 WL 1135112, at *1.

The governmental entity that took the relevant actions by the United States Government was DOS.[7] Ex. C. This is because the "facilitation" of Cristian's return, including "a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody," ECF No. 254, required diplomacy with a foreign sovereign, which had to be executed under these circumstances by DOS. Yet it is telling that Class Counsel does not name the official they believe should be held in criminal contempt. Indeed, Class Counsel says, "there is probable cause to find Defendants, *and/or others working in concert* with Defendants, have committed criminal contempt." Mot. at 13 (emphasis added). This failure to name anyone who allegedly committed criminal contempt is likely because DOS was not a party to the Settlement, could not be bound by it, and as a result was never a defendant in this case. Thus, no DOS officials could have violated the Court's Orders and thus be subject to criminal contempt. Class Counsel's unnamed contemnors is thus a null set.

---

[7] In addition to the actions taken by DOS, DHS facilitated Cristian's return by asking DOS for assistance and removing domestic barriers to entry. DHS also expressed willingness to pay Cristian's reasonable travel expenses should he decide to return. Ex. A; Ex. B at 12:1-8.

Class Counsel's motion is thus purely a disagreement with how the Executive chose to conduct foreign policy. *See supra* Section IV.B.1. Class Counsel asks the Court to review and pass judgment on the foreign policy decision of the United States, something that is squarely beyond the jurisdiction of the Court. *Chi. & S. Air Lines*, 333 U.S. at 111. This is an inappropriate use of the Court's contempt power. *J.G.G.*, 2025 WL 2264614, at *16 (Rao, J. concurring) ("The district court's abuse of the contempt power is especially egregious because contempt proceedings against senior Executive Branch officials carry profound 'separation of power[s] overtones' that demand the most 'sensitive judicial scrutiny.'") (citing *In re Att'y Gen. of U.S.*, 596 F.2d at 64). Holding Defendants in contempt for actions that were undertaken to facilitate Cristian's return to the United States would not only contravene the explicit deference granted to the Executive Branch in how to accomplish the Court's Order but would also be an impermissible judgment on the foreign policy actions of the United States. Those foreign policy actions have now borne fruit. Cristian has been released from CECOT and repatriated to Venezuela, where the Maduro regime has assured DOS that it will not impose barriers on Cristian's travel to the United States. ECF No. 352 ¶ 9. Thus, far from acting in contempt of the Court's Orders, Defendants and DOS have acted to facilitate Cristian's return.[8]

## C. Defendants Complied with the Court's Order to File Status Reports.

This Court's June 5, 2025 Order directed Defendants to "file a weekly status report on or before noon in the form of a declaration by an individual with personal knowledge. The status report should include any information regarding: (1) Cristian's current physical location and

---

[8] Class Counsel argues that Defendants have refused to comply with the Court's Order to facilitate Cristian's return because they disagree with it. Mot. at 9. Because Defendants' appeal of the Court's ruling regarding the scope of the order to "facilitate" Cristian's return remains pending, ECF No. 271; *J.O.P v. United States Dep't of Homeland Sec.*, No. 25-1519, Doc. 42 (4th Cir. 2025), Defendants have continued to preserve their position on the issue in their discovery responses and at the hearing on Class Counsel's Motion to Compel. However, as detailed herein, Defendants have made good faith efforts to comply with the Court's Order to facilitate Cristian's return.

custodial status; (2) what steps, if any, Defendants have taken to facilitate Cristian's return to the United States." ECF No. 293. Defendants submitted status reports in compliance with the Court's directive. *See* ECF Nos. 294, 294-1, 295, 295-1, 300, 300-1, 303, 307, 314, 330, 352.

Class Counsel argues that Defendants acted in contempt of the Court's Orders by failing to provide sufficient information in their status reports and discovery responses. Mot. at 4-8, 17, 19-20. With respect to the status reports, Class Counsel does not contest that the status reports from June 2 through July 11 clearly convey that DOS was assisting Defendants to request information about Cristian's custodial status and health, and Defendants conveyed the information received from the Government of El Salvador in response to such requests. *See* ECF No. 294-1 ¶¶ 5-6; ECF No. 300-1 ¶¶ 5-6; ECF No. 303 ¶¶ 6-7; ECF No. 307 ¶¶ 6-7; ECF No. 314 ¶¶ 6-7; ECF No. 330 ¶¶ 6-7. Instead, Class Counsel focuses on the lack of an attestation in the status reports that a direct request was made to the Government of El Salvador that Cristian be released from CECOT for return to the United States, along with the lack of detailed descriptions of past and planned future steps to facilitate Cristian's return. Mot. at 4-8, 17, 19-20.

Even if Defendants' status reports did not provide the level of detail Class Counsel desired on these subjects, the status reports still represented a good faith effort by Defendants to comply with the Court's o\Orders. As Plaintiffs and this Court are aware, facilitation of Cristian's return required high-level diplomatic communications with the Government of El Salvador. *See, e.g.*, ECF No. 294-1 ¶ 7; ECF No. 330 ¶ 6 ("Given the nature of the diplomatic discussions necessitated by the court's order to facilitate Cristian's return to the United States, which would involve engagement with the highest levels of the Salvadoran government, the State Department is responsible on behalf of the U.S. Government for these diplomatic discussions with El Salvador."). *Supra* Section IV.B. In a good faith effort to comply with the Court's Order, Defendants requested

22

assistance from DOS, which DOS provided. *See, e.g.*, ECF No. 294-1 ¶¶ 5, 7; ECF No. 330 ¶¶ 5-6; Ex. C ¶ 6. And again, DOS is not a defendant and thus could not be compelled to act nor could be held in contempt of any court order. Despite this, DOS worked dutifully to facilitate Cristian's return and eventually those efforts bore fruit.

Given the sensitive diplomatic negotiations that were compelled by the Court's Order, it is reasonable that the information that could be shared in public status reports was limited. Ex. C ¶ 10 ("These considerations impeded us from providing further detail to Defendants for their weekly status reports on the specific steps the State Department was taking at that time to facilitate Cristian's return, and we can likewise not divulge many of those details now."). Indeed, the Supreme Court recognized this very reality in its decision upholding the facilitation order in *Abrego Garcia*, on which this Court based its Order. *See* ECF No. 253 at 14. In upholding the district court's decision, the Supreme Court, "in light of deference owed to the Executive Branch in the conduct of foreign affairs" noted that the "the Government should be prepared to share *what it can* concerning the steps it has taken and the prospect of further steps." *Abrego Garcia*, 145 S. Ct. at 1018 (emphasis added). The Fourth Circuit also recognized this reality in its decision upholding the similar facilitation order in *Abrego Garcia*, noting the Supreme Court's decision on the matter "would allow sensitive diplomatic negotiations to be removed from public view." *Abrego Garcia*, 2025 WL 1135112, at *1. Defendants did precisely this in their filed status reports; they shared what they could in light of the sensitive diplomatic negotiations implicated by the Court's Order.

In light of the principles regarding Executive Branch control over the conduct of foreign affairs discussed above, and because of Secretary Rubio's invocation of the state secrets privilege, Defendants did not provide the level of detail Class Counsel would have preferred regarding details

of conversations DOS had with the Government of El Salvador, including whether and when requests may have been made for Cristian to be released for transport to the United States. Nor could Defendants provide specific details regarding what steps had been taken or were being taken to facilitate Cristian's return nor what future steps had been planned to that end. Ex. C ¶ 10 ("Maintaining a relationship of trust and mutual respect with foreign counterparts is the cornerstone of effective diplomacy, and achieving a diplomatic goal often involves complex negotiations that the foreign counterpart does not want divulged publicly."). Instead, Defendants complied with the Court's Order to the best of their ability by providing assurances that (1) they were aware of the Court's Orders (*see, e.g.*, ECF No. 290-1 ¶ 3, ECF No. 307 ¶ 3); (2) they had requested DOS's assistance in complying with the Court's Order, including by entering into diplomatic discussions to facilitate Cristian's return (*see, e.g.*, ECF No. 290-1 ¶ 4; ECF No. 307 ¶ 5); (3) the United States Embassy in El Salvador remained in communication with the government of El Salvador and consistently requested specific updates regarding Cristian (*see, e.g.*, ECF No. 307 ¶ 7, ECF No. 314 ¶ 7; Ex. C at ¶ 7); and (4) Secretary Rubio was personally committed to making prompt and diligent efforts on behalf of the United States to comply with the Court's Order to facilitate Cristian's return (ECF No. 290-1 ¶ 6).

The absurdity of Class Counsel's extreme position is highlighted by the fact that they argue Defendants were in contempt of the Court's Order by filing the July 18 status report at 4:25 p.m. Pursuant to the Court's June 5, 2025 Order, Defendants' weekly status report was due on July 18, 2025, at 12:00 pm EDT. *See* ECF No. 393. Defendants "profusely apologiz[ed] for missing that deadline." Ex. B, Hearing Transcript, 21:23-24; Ex. C ¶ 9 ("We regret this brief delay in filing the status report, but the operation's success and sensitive diplomatic engagement depended on maximum discretion."). However, Defendants' same-afternoon delay in filing the report does not

evince "beyond a reasonable doubt . . . [that Defendants] willfully . . . violated a decree." *Richmond Black Police Officers Ass'n*, 548 F.2d at 129. Rather, Defendants were awaiting confirmed, accurate information that the arrangement between El Salvador and the Maduro regime had succeeded.[9]

Incredibly, Class Counsel asserts that Defendants' four hour and 25-minute delay in filing the July 18 status report rises to the level of criminal contempt. *See* ECF No. 3751-2 at 12. Class Counsel contends that Defendants delayed filing the status report because "Defendants and/or those working in concert with Defendants were aware that Cristian was in the process of being transported to Venezuela and intentionally chose to delay filing their July 18 status report to prevent this Court and Class Counsel from being made aware until after he arrived in Venezuela." *Id*.[10] Class Counsel's contentions are baseless because they rest on two faulty and unsubstantiated assumptions: 1) that Defendants had custody of Cristian and were responsible for his transfer to Venezuela; and 2) that the Court's Order prohibited Cristian's transfer to Venezuela. The flaws in each of these assumptions are fatal to Class Counsel's allegation.

*First*, Class Counsel's argument is entirely unprecedented—and, indeed, facially absurd. Class Counsel does not identify a single instance in which a court has held that a late filing— particularly where the delay was measured in mere hours—has *ever* been found to be a basis for criminal contempt. There is no reason for this case to be the first.

---

[9] *See* ECF No. 352 ("The arrangement discussed in Exhibit A did not come to fruition until approximately 3:45pm Eastern Standard Time on July 18, 2025, which is why Department of State's update to Department of Homeland Security was delayed."); Ex. C ¶ 9 ("To mitigate the risk that the deal would fall apart under public scrutiny, the State Department asked Defendants to delay filing their report until we had confirmation that the respective planes had safely taken off. . . As soon as we had confirmation that the planes had safely taken off—approximately 3:45pm Eastern Daylight Time on July 18—the State Department notified Acting Deputy Assistant Director Harper so that she could include the information in her declaration accompanying the status report.").

[10] To the extent Class Counsel's reference to "those working in concert with Defendants," Mot. at 22, refers to Department of Justice counsel, counsel categorically reject the allegation that they acted in violation of the Court's Order. DOS also categorically rejects the allegation to the extent the reference refers to DOS.

*Second*, Class Counsel's motion rests on the erroneous assumption that the United States had custody of Cristian. Mot. at 22 ("It is hard to see what could explain this sequence of events other than an intentional effort to conceal Cristian's status and whereabouts until the transfer to Venezuela was effectuated."). But the United States did not have custody of Cristian. *See* ECF No. 352 ¶ 8. Moreover, any intimation by Class Counsel that Defendants would have benefitted from intentionally delaying the filing of the joint status report is entirely unsupported because the Court could not have enjoined the actions of a foreign government. Nor could the Court have dictated a response to such actions on behalf of the United States Government. *Chi. & S. Air Lines*, 333 U.S. at 111. Accordingly, Defendants gained nothing—and Class Counsel lost nothing—due to the filing of the July 18 status report at 4:25 p.m. rather than at noon.

Class Counsel's third faulty assumption is that the Court's Order prohibited Cristian's transfer to Venezuela. *See* Mot. at 22 ("Defendants apparent efforts to hide the transfer before it occurred, in violation of the Court's orders"). But nowhere in the Court's Order is there a prohibition of Cristian's transfer to Venezuela by Defendants, let alone a prohibition of a foreign sovereign releasing him for transfer to Venezuela. Defendants have facilitated Cristian's return via DOS's facilitation of an arrangement that led to his release from CECOT and transfer to Venezuela, with assurances that he may return to the United States should he choose to do so. Filing the joint status report at noon would not have opened a path for Cristian to return to the United States that was closed by 4:25 pm. The idea that a four-and-a-half-hour delay could constitute criminal contempt on behalf of the United States Government and be worthy of "constitutional confrontation between the two branches" would be laughable if was not so dangerous. *Cheney*, 542 U.S. at 389-90.

**D.    Defendants Complied with the Court's Order to Produce Expedited Discovery and are in Compliance with the Federal Rules of Civil Procedure.**

Finally, Plaintiffs' allegation that Defendants' discovery responses call for criminal contempt is extraordinary, unfounded, and misinterprets this Court's rulings. The Court denied Plaintiffs' Motion to Compel Discovery, without prejudice, and tabled the Order on Expedited Discovery pending the filing of any additional motions. *See* ECF No. 358. The Court did not order Defendants to supplement their discovery responses and stated during the hearing that "the purposes for which we had been conducting this discovery have largely been mooted." Ex. B, Hearing Transcript July 22, 2025, 17:17-20.

In alleging that "Defendants' responses to Class Counsel's discovery requests do not demonstrate any effort to comply with the Court's April 23 Order," Mot. at 7, and that Defendants engaged in "game-playing, stalling, and refusal to comply with this Court's order," *id.* at 9, Class Counsel attempt to penalize Defendants for properly availing themselves of the Federal Rules of Civil Procedure and the state secrets privilege. As noted in Defendants' discovery responses, DOS invoked the state secrets privilege regarding the details of its negotiations with the government of El Salvador, which precluded the information from being shared in a public status report. *See* ECF No. 326 at 8-13. The state secrets privilege "performs a function of constitutional significance, because it allows the executive branch to protect information whose secrecy is necessary to its miliary and foreign-affairs responsibilities." *El-Masri v. United States*, 479 F.3d 296, 303 (4th Cir. 2007). The privilege provides exceptionally strong protection against disclosure because it concerns "areas of Art. II duties [in which] the courts have traditionally shown the utmost deference to Presidential responsibilities." *United States v. Nixon*, 418 U.S. 683, 710 (1974).

In invoking the state secrets privilege, Secretary Rubio noted that inquiry into the specifics of cooperation with El Salvador would cause significant harm to the foreign relations interests of

the United States. *See* ECF No. 326-1 ¶ 6 (filed under seal). In another declaration, Secretary Rubio

clarified that DOS's formal claim of the state secrets privilege applies to the information sought

by Class Counsel in this matter. *See* Ex. E, Declaration of Marco Rubio dated July 21, 2025.[11]

Secretary Rubio clarified that his invocation of the state secrets privilege applied to requests for

information "regarding the negotiations [that] led up to the Government of El Salvador's decision

to release the 252 Venezuelan nationals, including Cristian, from CECOT on July 18, 2025[.]" *Id.*

¶ 8. As Secretary Rubio noted elsewhere,

> the compelled disclosure of this sensitive information would cause significant harm
> to the United States' foreign affairs interests even if some of the alleged detail may
> have made it into public sources through unofficial means. The disclosure of
> foreign affairs information through official acknowledgement or confirmation is
> vital to the protection of the United States' ability to conduct foreign affairs. There
> is a difference between official acknowledgement and informal reports: official
> disclosures or acknowledgements threaten the United States' national interests in a
> way that informal reports or statements do not, because informal statements leave
> an important element of doubt that provides an essential layer of protection and
> confidentiality. That protection would be lost if the United States were forced to
> confirm or deny the accuracy of unofficial disclosures or speculation. Thus, even if
> the public or the press believes certain information to be true, providing an official
> acknowledgement by confirming or denying specific details
> threatens . . . significant diplomatic and foreign relations harms[.]

*Id.* ¶ 6 (quoting Decl. of Sec'y of State Marco Rubio, *Abrego Garcia et al. v. Noem et al.*, No. 8:25-

cv-951-PX (D. Md.) (May 5, 2025)). As such, the fact that the discovery produced to date does not

contain evidence of diplomatic negotiations between the United States and El Salvador regarding

the facilitation of Cristian's return to the United States cannot be taken as evidence that Defendants

---

[11] Ex. E was produced in part to avoid any doubt as to whether earlier invocations of the state secrets privilege regarding the same subject matter implicated in the Court's Orders and Class Counsel's discovery requests applied to Defendants' discovery responses in this matter. *See* Mot. at 10 ("Defendants also sought to avoid discovery of their conduct through procedurally flawed invocations of the state secrets privilege."). The declaration was not filed with the Court or served on Class Counsel earlier because the day after it was executed, the Court denied Class Counsel's Motion to Compel. ECF No. 358. Indeed, Defendants' counsel offered this declaration to the Court, notwithstanding Defendants' position on mootness, at the hearing on the motion to compel. Ex. B, Hearing Transcript, 37:11-21.

did not comply with the Court's Order. The reality is simply that such materials were subject to the state secrets privilege, as Defendants repeatedly signaled.

Class Counsel also argues that Defendants' discovery responses were in contempt of the Court's Order because Defendants objected to Class Counsel's definition of "facilitate." Mot. at 9. However, Defendants' objection merely preserved their position on the issue of the meaning of "facilitate" in light of their pending appeal. *See supra* p. 20 n.7. As explained in Defendants' opposition to the motion to compel, Class Counsel's discovery requests used the term "facilitate" to seek specific diplomatic communications from the Executive Branch relative to the release and return of Cristian. ECF No. 326 at 6-8. That use of the term went beyond the guidance provided by the Fourth Circuit. *Id.* (citing *Abrego Garcia v. Noem*, No. 8:25-CV-00951-PX, 2025 WL 1113440, at * 2 (D. Md. Apr. 15, 2025), *affirmed*, No. 25-1404, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025). Class Counsel's attempt to expand the term to encompass specific diplomatic communications would have expanded the Court's expedited discovery order beyond the Court's jurisdiction, ECF No. 326 at 6-8, and it would have required the production of documents and information protected by the state secrets privilege. Ex. E ¶¶ 6-10.

Class Counsel further cites Defendants' motion to hold their appeal in abeyance pending a Federal Rule of Civil Procedure 62.1 motion for an indicative ruling that they had complied with the Court's Order to facilitate Cristian's return as evidence of Defendants' contempt, characterizing the action as "game-playing" and "stalling." Mot. at 9. As Class Counsel would have it, the fact the Defendants had not filed a motion for an indicative ruling demonstrates their desire to use the pending appeal as an excuse to make no effort to comply with the Court's Order. *Id.* at 9-10. As with many of their other arguments, Class Counsel fail to account for Cristian's release and transfer on July 18. Far from an attempt to stall, Cristian's release disrupted the status quo, altered the

parties' litigation strategy, and obviated Defendants' need at that time to seek an indicative ruling that they had complied with the Court's Order. Now that it has become clear that Cristian does not have an imminent desire to return to the United States, Defendants have moved to vacate the Court's Order to facilitate his return. ECF No. 386. Seeking relief from the Court hardly constitutes criminal contempt just because Class Counsel would prefer that Defendants roll over.

As explained in detail in Defendants' opposition to Class Counsel's motion to compel, Defendants' discovery responses demonstrated extensive efforts to comply with the Court's Orders to facilitate Cristian's return. *See generally* ECF No. 326. Even if Defendants' discovery responses did not contain the level of detail Class Counsel would have preferred, Defendants' responses were limited by Secretary Rubio's invocation of the state secrets privilege. In denying Class Counsel's motion to compel, the Court did not order Defendants to supplement their discovery responses, much less impose sanctions on Defendants for failing to provide adequate responses. In the absence of such rulings, Class Counsel cannot come close to establishing probable cause that Defendants' discovery responses were in contempt of the Court's June 5 Order.

## V.    Conclusion

For the foregoing reasons, Defendants request that Class Counsel's Motion to Find Probable Cause to Hold Defendants in Contempt be denied.[12]

Dated: September 11, 2025                  Respectfully submitted,

                                           BRETT A. SHUMATE
                                           *Assistant Attorney General*
                                           Civil Division

                                           DREW ENSIGN
                                           *Deputy Assistant Attorney General*

---

[12] For the same reasons, the Court should deny Class Counsel's request to conduct additional discovery in this matter, which would only further mire the Court in discovery disputes. *See J.G.G.*, 2025 WL 2264614, *14 (Katsas, J. concurring) (noting "discovery will likely be problematic" in light of government's assertion of state secrets privilege).

TIBERIUS DAVIS
*Counsel to the Assistant Attorney General*

YAMILETH G. DAVILA
*Assistant Director*

RUTH ANN MUELLER
*Senior Litigation Counsel*

RICHARD G. INGEBRETSEN
ERHAN BEDESTANI
KELARK AZER HABASHI
*Trial Attorneys*

*/s/ Brandon D. Zeller*
Brandon D. Zeller (NC Bar 50245)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court National Security Section
P.O. Box 868
Washington D.C. 20044
T: (771) 217-8120
brandon.d.zeller@usdoj.gov
*Counsel for Defendants*

31

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 11th day of September, 2025, a copy of the foregoing was

electronically filed and served on counsel by ECF, and copies of the sealed documents were served

by email.

*/s/ Brandon D. Zeller*
Brandon D. Zeller (NC Bar 50245)
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation

32