Ex. B

```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                        SOUTHERN DIVISION

 3   J.O.P., et al.,                )
                                     )
 4           Plaintiffs,            )
         vs.                         )
 5                                   ) CIVIL NO.:
     U.S. DEPARTMENT OF HOMELAND     ) 8:19-cv-01944-SAG
 6   SECURITY, et al.,               )
                                     )   SEALED
 7           Defendants.             )
     _____)

 8
                                   Baltimore, Maryland
 9                                 July 22, 2025
                                   10:00 a.m.
10
                      TRANSCRIPT OF PROCEEDINGS
11              MOTIONS HEARING - STATUS CONFERENCE
           BEFORE THE HONORABLE STEPHANIE A. GALLAGHER
12                         Courtroom 7C

13   For the Plaintiffs:

14        KEVIN J. DeJONG, Esquire
          SIERRA PEREZ-SPARKS, Esquire
15          Goodwin Procter LLP
            100 Northern Ave.
16          Boston, MA 02210

17        JAIME A. SANTOS, Esquire
            Goodwin Procter LLP
18          1900 N Street, NW
            Washington, DC 20036
19
          MICHELLE N. MENDEZ, Esquire
20          National Immigration Project
            1201 Connecticut Ave. NW, Suite 531
21          Washington, DC 20036

22   For the Defendants:

23        RUTH ANN MUELLER, Esquire
            Department of Justice - Civil
24          Office of Immigration Litigation
            District Court Section
25          450 5th Street NW
            Washington, DC 20001
```

1    <u>For the Defendants</u>:  (Continued)

2            YAMILETH G. DAVILA, Esquire
               Department of Justice - Civil
3              Office of Immigration Litigation
               1100 L St., N.W.
4              Washington, DC 20530

5            ERHAN BEDESTANI, Esquire
             KELARK AZER HABASHI, Esquire
6              Department of Justice - Civil
               Office of Immigration Litigation
7              P.O. Box 868, Ben Franklin Station
               Washington, DC 20044

8

9

10

11

12            (Computer-aided transcription of stenotype notes)

13

14

15

16

17

18

19

20

21

22

23

24

25

1    I think these are ongoing conversations again we can have with

2    plaintiff's counsel this week.  We've only had one brief

3    conversation yesterday.  We need to continue to talk on our end

4    about how we can help facilitate him and what we can do to

5    bring him back.  For us, the most important question is if he

6    wishes to return.

7              THE COURT:  Right --

8              MS. MUELLER:  These are just ongoing conversations

9    that are hurriedly and fast evolving, based off of the

10   declaration from Friday and our conversations with plaintiff's

11   counsel and our clients yesterday.

12             THE COURT:  Let me be clear.  To the extent he

13   desires to come back, in my view, the Government's obligation

14   will be to return him to the status quo ante which is that he

15   was here waiting for asylum under the terms -- waiting for his

16   asylum hearing under the terms of the plea agreement before he

17   was taken to El Salvador and now to Venezuela.  In my view, it

18   is going to be that it is on the Government not only to

19   facilitate by assisting in getting permission for him to come

20   back but to bring him back to the position he was in before the

21   agreement was breached.  To the extent that helps your

22   conversations with your clients, it should go in that

23   direction.

24             MS. MUELLER:  Understood, Your Honor.

25             MR. DEJONG:  Thank you, Your Honor.

1    MS. MUELLER:  Also just to add, Your Honor, in

2    speaking with our clients yesterday, an additional step that we

3    did discuss with plaintiff's counsel is that DHS has removed

4    the additional barriers and obstacles for Cristian to return

5    should he return back to a port of entry.  So steps are being

6    taken from DHS to make sure that should Cristian wish to

7    return, that they are already working to make sure that will be

8    as seamless as possible.

9          THE COURT:  All right.

10         MR. DEJONG:  There was another related issue as to

11   how his application would be processed when he returns.  I'm

12   raising this because on a meet and confer held yesterday,

13   counsel referred numerous times to this idea that he is subject

14   to this indicative ruling which, as the Court remembers before,

15   we've already rejected this idea that they can process his

16   application with simply an indicative ruling.  We want

17   assurances that if and when he returns, he's, in fact, going to

18   be entitled to his adjudication on the merits and not simply an

19   indicative ruling.

20         THE COURT:  Yes.  I think our discussions when the

21   indicative ruling came was that was not what the plea agreement

22   had suggested would be the appropriate disposition of his case.

23   There was a process that was agreed to by the parties, and the

24   Court will expect that he will get the process that he is due

25   under the agreement.

1    works for a while.  As you recall, on June 9, the Government

2    filed a motion with the Fourth Circuit to hold their pending

3    appeal in abeyance on grounds that they were going to file a

4    forthcoming motion.  We don't know what the basis was, but they

5    were allegedly going to argue that they had complied with the

6    order.  We didn't see how they would possibly be in compliance

7    with the order, but that's what they're saying.

8         It appears then that counsel knew that something was

9    coming; that for over a month it strongly appears they've known

10   about this, and they've waited to update the Court and class

11   counsel until after Cristian was sent to Venezuela, the one

12   country that he's trying to seek asylum from.  I -- Your Honor,

13   to be frank -- and we don't say this lightly -- but the lawyers

14   or their clients, someone should be held accountable for these

15   egregious violations.  And it's ongoing.  This isn't the first

16   time, as the Court knows.  This is certainly not the first

17   time.

18        The original violation back in March, there's a piece of

19   evidence that we haven't -- that the Court is not yet aware of,

20   and I'm willing to share it with you now and we can provide the

21   email on this as well, but Cristian's immigration counsel had

22   emailed officials at ICE and said:  You can't remove Cristian

23   to El Salvador because that would be a violation of the

24   Settlement Agreement.  His immigration counsel had learned

25   that, in fact, they were planning to remove him.  And so his

1    immigration counsel did the right thing and emailed them, said

2    you can't do this.

3        Two days later, they did it.  They put him on the plane to

4    El Salvador along with all the other detainees to CECOT, a

5    supermax prison where he's been for four months now.

6        Your Honor, I'm raising this now because there have been

7    recurring egregious violations of court orders, culminating

8    what happened last Friday which, in our view, means this

9    discovery for contempt needs to proceed, and we need to get to

10   the bottom of who's accountable for this.

11       THE COURT:  Well, let me ask this.  Because the

12   discovery that was originally ordered in this case, in your

13   mind, may have been for contempt, I don't know that we had

14   gotten there yet in terms of any formal -- clearly, there

15   hadn't been any formal motion for sanctions, motion for

16   contempt, anything of that nature yet.

17       MR. DEJONG:  Correct.

18       THE COURT:  So it seems to me that as we sit here

19   today, the purposes for which we had been conducting this

20   discovery have largely been mooted.  Now I understand the

21   points that you're making, and you may have intent of filing

22   something else that is not yet filed, so I think we need to

23   have both -- I appreciate the substantive points that you're

24   raising, but we do have something of an unusual procedural

25   situation in terms of what is actually pending before this

1    we're in a different position now.

2        I think that my analysis as to some of the

3    discovery-related issues is inherently in a different posture

4    today than it was last week and in a different posture than it

5    would be if I had a pending motion for sanctions, motion for

6    criminal contempt, something to that effect that I, sitting

7    here today, don't have.  So that's why I feel like we are in a

8    little bit of a strange situation with respect to what's

9    pending before the Court.

10              MR. DEJONG:  Your Honor, the reason why we don't have

11   a motion pending yet is because, in our view, the intent was to

12   get through the discovery to get to the bottom of sort of who's

13   involved in these status reports, in late filings, who knew

14   what, so that we can then bring the appropriate motion.  That

15   from the get-go was really the intent, to get this discovery.

16       I think we agree, Your Honor, though that the events have

17   shifted a bit since Friday, but much of the discovery relates

18   to what steps they have taken and what steps they will take to

19   facilitate his return.  And, again, that is still a live issue.

20   We've heard some representations, but without sort of that

21   discovery and ongoing obligation from the Government, I don't

22   know if they're going to -- we need to keep the discovery open

23   until they've actually complied, and they haven't done that

24   yet.

25              THE COURT:  All right.  Let me hear from the

1   Government briefly and then I'll turn back to you.

2          MS. MUELLER:  Good morning, Your Honor.  As you

3   mentioned, discovery into the actions while Cristian is in El

4   Salvador is moot.  This is a fast-evolving situation.  A.D.

5   Harper's declaration filed on Friday demonstrates the

6   separation of powers and the diplomatic communications that

7   have been occurring here.  If anything, A.D. Harper's

8   declaration demonstrates that the U.S. government has been

9   facilitating and in compliance with this Court's order to bring

10  Cristian back to the United States.

11      As A.D. Harper's declaration states -- and I want to

12  respond to a couple of points that plaintiff's counsel made.

13  With respect to the timing and status of Friday's activities,

14  on page 1 of the defendant's status report, this is docket

15  entry 352, it says:  The arrangement discussed in Exhibit A,

16  which is A.D. Harper's declaration, did not come to fruition

17  until approximately 3:45 p.m., Eastern Standard Time, on July

18  18, 2025.

19      I also, in response to plaintiff's counsel's --

20          THE COURT:  There was, though, a status report due

21  sooner.  I understand that that particular set of circumstances

22  didn't come to fruition until later in the afternoon.

23          MS. MUELLER:  Yes, Your Honor.  We profusely

24  apologize for missing that deadline on Friday.  Again, I do

25  think that the status reports, especially A.D. Harper's status

1   report, her declaration on Friday demonstrate the high-level

2   communications that are occurring here and why discovery now is

3   moot or, at a minimum, should be stayed pending continued

4   discussions with plaintiffs as to how to return Cristian to the

5   United States.

6          Based off A.D. Harper's declaration on paragraph 9 of

7   docket entry 352, there are three steps that the Government is

8   working through and needs to have time to discuss with

9   plaintiff's counsel.  Should Cristian wish to return, the U.S.

10  government is ready and able to facilitate that.  The question

11  is whether or not he needs -- whether or not he wishes to

12  return once plaintiff's counsel makes that determination with

13  their client.

14         As of yesterday in discussing with our clients, it's our

15  understanding that Cristian is out of custody, and class

16  counsel would need to be the ones to reach out to him.  Those

17  conversations are ongoing.  The parties had a meet and confer

18  yesterday to begin those conversations, and I think that

19  continuing discovery on any request from plaintiffs, based off

20  plaintiff's representations today, are outside the scope of the

21  Court's June order.  This was narrowly tailored discovery with

22  respect to the April order, so any ongoing discovery is not

23  narrowly tailored and is outside of the relief this Court has

24  already provided plaintiffs.

25         THE COURT:  You would agree with me that if there

1    were a motion to compel or motion for sanctions pending, that

2    that discovery may once again be relevant?  Because that

3    presumably would relate to the overarching conduct in this case

4    and not simply the current posture?

5              MS. MUELLER:  Yes, Your Honor, but again the weekly

6    status reports and, in particular, A.D. Harper's report from

7    Friday, demonstrate that the U.S. government has been in

8    compliance with facilitating Cristian's return, especially with

9    the definition of "facilitation" from the U.S. Supreme Court in

10   *Abrego*.  We are working towards those --

11             THE COURT:  But we actually don't know that yet

12   because I defined in my order, and the Fourth Circuit at least

13   agreed, that asking the question for him to be returned from El

14   Salvador to the United States, making that request was part of

15   facilitating.  I still don't know whether that ever happened.

16   I understand that the Government has now reached an arrangement

17   by which he was sent to Venezuela which was the country he was

18   seeking asylum from, but I still have no way of knowing whether

19   anyone ever posed the question to El Salvador and said, "Hey,

20   we want Cristian to come back to the United States."  We don't

21   know if that happened or not.

22             MS. MUELLER:  Understood, Your Honor.  And, again,

23   the definition of facilitate that's with the Fourth Circuit,

24   that was on a motion to stay.  Whereas with the *Abrego*

25   decision, that was on a merits decision.  With respect to the

1    will provide a new amended privilege log.  If Your Honor needs

2    it, we also have another declaration with respect to state

3    secret for those documents.

4              THE COURT:  I certainly would need a declaration and

5    the documents would need to be logged.

6              MS. MUELLER:  Yes, Your Honor.

7              THE COURT:  So my understanding is that your

8    representation is that whatever future version of the privilege

9    log we wind up seeing will have all of the documents on it that

10   are being withheld?

11             MS. MUELLER:  Yes, Your Honor.  If Your Honor wishes

12   that we move forward with this, notwithstanding the position

13   that any discovery here is moot, we're happy to submit the new

14   declaration on SSP as soon as Your Honor would like it, and we

15   can update that privilege log and those will be forwarded --

16             THE COURT:  I don't think I need it right now based

17   on my ruling here today because I have agreed that the current

18   status of discovery is moot, but it sounds like things are

19   going to be reinitiated by way of the motion that Mr. DeJong

20   has represented he intends to file.  If that happens, I just

21   want to be clear about the process that we're going to follow

22   and what the representation is about what will be contained in

23   the log.

24             MS. MUELLER:  Yes, Your Honor.  With respect to the

25   classified documents, there are documents that are deemed

1   relevant but classified.  The agencies are determining whether

2   or not any privilege assertions will be put over those

3   documents.  I don't have an update on that today but that

4   process is ongoing --

5            THE COURT:  Let me be clear that based on the

6   representation from Mr. DeJong, that should stay ongoing.  I

7   don't want -- just because I have mooted the present discovery

8   issue, it sounds fairly certain it's going to be initiated

9   again, and I don't want them to stop their consideration of

10  this issue because we want the discovery to be able to move

11  expeditiously once it's reinitiated.

12           MS. MUELLER:  Understood, Your Honor.

13           THE COURT:  Are there other issues that we can

14  productively talk about this morning?

15           MR. DEJONG:  Nothing further from plaintiffs.

16           MS. MUELLER:  Nothing further from defendants, Your

17  Honor.

18           THE COURT:  Let me ask with respect to this

19  situation, you're going to be meeting and conferring as to

20  Cristian, is it helpful to continue to have the Friday status

21  reports in place so that I can find out what's happening on

22  some regular interval?

23           MR. DEJONG:  Your Honor, in our view, the answer is

24  yes because they are under a continuing obligation to comply

25  with this Court's order to facilitate his return.  Not knowing