# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | |
|---|---|
| J.O.P., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Department of Homeland Security, *et al.*, <br><br> Defendants. | Civil Action No. <br> 8:19-CV-01944-SAG |

# CLASS COUNSEL'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO FIND <u>PROBABLE CAUSE TO HOLD DEFENDANTS IN CONTEMPT</u>

## I. INTRODUCTION

The motion for contempt turns on a critical question: Did the government make a good faith request to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States? If the answer is no, then Defendants did not comply with the express terms of the Court's April 23 Order. While insisting that they complied with the April 23 Order—and without disputing that the Order was unambiguous on this point—Defendants' opposition conspicuously declines to say whether the government *ever* posed that specific request to El Salvador. The simplest explanation for Defendants' omission is the best one: the request was never made. That conclusion is also supported by the fact that El Salvador did not release Cristian *to U.S. custody*, which notably contrasts with the outcome in the parallel *Abrego Garcia* litigation. At a minimum, the current record, and the government's own conspicuous omissions in its defense, support a finding of probable cause for criminal contempt and corresponding discovery.

Rather than engage with the terms of the Court's April 23 Order and try to reconcile its conduct with the Court's express directives, Defendants' primary response is a non sequitur. By brokering the prisoner exchange that sent Cristian to Venezuela (the same country he seeks asylum from), Defendants say they "have complied with the plain meaning of 'facilitate' because they have actively made it easier for Cristian to 'return to the United States.'" ECF No. 395 ("Opp.") at 16. That argument based on the government's own construction of "facilitate" ignores that the Court's April 23 Order provided *expressly* that, as part of facilitation, the Defendants were required, at a minimum, to make a specific, good faith request of the government of El Salvador to release Cristian to U.S. custody. On this record, there is probable cause to find that Defendants willfully violated the April 23 Order.

There is also probable cause to find that Defendants compounded their contempt by willfully violating the Court's status report orders in an effort to frustrate the Court's ability to

enforce its judgments. Defendants try to minimize their noncompliance as if it were an inadvertent delay, but their opposition also *admits* that their failure to file a timely status report on July 18 was a *strategic* choice to conceal real-time events from both the Court and Class Counsel until the prisoner exchange had become a fait accompli. Defendants' assertion they could disregard the Court's directives and deadlines to achieve their own strategic objectives—without even bothering to seek relief from the Court, in the form of request for an extension, an invocation of privilege, or an *in camera* submission—is an untenable attack on the Court's authority.

Defendants devote several pages to attacking a straw man, arguing that neither the initial breach of the Settlement Agreement by removing Cristian to El Salvador nor Defendants' insufficient discovery responses are grounds for contempt. *See* Opp. 10-13, 27-30. But Class Counsel have not based their motion for contempt on those grounds, which were raised separately in other motions. Instead, Class Counsel's motion rests on Defendants' evident violation of the April 23 Order and the subsequent orders requiring Defendants to file timely status reports containing specified information for the purpose of ensuring compliance with the April 23 Order.

At a minimum, the record demonstrates probable cause to find Defendants criminally in contempt of the Court's orders. Accordingly, further discovery and proceedings are warranted "to vindicate the authority of the court." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (citation and quotation omitted).

## II.     ARGUMENT

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," and it is therefore "not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citations omitted). Defendants' opposition confirms that there is probable cause to find them criminally in contempt of (1) this Court's April 23 Order, which required Defendants to "facilitate" Cristian's return to the United States, including making a good

2

faith request to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States; and (2) this Court's orders requiring Defendants to file status reports providing specified information regarding Defendants' efforts to comply with the April 23 Order.[1]

> A. **The Government's Opposition Confirms Probable Cause to Find Contempt of the Court's Order to Facilitate Cristian's Return to the United States.**

Defendants' opposition does not dispute that the Court's April 23 Order was "a reasonably specific order," *United States v. McCoy*, 828 F. App'x 910, 911 (4th Cir. 2020) (citation omitted), which "was clear and left no uncertainty in the minds of those that heard it," *United States v. Westbrooks*, 780 F.3d 593, 595 (4th Cir. 2015) (citation omitted). Any such argument challenging the clarity of the Court's Order is therefore forfeited. *See, e.g.*, *Rose v. Harloe Mgmt. Corp.*, 2017 WL 193295, at *6 n.3 (D. Md. Jan. 17, 2017) ("By failing to raise and argue this point in their initial Motion, Defendants waived it."); *Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to this argument[,] Plaintiff concedes the point.").

Nor could Defendants reasonably dispute that the Order was clear. It explicitly ordered the government to, at a minimum, make "a good faith request … to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." ECF No. 254 ¶ 2. All three Judges on the Fourth Circuit panel agreed that is what the Order meant: the government "must express in words to the government of El Salvador that Cristian be released for transport

---

[1] In separate litigation, Judge Boasberg found probable cause for criminal contempt based on the government's violation of an order not to transfer certain individuals from U.S. custody pursuant to the Alien Enemies Act. *See J.G.G. v. Trump*, 778 F. Supp. 3d 24 (D.D.C. 2025). A panel of the D.C. Circuit subsequently vacated that order on other grounds, *J.G.G. v. Trump*, 147 F.4th 1044 (D.C. Cir. 2025) (per curiam), although the D.C. Circuit has since stayed its own vacatur of the district court's order pending disposition of the plaintiffs-appellees' petition for rehearing en banc. *See* Order, No. 25-5124 (D.C. Cir. Aug. 29, 2025). The D.C. Circuit panel's decision was premised on questions regarding the clarity of the court's order and whether contempt was being used to enforce a vacated order. Those considerations are not implicated here.

back to the United States." *J.O.P. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1431263, at *6 (4th Cir. May 19, 2025) (Benjamin J., concurring); *see id.* at *15 (Richardson, J., dissenting) (characterizing the Court's Order as "an order requiring specific diplomatic communication from the Executive Branch"). Defendants do not even try to suggest some alternative interpretation of the Order. Yet, as Class Counsel has explained, "Defendants have provided no evidence—none— that they ever made such a request." ECF No. 375-1 ("Opening Br.") at 17.

Strikingly, Defendants' opposition avoids stating whether it ever made the ordered request to the government of El Salvador. That omission is all the more striking given the Court's repeated statements at the July 22 hearing that Defendants' professed "compliance" with the Court's Order hinges upon "whether anyone ever asked El Salvador to return Cristian to the United States":

> THE COURT: But we actually don't know that [the government has complied] yet because I defined in my order, and the Fourth Circuit at least agreed, that asking the question for him to be returned from El Salvador to the United States, making that request was part of facilitating. ***I still don't know whether that ever happened***. I understand that the Government has now reached an arrangement by which he was sent to Venezuela which was the country he was seeking asylum from, but ***I still have no way of knowing whether anyone ever posed the question to El Salvador and said, "Hey, we want Cristian to come back to the United States."*** We don't know if that happened or not.
>
> . . .
>
> MS. MUELLER: No, Your Honor. We are in compliance with the Court's order, but again –
>
> THE COURT: How? Because what evidence do I have that you were in compliance with that? ***Again, I don't know the answer to this question, whether anyone ever asked El Salvador to return Cristian to the United States***.

July 22, 2025 Hr'g Tr. at 23:11-21, 24:7-12 (emphases added).

4

Remarkably, despite this Court's admonitions, Defendants *still* avoid giving an answer to this crucial question. One suspects that is no accident. Rather, the most logical inference is that Defendants cannot represent that they (or DOS) made the necessary request to El Salvador because no such request was made. Certainly, there is probable cause to reach such a conclusion.

Instead of addressing the actual issue, Defendants argue that they "complied with the Court's Order" because "DOS, on behalf of Defendants, worked to facilitate the return of Cristian from El Salvador over an extended period" and "by clearing the path for Cristian to return to the United States from Venezuela." Opp. 14-15. But, as the Court observed at the July 22 hearing, the Venezuela prisoner swap sheds no light on whether Defendants (or DOS on their behalf) ever made the specific request ordered by this Court. *See* July 22, 2025 Hr'g Tr. at 23:11-21. The Court did not order Defendants to "clear the path" for Cristian's return (whatever that means). Rather, the Order was specific: Defendants must make "a good faith request . . . to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." ECF No. 254 ¶ 2. Because Defendants remain unable to represent that they ever made that request (much less offer evidence in support of such a representation), the present record reflects that Defendants have *not* complied with the Court's April 23 Order.

At bottom, the Government's principal argument is predicated on ignoring the Court's definition of the term "facilitate" in the April 23 Order. Defendants rely on the dictionary definition of "facilitate" and insist that they "have complied with *the plain meaning of 'facilitate'* because they have actively made it easier for Cristian to 'return to the United States to await the adjudication of his asylum application on the merits by USCIS.'" Opp. 16 (emphasis added). But Defendants' arguments regarding the term's supposed "plain meaning" misses the point, since the Order itself removes any ambiguity by defining the term to include taking a very specific action:

5

making a good faith request to the government of El Salvador. Defendants were not at liberty to rewrite the Court's April 23 Order to take alternative measures they preferred.

Defendants also wrongly suggest that, by moving for criminal rather than civil contempt, Class Counsel "conceded that Defendants have complied with this Court's Orders." Opp. 15-16. Not so. As discussed above, on the present record, Defendants apparently *never* complied with the Court's April 23 Order because they did not make the specific request to the government of El Salvador to release Cristian to U.S. custody, as ordered by the Court. Because Cristian is no longer in El Salvador, Defendants can no longer take action to comply with that specific part of the April 23 Order, meaning civil contempt would no longer provide an effective remedy for that violation. *See Bagwell*, 512 U.S. at 827 (explaining that civil contempt is "designed to compel future compliance with a court order"). Class Counsel have instead moved for a finding of probable cause of criminal contempt "to vindicate the authority of the court." *Id.* at 828 (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)). That choice in no way concedes any compliance with the Court's April 23 Order.

Next, the Government argues that "the Court's Order says nothing—or is at best ambiguous—about whether facilitation of Cristian's return to the United States had to be direct." Opp. 18. But again, this argument elides the Defendants' evident failure to ever make a good faith *request* that El Salvador "release Cristian to U.S. custody for transport back to the United States." ECF No. 254 ¶ 2. There is no ambiguity on this point. In any event, the Government admits that Cristian was never released *to U.S. custody*: "The United States *never had custody* and was only an intermediary that was able to help El Salvador secure the deal and additionally secured assurances from Maduro." Opp. 18 (emphasis added). The fact that Cristian was not, in fact, released to U.S. custody further supports a finding of probable cause that the government never

6

asked El Salvador to do so. After all, in June 2025, the Government *was* able to facilitate the return of a similarly situated noncitizen held at CECOT, Mr. Abrego Garcia, after the Supreme Court agreed with a parallel order by another judge of this Court. *See* Opening Br. 18. That contrast strongly suggests that if the Government *had* made the request that Court directed, the El Salvadoran government would have acceded to it.

Finally, Defendants note that "Class Counsel does not name the official they believe should be held in criminal contempt" and assert that, since DOS is not a party to the case, "no DOS officials could have violated the Court's Orders and thus be subject to criminal contempt." Opp. 20. But Defendants also represent that "DOS, *on behalf of Defendants*, worked to facilitate the return of Cristian from El Salvador." Opp. 14 (emphasis added). Indeed, Secretary Rubio "assure[d] this Court that he is committed to making prompt and diligent efforts *on behalf of the United States* to comply with [the Court's] order." ECF No. 290-1 ¶ 6 (emphasis added). Given those admissions, and on this record, the Court need not consider whether any DOS officials could be held in contempt. Because Defendants concede that DOS was acting on their behalf in communicating with El Salvador regarding Cristian, *Defendants* could have and should have complied with this Court's April 23 Order by making the necessary request to El Salvador (whether through DOS or otherwise).[2] In any event, the question of who precisely among the Defendants is responsible for violating the Court's April 23 Order is a proper subject for discovery.

---

[2] Moreover, in light of Defendants' representations that DOS was acting on Defendants' behalf, there is probable cause that the conduct of DOS officials is attributable to Defendants. *Cf. In re Sterling*, 933 F.3d 828, 833-34 (7th Cir. 2019) (holding, in context of civil contempt, that agent's actions could be imputed to principal).

### B. The Government's Opposition Confirms that Defendants Purposefully Flouted the Court's Orders on Status Reports.

This Court has already observed that Defendants' status reports were woefully insufficient. The Court concluded that the first report, filed on May 27, 2025, "utterly disregarded this Court's May 20, 2025 Order"—and it was also untimely. ECF No. 287 at 1; *see id.* ("Defendants' untimely response is the functional equivalent of, 'We haven't done anything and don't intend to.'"). The status reports that followed repeated the pattern. As the Court explained, "Defendants have repeatedly skirted this Court's directive to provide information regarding the steps they have taken and will take to facilitate the return of Cristian to the United States," and instead "repeatedly made oblique references to their request of 'assistance' from the U.S. Department of State." ECF No. 319 at 1. In their opposition, Defendants do not meaningfully dispute that their status reports did not provide the information that the Court ordered them to provide.

Rather, Defendants contend that "they shared what they could in light of the sensitive diplomatic negotiations implicated by the Court's Order." Opp. 23. That is no excuse for not complying with the Court's orders. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."). If Defendants believed that the information demanded by the Court's orders was too sensitive to share, they should have sought relief—from this Court, in the first instance, and then if necessary on appeal. Instead, Defendants simply chose to disregard the Court's instructions and file facially deficient status reports, week after week.

Remarkably, Defendants now admit that they *strategically* disregarded the Court's 12:00 p.m. deadline to file the status report on July 18 because they wanted to keep the Court (and Class Counsel) in the dark until Cristian's plane had already taken off: "To mitigate the risk that the deal

would fall apart under public scrutiny, the State Department asked Defendants to delay filing their report until we had confirmation that the respective planes had safely taken off." Opp. 25 n.9 (quoting ECF No. 359-3 ¶ 9). Once again, if Defendants believed there was good cause to modify the Court's April 23 Order, they should have sought relief. There is no justification for strategically flouting the Court's timeline—"even by mere hours," Opp. 2—for the purpose of concealing that Cristian was being sent to Venezuela, which is the country from which he is seeking asylum because of his fear of persecution. The fact that Defendants wanted to keep the prisoner exchange secret from the Court until Cristian and others were turned over to the Maduro regime—thus preventing any possibility of judicial relief—is not an excuse for inadvertently missing a deadline. It is a confession. "[A]n actual design to subvert the administration of justice is a more grievous and perhaps more culpable state of mind" than even ordinary willfulness. *United States v. Warlick*, 742 F.2d 113, 117 (4th Cir 1984) (citation omitted)).

Defendants also suggest that "Secretary Rubio's invocation of the state secrets privilege" is one reason why Defendants have not stated "whether and when requests may have been made for Cristian to be released for transport to the United States." Opp. 23-24. But Defendants cannot exempt themselves from judicial oversight in this manner. "To assert the privilege, the Government must submit to the court a 'formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'" *United States v. Zubaydah*, 595 U.S. 195, 205 (2022) (citation omitted). Secretary Rubio did not assert any state secrets privilege until July 21, 2025. *See* ECF No. 395-5. That later-asserted claim of privilege, therefore, cannot explain why Defendants filed *ten* inadequate status reports between May 27 and July 18. *See* ECF Nos. 285, 290, 294, 295, 300, 303, 307, 314, 330, 352.

Moreover, to the extent Secretary Rubio now intends to assert state secrets privilege over the bare fact *whether* the government asked El Salvador to return Cristian to U.S. custody for transport to the United States, such a sweeping assertion is deeply flawed.[3] "The court itself must determine whether the circumstances are appropriate for the claim of [state secrets] privilege," because "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *Zubaydah*, 595 U.S. at 205 (citations omitted). Here, the Court's April 23 Order required the Government to pose a specific request to the government of El Salvador; the Fourth Circuit declined to stay that Order; and, on June 2, 2025, Defendants represented to the Court that "Secretary Rubio has read and understands this Court's order, and wants to assure this Court that he is committed to making prompt and diligent efforts on behalf of the United States to comply with that order." ECF No. 290-1 ¶ 6. Secretary Rubio thus committed that the Government *will* request that El Salvador release Cristian to U.S. custody, as this Court had ordered. It would subvert the rule of law to let Defendants now claim that *whether* the Government did what it publicly promised to do—and what the Court ordered it to do—is a state secret.

## III.  CONCLUSION

The Court should find that probable cause exists for a finding of criminal contempt, and should allow further discovery into that conduct.

---

[3] The United States has publicly confirmed other facts about its communications with the government of El Salvador, such as the fact that "the United States urged both President Bukele [of El Salvador] and the Maduro regime [of Venezuela] to make the decisions that resulted in the movements that occurred on July 18." Comisión Interamericana de Derechos Humanos (Inter-American Commission on Human Rights), *United States: Human rights situation of migrants, refugees and asylum seekers*, YouTube (July 24, 2025), https://www.youtube.com/watch?v=5zJpvgzxnwg at 38:21-29. The Government has also confirmed to this Court that, "[t]o help ensure the greatest possible compliance with the Court's order regarding Cristian, the State Department sought and obtained assurances from the Maduro regime that the regime will not impose obstacles to any transferred Venezuelan's travel if three conditions are all met." Landau Decl. ¶ 8, ECF No. 395-3.

Dated: October 9, 2025

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20036
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project
30 S. 10th Street (c/o University of St. Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5494
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*