# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

J.O.P., *et al.*,

      Plaintiffs,

  v.

U.S. Department of Homeland Security, *et al.*,

      Defendants.

Civil Action No.
8:19-CV-01944-SAG

## CLASS COUNSEL'S SECOND EMERGENCY MOTION TO ENFORCE THE COURT-ORDERED SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

Page

I.   **INTRODUCTION** .................................................................................................. 1

II.  **FACTUAL BACKGROUND** ............................................................................... 2

   A.   This Litigation and the Settlement Agreement ....................................... 2

   B.   Class Counsel's Prior Motion to Enforce the Settlement Agreement After
        Defendants Removed a Class Member in Violation of Section III.I ...................... 4

   C.   Defendants Continue to Remove Class Members in Violation of the
        Settlement Agreement ................................................................................ 5

   D.   Defendants Failed to Timely Provide Information About Removed Class
        Members and Refused to Provide Any Information About Their Process to
        Comply with Section III.I ........................................................................ 7

III. **ARGUMENT** ........................................................................................................ 10

   A.   This Motion Is Ripe for Enforcement Under Section V.D of the Settlement
        Agreement ................................................................................................ 10

   B.   Defendants Continue to Violate the Settlement Agreement and the Court's
        April 23, 2025 Order ............................................................................... 10

        1.   Defendants Continue to Remove Class Members in Violation of the
             Settlement Agreement ................................................................. 10

        2.   Defendants' Repeated Removals of Class Members in Violation of
             the Settlement Agreement Show That Defendants Are Not
             Complying with the Agreement's Procedural Requirements ................... 11

   C.   The Court Should Issue Remedial Orders to Prevent Additional Violations
        of the Settlement Agreement and the Court's April 23, 2025 Order ................... 13

        1.   Defendants Should Be Ordered to Provide Ongoing Reporting
             Regarding Their Compliance with Section III.I of the Settlement
             Agreement ................................................................................... 14

        2.   Defendants Should Be Required to Provide Prompt Written Notice
             of the Right to a USCIS Asylum Adjudication to Detained Class
             Members and Their Counsel If Any ............................................... 15

IV.  **CONCLUSION** ................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B & P Enters. v. Overland Equip. Co.*,
  758 A.2d 1026 (Md. Spec. App. 2000) ................................................................. 19

*Duvall v. Hogan*,
  2021 WL 2042295 (D. Md. May 21, 2021) ...................................................... 13, 16

*Fairfax Countywide Citizens Ass'n v. Fairfax Cnty.*,
  571 F.2d 1299 (4th Cir. 1978) .......................................................................... 10

*Johnson v. Robinson*,
  987 F.2d 1043 (4th Cir. 1993) .......................................................................... 13

*Smyth v. Rivero*,
  282 F.3d 268 (4th Cir. 2002) ............................................................................ 13

*Young v. Fed. Deposit Ins. Co.*,
  103 F.3d 1180 (4th Cir. 1997) .......................................................................... 13

**Statutes & Regulations**

8 U.S.C. § 1158(a)(1) ........................................................................................... 3

8 U.S.C. § 1158(d)(5)(A)(ii) ................................................................................ 11

8 C.F.R. § 208.8(a) ............................................................................................... 3

8 C.F.R. § 208.9(b) .............................................................................................. 11

# I.      INTRODUCTION

The Court-approved Settlement Agreement prohibits the removal of Class Members who have not been afforded an adjudication by USCIS on the merits of their asylum application.  After Defendants removed a Class Member in March 2025 in violation of the Settlement Agreement, this Court issued a class-wide order on April 23 prohibiting Defendants from removing Class Members from the United States.  Nevertheless, Defendants continue to remove Class Members from the United States in violation of the Settlement Agreement and the Court's order.  In total, Defendants have notified Class Counsel, after the fact, of eight removals of asylum seekers they identified as potential *J.O.P.* Class Members—and Class Counsel fear that the true number may be higher.

Defendants' ongoing removals of Class Members raises serious concerns as to whether Defendants have adopted adequate procedures to comply with the Settlement Agreement and the Court's April 23 Order.  At the same time that Defendants have ramped up indiscriminate arrest and detention of noncitizens throughout the United States, they have failed to promptly provide details to Class Counsel about the removals of potential Class Members, have declined to answer whether Defendants have checked for other removals of Class Members in violation of the Settlement Agreement, and have declined to provide information about their procedures to comply with the Agreement's prohibition against removing Class Members.

Class Counsel thus brings this emergency motion to enforce the Settlement Agreement on a class-wide basis.  To prevent further unlawful removals of Class Members awaiting an asylum adjudication by USCIS, Class Counsel asks this Court to order Defendants to provide a detailed and ongoing accounting of their procedures to comply with the removal prohibition, to provide prompt, individual notice to detained Class Members of their rights under the Agreement, and to order any further preventative or remedial measures the Court deems appropriate.  If past is

1

prologue, absent such relief, further Class Members will be removed in violation of the Settlement Agreement and the Court's April 23 Order.

## II.    FACTUAL BACKGROUND

### A.    This Litigation and the Settlement Agreement

This case was brought in 2019 on behalf of young asylum seekers previously determined by the U.S. government to be unaccompanied children. It concerns the right of such children to have their asylum applications decided through a non-adversarial interview by a USCIS asylum officer, regardless of the posture of any immigration court removal proceedings the young person may be facing.

After five years of litigation, the parties reached a Settlement Agreement, ECF No. 199-2, which this Court approved in November 2024, ECF No. 205. Under the Settlement Agreement, a core protection for Class Members is the requirement that "USCIS will exercise Initial Jurisdiction over Class Members' asylum applications in accordance with the terms of this Settlement Agreement and adjudicate them on the merits." ECF No. 199-2 at 6, Section III.B. Other provisions of the Settlement Agreement are designed to prevent actions by Defendants that would contravene USCIS's exercise of its initial jurisdiction. For example, one section prohibits Defendant ICE from taking a position in a Class Member's immigration court proceedings "that USCIS does not have Initial Jurisdiction over a Class Member's asylum application" and from opposing a Class Member's motion to postpone their removal proceedings. *Id.* at 8, Section III.H.

Particularly relevant to this motion, Section III.I of the Settlement Agreement provides:

> With respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement. In order to comply with this provision, ICE Enforcement and Removal Operations (ERO), the agency responsible for executing removal orders, will make an entry indicating there is a stay in its system of records for all identified Class Members, including Class Members identified by USCIS. This alert will not be

2

removed from any individual case until such time as USCIS indicates it is appropriate to remove it.

*Id.* at 8-9. In short, ICE cannot remove a Class Member whose asylum application is pending with USCIS. *Id.* To aid in complying with the prohibition on removal of Class Members, the Settlement Agreement mandates that Defendants must identify Class Members, and that ICE make an entry in its system for each identified Class Member indicating that there is a stay of removal. *Id.* This entry cannot be removed until USCIS indicates doing so is appropriate; *e.g.*, after the Class Member is afforded an adjudication on the merits of their asylum application. *Id.* Protection from removal while the asylum application is pending with USCIS is particularly important because the right to seek asylum is afforded to a noncitizen "who is physically present in the United States or who arrives in the United States," 8 U.S.C. § 1158(a)(1), because a pending asylum application is typically deemed abandoned upon departure from the United States, and because USCIS cannot grant asylum to someone who is not in the United States. 8 C.F.R. § 208.8(a); ECF No. 227-2 Ex. 2 (USCIS, Affirmative Asylum Procedures Manual III.D).

Section V of the Settlement Agreement provides that "[t]his Court shall retain exclusive jurisdiction to supervise the implementation of this Settlement Agreement and to enforce its provisions and terms." ECF No. 199-2 at 12, Section V.A. The Agreement requires Defendants to file reports describing their compliance with certain provisions of the Agreement, including the requirement under Section III.B that USCIS adjudicate Class Members' asylum applications on the merits. *Id.* Section V.B. And it provides that Class Counsel may bring a motion to enforce the Settlement Agreement on an individual or class-wide basis after a written exchange regarding an alleged violation and after "meet[ing] and confer[ring] in a good faith effort to resolve the dispute informally." *Id.* at 13, Section V.D.

### B. Class Counsel's Prior Motion to Enforce the Settlement Agreement After Defendants Removed a Class Member in Violation of Section III.I

Fewer than four months after the Settlement Agreement went into effect, Defendants removed Class Member Cristian,[1] a 20-year-old from Venezuela, without affording him an adjudication by USCIS on the merits of his asylum application as he was entitled to under the Settlement Agreement.  ECF No. 227-1. Defendants removed Cristian, despite the fact that Cristian's immigration counsel had repeatedly flagged to ICE, including just days prior to his removal, that he was a *J.O.P.* Class Member with an asylum application pending before USCIS and that the Settlement Agreement prohibited his removal.  ECF No. 371-1 Ex. A.  Defendants removed Cristian to a maximum security prison in El Salvador, where he was held incommunicado and, as Class Counsel later learned, he was subjected to abuse and torture.

Class Counsel brought a motion to enforce the Agreement on April 14, 2025, seeking individual and class-wide relief.  ECF No. 227-1 at 15.  Defendants opposed, arguing that they could continue to remove Class Members without violating the Settlement Agreement if they invoked the Alien Enemies Act.  ECF No. 248.  After Defendants refused to agree to refrain from removing more Class Members while Class Counsel's motion was pending, ECF. No. 244, the Court issued a class-wide temporary restraining order on April 17 prohibiting Defendants from doing so.  ECF No. 247.  On April 23, 2025, this Court granted Class Counsel's motion to enforce and issued an order requiring Defendants to facilitate the return of Cristian and prohibiting Defendants from removing members of the certified Class. ECF No. 254.[2]

---

[1] The Court ordered the parties to refer to this Class Member using a pseudonym.  ECF No. 254.
[2] Defendants' efforts to overturn the Court's April 23 return order have not met with success.  This Court denied Defendants' motion to vacate paragraph 2 of the order, ECF No. 270, and the Fourth

For three months following the Court's April 23 order, Cristian continued to be detained incommunicado in the Salvadoran prison. Despite the Court's order to provide regular updates regarding their efforts to facilitate Cristian's return, Defendants' court-ordered status reports were silent as to any efforts to comply with the Court's order that they facilitate Cristian's return including by making a "good faith request … to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." ECF Nos. 254, 285-1, 290-1, 294-1, 295-1, 300-1, 303, 307, 314, 330; *see also* ECF No. 287 (concluding that Defendants' May 27 status report "utterly disregarded" the Court's order). And instead of complying with the Court's order to facilitate Cristian's return to the United States, on July 18, 2025, Defendants facilitated Cristian's return to Venezuela, the country from which he seeks asylum, as part of a prisoner swap. ECF No. 375. Class Counsel filed a motion to initiate contempt proceedings against Defendants for their willful violation of the Court's orders. ECF No. 375.

While Class Counsel initially was able to communicate with Cristian in the weeks after his transport to Venezuela, Class Counsel has not heard from him since mid-August and fears for his safety and well-being. *See, e.g.*, ECF No. 404.

C.    **Defendants Continue to Remove Class Members in Violation of the Settlement Agreement**

Despite the plain language of the Settlement Agreement prohibiting Defendants' removal of Class Members, and despite the Court's class-wide order on April 23 affirming that prohibition, Defendants have removed multiple other Class Members in violation of the Settlement

---

Circuit denied Defendants' motion for a stay pending appeal, *J.O.P. v. U.S. Dep't of Homeland Sec.*, No. 25-1519 (4th Cir.) ("*JOP* CA4"), D.I. 34. Defendants then asked the Fourth Circuit to hold their appeal in abeyance in contemplation of an as-yet unfiled motion to this Court for an indicative ruling, *JOP* CA4, D.I. 38; that request was granted. *JOP* CA4, D.I. 44.

Agreement.[3]  In total, Defendants have notified Class Counsel, after the fact, of eight removals of individuals they identified as potential *J.O.P.* Class Members.  Class Counsel has notified Defendants that two of those individuals do not meet the Class definition.[4]

Two days after the Court's class-wide enforcement order, Defendants informed Class Counsel that they had removed another "potential class member" several weeks earlier, on April 9, 2025.  DeJong Decl., Ex. C.  After investigation, Class Counsel confirmed that this "potential class member" is in fact a *J.O.P.* Class Member and had been removed by Defendants without being afforded an adjudication on the merits of his asylum application.  Scholtz Decl. ⁋ 5.  However, the Class Member did not elect to pursue return to the United States based on the expectation that ICE would re-detain him if he did.  *Id.*

On September 29, 2025, Defendants informed Class Counsel of the removals of six additional "potential class members."  DeJong Decl., Ex. A at Sept. 29, 2025 e-mail from E. Bedestani.  The six removals occurred months previously, in May and June of 2025, and shortly after this Court issued its April 23, 2025 Order to stop any further removals of Class Members.  *Id.*  Defendants provided scant details on the procedural posture of the six cases.  *Id.*  By Defendants' accounting: one individual had been ordered removed *in absentia* in 2020 (case 6); four of the individuals "requested" to be removed (cases 2, 3) and/or "accepted" (cases 1, 3, 5) deportation orders; three are described as having waived relief (cases 3, 4, 5); and one is described

---

[3] Unlike Defendants' removal of Cristian, Defendants do not contend that any of the additional removed asylum-seekers are from Venezuela or that their removal was pursuant to the Alien Enemies Act.

[4] After investigation, Class Counsel learned that two of these eight individuals—one whom Defendants notified Class Counsel about in July 2025 and one who was included in Defendants' September notification of six removals—had filed their asylum applications with USCIS while under the age of 18 and without having a parent or legal guardian "available" and as a result were not *J.O.P.* Class Members.  Thus, while their removals were unlawful, their right to a USCIS asylum adjudication derived from the statute rather than the *J.O.P.* Settlement Agreement.

as having waived appeal (case 1). Defendants recount that one individual "denied filing an I-589 with USCIS," *id.* (case 1). It appears that at least five of the six were representing themselves at the time they were ordered removed; Defendants' email expressly confirms this for two cases (*id.*, cases 2 and 4). Unlike in the two prior instances of removals described above, Defendants' notification about the six further removals provided no current contact information for the young people[5] and did not offer to take any steps to facilitate their return. *Id.* Class Counsel responded that same day, noting among other things that the removals potentially violated the Settlement Agreement. *Id.*

On October 2, 2025, Class Counsel notified the Court about the six removals, highlighting the potential need for Court intervention after further investigation. ECF No. 418. Class Counsel noted "concern[] about past and forthcoming removals in violation of the agreement because of the increasing numbers of class members being detained by ICE, as reported to us by immigration attorneys representing class members." *Id.* at 1.

**D.    Defendants Failed to Timely Provide Information About Removed Class Members and Refused to Provide Any Information About Their Process to Comply with Section III.I**

Hours after receiving notification from Defendants on September 29, 2025 about the six removals, Class Counsel replied asking for further information within 24 hours, including each person's current contact information, contact information for any counsel of record, the country to which each person was removed, the date of each removal, and confirmation that each person was removed without receiving an adjudication from USCIS on the merits of their asylum application. DeJong Decl., Ex. A at Sept. 29, 2025 e-mail from R. Scholtz. Defendants replied on September

---

[5] Defendants provided U.S. addresses—some of which are merely the addresses of ICE facilities—as well as U.S. phone numbers for some but not all of the six. None of the six individuals is currently in the United States, since Defendants removed each of them.

30 that they would respond with updates "when available." *Id.* at Sept. 30, 2025 e-mail from E. Bedestani.

The parties met and conferred on October 10. Defendants' counsel confirmed that each of the six had been removed without receiving an adjudication on the merits of their asylum application by USCIS. Defendants' counsel stated that they had not yet had a "fulsome" conversation about the six removals with the client agencies due to the lapse in appropriations, and that they intended to speak to the clients the following week. When Class Counsel asked if any specific DHS personnel they needed to speak with were furloughed, Defendants' counsel stated that they did not know. Class Counsel stressed the importance of obtaining current contact information for the six individuals and suggested particular places to search in Defendants' records to locate the individuals' current contact information. Defendants' counsel declined to provide information about how the six cases came to their attention, citing privilege.

During the meet and confer, Class Counsel also asked about Defendants' procedures for complying with Section III.I of the Settlement Agreement in order to assess how Class Members are falling through the cracks (or chasms) and what further measures are needed to achieve compliance with Section III.I in the future. When Class Counsel asked what process was being used to comply with Section III.I, Defendants' counsel stated that they had no further information. When Class Counsel asked if Defendants had conducted any comprehensive review since the Settlement Agreement took effect to identify any other unlawful removals, Defendants' counsel stated they could not speak to that without talking to DHS. Class Counsel asked Defendants to provide by October 15 the information that Class Counsel requested in writing on September 29 and the further information Class Counsel requested during the October 10 meet-and-confer (memorialized in an email sent shortly afterward, DeJong Decl., Ex. B at Oct. 10, 2025 e-mail

from W. Wylegala).  Defendants agreed to provide information on a rolling basis and to at least provide an update regarding further contact information by close of business on October 15.

Defendants failed to provide any update to Class Counsel on October 15.  On October 16, Class Counsel emailed Defendants' counsel noting this, and requesting a same-day response, again flagging the urgency of the situation.  DeJong Decl., Ex. A at Oct. 16, 2025 e-mail from K. DeJong. That evening, Defendants' counsel provided a limited amount of the information Class Counsel had requested: the dates of removal for three individuals, each individual's country of origin and the date they filed their asylum application with USCIS, contact information for one individual's past counsel of record, and former U.S. residential addresses associated with two individuals.  *Id.* at Oct. 16, 2025 e-mail from E. Bedestani.  Defendants' counsel also stated that all six individuals will be "detained pending adjudication of their claim should they want to return to the U.S." *Id.*

Because of Defendants' failure to provide current contact information, Class Counsel has so far been able to make contact only with the former immigration attorneys of two of the six individuals. Scholtz Decl. ¶¶ 6-7 & n.1.  From that outreach, Class Counsel learned that one individual met the statutory unaccompanied child definition at the time of his asylum application filing, and his removal was thus unlawful but does not directly implicate the Settlement Agreement.  *Id.* at 2 n.1.  The other individual was a Class Member whose asylum application USCIS had rejected for lack of jurisdiction in violation of III.B of the Settlement Agreement.  *Id.* ¶ 7.  Class Counsel continues to try to reach the other four individuals but without current contact information those efforts are likely to be futile.  *Id.* at 2 n.1.

To date, Defendants have declined to answer whether Defendants have checked for other removals of Class Members in violation of the Agreement, and have declined to provide any information about their procedures to comply with Section III.I.  Meanwhile, despite the

government shutdown, ICE continues to arrest and detain noncitizens, including Class Members, throughout the United States.

## III.    ARGUMENT

### A.    This Motion Is Ripe for Enforcement Under Section V.D of the Settlement Agreement

This Court has "exclusive jurisdiction to supervise the implementation of th[e] Settlement Agreement and to enforce its provisions and terms." ECF No. 199-2 at 12, Section V.A; *see Fairfax Countywide Citizens Ass'n v. Fairfax Cnty.*, 571 F.2d 1299, 1303 n.8 (4th Cir. 1978) ("Where the settlement agreement is approved and incorporated into an order of court, the district court possesses jurisdiction to enforce its own order."). Pursuant to the Settlement Agreement, the parties have conferred in an effort to "resolve the dispute informally," *supra* Section II.C, D; ECF No. 199-2 at 13, Section V.D, but have not reached any agreement. Accordingly, since the dispute cannot be resolved informally, Class Counsel filed the instant motion, electing to enforce the Agreement on class-wide basis, as explicitly provided for in the Settlement Agreement.[6] ECF No. 199-2 at 13, Section V.D.

### B.    Defendants Continue to Violate the Settlement Agreement and the Court's April 23, 2025 Order

#### 1.    *Defendants Continue to Remove Class Members in Violation of the Settlement Agreement*

The Court has already confirmed that the Settlement Agreement means what it says: that DHS may not remove any Class Member from the United States unless and until USCIS affords the Class Member an adjudication on the merits of their asylum application. ECF No. 253 at 9-11, ECF No. 199-2 at 6, 8-9, Sections III.B, III.I. The Agreement defines "adjudicate on the

---

[6] Class Counsel reserves the right to seek enforcement of the Settlement Agreement for any individual Class Members that have been removed in violation of the agreement. To that end, Class Counsel is attempting to contact the removed Class Members to ascertain their intentions.

merits" to mean "render a decision on the substance of an asylum claim by either granting an approval or issuing a determination of non-eligibility." *Id.* at 3, Section II.B. Thus, ICE cannot remove "any Class Member with a final removal order" absent a USCIS determination[7] that the Class Member is not eligible for asylum. *Id.* at 8-9, Section III.I. Moreover, the Agreement requires ICE ERO to enter and retain alerts in its system of records indicating that a stay is in effect for all identified Class Members, and the alert may not be removed in any individual case until USCIS indicates that it is appropriate to remove it. *Id.*

Notwithstanding these binding terms, Defendants have admitted removing multiple asylum applicants who may be Class Members, without affording them an asylum merits adjudication. At least two of the eight "potential" JOP Class Members are, in fact, Class Members. Scholtz Decl. ¶¶ 4-7. Despite their superior access to extensive information about individual asylum applicants, Defendants have not verified class membership for the removed asylum seekers, describing them as "potential" Class Members—a tacit admission that any or all of the removals may violate the Settlement Agreement. *Id.*

> **2.** ***Defendants' Repeated Removals of Class Members in Violation of the Settlement Agreement Show That Defendants Are Not Complying with the Agreement's Procedural Requirements***

Defendants' repeated and ongoing removals of Class Members in violation of the Settlement Agreement and the April 23 Order show that Defendants are also not complying with the procedural requirements set forth in the Settlement Agreement that should prevent any such removals. Specifically, the Settlement Agreement provides that:

---

[7] A USCIS merits adjudication involves, *inter alia*, a non-adversarial interview during which the asylum applicant has a right to testify and to provide other supporting testimony and documentary evidence to establish asylum eligibility. *See, e.g.*, 8 U.S.C. § 1158(d)(5)(A)(ii); 8 C.F.R. § 208.9(b); DeJong Decl., Ex. D (Asylum Manual § II.J).

- "[F]or all identified Class Members, including Class Members identified by USCIS," ICE ERO "will make an entry indicating there is a stay in its system of records."
- "This alert will not be removed from any individual case until such time as USCIS indicates it is appropriate to remove it."

ECF No. 199-2 at 8-9, Section III.I.  Thus, while the command to refrain from executing a final order of removal extends to "any Class Member," not just those identified by USCIS, the Agreement also spells out mechanisms required for compliance with the Settlement Agreement's terms:  Defendants must not only identify Class Members, they must enter an alert reflecting the stay in Class Members' records indicating that the individual cannot be removed, and retaining that alert until USCIS indicates the entry can be removed, which would be appropriate only after the individual has been afforded an adjudication on the merits.  *Id.* The Settlement Agreement expressly describes these requirements as furthering compliance with the stay of removal provision, *id.*, in that ERO, "the agency responsible for executing removal orders," must reflect the stay in its records, while USCIS must determine the appropriate duration of the stay.  The fact that Defendants continue to remove Class Members who have not been afforded a merits adjudication strongly suggests that Defendants are not complying with these procedural requirements.

Apart from the identified cases, Defendants have declined to represent that they have not conducted other removals that violate the Settlement Agreement.  Nor have Defendants provided assurances of their compliance with the requirements that ICE ERO enter alerts regarding the stay for Class Members in its system of records, and leave such alerts in place absent an indication from USCIS.  *Supra* Section II.C, D; ECF No. 199-2 at 8-9, Section III.I.  The removals identified by Defendants, coupled with their inability to confirm that they have not removed other Class Members, is evidence of noncompliance with the provision's requirements:  either Defendants are

failing to consistently set and retain system alerts indicating the stay, or alternatively, they are conducting removals in disregard of those alerts.

### C.    The Court Should Issue Remedial Orders to Prevent Additional Violations of the Settlement Agreement and the Court's April 23, 2025 Order

The Fourth Circuit has made clear that district courts "possess the inherent power to supervise and aid the implementation of settlement agreements." *Young v. Fed. Deposit Ins. Co.*, 103 F.3d 1180, 1194 (4th Cir. 1997); *Johnson v. Robinson*, 987 F.2d 1043, 1048 (4th Cir. 1993) (recognizing that district courts have power to issue remedial orders to enforce a settlement agreement). Further, the "court's responsibility to ensure that its orders are fair and lawful stamps an agreement that is made part of an order with judicial imprimatur, and the continuing jurisdiction involved in the court's inherent power to protect and effectuate its decrees entails judicial oversight of the agreement." *Smyth v. Rivero*, 282 F.3d 268, 282 (4th Cir. 2002), *overruled on other grounds by Stinnie v. Holcomb*, 77 F.4th 200 (4th Cir. 2023); *Duvall v. Hogan*, 2021 WL 2042295, at *13 (D. Md. May 21, 2021) ("Given the fact that the Court retains jurisdiction as to the case, in order to ensure compliance with the Agreement, devising a method to obtain compliance does not necessarily extend beyond the four corners of the Agreement."). The Court's authority to issue remedial orders is made explicit in the Court-ordered Settlement Agreement—the Court has "exclusive jurisdiction to supervise the implementation of th[e] Settlement Agreement and to enforce its provisions and terms." ECF No. 199-2 at 12, Section V.A.

Here, where the violation of the parties' written agreement results in the drastic harm of removing individuals to the countries from which they sought asylum, a remedy after the fact is insufficient. Instead of inefficient, expensive, and potentially fruitless attempts at amelioration, the Court should issue appropriate prospective relief to guard against future violations—in other words, to ensure Defendants comply with the bargain they made.

13

Class Counsel's ability to contact the affected individuals is hampered by the scant information Defendants provided, requiring Class Counsel to devote time to research and outreach by telephone, messaging services, email, letter, and in one case, an in-person visit. *See* Scholtz Decl. at 2 n.1. There is no assurance that Class Counsel can succeed in reaching the removed individuals through past U.S. contact information or, where applicable, their former counsel. Even if contact is successfully made, some individuals will be deterred from returning to pursue their asylum claims by the prospect of prolonged detention in the United States, particularly with the knowledge that their removal occurred in violation of their rights. For other individuals, return to the unsafe conditions from which they fled will inhibit the ability to communicate with overseas counsel and to make considered decisions about fleeing a second time to pursue protection. All of these factors militate in favor of the Court's exercising its authority to ensure Defendants are taking necessary measures in implementation of the Agreement to prevent additional violations.

1. ***Defendants Should Be Ordered to Provide Ongoing Reporting Regarding Their Compliance with Section III.I of the Settlement Agreement***

In view of Defendants' recurring removals of Class Members in violation of the Court-ordered Settlement Agreement, further action is necessary to ensure compliance with the Agreement. Defendants should be ordered to provide a declaration, from one or more witnesses with personal knowledge, regarding all steps Defendants have taken since November 25, 2024 (when the Court granted final approval of the Agreement), and will take, to comply with Section III.I of the Agreement, including:

- Describing any procedures used to identify Class Members, in particular when ICE detains individuals and when ICE prepares to remove individuals;

- Describing the procedures ICE ERO has in place for ensuring that an entry is made in its system of records indicating there is a stay for each identified Class Member; and

14

- Describing procedures in place to ensure that the entry remains in place for each Class Member.

The requested information is tailored to ensure compliance with Defendants' obligations under Section III.I of the Settlement Agreement. Pursuant to the Agreement, Class Members must be identified and an alert entered in the system to indicate that each such Class Member will not be removed, with the alert to remain in place until USCIS issues a Final Determination and indicates to ICE that the entry can be removed. ECF No. 199-2 at 8-9, Section III.I. Without the Court's enforcement of these obligations, and in view of Defendants' repeated removals of Class Members in violation of the Agreement, more Class Members will likely be removed. Defendants should be ordered to provide such information within two weeks of the Court's order, and to supplement the information every other week through the remaining life of the Settlement Agreement. To be clear, further remedial relief may be necessary in view of the information provided by Defendants in their status report.

        **2.**      ***Defendants Should Be Required to Provide Prompt Written Notice of the Right to a USCIS Asylum Adjudication to Detained Class Members and Their Counsel If Any***

Defendants should also be ordered to provide notice to all detained Class Members of their rights under the Settlement Agreement. While Defendants have unique access to information on the full extent of Section III.I violations and have declined to share that information with Class Counsel, Defendants can prevent or at least decrease future violations if they provide prompt written notice to detained Class Members of their right to a USCIS adjudication on the merits. Besides outlining Class Members' right to a USCIS adjudication on the merits, the written notice would explain how *J.O.P.* Class Members can access the Settlement Agreement's protections while they are detained.

This Court has the authority to order Defendants to provide written notice to detained Class Members, pursuant to the Court's "exclusive jurisdiction to supervise the implementation of th[e] Settlement Agreement and to enforce its provisions and terms." ECF No. 199-2 at 12, Section V.A. Furthermore, "[g]iven the fact that the Court retains jurisdiction as to the case, in order to ensure compliance with the Agreement," the Court may "devis[e] a method to obtain compliance," even if the requested relief is not made explicit in the agreement. *Duvall*, 2021 WL 2042295, at *13. 2021 WL 2042295, at *13 (citing *Juan F. By & Through Lynch v. Weicker*, 37 F.3d 874, 879 (2d Cir. 1994) ("Rather than modifying the decree by increasing defendants' obligations, as defendants claim, the court order in this case simply ensured compliance with the time frame originally established by the manuals.")). In *Duvall*, in view of the defendants' non-compliance with a settlement agreement and the "obligation of the Court to ensure compliance with the agreement," the court issued an order for defendants to set "internal deadlines for the defendants' compliance" and "to draw up a detailed plan and timeline for compliance," despite the agreement's silence on any such deadlines, detailed plan, or timeline. Here too, the Court must ensure compliance with the Settlement Agreement, ECF No. 199-2 at 12, Section V.A, and an order for Defendants to provide notice to Class Members of their rights is a necessary remedial order to ensure compliance with the Agreement.

Given the known number of violations of Section III.I and the need to prevent the removal of more Class Members who have not yet had a USCIS adjudication on the merits, enforcement of Section III.I through a written notice requirement to detained Class Members is necessary and appropriate given that Defendants' current practices have allowed a pattern of egregious violations—violations that are nearly impossible to remedy once they occur. Given Defendants' repeated violations of Section III.I, it is evident that either no entry is being made to indicate a stay

in Defendants' system of records for all identified Class Members, including Class Members identified by USCIS; that ICE is ignoring the entry; and/or that ICE is removing this entry before USCIS indicates it is appropriate to remove it. Since Defendants continue to violate Section III.I, it is appropriate for the Court to enforce the Agreement by requiring ICE to promptly provide detained Class Members with written notice. Doing so would enforce the Settlement Agreement in at least two ways: (1) it would enforce Section III.I by requiring ICE to timely identify Class Members and thus reduce unlawful removals due to lack of such identification, and (2) it would facilitate detained Class Members' ability to advocate for their rights under the Settlement Agreement, in particular their right to a USCIS merits adjudication under Section III.B.

Focusing the class-wide notice remedy on ***detained*** Class Members is appropriate because those whom ICE detains are at imminent risk of removal. In recent months an increasing number of immigration attorneys have reported to Class Counsel that Defendant ICE has detained Class Members they represent. ECF No. 418. The contexts of these arrests are especially concerning considering that in many cases ICE has no cause for detention beyond the Class Member's lack of legal immigration status. While the legality and fairness of these arrests is cause for concern, it is the ensuing detention and ICE's pursuit of removal that triggers Section III.I of the Settlement Agreement. Once ICE detains Class Members, ICE transfers them to any ICE adult detention facility in the country with an available bed regardless of the location of the Class Member's family or immigration counsel, if any. Once detained, Class Members are vulnerable to a quick and unlawful removal to the country from which they seek asylum. An unlawful removal is not a hypothetical, but a reality. Indeed, this is the reality that known and unknown unlawfully removed Class Members face. To the extent that ICE effectuated these unlawful removals because it failed to timely recognize individuals as Class Members, requiring ICE to promptly provide written

17

notice to detained Class Members would prevent more erroneous, unlawful removals of detained Class Members—because it would necessarily require ICE to timely identify detained Class Members.

As set forth above, Defendants are already obligated under the Settlement Agreement to identify Class Members, but their recurring removals of Class Members suggest they have not done so adequately. Accordingly, to aid Defendants in providing notice to all applicable detained Class Members, notice should be provided to the following categories of detained noncitizens: (1) all individuals for whom there is a database entry indicating Class membership pursuant to Section III.I of the Settlement Agreement; (2) all individuals whom USCIS has otherwise identified pursuant to Section III.I; and/or (3) all individuals who were previously determined to be an unaccompanied child and filed an asylum application with USCIS on or before February 24, 2025 which has not been adjudicated on the merits, including but not limited to those in this category who come to ICE's attention through self-identification. In other words, Defendants should be required, in accomplishing this notice, to affirmatively identify potential Class Members in ICE detention, rather than serving the notice indiscriminately on all detained individuals. Requiring service on these three categories of detained Class Members will help to prevent future Section III.I violations because it provides Defendants a checklist for identifying Class Members in its custody and in so doing, ensure that ICE timely recognizes that it may not remove them pursuant to Section III.I. It will also ensure that detained Class Members receive written notice of their rights.

Prompt, personal service of the written notice to the three categories of detained Class Members will guarantee that they receive written notice in time to prevent a violation of Section III.I. Class Counsel proposes that ICE be required to personally serve Class Members with this

notice within 72 hours of their detention or, for Class Members who are currently detained, within 5 days of this Court's order or sooner if the Class Member is scheduled to be removed within 5 days. "Transmitting written notice by personal delivery, ... undoubtedly protects the parties to a contract by insuring that no question arises as to whether a contracting party is, in fact, on notice." *See B & P Enters. v. Overland Equip. Co.*, 758 A.2d 1026, 1041 (Md. Spec. App. 2000). This arrangement has the double benefit of ensuring that ICE personnel are aware of the *J.O.P.* Settlement Agreement and the protections it affords Class Members and that Class Members have a written document to refer to should ICE personnel doubt or misunderstand the *J.O.P.* Settlement Agreement. More importantly, armed with this notice and the ability to confer with their counsel, if any, detained Class Members can knowingly and voluntarily decide whether to exercise or forgo their rights under the Settlement Agreement. While this written notice does not guarantee that all Class Members will understand their rights under the Settlement Agreement, access to written notice provides an important independent and objective source of information on those rights that is an essential component to preventing future violations of Section III.I.

Class Counsel have proposed a written notice, attached as Exhibit E, that explains the protections afforded to *J.O.P.* Class Members and how *J.O.P.* Class Members can access the Settlement Agreement's protections while they are detained. If the Court approves this notice (with the placeholder on page 2 completed by Defendants), Class Counsel will translate the notice into Spanish as well, given the large number of Spanish-speaking Class Members and that it appears that the majority of detained pro se Class Members are Spanish-speakers. The proposed notice has one placeholder where details are needed from Defendants regarding the procedure by which a detained Class Member can request an expedited adjudication under Section III.G of the Agreement.

## IV.     CONCLUSION

For all the reasons set forth above, Defendants violated the Settlement Agreement and the April 23, 2025 Order by removing multiple Class Members from the United States without affording them an adjudication by USCIS on the merits of their asylum applications.  Defendants' conduct requires this Court's intervention to enforce Section III.I on a class-wide basis. Accordingly, this Court should order Defendants to provide a detailed accounting regarding their compliance with Section III.I of the Settlement Agreement; order Defendants to provide prompt written notice to detained Class Members of their rights under the Settlement Agreement; and order such further remedies as the Court deems warranted after reviewing Defendants' response and providing Class Counsel an opportunity to respond to Defendants' filing.

Dated: November 3, 2025

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted pro hac vice