IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | |
|---|---|
| **J.O.P.**, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>**U.S. DEPARTMENT OF HOMELAND SECURITY,** *et al.*,<br><br>    Defendants. | Civil Action No. 8:19-CV-01944-SAG<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' FOURTH COMPLIANCE REPORT** |

Parties' Settlement Agreement, pursuant to Paragraph V.B. (ECF 199-2 at 13, 14) calls for compliance reports to be submitted by Defendants at various stages of the Settlement Agreement's lifespan. Plaintiffs, pursuant to Paragraph V.C. (ECF 199-2 at 7, 8), shall respond to Defendants' compliance report 30 days following filing. Defendants, pursuant to Paragraph V.C., in turn are allowed 30 days to reply to any concerns Plaintiffs raise in their response. Defendants filed their Fourth Compliance Report on September 4, 2025, to which Plaintiffs responded on October 6, 2025, and now Defendants respond adhering to a November 5, 2025 deadline. As is the practice throughout, Defendants present their text from the Fourth Compliance Report filed on September 4, 2025, followed by the text from the Plaintiffs October 6, 2025 response, followed by Defendants' reply.

A.      [Relating to Paragraph III.A]

**Text of Defendants' Fourth Compliance Report:** On January 30, 2025 USCIS issued a superseding memorandum in accordance with Paragraph III.A of the Settlement Agreement. The public may find this memorandum online under the related links tab at:

1

https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/minor-children-applying-for-asylum-by-themselves.

**Plaintiff's Response:** In Plaintiffs' March 25, 2025 Response to Defendants' First Compliance Report, (ECF No. 224-1) Plaintiffs noted that five aspects of the USCIS memorandum violated the Settlement Agreement [see footnote below]. Plaintiffs first raised these issues to Defendants by letter on March 22, 2025. ECF No. 224-1. On April 28, 2025, Defendants responded via email to Plaintiffs' March 22 letter, agreeing to amend the USCIS memorandum to address two of the five issues Plaintiffs had raised. On May 8, 2025, the parties met and conferred regarding the open deficiencies with the USCIS memorandum. After further exchange of emails, on August 1, 2025 the parties reached agreement regarding the changes that Defendants will make to the USCIS memorandum. Defendants stated that it may take "a few months" for the changes to be implemented. On September 11, 2025, and on September 29, 2025, Class Counsel emailed Defendants' counsel asking when they will make the agreed-upon changes to the memorandum. Defendants' counsel replied to those inquiries on September 12 and September 30, 2025, stating that they would reply as soon as they have a date, but as of this filing have not provided further information on when Defendants will issue the amended memorandum.
[Footnote:] Plaintiffs filed a corrected document on May 27, 2025, ECF No. 283, after becoming aware that several pages of the March 25, 2025 filing had been cut off.

**Defendants' Reply:** Plaintiffs listed five aspects of the USCIS superseding memorandum in their March 25, 2025 letter (ECF 224-1) which they allege violate the settlement agreement. Defendants maintain that the superseding memorandum issued on January 30, 2025 complies with Paragraph III.A of the settlement agreement. The Parties have resolved three of the five issues raised by Plaintiffs. Defendants have agreed to proposed language from Plaintiffs which resolves the remaining two issues. USCIS issued an updated memorandum on October 30, 2025. The

2

updated implementation memorandum can be found at:

https://www.uscis.gov/sites/default/files/document/legal-docs/JOP_UAC_Procedures_Memo_10.30.2025.pdf (*see also* Exhibit A to this filing).

B. **[Relating to Paragraph III.B]**

**Text of Defendants' Fourth Compliance Report:** [Relating to Paragraph III.B] USCIS has complied with Paragraph III.B of the Settlement Agreement in determining jurisdiction over Class Members' asylum applications.

**Plaintiffs' Response:** Plaintiffs have raised to Defendants at least 21 cases in which USCIS has failed to comply with Paragraph III.B of the Settlement Agreement by wrongfully rejecting Class Members' asylum applications between the Agreement's effective date and August 21, 2025. Defendants have taken corrective action in most of the cases. A small number of cases remain subject to potential dispute and may require further conferring.

**Defendants' Reply:** Defendants continue to address and when required take necessary actions regarding alleged violations brought to their attention by Plaintiffs, in accordance with the Settlement Agreement (ECF 199-2 at 14, Section V.D). Defendants have taken appropriate corrective action for each alleged jurisdictional rejection that was determined to be in error.

C. **[Relating to Paragraph III.C]**

**Text of Defendants' Fourth Compliance Report:** USCIS has issued Adverse Jurisdictional Determinations to 35 Class Members based on USCIS's determination that EOIR has jurisdiction because the Class Member did not meet the statutory UAC definition (found at 6 U.S.C. § 279(g)(2)) at the time of filing their asylum application. USCIS certifies that all of those determinations were issued pursuant to Paragraph III.C of the Settlement Agreement, in that the basis for each Adverse Jurisdictional Determination was the Class Member's placement in adult immigration detention after a

3

Prior UAC Determination but before filing their asylum application.

**Plaintiffs' Response:** Plaintiffs have brought to Defendants' attention at least 17 cases in which USCIS has rejected Class Members' asylum applications due to an erroneous claim that EOIR has jurisdiction, in violation of the Settlement Agreement, between the Settlement Agreement's effective date and August 21, 2025. None of those 17 rejections complied with the procedures set forth in Paragraph III.C of the Settlement Agreement. Defendants have taken corrective action in most of the cases. A small number of cases remain subject to potential dispute and may require further conferring. In addition, as reported previously, Plaintiffs are aware of, and have raised with Defendants, two cases in which Defendants issued a "Notice of Lack of UAC Jurisdiction Determination Due to Adult Immigration Detention and Opportunity to Rebut" but failed to comply with the procedures required by Paragraph III.C.2. Defendants have taken corrective action in those two cases.

**Defendants' Reply:** Defendants continue to address and when required take necessary correction action regarding alleged violations brought to their attention by Plaintiffs, in accordance with the Settlement Agreement (ECF 199-2 at 14, Section V.D). Defendants will respond to any outstanding allegations of erroneous rejection of Class Members' asylum applications in violation of the settlement agreement within the sixty-day timeframe afforded by Paragraph V.D of the settlement agreement. Additionally, as required by settlement, USCIS only reported for this reporting period. Until Class Counsel inform Defendants of the additional cases, Defendants cannot tell if the other alleged cases occurred outside this reporting period.

D.   **[Relating to Paragraph III.D]**

**Text of Defendants' Fourth Compliance Report**: USCIS has complied with Paragraph III.D of the Settlement Agreement in determining its jurisdiction over Class Members' asylum applications.

**Plaintiffs' Response**: During this reporting period, Plaintiffs have received no

complaints from Class Members related to suspected violations of Paragraph III.D of the Settlement Agreement.

**Defendants' Reply**: No response required.

    E.   **[Relating to Paragraph III.E]**

        1.   **[Relating to Paragraph III.E.1]**

**Text of Defendants' Fourth Compliance Report:** As of August 21, 2025, USCIS has retracted Adverse Jurisdictional Determinations in the cases of 68 Class Members, as required by Paragraph III.C.2 of the Settlement Agreement. As of August 21, 2025, USCIS has fully complied with Paragraph III.E.1 of the Settlement Agreement.

**Plaintiffs' Response:** Defendants' deadline for compliance with Paragraph III.E.1 of the Settlement Agreement had not yet passed as of August 21, 2025; thus Plaintiffs agree that Defendants had not violated Paragraph III.E.1 as of that date.

**Defendants' Reply:** No response required.

        2.   **[Relating to Paragraph III.E.2]**

**Text of Defendants' Fourth Compliance Report**: As of August 21, 2025, USCIS has retracted Adverse Jurisdictional Determinations in the cases of 300 Class Members, as required by Paragraphs III.B and/or III.D of the Settlement Agreement. Please note that the previous report listed this number at 303. The difference here relates to a data entry issue that USCIS has corrected. As of August 21, 2025, USCIS has fully complied with Paragraph III.E.2 of the Settlement Agreement.

**Plaintiffs' Response**: Plaintiffs have received no complaints from Class Members related to suspected violations of Paragraph III.E.2 of the Settlement Agreement.

**Defendants' Reply:** No response required.

        3.   **[Relating to Paragraph III.E.3]**

**Text of Defendants' Fourth Compliance Report**: As of August 21, 2025, USCIS has

mailed notices of re-examination of jurisdictional determinations to 996 Class Members. As of August 21, 2025, USCIS has fully complied with Paragraph III.E.3 of the Settlement Agreement.

**Plaintiffs' Response**: On June 2, 2025, Plaintiffs raised with Defendants the case of a Class Member who should have received a notice of re-examination of jurisdiction under Paragraph III.E.3 but did not receive one; Defendants subsequently took corrective action.

**Defendants' Reply**: Because Plaintiffs concede that Defendants took corrective action, no further response is required.

F. **[Relating to Paragraph III.F]**

**Text of Defendants' Fourth Compliance Report**: As of August 21, 2025, USCIS has mailed notices to 1871 Class Members notifying them that USCIS has released a hold placed on the application in or after March 2021. As of August 21, 2025, USCIS has fully complied with Paragraph III.F of the Settlement Agreement.

**Plaintiffs' Response**: Plaintiffs have received no complaints from Class Members who were expecting a hold release notice under Paragraph III.F but did not receive one. However, Class Members whose cases had been placed on hold likely did not know their case was on hold; thus Plaintiffs are not in a position to confirm or dispute the veracity of Defendants' representation of compliance with Paragraph III.F.

**Defendants' Reply**: No response required.

G. **[Relating to Paragraph III.G]**

**Text of Defendants' Fourth Compliance Report**: As of February 25, 2025, USCIS has adopted procedures for expediting Class Members' cases as provided under Paragraph III.G of the Settlement Agreement. The public may find those procedures online under the related links tab at: https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/minor-children-applying-for-asylum-by-themselves.

**Plaintiffs' Response:** In Plaintiffs' March 25, 2025 Response to Defendants' First Compliance Report, ECF No. 224, Plaintiffs noted multiple concerns with the USCIS implementing memorandum, including related to its language regarding expedite procedures. Plaintiffs informed Defendants of these issues via the March 22 letter referenced in Paragraph A above, and the parties met and conferred regarding this and other issues with the USCIS memorandum on May 8, 2025. As noted above, the parties have reached agreement regarding the changes Defendants will make to the USCIS memorandum; Plaintiffs await Defendants' issuance of an updated memorandum.

**Defendants' Reply:** Defendants maintain that they have adopted procedures for expediting Class Members' cases as provided under Paragraph III.G of the Settlement Agreement. However, Defendants have agreed to proposed language from Plaintiffs which address Plaintiffs' allegation. USCIS issued an updated memorandum on October 30, 2025. The updated implementation memorandum can be found at: https://www.uscis.gov/sites/default/files/document/legal-docs/JOP_UAC_Procedures_Memo_10.30.2025.pdf. (*see also* Exhibit A to this filing).

Dated: November 5, 2025                                   Respectfully Submitted,


BRETT A. SHUMATE                           */s/ Evan P. Schultz*
Assistant Attorney General                 Evan P. Schultz
Civil Division                             Trial Attorney (D.C. Bar No. 461292)
                                           U.S. Department of Justice
RUTH ANN MUELLER                           Civil Division
Acting Assistant Director                  Office of Immigration Litigation
Office of Immigration Litigation           P.O. Box 868, Ben Franklin Station
                                           Washington, DC 20044
RICHARD G. INGEBRETSEN                     Telephone: (202) 892-0873
Trial Attorney                             Fax: (202) 305-7000
                                           Evan.P.Schultz2@usdoj.gov

                                           *Attorneys for Defendants*

# **EXHIBIT A**

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Refugee, Asylum and International Operations Directorate*
*5900 Capital Gateway Dr,*
*Camp Springs, MD 20746*



HQRAIO 120/12a

# Memorandum

TO:      All Asylum Office Staff

FROM:    Brett Lassen
         Acting Chief, Asylum Division

SUBJECT: Revised Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children and Implementation of the J.O.P. Settlement Agreement

### I.      Purpose

This memorandum provides updated procedures to U.S. Citizenship and Immigration Services (USCIS) Asylum Division personnel on determining jurisdiction over asylum applications filed by unaccompanied alien children[1] (UACs) under the initial jurisdiction provision of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Public Law 110-457. This memorandum implements the settlement agreement in *J.O.P. v. U.S. Dept. of Homeland Security et al.*, Civil Action 8:19-cv-01944 (D. Md.) (J.O.P. settlement agreement), effective on November 25, 2024.

---

[1] Section 462(g)(2) of the Homeland Security Act of 2002, codified at 6 U.S.C. § 279(g)(2), provides the UAC definition:
  the term "unaccompanied alien child" means a child who—
  (A) has no lawful immigration status in the United States;
  (B) has not attained 18 years of age; and
  (C) with respect to whom—
     (i) there is no parent or legal guardian in the United States; or
     (ii) no parent or legal guardian in the United States is available to provide care and physical custody.

**www.uscis.gov**

Revised Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children and Implementation of the J.O.P. Settlement Agreement
Page 2

The procedures contained in this memorandum supersede in part[2] procedural guidance on determining jurisdiction over asylum applications filed by UACs under the initial jurisdiction provision of the TVPRA issued in 2009 and 2013 (hereinafter 2009 USCIS memorandum and 2013 USCIS memorandum, respectively). These procedures are effective on February 24, 2025, and apply to any USCIS decision issued on or after that date. Headquarters will soon release a recorded training on these procedures. Asylum officers and supervisory asylum officers assigned to the affirmative caseload must watch the training before adjudicating any UAC asylum application on or after February 24, 2025.

## II.    Background

USCIS typically does not have jurisdiction to adjudicate a Form I-589, *Application for Asylum and for Withholding of Removal*, filed by an alien in removal proceedings. *See* 8 C.F.R. § 208.2(b). Section 235(d)(7)(C) of the TVPRA, however, places initial jurisdiction over asylum applications filed by UACs with USCIS, even for those UACs in removal proceedings. *See also* INA § 208(b)(3)(C). Therefore, USCIS must determine whether an alien in removal proceedings is a UAC.

Under the 2009 USCIS memorandum, when USCIS first implemented the TVPRA, asylum officers made independent factual inquiries to determine whether an alien in removal proceedings was a UAC such that USCIS had initial jurisdiction over the asylum application. The determinations were based on an assessment of whether the alien was a UAC on the filing date of the initial asylum application with either the Department of Justice's Executive Office for Immigration Review (EOIR) or USCIS. The 2013 USCIS memorandum changed the procedures for determining jurisdiction over these applications, allowing asylum officers to adopt prior UAC determinations made by U.S. Customs and Border Protection (CBP) or U.S. Immigration and Customs Enforcement (ICE) without further factual inquiry, so long as those determinations were still in place on the filing date of the initial asylum application. In cases in which a UAC determination had not already been made, asylum officers continued to make UAC determinations by making independent factual inquiries under the UAC definition, following the procedures established in the 2009 USCIS memorandum.

In May 2019, USCIS returned to making independent factual inquiries in *all* cases to determine whether the alien met the UAC definition on the filing date of the initial asylum application (hereinafter 2019 USCIS memorandum). Similar to the 2009 USCIS memorandum, this 2019 USCIS memorandum set forth instructions for asylum officers to make independent factual

---

[2] The guidance on determining age and unaccompanied status in Parts III.C.1 and 2 of the 2009 USCIS memorandum remains in effect for those cases in which asylum officers must make their own UAC determinations. *See Implementation of Statutory Change Providing USCIS with Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children, March 25, 2009*. In addition, the guidance on possible UACs in the credible and reasonable fear screening processes in Part III of the 2013 USCIS memorandum remains in effect. *See Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children*, May 28, 2013. USCIS issued an additional memorandum relating to UACs in 2019 but subsequently rescinded that memorandum. The 2019 USCIS memorandum remains rescinded in full and should not be relied upon for any purpose.

Revised Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children and Implementation of the J.O.P. Settlement Agreement
Page 3

inquiries to determine whether an alien in removal proceedings was a UAC such that USCIS had initial jurisdiction over the asylum application. This policy has been enjoined since August 2019.

Pursuant to the J.O.P. settlement agreement, USCIS now returns to requiring asylum officers to adopt prior UAC determinations made by CBP or ICE (and, in certain circumstances, EOIR) without further factual inquiry, so long as those determinations were still in place on the filing date of the initial asylum application with either USCIS or EOIR. Again, in cases in which a UAC determination has not already been made, asylum officers will make UAC determinations by making independent factual inquiries under the UAC definition.

### III. Jurisdictional Determinations

#### A. Cases in which a UAC determination has already been made and the alien is in removal proceedings

In cases in which the alien is in removal proceedings and CBP or ICE already determined that the alien is a UAC, asylum officers will adopt that determination and USCIS will take initial jurisdiction over the asylum application. Asylum officers may see evidence of a prior UAC determination in A-file documents or in DHS systems, including the Form I-213, *Record of Deportable Alien*; the CBP Form 93, *Unaccompanied Alien Child Screening Addendum*; the Department of Health and Human Services (HHS) Office of Refugee Resettlement (ORR) Initial Placement Form;[3] the ORR Verification of Release Form or Discharge Notification Form; and the encounters tab in the ENFORCE Alien Removal Module (EARM). If CBP or ICE determined that the alien was a UAC, and, as of the filing date of the initial asylum application, that UAC determination was still in place, USCIS will take initial jurisdiction over the asylum application, even if there appears to be evidence that the alien may have turned 18 years of age or may have reunited with a parent or legal guardian since the CBP or ICE determination.

Pursuant to the J.O.P. settlement agreement, USCIS may determine that it lacks initial jurisdiction over the asylum application of an alien who has been placed in adult immigration detention after a prior UAC determination but before filing the asylum application. "Placement in adult immigration detention" does not include custody for the sole purposes of processing the alien prior to release on his or her own recognizance or release through another alternative to detention, such as an order of supervision, parole, enrollment in an alternative to detention program, or ICE bond. As used in this memorandum, a UAC determination has not been terminated and remains in place, and thus an alien remains a UAC for purposes of this memorandum, if, on the date of filing the asylum application with either EOIR or USCIS, the alien had not previously been placed in adult immigration detention.

#### B. Cases in which a UAC determination has not already been made

##### 1. Aliens not in removal proceedings

---

[3] After apprehending a noncitizen and determining that they are a UAC, CBP or ICE transfers the UAC to a facility run by ORR, which is part of HHS.

Revised Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children and Implementation of the J.O.P. Settlement Agreement
Page 4

For an alien not in removal proceedings whom CBP or ICE has not determined previously to be a UAC, asylum officers will continue to determine whether the alien is a UAC not for the purpose of determining jurisdiction but for the purposes of determining whether the alien is subject to the one-year filing deadline[4] and whether the asylum office must notify HHS that it has discovered a UAC.[5] Asylum officers will examine whether the alien was a UAC on the filing date of the initial asylum application.

### 2. Aliens in removal proceedings

For aliens in removal proceedings whom CBP or ICE has not already determined to be a UAC,[6] asylum officers will determine whether they are UACs for the purpose of determining whether USCIS has initial jurisdiction over their asylum applications. Asylum officers will examine whether the alien was a UAC on the filing date of the initial asylum application.

### C. Opportunity to rebut USCIS lack of jurisdiction determination

When the asylum officer determines that USCIS lacks jurisdiction over an asylum application filed by an alien previously determined to be a UAC because the alien was placed in adult immigration detention prior to filing the initial asylum application, the asylum office will provide the alien with a notice of lack of jurisdiction that includes a detailed description of the information leading the asylum officer to believe that the alien was placed in adult immigration detention (Notice of Lack of UAC Jurisdiction Determination Due to Adult Immigration Detention and Opportunity to Rebut, Attachment 1). The notice of lack of jurisdiction will provide the alien with an opportunity to rebut the information within 30 days (or 33 days if the notice is served by mail). If the alien successfully rebuts the information the asylum officer relied on to reject jurisdiction, then the asylum office must retract the jurisdictional rejection within 30 days of receiving the rebuttal using the Notice of Final UAC Jurisdiction Determination Due to Adult Immigration Detention (Attachment 2). Once the asylum office retracts the jurisdictional rejection, the asylum office will reopen the case and resume processing the asylum application.

### D. Determinations made by EOIR

Pursuant to the J.O.P. settlement agreement, in assessing jurisdiction over an asylum application filed by an alien with prior UAC determinations, USCIS cannot defer to determinations made by EOIR, including but not limited to determinations that the immigration judge has initial jurisdiction over the alien's asylum application made pursuant to *Matter of M-A-C-O-*, 27 I&N Dec. 477 (BIA 2018), unless EOIR determined that the alien was a UAC at the time of filing the asylum application such that USCIS has jurisdiction over the asylum application, in which case USCIS may adopt the UAC determination.

### IV. HHS Notifications

---

[4] *See* section 235(d)(7)(A) of the TVPRA; INA § 208(a)(2)(E).
[5] *See* section 235(b)(2) of the TVPRA.
[6] This situation would most likely occur when a child was accompanied at the time of service of the charging document but later became unaccompanied.

Case 8:19-cv-01944-SAG   Document 434   Filed 11/05/25   Page 13 of 16

Revised Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children and Implementation of the J.O.P. Settlement Agreement
Page 5

If the asylum office is the first federal government entity to determine that the alien is a UAC and the alien remains a UAC at the time of the asylum interview, then the asylum office will notify HHS that it discovered a UAC[7]. This obligation to notify HHS upon "discovery" of a UAC is separate from the issue of jurisdiction over the asylum application. Where another federal government entity has already made a UAC determination, that entity is the one that "discovered" the UAC, and therefore USCIS is not obligated to notify HHS in those cases.

### V.     Expedite Requests

An alien or his or her representative may request that an asylum office expedite the processing of the application. The Asylum Division considers expedite requests in alignment with the USCIS Policy Manual and other messaging on uscis.gov. The decision to expedite is within the sole discretion of USCIS. All expedite requests must be submitted in writing to the director of the asylum office with geographical jurisdiction over the asylum application. The director considers each request on a case-by-case basis, considering the totality of the circumstances and any evidence submitted in support of the expedite request. The director may, in the exercise of discretion, determine that it is in the best interest of USCIS to process an asylum application outside of the scheduling priorities currently in effect.

Some examples of circumstances that may justify an expedite request that are particularly relevant to UACs include, but are not limited to, circumstances in which the alien:

- is currently in immigration detention;
- has an order of removal; or
- received a Notice of Lack of Jurisdiction that was later retracted by USCIS.

Section III.B.7, Expeditious Processing Required, of the Affirmative Asylum Procedures Manual contains the Asylum Division's procedures on expedite requests.

### VI.     Other Obligations Pursuant to the J.O.P. Settlement Agreement

In addition to the issuance of this memorandum, USCIS has several other obligations pursuant to the J.O.P. settlement agreement, as described in this section.

#### A.     One-year filing deadline

USCIS will not apply the one-year filing deadline to applications filed by aliens who were UACs at the time of filing their applications. This is also a pre-existing requirement under section 235(d)(7)(A) of the TVPRA and INA § 208(a)(2)(E). In addition, USCIS will not apply the one-year filing deadline to applications filed by aliens with prior UAC determinations.

#### B.     Review and retraction of prior adverse jurisdiction determinations

---

[7] *See* section 235(b)(2) of the TVPRA.

Case 8:19-cv-01944-SAG   Document 434   Filed 11/05/25   Page 14 of 16

Revised Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children and Implementation of the J.O.P. Settlement Agreement
Page 6

Within 60 days of the effective date of the J.O.P. settlement agreement (i.e., by January 24, 2025), USCIS will mail to aliens whose cases will be reviewed a Notice of Re-Examination of Previous Lack of Jurisdiction Determination (Attachment 3) indicating that USCIS will make a jurisdictional determination over their asylum applications pursuant to this memorandum. The Asylum Division will issue these notices.

Within 240 days of the issuance of this memorandum (i.e., by September 26, 2025), USCIS will retract any adverse jurisdictional determinations made on or after June 30, 2019, that merit retraction, where the alien was taken into ICE custody prior to the initial filing of the asylum application. If USCIS finds that the prior adverse jurisdictional determination should be upheld, USCIS will give the alien an opportunity to rebut the finding using the process described in this memorandum. This rebuttal period will occur prior to the September 26, 2025, deadline such that an alien will receive his or her final decision on the re-examination by the deadline.

Within 180 days of the issuance of this memorandum (i.e., by July 29, 2025), USCIS will retract all other adverse jurisdictional determinations made on or after June 30, 2019, that are inconsistent with the procedures outlined in this memorandum and/or in which the asylum office deferred to a determination made by EOIR. The Asylum Division will use the Notice of Retraction of Previous Lack of Jurisdiction Determination (Attachment 4) to make these retractions. The review and retraction of these prior adverse jurisdictional determinations will be centralized within the Asylum Division.

### C.     Release from JOP ICE/EARM Affirmative Acts hold

Within 60 days of the issuance of this memorandum (i.e., by March 31, 2025), USCIS will release the JOP ICE/EARM Affirmative Acts hold placed beginning in March 2021 on pending asylum applications and will mail to the affected aliens a notice indicating that their asylum application has been released from the hold (Notice of Release from JOP Hold (Attachment 5)). Offices no longer apply the JOP ICE/EARM Affirmative Acts hold to any asylum applications as of the effective date of these procedures, February 24, 2025.

### D.     Compliance reporting

USCIS must complete one-time and ongoing reporting to the Court and Class Counsel throughout the period of the settlement agreement.[8] Asylum IDEA will complete the reporting.

## VII.    Changes to the Global Case Management System

For asylum applications filed with USCIS on or after February 24, 2025, the effective date of these procedures, by UACs in removal proceedings, USCIS will not apply the PRL special group code in the Global case management system. However, the PRL special group code will remain applied to existing PRL cases. For asylum applications filed on February 24, 2025, or later,

---

[8] *See* the settlement agreement in *J.O.P. v. U.S. Dept. of Homeland Security et al.*, Civil Action 8:19-cv-01944 (D. Md.), paragraph V.B, Compliance Reports, and Exhibit F, Defendants' Compliance Report.

Revised Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children and Implementation of the J.O.P. Settlement Agreement
Page 7

USCIS will apply the KID special group code in Global to cases of UACs in removal proceedings.

### VIII. Update to the Affirmative Asylum Procedures Manual

Section III.B.1, Minor Principal Aliens and Unaccompanied Alien Children (formerly titled Children Filing as Principal Asylum Applicants) of the Affirmative Asylum Procedures Manual has been updated to reflect the guidance in this memorandum. If you have any questions concerning this guidance, please contact the Headquarters Operations Branch.

Attachments (5):
1. Notice of Lack of UAC Jurisdiction Determination Due to Adult Immigration Detention and Opportunity to Rebut
2. Notice of Final UAC Jurisdiction Determination Due to Adult Immigration Detention
3. Notice of Re-Examination of Previous Lack of Jurisdiction Determination
4. Notice of Retraction of Previous Lack of Jurisdiction Determination
5. Notice of Release from JOP Hold

**CERTIFICATE OF SERVICE**

The foregoing was today filed on the Court's CM/ECF filing system, and counsel for all parties have registered to receive service through it. In addition, the foregoing will be served via electronic mail on the following counsel at the following email addresses:

| | | |
|---|---|---|
| Michelle Mendez, Esq. | -- | michelle@nipnlg.org |
| Jose Lino Ruiz, Esq. | -- | lino@attorneylinoruiz.com |
| Wendy Wylegala, Esq. | -- | wwylegala@supportkind.org |
| Rebecca Scholtz, Esq. | -- | rebecca@nipnlg.org |
| Kristen Jackson, Esq. | -- | kjackson@publiccounsel.org |
| Kevin J. Dejong, Esq. | -- | kdejong@goodwinlaw.com |
| Elaine Herrmann, Esq. | -- | EBlais@goodwinlaw.com |
| Brian Burgess, Esq. | -- | bburgess@goodwinlaw.com |

Respectfully submitted,

/s/ Evan P. Schultz
Evan P. Schultz
Trial Attorney (D.C. Bar No. 461292)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 892-0873
Fax: (202) 305-7000
Evan.P.Schultz2@usdoj.gov

*Attorney for Defendants*