IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | |
|---|---|
| J.O.P., *et al.*,<br><br>Plaintiffs,<br><br>    v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>Defendants. | Civil Action No.<br>8:19-CV-01944-SAG |

**CLASS COUNSEL'S REPLY BRIEF IN SUPPORT OF THEIR
SECOND EMERGENCY MOTION TO ENFORCE THE COURT-ORDERED
<u>SETTLEMENT AGREEMENT</u>**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ........................................................................................................................ 2

    A. Defendants Admit That They Continue to Remove Class Members in Violation of the Settlement Agreement and Fail to Abide by the Agreement's Procedural Requirements ................................................................. 2

    B. Defendants Offer No Valid Reason to Deny the Requested Relief ........................ 5

        1. Ongoing Reporting on Compliance with Section III.I Is Necessary to Redress Defendants' Breaches and Prevent Further Wrongful Removals of Class Members ........................................................................ 5

        2. Notice to Detained Class Members of Their Rights Is Necessary to Prevent Further Removals............................................................................ 6

        3. The Court Has Authority to Hold Defendants to their Bargained-For Obligations ........................................................................................... 9

III. CLASS COUNSEL'S MOTION IS NOT PREMATURE ......................................... 11

IV. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ARCO Nat'l Constr., LLC v. MCM Mgt. Corp.*,
   No. 20-03783, 2024 WL 4041527 (D. Md. Sept. 4, 2024) ........................................................3

*Berger v. Heckler*,
   771 F.2d 1556 (2d Cir. 1985) ................................................................................................11

*Concerned Pastors for Soc. Action v. Khouri*,
   658 F. Supp. 3d 495 (E.D. Mich. 2023) ..................................................................................9

*Duvall v. Hogan*,
   No. 94-2541, 2021 WL 2042295 (D. Md. May 21, 2021) .....................................................11

*Johnson v. Robinson*,
   987 F.2d 1043 (4th Cir. 1993) ........................................................................................10, 11

*Juan F. v. Weicker*,
   37 F.3d 874 (2d Cir. 1994) ....................................................................................................10

*O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*,
   447 Md. 394, 407 (Md. 2016). ................................................................................................9

*Screw Mach. Tool Co. v Slater Tool & Engineering Corp.*,
   683 F.2d 159 (6th Cir. 1982) ................................................................................................10

*Smyth ex rel. Smyth v. Rivero*,
   282 F.3d 268 (4th Cir. 2002) ..................................................................................................9

*Weaver v. ZeniMax Media, Inc.*,
   175 Md. App. 16 (Md. Ct. Spec. App. 2007) .........................................................................3

*Young v. F.D.I.C.*,
   103 F.3d 1180 (4th Cir. 1997) ................................................................................................9

**Other Authorities**

8 CFR § 1236.3(h) ..........................................................................................................................8

I.      INTRODUCTION

Class Counsel's emergency motion seeks to enforce the Court-ordered Settlement Agreement on a class-wide basis to prevent further unlawful removals of Class Members awaiting an asylum adjudication by USCIS. The requested relief—to order Defendants to provide a detailed and ongoing accounting of their procedures to comply with the Agreement's removal prohibition, and to provide prompt, individual notice to detained Class Members of their rights under the Agreement—are necessary remedial measures to hold Defendants to the bargained-for Agreement and to prevent further removals of Class Members. Defendants' assertions—that they have not breached the Agreement, that the Court may not order the requested relief, and that any relief is premature—all lack merit.

Defendants argue that their repeated breaches of the Agreement are merely "issues in execution." But at least three Class Members have been wrongly removed and likely many more. And Defendants' own declarant confirms that Defendants are not properly identifying Class Members before removal and offers no evidence that they are complying with the Agreement's requirement to enter system alerts to prevent Class Members' removal.

Defendants' assertion that the Court may not order the relief ignores the Agreement itself and is contrary to case law. The Agreement confers upon this Court jurisdiction to enforce its terms, and does not limit the remedies available for a violation. And courts have inherent power to oversee a Court-approved agreement and to issue an appropriate remedy to ensure compliance.

Defendants' primary argument is that the dispute is premature because the parties allegedly did not complete the process for resolving a non-compliance. Defendants argue that the parties' meeting was not a "meet and confer," and Defendants misread the Agreement, suggesting that the time period for Defendants to respond to the allegations is 150 days. The parties have conferred, and were unable to reach a resolution. Class Counsel's motion is ripe.

1

II.   **ARGUMENT**

    A.   **Defendants Admit That They Continue to Remove Class Members in Violation of the Settlement Agreement and Fail to Abide by the Agreement's Procedural Requirements**

The Settlement Agreement, so ordered and approved by the Court on November 25, 2024, ECF No. 205, prohibits removal of Class Members. ECF No. 199-2 at 9, Section III.I. Despite the parties' agreement and the Court's order, Defendants removed Cristian to El Salvador in March 2025, prompting Class Counsel's first Motion to Enforce the Settlement Agreement. ECF No. 227. On April 23, 2025, the Court ordered Defendants to not remove Class Members. ECF No. 254. It is now clear that, despite the Court-approved Settlement Agreement and the Court's April 23 order, Cristian was not the only removed Class Member. Defendants do not dispute that at least two more Class Members were removed, Scholtz Decl., ECF No. 428-3, ¶¶ 4-7, and that at least six more "potential"[1] Class Members were removed. ECF No. 438 (hereinafter "Opp.") at 3-5. Class Counsel first learned of two of the eight on the same day Defendants filed their opposition to the instant motion. ECF No. 438-2. Defendants' removals are a breach of the Settlement Agreement. Indeed, Defendants admit that, "assuming all are confirmed to be class members, these removals were done in violation of the settlement agreement." Opp. at 8.

Defendants attempt to recast their recurring breaches of the Settlement Agreement as mere "issues in execution." Opp. at 11. This is baseless. A breach of contract is defined as a "failure, without legal excuse, to perform any promise that forms the whole or part of a contract." *Weaver v. ZeniMax Media, Inc.*, 175 Md. App. 16, 51 (Md. Ct. Spec. App. 2007) (cleaned up). Defendants

---

[1]Defendants' reference to the removed individuals as "potential" Class Members is disingenuous. Defendants have all the information they need to determine if an individual is a Class Member per the agreed-upon Court-ordered definition. Moreover, compliance with the Settlement Agreement mandates that Defendants identify Class Members. ECF No. 199-2 at 8-9, Section III.I.

2

breached the Settlement Agreement by failing to hold up their end of the bargain to not remove Class Members. And Defendants' assertion that the removals are only a "noncompliance," not a breach, Opp. at 11, is baseless for the same reason. The fact that the Settlement Agreement includes a process to address noncompliance does not mean that it condones, much less invites, blatant disregard of its terms. Regardless of how Defendants characterize their removals of Class Members and "potential" Class Members, there is no reasonable dispute that Defendants breached the Settlement Agreement—multiple times.

Defendants next seek to justify their violations of the Settlement Agreement by asserting that at least some of the removed Class Members "requested permission to return home." Opp. at 11. Even if that were true—which Class Counsel does not concede—Defendants have not shown that any Class Member waived their rights under the Settlement Agreement. To establish waiver of a right, Defendants must show "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." *ARCO Nat'l Constr., LLC v. MCM Mgt. Corp.*, No. 20-03783, 2024 WL 4041527, at *6 (D. Md. Sept. 4, 2024) (cleaned up). Defendants do not attempt to meet this standard, or even acknowledge it. Defendants do not contend that any of the removed individuals were aware that they held the right to a USCIS asylum adjudication, regardless of the posture of their removal proceedings or the entry of a removal order.[2] Nor could they. In the case of the only removed Class Member whom Class Counsel has thus far been able to reach through counsel, Defendants had wrongly rejected his asylum application months before removing him, thus communicating to him that he had no right to a USCIS asylum adjudication. ECF No. 428-3, ¶ 7. In short, Defendants are removing Class

---

[2] Even if some individuals waived their right to appeal the immigration judge's removal order, as Defendants assert, *see* ECF No. 438-2, Defendants have not shown that any individual waived their rights under the Settlement Agreement.

3

Members without informing them of their right under the Settlement Agreement to an adjudication by USCIS on the merits of their pending asylum application.

Defendants' recurring removals of Class Members are also evidence that Defendants are not complying with the procedural requirements in the Agreement—specifically, that Defendants identify Class Members, enter an alert in Class Members' records indicating that the individual cannot be removed, and retain that alert until USCIS indicates the entry can be removed, which would be appropriate only after the individual has been afforded an adjudication on the merits. ECF No. 199-2 at 8-9, Section III.I. Although Defendants' counsel asserts that their clients have a "system of alerts," Opp. at 13, they offer no evidence at all for this assertion. Counsel's unsupported assertion should not be credited.

The declaration of Markel Waters, a regional ICE Unit Chief for Field Operations, confirms Class Counsel's fear—USCIS and ICE are not properly identifying Class Members prior to removal, as required under the Settlement Agreement. Mr. Waters states that "USCIS is the agency responsible for identifying J.O.P. class members." ECF No. 438-2 at 6, ¶ 23. But ICE is also responsible for identifying Class Members, as the Agreement states that ICE "will make an entry indicating there is a stay in its system of records for ***all identified Class Members***, ***including Class Members identified by USCIS***." ECF No. 199-2 at 9, Section III.I (emphasis added). In short, ICE must identify Class Members, including those identified by USCIS. Mr. Waters goes on to state that "USCIS has provided tens of thousands of names of potential class members," and speaks about what identification "***will*** require" and "***would*** *present*" for ICE. ECF No. 438-2, at 6 ¶ 23 (emphases added). These are stark admissions. ICE is relying solely on USCIS's lists of "potential Class Members," and is not identifying Class Members despite its duty to do so under the Agreement. Indeed, the mix of confirmed members and non-members in Defendants' list of

4

"potential class members" speaks to the deficiency of Defendants' current "process of identification," whatever it may be.

Finally, Defendants assert that their self-reporting of removals of Class Members is evidence that the government is complying with the Agreement's mandate to set system alerts for Class Members. Opp. at 13. Notably, Mr. Waters does not speak to this issue at all, despite counsel's assertion that Defendants are complying with the Agreement in good faith. Even crediting Defendants' arguments, Defendants have at most a system for "identify[ing] potential class members erroneously removed after the fact." Opp. at 13. But the system alerts mandated by the Settlement Agreement are to prevent removals from occurring in the first place.

Given Defendants' failure to abide by the procedural requirements in the Settlement Agreement, it is no surprise that Defendants continue to remove Class Members in violation of the Settlement Agreement. Class Counsel respectfully asserts that remedial action is necessary to prevent more Class Members from being removed in violation of the Agreement.

    **B.**    **Defendants Offer No Valid Reason to Deny the Requested Relief**

        **1.**    *Ongoing Reporting on Compliance with Section III.I Is Necessary to Redress Defendants' Breaches and Prevent Further Wrongful Removals of Class Members*

Defendants have violated Section III.I of the Settlement Agreement by (1) removing Class Members in violation of the stay-of- removal clause; (2) not identifying Class Members subject to the stay-of-removal clause; and (3) apparently not properly entering a system alert that would flag Class Members such that they are not removed. *Supra* Section II.A. As a result of these violations, Class Members are being wrongfully removed and deprived of the adjudication on the merits of their asylum application to which they are entitled. Ordering Defendants to explain their current and past procedures for implementing Section III.I will serve to identify the points of failure that

5

result in these violations. Regular status reports will allow oversight to ensure that Defendants address all deficiencies, thereby preventing further violations.

Defendants argue that the Settlement Agreement "already limits the sorts of information that Defendants need to supply." Opp. at 14. But the relief requested is not to modify the Agreement, but rather to issue a remedy necessary to pinpoint the source of Defendants' ongoing violations and to prevent further violations. And the Court has already issued similar relief: when Defendants failed to comply with this Court's April 23 order, the Court ordered Defendants to "provide a status report on the steps they have taken to facilitate the return of Cristian to the United States for adjudication on the merits of his asylum application by USCIS," ECF No. 280, and then ordered that such reporting continue weekly, ECF No. 293. Class Counsel now seeks similar reporting in view of Defendants' ongoing violations of Section III.I of the Court-approved Settlement Agreement.

Defendants also assert that the requested reporting is burdensome. Opp. at 14. To the extent there is any burden, it could have been avoided if Defendants had complied with the Agreement in the first place. More importantly, Defendants entirely ignore the burden on Class Members who have been removed in violation of the Settlement Agreement to the countries from which they sought asylum, where they potentially face threats to their life.

### 2. *Notice to Detained Class Members of Their Rights Is Necessary to Prevent Further Removals*

As explained in Section II.A above, Defendants assert that some of the potential Class Members "requested their own deportation," Opp. at 12, but do not contend that any potential Class Member waived his or her right to a USCIS adjudication on the merits of their asylum application, nor that any had actual knowledge that they held that right. In fact, the "circumstances surrounding the removals themselves" (Opp. at 11) suggest otherwise. Accordingly, in order to

prevent or at least decrease future violations, Defendants should be ordered to provide prompt written notice to detained Class Members of their right to a USCIS adjudication on the merits. The requested notice is specifically tailored to redress Defendants' violation of the Agreement—the removal of Class Members without honoring the stay provision and in disregard of their right to a USCIS adjudication on the merits of their asylum application.

One potential Class Member was apparently unaware that his asylum application remained pending with USCIS, ECF No. 428-4, Ex. A, at 11 (case 1) (potential class member allegedly "denied filing an I-589 with USCIS"), so can hardly be said to have decided to forego the right in favor of "permission to return home," Opp. at 11. Defendants identify only one potential Class Member who was represented by counsel in removal proceedings when requesting removal, Opp. at 11, and disclose that two potential Class Members filed asylum applications *with the immigration court* months before they were physically removed, ECF No. 438-1—a process that should have been unnecessary had Defendants been honoring their obligations under the Agreement that USCIS adjudicate each Class Member's asylum application on the merits. In these circumstances, characterizing a notice of rights to detained Class Members as "duplicative" and "burdensome" rings hollow.

Defendants point to the Agreement's existing notice provision, Opp. at 14, but the notice to detained Class Members that Class Counsel now seeks is necessary in light of Defendants' repeated violations in removing Class Members, to ensure that Class Members are not removed in disregard of their right to have USCIS adjudicate their asylum application. Delivery of this notice will support Class Member's understanding of their rights, and the process of delivery, as articulated in the proposed order, will necessarily require ICE to identify proposed Class Members

7

as required by III.I—thereby preventing further unlawful removals. Without such notice, Defendants will continue to remove Class Members in violation of the Settlement Agreement.

Defendants' assertions about the burden of providing notice appear greatly exaggerated.[3] Class Counsel does not even ask that Defendants be put to the burden of preparing a written notice, and have already provided a simple two-page document. Defendants complain of the "substantial and burdensome workload" entailed in "[t]he process of identification, which will require automated and potentially manual confirmation processes," ECF No. 438-2 at 6 ¶ 23, and the "operational challenges" of "continual vetting" of Class Members, *id.* ¶ 25. Be that as it may, Defendants already agreed to engage in identification when they signed the Settlement Agreement. Defendants' insistence that they should continue to be excused from this obligation only underscores the need for the Court to order the relief Class Counsel seeks.

In sum, the requested notice is necessary to prevent, or at least decrease, further violations of the Agreement. Class Counsel's experience, through Defendants' previous violations of the Agreement, has proven that prevention is crucial when it comes to the prospect of wrongful removals of asylum seeking Class Members. Even where Class Counsel succeeds in making contact using the scant information furnished by Defendants, removed Class Members will have already been harmed by removal to the country of claimed persecution, disruption of their family

---

[3] Defendants already regularly deliver notices and information to persons in their custody. For example, longstanding regulations mandate the delivery of Form I-770, Notice of Rights and Disposition, to noncitizen minors whom DHS apprehends. 8 CFR § 1236.3(h).

lives and livelihoods in the United States, and potentially worse. The modest measure of a written notice to help prevent violations before they occur is a far less costly and less burdensome option.

### 3. The Court Has Authority to Hold Defendants to their Bargained-For Obligations

Defendants assert that the Court may not impose a remedy for violations "that the parties never agreed to in their settlement." Opp. at 15. This is plainly incorrect.

First, Defendants' assertion is contrary to the Agreement itself and belied by Defendants' own admissions. Section V.A of the Agreement gives this Court "exclusive jurisdiction to supervise the implementation of this Settlement Agreement and to enforce its provisions and terms." ECF No. 199-2 at 12. The Fourth Circuit has also held that "district courts . . . possess the inherent power to supervise and aid the implementation of settlement agreements." *Young v. F.D.I.C.*, 103 F.3d 1180, 1194 (4th Cir. 1997); *see also Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 282 (4th Cir. 2002), *overruled on other grounds by Stinnie v. Holcomb*, 77 F.4th 200 (4th Cir. 2023) (recognizing "the continuing jurisdiction involved in the court's inherent power to protect and effectuate its decrees entails judicial oversight of [court-ordered settlement agreements]"). Under Maryland law, the parties to a settlement agreement must "use clear language to show their agreement to limit available remedies." *O'Brien & Gere Eng'rs, Inc. v. City of Salisbury*, 447 Md. 394, 407 (Md. 2016). And here the Agreement contains no clause limiting the potential remedies the Court may order through an enforcement action brought under Section V.D. Indeed, Defendants admit that a "proper" remedy for their unlawful removals is to bring the removed Class Members back to the United States, Opp. at 8, a remedy not explicitly stated in the Agreement.

Courts outside this district also recognize the power of courts to remedy violations of a settlement agreement, even where the remedy is not explicit in the agreement itself. In *Screw Mach. Tool Co. v Slater Tool & Engineering Corp.*, 683 F.2d 159 (6th Cir. 1982), the Sixth Circuit

9

reasoned that "the impact of the latest violations of the Consent Decree by defendants must be measured in the light of the violations which preceded them," and thus, "the trial judge did not abuse his discretion by imposing more stringent and complete measures to remedy the most recent violations of the Decree." *Id*. at 163; *see also Concerned Pastors for Soc. Action v. Khouri*, 658 F. Supp. 3d 495, 502-503 (E.D. Mich. 2023) (cleaned up) (holding that courts may impose "additional affirmative conduct not required by the underlying agreement" in response to a violation of a consent decree under the court's inherent equitable power to enforce a consent decree). Similarly, the Second Circuit upheld a district court's order imposing a remedy with "more onerous terms" that "was designed to ensure full compliance" with a consent decree in view of defendant's violations of the decree. *Juan F. v. Weicker*, 37 F.3d 874, 879 (2d Cir. 1994). Similar considerations led this Court to grant Class Counsel's first motion to enforce, ordering Defendants to facilitate Cristian's return to the United States—a remedy not expressly mentioned in the Settlement Agreement but required in light of Defendants' violations of Sections III.B and III.I of the Agreement, ECF No. 254 at 2, and to deny Defendants' motions to vacate paragraph 2 of its April 23 Order, ECF Nos. 261, 386. Willfully failing to set up processes that would prevent removals and continuing unlawful removals justifies the Court's "imposing more stringent and complete measures to remedy the most recent violations of the Decree." *Screw Mach. Tool Co.*, 683 F.2d at 163. Absent the requested remedies, more violations are inevitable, namely, more unlawful removals that are difficult if not impossible to remedy.

Defendants' reliance on *Johnson v. Robinson*, 987 F.2d 1043 (4th Cir. 1993) is misplaced. *Johnson* dealt with plaintiffs who wished to add terms to an existing consent agreement rather than enforce the existing terms of the agreement. *Id.* at 1044, 1049 ("We do not regard the instant order, however, as an example of enforcement, nor do we understand the district court to have regarded

10

it as such."). Indeed, the Fourth Circuit saw the plaintiffs' proposed timetable for repairs to the infrastructure of Maryland prisons as new obligations not found in the existing agreement. *Id.* at 1045 (noting, for example, that requested timetable required Defendants to undergo a "complete electrical upgrade project," a repair not mentioned in the agreement). In contrast to the "significant upgrades" rejected in *Johnson*, *id.* at 1049, here the Court here is asked to require Defendants to undertake two processes to bring them into compliance with the bargained-for provisions of the Agreement: accounting for actions the Agreement already requires, and delivering written notice to Class Members in Defendant ICE's custody—those most at risk of having their rights under the Agreement violated by being removed by Defendants without an asylum adjudication. In fact, *Johnson* recognizes district courts' authority to "enter remedial orders enforcing [a settlement agreement's] terms," 987 F.3d at 1048—precisely what Class Counsel seeks here. And when this court has construed the "four corners" rule of *Johnson* on which Defendants rely, it has held that courts have authority to devise a method for a party to comply with its duties, as Class Counsel requests here. *See Duvall v. Hogan*, No. 94-2541, 2021 WL 2042295, at *13 (D. Md. May 21, 2021) ("Given the fact that the Court retains jurisdiction as to the case, in order to ensure compliance with the Agreement, devising a method to obtain compliance does not necessarily extend beyond the four corners of the Agreement.").[4]

### III. Class Counsel's Motion Is Not Premature

Contrary to Defendants' assertions, it is not premature for this Court to redress Defendants' continued removals of Class Members in violation of the Agreement. This dispute could not be

---

[4] Furthermore, this Court has the power to order remedies to coerce Defendants' compliance with the Court's orders through its civil contempt authority. *See, e.g., Berger v. Heckler*, 771 F.2d 1556, 1569 (2d Cir. 1985) (also observing that "[e]nsuring compliance with a prior order is an equitable goal which a court is empowered to pursue even absent a finding of contempt").

11

resolved after counsels' written exchange and a meet-and-confer, and thus Class Counsel's instant motion to enforce the Agreement on a class-wide basis is ripe under Section V.D of the Agreement. Defendants attempt to escape scrutiny for their continued unlawful removals of Class Members by mischaracterizing the Agreement and the facts, but their efforts are unavailing.

*First*, Defendants wrongly claim that the Settlement Agreement "requires" Class Counsel to wait for a 150-day period bringing a motion to enforce. Opp. at 5-8. The Agreement contains no such requirement. Instead, Section V.D provides that Defendants must respond to a written notice of alleged noncompliance "*within a reasonable period not to exceed* 60 days" and that the parties must meet and confer "*[w]ithin* 90 days of Defendants' receipt of the written notice of the alleged noncompliance." ECF No. 199-2 at 13 (emphases added). Both time periods are keyed to the date of the original notice, not added together. In other words, the Agreement provides that the maximum outer limit for completing the pre-motion predicate steps is 90 days—not 150 days as Defendants claim. And the 90-day period is the outer limit, not a required waiting period; the Agreement expressly states that Defendants must respond "within a reasonable period." *Id.*[5]

Here, the parties exchanged written notices regarding Defendants' noncompliance on September 29, 2025. ECF 428-4, Ex. A, at 9-12. On that date, Class Counsel notified Defendants that, "[a]s these removals may violate the settlement agreement, we reserve the right to raise them with the Court." *Id.* at 10. On October 6 and October 16, Defendants provided written responses to Class Counsel's requests for additional information about the removals of Class Members in violation of the Agreement. *Id.* at 2-4; Ex. F. These written communications satisfy Section V.D's requirements for a written exchange between the parties.

---

[5] Given the massive immigration enforcement Defendants have been conducting, Opp. at 12, including arresting and detaining Class Members, at the same time that they have failed to provide Class Counsel with basic information about their violations, any delay is unreasonable.

12

*Second*, the Court should reject Defendants' efforts to re-write history by now claiming that a meet-and-confer never occurred. Defendants use various synonyms to avoid admitting that a meet-and-confer took place on October 10, referring to the meet-and-confer as a "meeting," Opp. at 5, 7, a "conversation between parties' counsel," Opp. at 7, a "phone call," Opp. at 12, and "not the meet-and-confer required by Section V.D," Opp. at 7. The record belies these post-hoc characterizations. On October 3, Class Counsel wrote to Defendants asking to schedule a "meet-and-confer" and notifying Defendants that at the meet-and-confer "we would like to better understand during that meeting how these violations occurred, hear about Defendants' plan to remedy them, and discuss preventative measures that could avoid similar violations in the future." ECF 428-4, Ex. A, at 8. Defendants responded with their availability "for a meet and confer." *Id.* at 7. The meet-and-confer then took place on October 10. There is no reasonable dispute that the parties met and conferred in an effort to resolve the dispute informally, as required by Section V.D.

The Court should also reject Defendants' claim that their apparent failure to make and maintain database entries indicating stays of removal for Class Members is a "new and separate violation" for which a non-existent 150-day clock started on November 3. Opp. at 9. The procedural requirement to make database entries embedded within Section III.I is imposed "[i]n order to comply with" Section III.I's substantive prohibition on Class Members' removal. ECF No. 199-2 at 8. Defendants were aware of their violations of Section III.I at least as early as April 25, 2025, when they notified Class Counsel of their "mistake" in removing Class Member B.A.G. ECF No. 428-3 at 1 ¶ 4. They have since disclosed nine additional erroneous removals of "potential" Class Members. While Defendants assert that Class Counsel's allegation of recurring removals of Class Members in violation of the Agreement is a "brand new claim" asserted for the first time in the November 3 Motion, in fact Class Counsel has repeatedly asked Defendants to

address their continuing violations of the Settlement Agreement and of the Court's April 23 order. ECF 428-4, Ex. C; Ex. A at 8; Ex. B at 2-5.  Class Counsel notified Defendants on October 3 that they wished to "discuss preventative measures that could avoid similar violations in the future" at the upcoming meet-and-confer.  ECF 428-4, Ex. A, at 8.  Among other things, Class Counsel asked Defendants to describe their process comply with Section III.I of the Settlement Agreement and to consider providing written notice to detained class members of their rights under the agreement. ECF No. 428-4, Ex. B, at 4-5.  Defendants failed to do any of these things.

In sum, the pre-motion predicate steps under Section V.D of written notice, a written response, and a meet-and-confer have all occurred.  Because these efforts did not resolve the dispute, this instant motion is ripe.  While Defendants claim that "it is unclear that the parties are unable to resolve the dispute as to these removed class members in a way that would require court intervention" Opp. at 7, the dispute Class Counsel raises via this class-wide motion concerns the imposition of remedial measures to prevent continuing unlawful removals—not the return of any individual removed Class Member.[6]  Class Counsel repeatedly raised their concern to Defendants about ongoing removals of Class Members in violation of the Agreement and asked Defendants to provide an accounting of their process to comply with III.I and to consider preventative measures such as individualized notice.  ECF 428-4, Exs. A-C.  In response, Defendants have provided no information about their Section III.I procedures nor have they agreed to any preventative measures.

*Third*, Defendants misleadingly claim that they were not required to report these violations of the Settlement Agreement.  Opp. at 1.  In fact, each time Defendants removed a Class Member

---

[6] As previously noted, Class Counsel is not currently seeking the Court's intervention as to the individual Class Members whom Defendants deported. *See* ECF No. 428-2 at 10 n.6.  Class Counsel is endeavoring to contact each individual to ascertain their wishes, *id.*, though those efforts are likely to be futile given Defendants' failure to provide Class Counsel with current contact information. *See* ECF No. 428-3 at 2 n.1 (describing Class Counsel's efforts).

14

without providing them an adjudication on the merits, Defendants violated not only Section III.I but also Section III.B of the Agreement, which requires Defendants to "adjudicate [Class Members' asylum applications] on the merits." ECF No. 199-2 at 6. Section V.B of the Settlement Agreement requires Defendants to file reports with the Court describing their compliance with Section III.B. ECF No. 199-2 at 12. Had Defendants taken their obligation to accurately report compliance with III.B seriously, some of the removals of Class Members could have been prevented. For example, Defendants violated Section III.B of the Settlement Agreement in March 2025 when they rejected Class Member E.P.P.'s asylum application—which had been pending for nine years—for lack of jurisdiction. ECF No. 428-3 at 3 ¶ 7. In their Compliance Report filed on April 24, 2025, Defendants failed to report their wrongful jurisdictional rejection of E.P.P.'s asylum application. ECF No. 257; *see also* ECF No. 282 (Defendants' May 27 compliance report). Then on May 27, 2025, Defendants deported E.P.P. without affording him an adjudication on the merits. ECF No. 428-3 at 3 ¶ 7. Defendants' failure to comply with their reporting requirements under V.B underscores the appropriateness of the class-wide relief Class Counsel seeks.

## IV. CONCLUSION

For all the reasons set forth above and in Class Counsel's Opening Brief, the Court should order Defendants to provide a detailed accounting regarding their compliance with Section III.I of the Settlement Agreement; order Defendants to provide prompt written notice to detained Class Members of their rights under the Settlement Agreement; and order such further remedies as the Court deems warranted.

Dated: November 17, 2025

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project
30 S. 10th Street (c/o University of St. Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*

16