IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **J.O.P.**, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. SAG-19-01944 |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

In 2019, a class of individuals who arrived in this country as "unaccompanied alien children" ("UACs") filed this lawsuit to challenge a revision to policies governing adjudication of their subsequent asylum applications. ECF 1. On November 25, 2024, this Court held a fairness hearing and granted the parties' joint motion for final approval of a settlement agreement in this case (the "Settlement Agreement"). ECF 205. The settlement did not conclude the case, however, as there have been a multitude of issues stemming from alleged violations of Defendants' obligations under the Settlement Agreement. Three such motions are currently ripe for disposition: (1) Class Counsel's Motion for Order Directing Defendants to Provide Prompt Notice of Class Member's Return to the United States, ECF 320; (2) Class Counsel's Motion to Find Probable Cause to Hold Defendants in Contempt, ECF 375; and (3) Defendants' Motion to Vacate, ECF 386.[1] This Court has reviewed the three motions along with the related briefing. ECF 376, 382,

---

[1] Class Counsel recently filed a new motion relating to Defendants' alleged noncompliance with the Settlement Agreement, ECF 428. That motion is not yet ripe for disposition and will be adjudicated separately.

392, 393, 395, 406, 407, 421. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, all three motions will be denied.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

A class of asylum seekers filed this lawsuit against Defendants from the Department of Homeland Security (DHS), U.S. Citizenship and Immigration Services (USCIS), and Immigration and Customs Enforcement (ICE), challenging the procedures for determining which agency would have initial jurisdiction over their asylum applications. The parties settled the case through a Settlement Agreement approved by this Court on November 25, 2024. ECF 205. In relevant part, the Settlement Agreement defines class members as individuals "for whom USCIS has not adjudicated the individual's asylum application on the merits." ECF 199-2 at Section II.E. Section III.I of the Settlement Agreement provides "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this agreement." *Id.*

On March 15, 2025, President Trump issued a Proclamation entitled, *Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua,* ECF 227-2 Ex. 3. On that same day, Defendants began removing Venezuelan nationals to El Salvador, alleging without any formal process that each removed individual was a member of Tren de Aragua. Despite a temporary restraining order issued by the U.S. District Court for the District of Columbia, Defendants removed several hundred Venezuelans to El Salvador, where they were detained at CECOT, a supermax prison.[2]

---

[2] The basis for the Venezuelan nationals' indefinite detention in El Salvador went unexplained.

One of the Venezuelans removed to CECOT was Cristian,[3] who was 20 years old and had a pending asylum application with USCIS. On March 13, 2025, Cristian's immigration counsel alerted ICE officials that Cristian was a member of the settlement class in this case, also providing them a link to the Settlement Agreement on USCIS's website. ECF 376-2 at 2-3. Nevertheless, Cristian was among the Venezuelan nationals removed by Defendants to El Salvador two days later, on March 15, 2025.

On April 23, 2025, in response to Class Counsel's emergency motion to enforce the Settlement Agreement, this Court ordered Defendants to "facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement. Facilitation includes, but is not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." ECF 254 ¶ 2 (the "April 23 Order").

Defendants first attempted to vacate the "facilitation" paragraph of this Court's Order and then filed an appeal along with a motion to stay. ECF 261. This Court granted a stay of the paragraph pending the filing of the appeal, ECF 270, but the United States Court of Appeals for the Fourth Circuit declined to stay the paragraph pending adjudication of the appeal, with the majority of the panel explicitly stating that this Court's requirement that Defendants make a "good faith request" as part of "facilitation" was proper. *J.O.P. v. U.S. Dep't of Homeland Sec.,* No. 25-1519, 2025 WL 1431263, at *6 (4th Cir. May 19, 2025) (Benjamin, J., concurring).

Once the stay was lifted, on May 20, 2025, this Court ordered Defendants to provide a status report by 5:00 PM on May 27, 2025 regarding "(1) Cristian's current physical location and

---

[3] "Cristian" is the pseudonym approved by this Court for use in this litigation to protect the class member's safety. ECF 254.

custodial status; (2) what steps, if any, Defendants have taken to facilitate Cristian's return to the United States; and (3) what additional steps Defendants will take, and when, to facilitate Cristian's return." ECF 280 (the "May 20 Order"). Defendants filed their report one hour late, stating only, "It is DHS's understanding that Cristian is in the custody of El Salvador. DHS has informed the Department of State (DOS) of the Court's order and requested DOS assistance in complying with the Court's order. DOS has acknowledged DHS's request." ECF 285-1 ¶ 10.

Recognizing the substantive and procedural deficiencies with that response, this Court issued an Order on May 28, 2025 to remind Defendants that "strict adherence to this Court's deadlines is expected and required" and to require additional information on the three topics identified in the May 20 Order. ECF 287 (the "May 28 Order"). This Court also invited Class Counsel to propose "a process to create an appropriate record on Defendants' lack of compliance with this Court's orders." *Id.* at 2.

Defendants provided a more responsive status report on June 2, 2025, stating, "Secretary Rubio has a personal relationship with President Bukele," that "he is personally handling the discussions with the government of El Salvador regarding persons subject to the Court's order," and that "he is committed to making prompt and diligent efforts on behalf of the United States to comply with that order." ECF 290-1 ¶ 6.

Class Counsel proposed a process for creating a factual record, ECF 289, and on June 5, 2025, this Court ordered that Defendants, on each ensuing Friday, "file a weekly status report on or before noon ET in the form of a declaration by an individual with personal knowledge" concerning the same three topics enumerated in the May 20 Order. ECF 293 (the "June 5 Order"). During the six-week period between June 6 and July 18, 2025, Defendants filed eight such Status Reports. ECF 294, 295, 300, 303, 307, 314, 330, 352. Several of those were filed after the noon

deadline (but always before 5 PM). Although some of the reports provided some information about Cristian's whereabouts and health, none of them detailed steps being taken for his return or provided evidence that either Defendants or the State Department had made a good faith request to El Salvador for Cristian's release. *Id.*

The June 5 Order also prescribed a process for the parties to engage in expedited discovery about the government's actions. ECF 293 ¶¶ 2, 4–6. The parties commenced the discovery process. The discovery responses received by Class Counsel do not reflect that any good faith request was made to El Salvador to release Cristian to the United States, although there are communications regarding a request for information on his custodial and health status.

As Defendants continued to assure (in a non-specific fashion) that the Department of State was "making prompt and diligent efforts on behalf of the United States to comply" with this Court's orders, on July 8, 2025, the New York Times reported that Secretary Rubio was "overseeing a deal to free several Americans and dozens of political prisoners held in Venezuela in exchange for sending home about 250 Venezuelan migrants the United States had deported to El Salvador."[4] On the morning of Friday, July 18, 2025, some news reports speculated that the prisoner swap would occur that day. Once again, on that date, Defendants failed to file their court-ordered weekly status report by the noon deadline. When Class Counsel reached out that afternoon for information, Defendants' counsel responded that they were "waiting for information from the Department of State." ECF 376-11 at 2. When Class Counsel contacted this Court about the news coverage, this Court ordered an additional status report on whether Cristian "is being transported

---

[4] Frances Robles et al., *U.S. Botched a Deal to Swap Venezuelans Held in El Salvador for Americans,* N.Y. Times (July 8, 2025), https://www.nytimes.com/2025/07/08/world/americas/trump-venezuelan-migrants-us-prisoner-swap.html.

5

to Venezuela." ECF 351 (the "July 18 Order"). At 4:25 PM ET, Defendants filed their belated status report, ECF 352, and at 5:04 PM ET filed an additional status report in response to the July 18 Order, stating that Cristian "is either currently in Venezuela or will arrive there shortly." ECF 353 at 1. They represented that "the United States obtained assurances from the Maduro regime that (1) if and when U.S. legal proceedings reach a stage where the appearance of one of the 252 Venezuelan nationals formerly housed at CECOT may be called for in legal proceedings or required by a court; (2) if the U.S. government is prepared to facilitate the person's travel to the United States for that purpose; and (3) if the individual is willing to travel to the United States for that purpose, the Maduro regime will not impose obstacles to the individual's travel." ECF 352 Ex. A ¶ 9; ECF 353 at 1. Further, Defendants represented, "The Department of State has also pledged to assist Department of Homeland Security in facilitating the return of Cristian should he wish to return." ECF 352 at 1; ECF 353 at 1.

This Court held a hearing on July 22, 2025 on Class Counsel's pending Motion to Compel Discovery. In light of the intervening events, this Court denied Class Counsel's Motion to Compel, without prejudice, and ordered the parties to file joint weekly status reports regarding their ongoing discussions about Cristian's return to the United States. ECF 358. Eleven such status reports were filed. ECF 363, 366, 368, 379, 380, 384, 388, 390, 396, 404, 408. The first such reports indicated that Class Counsel was in contact with Cristian and that Class Counsel were attempting to obtain information from the government regarding the terms of his return to the United States. But beginning in late August, 2025, Class Counsel has been unable to reach Cristian to provide updates on his desire to return to the United States. His whereabouts are presently unknown. This Court has since stayed the weekly reporting requirement in light of the lack of new information and the government shutdown. ECF 415, 417. Each of the currently pending motions is addressed below.

6

## II.   MOTION FOR PROMPT NOTICE

In July, 2025, while Cristian was held in El Salvador's CECOT prison, Class Counsel filed a "Motion for an Order Directing Defendants to Provide Prompt Notice of Class Member's Return to the United States." ECF 320. The motion noted Defendants' representation, in ECF 318, that they would give Class Counsel notice within 48 hours of Cristian's return to this Country, and expressed concern that, within that 48-hour timeframe, Defendants could adjudicate the merits of Cristian's asylum petition without ever notifying his counsel that the proceedings were underway.

No opposition to the motion was filed but intervening events have rendered the motion moot. Cristian is now, to the best the parties are aware, in Venezuela and is no longer in any government's custody. Should he resume contact with his counsel, any return to the United States will occur through negotiations with the United States government (or potentially through Court order) and will not happen by surprise. Accordingly, this Court will deny ECF 320 as moot, without prejudice.

## III.  MOTION TO FIND PROBABLE CAUSE FOR CONTEMPT

### A. Legal Standards

Class Counsel ask this Court to make a finding that probable cause exists that Defendants have engaged in conduct constituting criminal contempt by willfully failing to comply with this Court's orders.[5] ECF 376. A criminal contempt charge "initiate[s] 'a separate and independent proceeding at law [. . .] to vindicate the authority of the court' [that is] 'not a part of the original

---

[5] Class Counsel do not seek civil contempt, which generally applies when a court uses contempt proceedings to coerce a party's compliance with an existing court order. Although there are some nuances, a contempt sanction is generally considered civil if it "is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911). Plaintiffs' instant motion focuses solely on punishment by this Court for the allegedly noncompliant conduct that already occurred.

7

[case].'" *Bray v. United States*, 423 U.S. 73, 75 (1975) (quoting *Gompers*, 221 U.S. at 445, 451). "Criminal contempt proceedings are thus initiated at the sole discretion of the court and are 'not dependent on the [success] or even the continuation of the' underlying suit." *Brandt v. Gooding*, 636 F.3d 124, 135 (4th Cir. 2011) (quoting *Bray,* 423 U.S. at 76) (alteration in *Brandt*).

18 U.S.C. § 401(3) permits a federal court "to punish by fine or imprisonment, or both, at its discretion, . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." Imposition of criminal contempt sanctions in the context of violation of a court order requires that three elements be proved: "(1) a reasonably specific order; (2) violation of the order; and (3) the willful intent to violate the order." *In re Gates,* 600 F.3d 333, 338-39 (4th Cir. 2010) (quoting *United States v. Allen,* 587 F.3d 246, 255 (5th Cir. 2009) (per curiam); *see also United States v. Linney*, 134 F.3d 274, 278 (4th Cir. 1998) ("To support a conviction of criminal contempt for violation of a court order, the Government must prove beyond a reasonable doubt that the defendant willfully violated a decree that was clear and left no uncertainty in the minds of those that heard it.") (citing *Richmond Black Police Officers Ass'n v. City of Richmond*, 548 F.2d 123, 129 (4th Cir.1977)). If probable cause exists to believe that such criminal contempt has occurred, Federal Rule of Criminal Procedure 42(a) provides certain procedural safeguards to govern the proceedings, to include notice of the contempt charges, the appointment of an independent prosecutor, and a jury trial.

## B. Analysis

Class Counsel allege that probable cause exists to find Defendants' willful violations of two sets of clear court orders: (1) this Court's April 23 Order (ECF 254) to facilitate Cristian's return to the United States, and (2) its May 20 Order (ECF 280) and June 5 Order (ECF 293) to provide status reports at particular times containing particular information.

8

First, looking at the April 23 Order, Class Counsel allege that Defendants failed to comply with the language ordering "facilitation" of Cristian's return and defining facilitation as including, "but . . . not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. Custody for transport back to the United States." ECF 254 at 3. In support of their contention that no such good faith request occurred, Class Counsel cite the return of Kilmar Abrego Garcia, another individual who had been removed from the United States to CECOT, on June 6, 2025. *See* ECF 376 at 22 (citing Defendants' Notice of Compliance with Preliminary Injunction, *Abrego Garcia v. Noem,* 8:25-cv-00951 (D. Md. June 6, 2025), ECF 181). They suggest that the return of Mr. Abrego Garcia to comply with a court order entered in his litigation indicates that a "good faith request" to return Cristian would have been equally successful. They further note the absence of any representation from Defendants, over the many months this litigation has been pending, that any government official made the court-ordered good faith request for Cristian's return.

While this Court shares Class Counsel's frustration with what appears to be lack of good faith government efforts at compliance with this Court's order, it cannot find, on the particular facts of this case, the factors needed to find probable cause for criminal contempt. There is an important distinction between this case and *Abrego Garcia.* This lawsuit preexisted the current administration and was filed (and settled) under President Biden's administration, with the goal of changing a particular facet of the immigration system's asylum process. *Abrego Garcia* was filed after Mr. Abrego Garcia's March, 2025 removal from the United States to CECOT, seeking to effect his return. Both cases eventually sought the return of an individual from CECOT. But because the cases arose in very different procedural postures, the named defendants in the two cases are different. The Defendants in this case are limited to DHS, USCIS, ICE, and their directors

9

and acting directors who had authority over the asylum processes challenged by the Class Members. The defendants in *Abrego Garcia* include Secretary Rubio, the official charged with communicating, on behalf of the United States, with other heads of state and governments.

That distinction is meaningful in terms of the ability of the respective defendants to comply with a court order to facilitate return. Defendants reasonably suggest that they did not willfully violate this Court's order—because of the different roles the relevant agencies play, Defendants' personal ability to make the "good faith request" required by the April 23 Order was limited to conveying the Order's dictates to the State Department and requesting it be followed. Defendants asserted repeatedly, in their status reports, that they took those steps. *See, e.g.,* ECF 285. At no point did this Court order the State Department or Secretary Rubio to take any specific action— they were not named in this lawsuit and this Court's post-settlement role was limited to enforcing the Settlement Agreement between Class Members and the Defendants. Of course, in other times, one might assume that a federal agency not specifically named in a case would still use its best efforts to effectuate its sister agencies' compliance with a valid order from a federal court. This Court certainly hoped, in entering the April 23 Order, that events would unfold in that manner and that the federal government as a whole would undertake compliance efforts. Its hopes were dashed.

That frustration, though, does not mean criminal contempt is warranted. With international diplomatic communication falling within the purview of the State Department, a non-party to this case, the April 23 Order did not, and indeed, could not, delineate the respective responsibilities of both the named Defendants and the State Department with the clarity and certainty required to satisfy the stringent standard for criminal contempt. This Court cannot see a circumstance where it could impose criminal contempt upon a government agency or official with no authority to convey specific communications directly to El Salvador.

Class Counsel attempts to argue that DOS and Secretary Rubio were acting as Defendants' "agents" in their efforts to comply with this Court's order.[6] ECF 421 at 8. Once again, under the willfulness standard governing criminal contempt, an "agent" that is a separate government agency/official with its own duties and agenda could not pass muster. Even if one assumes, as is reasonable, that the State Department focused its efforts on using Cristian as one of many pawns in its prisoner swap instead of endeavoring to comply with this Court's order to facilitate his return, criminal contempt is unavailable because this Court's order did not (and could not) clearly direct the State Department or Secretary Rubio to take action.

To be clear, this Court agrees with the general proposition that it has seen no evidence that the United States government ever made a good faith request to the government of El Salvador for Cristian's return. However, in the unique circumstances presented, it cannot find probable cause that the Defendants named in the lawsuit willfully violated this Court's order to request his return in good faith.

In their second argument that criminal contempt is warranted, Plaintiffs assert that Defendants violated this Court's orders requiring status reports, in two ways: by generally providing deficient (and often tardy) reports and, on July 18, 2025, as Cristian was en route to Venezuela, by delaying the filing of the report by four hours to prevent interference with the prisoner swap.

Without question, Class Counsel can establish that this Court's orders for status reports were not followed to the letter. As this Court itself expressed on several occasions, Defendants'

---

[6] Class Counsel's sole citation that agency theory applies in a contempt context relates to civil contempt, not criminal. *See* ECF 421 at 8 n.2 (citing *In re Sterling,* 933 F.3d 828, 833-34 (7th Cir. 2019)). There are different considerations at play when deciding whether an official or entity should be subjected to a full-blown criminal contempt trial.

responses were often woefully deficient. On several occasions, they were also filed late. And, for the July 18, 2025 report, Class Counsel can establish that the violation of the filing deadline was willful. Defendants concede that they knew the report was due at noon and opted, upon the request of the State Department, to refrain from filing it until later in the day to "mitigate the risk" the ongoing prisoner swap operation would "fall apart from public scrutiny." ECF 352; ECF 395-3 ¶ 9.

This Court has grave concerns about the government's apparent willingness to disregard this Court's orders, even after previous admonition, and its determination that protection of the prisoner swap (apparently from prospective judicial intervention) is a valid reason to ignore (or at least delay compliance with) a valid Court order to provide a status report. But even with those troubling background circumstances, this Court declines to impose the drastic sanction of ordering litigants into separate criminal proceedings, culminating in a jury trial, for criminal contempt on the offense alleged here: the filing of incomplete or untimely status reports.[7] That immense power must be exercised judiciously, and this Court does not find it to be a warranted exercise of its discretion here, where the violations of this Court's orders consisted of modest filing delays and caginess about the content of the reports.

## IV.   MOTION TO VACATE

Finally, Defendants have filed a motion asking this Court to vacate Paragraph 2 of its April 23 Order, which directs Defendants "to facilitate Class Member Cristian's return to the United States to await adjudication of his asylum application on the merits by USCIS under the terms of

---

[7] A more fulsome investigation of the conduct alleged here (the alleged lack of candor to the court by counsel and/or the acts potentially subjecting some agencies or officials to civil liability for their handling of the Venezuelan detainees) might be appropriate in other venues. But the conduct does not amount to criminal contempt as it arises in this proceeding, as status report violations.

the Settlement Agreement." ECF 254 at 2. Defendants submit that the issue is now "moot" because of "Cristian's unwillingness to return to the United States." ECF 386 at 1.

On July 18, 2025, with a pending court order requiring facilitation of his return to the United States, Cristian was transported, entirely against his will, to the very country from which he had sought asylum in the United States, Venezuela. The United States represented that the Maduro regime would permit travel to the United States for an individual whose return was "called for in legal proceedings or required by a court" and the individual was "willing to travel to the United States for that purpose." ECF 386-1 at 7-8. As Cristian attempted to glean information, through his attorneys, about the possible terms of his return to the United States, Class Counsel lost touch with Cristian. His current whereabouts are unknown.

While Defendants argue that Federal Rule of Civil Procedure Rule 60(b)(5) permits relief from judgment where prospective application of the judgment "is no longer equitable,"[8] ECF 386-1 at 10 (quoting *Horne v. Flores,* 557 U.S. 433, 454 (2009)), the equities do not weigh in Defendants' favor here. As this Court has already found, Cristian never should have been removed from this country without the bargained-for protections afforded him under the Settlement Agreement. It is possible, at this point, that Cristian has decided to forego a return to the United States and has voluntarily absented himself from contact with his counsel. It is equally possible

---

[8] While Defendants base their Rule 60(b)(5) argument almost entirely on their assertion that Paragraph 2 of the April 23 Order has become moot, they also recite the circumstances which the Rule itself lists as justifying its application, including where "applying [a judgment] prospectively is no longer equitable." ECF 386-1 at 10, 12. In addition, Defendants presented their argument in support of vacatur under Rule 60(b)*(6)* under the heading that the April 23 Order "Is No Longer Equitable Because Further Compliance is Impossible Without Cristian's Cooperation," *id.* at 15, though they later, in their Reply, appear to disclaim that language. ECF 407 at 9 ("Class Counsel mischaracterizes Defendants' argument under Rule 60(b)(6) as an argument that the Court's order 'is no longer equitable.'"). Notwithstanding this apparent confusion (as noted by Class Counsel in their opposition, ECF 392 at 11), this Court affirmatively notes, *infra*, that this ground for vacatur is not applicable here.

that Cristian has been the victim of the anticipated violence that caused him to seek asylum in the United States in the first instance.[9] This Court therefore rejects the premise of Defendant's motion, that "Cristian does not wish to return to the United States," that compliance with Paragraph 2 of the April 23 Order is not feasible, and that said Paragraph is therefore moot. *See* ECF 386-1 at 11. While this Court cannot reach any definitive conclusion about Cristian's present whereabouts, Defendants offer no evidence that they are suffering any ongoing burden or obligation from the continued existence of Paragraph 2 of this Court's April 23 Order, because all reporting requirements are currently stayed. And, should Cristian resurface and express a desire to the United States, Defendants should retain their existing obligation to restore him to his status quo before their breach of the Settlement Agreement.

To ensure that there is no continuing burden or obligation impacting government functioning in any way, this Court will permanently lift the already-stayed requirement for regular status reports regarding government efforts to facilitate Cristian's return. No such requirement will be imposed until or unless Class Counsel re-establish contact with Cristian and advise this Court that he wishes to return to the United States. However, Defendants' Motion to Vacate, ECF 386, will be denied.

## V.   CONCLUSION

For the reasons set forth above, all three ripe motions, ECF 320, 375, 386, will be denied. A separate order follows. This memorandum opinion will be filed UNDER SEAL, and the parties will be afforded one week to confer and notify this Court of proposed redactions to be made to a

---

[9] Whether the United States directly negotiated the prisoner swap resulting in Cristian's transport to Venezuela in exchange for the release of American prisoners or simply "served as intermediary in light of the acrimonious relationship between El Salvador and the Maduro regime," ECF 386-1 at 7, it is clear that it knowingly played a role in Cristian's landing in the country from which he had sought asylum.

publicly filed version. Should this Court not receive proposed redactions within one week, it will file this opinion publicly in full.

Dated: November 14, 2025                                          /s/
                                                                  Stephanie A. Gallagher
                                                                  United States District Judge