**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

J.O.P., *et al.*,

       Plaintiffs,

  v.

U.S. Department of Homeland Security, *et al.*,

       Defendants.

Civil Action No.
8:19-CV-01944-SAG

**CLASS COUNSEL'S EMERGENCY MOTION
TO ENFORCE THE COURT-ORDERED SETTLEMENT AGREEMENT
AND TO FIND DEFENDANTS IN CIVIL CONTEMPT**

<u>**TABLE OF CONTENTS**</u>

**Page**

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND.............................................................................. 2

  A. This Litigation and the Settlement Agreement ....................................... 2

  B. Class Counsel's First Motion to Enforce the Settlement Agreement After Defendants Removed Class Member Cristian in Violation of Section III.I .......... 3

  C. Defendants Continue to Remove Class Members in Violation of the Settlement Agreement, Prompting Class Counsel's Second Motion to Enforce........................................................................................................... 3

  D. ICE Refuses to Identify Class Members Prior to Their Removal, and USCIS's Identification Procedures Are Woefully Inadequate ............................... 5

    1. Defendants Cannot (or Will Not) Explain Exactly Why Class Members Were Removed ......................................................... 7

    2. Defendants' Processes for Identifying Class Members Are Not Compliant with the Settlement Agreement................................. 8

    3. Defendants Refuse to Return Removed Class Members to the Status Quo Prior to Removal ............................................. 10

III. ARGUMENT.................................................................................................... 11

  A. Defendants Continue to Violate the Settlement Agreement and the Court's April 23, 2025 Order........................................................................ 12

    1. Defendants' Removals of Class Members Are Violations of the Settlement Agreement................................................... 12

    2. Defendants Are Also Not Complying with the Agreement's Procedural Requirements to Identify Class Members Prior to Removal ............................................................................. 13

  B. Defendants Should Be Held in Civil Contempt of the Court-ordered Settlement Agreement and the Court's April 23 Order ......................................... 15

  C. The Court Should Issue Remedial Orders to Prevent Additional Violations of the Settlement Agreement and the Court's April 23, 2025 Order .................... 17

    1. Defendants—Including ICE—Should Be Required to Identify Class Members They Intend to Remove................................... 19

    2. Defendants Should Be Required to Provide Prompt Written Notice of the Right to a USCIS Asylum Adjudication to Detained Class Members ............................................................................. 21

    3. Defendants Should Be Ordered to Provide a Retrospective Accounting and Ongoing Reporting Regarding Their Compliance with Section III.I of the Settlement Agreement......................... 24

    4. Defendants Should be Ordered to Restore Removed Class Members to the Status Quo Prior to Removal ............................ 27

    5. Defendants Should Be Ordered to Provide Ongoing Reporting Regarding Their Compliance With the Court's Order on This Motion.............................................................................. 29

IV. CONCLUSION.................................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adkins v. Arvinger*,
  No. 123CV0061RDALRV, 2023 WL 9658178 (E.D. Va. Oct. 31, 2023) ..............................25

*Ashcraft v. Conoco, Inc.*,
  218 F.3d 288 (4th Cir. 2000) ...........................................................................................16, 17

*Concerned Pastors for Soc. Action v. Khouri*,
  658 F. Supp. 3d 495 (E.D. Mich. 2023)..........................................................................23, 30

*Duvall v. Hogan*,
  2021 WL 2042295 (D. Md. May 21, 2021) .....................................................................18, 23

*Frew v. Hawkins*,
  540 U.S. 431 (2004).................................................................................................................19

*In re Gen'l Motors Corp.*,
  61 F.3d 256 (4th Cir. 1995) ...................................................................................................18

*J.L. v. Cuccinelli*,
  No. 18-CV-04914-NC, 2020 WL 2562895 (N.D. Cal. Feb. 20, 2020) ...................................17

*Johnson v. Robinson*,
  987 F.2d 1043 (4th Cir. 1993) ...............................................................................................17

*League of Women Voters of N.C. v. North Carolina*,
  769 F.3d 224 (4th Cir. 2014) .................................................................................................27

*Long v. Robinson*,
  432 F.2d 977 (4th Cir. 1970) .................................................................................................20

*Margarito Castanon Nava v. Dep't of Homeland Security*,
  C.A. 1:18-cv-03757 (N.D. Ill.), D.I. 239 ...............................................................................25

*Smyth v. Rivero*,
  282 F.3d 268 (4th Cir. 2002) .................................................................................................18

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*,
  404 F.3d 821 (4th Cir. 2005) .............................................................................................24, 26

*Young v. Fed. Deposit Ins. Co.*,
  103 F.3d 1180 (4th Cir. 1997) ...............................................................................................17

**Statutes**

8 U.S.C. § 1158(b)(3)(C) ...........................................................................................2

8 U.S.C. § 1158(c)(1) ...............................................................................................19

8 U.S.C. § 1158(d)(5)(A)(ii) .....................................................................................12

**Other Authorities**

8 C.F.R. § 208.9(b) ...................................................................................................12

Fed. R. Civ. P. 60(b) ...........................................................................................24, 26

## I.    INTRODUCTION

The Court-approved Settlement Agreement mandates that Defendants determine whether an asylum seeker is a Class Member and prohibits the removal of Class Members who have not received an adjudication by USCIS on the merits of their asylum application.  After Defendants removed a Class Member in March 2025 in violation of the Settlement Agreement, this Court issued a class-wide order on April 23 prohibiting Defendants from removing Class Members from the United States.  Nevertheless, Defendants continue to remove Class Members in violation of the Settlement Agreement and the Court's order.  Defendants have notified Class Counsel, after the fact, of ten removals of asylum seekers they identified as potential *J.O.P.* Class Members.  The parties' meet and confer, held on December 22, 2025 finally shed light on why these removals are occurring.  ICE fails to make any effort to discern Class membership ***before*** it removes noncitizens, despite the mandate that it do so in the Settlement Agreement.  And even where ICE places alerts in the records of Class Members identified by USCIS indicating that their removal is prohibited— an alert required by the Settlement Agreement—ICE concedes that it may have ignored the alert and removed Class Members anyway.

Class Counsel brings this emergency motion to enforce the Settlement Agreement on a class-wide basis and to hold Defendants in civil contempt.  This Court should order Defendants to (1) take all necessary steps to determine whether any individual Defendants seek to remove is a Class Member; (2) provide prompt, individual notice to detained Class Members of their rights under the Agreement; (3) undertake a comprehensive review to identify any other Class Members wrongfully removed; and (4) provide regular status reports regarding compliance with this Court's order.  These measures are necessary to remedy Defendants' continuing violations of the Settlement Agreement and the Court's April 23 Order and to prevent further unlawful removals of Class Members awaiting an asylum adjudication on the merits.

1

## II.     FACTUAL BACKGROUND

### A.     This Litigation and the Settlement Agreement

Young asylum seekers previously determined by the U.S. government to be unaccompanied children ("UCs") have the right to an asylum adjudication through a non-adversarial process before a USCIS asylum officer—regardless of the posture of any immigration court removal proceedings. 8 U.S.C. § 1158(b)(3)(C). The parties ultimately reached a Settlement Agreement in this case honoring that right for Class Members, ECF No. 199-2, which the Court approved in November 2024. ECF No. 205. Indeed, a core protection for Class Members under the Agreement is the requirement that "USCIS will exercise Initial Jurisdiction over Class Members' asylum applications in accordance with the terms of this Settlement Agreement and adjudicate them on the merits." ECF No. 199-2 at 6, § III.B. Other provisions of the Agreement are designed to prevent actions by Defendants that would contravene USCIS's exercise of its initial jurisdiction. Directly at issue in this motion is Section III.I of the Agreement, which provides:

> With respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement. In order to comply with this provision, ICE Enforcement and Removal Operations (ERO), the agency responsible for executing removal orders, will make an entry indicating there is a stay in its system of records for all identified Class Members, including Class Members identified by USCIS. This alert will not be removed from any individual case until such time as USCIS indicates it is appropriate to remove it.

*Id.* at 8-9. In short, ICE cannot remove a Class Member whose asylum application is pending with USCIS. *Id.* To effectuate this prohibition on removal of Class Members, the Settlement Agreement mandates that Defendants identify Class Members, and requires ICE to make an entry in its system indicating the stay of removal for each identified Class Member. *Id.* This entry cannot be removed until USCIS indicates doing so is appropriate; *e.g.*, after the Class Member is afforded an adjudication on the merits of their asylum application. *Id.*

2

**B.      Class Counsel's First Motion to Enforce the Settlement Agreement After Defendants Removed Class Member Cristian in Violation of Section III.I**

Not even four months after the Settlement Agreement was approved by the Court, Defendants removed Cristian, a 20-year-old from Venezuela, without affording him an adjudication by USCIS on the merits of his asylum application. ECF No. 227-1. Defendants removed Cristian to a maximum security prison in El Salvador, where he was held incommunicado and, as Class Counsel later learned, he was subjected to abuse and torture. ECF No. 363. And they did so despite receiving written notice from Cristian's immigration counsel that he was a *J.O.P.* Class Member with a pending asylum application and that the Settlement Agreement prohibited his removal. ECF No. 371-1 Ex. A. Class Counsel brought a motion to enforce the Agreement, seeking individual and class-wide relief, ECF No. 227-1 at 15, which this Court granted on April 23, 2025. ECF No. 254. The Court's order required Defendants to facilitate the return of Cristian and prohibited Defendants from removing members of the certified Class.

**C.      Defendants Continue to Remove Class Members in Violation of the Settlement Agreement, Prompting Class Counsel's Second Motion to Enforce**

Since the Court's April 23 class-wide order, Defendants have disclosed to Class Counsel ten other removals of "potential" Class Members in violation of the Agreement.[1] On April 25, 2025, Defendants informed Class Counsel that they had removed asylum seeker B.A.G., whom Class Counsel confirmed after investigation is a *J.O.P.* Class Member and was removed by Defendants without being afforded an adjudication on the merits of his asylum application. ECF

---

[1] After investigation, Class Counsel learned that two of individuals disclosed by Defendants (one in July 2025 and one on September 29, 2025) had filed their asylum applications while under the age of 18 and without having a parent or legal guardian "available" and as a result were not *J.O.P.* Class Members. ECF No. 428-3 at 2 ¶ 6 n.1. Thus, while their removals were unlawful, their right to a USCIS asylum adjudication derived from the statute rather than the *J.O.P.* Settlement Agreement.

3

Nos. 428-4, Ex. C; 428-3 at 2 ¶ 5.  On September 29, 2025, Defendants informed Class Counsel that they had removed six additional "potential class members" in May and June of 2025.  ECF No. 428-4, Ex. A.[2]  Defendants offered scant details on the six cases, failing to provide current contact information for the young people or to respond to many of Class Counsel's questions—posed orally at an October 10 meet and confer and in writing that same day—regarding Defendants' procedures for complying with Section III.I of the Settlement Agreement in order to assess what further measures are needed to achieve compliance.

On November 3, 2025, Class Counsel filed a Second Emergency Motion to Enforce the Settlement Agreement, ECF No. 428, requesting that the Court order specific remedies to prevent further removals of Class Members in violation of the Agreement: that Defendants provide a detailed and ongoing accounting of their procedures for complying with the removal prohibition; that Defendants provide prompt, individual notice to detained Class Members of their rights under the Agreement; and any further preventative or remedial measures the Court deems appropriate. *Id.*  Defendants opposed the motion, arguing among other things that Court intervention was premature and asserting that only USCIS was responsible for identifying Class Members and that it would be "burdensome" for ICE to identify Class Members and notify them of their rights.  ECF Nos. 438 at 8; 438-2 at 7 ¶ 23.  On the same day they filed their opposition, Defendants disclosed two more removals of "potential" Class Members in violation of the Agreement.  ECF No. 438-1.

On November 20, 2025, the Court denied Class Counsel's motion without prejudice, concluding that it was premature and giving Defendants until November 28, 2025 to provide a

---

[2] Because of Defendants' failure to provide current contact information, Class Counsel was initially able to make contact only with the former immigration attorneys of two of the six individuals, learning that one—E.P.P.—was a Class Member who was removed in violation of the Agreement, while a second met the statutory UC definition when he filed his asylum application and was thus not a Class Member, though his removal was unlawful.  ECF No. 428-3 at 2-3 ¶¶ 6-7 & n.1.

written response to Class Counsel's notice of noncompliance, after which a meet and confer must occur within 30 days. ECF No. 448. The Court ordered that the parties undertake a video and audio recorded meet and confer, to include "a robust and fact-specific discussion of the steps Defendants employ to identify Class Members and to enter a stay for those members in their system of records" as well as a "discuss[ion] [of] why those efforts failed in the cases of the individuals who were removed in violation of the Settlement Agreement." *Id.*

D.    **ICE Refuses to Identify Class Members Prior to Their Removal, and USCIS's Identification Procedures Are Woefully Inadequate**

On November 28, 2025, Defendants described their procedures for implementing Section III.I of the Agreement, once again asserting that only USCIS is responsible for identifying Class Members. Ex. 1.[3] Defendants also claimed that they "are unable to determine the precise circumstances that resulted in these seven potential class members being removed prior to an adjudication of their pending asylum application." *Id.* at 3.

According to Defendants, rather than undertake any identification of Class Members, ICE relies exclusively on USCIS lists of "potential" Class Members to decide for whom it will honor the stay provision in Section III.I. Ex. 1. USCIS's criteria for including an asylum seeker on a list are as follows: (1) USCIS marked the case at intake with a "special group code"[4] used only for those asylum applicants with prior UC determinations who are in removal proceedings at the time the code is placed; (2) the person is a principal applicant (as opposed to a dependent of a principal

_____

[3] Exhibits cited herein are attached to the Declaration of Kevin J. DeJong, filed contemporaneously with this memorandum. Pursuant to the Court's Nov. 20, 2025 Order (ECF No. 448), Class Counsel will also provide the Court with a copy of the recorded meet and confer held on Dec. 22, 2025 ("M&C Tr."). A copy will be provided on a USB drive, and a link will also be sent to chambers to access the file.

[4] During the December 22 meet and confer, Defendants confirmed that the initials for this code are "PRL." M&C Tr. at 0:18:25-0:18-37.

applicant); (3) their asylum application was filed on[5] or before February 24, 2025, and (4) their asylum application remains pending with USCIS. Ex. 1 at 2. According to Defendants, the USCIS Class lists are overinclusive, as they may include minors who had no parent or legal guardian available at the time of filing their asylum applications and thus do not meet the Class definition. *Id.* The lists are also underinclusive, in that they exclude Class Members whose removal proceedings had not been initiated when they applied for asylum, as well as those whose applications USCIS erroneously rejected for lack of jurisdiction. Ex. 4 at 3.

USCIS sends these lists to ICE on a monthly (or, more recently, biweekly) basis. *Id.* at 2. Defendants claim that, for those who appear on a list sent by USCIS, ICE updates its system of records, known as the ENFORCE Alien Removal Module ("EARM"), by adding a banner and case comment. *Id.* at 3. The banner contains a stay of removal alert and directs questions to the ICE Office of the Principal Legal Advisor (OPLA); the case comment lists "multiple email contacts that ICE officers can use to get more information and clarification." *Id.*

The parties scheduled a meet and confer pursuant to the Court's November 20 order for December 22. At Defendants' request, on December 10, Class Counsel sent Defendants questions to be discussed at the December 22 meet and confer related to Defendants' procedures for identifying Class Members and effectuating the stay provision (some of which Class Counsel had first posed on October 10 but went unanswered), asking for a response by December 19. Ex. 4. On December 19, Defendants stated that they "d[id] not have additional answers to share" other than providing additional contact information for the immigration attorneys of two of the "potential" Class Members. *Id.* at 1.

---

[5] During the December 22 meet and confer, Defendants stated that the November 28 email's omission of those who filed on February 24, 2025, was a typo. M&C Tr. at 01:41:02-42.

As detailed below, at the parties' December 22 meet and confer, which lasted approximately two hours, Defendants described a process for identifying Class Members that does not comply with the Settlement Agreement, and offered no explanation as to exactly why potential Class Members were removed.

### 1. Defendants Cannot (or Will Not) Explain Exactly Why Class Members Were Removed

Defendants' explanations during the December 22 meet and confer for why their processes failed in the cases of the eight confirmed or potential Class Members[6] were troubling for a variety of reasons. Of eight removed potential or confirmed Class Members, only six had banners in Defendants' system of records indicating a stay. M&C Tr. at 00:05:33-00:05:42. Defendants could not explain why there was no banner for F.D.E., and did not know whether there was a banner for B.A.G. *Id.* at 00:06:37-00:06, 11:18-11:31. For the six who had banners prohibiting their removal, Defendants could not explain why they were nevertheless removed, stating that Defendants either did not place the banner until after the Class Member had been removed, or ignored the banner in the removal process. *Id.* at 00:05:43-00:06:10.

Defendants represented that USCIS periodically issues lists of "potential" Class Members. Ex. 1. But Defendants refused to investigate whether, and at what point, any of the eight were included on a class list sent by USCIS to ICE, stating that reviewing the lists would be "cumbersome." M&C Tr. at 00:09:33-00:09:56, 00:47:49–00:48:22, 00:52:02–0052:24.

---

[6] Class Counsel focused on eight confirmed or potential Class Members during the December 22 meet and confer: R.L.T., E.P.P., W.M.C., F.D.E., M.M.V., L.O.B., W.U.P., and B.A.G. Class Counsel sent Defendants a list of these eight Class Members with their corresponding set of initials prior to the meet and confer. The eight individuals are a subset of the ten total "potential" removed Class Members disclosed by Defendants, excluding just the two whom Class Counsel determined were not Class Members. At times, Defendants refer to "seven" potential Class Members, which refers to the aforementioned eight individuals minus Class Member B.A.G.

Defendants also could not answer Class Counsel's questions about whether DHS checked, prior to removing any of the eight young people, for a prior UC determination and an asylum application filed with USCIS by February 24, 2025. *Id.* at 00:29:25–00:34:21. Defendants maintain that no such action by ICE is required by the Agreement. *Id.* at 00:29:50-00:30:13.

Defendants also allege that some removed individuals apparently agreed to a removal order rather than awaiting an immigration court asylum adjudication while in ICE detention. *See, e.g.*, *id.* at 01:00:30-01:00:49, 01:01:10-01:10:19. For example, Defendants represented that Class Member E.P.P. "asked for a removal order," without acknowledging that USCIS had wrongfully rejected E.P.P.'s asylum application months earlier in violation of the Settlement Agreement. *Id.* at 00:35:35-00:36:39; *see also* ECF No. 456 at 3 (admitting in December 29 status report that USCIS's jurisdictional rejection of E.P.P.'s asylum application in March 2025, months before his removal, was "erroneous"). Defendants could not say whether ICE informed any of these young people, prior to removing them, of their right pursuant to the Settlement Agreement to have their asylum application adjudicated by USCIS. M&C Tr. at 00:45:37-00:47:36.

## 2. Defendants' Processes for Identifying Class Members Are Not Compliant with the Settlement Agreement

Defendants' processes for identifying Class Members are insufficient to prevent unlawful removals. Most fundamentally, ICE—the Defendant responsible for not removing Class Members—disclaims any responsibility for identifying Class Members among those it is preparing to remove, instead relying exclusively on lists of "potential" Class Members provided by USCIS. *See, e.g.*, M&C Tr. at 00:09:20-00:09:56, 01:33:05-01:33:52, 01:51:35-01:53:22. Defendants provided no assurance that ICE, prior to removing a noncitizen, checks to determine whether the noncitizen has a prior UC determination and whether they filed an asylum application with USCIS by February 24, 2025, instead maintaining that no such checks were required. *Id.* at 00:29:25–

00:31:19.  Defendants similarly did not answer Class Counsel's question[7] regarding whether ICE takes any steps to comply with Section III.I in response to a detained noncitizen identifying themselves as a *J.O.P.* Class Member, such as making a determination as to Class membership or making a stay entry in its system of records.  *Id.* at 01:33:56-01:36:38.

Defendants maintain that only USCIS has responsibility for identifying Class Members, and that ICE can rely exclusively on lists of "potential" Class Members provided by USCIS.  *Id.* at  00:09:20-00:09:56,  01:33:05-01:33:52,  01:51:35-01:53:22.    Even if this allocation of responsibility satisfied the Settlement Agreement's requirements—which it does not—the December 22 meet and confer revealed that USCIS's process is deficient for multiple reasons.  For one, USCIS's criteria for inclusion on the list excludes Class Members who were not in removal proceedings at the time they filed their asylum application with USCIS.  *Id.* at 0021:14-00:23:54. While Defendants suggested that the number of such excluded Class Members was likely minimal, Defendants' own data suggest that the number may be quite substantial.[8]  Defendants also admitted that, due to coding errors, some Class Members were erroneously excluded from the list until USCIS later discovered the mistake.  *Id.* at 00:20:13-00:21:35.  Further, Defendants had no information about how long it took ICE, after receiving a list from USCIS, to input the banner in its system indicating a stay of removal,  *id.* at 00:38:24-00:41:03, acknowledging that such delayed

---

[7] During the December 22 meet and confer, Defendants' counsel agreed to seek answers to several questions from the Defendant agencies, but have not since provided further information.  M&C Tr. at 00:51:12-19, 43-50, 01:06:45-56.

[8] *See* Ex. 5, DHS Office of Inspector General, *Management Alert - ICE Cannot Monitor All Unaccompanied Migrant Children Released from DHS and U.S. Department of Health and Human Services' Custody*, OIG-24-46, at 1; Ex. 6, DHS Office of Inspector General, *Final Report - ICE Cannot Effectively Monitor the Location and Status of All Unaccompanied Alien Children After Federal Custody*, OIG-25-21,  at 4.

placement could have caused removals of six potential or confirmed Class Members, *id.* at 00:05:33-00:06:09, 00:47:37-56, 00:52:02-23.

Despite these plainly deficient and underinclusive processes for identifying Class Members, Defendants confirmed during the meet and confer that they had not conducted any affirmative review to identify other removed Class Members. *Id.* at 01:29:18-01:31:29. Instead, Defendants disclosed that the removals of the eight individuals came to their attention during the course of USCIS adjudicating the individuals' asylum application. *Id.* at 00:42:00-00:45:20.

### 3.  Defendants Refuse to Return Removed Class Members to the Status Quo Prior to Removal

Defendants' responses during the December 22 meet and confer regarding how they would treat wrongfully removed Class Members who choose to return were also problematic. While Defendants conceded, as they must, that they are required to facilitate the return of any wrongfully removed Class Member who opts to return, they refused to provide assurances that they would return such Class Members to the status quo ante and abide by the Agreement's requirement to afford them an adjudication by USCIS on the merits of their asylum application, in two specific ways. First, Defendants refused to confirm that Defendants will not reject a returned Class Member's asylum application as "abandoned" due to their wrongful removal from the United States. Instead, they simply stated that "USCIS will follow the procedures on abandonment that apply to all affirmative asylum applicants that can be found in the Affirmative Asylum Procedures Manual." *Id.* at 00:57:20-45. That manual states that "USCIS presumes that an applicant has abandoned their asylum application" if "[t]he applicant departs the United States without first obtaining advance parole." Ex. 2 (AAPM) at 12. While the presumption is rebuttable, applying it to returned Class Members due to their wrongful removal does not restore them to their pre-breach position where the burden of rebuttal did not apply.

10

Second, Defendants did not answer Class Counsel's question regarding whether USCIS would apply a December 2, 2025 policy prohibiting all USCIS asylum adjudications to any wrongfully removed Class Member who chooses to return, asserting that the policy is "outside the scope of the Agreement."  M&C Tr. at 01:05:40-01:07:20; *see* Ex. 3 (hereinafter "No Asylum Adjudications Policy").  Class Counsel reiterated the view, expressed previously in email correspondence, that applying the No Asylum Adjudications Policy to Class Members violates the Agreement, under which Class Members are entitled to an adjudication by USCIS on the merits of their asylum application, Section III.B, and can request an expedited adjudication for specified reasons including if they are in immigration detention, Section III.G.  M&C Tr. at 01:05:40-1:06:56.  Class Counsel further noted that whether Defendants would apply the No Asylum Adjudications Policy to returned Class Members was particularly relevant given that Defendants have indicated that they will detain these Class Members; applying the Policy would thus cause their indefinite detention.  *Id.* at 1:06:46-1:07:20.  Knowing whether they would be entitled to a prompt asylum adjudication from detention pursuant to Sections III.B and III.G of the Agreement, or whether they would instead return to indefinite detention with no asylum adjudication, is a critical piece of information any wrongfully removed Class Member would need to make an informed decision about whether to return to pursue their rights under the Agreement.

## III.    ARGUMENT

Defendants continue to violate the Settlement Agreement and the Court's April 23 Order by removing Class Members without providing them an adjudication on the merits of their asylum application.  The removals are no surprise, given that ICE also violates the Agreement's mandate to identify Class Members prior to removal.  In view of Defendants' past and continuing violations, the Court should find Defendants in civil contempt of the Court's order granting final approval of the Settlement Agreement (ECF No. 205) and of the Court's April 23 Order to stop removing Class

11

Members (ECF No. 254).  In addition, to force Defendants to comply with the Settlement Agreement and prevent further unlawful removals of Class Members, the Court should issue remedial orders pursuant either to its authority to enforce or modify the Settlement Agreement, or the Court's inherent authority to remedy civil contempt.

### A.    Defendants Continue to Violate the Settlement Agreement and the Court's April 23, 2025 Order

#### 1.    *Defendants' Removals of Class Members Are Violations of the Settlement Agreement*

Section III.I of the Agreement begins with a straightforward command: "ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination" on the Class Member's asylum application.  ECF No. 199-2 at 6, 8, Sections III.B, III.I.  The Court has already confirmed that the Settlement Agreement means what it says: ICE may not remove a Class Member from the United States unless and until USCIS affords the Class Member an adjudication on the merits of their asylum application.[9]  ECF No. 253 at 9-11.  Thus, Defendants cannot proceed with a removal, then ascertain Class membership after removal; nor can Defendants comply with their obligations by putting their head in the sand as to whether an individual designated for removal is a Class Member.

Nonetheless, Defendants have admitted to removing multiple asylum applicants who may be Class Members, without affording them an asylum merits adjudication by USCIS.  At least two of the eight "potential" *J.O.P.* Class Members are, in fact, Class Members.  ECF No. 428-3, Scholtz Decl. at 1-3 ¶¶ 4-7.  Those removals violated the Settlement Agreement.  Despite their obligation

---

[9] The Agreement defines "adjudicate on the merits" to mean "render a decision on the substance of an asylum claim by either granting an approval or issuing a determination of non-eligibility." *Id.* at 3, Section II.B.  A USCIS merits adjudication involves, *inter alia*, a non-adversarial interview during which the asylum applicant has a right to testify and to provide other supporting testimony and documentary evidence to establish asylum eligibility.  *See, e.g.*, 8 U.S.C. § 1158(d)(5)(A)(ii); 8 C.F.R. § 208.9(b); ECF. No. 428-4, Ex. D (Asylum Manual § II.J).

in the Settlement Agreement to identify Class Members, and their access to extensive information about individual asylum applicants, Defendants have not verified Class membership for the other six removed asylum seekers, a tacit admission that any or all of the removals may violate the Settlement Agreement.  *Id.* Moreover, well after Class Counsel alerted the Court to recurring removals of Class Members, ECF No. 418, Defendants admitted to having removed two more "potential" Class Members, ECF No. 438-1 (November 10, 2025 email from Defendants).  When they freely entered into the Settlement, Defendants undertook a duty to confirm that persons being removed are not Class Members—before removing them, not after.  By their own admission, Defendants have failed, and continue to fail, to meet this obligation.

<b>2.      <i>Defendants Are Also Not Complying with the Agreement's Procedural Requirements to Identify Class Members Prior to Removal</i></b>

The Agreement's stay of removal provision further mandates that, "[i]n order to comply with this provision":

> ICE Enforcement and Removal Operations (ERO), the agency responsible for executing removal orders, will make an entry indicating there is a stay in its system of records for all identified Class Members, including Class Members identified by USCIS.  This alert will not be removed from any individual case until such time as USCIS indicates it is appropriate to remove it.

ECF No, 199-2 at 8-9, Section III.I  Defendants have also violated, and are continuing to violate, these requirements of Section III.I in several areas: ICE takes no steps to identify Class Members and relies solely on identification by USCIS; USCIS's process for identifying Class Members prior to removal is admittedly deficient; and ICE's process for recording and abiding by the stay of removal is also admittedly deficient.

Paradoxically, Defendants acknowledge that they violate the Agreement any time ICE removes a Class Member prior to a USCIS asylum adjudication, while simultaneously disavowing any duty for ICE to identify Class Members or rule out Class membership before removing an

13

individual.  Specifically, at the December 22 meet and confer, Defendants admitted that "ICE relies on USCIS to identify Class Members and place the entry in its system."  M&C Tr. at 1:33:36-53, 01:56:57-01:57:21; *see also* Ex. 1 at 2 ("USCIS is the agency responsible for identifying *J.O.P.* class members.").  But the Agreement requires that ICE "will make an entry indicating there is a stay in its system of records for all identified Class Members, *including* Class Members identified by USCIS."  ECF No. 199-2 at 9, Section III.I (emphasis added).  To comply with that duty, ICE must *include* all Class Members identified by USCIS, but "including" is not synonymous with "only," so the duty is not limited *solely* to Class Members identified by USCIS. The stay of removal is mandatory regardless of whether the Class Member is identified by USCIS, which means the duty to identify Class Members is not exclusive to USCIS as Defendants claim. Bottom line: ICE must identify Class Members before removal, and they are not doing so.

Beyond ICE's failure to take steps to identify Class Members, ICE has also violated Section III.I of the Settlement Agreement by failing to make, retain, and heed the required entry memorializing the stay in its system of records for all identified Class Members.  Defendants acknowledge, as they must, that "[i]f someone that is a Class Member is removed, it is a violation, before they've received final adjudication, regardless of whether they self-identified or not, if they were identified by USCIS or not identified by USCIS."  M&C Tr. at 01:35:40-01:36:12. Nonetheless, Defendants could not say whether ICE takes any steps to comply with Section III.I when Class Members identify themselves to ICE or are identified to ICE by their counsel.  *Id.* at 01:36:16-01:36:40.  ICE is thus violating the Agreement's requirement to make an entry indicating a stay for all identified Class Members, irrespective of how they are identified.  Even for potential Class Members identified by USCIS, Defendants are uncertain how long ICE takes to make the required entry in its records, and admit that those entries may be removed inappropriately, made

14

*after* removal occurs, or even disregarded—thus defeating the purpose of the stay provision. *Id.* at 00:05:43-00:05:55, 00:51:06-00:52:20.

More broadly, Defendants admit that when ICE plans to remove individuals, "further checks beyond the information provided by USCIS is not done as a matter of course." *Id.* at 1:40:16-25. In Defendants' view, ICE can remove Class Members without violating the Agreement by keeping itself ignorant of the facts that determine Class membership. But the Agreement does not allow Defendants to rely exclusively on USCIS, nor does it allow ICE to remove individuals with impunity simply by not checking them for Class membership.

ICE's reliance on USCIS for identification of Class Members is even more alarming in view of the admitted inadequacies in USCIS's identification process. Defendants admit that some Class Members could have been omitted from the lists USCIS periodically generates due to "coding errors" during the USCIS intake process (*id.* at 00:18:25-19:01), or due to USCIS erroneously rejecting the application for lack of jurisdiction. Moreover, USCIS recognizes that by relying on its "PRL" code to generate the lists, it automatically excludes Class Members who applied for asylum before their removal proceedings were initiated when they applied for asylum, *id.* at 00:21:14-00:22:33, yet Defendants have not explained their failure to use a methodology that more accurately identifies Class Members, *id.* at 01:54:50-01:55:26.

In view of these many violations of the procedural requirements in the Settlement Agreement, additional removals of Class Members in violation of the Settlement Agreement are inevitable.

**B.    Defendants Should Be Held in Civil Contempt of the Court-ordered Settlement Agreement and the Court's April 23 Order**

Defendants' ongoing violations of the Settlement Agreement are not simply violations of an agreement—they are also in civil contempt of this Court's order approving and incorporating

15

the terms of the Settlement Agreement, and by removing more Class Members, in contempt of this Court's April 23 Order.  To establish civil contempt, each of the following elements must be shown: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).  Each element of civil contempt is met here.

First, the Settlement Agreement and the Court's April 23 Order are valid decrees for which Defendants had actual knowledge.  ECF No. 199-2.  Second, the Settlement Agreement was in the Class's favor, as Defendants do not contest that the Class was a prevailing party in this matter. ECF No. 333 at 2.  And the Court's April 23 Order was also in the Class's favor, as the Court ruled against Defendants to preclude them from removing more Class Members.  ECF No. 254.  Third, Defendants violated the terms of the Settlement Agreement by removing Class Members and by failing to abide by the procedural requirements to identify Class Members prior to removal and to set system alerts to prevent their removal.  *Supra* Sections II.B-D.  And Defendants violated the Court's April 23 Order by removing more Class Members.  *Supra* Section C.  These violations cannot be understated—Defendants have repeatedly violated a core protection of the Settlement Agreement without any conceivable justification, resulting in Class Members denied their rights and being sent to countries from which they are seeking asylum.  Moreover, Defendants had knowledge of their violations, at least as shown by their self-reporting of at least some of their removals.  ECF No. 428-3 at 6.  Fourth, Class Members have clearly suffered harm as a result of Defendants' violations, as they have been sent back to countries from which they are seeking asylum and have been denied their rights under the Settlement Agreement.  Accordingly,

Defendants should be held in civil contempt.  *Ashcraft*, 218 F.3d at 301; *J.L. v. Cuccinelli*, 2020 WL 2562895, at *3 (N.D. Cal. Feb. 20, 2020) (ordering USCIS in civil contempt for violating court order prohibiting removal of class members).

Defendants' purported willingness to facilitate the return of wrongly removed Class Members cannot cure Defendants' civil contempt.[10]  A remedy for civil contempt must be tailored to prevent future, ongoing violations, *infra* Section III.C., not to simply remedy past violations. Moreover, Defendants are well aware that, complications may arise in returning a Class Member to the United States, including Class Counsel's ability to contact removed Class Members.  Simply put, Defendants' offer does nothing to prevent further violations.

## C.    The Court Should Issue Remedial Orders to Prevent Additional Violations of the Settlement Agreement and the Court's April 23, 2025 Order

This Court can and should issue necessary remedial orders to force Defendants to comply with the Settlement Agreement and prevent further removal of Class Members, either pursuant to the Court's authority to enforce or modify the Settlement Agreement or pursuant to the Court's inherent authority to issue a remedy for civil contempt.

The Court's authority to issue remedial orders is made explicit in the Court-ordered Settlement Agreement—the Court has "exclusive jurisdiction to supervise the implementation of th[e] Settlement Agreement and to enforce its provisions and terms."  ECF No. 199-2 at 12; *see Young v. Fed. Deposit Ins. Co.*, 103 F.3d 1180, 1194 (4th Cir. 1997); *Johnson v. Robinson*, 987 F.2d 1043, 1048 (4th Cir. 1993) (recognizing that courts have power to issue remedial orders to enforce a settlement agreement).  The "court's responsibility to ensure that its orders are fair and lawful stamps an agreement that is made part of an order with judicial imprimatur, and the

---

[10] Class Counsel reserves the right to seek relief, as needed, for any individual Class Member that was removed in violation of the Settlement Agreement and the Court's April 23 Order.

continuing jurisdiction involved in the court's inherent power to protect and effectuate its decrees entails judicial oversight of the agreement." *Smyth v. Rivero*, 282 F.3d 268, 282 (4th Cir. 2002), *overruled on other grounds by Stinnie v. Holcomb*, 77 F.4th 200 (4th Cir. 2023); *Duvall v. Hogan*, 2021 WL 2042295, at *13 (D. Md. May 21, 2021) ("Given the fact that the Court retains jurisdiction as to the case, in order to ensure compliance with the Agreement, devising a method to obtain compliance does not necessarily extend beyond the four corners of the Agreement.").

The Court also has "broad discretion" to craft a remedy to coerce Defendants into compliance with the Settlement Agreement and the Court's April 23 Order. *In re Gen'l Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995); *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020) ("The essence of civil contempt . . is to coerce" compliance with judicial orders."). Civil contempt remedies should be "designed to compel future compliance with a court order." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994); *In re Gen'l Motors Corp.*, 61 F.3d at 259; *Concerned Citizens of Bridesburg v. City of Philadelphia*, No. CIV.A. 85-14, 1987 WL 6013, at *4 (E.D. Pa. Jan. 28, 1987) ("the purpose of a civil contempt proceeding is to bring about future compliance with an order of court");  Further, the Court is not limited to monetary remedies, and may issue injunctive relief to coerce compliance. *See, e.g., Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 617 (D. Md. 2017).

To force Defendants to comply with the Settlement Agreement and prevent further removal of Class Members, Defendants should be ordered to: (1) take all necessary steps to determine whether any individual Defendants seek to remove is a Class Member; (2) provide prompt, individual notice to detained Class Members of their rights under the Agreement; (3) undertake a comprehensive review to identify any other Class Members wrongfully removed; and (4) provide regular status reports regarding compliance with this Court's order.

18

### 1.    *Defendants—Including ICE—Should Be Required to Identify Class Members They Intend to Remove*

Defendants, including Defendant ICE, should be required to identify Class Members they intend to remove.  Specifically, before the removal of any person with a prior UC determination, Defendants should be ordered to take all necessary steps to determine whether that individual is a Class Member.  This must include but is not limited to determining if the individual filed an asylum application with USCIS by February 24, 2025 that has not been adjudicated on the merits.  The order should require that if Defendants determine that an individual with a prior UC determination whom they seek to remove did file an asylum application with USCIS on or before February 24, 2025 that has not been adjudicated on the merits, Defendants must not remove that individual unless and until USCIS: (1) completes the adjudication of the asylum application on the merits[11]; or (2) confirms that the individual is not a Class Member.

To be clear, the Settlement Agreement already mandates that Defendants take these steps, *see supra* Sections III.A-B, and given Defendants' refusal to do so, the Court is well within its authority to order compliance with the Agreement.  *See Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance.  Once entered, a consent decree may be enforced.").  As explained above, the Court's authority to issue remedial orders is made explicit in the Court-ordered Settlement Agreement—the Court has "exclusive jurisdiction to supervise the implementation of th[e] Settlement Agreement and to enforce its provisions and terms."  ECF No. 199-2 at 12, Section V.A.  Accordingly, the Court should order Defendants to comply with the Agreement, as set forth above.

---

[11] Of course, if USCIS grants the Class Member asylum then their removal to their country of nationality or last habitual residence remains barred under a generally applicable provision of the immigration law.  *See* 8 U.S.C. § 1158(c)(1).

ICE refuses to comply on grounds of administrative burden.  That is no excuse for failure to comply with a Court-ordered Settlement Agreement.  *See Long v. Robinson*, 432 F.2d 977, 980 (4th Cir. 1970) (administrative burdens, "however substantial, in terms of money, time and energy necessarily expended" were insufficient to stay a court order).  Moreover, in opposing Class Certification, Defendants complained about the administrative burden in identifying Class Members, ECF No. 126 at 12-14, but nonetheless agreed to the Settlement Agreement's Class definition and mandate to identify Class Members.  They should be held to their end of the bargain.

The Court may also order the requested relief as a remedy for Defendants' ongoing contempt.  By pausing the removal of young people until Defendants can establish whether they are Class Members, the Court will put an effective halt to removals that violate Section III.I of the Agreement.  Had Defendants complied with the Agreement and adopted this approach from the start, none of the eight potential Class Members now banished from the United States would have been removed.  And assessing whether a young person has a prior UC determination and whether they filed an asylum application with USCIS on or before February 24, 2025 that has not been adjudicated on the merits is an objective inquiry that ICE can complete by consulting DHS records.

Moreover, the relief Class Counsel proposes here respects the mechanism of cooperation between USCIS and ICE that Defendants embedded within Section III.I.  ICE is not tasked with the final determination of Class Membership for each Class Member but instead must simply refrain from removing the young person to allow USCIS to fulfill its role under the Agreement.  Indeed, communication between USCIS and ICE is explicitly called for in the Agreement.  *See* ECF No. 199-2 at 9, Section III.I (ICE ERO's "alert will not be removed from any individual case until such time as USCIS indicates it is appropriate to remove it").  Class Counsel's articulation of the two USCIS actions that would allow the removal to go forward hew to the Agreement: they

are the *only* permissible bases for USCIS to release a young person from Section III.I's protections. Whether through an asylum adjudication on the merits or based on another ground, only people who fall outside of the Class definition may be removed.[12]  For these reasons, the Court should issue the requested order requiring Defendants to identify Class Members they intend to remove.

### 2.    *Defendants Should Be Required to Provide Prompt Written Notice of the Right to a USCIS Asylum Adjudication to Detained Class Members*

To prevent further violations of the Agreement and its April 23 Order, the Court should also order Defendants to provide detained Class Members written notice of their rights under the Agreement.[13]  Those entitled to notice include the following categories of detained individuals: (1) those for whom there is a database entry (including a banner and/or case comment in EARM) indicating potential Class membership pursuant to Section III.I; (2) those whom USCIS has otherwise identified pursuant to Section III.I; and (3) those who were previously determined to be a UC and filed an asylum application with USCIS on or before February 24, 2025 which USCIS has not adjudicated on the merits—including but not limited to those people identified to DHS by themselves or their counsel.

The proposed notice remedy is narrowly tailored to address Defendants' deep-rooted violations of the Agreement—including removals that are nearly impossible to remedy after they occur.  Defendants admit that ICE may be removing Class Members in violation of the Agreement

---

[12] As acknowledged below, *see infra* note 15, in some limited circumstances Class Members could be lawfully removed after making a knowing and intelligent waiver of their right to an asylum adjudication by USCIS and their right to the related stay of removal under Section III.I.

[13] Class Counsel's proposed written notice, ECF No. 428-4, Ex. E, includes a placeholder on page 2 for information to be provided by Defendants related to Section III.G of the Agreement governing expedite requests.  To render notice meaningful, the Court should order that this notice be personally served: (1) on Class Members in detention on within 5 days of the Court's order (or sooner if DHS plans to remove the Class Member in fewer than 5 days); and (2) on all Class Members detained *after* the Court's order within 72 hours of their detention.

even if a system alert was put in place to prevent their removal. The requested notice is necessary as a further safeguard to try to prevent further wrongful removals of Class Members. Class Counsel does *not* request notice to the full universe of Class Members, but instead limits it to those Class Members most at risk of removal: those detained by DHS.[14] Without this notice, detained Class Members—many of them unrepresented by counsel—risk remaining unaware of their rights under the Agreement, including their rights to a USCIS asylum adjudication under Section III.B, to seek expedited adjudication from USCIS under Section III.G, and to a stay of removal under Section III.I. Providing notice will arm these Class Members with tools to advocate with USCIS and ICE to receive the Agreement's bargained-for benefits, rather than unnecessarily prolonged detention or a hasty and unlawful removal.[15] Notably, the need for this notice arose only after the Agreement was finalized. Defendants' flagrant failures to honor the Agreement makes this notice essential, as they cannot be trusted to provide these benefits to Class Members without prompting.

Because Defendants are obligated to invest time and resources to identify detained Class Members pursuant to the Agreement with or without the requested notice, *see supra* Section III.a.2, they cannot plausibly claim that notice requires unnecessary, elaborate processes that pose an undue burden. To comply with its obligation to identify Class Members and honor their bargained-for stays of removal, ICE must treat these young people with a level of attention beyond that required for other detained individuals. That this additional investment of time would include service of the requested notice to people already in their custody is unremarkable. Defendants tout

---

[14] In recent months, an increasing number of immigration attorneys have reported to Class Counsel that ICE has detained Class Members they represent. ECF No. 418.

[15] Notice would also, in appropriate circumstances after consultation with counsel, allow a Class Member to make a knowing and intelligent waiver of their rights under the Agreement. Defendants have asserted that some removed potential Class Members "requested their own deportation," *see, e.g.*, ECF No. 435 at 12, but they do not contend that any of these young people waived their right to a USCIS asylum adjudication or even knew that they held that right.

the level of sophistication at which ICE operates. *See, e.g.*, ECF No. 437-2 ¶¶ 2, 24, 27. That providing the requested notice might impact ICE's officer performance and overall efficiency in some fleeting way for a brief time should not outweigh Class Members' rights under the Agreement—particularly since ICE apparently chose to conserve its resources, in violation of the Agreement, by refusing to identify Class Members prior to their removal for the past 15 months.

The Court has authority to order this remedy, either (1) pursuant to the Court's authority to enforce or modify the Settlement Agreement or (2) as a remedy for Defendants' civil contempt.

*First*, "[g]iven the fact that the Court retains jurisdiction as to the case, in order to ensure compliance with the Agreement," the Court may "devis[e] a method to obtain compliance," even if the requested relief is not made explicit in the Agreement. *Duvall*, 2021 WL 2042295, at *13. In *Duvall*, in view of the defendants' non-compliance with a settlement agreement and the "obligation of the Court to ensure compliance with the agreement," the court issued an order for defendants to set "internal deadlines for the defendants' compliance" and "to draw up a detailed plan and timeline for compliance," despite the agreement's silence on any such deadlines, detailed plan, or timeline. Here too, the Court must ensure compliance with the Settlement Agreement, ECF No. 199-2 at 12, Section V.A, and an order for Defendants to provide notice to Class Members of their rights is a necessary remedial order to ensure compliance with the Agreement. *See also Concerned Pastors for Soc. Action v. Khouri*, 658 F. Supp. 3d 495, 502 (E.D. Mich. 2023) (ordering notification to city residents as a "sensible enforcement device to see that the City's performance of its part of the agreement is achieved").[16]

---

[16] The Court may also order modification of the Agreement pursuant to Fed. R. Civ. P. 60(b) to mandate such notice. Defendants' repeated removals of Class Members, and failure to even

*Second*, in view of Defendants' civil contempt, the Court has broad discretion to force Defendants to provide the requested notice in order to achieve compliance with the Settlement Agreement and the Court's April 23 Order.  *Schwartz*, 261 F. Supp. 3d at 617.  In short, forcing Defendants to provide notice would necessarily coerce them into identifying Class Members prior to their removal, which they are obligated to do under the Settlement Agreement.

### 3. *Defendants Should Be Ordered to Provide a Retrospective Accounting and Ongoing Reporting Regarding Their Compliance with Section III.I of the Settlement Agreement*

The string of violations Defendants have disclosed to date may be the tip of an iceberg.  Defendants have failed to ascertain the number of Class Members removed in violation of the Settlement Agreement, confirming that they have not undertaken any review for wrongfully removed Class Members. M&C Tr. at 01:29:18-01:31:29.   With Defendants' initial list of potential Class Members containing 74,000 names, *id.* at 00:20:13-20:23, and given the admission that ICE executes removal orders without ruling out Class Membership, *id.* at 01:39:56-01:40:25, it is a near certainty that violations have occurred well beyond the pool of ten cases identified by Defendants.  Now is the time for Defendants to ascertain the damage so that any other removed Class Members have the opportunity to return to the United States.

Defendants must facilitate the return of any wrongfully removed Class Member who chooses to return to the United States and restore them to the status quo ante.  ECF No. 254 at 2.

---

properly identify Class Members, is an unanticipated and substantial change of circumstances that warrants modification. *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 831 (4th Cir. 2005) ("Defendants' lack of compliance with their obligations under the Consent Decree was an unanticipated and substantial change of circumstance" that warranted modification of decree). Furthermore, "[o]nce a court has determined that changed circumstances warrant a modification in a consent decree, the focus should be on whether the proposed modification is tailored to resolve the problems created by the change in circumstances." *Id.* Here, the proposed modification to require notice to Class Members is narrowly tailored to resolve the problem created by the change in circumstances—notice would prevent further removals of Class Members.

24

Yet Defendants cannot return wrongfully removed Class Members unless and until they identify them, and Defendants cannot identify the full universe of these Class Members until they engage in a comprehensive review dating back to November 25, 2024.

Defendants admit that USCIS identified the eight Class Members' wrongful removals months after they occurred in the course of processing their asylum applications. M&C Tr. at 00:41:15-45:20. Had it not been for USCIS commencing its adjudication of these particular asylum applications, Defendants would have never identified and reported the removals to Class Counsel. No doubt there are removed Class Members whose applications remain untouched by USCIS, and thus their unlawful removals go unrecognized. Despite these eight Class Members signaling the tip of an iceberg, Defendants have avoided a comprehensive review to identify all removed Class Members—which the Court has authority to order them to conduct in order to enforce the Settlement Agreement. *See, e.g.*, *Adkins v. Arvinger*, 2023 WL 9658178, at *2 (E.D. Va. Oct. 31, 2023) (ordering filing of a status report "regarding the status of Defendants' compliance with the Consent Judgment"); *Margarito Castanon Nava v. Dep't of Homeland Security*, C.A. 1:18-cv-03757 (N.D. Ill.), D.I. 239 (ordering equitable relief for ICE to identify individuals arrested in violation of the terms of a settlement agreement) (attached as Ex. 8). In short, in order to enforce the Settlement Agreement, the Court must first know the full extent of Defendants' violations. Without Court intervention, Class Members suffer in the shadows.

The Court has inherent authority to order a retrospective accounting in order to enforce the Settlement Agreement based on its supervisory jurisdiction. In addition, and independently, the Court may also order a retrospective accounting in order to coerce Defendants to comply with the Settlement Agreement and the Court's April 23 Order. If Defendants identify all Class Members previously removed, they may be incentivized to stop further removals or they could face yet

25

another retrospective accounting if further removals come to light.  Moreover, even if the Court were to conclude those sources of authority are inapposite, the Court may also order the relief as a modification of the Agreement pursuant to Fed. R. Civ. P. 60(b) in view of "changed circumstances." *Thompson*, 404 F.3d at 831.  Defendants' repeated removals of Class Members, and failure to even properly identify Class Members, is an unanticipated and substantial change of circumstances.  Here, the identification of other removed Class Members is precisely tailored to address Defendants' previous violations of the removal of those Class Members.  An affirmative review of all potential Class Members removed since November 25, 2024 is especially important given USCIS's No Asylum Adjudications Policy, which Class Counsel understands is being applied to Class Members.  Because USCIS has halted the adjudication of all asylum applications, USCIS will not bring to light any more wrongfully removed Class Members to ICE via their adjudications process.  Thus, without an order from this Court to conduct an affirmative and comprehensive review, other wrongfully removed Class Members will be left without a remedy.

While Class Counsel takes no position on how Defendants should engage in its review to identify all removed Class Members, time is of the essence.  Class Members have been removed to countries from which they claimed asylum and may be facing persecution or torture—including the same harm that led them to flee to the United States in the first place, an outcome that Sections III.B and III.I of the Agreement are designed to prevent.  Moreover, the longer Class Members are outside the United States, the more difficult it will be for Class Counsel to establish contact, especially given the scant contact information Defendants have thus far provided.  Assuming Class Counsel reaches a removed Class Member and the removed Class Member wishes to return to the United States, Defendants will require time to prepare and plan their return.  These factors support

the Court exercising its authority to enforce the Agreement, or modify the Agreement, by requiring

Defendants to promptly conduct a review for all wrongfully removed Class Members.

### 4. Defendants Should be Ordered to Restore Removed Class Members to the Status Quo Prior to Removal

For any Class Member removed in violation of the Settlement Agreement, Defendants

must comply with their obligations to restore those who wish to return to the United States to the

status quo ante vis-a-vis USCIS's adjudication of their asylum application. ECF No. 253 at 13-

14. The status quo ante requires a return to the "last uncontested status between the parties which

preceded the controversy." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224,

236 (4th Cir. 2014). This Court affirmed in an earlier order that the status quo ante for wrongly

removed Class Member Cristian meant restoring him to his position before Defendants' breach of

the Settlement Agreement. ECF No. 449 at 14. This same rule must apply to other wrongly

removed Class Members, whose interests are indistinguishable from Cristian's.

Yet Defendants have signaled that they intend to undermine the merits of returned Class

Members' asylum claims in two significant ways instead of restoring them to the status quo

ante. First, Defendants have refused to confirm that USCIS would not apply its No Asylum

Adjudications Policy to Class Members, and the logical inference of that declination is that

Defendants intend to apply it.[17] However, Defendants have repeatedly stated that they will detain

returned Class Members. If Defendants apply the No Asylum Adjudications Policy

to detained Class Members, their access to Section III.B of the Agreement will be indefinitely

delayed and requests for an expedited adjudication under Section III.G ignored. Violations of

---

[17] Just this week, Defendants "maintain[ed] that the December 2, 2025 memorandum [setting forth the policy] is not relevant to the settlement agreement, and does not in any way violate the settlement agreement." ECF No. 458 at 3.

27

Section III.B and Section III.G of the Agreement will in turn translate into indefinite detention of Class Members. In essence, a Class Member may invoke Section III.G as a protection from the distress of detention, but the No Asylum Adjudications Policy stands to destroy this protection.

Second, even if Defendants do not invoke the No Asylum Adjudications Policy against Class Members, Defendants will apply the AAPM abandonment provision to returned Class Members's asylum claims. M&C Tr. at 00:57:20-45. An abandonment finding is far from an adjudication on the merits pursuant to Section III.B of the Agreement. Instead, USCIS "presumes that an applicant has abandoned their asylum application" by departing the United States without the government's advance consent to depart and return. ECF No. 227-2 Ex. 2 (USCIS, Affirmative Asylum Procedures Manual III.D). The mere existence of these specific departure facts allows USCIS to prejudge the asylum claim and force the applicant to prove that they have overcome the presumption of abandonment by a preponderance of evidence before proceeding with an adjudication on the merits. *Id*. In fact, a presumption of abandonment is no different from Defendants' prior "indicative ruling" strategy that this Court has already rejected. Both prejudge the outcome of the asylum proceeding and deprive Class Members of the bargained-for asylum adjudication process that the Agreement requires for Class Members.

Defendants apparently intend to apply both the No Asylum Adjudications Policy and the presumption of abandonment to returned Class Members despite the Defendants' but-for causation role in creating the circumstances that render Class Members susceptible to those policies. But for Defendants' violation of this Court's orders, Class Members would have received a USCIS adjudication on the merits prior to their removal and this adjudication would have preceded the No Asylum Adjudications Policy or any new policies targeting asylum adjudications. But for Defendants' violation of this Court's orders, the Class Members would not have

forcibly departed the United States without an asylum adjudication of the merits and, absent a departure, the AAPM abandonment provision is not at play.  Indeed, this Court's reasoning that Class Member Cristian who was not in the United States "to receive the [bargained-for asylum adjudication] process only because the Government removed him" equally applies to other removed Class Members.  Ex. 7 (May 6, 2025 Hearing Tr.) at 31:12.

As this Court has recognized, "process is important" and the status quo ante requires Defendants provide returned Class Members with the specific process included in the Agreement.  *Id.* at 30:15.  Any attempt by Defendants to curtail or bypass the specific process through a new policy or irrelevant provision is contrary to the status quo ante.  Thus, Defendants cannot meet their court-ordered obligations to return Class Members to the status quo ante if they apply the No Asylum Adjudications Policy, the AAPM abandonment provision, and any other USCIS policy that deprives Class Members an adjudication on the merits.

### 5. *Defendants Should Be Ordered to Provide Ongoing Reporting Regarding Their Compliance With the Court's Order on This Motion*

Defendants' prior disregard for this Court's orders—even after admonition, ECF 440—makes the creation of a factual record of Defendants' compliance with the Court's orders necessary.  As such, the Court should order that Defendants report their compliance with any relief ordered in response to this motion.  *See, e.g.*, *Concerned Pastors*, 658 F. Supp. 3d at 508 (ordering compliance status reports in view of violations of settlement agreement).  First, the Court should require the Defendants to report on the status of their review to identify removed potential Class Members within 21 days of the Court's order.  The report should include: (1) the identities of potential Class Members removed since November 25, 2024; and (2) the number of cases reviewed and the number of cases remaining to be reviewed to ensure that all removed potential Class Members are identified.  If this review is not finished within 21 days, the Court should order the

29

Defendants to provide biweekly status reports until a responsible official certifies on Defendants' behalf that the review is complete and all removed potential Class Members have been identified. To ensure that Defendants provide a comprehensive list of removed Class Members, Defendants should include an aggregate list of removed Class Members in each biweekly status report with new identified Class Members highlighted from the rest.

Second, to ensure future violations of the Agreement are prevented, the Court should order Defendants to provide a declaration, from one or more individuals with personal knowledge, on a biweekly basis regarding: (1) All procedures used to identify Class Members, in particular when ICE detains individuals and when ICE prepares to remove individuals; (2) Defendants' provision of individual notice to detained Class Members, including the number of individuals provided such notice; and (3) any other information consistent with this Court's orders.

## IV.    CONCLUSION

Defendants violated the Settlement Agreement and the April 23, 2025 Order by removing Class Members from the United States without affording them an adjudication by USCIS on the merits of their asylum applications.  Defendants' conduct requires this Court's intervention to enforce Section III.I on a class-wide basis and to hold Defendants in civil contempt.  This Court should order Defendants to (1) take all necessary steps to determine whether any individual Defendants seek to remove is a Class Member; (2) provide prompt, individual notice to detained Class Members of their rights under the Agreement; (3) undertake a comprehensive review to identify any other Class Members wrongfully removed; and (4) provide regular status reports regarding compliance with this Court's order.

Dated: January 22, 2026

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project
30 S. 10th Street (c/o University of St. Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs and the Class*

*Admitted pro hac vice*