**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| _____ ) | |
| J.O.P., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 8:19-cv-01944-SAG |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY, *et al.* ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### DEFENDANTS' OPPOSITION TO CLASS COUNSEL'S EMERGENCY MOTION TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT AND TO FIND DEFENDANTS IN CIVIL CONTEMPT

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 1

      I.      J.O.P. Litigation and Settlement Agreement ......................................... 1

      II.     Instances of Removed Class Members ................................................. 3

      III.    Events Leading to December 22 Meet and Confer ................................. 4

ARGUMENT .................................................................................................................... 6

      I.      Defendants are Complying with the Terms of the Settlement Agreement and Have Taken Appropriate Steps to Address Instances of Alleged Non-Compliance. ........ 6

            A.    The Small Number of Self-Reported Improper Removals is not Indicative of Systemic Non-Compliance with the Settlement Agreement. ........................ 6

            B.    Defendants' Identification Procedures are in Line with the Settlement Agreement and Have Been Updated to Address Errors................................ 10

      II.     Plaintiffs' Motion for Civil Contempt is Frivolous and Unfounded.................... 12

      III.    Plaintiff's Requested Remedial Measures Should be Denied.............................. 15

CONCLUSION................................................................................................................ 19

CERTIFICATE OF SERVICE ....................................................................................... 1

## TABLE OF AUTHORITIES

### Cases

*Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113 (4th Cir. Apr. 7, 2025)...................... 7

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288 (4th Cir. 2000)................................................................ 13

*Concerned Pastors for Soc. Action v. Khouri*, 658 F. Supp. 3d 495 (E.D. Mich. 2023).............. 18

*Duvall v. Hogan*, No. ELH-94-2541, 2021 WL 2042295 (D. Md. May 21, 2021)...................... 17

*Ford v. Kammerer*, 450 F.2d 279 (3d Cir. 1971)........................................................................... 14

*J.G.G. v. Trump*, 147 F.4th 1044 (D.C. Cir. 2025)........................................................................ 7

*Johnson v. Robinson*, 987 F.2d 1043 (4th Cir. 1993) ............................................................ 16, 17

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992)....................................................... 18

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821 (4th Cir. 2005) ...................... 18, 19

*United States v. Joyce*, 498 F.2d 592 (7th Cir. 1974) ................................................................... 14

### Statutes

8 U.S.C. § 1158(b)(3)(C) ................................................................................................................ 2

### Rules

Fed. R. Civ. P. 60(b) ...................................................................................................................... 18

### Regulations

8 C.F.R. § 1208.2(b) ........................................................................................................................ 2

8 C.F.R. § 208.2(b) .......................................................................................................................... 2

**INTRODUCTION**

Plaintiffs continue to read terms into the parties' settlement agreement and ask this Court to dramatically expand their bargained-for relief. The settlement agreement established procedures for resolving issues related to both Defendants' Compliance Reports and for allegations of non-compliance. Defendants have gone above and beyond to follow these procedures, take the appropriate steps to remedy potential removals of class members, and communicate with Class Counsel. Notwithstanding Defendants' continued compliance with the settlement agreement, Plaintiffs attempt to expand the settlement agreement's provisions by requiring Defendants to submit to additional requirements for identification, reporting, and disclosure. Their motion for civil contempt is unfounded in the face of Defendants' good faith efforts to report potential violations and cure those violations by facilitating the return of any removed class members, if the class member wants to return. Further, Plaintiff's motion is based on a fundamental misunderstanding of the dispute resolution mechanisms of the settlement agreement. The requested remedial relief—in response to Defendants' self-reported errors—is unwarranted and burdensome where those errors account for only "a tiny percentage of the overall Class Members." Order Denying Plaintiffs' Motion to Enforce, ECF No. 448 at 1.

This Court should honor the actual bargain memorialized by the settlement agreement and deny Plaintiffs' motion.

**BACKGROUND**

**I.    J.O.P. Litigation and Settlement Agreement**

On July 1, 2019, four named Plaintiffs commenced this litigation to challenge the policies of U.S. Citizenship and Immigration Services ("USCIS") on Unaccompanied Alien

Children ("UACs"), and in particular how USCIS determined whether an applicant was a UAC at the time they filed their asylum application. The lawsuit specifically targeted a policy (embodied in a "2019 Redetermination Memo") under which USCIS would make its own factual determinations as to whether an asylum applicant was still a UAC at the time they filed their asylum application and would defer to the UAC findings of immigration judges for applicants in removal proceedings. Specifically, the 2019 Redetermination Memo addressed the competing jurisdiction of the immigration court under 8 C.F.R. § 208.2(b) and USCIS's initial jurisdiction under 8 U.S.C. § 1158(b)(3)(C), in Title 8 removal proceedings. 2019 Redetermination Memo, ECF 3 at 3; *see* 8 U.S.C. § 1158(b)(3)(C), 8 C.F.R. § 208.2(b), 8 C.F.R. § 1208.2(b).

Over the course of five years, the Parties, through counsel, conducted discussions and arm's length negotiations regarding a compromise and settlement "with a view to settling all matters in dispute." ECF No. 199-2 at 3, Section I.I. The agreement provides that the "class" is defined as:

> all individuals nationwide who prior to the effective date of the superseding memorandum discussed in Section III(A): (1) were determined to be a UAC; and (2) who filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits.

*Id.* at 4, Section II.E. Notably, the settlement agreement does not provide for or contain a comprehensive list of who the class members are in this case. Tr. May 6, 2025 Hearing 10:21-23.

Concerning specific relief, the agreement in relevant part provides that USCIS fully rescind the 2019 Redetermination Memo, assume initial jurisdiction of asylum applications

filed by individuals previously determined to be UACs, and issue a superseding memorandum implementing USCIS's obligations under the terms of the settlement agreement.  ECF No. 199-2 at 6, Sections III.A-B. As to Immigration and Customs Enforcement ("ICE"), the agreement specifies that ICE will generally refrain from taking certain positions in the removal proceedings of class members and generally take certain actions in the event a class member's asylum application is granted. *Id.* at 8, Sections III.H, J. Relevant to the motion at hand, the agreement specifies:

> With respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement. In order to comply with this provision, ICE Enforcement and Removal Operations (ERO), the agency responsible for executing removal orders, will make an entry indicating there is a stay in its system of records for all identified Class Members, including Class Members identified by USCIS. This alert will not be removed from any individual case until such time as USCIS indicates it is appropriate to remove it.

*Id.* at 9-10, Section III.I. The agreement also contains a compliance reporting requirement as to USCIS's obligations under the settlement agreement, *Id.* at 12, Section V.B.; specification for notice of the settlement agreement, *Id.* at 11, Section IV.E; and a dispute resolution mechanism in the event of alleged noncompliance with the Settlement Agreement. *Id.*  at 13, Section V.D.

## II.    Instances of Removed Class Members

As of this filing, Defendants have informed Class Counsel of the removal of ten potential class members in violation of the settlement agreement. Of those ten notifications, two were later confirmed by Plaintiffs to not be class members. Class Counsel's Second Emergency Motion to Enforce the Court-Ordered Settlement Agreement, ECF No. 428-2 at 9. The remaining have either been confirmed to be class members or potential class

members. ECF No. 428-2 at 14. The first notification of an erroneous removal under Title 8 of a potential class member occurred on April 9, 2025, and Class Counsel independently confirmed the potential class member did not wish to return to the United States. *Id*. at 9. On April 23, 2025, the Court ordered Defendants not to remove from the United States members of the certified class. ECF No. 254. The remaining notifications of erroneously removed potential class members under Title 8 occurred on September 29, 2025, and November 10, 2025. *See* ECF No. 428-4 Exh. A (filed under seal).

After reporting the potentially erroneous removals on September 29, 2025, Class Counsel reached out to request information on the removed aliens, Defendants and Plaintiffs met to discuss Plaintiffs' requests for information as to these six individuals. *See* ECF No. 429. On October 10, 2025, the parties conferred on Plaintiffs' request for information, during which Plaintiffs relayed a series of questions they wished answered for each possible class member removed. *Id.* On October 16, 2025, Defendants provided what contact information they had for each potential class member. *Id*. On November 10, 2025, Defendants informed Class Counsel of two more possible class members erroneously removed under Title 8 and provided what contact information they had for each individual. *See* ECF No. 438 at 8. Defendants have also provided contact information for the attorneys of record, if the alien had an attorney.

**III.    Events Leading to December 22 Meet and Confer**

On November 20, 2025, this Court properly denied a motion by Plaintiffs seeking judicial intervention to resolve the parties' disputes over the potential improper removals under Title 8, holding that the motion was premature "because the parties have not completed the process they agreed to follow in section V.D of their Settlement Agreement."

ECF No. 448 at 1. The Court recognized that the potential instances of non-compliance with the settlement agreement and April 23, 2025 Order involved "a tiny percentage of the overall Class Members." *Id*. Acknowledging that the next appropriate step under the settlement agreement was a meet-and-confer, the Court ordered that the meet-and-confer "include a robust and fact-specific discussion of the steps Defendants employ to identify Class Members and to enter a stay for those members in their system of records" and that "[t]he parties should also discuss why those efforts failed in the cases of the individuals who were removed in violation of the Settlement Agreement." *Id*.

On December 22, 2025, counsel for the Defendants provided exactly what the Court described: a two-hour, fact-intensive discussion on the removed individuals and agency procedures. In particular, Defendants provided discussion on the identification of class members. *See, e.g.*, Meet and Confer, December 22, 2025 ("M&C Tr.") at 0:04:02-0:08:25 (discussing the existence of banners in ICE's ENFORCE Alien Removal Module ("EARM")). Additionally, Defendants engaged in robust discussion of those record systems and why those efforts failed in the cases of those individuals who were removed. M&C Tr. at 0:09:20-0:34:30 (explaining the mechanisms for entry of removal banners into EARM, difficulties associated with updating EARM, and actions taken by Defendants to prevent erroneous removals—including increased frequency of data sharing between USCIS and ICE). On January 22, 2026, Class Counsel filed a third emergency motion to enforce the settlement agreement and additionally moved for civil contempt against Defendants in the instant matter. *See* ECF No. 459.

## ARGUMENT

**I.    Defendants are Complying with the Terms of the Settlement Agreement and Have Taken Appropriate Steps to Address Instances of Alleged Non-Compliance.**

Plaintiffs wrongly claim that the Defendants continue to violate the settlement agreement and the Court's April 23, 2025 Order. Class Counsel's Emergency Motion to Enforce the Settlement Agreement and to Find the Defendants in Civil Contempt, ECF No. 459. In doing so, they merely regurgitate the same arguments that this court already denied from Plaintiffs' Second Emergency Motion to Enforce. ECF No. 428. Their only additional factual assertions arise from the December 22, 2025 meet-and-confer, during which Defendants provided all information required under the settlement agreement and mandated by the Court's Order dated November 20, 2025. ECF No. 448. Despite the good-faith efforts of Defendants to resolve the dispute informally, Plaintiffs now seek judicial intervention relating to two separate allegations of non-compliance: first, the self-reported removals under Title 8 of eight potential class members, and second, allegations relating to class member identification procedures of Defendants USCIS and ICE. Plaintiffs fail to establish that either of these allegations represent bad faith or intentional acts of non-compliance meriting civil contempt or judicial modification of the parties negotiated settlement agreement.

### A.    The Small Number of Self-Reported Improper Removals is not Indicative of Systemic Non-Compliance with the Settlement Agreement.

Defendants self-reported a small number of improper removals in exceptional circumstances not fully anticipated by the settlement agreement. Defendants have been open in providing information about these removals. As previously submitted in Defendants' opposition to Plaintiffs' second motion to enforce:

6

> five of the seven potential class members who were removed requested removal to their home country during their removal proceedings, and they did so as legal adults. One even did so while represented by counsel at his removal proceeding. Four explicitly noted that they did not fear returning to their home country. Finally, six also waived appeal of their removal order.

ECF No. 438 at 7-8. Defendants provided additional details at the December 22 meet-and-confer relating to the erroneously removed potential class members and process that Defendants utilize to identify potential class members. *See* ECF No. 459-2 at 11. Defendants, in voluntarily reporting the removal of these potential class members to Plaintiffs, acknowledge that, assuming all are confirmed to be class members, these removals were done in violation.

Defendants have provided specific remedies on an individual basis, which is the proper method to rectify violations of both the settlement agreement and April 23, 2025 Order. *See* ECF 199-2 at 13, Section V.D. (providing for remedy to class members on an individual basis). Should any of the removed class members wish to return to the United States to await the adjudication of their asylum application, they may do so. *See Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *6 (4th Cir. Apr. 7, 2025) (Wilkinson, J. concurring) (noting that removed individuals "can be afforded effective relief by facilitation of their return"). This, however, requires the removed class members to wish to return in the first instance, which is not always the case. *See, e.g.*, ECF No. 428-2 at 9 ("However, the Class Member did not elect to pursue return to the United States based on the expectation that ICE would re-detain him if he did."); *see also J.G.G. v. Trump*, 147 F.4th 1044, 1060 (D.C. Cir. 2025) (noting "it is unclear whether the United States even could obtain custody over the detainees, who may wish to remain free in Venezuela rather than be detained in the United States pending further AEA litigation or INA removals"). To

that end, Defendants have provided Plaintiffs what contact information they have for each of the removed potential class members and their counsel of record, if available, so Class Counsel can determine whether the removed individual wishes to return to the United States. *See* ECF No. 429 (filed under seal). It is Defendants' understanding that Class Counsel is "attempting to contact the removed Class Members to ascertain" whether they wish to return or not. *See* ECF No. 428-2 at 13.

Despite all of this, Plaintiffs continue to assert that the mere fact that improper removals have occurred for a very small number of potential class members indicates that Defendants have breached the settlement agreement. In fact, the settlement itself explicitly anticipates that Defendants will encounter issues in execution. The parties even wrote and agreed to an entire paragraph in the agreement to address precisely this contingency. ECF No. 199-2 at 13, Section V.D. To eliminate any doubt about the purpose of that section, the parties named it "*Noncompliance* with This Agreement" (emphasis added). For Plaintiffs to assert that conduct by Defendants that the settlement anticipates somehow functions instead to breach the agreement is absurd on its face.

Plaintiffs also fail to reconcile their allegations of widespread intentional non-compliance with the fact that the settlement agreement did not provide a comprehensive list of class members and is silent as to whether Defendants may remove a class member with a pending asylum application who wishes to return home. *See generally* ECF No. 199-2. Plaintiffs acknowledge in their motion that "Class Members could be lawfully removed after making a knowing and intelligent waiver of their right to an asylum adjudication by USCIS and their right to the related stay of removal." ECF No. 459-2 at 21. Rather than evidencing some widespread fault in Defendants' compliance, these specific removals instead reflect

the fact that these individuals, as adults, individually requested permission to return home. The difficulties in identifying and applying the settlement agreement to class members are evident, as not all eight of the removed individuals which Plaintiffs identify as wrongfully removed by Defendants are even confirmed to be class members. *See* ECF 459 at 11, n.6. A small handful of errors in execution reflects the immense scale of removal proceedings handled by Defendants in the past year. *See* https://www.dhs.gov/news/2025/10/27/dhs-removes-more-half-million-illegal-aliens-us (DHS reporting that the agency has removed over half a million people from the United States this year). As the Court recognized, these removals represent "a tiny percentage of the overall Class Members." ECF No. 448 at 1. While acknowledging that removals of class members are noncompliant with the settlement agreement, whether or not USCIS correctly identified the individual, Defendants maintain that a few human errors or mistakes in marking are not systemic failures but rather isolated events that should be treated as such by the Court. This is especially true when Defendants have already offered a viable remedy for the mistakes—the facilitation of the return of the potential class members.

Plaintiffs though contend that Defendants' willingness to facilitate the return of the removed class members who opt to return is an insufficient remedy for violations. Instead, they seek to amend the agreement not only beyond the bargained for agreement but well beyond the scope of the underlying litigation by requesting that the Court order exceptions to the procedures set out in the Affirmative Asylum Procedures Manual and the brand-new December 2, 2025, policy pausing all USCIS asylum adjudications. ECF No. 459-2 at 10. Both of these policies are vastly beyond the scope of the settlement agreement and beyond the scope of the underlying litigation. As Plaintiffs acknowledge, the settlement agreement

entitles class members to an adjudication by USCIS on the merits of their asylum application. Section III.B places no restrictions on how long that adjudication may take. Class members remain able to request expedited adjudication for the reasons specified in Section III.G. As such, Plaintiffs' motion should be denied.

### B.    Defendants' Identification Procedures are in Line with the Settlement Agreement and Have Been Updated to Address Errors.

The settlement agreement does not explicitly require Defendants to engage in broad efforts to fully identify the class.[1] *See generally* ECF No. 199-2. Rather, the settlement agreement focuses on USCIS's obligations at certain points during the asylum-seeking process of class members; for example, the jurisdiction determination. *Id*. at 6, Section III.C.1. Defendants did not negotiate or agree to specific mechanisms for broad initial identification or notice to the class members, beyond certain specified groups such as those with active administrative stays. *See id*. at 8, Section III.F. As part of implementing the settlement agreement, USCIS does identify some class members in the course of the ordinary business of adjudicating their asylum applications. As disclosed at the December 22 meet-and-confer, this is how the self-reported potentially improperly removed aliens were identified. M&C Tr. 0:04:02-0:08:25. USCIS also prepares and sends ICE lists of potential class members every two weeks in order to facilitate compliance with Section III.I of the settlement agreement. M&C Tr. 0:08:48-0:09:42; 0:14:03-0:21:35; 0:37:34-55.

---

[1] While Plaintiffs' asserted section III.I of the Settlement Agreement requires ICE to affirmatively check with USCIS before a removal to ensure the subject alien is not a *J-O-P-* class member, *see* M&C Tr. at 0:29:30-0:34:30, the plain language of the agreement requires only that ICE "make an entry indicating there is a stay in its system of records for all identified Class Members, including Class Members identified by USCIS." ECF No. 199-2 at 10. Defendants explained that the banner system and bi-weekly list sharing fulfilled this requirement. *See* M&C Tr. at 0:04:02-0:08:25, 0:19:40-0:29:20.

10

Plaintiffs attempt to frame these lists as insufficient because they only identify "potential" members for marking pursuant to Section III.I. *See* ECF No. 459-2 at 13. But confirming each class member individually would "require automated and potentially manual confirmation processes" presenting a "substantial and burdensome workload." ECF No. 438-2, Defendants Exh. B, at ¶ 28 (filed under seal). These lists ensure both the broadest protection for the class and a tailored burden to ICE and USCIS in which manual confirmation processes only need to be conducted for those individuals identified for final removal.

In response to a small number of class members erroneously removed, USCIS updated its processes so that lists of identified potential class members are now provided to ICE every other week. *See* ECF No. 459-4 (Defendants' Email Response to Plaintiffs' Erroneous Removal Allegations) at 3 ("USCIS sent the report to ICE on a monthly basis until November 2025, when USCIS and ICE agreed that USCIS will provide the report to ICE biweekly."). This update on USCIS procedures was also discussed with Plaintiffs at the December 22 meet-and confer. *See* M&C Tr. at 0:04:02-0:08:25, 0:19:40-0:29:20. Plaintiffs ignore this fact and attempt to overextend the settlement agreement's plain language that requires ICE to enter stays for "all Class Members, including all Class Members identified by USCIS" as an affirmative obligation for ICE to independently investigate individuals for class membership. ECF No. 459 at 14; *see* ECF No. 199-2 at 9-10. This argument wholly disregards the next sentence of the agreement: "This alert will not be removed from any individual case until such time as USCIS indicates it is appropriate to remove it." *Id*. This sentence supports what Defendants maintain to be true based on the

real-world realities of implementing the settlement agreement—USCIS is the only Defendant well-positioned to identify class members.

Far from showing a violation of the settlement agreement, Plaintiffs' motion recognizes that Defendants do indeed have a methodology for noting identified class members in ICE's system. ECF No. 459 at 12-13. And that is all that is required by the settlement agreement. *See* ECF 199-2 at 9-10 (ICE "will make an entry indicating there is a stay in its system of records for all identified Class Members…"). Indeed, Defendants have gone above and beyond what the settlement agreement requires. Even though the agreement does not require them to do so, Defendants voluntarily informed Plaintiffs of the possible violations. Additionally, in an overabundance of caution Defendants informed Plaintiffs of two potential class members that were removed, which Plaintiffs later determined were not actually class members. If Defendants did not retain their own processes, Defendants would not have been able to identify and self-report the erroneous removal of these few potential class members in the first place. Defendants have and continue to operate in good faith to implement the settlement agreement.

## II.    Plaintiffs' Motion for Civil Contempt is Frivolous and Unfounded.

Once again, and without any legal basis, Plaintiffs request that this court hold Defendants in contempt. Plaintiffs lack any legal basis for the extraordinary measure of civil contempt and the Court should emphatically reject Plaintiff's position. In denying Plaintiffs' motion for criminal contempt last year, this Court found the "immense power [of contempt] must be exercised judiciously, and this Court does not find it to be a warranted exercise of its discretion here, where the violations of this Court's orders consisted of modest filing

delays and caginess about the content of the reports." ECF No. 449 at 12. This Court's findings ring true again here.

To establish civil contempt, each of the following elements must be shown: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result. *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).

Plaintiffs allege that Defendants should be held in civil contempt because they violated the terms of the settlement agreement and April 23, 2025 Order[2] with constructive knowledge of such violations. The alleged violations are (1) the removals of class members and (2) failure "to abide by the procedural requirements to identify Class Members prior to removal and to set system alerts to prevent their removal." ECF 459-2 at 20.

*First*, with regard to the removals of class members, the fact that Defendants self-reported the potential removals does not, as Plaintiffs allege, imply that the removals were intentional violations. As Defendants discussed during the December 22, 2025 meet-and-confer, these removals were discovered during the ordinary course of asylum application processing after the removals occurred. M&C Tr. 0:04:02-0:21:35. Defendants did not have

---

[2] Plaintiffs read the Court's April 23, 2025 Order overbroadly. Indeed, Plaintiffs suggest Defendants have violated the Court's order by: (1) self-reporting on individuals which Defendants believed were potentially removed in violation of the settlement agreement; (2) failing to affirmatively identify the potential class members prior to the removals; and (3) relying on USCIS—the sole agency responsible for adjudicating class member asylum applications—to identify potential class members. *See* ECF No. 254. Plaintiffs' attempts to read further affirmative requirements into the Court's April 23, 2025 Order are unwarranted by the plain language of the Order.

knowledge of the potential violations before or during the removals. Rather than demonstrating willful non-compliance, these self-reports are good-faith efforts of the Defendant to appropriately disclose potential non-compliance discovered after the fact to facilitate dispute resolution proceedings as established by the settlement agreement. Defendants' efforts to report on and remedy alleged violations have been repeatedly acknowledged by Plaintiffs. *See* ECF No. 419. Furthermore, as discussed *supra* in Section I.A., the settlement agreement expressly contemplates and provides for specific instances of alleged non-compliance. A motion for civil contempt is not an appropriate vehicle to challenge alleged non-compliance before the settlement agreement's dispute resolution proceedings have been fully exhausted; namely, a successful motion to enforce before this Court.

*Second*, Defendants maintain that USCIS and ICE's processes to identify class members are entirely compliant with the settlement agreement. It is "settled law that contempt will not lie for violation of an order of the court unless the order is clear and decisive and contains no doubt about what it requires to be done." *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974). "[A]mbiguities and omissions in orders redound to the benefit of the person charged with contempt." *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971). Plaintiffs may disagree with Defendants' understanding of the settlement agreement with regards to ICE obligations, but they cannot point to any Court order clearly supporting their view. Therefore, Plaintiffs attempt to create obligations not part of the parties' bargained-for exchange and then have the Court hold Defendants in contempt for those imagined provisions. The Court should reject this attempt and deny the motion to hold Defendants in civil contempt.

14

**III.    Plaintiff's Requested Remedial Measures Should be Denied.**

The settlement agreement does not support the duplicative, unnecessary, and burdensome remedies that Plaintiffs request. Throughout the implementation of this settlement, Defendants have made good faith efforts to report and correct potential instances of non-compliance. Even Plaintiffs have acknowledged Defendants' solid work in upholding the agreement. *See* ECF No. 419 (Plaintiffs' repeatedly acknowledging that Defendants have taken "corrective action" to fix alleged violations.). Despite the past thirteen months of availability to the enforcement proceedings established in Section V of the settlement agreement, Plaintiffs now at the eleventh hour seek broad changes to fundamental principles of the agreement, such as requiring written notice to all detained class members and extensive ongoing reporting. Such class-wide remedies are disproportionate to the "tiny percentage of the overall Class Members" impacted by the Defendants' self-reported improper removals. ECF No. 448 at 1. Furthermore, they would create a "substantial and burdensome workload" for both USCIS and ICE, leading to "operational bottlenecks and inefficiencies" and impacting overall performance. ECF No. 438-2, ¶ 23-28.

This Court has already expressed severe skepticism for Plaintiffs' requests for production of a list of removed class members, stating that such a request is beyond the scope of the settlement agreement. *See* Tr. May 6, 2025 Hearing, 10:24-11:5 (Court stating that Plaintiffs are asking to "read something into the agreement that isn't there with respect to language in a mechanism for getting a list of people removed or a list of class … It's not in the language of the agreement.") In requesting new notice and reporting requirements, Class Counsel seeks relief outside of the relief specifically negotiated by the parties.

As noted by the Court, the settlement by its terms limits the sorts of information that Defendants need to supply. The parties agreed that Defendants would supply information related only to compliance with Section III.A-G., as is made clear in Section V.B. By contrast, the status reports that Plaintiffs request relate to an entirely different section of the settlement, the internal systems and procedures covering Section III.I. *See* ECF No. 459-2 at 21-29. The settlement agreement does not contemplate investigations into the specific manner in which the Defendant agencies communicate with each other. Further, providing the information that Plaintiffs request concerning Section III.I. would be burdensome, especially with its requirement for a new report every two weeks. "The cumulative effect of these demands risks impacting officer performance and overall efficiency." *See* ECF No. 438-2, at ¶ 28.

The settlement agreement also already contains a provision for granting notice, Section IV.E. The new written notices that Plaintiffs request for all detained class members anticipate in-person service. *See* ECF No. 459-2 at 21. Not surprisingly, the new and intricate system that Plaintiffs now seek to impose would heavily burden Defendants and their employees. *See* ECF No. 438-2, at ¶ 23-28. They would disrupt work and impose bottlenecks and inefficiencies as Defendants sought to serve hundreds or thousands of individuals in a constrained time period. *Id.*

Plaintiffs still do not establish why the Court is permitted to grant additional, and substantially more burdensome, reporting requirements when the agreement was specifically drafted in a way that did not require such reporting. Tr. May 6, 2025 Hearing, 10:24-11:5. Precedent does not allow this Court to impose terms or remedies that the parties never agreed to in their settlement. "The district court has the authority to order the

16

performance of duties contained *within* the four corners of the consent decree." *Johnson v. Robinson*, 987 F.2d 1043, 1049 (4th Cir. 1993) (punctuation and citation omitted, emphasis added). Plaintiffs claim that this Court has authority to invent remedies that the parties have not agreed to. ECF No. 459-2 at 23. But the Fourth Circuit's *Johnson* precedent disagrees. "A federal district court may *not* use its power of enforcing consent decrees to enlarge or diminish the duties on which the parties have agreed and which the court has approved." *Johnson*, 987 F.2d at 1049. (emphasis added). Indeed, in *Johnson*, the Court held that the district court had exceeded its powers by imposing a timetable for maintenance that the parties had not bargained for. *Id*. at 1045-46. For example, the agreement in *Johnson* required repairs to a prison, and the district court mandated deadlines for significant upgrades or replacements. *Id*. at 1049. Plaintiffs point to *Duvall v. Hogan* to allege that the Court may "devise a method to obtain compliance" beyond the scope of the settlement agreement. 2021 WL 2042295, at *13 (D. Md. May 21, 2021); see ECF No. 459-2 at 27. Conveniently, the methods Plaintiffs wish the Court to "devise" are their own. Plaintiffs mischaracterize the holding of *Duvall*. Crutially, *Duvall* involved a settlement agreement which recognized by its terms it would take time to implement but provided no timeline or other directions for compliance. *Id*. Rather than fabricate its own deadlines, as the Plaintiffs suggest occurred, the Court simply ordered the parties to submit a join plan with deadlines for compliance. *Id*. The Court was not creating or establishing new obligations, but rather assisting the parties in clarifying their existing obligations under the settlement agreement. In contrast, Plaintiffs seek five separate remedial orders ranging from bi-weekly reports on internal USCIS processes to entirely new notice requirements which are so far divorced from the original agreed-to settlement agreement that they move beyond far enforcement

17

and clearly are an attempt to "enlarge … the duties" Defendants agreed to. *Johnson*, 987 F.2d at 1049; *see* ECF No. 459-2 at 2.

The only legal bases for the Court to impose such sweeping remedial actions as those proposed by the Plaintiffs are (1) pursuant to a finding of contempt or (2) modification of the settlement agreement itself pursuant to Fed. R. Civ. P. 60(b). This Court should recognize that any discussion of available relief for contempt is frivolous for the same reasons that Plaintiffs' arguments for civil contempt fail. *See supra* Section III.B. "A party seeking modification of a consent decree may meet its initial burden by showing either a significant change either in factual conditions or in law." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992). "Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Id.* at 385. Plaintiffs allege that Defendants' actions in this matter rise to the level of "an unanticipated and substantial change of circumstances that warrants modification" of the settlement agreement. ECF No. 459 at fn. 16, citing to *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 831 (4th Cir. 2005). But *Thompson* involved a near-complete failure to comply with a consent decree. In fact, nearly all cases cited by Plaintiffs involve violations so egregious as to undermine the purpose of the settlement agreement. *See, e.g., Concerned Pastors for Soc. Action v. Khouri*, 658 F. Supp. 3d 495, 502 (E.D. Mich. 2023) (despite four successful motions to enforce, the defendant had not completed required work, failed to comply with court deadlines, did not track or maintain records of its compliance, and neglected to provide timely monthly reports). Plaintiffs cannot seriously allege that Defendants' actions are equivalent to a near-complete failure to comply. "The absence of complete compliance with a consent decree is not necessarily extraordinary or

unforeseeable." *Thompson, 404 F.3d*. at 828. In fact, the existence of Section V.D. of the settlement agreement provides definitive proof that both parties contemplated the kind of specific instances of alleged non-compliance on which Plaintiffs seek to ground their arguments. ECF No. 199-2 at 14. The Defendants have shown good faith in self-reporting a relatively low number of disputed removals compared to the class size and complied with the dispute resolution process set out in the settlement agreement. Nothing the Plaintiffs present constitutes a "significant change … in factual conditions" unanticipated at the time the parties entered into the agreement such that the extreme measure of modifying the settlement agreement is legal or merited. *See Thompson*, 404 F.3d at 831.

Furthermore, the settlement agreement by its terms sunsets in May of 2026, eighteen months after it entered into force. ECF No. 199-2 at 12, Section IV.K. By seeking extensive remedial measures four months before the natural end of the agreement, Plaintiffs are attempting to obtain a *de facto* extension based on eight self-reported potential improper removals from a class of over 75,000 individuals. Indeed, one of their sought measures would require bi-weekly reports into the indefinite future. *See* ECF No. 459 at 29 ("the Court should order the Defendants to provide biweekly status reports until a responsible official certifies on Defendants' behalf that the review is complete …"). This Court should maintain its position not to enforce "anything other than the deal that the plaintiff class made with respect to what its remedies and rights are under the agreement." Tr. May 6, 2025 Hearing, 17:19-22.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to enforce the settlement agreement and find Defendants in civil contempt.

Dated:  January 29, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Office of Immigration Litigation

RUTH ANN MUELLER
Senior Litigation Counsel

RICHARD G. INGEBRETSEN
EVAN P. SCHULTZ
LARISSA K. JOHNSON
Trial Attorneys

*/s/ Joshua Clem*
JOSHUA A. CLEM (AR2023202)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 253-6762
Joshua.Clem2@usdoj.gov

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 29, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Maryland by using the CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system to all counsel of record.

DATED: January 29, 2026                    Respectfully submitted,

<u>*/s/ Joshua A. Clem*</u>
JOSHUA A. CLEM (AR2023202)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 253-6762
Joshua.Clem2@usdoj.gov

*Attorney for Defendants*