IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | |
|---|---|
| J.O.P., *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>    Defendants. | Civil Action No.<br>8:19-CV-01944-SAG |

**CLASS COUNSEL'S REPLY BRIEF IN SUPPORT OF THEIR
EMERGENCY MOTION TO ENFORCE THE SETTLEMENT AGREEMENT
AND TO FIND DEFENDANTS IN CIVIL CONTEMPT**

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A. Defendants Have Violated the Settlement Agreement and Refuse to Adopt Reasonable Procedures to Ensure Compliance Going Forward. ............................ 2

        1. At Least Three Confirmed Class Members Have Been Removed in Direct Violation of the Court's Orders. ........................................................ 2

        2. The Procedures Adopted by Defendants Are Inconsistent with the Settlement Agreement.................................................................................. 5

    B. Civil Contempt Is Warranted Because Defendants Undisputedly Violated the Court's Orders and Have Not Established Substantial Compliance. ................ 8

    C. The Court Can and Should Impose the Requested Remedial Measures............... 12

III. CONCLUSION................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ARCO Nat'l Constr., LLC v. MCM Mgmt. Corp.*,
   2024 WL 4041527 (D. Md. Sept. 4, 2024) ...................................................................4

*Consumer Fin. Prot. Bureau v. Klopp*,
   957 F.3d 454 (4th Cir. 2020) ..............................................................................1, 8, 12

*De Simone v. VSL Pharms., Inc.*,
   36 F.4th 518 (4th Cir. 2022) ..........................................................................8, 9, 10, 12

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
   2025 WL 1431263 (4th Cir. May 19, 2025) ...................................................................9, 10

*Johnson v. Robinson*,
   987 F.2d 1043 (4th Cir. 1993) .......................................................................................13, 14

*Lithko Contracting, LLC v. XL Ins. Am., Inc.*,
   487 Md. 385 (2024) ........................................................................................................7

*Ms. L. v. U.S. Immigr. and Customs Enforcement*,
   2025 WL 2493842 (S.D. Cal. Aug. 4, 2025), *appeal docketed*, No. 25-5497
   (9th Cir.) .......................................................................................................................14

*Padilla v. Kentucky*,
   559 U.S. 356 (2010) ......................................................................................................9

*United States v. Darwin Constr. Co.*,
   873 F.2d 750 (4th Cir. 1989) .........................................................................................11

I.  **INTRODUCTION**

Defendants do not dispute that they have violated the Settlement Agreement and this Court's Orders by wrongfully removing multiple Class Members. In fact, they candidly admit that "improper removals have occurred." ECF No. 462 ("Opp.") at 8. Their primary argument in opposition is that civil contempt and class-wide relief to enforce the Settlement Agreement are nevertheless inappropriate because there are only a "small number" of *known* removals of Class Members. *Id.* at 6. That argument will not wash.

Since Defendants do not take reasonable steps to identify Class Members, it is unsurprising that just a few wrongfully removed Class Members have been identified so far. That undercount hardly points toward compliance. Rather, it betrays Defendants' veil-of-ignorance approach to identifying Class Members among those being removed. The eight confirmed and potential Class Members came to Defendants' attention purely by happenstance. Given the "immense scale" of current removals (*id.* at 9) and Defendants' inadequate means of identifying Class Members, the true number of wrongfully removed Class Members is almost certainly much greater.

Moreover, Defendants' argument rests on the mistaken premise that a "small number" of violations cannot support the class-wide remedial measures requested by Class Counsel. It is blackletter law that even "a single violation of an order is sufficient to support a finding of contempt." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 459 (4th Cir. 2020) (brackets and citation omitted). Likewise, this Court previously ordered class-wide relief to enforce the Settlement Agreement in response to a single wrongful removal. *See* ECF No. 254 ¶ 1. Class-wide relief is needed again. Defendants have eviscerated the essential protection guaranteed by the Settlement Agreement and the Court's unambiguous Orders—not to remove Class Members until their asylum applications have been decided on the merits. Absent additional remedial measures, the wrongful removals will only pile up.

Defendants barely engage with the elements of civil contempt, which are easily satisfied here. And while they recognize the Court's authority to enforce the Settlement Agreement and the Court's prior Orders, Defendants contend that the Court lacks authority to enforce the Agreement through remedial measures that go beyond simply repeating what the Agreement already says. But the Fourth Circuit decision on which they rely actually states the opposite. The remedial measures requested by Class Counsel are aimed at *securing*, not supplementing, the rights guaranteed by the Settlement Agreement. The Court has ample authority to order that relief.

## II.    ARGUMENT

### A.    Defendants Have Violated the Settlement Agreement and Refuse to Adopt Reasonable Procedures to Ensure Compliance Going Forward.

There is no dispute that Defendants have wrongfully removed multiple Class Members. These deportations create profound displacement and serious risk for asylum seekers removed to the countries of claimed persecution without their bargained-for procedural protections. Yet Defendants minimize the severity of their admitted violations by emphasizing the relatively small number of known violations—a total kept artificially low because Defendants choose not to check their own records for other Class Member removals. Further, Defendants maintain that their data entry "methodology" insulates them from liability for their violations, even as evidence to date suggests that this methodology is insufficient to prevent unlawful removals and that ICE has at times departed from Defendants' own procedures without explanation. The Court should reject Defendants' attempts to paper over and distract from their clear violations of the Settlement Agreement and the Court's prior Orders incorporating and enforcing it.

#### 1.    *At Least Three Confirmed Class Members Have Been Removed in Direct Violation of the Court's Orders.*

Defendants expressly concede, as they must, that removing a Class Member without providing an asylum adjudication on the merits is a "violation" of the Settlement Agreement. Opp.

at 7; *see also id.* at 9 (conceding that "removals of class members are noncompliant with the settlement agreement, whether or not USCIS correctly identified the individual"). They also concede that they executed "improper removals." Opp. at 6; *see also id.* at 8 (acknowledging the "fact that improper removals have occurred"). It is undisputed that at least two confirmed Class Members (*in addition* to Cristian) were removed in violation of the Settlement Agreement: B.A.G. (removed on April 9, 2025) and E.P.P. (removed on May 27, 2025). *See* ECF No. 428-3 ¶¶ 4-7. Defendants have further admitted that they violated Paragraph III.B of the Settlement Agreement (and, hence, the Court's order incorporating it) by rejecting jurisdiction over E.P.P.'s asylum application in March 2025. *See* ECF No. 456 at 3; ECF No. 428-3 ¶ 7. And this Court has already held that Cristian's removal violated the Settlement Agreement and the Court's Order incorporating it. ECF No. 253 at 11.

Defendants argue that their violations should be overlooked because they "self-reported a small number of improper removals in exceptional circumstances not fully anticipated by the settlement agreement."[1] Opp. at 6. But they never explain what these supposedly "exceptional circumstances" might be or in what way they were "not fully anticipated by the settlement agreement." Regardless, both the Settlement Agreement and this Court's Orders (ECF Nos. 205, 254) flatly prohibit removing Class Members. There is no "exceptional circumstances" carveout.

Defendants also attempt to downplay their violations by quoting this Court's statement that "these removals represent 'a tiny percentage of the overall Class Members.'" Opp. at 9 (quoting ECF No. 448 at 1). But that is a misleading half-quote that inverts the meaning of the Court's statement. The full quotation is that "*[t]his Court is, of course, concerned* about the number of

---

[1] Defendants are wrong to suggest that the Court has "already denied" the arguments in Plaintiffs' Second Motion to Enforce. Opp. at 6. The Court did not resolve the merits of that motion and instead, in a two-page order, found it premature. ECF No. 448.

3

instances of apparent non-compliance, which *is significant despite* representing what seems to be a tiny percentage of the overall Class Members." ECF No. 448 at 1 (emphasis added). The Court was right to be concerned: the fact that Defendants have identified only a small number of removed potential Class Members does *not* imply that only a few exist, but rather reflects that Defendants have stuck their heads in the sand. They have refused to consult their records to surface other removed Class Members. And now even the haphazard discovery of removed Class Members via asylum adjudications is inoperative, as Defendants refuse to adjudicate *any* asylum applications under their No Asylum Adjudications Policy.[2] Even in Defendants' small sample, moreover, the removed potential Class Members resided in five different states and were detained in various ICE facilities, which indicates "systemic failures" rather than "isolated events." *Contra* Opp. at 12.

Nor is Defendants' noncompliance excused on the ground that some Class Members allegedly "requested permission to return home." Opp. at 9. Even if that allegation were accurate, it does not establish that Defendants secured the necessary *knowing and intelligent* waiver of their rights under the Agreement that might have allowed for lawful removals. *See, e.g.*, *ARCO Nat'l Constr., LLC v. MCM Mgmt. Corp.*, 2024 WL 4041527, at *6 (D. Md. Sept. 4, 2024) (waiving a right requires showing "the intentional relinquishment of a known right") (citation omitted). In fact, USCIS told Class Member E.P.P. that he had *no right* to a USCIS asylum adjudication by wrongly rejecting his application months before removing him. ECF No. 456 at 3 (admitting that USCIS's jurisdictional rejection of E.P.P.'s asylum application in March 2025, months before his

---

[2] Defendants do not meaningfully engage with Plaintiffs' arguments regarding the application of this policy and of the AAPM abandonment provision to Class Members, both of which violate Sections III.B and III.G of the Agreement by gutting Class Members' bargained-for right to an asylum adjudication on the merits that is capable of being expedited. *See* Opp. at 9-10. Class Counsel have already addressed Defendants' claim that the application of these policies falls outside the Agreement's scope. *See* ECF No. 459-2 at 27-28.

removal, was "erroneous"). Defendants' attempt to blame Class Members for their own wrongful removals fails.

Finally, Defendants are simply wrong that the Settlement Agreement's inclusion of a process to handle alleged noncompliance somehow transforms stark violations into acceptable by-products of the bargain. *See* Opp. at 8. Defendants appear to argue that the Agreement's paragraph addressing noncompliance "anticipates that Defendants will encounter issues in execution," and therefore Defendants' breaches are not actually breaches. *Id.* But nothing in Section V.D preemptively excuses Defendants' noncompliance. Rather, that provision reflects the parties' agreed-upon framework for addressing alleged noncompliance in an orderly fashion, promoting collaborative problem-solving while creating a record should a motion to enforce become necessary—a motion specifically provided for in that Section. *See* ECF No. 199-2 at 13, § V.D. The Court has previously enforced the Agreement in light of Defendants' violation of Section III.I, *see* ECF No. 253, and it should do so again.

### 2. *The Procedures Adopted by Defendants Are Inconsistent with the Settlement Agreement.*

In Defendants' telling, adopting a "methodology for noting identified class members in ICE's system . . . is all that is required by the settlement agreement." Opp. at 12. Yet Defendants are indifferent to the deficiencies in their chosen "methodology," as spotlighted during the parties' meet and confer. These systemic deficiencies are incompatible with the language and purpose of the Settlement Agreement's requirements that "ICE will refrain from executing [a] Class Member's final removal order" and "will make an entry indicating there is a stay in its system of records for *all identified Class Members*, including Class Members identified by USCIS." ECF No. 199-2 at 8-9, § III.I (emphasis added).

5

*First*, USCIS's lists of potential Class Members are admittedly insufficient to ensure compliance because of coding errors, M&C Tr. at 00:20:13-00:21:35, and because they omit Class Members who were among the hundreds of thousands of unaccompanied children for whom ICE opted to defer the filing of charging documents to commence removal proceedings, *id*. at 00:21:14-00:23:54; ECF Nos. 459-83, Ex. 5 at 1, Ex. 6 at 4.  Contrary to Defendants' claim, over-inclusivity is not the sole defect in USCIS's potential Class Member lists.  Opp. at 11.

Defendants contend (at 11) that Class Counsel "ignore" that USCIS increased its transmission of potential Class Member lists to twice monthly.  Not so.  *See* ECF No. 459-2 at 6. This extra list hardly indicates that ICE has addressed its admitted performance deficiencies. Indeed, Defendants provide no assurances that ICE makes system entries promptly after receiving a list from USCIS, *see* M&C Tr. 00:38:24-00:41:03, or that those entries are placed in time to prevent a violative removal, or even that ICE leaves the entries in place and heeds them to prevent removals, *id.* at 00:05:43-00:06:10. When asked what steps toward compliance ICE has taken since the removals were disclosed, Defendants offered nothing but the reissuance of an internal memorandum "to make sure everyone is aware of it."  *Id*. at 01:40:29-01:41:06.

*Second,* even as Defendants recognize the insufficiency of USCIS's lists, Defendants insist that ICE can rely blindly on those lists without any other effort to determine whether an individual is a Class Member before removing that individual.  *Id*. at 01:39:54-01:40:25 ("I don't believe an independent check is made outside of the banner affirmatively"); Opp. at 11 (disclaiming any "affirmative obligation for ICE to independently investigate individuals for class membership").

6

In fact, Defendants' Opposition appears to acknowledge that "manual confirmation processes . . . need to be conducted for those individuals identified for final removal." Opp. at 11.[3]

Defendants protest that the Agreement "does not explicitly require Defendants to engage in broad efforts to fully identify the class." *Id*. at 10. That is a straw man. Class Counsel have never argued that Defendants must create a comprehensive Class list. Rather, Defendants must do what the Agreement commands: "refrain from executing" Class Members' removal orders. ECF 199-2 at 8, § III.I. It is impossible for Defendants to honor that obligation if they deliberately keep themselves in the dark as to whether someone being removed is a Class Member. The Agreement does not ask that Defendants refrain from removal only if it happens to come to their attention that an individual is a Class Member, but instead makes Defendants responsible for not removing *any* Class Member until they receive an asylum merits adjudication. ECF 199-2 at 8-9, § III.I.

"[T]he bedrock principle of contract interpretation in Maryland" is that "courts consistently strive to interpret contracts in accordance with common sense." *Lithko Contracting, LLC v. XL Ins. Am., Inc.*, 487 Md. 385, 403 (2024) (quotation marks and citation omitted). And, in doing so, Maryland courts "do not interpret contractual language in a vacuum," but rather "interpret that language 'in context, which includes not only the text of the entire contract but also the contract's character, purpose, and the facts and circumstances of the parties at the time of execution.'" *Id.* at 401 (citation omitted). Defendants read Section III.I as if it did not include a first sentence barring

---

[3] To the extent Defendants argue that identifying Class Members is *solely* USCIS's responsibility—*see* Opp. at 12 (asserting that "USCIS is the only Defendant well-positioned to identify class members")—that conflicts with the Agreement's plain text. The Agreement contemplates that "all identified Class Members" "*includ[es]* Class Members identified by USCIS," but is not limited to such USCIS-identified Class Members. ECF 199-2 at 9, § III.I (emphasis added).

Class Member removals – and this cramped reading of the Agreement defies both common sense and the Agreement's context, character, and purpose.

> **B. Civil Contempt Is Warranted Because Defendants Undisputedly Violated the Court's Orders and Have Not Established Substantial Compliance.**

Defendants brush aside Class Counsel's motion for civil contempt as "[f]rivolous" and without "legal basis," Opp. at 12, yet they nowhere refute that Class Counsel has clearly and convincingly established each of the elements of civil contempt:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's favor; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 529 (4th Cir. 2022) (citation omitted). Importantly, moreover, "a single violation of an order is sufficient to support a finding of contempt." *Klopp*, 957 F.3d at 459 (brackets omitted) (quoting *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 618 (4th Cir. 2018)).

Here, the contempt analysis is straightforward and rests on undisputed facts. With respect to the first two elements, the Court's Order approving and incorporating the Settlement Agreement, ECF No. 205 at 3, and the April 23, 2025 Order prohibiting the removal of any Class Member, ECF No. 254 ¶ 1, are plainly valid decrees in the Class's favor of which Defendants had knowledge. These elements are therefore easily satisfied.

So is the third element. As discussed above (p. 3, *supra*), Defendants concede the "fact that improper removals have occurred." Opp. at 8. Specifically, it is undisputed that at least two confirmed Class Members were removed in violation of the Court's Orders: B.A.G. and E.P.P. *See* ECF No. 428-3 ¶¶ 4-7. And this Court has held that Cristian's removal also violated the Settlement Agreement and the Court's Order incorporating it. ECF No. 253 at 11. Defendants

8

themselves control access to the facts to determine whether any or all of the six additional removals Defendants identified were also violations of the Agreement.

Defendants have not argued that they lacked at least constructive knowledge of these violations.[4] Nor could they. "'Constructive knowledge' is 'knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.'" *De Simone*, 36 F.4th at 529 (brackets omitted) (quoting *Knowledge*, Black's Law Dictionary (11th ed. 2019)). At the time of B.A.G.'s and E.P.P.'s removals, Defendants possessed all the information necessary to determine their Class Membership. Yet Defendants proceeded to remove them, in violation of the Settlement Agreement and the Court's Orders, without even checking whether they were Class Members. *See* pp. 6-7, *supra*. That is hardly reasonable diligence. Moreover, in Cristian's case, Defendants removed him *despite receiving written notice* from his immigration counsel that he was a *J.O.P.* Class Member with a pending asylum application and that the Settlement Agreement prohibited his removal. ECF No. 371-1 Ex. A.

Finally, there is no doubt that B.A.G., E.P.P., and Cristian suffered harm as a result of Defendants' violations of the Court's Orders. All three were removed from the United States, which is "the equivalent of banishment or exile." *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) (quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 390-91 (1947)).[5] And Cristian was sent to "a

---

[4] Defendants assert now that they "did not have knowledge of the potential violations before or during the removals." Opp. at 13-14. This assertion is based solely on attorney argument. In any case, Defendants' constructive knowledge of the ongoing removals is adequate to support a finding of civil contempt. *De Simone*, 36 F.4th 518 at 529.

[5] Defendants suggest that some of the individuals "requested permission to return home." Opp. at 8-9. But they have never claimed that B.A.G. ever made any such request. Nor have they claimed that any potential Class Member was informed of their rights prior to making such a request. Indeed, while Defendants have represented that E.P.P. "asked for a removal order," M&C Tr. at 00:35:35-00:36:39, that alleged request occurred only *after* USCIS wrongfully rejected E.P.P.'s

9

notorious supermax prison known for widespread human rights violations," *J.O.P. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1431263, at *6 (4th Cir. May 19, 2025) (Benjamin J., concurring) (quoting *Abrego Garcia v. Noem*, 2025 WL 1021113, at *1 (4th Cir. Apr. 7, 2025) (Thacker J., concurring)), where he was incarcerated for four months and endured abuse and torture. *See* ECF No. 363 at 3. These Class Members have plainly suffered harm as a result of Defendants' violations of the Court's Orders.

Because Class Counsel has established that the four-element test for civil contempt is satisfied, the "burden shifts" to Defendants to demonstrate that they "made in good faith all reasonable efforts to comply with the" Court's Orders. *De Simone*, 36 F.4th at 529 (quoting *United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)). "Substantial compliance with a decree is a defense to civil contempt," and therefore the burden is on *Defendants* to show that they took "'*all* reasonable steps' to ensure compliance." *Id.* at 530 (emphasis in original) (quoting *United States v. Darwin Constr. Co.*, 873 F.2d 750, 755 (4th Cir. 1989)). "'[I]nadvertent omissions are excused only if such steps were taken.'" *Id.* (quoting *Darwin Constr. Co.*, 873 F.2d at 755).

Defendants have not even tried to meet that burden here. They instead argue that there were no "intentional violations." Opp. at 13. But in contrast to criminal contempt, civil contempt requires only *constructive* knowledge, not intent. *De Simone*, 36 F.4th at 429. Defendants also argue that self-reporting the ten removals evinces "good-faith efforts of the Defendant to appropriately disclose potential non-compliance discovered after the fact." Opp. at 14. But those "good-faith efforts" occurred *after* Defendants had violated the Court's Orders and failed to take *all* reasonable steps to comply—such as making reasonable efforts to confirm that an individual is

---

asylum application months earlier in violation of the Settlement Agreement. Any such request cannot erase the fact that the Class Members suffered harm as a result of Defendants' violations of the Court's Orders.

not a Class Member before removing that individual. *See* pp. 6-7, *supra*. The Fourth Circuit has affirmed a finding of civil contempt arising from a document-production order where the defendant "did not take 'all reasonable steps' to ensure complete production until *after* it was notified . . . that some documents were still unproduced and it made additional efforts to find the missing documents." *Darwin Constr. Co.*, 873 F.2d at 755. Here, too, a post-violation demonstration of good faith does not undo the violation. Even now, Defendants refuse to take all reasonable steps to ensure that they do not violate this Court's Orders by removing Class Members going forward.

Moreover, Defendants' proposal to "cure [past] violations by facilitating the return of any removed class members" (Opp. at 1) is insufficient because Defendants have neither taken affirmative steps to locate those individuals nor provided Class Counsel with sufficient information to establish contact with most of them, all of whom were removed to the countries from which they sought asylum. *See* ECF No. 459-2 at 26. The most Defendants can say is that they provided "what contact information they have for each of the removed potential class members and their counsel of record, if available." Opp. at 8.[6] That is not nearly enough to place removed Class Members back in the position they were in pre-breach. Likewise, as Class Counsel have explained, Defendants still refuse to commit to restoring the wrongfully removed Class Members to the status quo ante by not deeming their asylum applications "abandoned" or applying the No Asylum Adjudications Policy. *See* ECF No. 459-2 at 10-11; Opp. at 9-10.

---

[6] The data Defendants provided to Class Counsel included addresses of ICE facilities where potential Class Members had been held during their removal proceedings, U.S. phone numbers and/or addresses that belonged to potential Class Members during their time in the U.S., and contact information for attorneys who had represented a few of the potential Class Members at some point during their removal proceedings. Unsurprisingly, attempts to contact the potential Class Members using this limited data met with limited success, underscoring the importance of preventing violations that prove extremely difficult to reverse.

11

Finally, Defendants argue that their "processes to identify class members" do not "clearly" violate any Order. Opp. at 14. As discussed above, however, that argument distorts the Agreement's provisions and defies common sense. *See* pp. 5-8, *supra*. Yet even if Defendants' reading were plausible, that makes no difference because "a single violation of an order is sufficient to support a finding of contempt." *Klopp*, 957 F.3d at 459 (brackets, quotations, and citation omitted). In the wake of the Court's conclusion that Defendants' removal of Cristian violated the Settlement Agreement and the Court's Order incorporating it, Defendants do not contest that they removed B.A.G. and E.P.P. in violation of the Court's Orders, too. A finding of civil contempt is amply supported.

> **C.    The Court Can and Should Impose the Requested Remedial Measures.**

Defendants concede that a finding of contempt *does* supply adequate "legal bas[i]s" to impose the remedial measures requested by Class Counsel. *See* Opp. at 18; *see also De Simone*, 36 F.4th at 535-36 ("'The appropriate remedy for civil contempt is within the court's broad discretion.'" (quoting *In re Gen. Motors Corp.*, 61 F.3d 256, 259 (4th Cir. 1995))). And Defendants offer no meaningful response to Class Counsel's arguments that such remedial measures are an appropriate remedy for civil contempt here (*see* ECF No. 459-2 at 19-30), other than falling back on "the same reasons that Plaintiffs' arguments for civil contempt fail." Opp. at 18. But those "reasons" are meritless and civil contempt *is* warranted, as discussed above. Accordingly, the Court should order the requested relief.

The Court may also order the requested relief to enforce its own Orders, including its Order incorporating the Settlement Agreement. *See* ECF No. 459-2 at 17-18. Defendants' principal rejoinder on that point is that "Class Counsel seeks relief outside of the relief specifically negotiated by the parties." Opp. at 15. In support of their argument, Defendants rely heavily (*id.*

12

at 17) on the pronouncement in *Johnson v. Robinson*, 987 F.2d 1043 (4th Cir. 1993), that a "court may not use its power of enforcing consent decrees to enlarge or diminish the duties on which the parties have agreed and which the court has approved." *Id.* at 1046. But *Johnson* illustrates why the remedies requested here are appropriate enforcement mechanisms.

*Johnson* involved a stipulated agreement entered into by Maryland prison officials to make "general repairs in thirteen areas" (*e.g.*, repairing inoperable plumbing) but without any specific timetable. *Id.* at 1049. The district court then entered an order with a "timetable [that] mandates a specific schedule within which the repairs must be completed" and "a broad range of eighty-three items that includes significant upgrades, not merely repairs." *Id.* Moreover, "[t]he court never indicated that this was a remedial order; indeed, it never established any need to enforce the . . . Agreement, because the court never found Maryland officials not to be in compliance with that Agreement." *Id.* While the *Johnson* dissent reasoned that the district court's "timetable merely describes 'how' the various repairs will be made," the majority held that "judicially binding state officials to request funds and make extensive capital upgrades by specific dates involves far more than outlining 'how' certain repairs will be undertaken." *Id.* The *Johnson* Court thus held that the district court's timetable order could not be a proper remedial enforcement order.

Unlike *Johnson*, the requested remedial measures here are directly aimed at *how* to ensure compliance with the Court's Orders—specifically, the Court's Orders not to remove Class Members. The fundamental problem is that Defendants' existing procedures are simply not up to the task of complying with the Court's Orders not to remove Class Members: Defendants have adopted procedures that led to several Class Members' wrongful removal and they still refuse to undertake reasonably diligent efforts to ensure compliance. The narrowly tailored measures requested by Class Counsel do not (as in *Johnson*) expand any substantive protections that Class

13

Members could have bargained for but did not. Rather, the requested measures are commonsense enforcement mechanisms to remedy Defendants' noncompliance with their existing obligation not to remove Class Members. *Johnson* confirms that such measures are appropriate.[7]

Defendants suggest that "specific remedies on an individual basis" are the "proper method to rectify violations" of the Agreement and the Court's April 23 Order, and that "class-wide remedies are disproportionate" to the specific violations. Opp. at 7, 15. That suggestion is baseless. Class Counsel bargained for and secured the benefit of enforcing the Agreement on an individual or a class-wide basis, with no minimum number of violations necessary to trigger class-wide enforcement. *See* ECF No. 199-2 at 13, § V.D. Indeed, the Court previously issued a class-wide enforcement order in response to the wrongful removal of one individual. *See* ECF No. 254 ¶ 1. Defendants' repeated violations warrant further class-wide remedial measures. *Cf. Ms. L. v. U.S. Immigr. and Customs Enforcement*, 2025 WL 2493842, at *1 (S.D. Cal. Aug. 4, 2025), *appeal docketed*, No. 25-5497 (9th Cir.) (ordering Government to inform Plaintiffs' counsel within 24 hours if it detains a member of the *Ms. L.* Class to prevent future unlawful removals). That is the only way to bring Defendants into compliance with the Settlement Agreement and the Court's Orders prohibiting the removal of Class Members.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Class Counsel's Emergency Motion to Enforce the Settlement Agreement and to Find Defendants in Civil Contempt.

---

[7] Defendants also argue that the Court should not modify the Settlement Agreement pursuant to Rule 60(b). *See* Opp. at 18-19. While the Court does have that power, *see* ECF No. 459-2 at 23-24 n.16, Class Counsel invoked that authority only in the event "the Court were to conclude" that the civil contempt or enforcement "sources of authority are inapposite." *Id.* at 26. If the Court agrees with Class Counsel that each of those sources independently supports the remedial measures requested, the Court need not address Rule 60(b) at this time.

Dated: February 5, 2026

Respectfully submitted,

/s/ Brian T. Burgess

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project
30 S. 10th Street (c/o University of St. Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*