# EXHIBIT 2

1
2
3
4
5
6
7            **UNITED STATES DISTRICT COURT**
8            **SOUTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| Ms. L.; et al., | Case No.:  18cv0428 DMS (AHG) |
| Petitioners-Plaintiffs, | |
| v. | **ORDER (1) GRANTING PLAINTIFFS' MOTION TO RETURN REMOVED CLASS MEMBERS AND QUALIFING ADDITIONAL FAMILY MEMBERS AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PROVISION OF INFORMATION ABOUT DETAINED CLASS MEMBERS AND ADDITIONAL FAMILY MEMBERS AND FAMILY INSTRUCTED TO SELF-DEPORT** |
| U.S Immigration and Customs Enforcement ("ICE"); et al., | |
| Respondents-Defendants. | |

This case comes before the Court on Plaintiffs' (1) motion to return removed Class Members and Qualifying Additional Family Members ("QAFMs") and (2) motion for provision of information about detained Class Members and additional family members and family instructed to self-deport.[1]  Defendants filed a consolidated opposition to Plaintiffs' motions, and Plaintiffs filed a consolidated reply.  Following this briefing,

---

[1] ICE has now rescinded its self-deport directive to the family, and thus, the Court denies that request as moot.

1

Defendants filed a Notice of Inadvertent Removal of Class Member,[2] and Plaintiffs filed a Notice Regarding Pending Motions and Supplemental Request for Relief.  The motion came on for hearing on January 29, 2026.  Lee Gelernt, Daniel Galindo and Natalie Behr appeared for Plaintiffs, and Daniel Schutrum-Boward and Carmen Yori appeared for Defendants.

**Motion to Return Removed Class Members and Qualifying Additional Family Members**

In the original motion, Plaintiffs asked the Court to order Defendants to return, at government expense, four family units that Plaintiffs alleged were wrongfully removed: S.M.B.C.,[3] I.Y.O.D,[4] M.M.A.L., and M.A.J.[5]  In the Notice Regarding Pending Motions, Plaintiffs added two additional individuals: F.S.G.Y. and G.R.S.Y.  According to the parties, Defendants have agreed to return M.M.A.L. and G.R.S.Y., and as stated above, the parties are still conferring as to F.S.G.Y.  Therefore, the only family units at issue here are S.M.B.C., I.Y.O.D., and M.A.J.

Before turning to those family units, however, the Court first addresses Defendants' threshold arguments that (1) the Court lacks authority to order the return of these family units, and (2) 8 U.S.C. § 1252(g) strips the Court of jurisdiction to grant the requested relief.  In a previous order in this case, the Court considered whether it had the authority to order Defendants to allow parents previously deported without their children to return to the United States.  (ECF No. 456.)  On that motion, as here, Defendants argued the Court

---

[2] The Class Member at issue in Defendants' Notice was later identified as F.S.G.Y.  At oral argument, counsel informed the Court they are conferring about F.S.G.Y.  Pending those discussions, the Court does not address whether Defendants must return F.S.G.Y. to the United States.

[3] S.M.B.C. is referred to in the brief at both S.M.B.A. and S.B.M.C.  The Court confirmed with Counsel that this is one individual, S.M.B.C.

[4] I.Y.O.D. is referred to as I.O.Y.D. in her Declaration.  To be consistent with Plaintiffs' briefs, the Court refers to this individual as I.Y.O.D.

[5] In a footnote, Plaintiffs also mentioned an additional Class Member who was removed, later identified as A.M.R.F.  Plaintiffs' Counsel are still gathering information about this Class Member, and thus the Court does not address whether Defendants must return A.M.R.F.

1    lacked jurisdiction to grant that relief and the issue of immigration was solely in the
2    purview of the executive and legislative branches of the federal government. The Court
3    rejected those arguments, and found it did have authority to grant the requested relief if the
4    parent was wrongfully removed. Defendants have not provided the Court with any
5    authority warranting reconsideration of that finding here. Thus, the Court again rejects
6    Defendants' argument that the Court lacks authority or jurisdiction to order Defendants to
7    return the removed Class Members and QAFMs to the United States. As before, the Court
8    will apply the "wrongfully removed" test to the families at issue here.

9       Turning first to S.M.B.C., this family unit consists of S.M.B.C. and her three minor
10   children, all of whom were removed on July 18, 2025. Plaintiffs argue the removal of this
11   family unit violated the Court's June 27, 2025 order staying the removal of Class Members
12   and QAFMs. Defendants do not dispute the timing of the removal of S.M.B.C. and her
13   children. Instead, Defendants contend S.M.B.C. and her children voluntarily departed the
14   United States, therefore Defendants have no obligation to return them.

15      As the party asking for S.M.B.C.'s return, Plaintiffs bear the burden of showing the
16   family was wrongfully removed. (ECF 456 at 8.) Plaintiffs have met that burden. In her
17   original Declaration, S.M.B.C. details her many interactions with ICE officers during her
18   scheduled check-ins. During those interactions, ICE officers instructed S.M.B.C. to bring
19   her minor children to her check-ins, (Decl. of S.M.B.C. in Supp. of Mot. ¶ 9, ECF No. 906-
20   1), which she did. (*Id.*) Officers then told S.M.B.C. she had a deportation order, which
21   was contrary to the information she received from an attorney, and fitted S.M.B.C. with an
22   ankle monitor. (*Id.* ¶¶ 8-9.) S.M.B.C. then told the officers she had valid parole until 2027,
23   "but the officer said that my parole did not matter, asked if my children and I had passports,
24   and told me to buy place tickets to self-deport." (*Id.* ¶ 10.) S.M.B.C. states she thereafter
25   "had at least eleven check-ins between June 10 and August 5." (*Id.* ¶ 17.) At her June 10
26   check-in, officers again told S.M.B.C. she had an "order of voluntary departure without a
27   specific removal date." (*Id.* ¶ 19.) S.M.B.C. told the officer she "did not want to return to
28

18cv0428 DMS (AHG)

Honduras." (*Id.*)  Nevertheless, the officer then "demanded passports from my children and me, along with proof of JBC's U.S. citizenship." (*Id.* ¶ 20.)

As a result of the ankle monitor and S.M.B.C.'s frequent check-ins, S.M.B.C. lost her job and was under tremendous physical, emotional, and financial stress. (*Id.* ¶ 23.)  In her words: "There came a point when I reached deep desperation, and felt I was now reliving the trauma from when they took [my daughter] from me in 2018."[6] (*Id.* ¶ 18.)  During her July 1, 2025 telephonic check-in, S.M.B.C. stated she "wanted to give up and return to Honduras only because [she] increasingly felt that [she] could not survive in the U.S. under these conditions." (*Id.* ¶ 24.)  After regaining her composure, S.M.B.C. "informed the officer that [she] had thought it over and in fact did not want to leave.  The officer understood but still demanded that [S.M.B.C.] give them our passports at the next appointment if [S.M.B.C.] did not 'return voluntarily.'" (*Id.*)

On July 8, 2025, S.M.B.C. surrendered her childrens' passports to the officers, as they instructed. (*Id.* ¶ 25.)  The officer told her that if she did not self-deport, "'ISAP would decide for me' because they had the passports and [she] already had a deportation order." (*Id.*)  The officer also told her that if she was deported, "[her] children would go to foster care or adoption." (*Id.*)

Six days later, ICE officers came to S.M.B.C.'s house for a home visit. (*Id.* ¶ 26.) According to S.M.B.C.:

> One officer said they would facilitate my voluntary departure if I was not planning to deport on my own.  Overwhelmed, depressed and frustrated, I told the officers they might as well 'send me back' because I had no other options here.  The officers told me to get our suitcases together and I complied and started packing.  My youngest child, [six-year-old U.S. citizen] JBC, saw me packing and started to cry, saying that he did not want to go to Honduras.  At that point, I told the officers that I did not actually want to go back to my home country and that I had never signed any kind of document or order for voluntary departure.  The officer wanted me to sign a document but I refused.

---

[6] In May 2018, government officials forcibly separated S.M.B.C. from her then-five-year-old daughter when they sought asylum at the U.S.-Mexico border.  (*Id.* ¶ 2.)

1  This did not make any difference to these officers—they took me and my
2  children to a motel and removed my ankle monitor.  They detained us for three
3  days and then removed us to Honduras.

4  (*Id.*)  Defendants do not dispute any of these facts.  They simply state "[t]here are no
5  records of ERO removal for these individuals."  (Decl. of Byoung C. Park in Supp. of
6  Defs.' Resp. to Mots. ¶ 4, ECF 919-1.)

7      Given the evidence set out above and the corroborating evidence set out in
8  S.M.B.C.'s Supplemental Declaration, (*see* Supp. Decl. of S.M.B.C. in Supp. of Reply,
9  ECF 920-1), Plaintiffs have shown S.M.B.C. and her family did not voluntarily depart the
10 United States.  Rather, the evidence reflects they were removed despite having been
11 granted parole and in violation of this Court's June 27, 2025 order staying the removal of
12 Class Members and QAFMs.  Accordingly, Defendants must return S.M.B.C. and her
13 children to the United States.

14     The next family unit is I.Y.O.D.  The removal of this family unit is strikingly similar
15 to the removal of S.M.B.C. and her children.  (*See* Decl. of I.Y.O.D. in Supp. of Opp'n to
16 Mot. for Partial Reconsideration, ECF No. 854-2.)  Plaintiffs contend their removal
17 violated the Settlement Agreement because they had been granted parole.[7]  Defendants do
18 not dispute this family unit had been granted parole.  They also do not dispute they did not
19 comply with the INA when they removed this family despite their parole status.  On the
20 present record, Plaintiffs have shown the removal of I.Y.O.D. and her children was
21 unlawful.  Accordingly, Defendants must return them to the United States.

22     The final family unit at issue is M.A.J., whose removal also bears a striking
23 similarity to the removals of S.M.B.C. and I.Y.O.D..  Plaintiffs argue Defendants
24 wrongfully removed this family unit in violation of the Settlement Agreement because they
25 were removed before they had an opportunity to apply for parole.  As with I.Y.O.D.,

26
27
28 [7] Plaintiffs also claim their removal violated the Immigration and Nationality Act ("INA"), but assert the
   Court need not reach that question because the removals violated the Settlement Agreement.

Defendants do not address M.A.J.'s removal, or dispute the facts surrounding removal of this family unit. Given the facts, and Defendants' failure to refute them, Plaintiffs have also shown the removal of this family unit was unlawful. Accordingly, Defendants must return them to the United States, as well.

The only remaining issue here, and for M.M.A.L. and G.R.S.Y., is whether Defendants must bear the expense of returning these Class Members and QAFMs to the United States. Clearly, the Court has authority to direct Defendants to "facilitate" the return of these Class Members and QAFMs. *Noem v. Abrego Garcia*, 604 U.S. ___, 145 S.Ct. 1017, 1018 (2025). Department of Homeland Security Policy states, "[f]acilitating an alien's return does not necessarily include funding the alien's travel via commercial carrier to the United States or making flight arrangements for the alien[,]" ICE Policy Directive 11061.1 (Feb. 24, 2012), https://www.ice.gov/doclib/foia/dro_policy_memos/11061.1_current_policy_facilitating_return.pdf. However, the Policy also does not prohibit DHS from funding a noncitizen's return under appropriate circumstances.

Here, the undisputed circumstances are as follows: ICE officers instructed three mothers to bring their children to their check-in appointments. One of those mothers was a *Ms. L.* Class Member. One was a QAFM. Each of them had been granted parole through 2027, and each of them had at least one child who was a U.S. citizen. One of those mothers had been forcibly separated from her daughter in 2018 pursuant to the first Trump Administration's family separation policy. The third mother was not a Class Member or a QAFM, but one of her children was a Class Member due to his separation from his father in 2018. At their respective check-in appointments, ICE officers told the mothers they had deportation or removal orders for each of them despite two of them having parole status. The officers also told the mothers to bring their passports and their childrens' passports to their appointments. With the mothers, children, and passports in hand, the officers then transported these families to a hotel or motel, and later boarded them onto an aircraft and removed them from the United States.

Given these circumstances, and in particular, the Class Member or QAFM status of the family members, the parole status of two of the family members, and that the removal of one family occurred after this Court ordered a stay of removals of Class Members and QAFMs, the Court finds Defendants should bear the expense of returning these family units to the United States. Each of the removals was unlawful, and absent the removals, these families would still be in the United States and have access to the benefits and resources they are entitled to under the Settlement Agreement. Although the Settlement Agreement does not prohibit Defendants from enforcing the laws of the United States, the removals at issue here clearly violated the spirit of the Agreement, which was to effect and support reunification *in the United States* of families that had been separated pursuant to the family separation policy. Defendants' decision to remove these families rendered the benefits of the Settlement Agreement illusory for these families, and the manner in which each of these removals was affected, in addition to being unlawful, involved lies, deception, and coercion. For these reasons, and to enforce the terms of the Settlement Agreement as to these families, (*see* Settlement Agreement § VII.D), Defendants shall bear the cost of returning these family units to the United States.

**Motion for Provision of Information About Detained Class Members and Additional Family Members**

In this motion, Plaintiffs ask the Court to order Defendants to provide the basis for detention for a number of individual Class Members and QAFMs. Defendants oppose the motion on the grounds Plaintiffs can obtain this information elsewhere, and Defendants are not required to provide this information under the terms of the Settlement Agreement.

In response to Defendants' first argument, Plaintiffs state it is difficult for them to obtain the requested information through other sources. Indeed, an attorney for one of the individuals that was detained explains that during the course of her client's detention, "I tried repeatedly to get in touch with an ICE officer in charge of [my client's] case. I called the detention center multiple times, and my calls were either disconnected or rang without answer." (Decl. of Molly Kammien in Supp. of Notice Regarding Pending Motions ¶ 10,

ECF No. 931-5.)  Ms. Kammien goes on to state that "[a]t no point during [my client's] arrest, detention, and removal proceedings did anyone from the government provide any explanation as to why [my client] had been detained, or why the government was now actively seeking [my client's] removal."  (*Id.*)  Thus, although it may be theoretically possible for Plaintiffs' counsel to obtain information about the reason for their client's detention from sources other than Defendants, efforts to obtain that information from those sources is time-consuming and often unsuccessful.  Presumably, Defendants have access to the information, and they can easily share that information with Plaintiffs' counsel. Indeed, for Class Members and QAFMs that were on parole prior to being detained, 8.C.F.R. § 241.4(l) requires Defendants to provide those individuals with notice "of the reasons for revocation of [their] release or parole."  8 C.F.R. § 241.4(l)(1).  Assuming Defendants complied with that regulation, it should be easy for them to provide the requisite notices to Plaintiffs' counsel so they can determine the basis for these individuals' detentions.  As a matter of common courtesy and cooperation, and to ensure Class Members and QAFMs have full access the benefits of the Settlement Agreement, the Court orders Defendants to provide Plaintiffs' Counsel with the requested information.

     **IT IS SO ORDERED**.

Dated:  February 5, 2026

Hon. Dana M. Sabraw
United States District Judge

18cv0428 DMS (AHG)