**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| J.O.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>Defendants. | Civil Action No.<br>8:19-CV-01944-SAG |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. JOP Settlement Agreement ..... 2

B. Defendants Removed Cristian Despite Receiving Written Notification of His Class Membership ..... 3

C. Class Counsel Successfully Challenged Defendants' Unlawful Removal of Cristian ..... 4

D. Defendants Sought to Overturn the Court's Order and Failed to Cooperate to Effectuate Cristian's Return from El Salvador ..... 5

E. Defendants Manufactured an Impasse to Cristian's Return from Venezuela and the Court Denied Their Second Motion to Vacate ..... 8

F. Defendants Voluntarily Dismissed Their Fourth Circuit Appeal, Resulting in a Final Judgment ..... 9

III. ARGUMENT ..... 10

A. Plaintiffs Are the Prevailing Party ..... 10

B. Defendants' Position Underlying and During This Litigation Was Not Substantially Justified ..... 12

1. Defendants Cannot Establish Substantial Justification for Their Pre-Litigation Conduct ..... 13

2. Defendants Cannot Show Substantial Justification for Their Litigation Conduct ..... 16

C. Plaintiffs Request Fees at Reasonable Hourly Rates for Hours Reasonably Worked ..... 20

1. Plaintiffs Expended the Hours Reasonably Necessary to Successfully Pursue the Litigation ..... 21

2. Plaintiffs' Request for Recovery at Adjusted EAJA Rates Is Reasonable ..... 23

3. Plaintiffs Seek Recovery of Modest Expenses and Costs ..... 25

IV. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Daniel v. Colvin*,
No. SAG-11-1318, 2015 WL 1125542 (D. Md. Mar. 11, 2015) ............24

*Barber v. Kimbrell's, Inc.*,
577 F.2d 216 (4th Cir. 1978) ............20

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001) ............10, 11

*Comm'r, INS v. Jean*,
496 U.S. 154 (1990) ............16, 20

*Coreen I. T. v. Comm'r Soc. Sec.*,
No. PJM-17-2260, 2019 WL 244586 (D. Md. Jan. 17, 2019) ............23

*Farrar v. Hobby*,
506 U.S. 103 (1992) ............10, 11

*Ge v. U.S. Citizenship & Immigr. Servs.*,
20 F.4th 147 (4th Cir. 2021) ............11

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............20, 21

*Hyatt v. Barnhart*,
315 F.3d 239 (4th Cir. 2002) ............*passim*

*Hyatt v. Heckler*,
807 F.2d 376 (4th Cir. 1986) ............19

*Int'l Woodworkers of Am. v. Donovan*,
792 F.2d 762 (9th Cir. 1985) ............25

*J.G.G. v. Trump*,
778 F. Supp. 3d 24 (D.D.C. 2025), *mandamus granted, order vacated by* 147 F.4th 1044 (D.C. Cir. 2025) ............4, 15

*J.G.G. v. Trump*,
No. 1:25-cv-00766 (D.D.C.) ............3

*J.O.P. v. DHS*,
No. 25-1519, 2025 WL 1431263 (4th Cir. May 19, 2025) ............3, 15, 18

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ....................20, 21, 22, 23

*Lackey v. Stinnie*,
604 U.S. 192 (2025)....................11

*Meyer v. Colvin*,
754 F.3d 251 (4th Cir. 2014) ....................12

*Pierce v. Underwood*,
487 U.S. 552 (1988)....................15

*Roth v. Comm'r Soc. Sec.*,
No. SAG-14-62, 2015 WL 567168 (D. Md. Feb. 10, 2015)....................24

*Shuler v. Comm'r of Soc. Sec. Admin.*,
No. 8:21-CV-00852-JDA, 2022 WL 14968099 (D.S.C. July 26, 2022) ....................25

*Thompson v. Sullivan*,
980 F.2d 280 (4th Cir. 1992) ....................14, 16, 17, 19

*United States v. 515 Granby, LLC*,
736 F.3d 309 (4th Cir. 2013) ....................13

**Statutes**

28 U.S.C. § 1920....................25

28 U.S.C. § 2412(d)(2)(A)(ii) ....................23

28 U.S.C. § 2412(d)(2)(B) ....................10

## I. INTRODUCTION

The Court-approved Settlement Agreement in this case shields Class Members—young asylum seekers previously determined to be unaccompanied children ("UCs")—from removal while they await a merits adjudication of their asylum application by U.S. Citizenship and Immigration Services ("USCIS"), to which they are entitled under the Agreement. ECF No. 199-2, at 6, 8-9, §§ III.B, III.I.[1] Despite the Agreement's clear terms, on March 15, 2025, Defendants removed Venezuelan Class Member "Cristian"[2] to a maximum security prison in El Salvador without affording him a merits adjudication of his pending asylum application. Class Counsel promptly raised the violation to Defendants and sought his swift return; instead of working to remedy the violation by returning Cristian, Defendants deployed shifting rationales for why Cristian's removal was permissible. Class Counsel brought a motion to enforce the Settlement Agreement on April 14, 2025, seeking Cristian's return and a class-wide order prohibiting further removals of Class Members. This Court granted the motion on April 23, 2025, ordering Defendants to facilitate Cristian's return and entering a class-wide order against removal of Class Members.

Despite the Court's swift resolution of the motion, for months after April 23 Defendants engaged in various efforts to avoid complying with the Court's order, all while Cristian remained locked up incommunicado in a foreign prison known for human rights abuses. Then, on July 18,

---

[1] "ECF" refers to the docket in this matter. "CA4 ECF" refers to the docket in the U.S. Court of Appeals for the Fourth Circuit, Case No. 25-1519, the recently dismissed appeal arising from this matter.

[2] "Cristian" is a court-approved pseudonym. ECF No. 254.

2025, instead of facilitating Cristian's return to the United States, Defendants facilitated his removal to Venezuela, his country of feared persecution. Defendants moved for voluntary dismissal of their Fourth Circuit appeal of this Court's April 23 order on February 26, 2026, which the court granted on February 27, 2026. CA4 ECF No. 57.

Plaintiffs now bring this Second Motion for Attorneys' Fees, Expenses, and Costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, to be paid by Defendants U.S. Department of Homeland Security ("DHS"), USCIS, and U.S. Immigration and Customs Enforcement ("ICE"). Plaintiffs seek a fee award of $161,823.09 for 610 hours worked related to this matter, as well as $6120.49 in expenses and costs. Plaintiffs are entitled to a fee award because they are the prevailing party in this matter, Defendants' position was not substantially justified, and no special circumstances make an award unjust. As shown in the supporting contemporaneous time records and declarations, Plaintiffs request fees that are reasonable in light of the nature of the litigation and the relief obtained.

## II. BACKGROUND

### A. JOP Settlement Agreement

After multiple years of litigation and settlement discussions, this Court granted final approval of the parties' Settlement Agreement on November 25, 2024, and expressly retained jurisdiction to supervise its implementation and enforcement and to resolve any requests for fees and costs. ECF No. 205 at 3. The Settlement Agreement protects a certified Class of young asylum seekers with previous unaccompanied child ("UC") determinations who have not yet received a merits adjudication by USCIS of their asylum application. *See* ECF No. 199-2 at 4, § II.E. The Agreement's mandatory safeguards include a right to a USCIS merits adjudication, *id.* at § III.B, protection against removal until USCIS provides the Class Member that merits

adjudication, *id.* at § III.I, and special protections from removal once a motion to enforce has been filed, *id.* at § V.D.

### B. Defendants Removed Cristian Despite Receiving Written Notification of His Class Membership

Cristian is a *J.O.P.* Class Member from Venezuela who filed an asylum application with USCIS which USCIS has not adjudicated on the merits. ECF No. 253 at 4. On March 13, 2025, after learning that ICE intended to remove Cristian, his immigration counsel notified ICE in writing that Cristian was a *J.O.P* Class Member and is protected from removal. *See* ECF No. 392 (Class Counsel's Opposition to Defendant's Motion to Vacate) at 3. Specifically, Cristian's counsel provided ICE officials with a direct link to the Settlement Agreement on Defendant USCIS's website and warned that Cristian "**<u>cannot</u>** be removed while he awaits USCIS adjudication of his I-589." *Id.* (quoting Ex. A, ECF No. 376-2) (emphasis in original). Disregarding this notice, Defendants proceeded with his removal and on March 15, 2025, ICE removed Cristian to El Salvador where he was detained at CECOT, a maximum-security prison infamous for human rights violations. *Id*. Defendants purported to justify his removal by invoking the Alien Enemies Act ("AEA") pursuant to a Presidential Proclamation issued that same day. *See* Memo in Support of Motion to Enforce, ECF No. 227-1, at 9-10.

Cristian's removal was part of a broader AEA operation that the U.S. government carried out on March 15, 2025, in which ICE removed scores of individuals, including Cristian, from the United States in defiance of federal court orders. Cristian was removed on the same flights challenged in *J.G.G. v. Trump*, No. 1:25-cv-00766 (D.D.C.). *See* ECF No. 227-1 at 4-5. In that case, the U.S. District Court for the District of Columbia found that these specific March 15 removal flights violated that court's Temporary Restraining Order and concluded that there was probable cause to hold the government in criminal contempt for its willful disregard of the court's

mandate barring the transfers. *J.G.G. v. Trump*, 778 F. Supp. 3d 24, 54 (D.D.C. 2025), *mandamus granted, order vacated by* 147 F.4th 1044 (D.C. Cir. 2025).

### C. Class Counsel Successfully Challenged Defendants' Unlawful Removal of Cristian

On March 18, 2025, Class Counsel notified Defendants that Cristian's removal violated the Agreement. *See* ECF No. 227-1, at 6. Two days later, Defendants responded by asserting that the Settlement Agreement's stay of removal did not apply given the AEA. *Id*. Class Counsel repeatedly requested a meet-and-confer with Defendants in an attempt to resolve the dispute informally. *Id*. After Defendants unilaterally canceled an agreed-upon meet-and-confer, they finally agreed to confer on April 11, 2025. *Id*. The meeting was unsuccessful: Defendants asserted that Cristian was not a Class Member even though they did not dispute that he met the elements of the Class definition; they did not agree to return Cristian; and they declined Class Counsel's request to identify other members of the Class who had been removed under the AEA. *Id*.

Days later, on April 14, 2025, Class Counsel filed an Emergency Motion to Enforce the Settlement Agreement. *See* ECF No. 227. In this motion, Class Counsel asked the Court to order the return of Cristian and to issue a class-wide ruling declaring that removals of individuals with pending asylum applications who meet the Class definition violate the Settlement Agreement. ECF No. 227-1 at 14-15. To protect Cristian and expedite relief, Class Counsel simultaneously filed motions to seal, to expedite briefing, and to proceed under a pseudonym. ECF Nos. 229, 230, 231. The emergency motion was subsequently fully briefed by the parties. ECF No. 248 (Defendant's Opposition); ECF No. 250 (Plaintiffs' Reply).

While the Emergency Motion to Enforce was pending, Class Counsel learned of the imminent removal of another Class Member, Javier,[3] under the same purported justification. *See* ECF No. 235-1 (Class Counsel's Memorandum in Support of Their Emergency Motion for TRO) at 4-5. Recognizing the immediate threat, Class Counsel filed an emergency motion for a Temporary Restraining Order ("TRO") and a motion to proceed under pseudonym, on April 16, 2025. ECF Nos. 235, 236. The Court granted the TRO the same day. ECF No. 238. During a conference call that day, the Court ordered Defendants to state by 11:59 p.m. whether they would agree not to remove any Class Member pending the upcoming April 22 hearing on the Emergency Motion to Enforce the Settlement Agreement. ECF No. 239. Defendants expressly refused to agree to halt removals of Class Members prior to the hearing. ECF No. 244 (Defendant's Notice). Faced with the government's refusal to pause its unlawful actions, Class Counsel was compelled to immediately file a motion for a class-wide TRO on April 17, 2025, which the Court granted later that same day. *See* ECF Nos. 245, 247.

The Court held oral argument on April 22, 2025, and the following day, the Court granted Class Counsel's Motion to Enforce in full. ECF Nos. 253, 254. Consistent with the relief sought by Plaintiffs, the Court issued a class-wide injunction ordering Defendants "not to remove from the United States members of the certified 'Class'" and explicitly ordered Defendants "to facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits." ECF No. 254 at 1-2.

### D. Defendants Sought to Overturn the Court's Order and Failed to Cooperate to Effectuate Cristian's Return from El Salvador

[3] As with "Cristian," Javier is a court-approved pseudonym. *See* ECF No. 254 at 2.

On May 4, 2025, Defendants filed a motion to vacate paragraph 2 of the Court's April 23 order—the paragraph directing them to facilitate Cristian's return. ECF No. 261. Defendants' motion was based on a document attached to their motion which they called an "Indicative Asylum Decision" and which postdated the Court's April 23 order. ECF No. 261-2 (Ex. A). That document stated that it was not an asylum adjudication but that if USCIS were to gain jurisdiction and adjudicate Cristian's asylum application they would deny it. *Id.* at 1, 3. The Court denied Defendants' motion to vacate at a hearing on May 6, 2025. ECF No. 270. The following day, the government filed a notice of appeal to the Fourth Circuit and a motion for a stay pending appeal. ECF No. 271 (Notice of Appeal); CA4 ECF No. 8-1 (Defendants' Motion for a Stay). In seeking the stay, the government began attempting to excuse its inaction by arguing it lacked the "formal power to direct [Cristian's] return" because Cristian was in the custody of a foreign sovereign. CA4 ECF No. 8-1 at 17. The Fourth Circuit granted a brief administrative stay, CA4 ECF No. 12, which Class Counsel successfully moved to amend to clarify that the administrative stay applied only to paragraph 2 of the Court's April 23 order. CA4 ECF No. 19 (Plaintiff's Motion to Clarify); CA4 ECF No. 21 (Order Granting Plaintiff's Motion to Clarify). Following full briefing, the Fourth Circuit issued a decision on May 19, 2025, denying Defendants' stay motion entirely. CA4 ECF No. 34.

With the stay denied, this Court ordered Defendants on May 20 to provide a status report in the form of a declaration by May 27 detailing Cristian's physical location, the steps taken to facilitate his return, and next steps. ECF No. 280. Defendants filed a declaration an hour past the deadline. ECF No. 285, 286. The following day, the Court issued an order finding that Defendants' filing had "utterly disregarded" the court's mandate and describing the government's response as "the functional equivalent of, 'We haven't done anything and don't intend to.'" ECF

No. 287 at 1. The Court invited Class Counsel to propose a process for creating a record of Defendants' noncompliance and any additional relief sought by the Class. *Id*. at 2. Class Counsel filed a proposal for expedited discovery, which the Court granted over Defendants' opposition. *See* ECF Nos. 289, 292, 293. The parties subsequently negotiated clawback and ESI protocols, and Defendants provided limited discovery responses on June 23, 2025. Meanwhile, Defendants filed a string of status reports throughout June and early July 2025 that routinely skirted the Court's directives to provide concrete information regarding Cristian's return and instead repeatedly claimed they had to rely on complex diplomatic discussions with El Salvador to secure his release. *See*, *e.g*., ECF Nos. 290, 294, 295, 300, 303, 307, 314, 330.

While contesting discovery, the government moved on June 27, 2025 to hold its Fourth Circuit appeal in abeyance, asserting it would soon seek an "indicative ruling" from this Court demonstrating compliance. CA4 ECF No. 38. Class Counsel took no position on the abeyance but noted the government's refusal to share any basis for its purported compliance. CA4 ECF No. 43, 1-2.

Defendants' delay tactics masked a larger subversion of the Court's order that came to light on July 18, 2025. That day, Defendants failed to file their required status report on Cristian by the Court's deadline. ECF No. 350 at 2. On the same day, Class Counsel notified the Court of news reports indicating that the U.S. government was, that same day, in the process of facilitating the transfer of CECOT prisoners to Venezuela, the country Cristian had sought asylum from, and flagged Defendants' missed deadline. *Id.* at 1-2. The Court ordered Defendants to respond by 5:00 p.m. ECF No. 351. Only then did Defendants file a status report and response revealing that Cristian had in fact been sent to Venezuela. *See* ECF Nos. 352, 353. On July 22, 2025, the Court

held a hearing to address these developments and, in light of Cristian's transfer, ordered the parties to file weekly joint status reports regarding efforts to facilitate Cristian's return. ECF No. 358.

**E. Defendants Manufactured an Impasse to Cristian's Return from Venezuela and the Court Denied Their Second Motion to Vacate**

For the rest of the summer and into September 2025, the parties conferred weekly and filed weekly joint status reports as Class Counsel attempted to communicate with Cristian in Venezuela and negotiate the terms of his return. *See*, *e.g.*, ECF Nos. 363, 366, 368, 379, 380, 384, 388, 390, 396, 404, 408. After Class Counsel successfully established contact with Cristian in Venezuela, he revealed that he had experienced prolonged torture during his four months of unlawful confinement at CECOT and he expressed an interest in returning but required basic assurances regarding his safety due to the trauma he endured. *See* ECF No. 363 at 3; ECF No. 366 at 3; ECF No. 384 at 2. Rather than cooperating, the government actively undermined the facilitation process by threatening to place Cristian back into immigration detention upon his return, refusing to negotiate in good faith regarding alternatives to detention, and imposing an arbitrary deadline for his decision under threat of dissolving the Court's order. *See* ECF No. 379 at 2-3; ECF No. 384 at 2.

Cristian required additional time to recover from the prolonged abuse he endured at CECOT and to safely evaluate the government's threat of re-detention. *See* ECF No. 392 at 1-2, 7-8. Rather than accommodate this need, Defendants seized on the resulting impasse they created. On August 22, 2025, Defendants filed a second motion to vacate the Court's facilitation requirement in its April 23, 2025 order, claiming that the order was now moot because Cristian purportedly no longer wanted to return. *See* ECF No. 386. On September 5, Class Counsel opposed the motion, explaining that Cristian's hesitations were the direct results of the severe

trauma caused by the government's initial unlawful removal, and that he required more time to safely evaluate the conditions of a potential return. *See* ECF No. 392 at 1-2, 7-8.

On November 14, 2025, the Court denied Defendants' second motion to vacate. *See* ECF Nos. 441, 449. In doing so, the Court rejected the government's premise that compliance was impossible or moot, reminding Defendants that "Cristian never should have been removed from this country without the bargained-for protections" and rejecting the Defendants' contention that Cristian does not wish to return to the United States. ECF No. 449 at 13-14. The Court's opinion underscored the unreasonableness of the government's overall posture, noting its "frustration with what appears to be lack of good faith government efforts at compliance with this Court's order" and that it "agrees with the general proposition that it has seen no evidence that the United States government ever made a good faith request to the government of El Salvador for Cristian's return."[4] *Id.* at 9, 11.

### F. Defendants Voluntarily Dismissed Their Fourth Circuit Appeal, Resulting in a Final Judgment

Following this Court's November 14, 2025 denial of Defendants' motion to vacate, the Fourth Circuit lifted its prior abeyance and set a new briefing schedule for the government's appeal. CA4 ECF No. 51. Ultimately, however, Defendants chose to abandon their challenge. On February 27, 2026, the Fourth Circuit entered an order dismissing the case following the government's motion to voluntarily dismiss the appeal the previous day. CA4 ECF No. 58.

[4] The Court made these findings while analyzing Plaintiffs' motion for probable cause for contempt. Because the Court ultimately declined to grant that motion, Plaintiffs have excluded time spent litigating that motion from this fee petition.

Plaintiffs now seek a fee award of $161,823.09 for 610 hours worked, as well as expenses and costs in the amount of $6120.49.[5]

## III. ARGUMENT

### A. Plaintiffs Are the Prevailing Party

Plaintiffs[6] are the prevailing party because they obtained a final, enforceable court order mandating that Defendants facilitate the return of an unlawfully removed Class Member after successfully litigating a motion to enforce the Settlement Agreement. Under the EAJA, a prevailing party is one who achieves a "material alteration of the legal relationship of the parties" accompanied by a "judicial imprimatur on the change." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604-05 (2001) (citation omitted). "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (cleaned up) (citation omitted). The Fourth Circuit has summarized the "prevailing party" standard as requiring a plaintiff to obtain "(1) a

---

[5] In Plaintiffs' prior motion for fees covering the entire litigation concluding with the Settlement Agreement's approval, Class Counsel provided notice to the Class of their fee motion following the Court's approval of the notice plan. ECF Nos. 209, 210. Class Counsel do not believe that Class notice is required under Fed. R. Civ. P. 23(h) for the instant motion, since this motion seeks fees related to post-Agreement enforcement litigation. However, upon request of the Court, Class Counsel can provide notice in the same manner effectuated for the prior motion.

[5] Each named Plaintiff is an "individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Wylegala Decl. ¶ 23; Mendez Decl. ¶ 31. Class counsel performed all work in this matter at no charge to any of the Plaintiffs. Wylegala Decl. ¶ 24. Plaintiffs agreed in their respective retainers that any fees and costs awarded will be payable to counsel. *Id.*

[6] Each named Plaintiff is an "individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Wylegala Decl. ¶ 23; Mendez Decl. ¶ 31. Class counsel performed all work in this matter at no charge to any of the Plaintiffs. Wylegala Decl. ¶ 24. Plaintiffs agreed in their respective retainers that any fees and costs awarded will be payable to counsel. *Id.*

judgment, consent decree, or similar order, (2) that grants him some relief on the merits, (3) that materially alters the legal relationship between him and the defendant, and (4) that is enforceable by the court." *Ge v. U.S. Citizenship & Immigr. Servs.*, 20 F.4th 147, 153 (4th Cir. 2021).

All four elements are met here. First, the April 23, 2025 order (hereinafter "Enforcement Order") is a definitive judgment carrying the requisite "judicial imprimatur." *Buckhannon Bd. & Care Home*, 532 U.S. at 605. For EAJA purposes, a "judgment is understood to be an order sufficiently final that an appeal will lie from it." *Ge*, 20 F. 4th at 154. The Enforcement Order was sufficiently final to trigger, and in fact did trigger, an appeal by the government to the Fourth Circuit. *See* ECF No. 271. The Fourth Circuit has long recognized that a court order to enforce a settlement agreement in a class action context is the type of judgment that confers prevailing party status. *See Hyatt v. Barnhart*, 315 F.3d 239, 244 (4th Cir. 2002) (affirming EAJA fee eligibility for a class of plaintiffs who successfully litigated motions to enforce a settlement agreement).

Second, the Enforcement Order granted Plaintiffs not only "some relief on the merits" but all the specific relief requested by Plaintiffs. *See Ge*, 20 F.4th at 153. The Court ordered Defendants to facilitate Cristian's return to the United States to await the adjudication of his asylum application on the merits and enjoined them from removing members of the certified Class. *See* Enforcement Order at 1-2, ECF No. 254.

Third, the Enforcement Order materially altered the legal relationship between the parties. A material alteration occurs when a court order modifies a defendant's behavior in a way that directly benefits the plaintiff. *Farrar*, 506 U.S. at 111-112; *see also Lackey v. Stinnie*, 604 U.S. 192, 207 (2025) (concluding that a party is a prevailing party "when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties"). Prior to the Enforcement Order, Defendants asserted they had the unilateral

authority to remove Cristian and other class members under the AEA, bypassing the safeguards bargained for in the Settlement Agreement and arguing, *inter alia*, that the AEA designation meant Cristian ceased to be a Class Member. *See* ECF No. 248 at 12-16. The Enforcement Order and accompanying opinion rejected Defendants' arguments, compelled Defendants to halt removals, and ordered them take affirmative, remedial steps to "facilitate Class Member Cristian's return to the United States." Enforcement Order at 1-2; ECF No. 253 at 8-12. By forcing the government to change its behavior and rectify its violation of the Settlement Agreement, the Order altered the parties' legal relationship to the benefit of Plaintiffs.

Fourth, this relief is fully enforceable by the Court. In both the final, court-approved Settlement Agreement and the order approving the Agreement, the Court explicitly retained "exclusive jurisdiction" to supervise the implementation of the agreement and enforce its provisions. *See* ECF No. 199-2 at 12, § V.A; ECF No. 205 at 3. In issuing the Enforcement Order, the Court exercised this retained authority to mandate the government's compliance. ECF No. 253 at 5.

In sum, Plaintiffs are the prevailing party because they secured a binding, enforceable judgement on the merits that materially altered the legal relationship between the parties to the benefit of Plaintiffs.

### B. Defendants' Position Underlying and During This Litigation Was Not Substantially Justified

Under the EAJA, an award of attorneys' fees to a prevailing party "is mandatory *unless* the government can demonstrate that its position was substantially justified, or that special circumstances make an award unjust." *Hyatt*, 315 F.3d at 244 (cleaned up) (citation omitted). The government bears the burden as to both showings. *Id.*; *see also Meyer v. Colvin*, 754 F.3d 251, 255 (4th Cir. 2014); ECF No. 333 at 3 (this Court's prior memorandum opinion awarding fees in

this case). Plaintiffs know of no circumstances that would make an award unjust, and Defendants will be unable to show that their position was substantially justified.

The government's position is substantially justified only "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." ECF No. 333 at 3 (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)). "Because the EAJA employs the singular phrase 'the position of the United States,' the Court looks to 'the totality of the circumstances' to assess substantial justification instead of engaging in 'an issue-by-issue analysis of the government's posture through each phase of the litigation.'" *Id*. (quoting *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993)). In conducting this assessment, the Court "collectively considers both the government's prelitigation conduct and its positions taken as the litigation proceeded." *Id*. (citing *Perez v. Jaddou*, 31 F.4th 267, 271 (4th Cir. 2022)). Defendants cannot meet their burden in either context.

### 1. Defendants Cannot Establish Substantial Justification for Their Pre-Litigation Conduct

"[W]hen the government's unjustified prelitigation position forces a lawsuit, the petitioner may recover fees under the EAJA for the entire suit, even if the government's litigation position was reasonable." *United States v. 515 Granby, LLC*, 736 F.3d 309, 316 (4th Cir. 2013). In the context of a motion to enforce a settlement agreement, pre-litigation conduct encompasses the agency actions that breached the agreement and the government's subsequent refusal to cure that breach prior to the filing of the enforcement motion. *See Hyatt*, 315 F.3d at 245-47 (evaluating the agency's actions prior to Plaintiffs' motion to enforce, specifically its refusal to grant class membership under a settlement agreement, to determine if the government's position was substantially justified).

Even if Defendants' litigation conduct were reasonable (which it was not), here, Defendants' pre-litigation conduct alone—their March 15, 2025 removal of Cristian and subsequent refusal to return him—was entirely unjustified. Defendants cannot meet their burden to show that their prelitigation "position [is] substantially justified in both fact and law" for at least three reasons. *Thompson v. Sullivan*, 980 F.2d 280, 281 (4th Cir. 1992).

First, Defendants lacked any reasonable basis in law for violating the Settlement Agreement. Section III.I guarantees Class Members a USCIS asylum adjudication on the merits before removal. *See* ECF No. 199-2 at 8-9. Yet, Defendants attempted to excuse their violation at the April 11, 2025, meet-and-confer by asserting that the AEA Proclamation stripped Cristian of his Class Membership. ECF No. 227-1 at 6. The Fourth Circuit has long held that the government lacks substantial justification when its construction of a class action settlement agreement is "unduly restrictive and inconsistent with the intent of the law and the ostensible purposes of the Settlement Agreement[,]" especially when that interpretation serves to exclude individuals from class membership. *Hyatt*, 315 F.3d at 248. Defendants did exactly that. They invented an AEA exemption to the Settlement Agreement. As this Court twice ruled, "[n]othing in the plain language of the Class definition mentions the AEA or exempts any persons" from the Agreement's protections. ECF No. 253 at 8; ECF No. 247-3. Summarily removing a Class Member before he receives a USCIS merits adjudication nullifies a "core purpose of the Settlement Agreement." ECF No. 253 at 10. Under *Hyatt* alone, the government cannot demonstrate substantial justification for its pre-litigation legal position because interpreting a Settlement Agreement to evade its protections is an unjustified legal position.

Second, Defendants unreasonably removed Cristian in deliberate defiance of his counsel's advance written warning and then stonewalled Class Counsel's requests that they cure their

violation of the Settlement Agreement. As detailed above, on March 13, 2025, Cristian's immigration counsel sent ICE officials a direct link to the Settlement Agreement and explicitly warned that Cristian could not be removed because he was a *J.O.P.* class member. ECF No. 392 at 3. Defendants ignored that notice and two days later forced Cristian onto a removal flight to El Salvador—where he was locked up for months in a maximum security prison and subjected to torture. *Id.* Violating a court-approved settlement agreement with actual, advance knowledge of the Settlement Agreement breach defies justification; no "reasonable person could think [the agency position is] correct." *Pierce,* 487 U.S. at 566 n.2. Moreover, in separate litigation, another court concluded that Defendants' conduct in allowing the March 15 AEA flights to proceed directly violated that court's TRO, and that their behavior was willful. *J.G.G. v. Trump*, 778 F. Supp. 3d 24, 54 (D.D.C. 2025), *mandamus granted, order vacated by* 147 F.4th 1044 (D.C. Cir. 2025).[7] Defendants then doubled down. After Class Counsel formally notified them of the violation on March 18, Defendants delayed the meet-and-confer process, unilaterally canceling a scheduled meeting before finally conferring on April 11. *See* ECF 227-1 at 6. At that meeting, Defendants refused to return Cristian and asserted the positions this Court later rejected. *Id.*

Defendants' unjustified pre-litigation conduct forced Plaintiffs into court, which alone entitles Plaintiffs to a fee award for the entire ensuing litigation regarding the Motion to Enforce and its aftermath. "[W]here the government's unjustified prelitigation position forces the

---

[7] *See also* Protected Whistleblower Disclosure of Erez Reuveni, at 7 (June 24, 2025), https://www.judiciary.senate.gov/imo/media/doc/06-24-2025_-_Protected_Whistleblower_Disclosure_of_Erez_Reuveni_Redacted.pdf (describing March 14 DOJ meeting discussing the forthcoming AEA Proclamation in which Principal Assistant Deputy Attorney General Emil Bove stated that the planes needed to take off that weekend "no matter what," that it was possible a court would enjoin the removals before they happened, and if so "DOJ would need to consider telling the courts 'f*** you' and ignore any such court order") (alteration added).

petitioner to institute the suit, the government is liable for fees for the whole suit, notwithstanding that it asserts justifiable positions on the various subsidiary disputes that may arise during litigation." *Thompson*, 980 F.2d at 281-82. Defendants chose to violate the Agreement, to ignore advance warnings, and to stonewall the mandatory dispute resolution process. Because their unjustified conduct provoked the filing the Motion to Enforce, they cannot now escape paying for it.

### 2. Defendants Cannot Show Substantial Justification for Their Litigation Conduct

Even if Defendants' pre-litigation conduct was somehow justified (it was not), Plaintiffs are entitled to fees because Defendants lacked substantial justification for their litigation conduct. The EAJA demands that the government's position be reasonable "as an inclusive whole." *Comm'r, INS v. Jean*, 496 U.S. 154, 161-62 (1990). Defendants cannot meet this burden. After violating the Settlement Agreement, Defendants waged an almost year-long campaign of obstruction: they advanced baseless legal theories, created a pretextual agency document to justify a motion to vacate, and repeatedly defied this Court's orders.

First, Defendants advanced baseless jurisdictional and textual defenses to attempt to excuse their violation of the Settlement Agreement. Instead of accepting the Court's retained jurisdiction to resolve disputes which they had agreed to when they signed the Agreement the previous year, Defendants mischaracterized Plaintiffs' motion as a habeas challenge to the AEA and claimed this Court lacked jurisdiction. ECF No. 248 at 9-13. The Court rejected that evasion as a "nonstarter." ECF No. 253 at 5. Defendants also continued their pre-litigation attempts to rewrite the Settlement Agreement. Alongside their discredited theory that the AEA stripped Cristian of his Class Membership, they advanced a new, equally tortured textual reading: that the phrase "final removal order" only applied to "Title 8" removals. ECF No. 248 at 20-21. This Court

rejected these contortions because they are atextual and because exempting AEA removals from the Settlement Agreement would nullify its purpose. ECF No. 253 at 7-10. Just as with their pre-litigation conduct, Defendants' advancing of "unduly restrictive" interpretations of the Settlement Agreement to strip Class Members of bargained-for protections is not legally justifiable under *Hyatt*. 315 F.3d at 248.

Second, even if Defendants' legal positions were sound (which they weren't), their factual position lacked any reasonable basis. "[A]n accurate recital of law cannot excuse a substantially unjustified position on the facts." *Thompson*, 980 F.2d at 281. To excuse their breach of the Settlement Agreement, Defendants, *inter alia*, invoked a "public policy" exception; they argued that Cristian's alleged membership in the Tren de Aragua gang implicated a "strong public interest" in protecting citizens from "foreign invasions and designated terrorist organizations." ECF No. 248 at 22-23; *see also* Cerna Decl., ECF No. 248-1 ¶ 13. The Court not only rejected their public policy argument but also noted that "Defendants have provided no evidence, or even any specific allegations, as to how Cristian, or any other Class Member, poses a threat to public safety." ECF No. 253, at 11; *see also* Tr. from April 22, 2025 Hearing at 32 (noting that Defendants were attempting to "mount[] an affirmative defense" and asking government counsel, "Isn't the burden on you to give me some evidence that some member of this class, whether it's Cristian or not, is a member of this gang and poses a threat?").

Third, Defendants manufactured an agency document to support a meritless motion to vacate forcing Plaintiffs to defend the Enforcement Order. Just days after this Court ordered Cristian's return, USCIS generated an unprecedented "Indicative Asylum Decision" declaring that it would deny Cristian's application if he returned. ECF No. 268, at 2-3. Defendants used this document to file a Motion to Vacate, arguing that Cristian's claims were now moot because the

Indicative Asylum Decision was an adjudication on the merits and that returning him would be futile. ECF No. 267 at 12. After a May 6 hearing in which Class Counsel vigorously opposed Defendants' motion to vacate, the Court rightfully denied the motion, noting that "[t]he indicative ruling essentially prejudges the outcome of the asylum proceeding with no ability for Cristian or his legal representatives to provide any input cinto the process, and it's not a substitute for the process that was due." DeJong Decl., Ex. C (May 6, 2025 Hearing Tr.) at 30; ECF No. 270. Defendants then appealed and sought an emergency stay, but the Fourth Circuit rejected their stay request. Judge Benjamin concluded that this Court did not abuse its discretion in rejecting the motion, spotlighting Plaintiffs' charge that the document was a "litigation-driven" "contrivance" created "just for this case," and pointedly noting the government's "deafening silence" in response. *J.O.P. v. DHS*, No. 25-1519, 2025 WL 1431263, at *8 (4th Cir. May 19, 2025) (Benjamin, J., concurring). Defending against this contrived factual record forced Plaintiffs to expend resources opposing Defendants' motions in both this Court and the Fourth Circuit. *See, e.g.*, DeJong Decl., Ex. C (May 6, 2025 Hearing Tr.) (presenting oral argument in opposition to Defendants' Motion to Vacate); CA4 ECF Nos. 24, 40.

Fourth, Defendants unreasonably and repeatedly obstructed this Court's oversight over compliance with the Enforcement Order. After ordering the government to facilitate Cristian's return, this Court mandated status reports to monitor compliance. *See* ECF No. 280; ECF No. 293. Defendants defied these orders. On May 27, 2025, they filed a report that this Court called the "functional equivalent of, 'We haven't done anything and don't intend to.'" ECF No. 287 at 1-2. The Court found Defendants "utterly disregarded" the mandate and showed "zero effort to comply." *Id.* Worse, as this Court later found, Defendants violated a filing deadline to hide their actions from "prospective judicial intervention." ECF No. 449 at 12. On July 18, 2025,

Defendants missed a noon filing deadline for their weekly report, a violation this Court agreed was "willful." *Id*. As the Court noted, Defendants conceded that they intentionally delayed the filing to "mitigate the risk" that an ongoing prisoner swap would "fall apart from public scrutiny." *Id*. The Fourth Circuit has definitively held that a government policy of non-acquiescence to binding legal mandates "cannot be 'substantially justified' in law." *Thompson*, 980 F.2d at 283 (citation omitted); *see also Hyatt v. Heckler*, 807 F.2d 376, 382 (4th Cir. 1986). Defendants' non-acquiescence to this Court's mandates bars them from any claim of substantial justification.

Finally, Defendants weaponized the trauma they caused Cristian to file a second, baseless motion to vacate. After Cristian was transferred to Venezuela and after Class Counsel was able to contact him, Defendants created a new issue by insisting he would be thrown into immigration detention if he returned. ECF 380 at 2. As Class Counsel explained, Cristian was understandably hesitant given the torture he endured in El Salvador because of Defendants' violation of the Settlement Agreement and needed time to evaluate whether he could safely return under those conditions and given his trauma. *See id.* at 2-3. Plaintiffs offered to hold the Court's order in temporary abeyance to give Cristian the time he needed to recover and decide. *Id.* at 3. Defendants flatly rejected that compromise. *Id.* Instead, they seized on his hesitation to file a second motion to vacate on August 22, 2025, arguing the return mandate was moot because Cristian had not immediately committed to returning. ECF No. 386 at 1. This Court firmly rejected that argument. ECF No. at 449 at 12-14. Forcing Plaintiffs to litigate a second motion to vacate and blaming the victim for the fallout of his own unlawful removal is objectively unreasonable.

For at least these reasons, Defendants cannot show that their litigation conduct was substantially justified.

### C. Plaintiffs Request Fees at Reasonable Hourly Rates for Hours Reasonably Worked

Because Plaintiffs have met the threshold conditions for an award under the EAJA, the Court must determine whether the requested fees are reasonable. *Hyatt*, 315 F.3d at 253. A court determines reasonable attorneys' fees by evaluating the lodestar calculation of the hourly rates applied to the hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Comm'r INS*, 496 U.S. at 161 (holding that the *Hensley v. Eckerhart* analysis applies to EAJA awards). This Court previously determined that Plaintiffs' counsel are entitled to reimbursement under the EAJA at statutory rates adjusted for cost of living. *See* ECF 333, at 8, 11. Similarly, as demonstrated below, Plaintiffs' current request for fees, which incorporates this Court's prior guidance on billing judgement, is reasonable in light of the intense and emergency nature of the enforcement litigation.

The Fourth Circuit instructs district courts to consider and make detailed findings with regard to twelve *Johnson* factors[8] relevant to the determination of reasonable attorneys' fees. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (citing *Johnson v. Ga. Highway Express*, *Inc.*, 488 F.2d 714 (5th Cir. 1974)). Plaintiffs do not rely on the *Johnson* factors to seek

---

[8] The twelve *Johnson* factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees award in similar cases. *See Johnson*, 488 F.2d at 717–19. Several of the factors entail considerations that are not present in this case, so this brief discusses the factors or aspects of factors that are most applicable in this case.

an enhanced "special factor" rate, rather they are used solely to demonstrate that the hours expended are justified to form the baseline lodestar. *See Hensley*, 461 U.S. at 434 n.9. The *Johnson* factors overwhelmingly support Plaintiffs' entitlement to the amount of attorneys' fees claimed and expenses incurred.

#### 1. Plaintiffs Expended the Hours Reasonably Necessary to Successfully Pursue the Litigation

Evaluated through the lens of the *Johnson* factors, the hours expended in the enforcement litigation were entirely justified. As to the first *Johnson* factor, the time and labor required was commensurate with the extensive volume of work Defendants forced Plaintiffs to undertake to overcome their continued defiance of this Court's Enforcement Order. To ensure compliance with the Enforcement Order and secure Cristian's return, Plaintiffs were forced to litigate multiple substantive motions and filings across two different courts over the span of ten months. Plaintiffs had to affirmatively prosecute the enforcement of the Settlement Agreement through efforts that included drafting and filing the initial Emergency Motion to Enforce, ECF No. 227; advocating for enforcement of the Agreement and Enforcement Order during multiple in-person and telephonic hearings and conferences; litigating a process for expedited discovery to uncover Defendants' noncompliance, *see* ECF No. 287; and filing emergency notices, including a notice exposing Cristian's covert transfer out of El Salvador, ECF No. 350. Moreover, Plaintiffs had to continuously defend the Court's mandate from Defendants' attacks including defeating two baseless motions to vacate in this Court, ECF Nos. 261, 386, and an emergency stay motion before the Fourth Circuit. CA4 ECF No. 8-1. Ultimately, this extensive amount of work is also fully justified by the exceptional results obtained: Plaintiffs successfully secured the Enforcement Order and defeated Defendants' multiple subsequent attempts to vacate and stay this Court's order.

The novelty and difficulty of the questions (the second *Johnson* factor) and the skill required to render legal services (the third *Johnson* factor) further justify the hours expended. The enforcement litigation required emergency briefing on an incredibly compressed timeline on complex questions on the intersection of asylum law, the AEA, and contract law, all in a context where Defendants continually shifted their legal justifications and obfuscated facts on the ground. *See supra* Section III.B.2.

The enforcement litigation required rapid coordination across multiple organizations to protect the Class and monitor Defendants' compliance. While this work required regular communications across multiple teams, Plaintiffs took robust steps to prevent duplicative billing. Mendez Decl. ¶ 30. Guided by Appendix B of the Local Rules and this Court's specific guidelines in its July 15, 2025 opinion granting EAJA fees, ECF No. 333, Plaintiff conducted a review of their contemporaneous time records to ensure only time reasonably expended is claimed. *See* ECF No. 333 at 11-12 (noting previous concerns regarding the volume of inter-team calls and the specificity of certain time entries). Accordingly, Plaintiffs significantly limited the hours claimed for team calls, billing time for only one person per organization on each call, and took care to ensure that descriptions contained adequate detail while protecting privilege. *See* Mendez Decl. ¶ 30.

Furthermore, Plaintiffs have voluntarily excluded hours of substantive work from this fee request to eliminate any risk of excessive billing including all time billed for litigating the following not fully successful motions: Motion to Compel Discovery, *see* ECF Nos. 308, 341; Emergency Motions for Prompt Notice, *see* ECF Nos. 315, 320, 347; and Motion for Contempt, ECF Nos. 375. *See* Mendez Decl. ¶ 30.

The attorneys' opportunity costs (the fourth *Johnson* factor) further justify the hours claimed. The relentless and emergency nature of the enforcement litigation forced both Public Counsel and the National Immigration Project to decline other complex litigation opportunities to protect non-citizens in order to maintain the resources to combat Defendants' actions in this case. Jackson Decl. ¶ 25; Mendez Decl. ¶ 22.

Finally, the time limitations imposed by the circumstances (the seventh *Johnson* factor) highlights exactly why Plaintiffs' hours were reasonably expended. Defendants' removal of Cristian and their shifting positions repeatedly forced Plaintiffs to execute emergency briefing on incredibly rapid timelines. Shortly after Cristian's deportation, Plaintiffs had to draft and file multiple emergency motions within a matter of hours and days to secure his return and prevent other Class Members from suffering the same fate. ECF No. 227; ECF No. 235; ECF No. 245. This time pressure regarding Cristian's safety continued throughout the litigation, including on July 18, 2025, when Plaintiffs had to file a same-day emergency filing letting the court know of his imminent transfer to Venezuela.

In sum, in light of the relevant *Johnson* factors and Plaintiffs' exercise of billing judgment, the number of hours for which Plaintiffs seek fees is reasonable.

**2. Plaintiffs' Request for Recovery at Adjusted EAJA Rates Is Reasonable**

Plaintiffs seek recovery at EAJA rates adjusted for the cost of living. *See* 28 U.S.C. § 2412(d)(2)(A)(ii) (noting "an increase in the cost of living" may provide the basis for attorneys' fees above the EAJA rate). Plaintiffs computed attorney fees for 2025, the year this litigation took place, by multiplying the $125 hourly EAJA rate by the average annual consumer price index (CPI-U) for the Baltimore-Columbia-Towson, Maryland area, divided by 153, the CPI-U value for March 1996, when the EAJA rate was adopted. Mendez Decl. ¶ 23; *Coreen I. T. v. Comm'r Soc.*

*Sec.*, No. PJM-17-2260, 2019 WL 244586, at *2 (D. Md. Jan. 17, 2019) (describing calculation of cost-of-living adjustment). Applying this calculation, Plaintiffs seek fees at an adjusted hourly EAJA rate of **$ 265.13**. Mendez Decl. ¶ 23.

There can be no dispute regarding the reasonableness of Plaintiffs' requested hourly rates. This Court has already applied these standard EAJA rates adjusted for the cost of living in this litigation, and Defendants have conceded those hourly rates were reasonable. ECF No. 333, at 8-9. Courts routinely find awards at the EAJA rate with a cost-of-living adjustment to be reasonable. *See, e.g., Roth v. Comm'r Soc. Sec.*, No. SAG-14-62, 2015 WL 567168, at *3 (D. Md. Feb. 10, 2015); *Al Daniel v. Colvin*, No. SAG-11-1318, 2015 WL 1125542, at *2 n.4 (D. Md. Mar. 11, 2015).

Plaintiffs' request is also especially modest given the caliber of the Plaintiffs' legal team. Plaintiffs seek this baseline rate for attorneys who have between twelve to over twenty years of experience. Jackson Decl. ¶ 6; Mendez Decl. ¶¶ 6, 11, 17, 27; Wylegala Decl. ¶¶ 7-9. The rate sought is massively discounted compared to the prevailing market rates recognized by this Court. Under the recently amended Local Rules (effective December 1, 2025), this Court recommends as a guideline the Fitzpatrick Matrix, adjusted downward by 5 to 20 percent to reflect the Maryland market. *See* L.R., Appx. B at 3 (Dec. 1 2025). Under that matrix, an attorney with twelve years of experience has a baseline rate of $754 per hour in 2025 and an attorney of twenty years has a baseline rate of $850. Applying even the maximum downward adjustment recommended by the court, 20 percent, the presumptively reasonable rates for Plaintiffs' legal team would range from $603 to $680 per hour. By requesting a rate of $265.13, Plaintiffs are seeking fees at roughly a 60 percent discount from the recommended guidelines. Finally, the proposed adjusted EAJA attorney rate is substantially lower than prevailing rates charged by Maryland attorneys and paralegals of

comparable skill and expertise. *See* Freeman Decl., ECF 208-9, ¶¶8, 13-14. Plainly, awarding Plaintiffs fees at the EAJA rate adjusted for cost of living is warranted.

### 3. Plaintiffs Seek Recovery of Modest Expenses and Costs

Plaintiffs also seek $6120.49 for expenses and costs incurred in 2025, including for attorney travel to in-person hearings held on April 22, May 6, and July 22. DeJong Decl. ¶ 17; Mendez Decl. ¶ 28. Attorney travel expenses may be recovered as "expenses" under the EAJA. *See Shuler v. Comm'r of Soc. Sec. Admin.*, No. 8:21-CV-00852-JDA, 2022 WL 14968099, at *2 (D.S.C. July 26, 2022) (noting that attorney travel qualifies as an expense under the EAJA statute); *see also Int'l Woodworkers of Am. v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985) (upholding award of expenses for attorney travel under EAJA). Plaintiffs also seek reimbursement of "costs" in providing copies to the Court of relevant filings, as well as copies of transcripts of the foregoing hearings, DeJong Decl. ¶ 17; Ex. B, all of which are recoverable as costs. 28 U.S.C. § 1920 (providing that costs may be recoverable for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case" and "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case").

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court award them attorneys' fees of $161,823.09 and costs and expenses of $6120.49.

Dated: March 30, 2026

Respectfully submitted,

/s/ Brian T. Burgess

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1201 Connecticut Ave. NW, Suite 531
PMB 896645
Washington, DC 20036
Phone: 540-907-1761
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project of the
National Lawyers Guild
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publicccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*