**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| J.O.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*<br><br>Defendants. | Case No. 8:19-cv-01944-SAG |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR ATTORNEYS' FEES AND COSTS**

This Court should deny Plaintiffs' Second Motion for Fees and Expenses. Plaintiffs were not a prevailing party with respect to their Motion to Compel additional discovery and, in any event, the Government's position was substantially justified in the motion to enforce briefing. Should this Court disagree, an overall reduction in fees and costs is warranted where Plaintiffs submit vague billing entries, block billing entries, and exorbitant and unnecessary cost requests.

## LEGAL BACKGROUND

Pursuant to the Equal Access to Justice Act ("EAJA"), litigants in certain types of lawsuits against the government may petition the Court to award the reasonable fees and expenses incurred during the course of the litigation. *See* 28 U.S.C. § 2412(d)(1)(A). In relevant part, the statute states the following:

> Except as otherwise specifically provided by statute, a court shall award to a ***prevailing party*** other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the

> position of the United States was ***substantially justified*** or that ***special circumstances*** make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphases added). The EAJA statute, at Section 2412(d)(1)(B) sets forth what an EAJA application must contain. It states:

> A party seeking an award of fees and other expenses shall . . . submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B) (emphases added).

## II. FACTUAL BACKGROUND

### A. Settlement Agreement

On July 1, 2019, a class of asylum seekers previously determined to be unaccompanied alien children sued Defendants the Department of Homeland Security ("DHS"), the Secretary of DHS, U.S. Citizenship and Immigration Services ("USCIS"), and the Director of USCIS to challenge guidance for determining initial jurisdiction over their asylum applications. On November 25, 2024, the Court granted final approval of a settlement agreement. ECF No. 205. Section III.I of that agreement specified that "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." ECF No. 199-2 at 9.

### B. Removal of Cristian Under the Alien Enemies Act

On March 15, 2025, Cristian,[1] a *J.O.P.* class member in ICE custody following a felony conviction for possession of cocaine, was removed under the Alien Enemies Act ("AEA"), 50 U.S.C. Ch. 3, as a Venezuelan citizen 14 years of age or older who is a member of Tren de Aragua ("TdA") following Presidential Proclamation 10,903, *Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua* ("Proclamation"). ECF No. 248-1 at ¶ 14. Cristian has not contested his designation under the Proclamation as a member of TdA, a designated Foreign Terrorist Organization. Class Counsel filed an Emergency Motion to Enforce the Settlement Agreement on April 19, 2025, alleging that Defendants' removal of Cristian was a violation of the settlement agreement because he had a pending asylum application that had not been adjudicated before his removal. *See* Memo. Mot. Enforce at 15, ECF No. 227-1.

On April 23, the Court issued an order granting Class Counsel's Motion to Enforce the Settlement Agreement. ECF No. 254. In that order, the Court rejected Defendants' argument that the settlement agreement was limited to removals under Title 8 and did not reach removals under the Alien Enemies Act. Accordingly, the Court directed Defendants to "facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement." *Id.* ¶ 2. The Court stated that "[f]acilitation includes, but is not limited to, a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody for transport back to the United States." *Id.*

Defendants filed an appeal of the Court's order in the Fourth Circuit. *See* ECF No. 271 (Notice of Appeal); *J.O.P v. United States Dep't of Homeland Sec.*, No. 25-1519 (4th Cir. 2025).

[1] As per the Court's April 23, 2025 Order (ECF 254), the class member is to be referred to by his pseudonym "Cristian."

Defendants also filed a motion in the Fourth Circuit to stay the Court's April 23 Order pending appeal. The appellate court initially granted an administrative stay, but ultimately issued a divided ruling denying a stay, with each judge writing separately. *J.O.P v. United States Dep't of Homeland Sec.*, 2025 WL 1431263, at *1 (4th Cir. May 19, 2025). Defendants later moved to dismiss that appeal, which the Fourth Circuit granted on February 27, 2026.

Following the Fourth Circuit's denial of Defendants' stay motion, the Court issued an order on May 20, 2025 directing Defendants to file a status report addressing "(1) Cristian's current physical location and custodial status; (2) what steps, if any, Defendants have taken to facilitate Cristian's return to the United States; and (3) what additional steps Defendants will take, and when, to facilitate Cristian's return." ECF No. 280 at 2. In response to the Court's orders, Defendants filed additional status reports after the report filed on May 20.

Defendants' June 2, 2025 status report included a declaration from Mellissa Harper, Acting Deputy Executive Associate Director of ICE Enforcement and Removal Operations ("ERO"), which indicated that DHS had informed the Department of State ("DOS") of the Court's April 23 Order and requested DOS assistance in complying with the Court's order. ECF No. 290-1 ¶ 4. Ms. Harper stated that DOS had informed her that it had requested information from the government of El Salvador regarding Cristian's current physical location and custodial status, to which the Salvadoran government had not yet responded. *Id.* ¶7. Ms. Harper also shared a statement from DOS noting:

> Secretary [of State] Rubio has a personal relationship with President Bukele and senior officials in the El Salvadorean government that dates back over a decade to the Secretary's service on the Senate Foreign Relations Committee. Based on this deep experience with El Salvador and the Secretary's familiarity with political and diplomatic sensitivities in that country, he is personally handling the discussions with the government of El Salvador regarding persons subject to the Court's order detained in El Salvador. Secretary Rubio has read and understands this Court's

> order, and wants to assure this Court that he is committed to making prompt and diligent efforts on behalf of the United States to comply with that order.

*Id.* ¶ 6.

On June 5, the Court entered an order directing Defendants to file weekly status reports "in the form of a declaration by an individual with personal knowledge" concerning the same three topics referenced in the May 20 order. ECF No. 293. In compliance with that order, Defendants filed seven status reports over the six weeks from June 6 to July 18. ECF Nos. 294, 295, 300, 303, 307, 314, and 330. Those reports described information received from the Salvadoran government that Cristian remained at CECOT, was in good health, had regular medical exams, and had put on weight (ECF No. 295-1 ¶ 6; ECF No. 300 ¶ 6); affirmed that diplomatic discussions at the highest levels of the Salvadoran government would be conducted by DOS (ECF No. 294-1 ¶ 7; ECF No. 300-1 ¶7; ECF No. 303 ¶ 6; ECF No. 307 ¶ 6; ECF No. 314 ¶ 6; ECF No. 330 ¶ 6); and confirmed that DOS remained in communication with the Salvadoran government but had received no additional updates from it regarding Cristian, despite repeated requests (ECF No. 303 p. 6 ¶ 6; ECF No. 314 p. 6 ¶ 7; ECF No. 330 p. 6 ¶ 7)).

The June 5 order also permitted Class Counsel to serve written discovery requests on Defendants, which they did on June 9. ECF No. 326 at 1. Defendants provided written responses on June 23. *Id.* In their responses, Defendants asserted various objections and privileges, including the state secrets privilege, while providing documents and substantive responses in as much detail as possible subject to assertions of privilege. *See generally* ECF No. 326. Class Counsel filed a Motion to Compel regarding Defendants' discovery responses, ECF No. 308, to which Defendants responded. ECF No. 326. The Court set oral argument for Class Counsel's Motion to Compel for July 22.

On July 18, after talks in which the United States served as intermediary in light of the acrimonious relationship between El Salvador and the Maduro regime in Venezuela, "the Salvadoran Government in the sole exercise of its sovereign authority, released Cristian from CECOT, along with 251 other Venezuelan nationals, to be flown to their home country of Venezuela, as part of an arrangement between El Salvador and the Maduro regime." ECF No. 352 ¶ 7. The United States, however, obtained assurances from the Maduro regime that it would not impose obstacles to an individual's travel to the United States if the travel was "called for in legal proceedings or required by a court" and "the individual [was] willing to travel to the United States for that purpose." *Id.* These assurances cleared the path for Cristian to return to the United States if he so desired. Defendants informed the Court of these developments in another status report pursuant to the Court's June 5 order, albeit after the 12 P.M. deadline set by the Court. ECF No. 352.

On July 22, following a hearing on Class Counsel's Motion to Compel, the Court issued an order tabling its June 5 order for expedited discovery and superseding the provision of the same order that required Defendants to file weekly status reports. ECF No. 358. Instead, the Court ordered the parties to file joint weekly status reports apprising the Court of developments in the parties' discussions regarding Cristian's return to the United States. *Id.* The Court denied Class Counsel's Motion to Compel, without prejudice. *Id.*

After the July 22, 2025, status hearing and issuance of the Court's order (ECF No. 358), the parties met and conferred and submitted weekly joint status reports ("JSR") to the Court. The first meeting occurred on July 23 with the subsequent joint status report filed on July 25. ECF No. 363. In this first meeting, Plaintiffs' counsel confirmed they were able to communicate with Cristian but represented that he "would need time to attempt to recover" from alleged torture in

CECOT—an allegation Defendants vigorously contest—"and to understand options available to him." *Id.* at 3. Defendants "confirmed that they are prepared to continue to comply with the court's order by facilitating Cristian's return to the United States should he want to return" and requested information necessary to facilitate his return including his location in Venezuela and what travel documents he possessed. *Id.* at 2.

The second meeting occurred on July 30 and the JSR was filed on August 1. ECF No. 366. Class Counsel did not confirm "whether Cristian wishes to return to the United States," and explained that "basic information and assurances from the government are necessary so that Cristian may make an informed decision." ECF No. 366 at 3. To that end, Class Counsel conveyed thirteen separate questions regarding how Cristian would be treated should he return. Defendants answered these questions at the next meeting on August 6. ECF No. 368 at 2. In the JSR filed on August 8, Class Counsel represented that they "continued to be in contact with Cristian and that they would inform Defendants and the Court as to Cristian's intentions as soon as they are able to do so." *Id*. at 2-3. Class Counsel stated that "Cristian's interest in returning to the United States to receive his asylum adjudication is undermined by serious reservations based on the government's representations of how he will be treated upon his return, including whether he will be detained and the possibility of removal to a third country without a hearing or the opportunity to object." *Id*. at 3. The fourth meeting occurred on August 13, and the JSR was filed on August 15. ECF No. 380. During the interim period between the third and fourth meet-and-confers, Defendants responded to a series of questions submitted by class counsel. *Id*. at 1-2. In answering these questions, Defendants confirmed that they would cover reasonable travel costs and confirmed again that Cristian would be returned to immigration detention upon his return to the United States. While Class Counsel answered one of Defendants' pending questions relating to what travel

documents Cristian possessed, answers to Defendants' other questions first posed on July 22, 2025, remained pending. *Id.* at 1.

Class Counsel also relayed that the government's representations had "undermined Cristian's interest in returning to the United States to receive his asylum adjudication." *Id.* at 2. The most "significant" of these concerns was the fact that Cristian would again "be detained upon his return." *Id.* at 2. The next JSR, filed on August 22, was not preceded by a meeting because Class Counsel did not have any updates at the time. ECF No. 384 at 1. However, on August 22, 2025, Class Counsel for the first time indicated that Cristian has expressed "an interest in returning to the United States" but continued to have "strong reservations about Defendants' stated intention to detain him indefinitely upon return." *Id.* at 2. The next JSR was also not preceded by a meet and confer because once again Class Counsel indicated that they did not have any update to share with Defendants and that they had not been able to communicate with Cristian that week. ECF No. 388. So too for the seventh JSR. *See* ECF No. 390. On August 22, 2025, Defendants filed their second motion to vacate, which was denied on November 14, 2025.

**C. The Court's Prior Grant of EAJA to Plaintiffs**

On November 25, 2024, the Court entered final approval of the parties' settlement agreement, which resolved the merits of the litigation but permitted Plaintiffs to seek attorneys' fees, which Plaintiffs did on December 24, 2024; they requested attorneys' fees in the amount of $1,820,206 as well as expenses in the amount of $4,812 pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. On July 15, 2025, the Court entered an order partially granting Plaintiffs' motion, awarding attorneys' fees to Plaintiffs in the amount of $909,809.17 and expenses in the amount of $4,812.00. In doing so, the Court reasoned that "while certain elements of its position were reasonable . . . its implementation was not in accordance with the law, both in the lack of

notice and comment rulemaking and the retroactive application of the new policy to existing asylum applications." ECF No. 333 at 8. As to the reasonableness of the EAJA award, the Court rejected the Plaintiffs' argument that three of the attorneys possessed "special factors" warranting a receipt of enhanced hourly rates under 28 U.S.C. § 2412(d)(2)(A)(ii). ECF No. 333 at 9. Instead, it applied the standard EAJA rates adjusted for cost of living for all attorneys. *Id.* at 10-11. The Court found that a reduction of 15% from the requested number of hours was warranted to account for Plaintiffs' billing deficiencies. *Id.* at 13.

## II. ARGUMENT

The government does not challenge Plaintiffs' assertion that they are the prevailing party with respect to Plaintiffs' Second Motion for Attorneys' fees. ECF No. 505-1 (Pls.' Mot.) where Plaintiffs seek fees and costs related to their motion to enforce. However, Plaintiffs were not a prevailing party in any sense of the definition as to Plaintiffs' Motion to Compel Discovery that this Court denied without prejudice, ECF No. 358. The Court should deny any fees and costs requests that Plaintiffs seek that are directly related to that motion.

In any event, because the government's litigation positions were "substantially justified," Plaintiffs' Second Motion for Attorneys' Fees and Expenses should be denied outright. In the alternative, even if the Court finds that the government's position was not substantially justified, it should significantly reduce the amount of fees and expenses awarded because the amount claimed is not "reasonable" under controlling EAJA precedent.

### I. The Government Was Substantially Justified in its Position Based on the Exact Terms of a Negotiated Contract

When evaluating whether the government's position is substantially justified under the EAJA, courts in the Fourth Circuit consider the government's overall conduct, including both pre-

litigation action and litigation posture, rather than analyzing individual issues separately. *See, e.g*, *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993); *United States v. 515 Granby, LLC*, 736 F.3d 309, 316 (4th Cir. 2013) (collecting cases). The government does not need to win the case to be substantially justified, but it bears the burden of showing its position had a reasonable basis in law and fact—that is, a reasonable person could find it correct. *United Stats v. 515 Granby, LLC*, 736 F.3d 309, 315 (4th Cir. 2013). This standard allows the government some flexibility, provided its stance is not entirely unreasonable. *See, e.g.*, *Perez v. Jaddou*, 31 F.4th 267, 271 (4th Cir. 2022); *Hess Mech. Corp. v. N.L.R.B.*, 112 F.3d 146, 149 (4th Cir. 1997).

Here, the government entered into a 16-page, arms-length negotiated class action settlement agreement. ECF No. 199. That settlement provides that "[w]ith respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." ECF No. 199-2 at 9. That language—final removal order—implicated Title 8 of the U.S. Code, a reference that occurs throughout the executed document. *See id.* The parties did not explicitly agree to any terms that involved removal under Title 50 of the U.S. Code. A textual analysis of the government's position and the settlement agreement makes clear that this position was not "unduly restrictive and inconsistent" with the exact negotiated terms of the agreement. *See Hyatt v. Barnhart*, 315 F.3d 239, 248 (4th Cir. 2002). Nor was such a position an evasion of the agreement's protections based on those exact negotiated terms. *See id.*; Pls.' Mot. 14. The Court later ruled that "[n]othing in the plain language of the Class definition mentions the AEA or exempts any persons" from the settlement agreement's protections. *See* ECF No. 253 at 8; ECF No. 247-3.

While an agency must do more than show that its position was "merely undeserving of sanctions for frivolousness", *see Pierce v. Underwood*, 487 U.S. 552, 566 (1988), it need not "establish it was correct," *Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329, 1332 (D.C. Cir. 1998). The Court's rejection of the government's position that the settlement agreement was limited to removals under Title 8 of the U.S. Code does not overhaul the settlement agreement to a point where the government was not substantially justified at the time of its pre-litigation position in the context of the parties' negotiated agreement. The apparent ambiguities of the agreed-upon terms borne out before this Court in Spring 2025 separate this class action enforcement matter from other cases Plaintiffs relied upon where courts ruled against the government with respect to actions taken under the AEA. *See* Pls.' Mot. 15-17; *see, e.g.*, *J.G.G. v. Trump*, 778 F. Supp. 3d 24, 54 (D.D.C. 2025), *mandamus granted, order vacated by* 147 F.4th 1044 (D.C. Cir. 2025). In fact, the Fourth Circuit split on the issue of likelihood of the government prevailing on its appeal of the April 2025 order such that a stay was appropriate. *J.O.P. v. United States Dep't of Homeland Sec.*, No. 25-1519, 2025 WL 1431263, at *17 (4th Cir. May 19, 2025) (Richardson, J., dissenting) ("Because the injunction goes too far, a*nd the government's success on the merits is therefore all but assured*, I would grant a stay.") (emphasis added).

More importantly, Plaintiffs' continued reliance on *J.G.G. v. Trump* (Pls.' Mot. 3, 4, 15) is untenable. As the D.C. Circuit explained, in *J.G.G.*: "The Supreme Court vacated the district court's order because it was premised on a legal error and the plaintiffs' suit was brought in the wrong court." *In re Trump*, No. 25-5452, 2026 WL 1001512, at *1 (D.C. Cir. Apr. 14, 2026). Since then, the D.C. Circuit has continued to check the *J.G.G.* district court's actions, twice granting the extraordinary remedy of mandamus to halt the judicial "impairment of another branch in the performance of its constitutional duties." *In re Trump*, No. 25-5452, 2026 WL 1001512, at *1

(D.C. Cir. Apr. 14, 2026) (*citing Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 390 (2004) (cleaned up)). Accordingly, this Court should deny Plaintiffs' motion.

**B. Plaintiffs Seek Unwarranted Fees and Costs**

Even if this Court decides that the government was not substantially justified in its position, this Court should find that Plaintiffs seek an unwarranted amount of attorneys' fees and costs.

The award of "fees and other expenses" must be "reasonable." 28 U.S.C. § 2412(d)(2)(A)(ii). Reasonableness relates to the rate of compensation and the total time charged. *Hyatt v. Barnhart*, 315 F.3d at 248 (4th Cir. 2002). A prevailing party is entitled to compensation only for the reasonable time expended in the litigation, not to all time billed. *See Hensley v. Eckerhart*, 461 U.S. 424, 436-37, (1983); *Hyatt*, 315 F.3d at 253-54. The party seeking an award of fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Counsel must also exercise "billing judgment" in the hours worked. *Id.* at 433-34. The district court possess "substantial discretion in fixing the amount of an EAJA award" to ensure its reasonableness. *Hyatt*, 315 F.3d at 254.

To determine a reasonable fee, the Fourth Circuit has directed district courts to (i) calculate the lodestar figure, which is determined by multiplying the "reasonable hourly rate" by the "hours reasonably expended" in light of the factors enumerated in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) and *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989); (ii) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (iii) award some percentage of the remaining amount, depending on the degree of success achieved. *Grissom v. Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The lodestar figure is presumptively reasonable and may only be adjusted "in

those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The *Barber/Johnson* factors are (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to acceptance of the case; (v) the customary fee for such services; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the representation, (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

**i. Motion to Compel Discovery**

Plaintiffs are not entitled to fees or costs related to their unsuccessful motion to compel discovery. "Where [a party] has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). The court's analysis under the "time and labor required" (i) and "the amount involved and results obtained" (viii) for an EAJA award as to the motion to enforce requires reduction of any attorneys' fees and costs directly related to Plaintiffs' motion to compel to discovery.

The Court granted Plaintiffs' proposal for expedited discovery in early June 2025, and Defendants did respond to limited discovery. Pursuant to the Court's June 5, 2025 Order, the Court limited discovery to ascertaining Defendants' compliance with this Court's Orders: "(a) to facilitate Class Member *Cristian's* return to the United States, ECF 254; and (b) to provide a status report on the steps they have taken to facilitate the return of *Cristian* to the United States for

adjudication on the merits of his asylum application by USCIS, including evidence concerning *Cristian's* current physical location and custodial status, what steps, if any, Defendants have taken to facilitate *Cristian's* return to the United States, and what additional steps Defendants will take, and when, to facilitate *Cristian's* return, ECF 280." *Id.* ¶ 2.

However, this Court denied Plaintiffs' subsequent Motion to Compel Discovery. Plaintiffs filed their motion on June 30, 2025, Defendants opposed on July 9, 2025, and Plaintiffs replied on July 16, 2025. The Court heard argument on July 22, 2025, and subsequently denied the motion without prejudice the same day on July 22, 2025. ECF No. 358. The government recognizes that there were several issues being litigated at this time, but any concrete request for fees and costs as to the motion to compel discovery must be denied and/or severely reduced based on the Court's July 22, 2025 order. This includes fees and costs for travel to and attendance at the July 22, 2025 hearing in Baltimore, Maryland and any other associated costs. *See, e.g.,* Pls.' Mot., Decl. of Kevin DeJong, Ex. A-B, ECF No. 506 (attending July 22, 2025 hearing); Decl. of Michelle Mendez, Ex. A-B, ECF No. 507 (attending July 22, 2025 hearing). These costs and fees must be excluded from any award.

**ii. Vague Entries**

Vague time entries also warrant an across-the-board reduction. A significant number of time entries submitted by Plaintiffs' counsel are so vague and lacking in support that neither Defendants nor the Court can accurately assess whether they were reasonably expended. In such circumstances, the Court in its discretion should apply an across-the-board reduction of the amount claimed. *See Hensley*, 461 U.S. at 433 ("[w]here the documentation of hours is inadequate, the [] court may reduce the award accordingly"); *Role Models Am.,* 353 F.3d at 973 (reducing fee award by 50% after finding numerous and serious deficiencies). For example, several billing entries

describe the vague description of "work" without explaining in detail what actions occurred. *See, e.g.*, ECF No. 507-1 at 10 ("Follow up work regarding class member . . . "); *id.* at 2 ("Work related to wrongfully deported class member . . ."), *id.* at 5 ("Work on Class Member … case…"); ECF No. 509-1 at 3 ("…also discovery work…"). Thus, the Court should reduce the amount of the award.

**iii. Block Billing**

Counsel's time records contain several entries that combine multiple tasks such as research, drafting, and filing into single time blocks without sufficient detail to permit meaningful review. "Inadequate documentation includes the practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). "Courts in this circuit have routinely held that "block billing" does not provide the court with a sufficient breakdown to support an attorneys' fee request." *Wyatt v. Owens*, 7:14-cv-492, 2018 WL 10613184, at *10 (W.D. Va. 2018). Class Counsel submits various billing records that amount to block billing. *See, e.g.*, ECF No. 506-1 ("Assess legal research related to discovery issues; assess strategy for class member issues; prepare for and attend meet and confer with government on amended PO."); *id.* ("Edit amended PO, ESI protocol; ESI specifications, and clawback agreement, and send to opposing counsel; asses strategy on class member issues."); *id.* ("Review and edit letter to court; email to government counsel; prepare for court hearing."). This method of lumping together of time entries is a proper basis for reducing a fee award as it "prevent[s] an accurate determination of the reasonableness of the time expended in a case." *Guidry*, 422 F. Supp. 2d at 294. The Court should reduce the amount of the award.

**iv. Team Calls**

Plaintiffs bill for multiple team calls, with each attorney claiming an hourly rate for each call. As this Court previously held, "[i]n the context of this case, this practice is similar to an intra-office conference, for which the advisory guidelines in the Local Rules suggest that only one attorney should be billed." ECF. 333 at 12 (citing Loc. R. App. B at 2.d). And, "[w]hile this Court does not adhere strictly to those guidelines and will not reduce each call down to a single billing attorney, it does consider the billing entries with greater caution given the frequency and the unspecified nature of the "'team calls.'" *Id.* Here, Plaintiffs billed for team calls for multiple billing attorneys on, for example, April 9, April 14, May 23, May 29, and May 30. The Court should similarly reduce the overall award for these "team calls."

**B. Plaintiffs' Costs and Expenses Are Unreasonable**

Plaintiffs' request for costs and expenses in this matter is unreasonable and should be denied entirely or at the very least, significantly reduced. As a preliminary matter, the costs and expenses they demand reimbursement for here ($6,120.49) exceed those they sought in their first EAJA action ($4,812, *see* ECF No. 208 at 1) by 27%. That 27% difference is significant considering the first action was for all fees and costs accrued "from 2019 through mid-December 2024"—including all stages of litigation through settlement (ECF No. 208-1 at 6), whereas the instant motion is limited to settlement enforcement activities from the roughly one-year period of March 2025 until March 2026 (*e.g.*, ECF No. 508-1 at 1-8). On its face, this number is unreasonable.

An examination of the claimed expenses themselves reveals many unjustified or excessive items that cast doubt on the overall reasonableness of Plaintiffs' claims. For instance, even though the Court is located in Baltimore, Maryland, Plaintiffs chose to book flights into Reagan National

Airport in Washington, DC instead of Baltimore-Washington Airport. *See* ECF No. 506-2 at 21. Plaintiffs on at least one occasion took a taxi from Reagan National Airport in Washington, DC to Baltimore—that taxi cost $211.19. ECF No. 506-2 at 18. Even assuming they had attempted to justify staying nearly 40 miles away from the courthouse (which they did not), they offer no explanation as to their failure to take the MARC or Amtrak trains between Washington, DC and Baltimore, rather than a much more expensive taxi. Plaintiffs also elected to stay in a luxury hotel—located in downtown Washington, DC (ECF No. 506-2 at 8)—and they seek reimbursement for lavish meals at that luxury hotel. *E.g.*, ECF No. 506-2 at 7 ($66.10 dinner at The Mayflower Hotel), ECF No. 506-2 at 56 ($32 breakfast at The Mayflower Hotel), ECF No. 506-2 at 6 ($30.20 lunch at The Mayflower Hotel).

Even when Plaintiffs elected to stay in the same city as the Court, they chose to stay at The Four Seasons, another luxury hotel, despite a plethora of more reasonably priced options in the area. ECF No. 506-2 at 33. Their claimed expenses include indulgent meals, such as a $44.04 breakfast at The Four Seasons. ECF No. 506-2 at 34. *See also* ECF No. 506-2 at 25 ($35.24 breakfast at The Hyatt Regency); ECF No. 506-2 at 26 ($55.95 dinner at a pub). These expenses are plainly unreasonable.

Perhaps most concerning is Plaintiffs' attempt to force the government to foot the bill for plane tickets to West Palm Beach, Florida. ECF No. 506-2 at 21; 506-2 at 5. They offer no justification whatsoever for traveling to coastal Florida. Relatedly, Plaintiffs seek reimbursement for a $246.24 taxi ride. Although they allege this taxi was between counsel's home and the airport (ECF No. 506-2 at 2), the accompanying receipt is a Venmo transaction devoid of a merchant or any indication of the nature of the services rendered—or even assuming it really was for a taxi, the origin or destination of the claimed ride. ECF No. 506-2 at 10. And even if Plaintiffs had provided

adequate records on this item, nearly $250 to get to the airport is patently unreasonable. Along the same lines, Plaintiffs demand payment for a July 29th taxi ride to Hingham, MA costing $112.19. ECF No. 506-2 at 4. They do not explain how this taxi ride relates to this case. All of these costs should be stricken from any cost award this Court grants.

Other listed costs are internally inconsistent. For instance, Plaintiffs seek reimbursement for a $92 overnight parking fee on July 22, yet they also demand payment for a taxi from the office to the airport the day before and a taxi from the Court to airport the same day as the parking charge. *See* ECF No. 506-2 at 3, 4. They do not explain why they needed both taxis and (extremely expensive) overnight parking.

Furthermore, this court—while acknowledging time entries may necessarily require some ambiguity to protect privileged work—previously reduced the overall EAJA award for vague entries. ECF 333 at 12 (identifying vague entries such as "amended complaint," prepare for mediation," and "research" "without specifying the actual nature of the work performed"); *see also id.* at 13 (citing *Hensley*, 461 U.S. at 433). The Court should similarly reduce the costs here where the billing entries do not specify the actual nature of the work performed.

Plaintiffs' demand for costs and expenses is unreasonable, and the Court should deny their request entirely. Alternatively, in addition to striking the costs that are unrelated to this case, the Court should reduce the overall demand by at least 75% due to the unreasonable nature of most of Plaintiffs' costs.

**CONCLUSION**

This Court should deny Plaintiffs' motion.

DATED: April 19, 2026

Respectfully submitted

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CATHERINE M. RENO
Acting Assistant Director

*/s/ Ruth Ann Mueller*
RUTH ANN MUELLER (DC Bar 1617339)
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington D.C. 20044
Telephone: (202) 598-2445
ruth.a.mueller@usdoj.gov

JOSHUA CLEM
LARISSA JOHNSON
EVAN P. SCHULTZ
Trial Attorneys

*Counsel for Defendants*

**Certificate of Service**

I certify that that I served the aforementioned document on Plaintiffs' counsel via ECF on April 19, 2026.

*/s/ Ruth Ann Mueller*
RUTH ANN MUELLER
Senior Litigation Counsel