**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| J.O.P., *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>    Defendants. | Civil Action No.<br>8:19-CV-01944-SAG<br><br>**FILED UNDER SEAL** |

**CLASS COUNSEL'S SUPPLEMENTAL BRIEF
IN SUPPORT OF THEIR MOTION TO ENFORCE THE COURT-ORDERED
SETTLEMENT AGREEMENT
AND TO FIND DEFENDANTS IN CIVIL CONTEMPT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   FACTUAL BACKGROUND................................................................................ 2

    A.    Defendants Stonewalled for Months Leading Up to the March 2026
        Evidentiary Hearing................................................................................... 2

    B.    The March 2026 Evidentiary Hearing Revealed Systemic Failures in
        Defendants' Compliance with the Settlement Agreement....................................... 3

        1.    USCIS's Class Lists Exclude Thousands of Class Members ..................... 4

        2.    USCIS's "No Asylum Adjudications Policy" Deprives Class
            Members of Their Rights Under the Agreement ........................................ 6

        3.    ICE Officers Blatantly Disregard the Settlement Agreement, the
            Court's April 23 Order, and Their Own Purported Policies ....................... 8

        4.    ICE Officers Have Inadequate Training on How to Apply the
            Settlement Agreement............................................................................. 12

    C.    Defendants' Misrepresentations Were Laid Bare During the March 2026
        Hearing................................................................................................ 13

III.  ARGUMENT................................................................................................... 16

    A.    Defendants Continue to Blatantly Violate the Settlement Agreement and
        the Court's April 23, 2025 Order............................................................. 16

    B.    The March 2026 Evidentiary Hearing Confirms that Defendants Should
        Be Held in Civil Contempt for Violations of the Court-ordered Settlement
        Agreement and the Court's April 23 Order ............................................... 19

    C.    The March 2026 Evidentiary Hearing Reinforces That Class Counsel's
        Proposed Remedial Orders Are Necessary to Prevent Additional
        Violations of the Settlement Agreement and the Court's April 23, 2025
        Order ................................................................................................... 21

        1.    The March 2026 Hearing Confirmed That the Court Should Order
            Defendants to Confirm Class Membership Status Before Removal......... 23

        2.    The March 2026 Hearing Confirmed That Defendants Should Be
            Required to Train ICE Personnel on ICE's Obligations Under the
            Settlement Agreement............................................................................. 25

        3.    The March 2026 Hearing Confirmed That Defendants Should Be
            Ordered to Provide a Retrospective Accounting Regarding Their
            Compliance with Section III.I of the Settlement Agreement.................... 27

        4.    The March 2026 Hearing Demonstrated That the Court Must
            Prohibit Defendants from Applying the No Asylum Adjudications
            Policy to Detained Class Members Pursuing a Section III.G.
            Expedited Adjudication ......................................................................... 28

i

IV.　　CONCLUSION ................................................................................................................. 29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Enovative Techs., LLC v. Leor*,
  No. JKB-14-3956, 2015 WL 11027765 (D. Md. June 8, 2015) ...............................................21

*Fernando T. v. Noem*,
  No. 26-CV-445, 2026 WL 508807 (D. Minn. Feb. 23, 2026) ..................................................21

*Hardy v. Asture*,
  No. 1:11CV299, 2013 WL 566020 (W.D.N.C. Feb. 13, 2013) ...............................................26

*J.L. v. Cuccinelli*,
  No. 18-CV-04914-NC, 2020 WL 2562895 (N.D. Cal. Feb. 20, 2020) ...................................20

*McLean v. Cent. States, Se. & Sw. Areas Pension Fund*,
  762 F.2d 1204 (4th Cir. 1985) ...............................................................................................20

*Portland v. City of Portland*,
  No. 3:20-CV-00917-HZ, 2021 WL 982613 (D. Or. Mar. 16, 2021) ......................................26

*Rufo v. Inmates of Suffolk County Jail*,
  502 U.S. 367 (1992).................................................................................................................23

**Other Authorities**

Fed. R. Civ. P. 60(b) .................................................................................................3, 23, 27, 28

## I.    INTRODUCTION

The March 2026 evidentiary hearing revealed what Defendants have actively tried for months to hide from the Court—their "process" to comply with the Settlement Agreement and the Court's April 23, 2025 Order is broken.  USCIS fails to identify all Class Members to ICE.  ICE fails to enter alerts in Class Members' records that they may be subject to the stay of removal in this case.  And even if an alert is added, ICE Officers remove Class Members with complete disregard of the alert.  As a result, likely more than one hundred Class Members have been removed from the country in violation of the Court's orders.

The 3-day hearing also laid bare Defendants' misrepresentations to the Court.  Defendants' violations were not "isolated events" involving a "small number" of Class Members, as Defendants represented, but instead a colossal failure in the removal of likely more than 100 Class Members.  Defendants asserted for months that it was too "complicated" to figure out whether, and when, *JOP* alerts had been added to Class Member records, but an ICE Information Technology supervisor quickly found that information on the Sunday evening before the day he testified.  Defendants' stonewalling and misrepresentations are not actions of a party acting in good faith.

Defendants should be held in civil contempt of the Court-ordered Settlement Agreement and the Court's April 23, 2025 Order.  Defendants have repeatedly violated these orders, and their violations have severely harmed Class Members by removing them to the countries from which they fled and by depriving them of an adjudication of their asylum application.  Absent Court intervention, countless more Class Members will be removed and their rights violated.

The March 2026 evidentiary hearing exposed that there was no single point of failure that led to the removal of Class Members, but instead multiple failures at nearly every step.  As a result, a web of remedies is needed as a safety net to prevent the removal of more Class Members.  As Class Counsel previously asserted, Defendants should: (1) take all necessary steps to determine

1

whether any individual Defendants seek to remove is a Class Member; (2) provide prompt, individual notice to detained Class Members of their rights under the Agreement; (3) undertake a comprehensive review to identify any other Class Members wrongfully removed; (4) provide regular status reports regarding compliance with this Court's orders; and (5) return wrongfully removed Class Members who wish to return to the status quo ante. Given the glaring defects that came to light from the March evidentiary hearing, Class Counsel submits that Defendants also must provide written guidance and training to ICE personnel regarding their obligations to comply with the Settlement Agreement and the Court's April 23, 2025 Order.

Class Counsel have also filed a motion to extend the termination date of the Settlement Agreement in view of Defendants' failure to adjudicate likely well over 74,000 Class Member asylum applications (ECF No. 535). The relief sought in the instant Motion to Enforce is equally important, as the likely well over 74,000 Class Members must not be removed from the United States while their asylum application remains pending with USCIS. The Court should grant the proposed relief to remedy Defendants' continuing violations of the Court's order and to prevent further unlawful removals of Class Members awaiting an asylum adjudication on the merits.

II.      FACTUAL BACKGROUND

A.       **Defendants Stonewalled for Months Leading Up to the March 2026 Evidentiary Hearing**

The procedural history leading up to the filing on January 22, 2026 of the Motion to Enforce is set forth in Class Counsel's Opening Brief. ECF No. 459-2 at 2-11. The motion sought several remedies for the removal of eight asylum seekers in violation of the Settlement Agreement and the Court's April 23, 2025 Order. *Id.* at 1, 17-30. During oral argument on February 18, 2026, the Court sought "as much factual clarification as possible from the Government . . . about what we know happened with respect to some of these individuals." Ex. 1 at 4. Yet, Defendants' counsel

represented that they had no information on when banners were added to the Class Members' files, whether the Class Members appeared on a list provided by USCIS, or any information on any efforts to ascertain that information. *Id.* at 10-15. And Defendants' counsel had no information on how the Dec. 2, 2025 USCIS policy to pause asylum adjudications ("No Asylum Adjudications Policy") was being applied to Class Members.[1] *Id.* at 61.

As a result, the Court stated that an evidentiary hearing was needed to address "what happened with respect to these individuals that were removed," and that "more briefing was needed from both sides on Rule 60(b) and the changed circumstances." *Id.* at 89-90. On February 23, the Court scheduled an evidentiary hearing for March 19, 2026 and ordered Defendants to "produce individuals with personal knowledge to provide testimony" at that hearing regarding, among other things, the "[f]acts and circumstances surrounding Defendants' removal of eight confirmed and potential Class Members," to include, but "not limited to, whether Defendants are technologically able to determine whether banners appeared in the Class Members' records at the time of their removal and, if not, why not." ECF No. 472.

**B.    The March 2026 Evidentiary Hearing Revealed Systemic Failures in Defendants' Compliance with the Settlement Agreement**

Originally scheduled for only one day, the evidentiary hearing lasted three days, with a total of 16 witnesses. Defendants' stonewalling continued into the hearing, with multiple witnesses testifying as to no personal involvement or knowledge of the underlying facts, leading to yet more

---

[1] For months, Defendants refused to engage on whether the No Asylum Adjudications Policy applied to Class Members. ECF No. 535-1 at 9 n.2. After a meet-and-confer on February 25, 2026 shed no light on Defendants' position, Class Counsel was forced to file a motion to compel to try yet again to elicit Defendants' position. ECF No. 474. The Court granted the motion to compel, ECF No. 479, leading to another meet-and-confer on March 8, 2026. ECF No. 481.

witnesses called to testify.    *E.g.*, ECF No. 535-4[2] at 129-131; ECF No. 535-5 at 128-131. Nevertheless, the hearing finally illuminated what Defendants left in the shadows—there is no single cause for Defendants' removals of likely more than 100 Class Members in violation of the Court's orders.  Instead, systemic failures taint nearly every step of the process.  The hearing also revealed that likely well over 74,000 Class Members have yet to have their asylum applications adjudicated, exacerbated by the No Asylum Adjudications Policy.

### 1.    USCIS's Class Lists Exclude Thousands of Class Members

The deficiencies start with USCIS's facially inadequate procedures to identify Class Members.  Rather than undertake any identification of Class Members, ICE relies exclusively on USCIS lists of "potential" Class Members to decide for whom it will honor the stay provision in Section III.I.  ECF No. 459-4; ECF No. 435, Ex. B (filed under seal) ¶ 23.  While Defendants characterized USCIS's lists as "broader than the actual J.O.P. class," ECF No. 459-4, in fact, they exclude a significant subset of the *J.O.P.* Class.  *See* 12.22.2025 M&C Tr.[3] at 0022:34-00:23:54; ECF No. 459-2 at 9; ECF No. 535-1 at 4-5, 17.

Testimony at the March 2026 evidentiary hearing revealed that the deficiencies in USCIS's Class list were intentional.  Asylum Officer Kimberly Sicard, who helped to create the parameters for who would be included on USCIS's Class lists, testified that USCIS set up the Class lists to only include unaccompanied children who were in removal proceedings at or before the time they filed their asylum application, as shown by "special group code" of "PRL" or "PRP-PRL" assigned to their file.  ECF No. 535-4 at 63, 71-73, 75-77.  This design flaw means that likely thousands of

---

[2] The transcripts for the March 19, 20, and 23 evidentiary hearings were provided to the Court in full in support of Class Counsel's Motion to Extend the Termination Date of the Settlement Agreement.  *See* ECF No. 535-4; ECF No. 535-5; ECF No. 535-6.

[3] On January 22, 2026, Class Counsel provided the Court a copy of the recorded meet-and-confer on a USB stick.

Class Members never made it onto USCIS's Class lists, as Defendants' own reports show that several hundred thousand unaccompanied children had not been placed by DHS into removal proceedings as of May 2024 and January 2025.[4]  This deficiency likely explains why two removed Class Members, F.D.E. and L.O.B., did not appear on a Class list until after ICE removed them.  *Compare* ECF No. 535-5 at 92-93 (USCIS added F.D.E. to the Class list on June 27, 2025 and L.O.B. on September 26, 2025), *with id.* at 124 (ICE deported F.D.E. in May 2025); *id.* at 149 (ICE deported L.O.B. in August 2025).  ████████████████

████████████████████████████████████████████████

████████████████████████████████ Wylegala Decl. ℙ 9.

Officer  Sicard  confirmed  that  USCIS's  lists  are  underinclusive  for  a  second reason:  they exclude Class Members whose asylum applications USCIS wrongfully rejected for lack of jurisdiction.  ECF No. 535-4 at 77-78; ECF No. 535-5 at 102-104. This limitation likely prevented hundreds of Class Members from being timely included on the Class list.  *See, e.g.*, ECF No. 450 at 2-3 (as of Nov. 2025 USCIS had retracted 368 jurisdictional denials as required by the Agreement); ECF No. 455 at 2 (noting that Class Counsel had raised to Defendants at least 26 wrongful rejections of Class Members' asylum applications as of Nov. 2025).

The March 2026 hearing also revealed USCIS's woefully inadequate timing of transmitting the Class lists to ICE.  Until November 24, 2025 (a full year after the Agreement went into effect),

---

[4] ECF No. 535-10, DHS Office of Inspector General, *Management Alert - ICE Cannot Monitor All Unaccompanied Migrant Children Released from DHS and U.S. Department of Health and Human Services' Custody*, OIG-24-46, at 1 (noting 291,000 unaccompanied children as of May 2024 for whom DHS had not commenced removal proceedings); Ex. 9, DHS Office of Inspector General, *Final Report - ICE Cannot Effectively Monitor the Location and Status of All Unaccompanied Alien Children After Federal Custody*, OIG-25-21, at 4 (noting 233,000 unaccompanied children as of January 2025 for whom DHS had not commenced removal proceedings).

USCIS sent ICE a Class list only once per month, thus guaranteeing long lapses of time when a Class Member who recently filed their asylum application, or whose erroneous omission from a prior Class list USCIS had recently corrected, would be at risk of removal by ICE because USCIS might not transmit their name to ICE for 30 days after identifying them as a potential Class Member.    ECF No. 535-5 at 78-79. Defendants' recent disclosures to Class Counsel regarding certain removed Class Members also suggest that USCIS sometimes delayed months from the time a Class Member filed their asylum application with USCIS (and thus became a Class Member) before adding that person to the list. ██████████████

██████████████████████████████████████████████████

████████████████████ Wylegala Decl. ⁋ 9. ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████ *Id.*

These deficiencies could have been avoided. The March 2026 hearing testimony confirmed that USCIS is fully capable of creating complete Class lists that do not exclude a significant proportion of Class Members. Officer Sicard admitted that USCIS could have, but did not, created a special group code that covered all asylum applicants with prior unaccompanied child determinations, regardless of whether they were in removal proceedings. ECF No. 535-4 at 77.

> **2.      USCIS's "No Asylum Adjudications Policy" Deprives Class Members of Their Rights Under the Agreement**

Testimony at the March 2026 hearing revealed that Defendants are indeed applying the No Asylum Adjudications Policy[5] to Class Members—confirming that detained Class Members,

---

[5] ECF No. 535-7. In relevant part, the Policy provides that "USCIS has determined that it must implement an adjudicative hold on all pending asylum applications, regardless of the alien's country of nationality," *id.* at 2, with the hold to "remain in effect until lifted by the USCIS Director through a subsequent memorandum." *Id.* at 2-3.

including those Defendants might return after their wrongful removal, will be subjected to indefinite detention and deprived of their right to an asylum adjudication due to the policy. ECF No. 535-4 at 100. Further, USCIS issued guidance on February 13, 2026 instructing asylum officers that they should lift the hold and adjudicate the asylum applications of detained unaccompanied children if ICE requested an expedited adjudication for public safety or national security reasons. *Id.* at 109; ECF No. 535-8 (Ex. 6, Feb. 13 Guidance).[6]  The February 13 Guidance empowers USCIS asylum officers to deny such asylum applications but does not permit asylum officers to approve the applications; instead, if they wish to recommend an approval they must submit the case to headquarters. ECF No. 535-4 at 106-107.  And, critically important to Class Members, the February 13 Guidance provides no mechanism for Class Members, or any asylum seeker for that matter, to request an expedited adjudication. ECF No. 535-8 (Ex. 6); ECF No. 535-4 at 96, 102, 104; ECF No. 535-6 at 138-39.

Supervisory Asylum Officer Kimberly Trinh testified that she had no knowledge of whether USCIS had adjudicated any Class Member's asylum application since issuing the December 2 policy, how many Class Members had requested an expedited adjudication since December 2, or the outcomes of such requests. ECF No. 535-6 at 126-127.  She testified that USCIS had "adjudicated" 96 asylum applications of unaccompanied children—of which some unspecified subset may or may not include Class Members—since December 2, 2025, resulting in 95 denials of asylum and one purportedly "withdrawn" application. *Id.* at 121-122.

---

[6] On April 2, 2026, Defendants filed a Notice with the Court citing a USCIS press release which states that "[h]olds have been lifted for . . . asylum applications from non-high risk countries" and that USCIS will continue to deny asylum applications "regardless of the alien's country of nationality." ECF No. 523.

**3.     ICE Officers Blatantly Disregard the Settlement Agreement, the Court's April 23 Order, and Their Own Purported Policies**

Before the evidentiary hearing, Defendants disclosed ICE's "practices" to prevent removal of Class Members generally as follows: (1) ICE receives the Class lists provided by USCIS; (2) ICE reviews and updates ENFORCE Alien Removal Module ("EARM") for each individual on the Class list by adding a banner and a case comment, directing ICE officers to contact the ICE Office of the Principal Legal Advisor if they have questions; and (3) if an ICE officer wishes to remove someone with an alert, the officer should contact USCIS to confirm Class membership. ECF No. 459-4. And, according to Defendants, "[n]o removal is to take place until USCIS adjudicates the individual's class membership and asylum application. If USCIS determines that the alien is not a class member or if USCIS completes the asylum adjudication without granting asylum, ICE removes the banner, and the alien may be removed from the United States." *Id.*

The March 2026 evidentiary hearing revealed ICE's brazen disregard not only of the Settlement Agreement, but also of their own purported internal procedures. ICE removed at least four Class Members (E.M.P., W.M.C., E.P.P., and M.M.V.), and a fifth young person (W.U.P.) who turned out to be a statutory UC, regardless of a *J.O.P.* banner in their file. *Infra* pp. 8-12. In Class Member B.A.G.'s case, an ICE officer saw the *J.O.P.* banner but removed it. ECF No. 535-4 at 162-63. One potential Class Member, R.L.T., had no banner, despite being on a Class list. *Infra* p. 9. And there is no evidence at all that ICE ever confirmed Class membership for any of the removed Class Members. A brief summary follows for each individual subject of the evidentiary hearing, but of course these are the tip of the iceberg, as likely well over 100 additional Class Members have been removed.

**E.M.P.**

E.M.P. is a Class Member.[7] Scholtz Decl., ECF No. 535-23, ¶¶ 4-5.  E.M.P. was on USCIS's first Class list dated October 28, 2024, as well as the most recent Class list Defendants provided to Class Counsel, dated March 9, 2026.  ECF 535-5 at 88, 98.  A *J.O.P.* banner was placed in E.M.P.'s EARM file on December 2, 2024, and again on January 26, 2026, and ICE never removed it.  ECF No. 497 at 2.  ICE removed E.M.P. from the United States on February 4, 2026, despite the banner and case comments in his file that he may be a Class Member subject to a stay of removal.  ECF No. 535-6 at 39-40.

### R.L.T.

R.L.T. is a Class Member.  ECF No. 535-23, ¶ 8.  R.L.T. was on USCIS's first Class list dated October 28, 2024, as well as the most recent Class list Defendants provided to Class Counsel, dated March 9, 2026.  ECF No. 535-5 at 87, 97.  No *J.O.P.* banner was added to R.L.T.'s EARM file.  ECF No. 497 at 1.  A case comment was entered to his file on December 4, 2024 indicating that he may be a Class Member subject to the stay of removal, but Officer David Martinez claimed to not have seen the comment before ICE removed R.L.T. in June 2025.  ECF No. 535-5 at 9-10, 12-15.  Officer Martinez also testified that, before R.L.T.'s removal, he had provided certain documents about R.L.T. to USCIS via email and asked if R.L.T. was cleared for removal.  ECF No. 535-5 at 144-146.  He received no response from USCIS, but ICE removed R.L.T. anyway.  *Id.*

### W.M.C.

W.M.C. is a Class Member.  ECF No. 535-23, ¶ 11.  W.M.C. was on USCIS's first Class list dated October 28, 2024, as well as the most recent Class list Defendants provided to Class Counsel, dated March 9, 2026.  ECF No. 535-5 at 88, 97.  ICE added a *J.O.P.* banner for W.M.C.

---

[7] On April 14, 2026, Class Counsel filed a Motion to Compel the Return of Class Member E.M.P. ECF No. 544.

on November 26, 2024 and that banner was never removed.  ECF No. 497 at 2.  Officer Jose Romero testified that he "missed" the *J.O.P.* banner and comment in W.M.C.'s EARM file and, in June 2025, ICE removed W.M.C. anyway.  ECF No. 535-6 at 66, 78.

**E.P.P.**

E.P.P. is a Class Member.  ECF No. 535-23, ¶ 14.  E.P.P. was on USCIS's first Class list dated October 28, 2024, as well as the most recent list Defendants provided to Class Counsel, dated March 9, 2026.  ECF No. 535-5 at 87, 97.  ICE added a *J.O.P.* banner for E.P.P. on December 1, 2024, which was never removed.  ECF No. 497 at 2.  Officer Zamir testified that she did not remember if she checked for a banner before removing E.P.P.  ECF No. 535-5 at 139.  ICE removed E.P.P. in May 2025, despite the banner and comment in his file.  ECF No. 535-4 at 133.

**B.A.G.**

B.A.G. is a Class Member.  ECF No. 535-23, ¶¶ 17-18.  B.A.G. was on USCIS's first Class list dated October 28, 2024, as well as the most recent Class list Defendants provided to Class Counsel, dated March 9, 2026.  ECF No. 535-5 at 87, 96.  ICE added a *J.O.P.* banner for B.A.G. on December 5, 2024, and removed it on April 3, 2025.  ECF No. 497 at 2.  Officer Martin Parsons testified that after he saw the banner and comment in B.A.G.'s EARM file, he spoke with a "USCIS contracting officer" at the detention center, who told him that B.A.G. was "cleared for removal." ECF No. 535-4 at 161-63.  But the USCIS contracting officer with whom Officer Parsons purportedly spoke testified that she never spoke with him about B.A.G. and never told anyone that B.A.G. was cleared for removal.  ECF No. 535-6 at 114-15. Officer Parsons admitted that he did not contact OPLA or the USCIS Asylum Office before removing B.A.G., despite the comment's instructions to do so.  ECF No. 535-5 at 56.  ICE removed B.A.G. on April 9, 2025—despite an

immigration court order issued two days earlier prohibiting B.A.G.'s removal due to his potential

*J.O.P.* Class membership.  *Id.* at 50-52; ECF No. 535-8, Ex. 7 (filed under seal).

**M.M.V.**

M.M.V. is a Class Member.  ECF No. 535-23, ¶ 21.  M.M.V. was on USCIS's first Class

list dated October 28, 2024, as well as the most recent Class list Defendants provided to Class

Counsel, dated March 9, 2026.  ECF No. 535-5 at 88, 97.  ICE added a *J.O.P.* banner for M.M.V.

on November 25, 2024, and that banner was never removed.  ECF No. 497 at 2.  Officer George

Rey testified that he did not recall checking for a banner in M.M.V.'s EARM file and he did not

know if anyone checked.  ECF No. 535-6 at 53.  He conceded that ICE had removed M.M.V. on

June 11, 2025 despite there being a *J.O.P.* banner and case comment in M.M.V.'s file.  *Id.* at 58.

**F.D.E.**

F.D.E. is a potential Class Member.  ECF No. 535-23, ¶¶ 24-25.  Even though F.D.E. filed

his asylum application in October 2021, ECF No. 535-23 ¶ 24, USCIS did not add him to the Class

list until June 27, 2025.  ECF No. 535-5 at 91.  ICE removed F.D.E. from the United States several

weeks before that date, on June 11, 2025.  ECF No. 535-23, ¶ 27.  ICE never added a *J.O.P.* banner

for F.D.E.  ECF No. 497 at 1.

**L.O.B.**

L.O.B. is a Class Member. ECF No. 535-23, ¶ 32.  Even though L.O.B. filed his asylum

application in October 2024, *id.*, USCIS did not add him to the Class list until September 26,

2025. ECF No. 535-5 at 92.  ICE added a *J.O.P.* banner for L.O.B. on October 8, 2025.  ECF No.

535-6 at 25.  This was about two months after ICE deported L.O.B. on August 14, 2025.  ECF No.

535-23, ¶ 34.

**W.U.P.**

W.U.P. met the statutory unaccompanied child definition when he filed his asylum application and is thus not a Class Member, ECF No. 535-23, ¶¶ 28-29, but Defendants deported him without ruling out his Class Membership and in violation of their own *J.O.P.* protocols. Even though W.U.P. filed his asylum application in July 2022, *id.* ¶ 28, USCIS did not add him to the Class list until April 1, 2025.  ECF No. 535-5 at 90.  ICE then added a *J.O.P.* banner for W.U.P. on April 7, 2025, ECF No. 535-6 at 25, and that banner was never removed, ECF No. 497 at 2. ICE Officer Michael Stambaugh testified that when he saw the *J.O.P.* banner and comment in W.U.P.'s EARM file, he spoke to his supervisor who told him it was okay to schedule W.U.P. for removal anyway.  ECF No. 535-5 at 119-122. Officer Stambaugh's supervisor then testified that he had no recollection of ever speaking with Officer Stambaugh about any *J.O.P.* banner.  ECF No. 535-6 at 82-84.  ICE removed W.U.P. from the United States on August 11, 2025, despite the *J.O.P.* banner in his EARM file.  ECF No. 535-23, ¶ 31.

### 4.    ICE Officers Have Inadequate Training on How to Apply the Settlement Agreement

The evidentiary hearing confirmed that ICE Officer training is woefully lacking.  Officer Rey testified that he did not receive any *J.O.P.*-related training and did not recall receiving any email guidance.  ECF No. 535-6 at 48-49, 53-54.  Officer Romero testified that he did not know and did not remember if he received any training or guidance specific to *J.O.P.*  *Id.* at 62.  Officer Martinez testified that he did not recall receiving any training that mentioned *J.O.P.* Class Members and that he remembered seeing guidance but "it was a long time ago when I dealt with docket."  ECF No. 535-4 at 138.  Officer Stambaugh testified that he was "not sure what exactly" was supposed to happen when an ICE officer sees a *J.O.P.* banner, beyond "an email [being] sent out."  ECF No. 535-5 at 121.  It's no surprise then that likely well over 100 Class Members have been removed, but given these defects in training, the number is likely far greater.

12

C.      **Defendants' Misrepresentations Were Laid Bare During the March 2026 Hearing**

The March 2026 evidentiary hearing not only shed light on Defendants' systemic failures and brazen disregard for the Settlement Agreement, but also revealed that Defendants, through their counsel, have issued a steady drumbeat of false or highly misleading representations to this Court and Class Counsel. Defendants' misrepresentations began on November 28, 2025 and continued all the way into the March 2026 hearing.

Defendants' counsel represented on November 28, 2025, and again during the meet-and-confer on December 22, 2025, that "at this time Defendants are unable to determine the precise circumstances that resulted in these seven potential class members being removed prior to an adjudication of their asylum application." ECF No. 459-4; M&C Tr. at 0:05:53-06:09 (speculating that banners may have been either not placed or disregarded). That was false because Defendants knew the precise circumstances that resulted in removals, including whether *J.O.P.* banners had been added to files, and if so, when. *Supra* § II.B.3; ECF No. 497. Indeed, if DOJ or agency counsel had inquired with any of the ICE Officers involved or ICE's IT, they too would have known. Or perhaps agency counsel did inquire, but chose not to share the information.

Defendants' counsel also asserted during the December meet-and-confer that, for at least R.L.T., ICE had entered a banner, but possibly after removal. M&C Tr. at 00:07:02-00:07:23. That proved to be false because no banner had in fact been entered for R.L.T. *Supra* p. 9. And for B.A.G., Defendants' counsel represented that Defendants did not know if ICE had entered a banner, M&C Tr. at 00:12:55-12:58, 52:01-52:24, but Officer Parsons, who was responsible for B.A.G.'s removal, testified that he removed B.A.G. despite seeing a banner in his EARM file, *supra* pp.10-11. Defendants' counsel also asserted that "there is no way that we can reasonably determine when" a banner was placed in an individual's EARM file, M&C Tr. at 00:05:43-00:05-

13

54; *see also id.* at 00:52:08-00:52:20 ("there is no definitive way to determine whether the banner was in place or not at the time of the removal"). This statement was false. *See* ECF No. 497.

Defendants further represented at the December meet-and-confer that they did not know if any of the potential Class Members were included on a USCIS Class list, asserting that Defendants had been "unable to determine" if the eight appeared on any lists because searching would require "extensive manual review, " M&C Tr. at 00:47:57–00:48:21, and would be "cumbersome," *id.* at 00:52:08–00:52:24, and that "there is not an easy way . . . to search" the lists. *Id.* at 00:09:33-00:09:50. In fact, as Class Counsel discovered when Defendants produced six Class lists on the eve of the hearing, there was a very easy way to search the Excel spreadsheet lists: using the Control + F function with the individual's Alien number revealed the individual's presence on a list instantaneously.

As the Court is aware, in their Opposition Brief filed on January 29, 2026, Defendants drastically minimized the true extent of their continuing removals of Class Members, asserting that a "small number of class members" were erroneously removed as "isolated events." ECF No. 462 at 12, 14. This was a cornerstone of their argument, purportedly to reflect an assertion of good faith. These assertions, of course, were not true, as Defendants have in fact removed likely over 100 additional Class Members. ECF No. 535-4 at 90-94. And that was not the only false statement in Defendants' Opposition. Defendants also asserted to this Court that they "did not have knowledge of the potential violations before or during the removals." ECF No. 462 at 16-17. That assertion was plainly false because ICE Officers removed several Class Members despite knowing that the Class Member's EARM file had comments and a banner instructing them that the individuals may be a Class Member and subject to a stay of removal. *Supra* § II.B.3. Furthermore, Defendants represented to the Court that they had "provided what contact information they had for

each Class Member." ECF No. 462 at 7. But an example shows this was untrue. On the eve of the evidentiary hearing, Defendants produced EARM records in response to the Court's Order (ECF No. 487), revealing that a previously undisclosed phone number for F.D.E.'s father had been in Defendants' possession the whole time. ECF No. 535-6 at 6-7. Class Counsel contacted the family over the weekend and obtained additional relevant information. *Id.* at 7. Other crucial information was provided only after significant delay. M&C Tr. at 01:26:30-1:27:52 (attempts to contact a Class Member's counsel failed until Defendants eventually provided an email address after a two-month delay).

Defendants continued to obfuscate the circumstances as to the Class Members' removals. At a hearing on February 18, 2026, in response to the Court's inquiry "Were the banners marking them not present or were they present but disregarded?," Defendants' counsel represented that "the system was built for operation as opposed to litigation and that it's possible to go in and see what's there on a given day, but beyond that, things are [more complicated]" and that "[m]y understanding from USCIS is that pulling historical data can be difficult." Ex. 1 at 13-14. In fact, far from "complicated," Mr. Lewis was able to determine whether banners were present by doing a database search on the day before he testified. ECF No. 535-6 at 13-14. Notably, Defendants only offered Mr. Lewis as a witness after being compelled to bring him "to address whether historical information is available regarding the insertion and removal of J.O.P. banners in the EARM files of the subject individuals," ECF No. 535-5 at 154, after Chief Nichols testified *twice* and yet still could not fully explain if or when the banners had been added.[8]

---

[8] After being recalled as a witness, Chief Nichols brought with him to Court notes on the back of his business card that purportedly reflected when banners were added. ECF No. 535-5 at 18, 35; Ex. 2. He had jotted the notes on his business card the evening before, based not on review of the actual EARM files, but instead on his review that evening of an e-mail he had previously sent to counsel. ECF No. 535-5 at 35-37.

Defendants' false and misleading statements continued right on through the March 2026 evidentiary hearing.  Officer Parsons testified that he saw the *J.O.P.* comment in B.A.G.'s record, ECF No. 535-4 at 162, but instead of contacting the listed OPLA and/or USCIS asylum office contacts, he claimed that he had an in-person conversation with a USCIS contracted officer at the detention center who stated that B.A.G. was cleared for removal, ECF No. 535-5 at 56-58.  That USCIS officer then testified that the conversation had not happened.  ECF No. 535-6 at 114-115.  That was not the only putative conversation described under oath that does not appear to have occurred.  *Compare* ECF No. 353-5 at 119-121 (Officer Stambaugh testified that he saw a *J.O.P.* banner and spoke with his supervisor who cleared W.U.P. for removal) *with* ECF No. 535-6 at 82-84 (supervisor then testified that he had no recollection of any such conversation).

This long, tortured path of false and misleading representations leading up to and continuing during the March 19, 2026 evidentiary hearing only serves to reinforce that Defendants cannot be left to their own devices and that appropriate remedies, with Court oversight, must be ordered to ensure that Class Members receive their rights under the Settlement Agreement.

## III.    ARGUMENT

### A.    Defendants Continue to Blatantly Violate the Settlement Agreement and the Court's April 23, 2025 Order

The Settlement Agreement and the Court's April 23 Order mandate that ICE may not remove a Class Member from the United States unless and until USCIS affords the Class Member an adjudication on the merits of their asylum application.  ECF No. 199-2 at 6, 8.  Further, the Settlement Agreement mandates that, "[i]n order to comply with [the stay-of-removal] provision," ICE must enter a system alert in Class Member records that cannot be removed until USCIS indicates it is appropriate to remove it.  ECF No. 199-2 at 8-9, Section III.I.  The evidence at the March 2026 evidentiary hearing confirms that ICE continues to violate each of these mandates.

16

Of the nine individuals at issue in the March 2026 hearing, seven are confirmed Class Members and all were removed by ICE in violation of the stay-of-removal provision in the Settlement Agreement. *Supra* § II.B.3. But, as was revealed during the hearing, ICE has also removed likely more than 100 additional Class Members. ECF No. 535-4 at 90-94. Defendants' counsel later attempted to walk the number back, representing that 49 were confirmed Class Members and 42 were "potential" Class Members. ECF No. 535-6 at 91. Regardless, the actual number of removals is likely far greater.

Of the nine individuals at issue in the March 2026 hearing, two did not have a system alert entered in their file prior to their removal, *supra* § II.B.3, despite ICE's obligation under the Settlement Agreement to enter system alerts for all Class Members. This failure is no doubt caused by ICE's exclusive reliance on USCIS to identify Class Members prior to removal, ECF No. 535-4 at 18-19, despite their own obligation under the Settlement Agreement to identify Class Members. In any case, for seven of the Class Members, ICE removed them despite a system alert in the Class Member's file. *Supra* § II.B.3.

USCIS's failure to properly identify Class Members by systematically excluding large numbers of them from the Class list has significantly contributed to Defendants' violations of Section III.I. First, USCIS knowingly designed the Class lists to exclude a large volume of Class Members not in removal proceedings at the time of their asylum filing. ECF No. 535-4 at 71-73, 75, 77. Second, USCIS excluded Class Members from the list if their asylum application was not currently pending, even if it had been wrongfully rejected by USCIS for lack of jurisdiction in violation of the Settlement Agreement. ECF No. 535-4 at 77-78; *see also* ECF No. 535-5 at 66, 70, 90, 102-103.

17

While Defendants have characterized these omissions as "a few human errors or mistakes in marking," ECF No. 462 at 9, the March 2026 testimony from USCIS officials reveals that USCIS was aware of these deficiencies when designing the list.  And Class Counsel have reason to believe these intentional design choices have wrongfully excluded many thousands of Class Members from the Class list.  *See supra* § II.B.1. ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████ Wylegala Decl. ¶ 9.

Moreover, USCIS's delays likely contributed to the number of wrongfully removed Class Members.  Defendants' choice to transmit the USCIS list to ICE only once per month until late November 2025 allowed for significant lag time between the date an individual filed their asylum application, becoming a Class Member, to the date USCIS notified ICE of the individual's Class membership and resultant protection from removal.  Aside from the insufficiently frequent cadence, USCIS also apparently delayed significantly in adding new Class members to the list.██

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████ *See supra* p. 6.

In short, Defendants have violated the Settlement Agreement by removing likely well over 100 Class Members, failing to identify Class Members prior to their removal and thus failing to enter system alerts in Class Member files, and ignoring system alerts and removing Class Members anyway.  And unless the Court grants the requested remedial relief, countless other Class Members will be removed by Defendants in violation of the Settlement Agreement.

**B.**     **The March 2026 Evidentiary Hearing Confirms that Defendants Should Be Held in Civil Contempt for Violations of the Court-ordered Settlement Agreement and the Court's April 23 Order**

The Court should find Defendants in civil contempt for their brazen violations of the Settlement Agreement and the Court's April 23 Order.  As set forth in Class Counsel's Opening Brief, each element of civil contempt is met.  ECF No. 459-2 at 19-21.  The March 2026 evidentiary hearing revealed further evidence of the extent of Defendants' contempt.

*First*, Defendants do not dispute that the Settlement Agreement and the Court's April 23 Order are valid decrees for which Defendants had actual knowledge.  ECF No. 199-2.  Indeed, ICE and USCIS officials testified that they knew of the Settlement Agreement and the Court's April 23 Order.  ECF No. 535-4 at 16-17, 26-27, 44-45, 60-61 (Sicard), 138 (Officer Parra); ECF No. 535-5 at 68-69.  The EARM files for all but two of the Class Members reflect comments and banners referring to the Settlement Agreement, which were present at the time of the individuals' removals.  *See, e.g.,* ICE00001, 00006 (E.P.P.); ICE00027 (E.M.P.), ICE00105 (W.M.C.).

*Second*, Defendants do not dispute that the Settlement Agreement was in the Class's favor, as Defendants do not contest that the Class was a prevailing party in this matter.  ECF No. 333 at 2.  And the Court's April 23 Order was also in the Class's favor, as the Court ruled against Defendants to prohibit them from removing Class Members.  ECF No. 254.

*Third*, Defendants have been violating the Settlement Agreement by removing likely well over 100 Class Members, failing to identify Class Members prior to their removal, failing to enter system alerts, and failing to adjudicate Class Members' asylum applications.  These violations cannot be overstated.  Defendants have repeatedly violated core protections of the Settlement Agreement without any conceivable justification.  Incredibly, Defendants previously represented to this Court "that they did not have knowledge of the potential violations before or during the

19

removals." ECF No. 462 at 13-14.  That is false: ICE officers acknowledged that Class Members were removed despite a system alert and comment in the Class Members' files stating that the individual may be subject to a stay-of-removal pursuant to the Settlement Agreement.  *Supra* § II.B.3.

*Fourth*, Class Members have suffered harm because of Defendants' violations, as they have been sent back to countries from which they are seeking asylum and have been denied their rights under the Settlement Agreement.  As one example, Class Member E.M.P. was removed by ICE to Guatemala, the same country he had fled to escape persecution by gang members who targeted him because of his disability.  ECF No. 545-11 ¶¶ 5.  He is now terrified to leave the house.  *Id.* ¶ 15.  And there are likely well over 100 other Class Members in the same predicament caused by Defendants' violations of the Settlement Agreement and this Court's April 23 Order.

Defendants' only argument against contempt is that their "self-reporting" of violations reflects "good faith" to comply with the Settlement Agreement.  ECF No. 462 at 16-17.  But the March 2026 evidentiary hearing made clear that Defendants failed to report over 100 additional removals in violation of the Settlement Agreement.  Indeed, Defendants failed to report the violations before the hearing, which only came to light because a witness was forced to answer under oath.  As the Court noted, "unspecified agency attorneys . . . 'working on the J.O.P. litigation' became aware of the true, far greater number of violations weeks before, and during specific preparation for, the evidentiary hearing."  ECF No. 540.  That is not good faith.  In any event, good faith alone is not even a defense to civil contempt.  *McLean v. Cent. States, Se. & Sw. Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985).

A finding of civil contempt is not only warranted on these facts, it is necessary to prevent the removal of more Class Members in violation of the Settlement Agreement.  *J.L. v. Cuccinelli*,

No. 18-CV-04914-NC, 2020 WL 2562895, at *3 (N.D. Cal. Feb. 20, 2020) (ordering USCIS in civil contempt for violating court order prohibiting removal of class members); *Fernando T. v. Noem*, No. 26-CV-445 (ECT/EMB), 2026 WL 508807, at *3 (D. Minn. Feb. 23, 2026) (ordering ICE in civil contempt for violating a court order that enjoined them from moving an immigrant outside of Minnesota).  If Defendants wish to purge the civil contempt, they should submit briefing, and supporting declarations and evidence, showing compliance with the Settlement Agreement and the Court's April 23, 2025 Order, that no additional Class Members have been removed, that systems are in place to ensure that no more Class Members will be removed, and that all Class Members' EARM files have been flagged with system alerts, as required by the Settlement Agreement.  *Enovative Techs., LLC v. Leor*, No. JKB-14-3956, 2015 WL 11027765, at *1 (D. Md. June 8, 2015) (noting that "Defendant may only purge such contempt by complying with the Court's preliminary injunction order and by filing proof of compliance with the Court").

**C.** **The March 2026 Evidentiary Hearing Reinforces That Class Counsel's Proposed Remedial Orders Are Necessary to Prevent Additional Violations of the Settlement Agreement and the Court's April 23, 2025 Order**

Class Counsel's previously filed Motion and accompanying proposed order explained why, to prevent further removal of Class Members and to ensure that Class Members received their bargained-for rights under the Settlement Agreement, Defendants should be ordered to: (1) take all necessary steps to determine whether any individual Defendants seek to remove is a Class Member; (2) provide prompt, individual notice to detained Class Members of their rights under the Agreement; (3) undertake a comprehensive review to identify any other Class Members wrongfully removed; (4) provide regular status reports regarding compliance with this Court's order; and (5) return wrongfully removed Class Members who wish to return to the status quo ante by not applying a presumption of abandonment to their asylum claim and by promptly adjudicating

21

their asylum adjudication if they seek an expedite, rather than subject the application to any asylum adjudication hold.  ECF No. 459-2 at 18; ECF No. 459-1.

Given the new information about the defects in Defendants' procedures that came to light during the March 2026 evidentiary hearing, Class Counsel now also proposes several additional components in the accompanying revised proposed order to ensure that it has its intended effect to bring Defendants into compliance and prevent further removals of Class Members in violation of the Agreement.  The additional components, described below, are (1) more detailed requirements ICE must follow to identify Class Members prior to removal (Proposed Order ¶ 2(a)-(c)); (2) a requirement that USCIS provide ICE a complete Class list (Proposed Order ¶ 4); (3) a requirement that Defendants provide written guidance and training to ICE personnel regarding their obligations under Section III.I of the Agreement (Proposed Order ¶ 3); and (4) in order to prevent indefinite detention and give effect to Sections III.B and G of the Agreement, extending the previously requested relief to prohibit Defendants from applying the No Asylum Adjudications Policy to detained Class Members who seek an expedited adjudication (Proposed Order ¶ 6).[9]

As the Court previously recognized, the circumstances that led to the removal of Class Members is "highly material" to the choice of remedy.  Ex. 1 at 11 ("It's one thing if there was a legitimate administrative error and someone was on a list, but somehow the flag didn't get put in. It's another thing if the flag was there and someone willfully disregarded it and decided to remove the person anyway without concern to the fact they were a Class Member.").  Alas, the March

---

[9] Certain of the previously requested forms of relief—such as individualized notice to detained Class Members, regular status reports regarding compliance with the Court's order, and specific remedies to return returning Class Members to the status quo ante—are not further discussed in this Supplemental Brief, though they are part of the relief sought by Class Counsel and thus are found in the accompanying proposed order.  For argument supporting those components of the relief sought, Class Counsel point the Court to the previously filed brief, ECF No. 459-2.

2026 evidentiary hearing revealed that there was no single failure mode, but instead systemic failures at nearly every step of Defendants' process. As a result, no single magic bullet will fix Defendants' chaotic process, but instead the above-described web of remedies is needed as a safety net to prevent the removal of more Class Members.

As explained in Class Counsel's Opening Brief, the Court may order these remedies under its supervisory authority to enforce Defendants' obligation to identify Class Members under Section III.I of the Settlement Agreement, or as a remedy for Defendants' ongoing civil contempt. ECF No. 459-2 at 19-20.[10] Alternatively, the Court may choose to order these remedies through a modification of the Settlement Agreement under Fed. R. Civ. P. 60(b)(5). Defendants' widespread noncompliance through Class Members' removals is a changed circumstance, and the Class Counsel's proposed remedies are "suitably tailored" to address Defendants' removals in violation of the Settlement Agreement. *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992).

### 1.    The March 2026 Hearing Confirmed That the Court Should Order Defendants to Confirm Class Membership Status Before Removal

As Class Counsel previously requested, Defendants should be ordered to identify Class Members they intend to remove, *i.e.*, to confirm whether an individual is or is not a Class Member *before* their removal, and to abide by the Agreement's prohibition against removing Class Members. ECF No. 459-2 at 19. The evidentiary hearing made clear that Defendants do *not* identify all Class Members before removal. Accordingly, Class Counsel has added details to the

---

[10] For a fulsome argument regarding why Defendants' noncompliance is a changed circumstance warranting modification of the Agreement, Class Counsel respectfully refer this Court to their Motion to Extend the Termination Date of the Settlement Agreement. ECF No. 535-1. If the Court prefers to grant any or all of the proposed remedies sought in this Motion through Rule 60(b), Class Counsel is happy to provide an alternate proposed order laying out the requested remedies as modifications to the Settlement Agreement.

proposed order's paragraphs on Class Member identification, specifying steps required of USCIS and ICE, given that the testimony revealed that both agencies' procedures were facially inadequate.

First, testimony revealed that USCIS intentionally used an underinclusive methodology for generating Class lists. *Supra* pp. § II.B.1.  To replace the deficient USCIS lists with an accurate and inclusive list of persons who are or may be Class Members, the Court should order Defendants to generate a Potential Class List comprising asylum applicants who (1) were determined to be a UAC; and (2) filed their asylum applications with USCIS on or before February 24, 2025; and (3) have not received a USCIS adjudication on the merits.  The Court should further order that ICE must, within one business day of receiving a Potential Class List, ensure that its systems reflect appropriate alerts for each person on the Potential Class List.

Second, the Court should also require ICE to take steps to independently verify Class membership prior to removal. Designation as a Potential Class Member will not protect Class Members' rights if ICE personnel continue to execute removal orders without verifying Class membership.  This point is not even controversial, Defendants having admitted there is a "need" to confirm Class membership "for those individuals identified for final removal," ECF No. 462 at 11.  Yet, the record is replete with evidence of various failure modes—a lack of familiarity with what the Settlement Agreement requires (ECF No. 435-4 138 (Officer Martinez unable to describe the basic subject of the Agreement)); inability to recall whether required checks were performed, suggesting an absence of consistent practices (ECF No. 435-5 at 139-143 (Officer Zamir and supervisory Officer Parra unable to recall if required steps were performed in E.P.P.'s case)); denying having seen or read system alerts despite evidence showing the alerts were in place (*id.* at 14 (before removing a Class Member in June 2025, Officer Martinez did not look at a *J.O.P.* comment entered in December 2024)); failing to follow written procedures in the alerts requiring

24

contact with designated officers for a determination as to Class membership (*id.* at 56 (failure to contact local OPLA or USCIS officers before removal)); or simply overlooking system alerts (ECF No. 435-6 at 66 (officer "overlooked" a comment that was present at time of removal)).

The revised proposed order specifies steps ICE Officers should be required to take to rule out Class Membership before removing an individual with a prior UC determination: (1) affirmatively check the individual's EARM file for a *J.O.P.* banner, comment, or "Special Group Code," (2) not remove any individual with a prior UC determinations who self-identifies as *J.O.P.* Class Members unless and until Class membership is ruled out; and (3) independently check for indicia of Class membership by searching records for prior UC determinations and asylum applications filed with USCIS.  The evidentiary hearing confirmed that Defendants can implement this remedy.  ICE's own EARM records contain each individual's date of birth and a record of a prior UC determination, if any. ECF No. 435-4 at 33-34; *id.* 88.  And ICE has access to databases establishing if and when an individual has filed an asylum application with USCIS.  *Id.* at 37, 75. When these indicia are present, ICE must not remove the person unless USCIS completes the asylum adjudication on the merits or confirms that the person is not a Class Member.

> **2.     The March 2026 Hearing Confirmed That Defendants Should Be Required to Train ICE Personnel on ICE's Obligations Under the Settlement Agreement**

The March 2026 evidentiary hearing revealed numerous failures by ICE personnel that led to nine confirmed and potential Class Members' removal.  *Supra* § II.B.4.  Hearing testimony also established that ICE Officers were unaware of ICE's obligations under the Settlement Agreement, signaling that their current training is deficient or non-existent.  *Supra* § II.B.4.  The testimony establishes a clear need for ICE to train its personnel on ICE's obligations to Class Members. Training, as well as more frequent dissemination of written guidance, is especially important given that ICE Officers "deal with hundreds of cases" following the increased funding and current broad

25

enforcement priorities.[11]  ECF No. 535-5 at 144.  Accordingly, the Court should order training of ICE officers to protect Class Members' rights under the Settlement Agreement.  Class Counsel submits that the following is warranted, and should be documented in regular status reports:

1.  Within 15 days of the Court's order, and on a monthly basis thereafter, issue written guidance to all ICE personnel nationwide regarding ICE's obligations under Section III.I of the Agreement.  The written guidance should provide contact information for USCIS Asylum Office personnel authorized to provide clearance.
2.  Within 30 days of this Court's order, require ICE personnel nationwide to undergo training regarding ICE's obligations under Section III.I of the Agreement.
3.  The written guidance and training should incorporate the requirements in Paragraphs 2(a), 2(b), and 2(c) of the proposed order regarding required steps to identify Class Members.

As explained in Class Counsel's Opening Brief, because the Court retains jurisdiction to ensure compliance with the Agreement, the Court may devise a method to obtain compliance.  ECF No. 459-2 at 23.  Here, training is one such method.  Even if this remedy is deemed outside the Court's enforcement authority, the Court may nonetheless order training as a remedy for Defendants' civil contempt.  *See Hardy v. Asture*, No. 1:11CV299, 2013 WL 566020, at *8 (W.D.N.C. Feb. 13, 2013) (ordering attorney to attend training after violating a Court order); *Portland v. City of Portland*, No. 3:20-CV-00917-HZ, 2021 WL 982613, at *2 (D. Or. Mar. 16, 2021) (ordering training of police officers as coercive sanctions to obtain compliance with a court order).

---

[11] ICE is well positioned to incorporate its *J.O.P.* obligations into its training curriculum for "new hires" and "on-the-job training and mentorship" after receiving $750 million from the One Big Beautiful Bill Act "to enhance the training and readiness of U.S. Border Patrol (USBP), U.S. Customs and Border Protection (CBP), and ICE personnel."  Ex. 3.

26

### 3. The March 2026 Hearing Confirmed That Defendants Should Be Ordered to Provide a Retrospective Accounting Regarding Their Compliance with Section III.I of the Settlement Agreement

Before the evidentiary hearing, Defendants characterized their violations as impacting "a very small number of potential class members," ECF No. 462 at 8, but the evidentiary hearing exposed that falsity with Defendants' admission that over 100 other potential Class Members have been removed. But the true number is still unknown. Defendants must be ordered to ascertain the extent of violations so that removed Class Members can return to the United States.

The March 2026 hearing also confirmed that Defendants can identify removed Class Members. As explained *supra*, § II.B.3, the hearing revealed that ICE's databases capture dates of birth and prior UC determinations, and that ICE has access to USCIS systems showing if an individual has filed an asylum application with USCIS and the date of that filing. Further, ICE program manager Patrick Lewis testified that it is possible to query ICE's systems based on the "date departed" field which would reveal whether a potential Class Member has been removed. ECF No. 535-6 at 21. Testimony from USCIS officials established that USCIS, for its part, can also identify removed Class Members, as USCIS has EARM access through which it is possible to assess if the person was removed. ECF No. 535-4 at. 88. In short, although Defendants had the means to identify removed Class Members, they lacked the will to do so.[12]

As explained in Class Counsel's Opening Brief, the Court has authority to order a retrospective accounting of Defendants' removals of Class Members, either (1) pursuant to the Court's supervisory jurisdiction; (2) as a remedy for Defendants' civil contempt; or (3) as a modification of the Settlement Agreement pursuant to Fed. R. Civ. P. 60(b)(5). ECF No. 459-2 at

---

[12] Defendants have represented to the Court that they are conducting a review to identify other removed Class Members. *See* ECF No. 539; ECF No. 528; ECF No. 527. Nevertheless, if past is prologue, a Court order is necessary to ensure that all removed Class Members are identified.

24-26.  With respect to the Court's authority under Fed. R. Civ. P. 60(b)(5), Defendants' removals of Class Members constitute a substantial noncompliance with the Settlement Agreement and the retrospective identification of other removed Class Members is suitably tailored to address Defendants' previous violations.  The only way for removed Class Members to vindicate their rights under the Settlement Agreement is for Defendants to first identify them.  In other words, absent an order from this Court to conduct an affirmative and comprehensive review, wrongfully removed Class Members will be left without a remedy.

> **4.      The March 2026 Hearing Demonstrated That the Court Must Prohibit Defendants from Applying the No Asylum Adjudications Policy to Detained Class Members Pursuing a Section III.G. Expedited Adjudication**

During the February 18, 2026 hearing on the Motion to Enforce, the Court rightly expressed concern about how the No Asylum Adjudications Policy might harm not only removed Class Members who choose to return, but also detained Class Members whom ICE has not yet removed.  *See, e.g.*, Ex. 1 at 48 ("[A]ssuming that we put steps in place that prevent removal of more people, I'm concerned that we are, for at least the time being, condemning them to sit in detention with no end in sight.").  Considering testimony during the March 2026 hearing about the impact of the No Asylum Adjudications Policy on Class Members, Class Counsel now requests additional relief to extend the previously-requested protection against asylum "holds" to include any detained Class Member who seeks an expedited adjudication. This relief is necessary to uphold Sections III.B and G of the Settlement Agreement.

The March 2026 hearing proved that Defendants, through the interplay between the No Asylum Adjudications Policy and the Section III.I stay of removal provision, have deprived Class Members of an adjudication on the merits while subjecting them to prolonged detention.  Even though the February 13 guidance allowed ICE to seek an adjudication exception to the No Asylum Adjudications Policy, such an opportunity was lacking for Class Members despite their bargained

28

for Section III.G. rights. ECF No. 535-8 (Ex. 6); ECF No. 535-4 at 102, 104.  Class members suffered in the shadows of detention as a result.  Detained Class Members must therefore be able to leverage their Section III.G rights against any potential for indefinite detention.  Without the Court's intervention preventing Defendants from applying the No Asylum Adjudications Policy, detained Class Members (including wrongfully removed Class Members whom Defendants may return in the future) who seek an expedited asylum adjudication on the merits by USCIS will face indefinite detention.  Indefinite detention cannot be the new price of exercising a right bargained for in the Agreement.  The Court should order Defendants to refrain from applying any adjudication hold policy to a detained Class Member who seeks to expedite their adjudication.

## IV.    CONCLUSION

Defendants violated the Settlement Agreement and the April 23, 2025 Order by removing Class Members from the United States without affording them an adjudication by USCIS on the merits of their asylum applications.  For all the reasons set forth herein, and Class Counsel's prior briefing, this Court should hold Defendants in civil contempt and order the proposed relief to prevent further removal of Class Members.

Dated: April 20, 2026

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs and the Class*

*Admitted *pro hac vice**