# Exhibit 1

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

J.O.P., et al.,                        )
                                       )
          Plaintiffs,                  )
      vs.                              )
                                       ) CIVIL NO.:
U.S. DEPARTMENT OF HOMELAND            ) 8:19-cv-01944-SAG
SECURITY, et al.,                      )
                                       )
          Defendants.                  )
_____)


                                  Baltimore, Maryland
                                  February 18, 2026
                                  11:00 a.m.

                TRANSCRIPT OF PROCEEDINGS
                    **MOTIONS HEARING**
          BEFORE THE HONORABLE STEPHANIE A. GALLAGHER
                      Courtroom 7C

For the Plaintiffs:

      KEVIN J. DeJONG, Esquire
        Goodwin Procter LLP
        100 Northern Ave.
        Boston, MA 02210

      MICHELLE N. MENDEZ, Esquire
        National Immigration Project
        1201 Connecticut Ave. NW, Suite 531
        Washington, DC 20036

For the Defendants:

      EVAN SCHULTZ, Esquire
      RUTH A. MUELLER, Esquire.
      LARISSA JOHNSON, Esquire
      JOSHUA A. CLEM, Esquire
        Department of Justice - Civil
        Office of Immigration Litigation
        P.O. Box 868, Ben Franklin Station
        Washington, DC 20044


      (Computer-aided transcription of stenotype notes)

*Patricia G. Mitchell, RMR, CRR  Federal Official Court Reporter*
*101 W. Lombard Street, Fourth Floor*
*Baltimore, MD 21201*

mentioned, and while we're absolutely happy to take questions from a hot bench, of course, I still think having traditional structure would let us kind of work through basically all the different steps that need to be applied here.

THE COURT:  I agree with the traditional structure vis-a-vis the issues raised, but I do think getting some of the straight-up factual background from you at the outset would be helpful.  So I'm going to limit this initial portion just to the facts about what happened with these ten -- as I understand it, it's ten people that they're alleging were removed, and two of them were determined not to be Class Members so we had eight.  Then there's the additional person that we got the letter about on, I think, Friday of last week. So I want to get as much factual clarification as possible from the Government at the get-go about what we know happened with respect to some of these individuals.

MR. SCHULTZ:  Thank you, Your Honor.

MR. DEJONG:  One brief note, I think the parties have agreed that we would just use the individual's initials rather than their full name and A number.

THE COURT:  Okay.

MR. DEJONG:  I think that we can proceed without discussing any personal information.  To the extent any of that is necessary, I think we would approach the bench.  I don't see a need for any of that, but we've agreed that we

is how did these happen in the -- I know what happened with Cristian.  That was the Alien Enemies Act and a whole different set of issues.  With respect to these other two, what happened?  Why were they removed when they were not supposed to be?

MR. SCHULTZ:  Right.  I have no specific information about what happened with those two individuals.  What I can say is what we've already said.  If you look at Exhibit 1 of their motion, that's an email that was sent on, again, November 28th, 2025, that has a long discussion of how the coding works that USCIS applies.  It goes through all the steps that we use.  It also says there that we have not been able to determine what happened with those -- I think the email refers to seven people, but it would include these two is my understanding.

THE COURT:  Can you tell me what efforts you took to try to ascertain what happened with respect to those two?  It's very material to what I have to decide here, right?  It's one thing if there was a legitimate administrative error and someone was on a list, but somehow the flag didn't get put in.  It's another thing if the flag was there and someone willfully disregarded it and decided to remove the person anyway without concern to the fact they were a Class Member.

So I need to somehow get to the bottom of what happened here.  I'm not hearing from you great efforts having been made

to try to assist me in that effort.

MR. SCHULTZ:  Your Honor, what I can say is that -- what I can say is, again, what's in Exhibit 1.  I can also say that the system that USCIS has is built for operations; it's not built for litigation.  What I mean by that is we can -- for instance, one can go into the system on a given day and see if there's a flag that is present for a given person.  But anything much beyond that is very difficult to determine.  Again, that's -- when I'm saying that the system is built for operation as opposed to litigation, this isn't something where it's necessarily easy or -- to go back and do that --

THE COURT:  But it's a computer system.  I don't know your specific computer system, but most computer systems have some sort of historical information; you can go back and see when a flag was put in, when was that entry made.  Have there been any efforts in this type of forensic analysis to try to figure out what happened here and why these two people who were Class Members were removed wrongly?

MR. SCHULTZ:  So far as what computer systems permit -- again, this was built for operation.  My understanding is that, again, for a given day, we can see what's there.  Beyond that, it can be -- it can become more difficult.

THE COURT:  By "more difficult," again, it sounds to me like maybe that inquiry has not been made; that no one has

asked, "Hey, is there a way to forensically go back into the system and see when these flags were entered?"  Is that what you're telling me, that there have not been efforts made?  Or are you telling me efforts have been made and it's not feasible?  I don't know.

MR. SCHULTZ:  Your Honor, at this point I simply don't have that degree of knowledge at that granular level. What I can say is there are other reasons that something might not be there.  Again, it could be that, for instance, the lists are now put out every two weeks; they had been put out every four weeks before that.  If someone's name is on a new list but not an old list, the timing might lead to a gap.  I can also say there is some period of time it takes -- I don't know what it is -- after the list is sent from USCIS to ICE for ICE to then enter those flags into the system.  So depending again on the timing, that flag may or may not be there.

You had mentioned a moment ago that there might be some bad intent.  There's multiple reasons this could happen without any bad intent.  This is a large system, and we're dealing with a class of 75,000 people.

THE COURT:  Sure.  That's what I asked you in my letter of February 6th to try to find out: Were the banners marking them not present or were they present but disregarded? What happened with respect to these people?  And I'm not

hearing any answers.

MR. SCHULTZ:  The answers that I have, Your Honor, is what I've said.  Again, that the system was built for operation as opposed to litigation and that it's possible to go in and see what's there on a given day, but beyond that, things are --

THE COURT:  But where are you getting that from?  I understand we can go in and see what's there today, but you keep saying things are more complicated.  I'm not hearing from you "I checked with the person who put this system together," or "I checked with the IT people to see what kind of historical information can be forensically ascertained."

MR. SCHULTZ:  My understanding from USCIS is that pulling historical data can be difficult.  You just asked the question who have I spoken to.  It puts me in a little bit of a bind.  I want to answer Your Honor's questions.  I don't want to say precisely what communications may or may not have taken place with my clients --

THE COURT:  I'm not looking for precisely what communications, but who have you spoken to?  I want to know what level of person.  Have you been speaking to the IT people who managed the system?  Are you speaking only to some higher-up supervisor person who, again, may not have looked? You're saying things like "can be difficult."  That doesn't tell me is it feasible or not.  Is there a way in which we can

THE COURT:  Now let me hear from you on, again, the request that I denied once before on sort of the accounting of what happened before.  Because I think you have sort of two different issues.  One is what steps need to be put in place to prevent this from continuing to occur even though, the elephant in the room again, I'm concerned about what happens in this world -- assuming that we put steps in place that prevent removal of more people, I'm concerned that we are, for at least the time being, condemning them to sit in detention with no end in sight.  But -- so there's this issue of how do we stop these improper removals.

Can we turn to, for a minute, how that would get us to a more fulsome accounting.

MR. DEJONG:  Understood, Your Honor.  I appreciate that I had stood up here last year -- I can't recall exactly when it was -- and we had a discussion of this very similar issue.  The facts on the ground, they have changed.  Since then there have been further removals.  I know at that time, Your Honor had allowed us to do further briefing on it.

So here we are again.  I do think that the contempt authority is more than adequate here.  What we're asking for is -- you can view it either as compensatory or coercive to ensure their compliance.  If viewed as compensatory, the folks that have been removed that are sort of in the shadows, they need a remedy.  So in order to compensate them, so to speak --

proposing a timetable presumably, you'll have had that discussion.  If they propose something that you find totally untenable because it's way too long, you can note that in the letter to me.

MS. MENDEZ:  Thank you, Your Honor.

THE COURT:  All right.  Is there anything else then with those instructions that we need to discuss this afternoon?

MR. DEJONG:  Nothing from Class Counsel.

MR. SCHULTZ:  Nothing from defendants, Your Honor.

THE COURT:  All right.  Thank you all.

THE CLERK:  All rise.  Court stands in recess.

(Proceedings concluded at 1:08 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Patricia G. Mitchell, Registered Merit Reporter, Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.
Dated this 21st day of February 2026.

_____
Patricia G. Mitchell, RMR, CRR
Federal Official Reporter