# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| J.O.P., *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 8:19-cv-01944-SAG |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.* | ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' OPPOSITION TO CLASS COUNSEL'S MOTION TO COMPEL THE RETURN OF CLASS MEMBER E.M.P.

**TABLE OF CONTENTS**

**INTRODUCTION**...................................................................................................... 1

**BACKGROUND** ........................................................................................................ 2

I. J.O.P. Litigation and Settlement Agreement ................................................... 2

II. Compliance with and Enforcement of the Settlement Agreement ........................................... 4

III. Defendants' Have Discovered New Evidence Warranting Change in Position Regarding
E.M.P.'s Class Membership ................................................................................. 4

**ARGUMENT** ........................................................................................................... 6

I. Voluntary Departure Prior to Adjudication is Not a Violation of the Settlement Agreement. .. 6

   A. The Settlement Agreement Does Not Prohibit Discretionary Grants of Voluntary
   Departure. ........................................................ 6

   B. The Settlement Agreement Does Not Prohibit Discretionary Grants of Voluntary
   Departure. ................................................................................. 12

**CONCLUSION** ....................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrego Garcia v. Noem*,
No. 25-1345, 2025 WL 1021113 (4th Cir. Apr. 7, 2025) ........................................................ 8, 9

*ACAS, LLC v. Charter Oak Fire Ins. Co.*,
626 F. Supp. 3d 866 (D. Md. 2022) ...................................................................................... 6, 7

*ARCO Nat'l Constr. LLC v. MCM Mgt. Corp.*,
No. 20-03783, 2024 WL 4041527 (D. Md. Sept. 4, 2024) ........................................................ 10

*Consumer Fin. Prot. Bureau v. Klopp*,
957 F.3d 454 (4th Cir. 2020) ........................................................................................ 6, 7, 8

*Dada v. Mukasey*,
554 U.S. 1 (2008) ................................................................................................................ 7

*Delgado-Corea v. I.N.S.*,
804 F.2d 261 (4th Cir. 1986) .............................................................................................. 10

*Giraldo v. Holder*,
654 F.3d 609 (6th Cir. 2011) ................................................................................................ 8

*In re Donald J. Trump et al.*,
No. 25-5452, 2026 WL 1001512 (D.C. Cir. Apr. 14, 2026) ....................................................... 9

*Melgar-Salmeron v. Bondi*,
No. 23-7792 (2d Cir. June 24, 2025) ...................................................................................... 9

*Narine v. Holder*,
559 F.3d 246 (4th Cir. 2009) .......................................................................................... 10, 11

*Ngarurih v. Ashcroft*,
371 F.3d 182 (4th Cir. 2004) ................................................................................................ 8

*Singh v. Waters*,
87 F.3d 346 (9th Cir. 1996) ................................................................................................. 9

*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*,
404 F.3d 821 (4th Cir. 2005) ................................................................................................ 6

*United States v. Armour & Co.,*
  402 U.S. 673 (1971) ................................................................................................ 6

**Statutes**

8 U.S.C. § 1158(b)(3)(C) ......................................................................................... 2
8 U.S.C. § 1229a ...................................................................................................... 7
8 U.S.C. § 1229a(c)(7) ............................................................................................. 7
8 U.S.C. § 1229c ................................................................................................... 7, 8
8 U.S.C. § 1229c(b)(2) ............................................................................................. 7
8 U.S.C. § 1252(a)(2)(B)(i) ...................................................................................... 8
8 U.S.C. § 1252(f)(2) ............................................................................................... 8

**Regulations**

8 C.F.R. § 208.2(b) .............................................................................................. 1, 2
8 C.F.R. § 240.25(a) ................................................................................................ 7
8 C.F.R. § 1208.2(b) ................................................................................................ 2

**INTRODUCTION**

Plaintiffs' Motion to Compel the Return of Class Member E.M.P., ECF No. 544 (Plaintiffs' Motion), is without basis in either the text of the Settlement Agreement or the law. *First*, the agency's grant of voluntary departure does not involve the execution of a final order of removal by U.S. Immigration and Customs Enforcement ("ICE") and, thus, is not a violation of either Sections III.B or III.I of the Settlement Agreement. Moreover, as voluntary departure is neither referenced nor contemplated in the plain text of the Settlement Agreement, this Court's limited jurisdiction to enforce the provisions of the Agreement do not include review of voluntary departure. Finally, Plaintiffs' assertions regarding E.M.P.'s alleged intellectual disability is not an adequate basis for concluding that E.M.P. did not knowingly and voluntary depart the United States rather than await adjudication of his Form I-589 Application for Asylum. For these reasons, the Court should deny Plaintiffs' Motion.

**BACKGROUND**

**I.      J.O.P. Litigation and Settlement Agreement**

On July 1, 2019, four named Plaintiffs commenced this litigation to challenge United States Citizenship and Immigration Services' ("USCIS") policies on Unaccompanied Alien Children ("UACs"), and in particular how USCIS determined whether an applicant was a UAC at the time they filed their asylum application. The lawsuit specifically targeted a policy ("2019 Redetermination Memo") under which USCIS would make its own factual determinations as to whether an asylum applicant was still a UAC at the time they filed their asylum application and would defer to the UAC findings of immigration judges for applicants in removal proceedings. Specifically, the 2019 Redetermination Memo addressed the competing jurisdiction of the immigration court under 8 C.F.R. § 208.2(b) and USCIS's initial jurisdiction under 8 U.S.C. §

1158(b)(3)(C), in Title 8 removal proceedings. 2019 Redetermination Memo, ECF 3 at 3; *see* 8 U.S.C. § 1158(b)(3)(C), 8 C.F.R. § 208.2(b), 8 C.F.R. § 1208.2(b).

Over the course of five years, the Parties, through counsel, conducted discussions and arm's length negotiations regarding a compromise and settlement "with a view to settling all matters in dispute." ECF No. 199-2 at 3, § I.I. The agreement provides that the "class" is defined as:

> all individuals nationwide who prior to the effective date of the superseding memorandum discussed in Section III(A): (1) were determined to be a UAC; and (2) who filed an asylum application that was pending with USCIS; and (3) on the date they filed their asylum application with USCIS, were 18 years of age or older, or had a parent or legal guardian in the United States who is available to provide care and physical custody; and (4) for whom USCIS has not adjudicated the individual's asylum application on the merits.

*Id.* at 4, § II.E. Notably, the settlement agreement does not provide for or contain a comprehensive list of who the class members are in this case. Tr. May 6, 2025 Hearing 10:21-23 ("It is an unusual Settlement Agreement in that we don't have a defined list of class members, a defined way of identifying who is and is not a member.").

Concerning specific relief, the agreement in relevant part provides that USCIS fully rescind the 2019 Redetermination Memo, assume initial jurisdiction of asylum applications filed by individuals previously determined to be UACs, and issue a superseding memorandum implementing USCIS's obligations under the terms of the settlement agreement. ECF No. 199-2 at 6, §§ III.A-B. As to U.S. Immigration and Customs Enforcement ("ICE"), the agreement specifies that ICE will generally refrain from taking certain positions in the removal proceedings of class members and generally take certain actions in the event a class member's asylum application is granted. *Id.* at 8, §§ III.H, J. The agreement specifies that "With respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final

2

removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." *Id.* at § III.I. The agreement also contains a compliance reporting requirement as to USCIS's obligations under the settlement agreement, *Id.* at 12, § V.B.; specification for notice of the settlement agreement, *Id.* at 11, § IV.E; and a dispute resolution mechanism in the event of alleged noncompliance with the Settlement Agreement. *Id.* at 13, § V.D. The agreement specifies that it "shall terminate 548 days after the Effective Date, except that the Court shall have jurisdiction to enforce paragraph III.A of this Agreement until three years after the superseding memorandum's effective date. *Id*. at 12, § K.

## II.    Compliance with and Enforcement of the Settlement Agreement

In accordance with Section III.A, Defendant USCIS issued a superseding memorandum explaining and implementing the settlement agreement on January 30, 2025. *See* Defendants' First Compliance Report, ECF No. 217. USCIS took initial jurisdiction over all class member asylum applications, as well as the applications of all individuals who have a prior UAC determination. *Id*. After consulting Plaintiffs, USCIS published a revised memorandum on October 30, 2025. *See* Defendants' Sixth Compliance Report, ECF No. 450. Altogether, Defendants filed six Compliance Reports cataloguing how Defendants have implemented and complied with Sections III.A through G of the settlement agreement (the only provisions required to be covered in those Reports). *See* ECF No. 199-2 § V.B; ECF Nos. 217, 257, 282, 389, 427, 450.

On February 5, 2026, Class Counsel provided a written notice of an alleged violation under the Settlement Agreement concerning E.M.P. *See* ECF No. 466-1 at 3-4. Defendants' counsel responded on February 11, 2026, acknowledging receipt, informing Class Counsel that Defendants were aware of their written allegation, and notifying counsel that Defendants would respond within the timeframe provided under Section V.D of the Settlement Agreement. *See id*. at 2. Despite

Defendants' investigation into the allegation regarding E.M.P., and the bargained-for timeframe established by Section V.D, *see* ECF No. 199-2 at 13, § V.D, Class Counsel raised the issue several more times, each time asserting that E.M.P. was a class member wrongfully removed from the United States in violation of the Settlement Agreement. *See* ECF No. 544-1 at 10.

On March 17, 2026, Defendants' counsel reached out to Class Counsel requesting "*additional* information concerning . . . where and with whom E.M.P. was residing when he filed his application with USCIS." ECF No. 544-7 at 8-9 (emphasis added). In response, Class Counsel provided an Office of Refugee Resettlement ("ORR") Verification of Release which was previously provided to Defendants in the initial written allegation on February 5, and a copy of E.M.P.'s asylum application. *See id*. at 7-8. On April 6, 2026, Defendants provided their written response explaining that Plaintiffs' allegation did not produce sufficient evidence of a violation to warrant corrective action. *Id*. at 5. Specifically, Defendants informed Class Counsel that no section of the Settlement Agreement precludes a class member from accepting voluntary departure prior to adjudication of his or her asylum application. *Id*. Defendants further explained that the evidence available, including additional documents provided by Class Counsel, did not establish that E.M.P. was, in fact, a Class Member. *Id*. While Defendants indicated their willingness to continue reviewing any new information concerning E.M.P.'s purported class membership, Class Counsel did not provide any new information. The parties met and conferred regarding the E.M.P. allegation on April 8, 2026, thus exhausting the process for informal resolution under Section V.D of the Settlement Agreement. *See* ECF No. 199-2 at 13, § V.D. On April 14, 2026, Plaintiffs filed the instant motion before this Court. ECF No. 544.

**III.    Defendants' Have Discovered New Evidence Warranting Change in Position Regarding E.M.P.'s Class Membership**

4

On the evening of April 28, 2026, the undersigned counsel was made aware of new evidence which warranted a change in Defendants' position regarding E.M.P.'s membership in the Class. Specifically, Defendants' ongoing internal review of E.M.P.'s records revealed an I-360 Petition for Amerasian, Widow(er), or Special Immigrant. *See* Ex. 1. Contained therein is an Order for Special Findings of Fact and Rulings of Law Regarding E.M.P. from a Massachusetts state court finding that reunification with E.M.P.'s father not viable due to parental neglect and abandonment. *See id*. at 30 ¶ 10. The Order further finds that E.M.P. "has been living in the care and supervision of his mother" who provided "financial[] and emotional[]" support, and that it remained in the best interests of E.M.P. to "remain in Massachusetts under the supervision and care of his mother . . .." *Id*. at 31 ¶¶ 11-13. Given this evidence, Defendants withdraw their previous position that E.M.P.'s membership in the Class, as defined by Section II.E of the Settlement Agreement, is unclear or unconfirmed. *See, e.g.*, ECF No. 544-1 at 9-10.

## ARGUMENT

I.    **Voluntary Departure Prior to Adjudication is Not a Violation of the Settlement Agreement.**

Contrary to Class Counsel's assertions, E.M.P. was not "removed" from the United States in violation of the Settlement Agreement. Pls.' Mot. 11–12. In fact, E.M.P. requested Voluntary Departure in lieu of removal proceedings on January 23, 2026. *See* Ex. 2, Declaration of Sellenia A. Olson ("Olson Decl.") at 2 ¶ 4; Exh. 6, Form I-210 Voluntary Departure and Verification of Departure. For the reasons discussed *infra*, DHS's facilitation of E.M.P.'s request for voluntary departure is not a violation of the Settlement Agreement.

A. **The Settlement Agreement Does Not Prohibit Discretionary Grants of Voluntary Departure.**

The Settlement Agreement is silent concerning whether Class Members may elect to voluntarily depart the United States prior to an adjudication on the merits of their asylum application. *See generally* ECF No. 199-2. Section III.I prohibits ICE from executing final orders of removal for Class Members who have a pending application with USCIS that has not received an adjudication on the merits. *See id*. at 9-10, § III.I ("With respect to any Class Member with a final removal order, ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement.").

The Settlement Agreement must be given effect as written. The Fourth Circuit "interpret[s] consent orders using 'traditional rules of contract interpretation, and the district court's authority is thus constrained by the language of the decree.'" *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 462-63 (4th Cir. 2020) (quoting *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 832 n.6 (4th Cir. 2005); *see also United States v. Armour & Co.*, 402 U.S. 673, 681 (1971) (noting that consent decrees "are entered into by parties to a case after careful negotiation has produced agreement on their precise terms."). Indeed, this Court has previously recognized that the parties may not "add language to the Settlement Agreement that does not comport with the Agreement's plain terms." ECF No. 253 at 8; *see also id*. at 7 ("When interpreting a contract's terms, courts must look to the entire language of the agreement, not merely a portion thereof, and must consider the customary, ordinary and accepted meaning of the language used." (quoting *ACAS, LLC v. Charter Oak Fire Ins. Co.*, 626 F. Supp. 3d 866, 874 (D. Md. 2022) (cleaned up))); ECF No. 199-2 at 15, § VIII.D ("The terms . . . set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties . . .. The Parties further intend that this Agreement constitute the complete and exclusive statement of its terms . . ., and that no extrinsic evidence

whatsoever may be introduced in any judicial or other proceeding . . . involving the interpretation of this Agreement.").

Section III.I of the Settlement Agreement provides, "ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." ECF No. 199-2 at 9, § III.I. The plain text of this provision prohibits ICE from *executing final orders of removal* for Class Members who have a pending application with USCIS that has not received an adjudication on the merits. *See id.* at 9-10, § III.I. Furthermore, the absence of any allusion to voluntary departure in the Settlement Agreement prevents Section III.I from being understood as a prohibition on a Class Member's assent to voluntarily depart the United States prior to an adjudication of his or her asylum application. *See, e.g.*, *Klopp*, 957 F.3d at 462–63.

Voluntary departure and final orders of removal are distinct concepts under the Immigration and Nationality Act ("INA"). *See, e.g.*, *Dada v. Mukasey*, 554 U.S. 1, 4-5 (2008) (discussing the interplay between 8 U.S.C. §§ 1229a(c)(7) and 1229c(b)(2) and noting that an alien "ordered removed" may file one motion to reopen removal proceedings as of right but that voluntary departure "has the effect of withdrawing the motion to reopen."). Under 8 U.S.C. § 1229c, the Secretary of Homeland Security and Attorney General may, in relevant part, "*permit* an alien voluntarily to depart the United States . . . in lieu of being subject to proceedings under" 8 U.S.C. § 1229a (emphasis added). The implementing regulation, in turn, explains that "the authority contained in [8 U.S.C. § 1229c(a)] to permit aliens to depart voluntarily from the United States … in lieu of being subject to proceedings under [8 U.S.C. § 1229a]" may be exercised by certain authorized officers and employees of DHS.   8 C.F.R. § 240.25(a). Such was the nature of the voluntary departure offered and assented to in this matter.

Defendants need not suggest that E.M.P. "waived his rights" under the Settlement Agreement for his decision to voluntarily depart the United States to be in accordance with the Agreement and this Court's April 23, 2025 Order. *See* Pls.' Mot. 11 ("EMP never waived his rights under the settlement agreement . . . "). *First*, this Court is bound by both the text of the Settlement Agreement and the INA which limits its power to review grants of voluntary departure. *See supra* at 6; *see, e.g.*, *Ngarurih v. Ashcroft*, 371 F.3d 182, 194 (4th Cir. 2004) ("Thus, we are free to grant a stay of removal when the alien satisfies the statutory requirements for such relief. *See* 8 U.S.C. § 1252(f)(2). We are not free to grant additional relief with respect to a voluntary departure order . . . .."); *see also Giraldo v. Holder*, 654 F.3d 609, 615 (6th Cir. 2011) ("The IIRIRA expressly abolished our authority to review discretionary grants and denials of voluntary departure.") (citing *Ngarurih*, 371 F.3d at 193. The INA expressly precludes review of "any judgment regarding the granting of relief under section . . . 1229c . . .." 8 U.S.C. § 1252(a)(2)(B)(i). Even setting aside the fact that the Settlement Agreement must be governed by its text, *see e.g.*, *Klopp*, 957 F.3d at 462–63, the grant of E.M.P.'s request for voluntary departure in lieu of removal proceedings is not subject to judicial review. As such, this Court's limited jurisdiction to enforce the Settlement Agreement cannot extend to reviewing a grant of voluntary departure, which is neither addressed in the Agreement's text nor proper for judicial review under the INA.

*Second*, the voluntary departure here was in *lieu* of being subject to removal proceedings and did not attend a removal order by an immigration court, nor is this exercise of agency discretion an execution of a final order of removal as contemplated in Section III.I of the Settlement Agreement. Accordingly, Class Counsel's reliance on cases where courts instructed return of removed individuals are factually and legally distinct. *See* Pls.' Mot. 12–13; *see. e.g.*, *Abrego Garcia v. Noem*, No. 25-1345, 2025 WL 1021113, at *1 (4th Cir. Apr. 7, 2025) (Wilkinson, J.

concurring) (noting a unanimous panel denied Government's motion for stay of order to facilitate the return of Plaintiff); *Singh v. Waters*, 87 F.3d 346, 349-50 (9th Cir. 1996); *Melgar-Salmeron v. Bondi*, No. 23-7792, Dkt. No. 35 (2d Cir. June 24, 2025). Plaintiffs' reliance on these cases is inapposite since, in each, the district courts concluded, and the appellate courts agreed, that the removal of these individuals violated a lawful order of staying or prohibiting their removal. In *Abrego Garcia*, the alien received a decision from the immigration court withholding his removal to El Salvador. *See* 2025 WL 1021113, at *1. In *Melgar-Salmeron*, the court previously entered an order for stay of removal. No. 23-7792, Dkt. No. 30; *see also Singh v. Waters*, 87 F.3d 346, 349-50 (similarly noting that the government violated a stay of removal). Here, no such stay of removal was violated. Both the Settlement Agreement and the Court's April 23, 2025 Order, expressly apply to and define members of the Class. *See* ECF Nos. 199-2, 254. Even assuming *arguendo* that his voluntary departure was a "removal" within the meaning this Court's April 23, 2025 Order or the execution of a final removal order under Section III.I of the Settlement Agreement, for the reasons discussed *supra*, E.M.P. is not subject to the prohibition against the execution of a removal order or removal since his membership in the Class has not been established.[1]

**B.      The Settlement Agreement Does Not Prohibit Discretionary Grants of Voluntary Departure.**

*First*, Class Counsel's argument, in part, appears to rely on the lack of counsel present at the time E.M.P. assented to voluntary departure to establish that any "waiver" of rights under the

---

[1] Plaintiffs' reliance on *In re Donald J. Trump et al.* is similarly inapposite. *See e.g.*, No. 25-5452, 2026 WL 1001512 (D.C. Cir. Apr. 14, 2026). In that case, the U.S. Court of Appeals for the D.C. Circuit was analyzing the "plain meaning" of a temporary restraining order entered by a district court. *Id.* at *11. It was not purporting to interpret the meaning of removal—much less the meaning of voluntary departure—in the context of Title 8.

Settlement Agreement. *See* ECF No. 544-1 at 13-14; *see also Delgado-Corea v. I.N.S.*, 804 F.2d 261, 264 (4th Cir. 1986) (holding no waiver of the right to counsel where the "Delgados' acquiescence in proceeding without counsel at their deportation hearing was not an intelligent relinquishment of a known right because they were not advised that they, as indigents, had access to free legal advice in the city where their hearing was conducted."). By contrast, E.M.P. was not in removal proceedings at the time he requested to voluntary departure. *See* ECF No. 544-11, Seger Decl. at 3 ¶ 10; *id.*, Ex. G at 1. Plaintiffs' reliance on *ARCO Nat'l Constr. LLC v. MCM Mgt. Corp.*, No. 20-03783, 2024 WL 4041527 (D. Md. Sept. 4, 2024), is similarly uninstructive. There, the district court merely reiterated the standard that "[w]aiver . . . is the intentional relinquishment or abandonment of a known right." *ARCO*, 2024 WL 4041527, at *6. E.M.P.'s previous attorney, who had represented him in removal proceedings which terminated on June 12, 2023, *id*. at 3 ¶ 10, did not enter an appearance before the agency on E.M.P.'s behalf until January 27, 2026—four days after E.M.P. assented to voluntary departure in lieu of removal proceedings. *See id*. at 4 ¶ 12; *id.*, Ex. G at 1; *see also* Olson Decl. at 2 ¶¶ 4; Ex. 3 at 1. In short, Class Counsel's citations are inapposite because, here, E.M.P. was neither in proceedings nor did he appear to be represented at the time of his assent to Voluntary Departure.

*Finally*, Class Counsel's arguments regarding the knowing and voluntary nature of E.M.P.'s assent to voluntary departure are without merit. "An alien's waiver of his appellate rights must be knowingly and intelligently made." *Narine v. Holder*, 559 F.3d 246, 249 (4th Cir. 2009); *id*. at 250 (holding that the Board of Immigration Appeals abused its discretion in denying a motion to reconsider, finding the alien had not knowingly waived her right to appeal determination of removability where the immigration judge failed to clearly explain the consequences of accepting voluntary departure). Here, the agency clearly communicated to E.M.P., in his native Spanish

10

language, that he would be "waiving his right to seek any form of relief from removal, waiving any further relief in immigration proceedings, and waiving the right to appeal any issues." Olson Decl. at 2 ¶ 6. Contrary to Class Counsel's assertions and proffered declaration, the agency did not represent to E.M.P. that his voluntary departure was linked to a petition for writ of habeas corpus or that he would be released into the United States upon his assent. *See generally id*.

Class Counsel relies heavily on assertions that E.M.P. has an intellectual disability that precluded him from knowingly assenting to voluntary departure or comprehending the consequences of doing so. *See* Pls' Mot. 3–4, 11. Notably, the Seger Declaration relies heavily on hearsay statements purportedly from a clinical psychologist who, after "two sessions in 2019", concluded that E.M.P. "met the criteria for a[n] 'Intellectual Disability – Moderate' diagnosis (DSMV code 319F71)." ECF No. 544-11 at 2 ¶ 4.[2] The Seger Declaration further relies on hearsay statements of an unnamed stepfather indicating that E.M.P. "received specialized education adjustments in high school in Massachusetts." *Id*. These statements starkly contrast the interaction between E.M.P. and the Deportation Officer who explained the nature and consequences of voluntary departure to him. *See Olson Decl.* at 2-3 ¶¶ 6, 9. In light of both Class Counsel's lack of evidence regarding the nature and extent of E.M.P.'s alleged intellectual disability and much less whether such disability precluded him from competently assenting to voluntary departure after an explanation provided in his native language, this Court should not find that E.M.P.'s assent to voluntary departure was not knowingly and intelligently made. *See, e.g.*, *Narine*, 559 F.3d at 249.

**CONCLUSION**

---

[2] Defendants again note that this is new information not provided prior to the instant motion.

11

In sum, E.M.P.'s assent to, and the agency's subsequent grant of, voluntary departure does not violate any provision of the Settlement Agreement. Consequently, the Court should deny Plaintiffs' motion to compel the return of E.M.P.

Dated: April 28, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY NICASTRO
Acting Director

CATHERINE M. RENO
Acting Assistant Director

RUTH ANN MUELLER
Senior Litigation Counsel

EVAN P. SCHULTZ
LARISSA K. JOHNSON
Trial Attorneys

/s/ Joshua A. Clem
JOSHUA A. CLEM
Trial Attorney, AR Bar No. AR2023202
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Telephone: (202) 253-6762
Joshua.Clem2@usdoj.gov
*Counsel for Defendants*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Maryland by using the CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system to all counsel of record. Additionally, all attending exhibits filed under seal were provided to counsel for Plaintiffs via electronic mail.

DATED: April 28, 2026                                                        Respectfully submitted,

                                                                             */s/ Joshua A. Clem*
                                                                             Trial Attorney
                                                                             U.S. Department of Justice

13