# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

**J.O.P.,** *et al.,*

        Plaintiffs,

    v.

**U.S. DEPARTMENT OF HOMELAND SECURITY**, *et al.,*

        Defendants.

Civil Action No.
8:19-CV-01944-SAG

███████████████

**REDACTED**

**CLASS COUNSEL'S REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION TO
COMPEL THE RETURN OF CLASS MEMBER E.M.P.**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT.............................................................................................................. 1

        A.    Defendants Now Concede That E.M.P Is a Class Member ................................... 1

        B.    Defendants Recycle a Narrow Interpretation of the Settlement Agreement Already Rejected by the Court and Cannot Show that E.MP. Waived His Rights .............. 2

                i.    Defendants Rely on a Cramped Reading of Section III.I Already Rejected by the Court.................................................................................................... 3

                ii.    E.M.P. Did Not Waive His Rights Under the Settlement Agreement ........ 5

III.    CONCLUSION.......................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ARCO Nat'l Constr. LLC v. MCM Mgt. Corp.*,
No. 20-03783, 2024 WL 4041527 (D. Md. Sept. 4, 2024)......................................................7, 8

*Delgado v. I.N.S.*,
804 F.2d 261 (4th Cir 1986) ...................................................................................................8

*J.G.G. et al. v. Trump et al.*,
1:25-cv-00766, D.I. 58 (ECF No. 544-10)...............................................................................4

*Narine v. Holder*,
559 F.3d 246 (4th Cir. 2009) ...................................................................................................8

*United States v. Merino-Hernandez*,
46 F. Supp. 3d 602 (D. Md. 2014)............................................................................................8

## I.    INTRODUCTION

Having finally conceded E.M.P.'s Class Member status, Defendants now pivot to other baseless arguments to justify their removal of him in violation of the Settlement Agreement. Defendants assert that the Agreement's reference to "final removal orders" should be limited to Title 8 removal orders, but the Court already rejected this atextual reading of that term. While Defendants characterize their removal of E.M.P. as a "voluntary departure" outside the bounds of the Settlement Agreement, the evidence does not substantiate Defendants' claims that E.M.P. intentionally relinquished known rights under the Settlement Agreement nor that he voluntarily departed. There is no dispute that Defendants detained E.M.P., transferred him thousands of miles from home, and weeks later physically removed him from the United States without affording him an adjudication on the merits of his pending asylum application—despite a system alert in his EARM record indicating that he was subject to a *J.O.P.* stay of removal. Defendants cannot avoid consequences for this violation of the Settlement Agreement by re-casting E.M.P.'s removal with their preferred terminology of an "incentivized voluntary departure," where there is in fact no evidence that E.M.P. voluntarily or intentionally waived his rights under the Agreement.

## II.    ARGUMENT

### A.    Defendants Now Concede That E.M.P Is a Class Member

After months of disputing Class membership, Defendants now concede that E.M.P. is, in fact, a Class Member.[1] ECF No. 571 ("Opp.") at 5. Defendants claim to have discovered "new evidence" of E.M.P.'s Class status only hours before they filed their opposition to the present motion. *Id.* at 4-5. Yet this "new evidence" has been in Defendants' records since 2022 (ECF No.

---

[1] Consistent with this concession, Defendants presumably intend to retract the statement later in their opposition brief that "E.M.P. is not subject to the prohibition against the execution of a removal order or removal since his membership in the Class has not been established," Opp. at 9. In any case, as set forth in Class Counsel's Opening Brief, E.M.P. is a Class Member.

573, at 42-43) and was explicitly referenced in the Declaration of Gal Seger dated April 14, 2026, filed in support of this motion. Moreover, Class Counsel provided sufficient evidence of Class membership when they first raised this violation to Defendants on February 5, 2026, and provided further detail in response to Defendants' request on March 17, 2026, ECF No. 544-7 at 6-7, 12.

Not only did Defendants have all information necessary to confirm E.M.P.'s Class membership when they removed him in February 2026, but they removed him despite two comments in his EARM record as well as a banner flagging his potential *J.O.P.* Class membership. ECF No. 544-1 at 5. Although these EARM alerts instruct ICE not to pursue an individual's removal unless they receive clearance after communicating with specified agency points of contact, there was no testimony during the March 2026 hearing that any such communication took place prior to Defendants' removal of E.M.P. *See* ECF No. 199-2 at 9, § III.I ("This alert [referring to *J.O.P.* EARM banner as was present in E.M.P.'s record] will not be removed from any individual case until such time as USCIS indicates it is appropriate to remove it."). In Deportation Officer ███ Olson's declaration, she does not even acknowledge the *J.O.P.* alerts in E.M.P.'s file, let alone claim that she followed any of the required processes for potential *J.O.P.* Class Members before she presented E.M.P. with "incentivized voluntary departure" paperwork. ECF No. 574. ("Olson Decl.") (filed under seal).

Defendants' choice to disclaim Class membership for months, only to assert an eleventh-hour revelation based on records the agency has held for years, delayed resolution of this urgent matter—all while E.M.P. remains in his country of feared persecution due to Defendants' conduct.

**B.  Defendants Recycle a Narrow Interpretation of the Settlement Agreement Already Rejected by the Court and Cannot Show that E.MP. Waived His Rights**

The Settlement Agreement and the Court's April 23, 2025 Order are clear: Defendants may not remove a Class Member until and unless USCIS has adjudicated their asylum application on

the merits. Under Defendants' view, Opp. at 6-7, they could arrest and detain any Class Member and physically remove them to their country of feared persecution without a USCIS asylum adjudication on the merits, so long as they label that removal a "voluntary departure." This Court should reject such a reading of the agreement, which defies its plain terms and nullifies its purpose. Regardless of what self-serving terminology Defendants use, when Defendants detain Class Members and then physically remove them from the United States without affording them an adjudication on the merits of their pending asylum application, that removal violates the Settlement Agreement.

### i.    Defendants Rely on a Cramped Reading of Section III.I Already Rejected by the Court

In opposing Class Counsel's first Motion to Enforce, Defendants argued that a "final removal order" under the Settlement Agreement refers only to a Title 8 removal order and does not include a removal by ICE under Title 50 (Alien Enemies Act). This Court rejected that argument, stating that "[t]he Settlement Agreement does not limit the protection against removal provided in Section III.I to any specific statutory mechanism for removal." ECF No. 253 at 9. Now Defendants again seek to limit the term to refer only to a Title 8 removal order, excluding ICE removals of detained individuals that they label as "voluntary departures." Opp. at 8 (voluntary departure was used "in *lieu* of being subject to removal proceedings."). The Court should again reject Defendants' attempt to limit the scope of Defendants' obligation to refrain from removing Class Members.

In arguing for a "plain text" interpretation, Defendants simply parrot the language of Section III.I which prohibits ICE from executing a "final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement." *Id.* at 7. But this Court has already recognized, in granting a prior class-wide motion to enforce, that

3

the term "final removal order" is not defined in the Settlement Agreement and is therefore not limited to any particular type of "removal." ECF No. 253 at 9. Furthermore, Defendants have no response to the fact that their own internal files for E.M.P. refer to his "pending removal" and that he "was removed" after being "offered a Voluntary Departure." ECF No. 544-9 at ICE-00000027. In short, E.M.P. was subject to a "final removal order," and Defendants removed him from the United States, as Defendants' own records make clear.

Defendants also attempt to run from their own proffered definition of "removal," adopted by the U.S. Court of Appeals for the D.C. Circuit, as including "[t]he transfer or moving of a person or thing from one location, position, or residence to another." ECF No. 544-1 at 12; *J.G.G. et al. v. Trump et al.*, 1:25-cv-00766, D.I. 58 (ECF No. 544-10). Defendants assert that the plain meaning of the term offered in that case was in the context of a temporary restraining order, "not purporting to interpret the meaning of removal . . . in the context of Title 8." Opp. at 9, n.1. Therein lies the point—Defendants are again trying to limit the meaning of a "removal order" to refer only to an order of the Executive Office for Immigration Review under Title 8. Just like the reference to a "removal" in the *J.G.G.* temporary restraining order, the Settlement Agreement's stay of removal provision is not limited to a Title 8 removal order. The same plain language applies here, and by Defendants' own definition E.M.P. was subject to a "removal order."

Reprising a familiar pattern, Defendants seek to assert that the present motion is outside the scope of this Court's authority by misrepresenting the motion as seeking review of a grant of voluntary departure. Defendants' reliance on courts' "limit[ed] . . . power to review grants of voluntary departure," Opp. at 8, is mere distraction: this motion asks the Court to enforce the Settlement Agreement pursuant to Section V.D of the Agreement and remedy Defendants'

4

violation; no one has asked the Court to review DHS's authority to consider voluntary departure requests.

### ii.        E.M.P. Did Not Waive His Rights Under the Settlement Agreement

As a Class Member, E.M.P. was entitled to a USCIS asylum adjudication on the merits. ECF No. 199-2 at 6, § III.B.  It is undisputed that Defendants did not honor that right.  Further, E.M.P. had the right to not be removed from the United States without that USCIS adjudication, *id.* at 8, § III.I, and was entitled to request that USCIS expedite that adjudication in view of his detention, *id.,* III.G.  E.M.P. did not receive the benefit of those rights, either.  Defendants cannot, and do not attempt to, show that E.M.P. knowingly waived these and other rights under the Settlement Agreement.  To the contrary, Defendants insist that they "need not suggest that E.M.P. 'waived his rights' under the Settlement Agreement" in order to justify proceeding with a purportedly "voluntary" removal that vitiated his rights under the Settlement Agreement.  Opp. at 8.  But neither the facts nor the law support Defendants' cavalier position that the absence of a waiver of rights by E.M.P. is immaterial.  Absent a showing by Defendants of E.M.P.'s waiver of these specific rights under this Settlement Agreement, the removal of E.M.P. is a violation of the Agreement.

Defendants rely on the Olson declaration to assert that "the agency clearly communicated" to E.M.P. that he "would be 'waiving his right to seek any form of relief from removal, waiving any further relief in immigration proceedings, and waiving the right to appeal any issues." Opp. at 10-11, Olson Decl. ¶ 6.  But even accepting *arguendo* Defendants' assertion that E.M.P. elected to waive those specified rights, none are rights grounded in the Settlement Agreement.  Waiving the forward-looking right *to seek any form of relief* is not the same as waiving the right to receive an adjudication on the merits E.M.P. had *already sought* by filing an asylum application with

5

USCIS.  Waiving "any further relief *in immigration proceedings*" has no bearing on the right to an asylum adjudication by USCIS outside of removal proceedings, and is irrelevant to a person who, as Defendants emphasize, "was not in removal proceedings," Opp. at 10.  And because no appeal lies from a USCIS asylum adjudication, a purported waiver of "the right to appeal any issues" is not an agreement to forego the core rights guaranteed by the Settlement Agreement.

Officer Olson's declaration[2] is notable for what it does *not* assert.  Officer Olson does not claim to have informed E.M.P. that he would be foregoing the rights embodied in the Settlement Agreement; nor is any acknowledgment of those rights reflected in the legalese of DHS Form I-210 that she states she orally translated into Spanish for E.M.P.  Olson Decl. ¶ 6.  The declaration does not even reflect that Officer Olson herself was aware of E.M.P.'s pending asylum application, the *J.O.P.* Settlement Agreement, or E.M.P.'s potential Class membership, as reflected in his EARM record.  Even if the declaration were to assert that E.M.P. had tangibly demonstrated comprehension, had a chance to ask questions, and had a chance to confer with his immigration counsel following his meeting with Officer Olson—which it does not—even then, the declaration and the legal arguments relying on it cannot show that E.M.P. formed or acted upon an intention to waive his rights as a Class Member.  Furthermore, Officer Olson does not explain why Defendants failed to allow E.M.P. any access to his immigration counsel, and then misinformed his counsel by denying that E.M.P. had signed any type of stipulation and instead inaccurately

---

[2] Like many of the witnesses Defendants presented at the three-day March 2026 evidentiary hearing, Officer Olson lacks personal knowledge of key points in her testimony.  When the Court ordered Defendants to present "individuals with personal knowledge" of "[f]acts and circumstances surrounding Defendants' removal" of individuals including E.M.P., ECF No. 472 at 1 & n.1, Defendants did not designate Officer Olson, depriving Class Counsel of the opportunity to test her statements concerning her communications with and impressions of E.M.P., and the genesis of any alleged voluntary departure "request" and its prior approval.  Inconsistencies with other evidence in the record undermine the reliability of these untested statements.

representing that ICE would be filing a Notice to Appear to commence immigration court proceedings, signifying that E.M.P. would remain in the United States for those proceedings. ECF No. 544-11 ¶¶ 12-13.  Had Defendants allowed E.M.P. to confer with his immigration counsel, E.M.P. could have been informed of his options as a *J.O.P.* Class Member, including asking USCIS to expedite his pending asylum application while benefitting from a stay of removal.  Instead, Defendants "offered" E.M.P. papers to sign without disclosing the full range of the rights he would be waiving.

Defendants also do not engage with evidence that E.M.P. did not comprehend the purpose or the legal effect of the document he signed.  E.M.P. understood that his signature would lead to his release to his family in Massachusetts, not removal to Guatemala where his life and safety are at risk.  *See* ECF No. 544-11 ¶¶ 11, 15.  In an unfounded attempt to call into question E.M.P.'s cognitive disability, Defendants rely on Officer Olson's lay witness observations of E.M.P. as if she were an expert trained, educated, or experienced in evaluating cognitive disabilities and as if she had met with E.M.P. to assess him for this purpose.  Tellingly, Officer Olson omits any mention of reviewing E.M.P.'s EARM record, which documents that E.M.P. could not read or write.  ECF No. 544-9 at ICE-00000054.  Furthermore, ICE's obstruction of his immigration counsel's ability to reach E.M.P. casts doubt on ICE's desire for E.M.P. to understand the document that he was signing.[3]

Defendants concede that "[w]aiver . . . is the intentional relinquishment or abandonment of a known right," Opp. at 10 (citing *ARCO Nat'l Constr. LLC v. MCM Mgt. Corp.*, No. 20-03783, 2024 WL 4041527 (D. Md. Sept. 4, 2024)).  Yet they assert that cases issued within this circuit

---

[3] For all of these reasons, Defendants' assertion that E.M.P.'s removal was "voluntary" is also completely unfounded.

standing for exactly that proposition are "inapposite," purportedly because E.M.P. was not in removal proceedings and did not "appear to be represented[.]" Opp. at 10. These remarks are non-sequiturs. In *Delgado v. I.N.S.,* 804 F.2d 261, 263 (4th Cir 1986), the Fourth Circuit recognizes waivers that are knowing and voluntary, but nothing in that decision limits application of that standard to persons in deportation proceedings just because that was the posture of the plaintiffs in *Delgado*[4]; *see* Opp. at 10. The implication that only those currently in immigration court removal proceedings are protected from unknowing, involuntary waivers is unsupported, and would give DHS unilateral control over that protection, given that authority as to whether to initiate immigration court removal proceedings rests with Defendant ICE. In pointing out that counsel who previously represented E.M.P. in removal proceedings entered an appearance before DHS only after E.M.P. signed voluntary departure paperwork, Opp. at 10, Defendants ignore evidence that E.M.P.'s counsel persistently tried to contact various ICE detention facilities and offices to no avail. ECF No. 544-11 ¶¶ 12-13. Further, counsel of record before USCIS in connection with E.M.P.'s pending asylum application and approved petition for special immigrant juvenile status had entered their appearance with USCIS years earlier. While contact with counsel is not dispositive of whether a known right was intentionally relinquished, *ARCO*, 2024 WL 4041527 at *7 ("[t]o decide whether a waiver has occurred, the court focuses on the actions of the person who

---

[4] Class Counsel regrets an inadvertent misstatement in the opening brief that the *Delgado* decision applied the test of an intelligent relinquishment of a known right to hold that the plaintiffs there had not waived their right to counsel; in fact, that statement was made in the dissenting opinion. It is, however, an accurate statement of the standard for waiver of a right in the Fourth Circuit. *Narine v. Holder*, 559 F.3d 246, 249-250 (4th Cir. 2009) (finding that noncitizen did not demonstrate clear understanding of the consequences of accepting voluntary departure and that "an alien's waiver of his appellate rights must be knowingly and intelligently made"); *United States v. Merino-Hernandez*, 46 F. Supp. 3d 602, 607 (D. Md. 2014) ("A valid waiver of an alien's rights must be knowing and intelligent. The government bears the burden of showing that an alien's waiver of his rights is knowing and intelligent.").

held the right"), Defendants' own records disclosed both E.M.P.'s inability to read and write and his long-standing relationship with counsel, ECF No. 544-09 at ICE-00000054.

Finally, Defendants never suggest that E.M.P. withdrew his asylum application, which remains pending before USCIS.  ECF No. 544-11 at ¶ 9; 544-014.  Under USCIS procedures, "[t]he decision to withdraw is the applicant[']s alone," and entails submitting a written request to the Asylum Office or appearing at the Asylum Office in person and completing a "Declaration of Intent to Withdraw Asylum Application."  USCIS, Affirmative Asylum Procedures Manual (last updated Feb. 2025) at III.W.[5]  Where, as here, an asylum applicant is represented by counsel of record, any communication from DHS with respect to withdrawal of the asylum application should be directed to counsel of record and not to the represented applicant without their counsel's involvement or awareness.  No evidence in the record comes close to satisfying the USCIS withdrawal procedures or otherwise shows that E.M.P. intended to relinquish any rights as a Class Member.

## III.   CONCLUSION

For all the reasons set forth above, Defendants violated the Settlement Agreement and the Court's April 23, 2025 Order by removing Class Member E.M.P. from the United States while his asylum application is pending with USCIS.  This Court should order Defendants to promptly return E.M.P. to the United States.

---

[5] Available at:  https://www.uscis.gov/sites/default/files/document/guides/AAPM.pdf.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: 540-907-1761
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project of the
National Lawyers Guild
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
Kjackson@publiccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs and the Class*
*\*Admitted pro hac vice*