**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| J.O.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>Defendants. | Civil Action No.<br>8:19-CV-01944-SAG |

**CLASS COUNSEL'S BRIEF IN SUPPORT OF THEIR MOTION TO ENFORCE SECTION III.H OF THE SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS


I. **INTRODUCTION** ........................................ 1

II. **FACTUAL BACKGROUND** ........................................ 3

A. This Litigation and the Settlement Agreement ........................................ 3

B. Administrative Closure, Termination, and Recalendaring Immigration Proceedings ........................................ 6

C. Defendants Have Denied Numerous Class Members Their Rights Under Section III.H and Have Declined to Correct Such Violations ........................................ 7

**III. THIS MOTION IS RIPE FOR ENFORCEMENT UNDER SECTION V.D OF THE SETTLEMENT AGREEMENT** ........................................ 14

IV. **ARGUMENT** ........................................ 14

A. DHS Opposition to Administrative Closure Motions Violates the Settlement Agreement's Command to Join or Non-Oppose Such Motions ........................................ 14

B. DHS Motions to Recalendar Class Members' Administratively Closed Removal Proceedings Violate the Settlement Agreement ........................................ 17

C. DHS's Blanket Opposition to Class Members' Termination or Dismissal Motions Violates the Settlement Agreement ........................................ 20

D. The Court Should Order Individual and Class-Wide Relief to Remedy Defendants' Violations of Section III.H ........................................ 22

D. **CONCLUSION** ........................................ 24

# TABLE OF AUTHORITIES

## Cases

*A.C.J. v. Hermosillo*, No. 2:25-CV-02486-DGE, 2026 WL 73857 (W.D. Wash. Jan. 9, 2026) .......... 13, 15, 18

*Arevalo v. Barr*, 950 F.3d 15 (1st Cir. 2020) .......... 7

*Matter of Avetisyan*, 25 I&N Dec. 688 (B.I.A. 2012) .......... 6

*Calomiris v. Woods*, 353 Md. 425 (1999) .......... 18

*Matter of Castro-Tum*, 27 I&N 271 (A.G. 2018) .......... 14

*Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139 (2003) .......... 18

*Matter of Cruz-Valdez*, 28 I&N Dec. 326 (A.G. 2021) .......... 14

*Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37 (2013) .......... 16

*Fairfax Countywide Ctzn. Ass'n v. Fairfax Cnty.*, 571 F.2d 1299 (4th Cir. 1978) .......... 14

*Hernandez-Serrano v. Barr*, 981 F.3d 459 (6th Cir. 2020) .......... 14

*Lovo v. Miller*, 107 F.4th 199 (4th Cir. 2024) .......... 15

*Martinez v. Hyde*, 810 F. Supp. 3d 135 (D. Mass. 2025) .......... 13

*M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015) .......... 18

*Scotland Mem'l Hosp., Inc. v. Integrated Informatics, Inc.*, No. CIV. 1:02CV00796, 2003 WL 151852 (M.D.N.C. Jan. 8, 2003) .......... 15

*Wheeler v. Badders*, 2025 WL 3227720 (App. Ct. Md. Nov. 19, 2025) .......... 18

## Rules

8 C.F.R. § 208.14(c)(1) .......... 9

## I. INTRODUCTION

Defendants' removals of more than 50 Class Members are violations of the Settlement Agreement, depriving Class Members of their right to adjudication by USCIS of their asylum applications. Alas, Defendants have violated the Settlement Agreement in additional ways, and will continue to do so unless the Court intervenes again. In order to ensure that Class Members in removal proceedings have their asylum applications adjudicated by USCIS, Defendants agreed in the Settlement Agreement that DHS "will join or non-oppose Class Members' motion(s) for" administrative closure or other postponements, and "will generally join or non-oppose Class Members' motions to dismiss or terminate" proceedings. ECF No. 199-2 at 9, Section III.H. These provisions are necessary because otherwise immigration judges (IJs) may proceed to adjudicate the Class Member's asylum application, or even order the Class Member removed, depriving the Class Member of the opportunity to receive their asylum adjudication by USCIS.

Despite having agreed to these terms, Defendants consistently oppose Class Members' motions for administrative closure or termination, and have moved to recalendar Class Members' removal proceedings following administrative closure prior to adjudication by USCIS. Because of the significant deference immigration courts show toward positions DHS takes in removal proceedings, Defendants' joinder or opposition to procedural motions is often determinative.

Defendants' interpretation of Section III.H renders it nearly meaningless. Section III.H provides no discretion to DHS as to whether to join or non-oppose a Class Member's motion to administratively close—the Agreement mandates that they "will join or non-oppose" such motions. Defendants also interpret Section III.H to permit them to immediately reverse their obligation to join or non-oppose a motion for administrative closure by filing a subsequent motion to recalendar. A promise that can be immediately reversed is no promise at all. As for termination motions, although the Settlement Agreement provides some discretion to DHS to join or non-

oppose such motions, discretion can only be exercised to oppose such a motion if (a) "[DHS] deems such opposition warranted based on the individual facts of the case," and (b) DHS's opposition "is not based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application." ECF No. 199-2 at 9, Section III.H. Despite this limited discretion, DHS has repeatedly opposed Class Member motions to terminate without regard to the individual facts of the case, and based on positions that USCIS does not have Initial Jurisdiction over the asylum application. These practices violate Section III.H, and have forced numerous Class Members to face active removal proceedings while awaiting USCIS's exercise of initial jurisdiction.

Pursuant to Section V.D, Class Counsel moves to enforce Section III.H of the Settlement Agreement both individually and class-wide. In the case of Class Member A.C.H., Class Counsel asks that the Court order Defendants to join or non-oppose his forthcoming renewed motion(s) for administrative closure or termination. For class-wide relief, to prevent DHS from using its role in removal proceedings to thwart Class Members' rights to have USCIS adjudicate their asylum applications in the first instance, the Court should order Defendants to adhere to the Agreement as written—by joining or non-opposing all motions for administrative closure, by refraining from seeking to recalendar administratively closed proceedings, and by refraining from opposing termination or dismissal motions unless DHS presents individual case facts that warrant such opposition. Absent such relief, given Defendants' position that their conduct is justified, DHS's violations will continue.

## II. FACTUAL BACKGROUND

### A. This Litigation and the Settlement Agreement

This case was brought in 2019 on behalf of young asylum seekers previously determined by the U.S. government to be unaccompanied children. It concerns the right of such children to have their asylum applications decided through a non-adversarial interview by a USCIS asylum officer, even if the young person has been placed in removal proceedings in immigration court.

After the Court granted a preliminary injunction in 2019 restoring asylum-seeking unaccompanied children's right to USCIS jurisdiction over their asylum applications, ECF No. 71, Defendants began a new practice to undermine USCIS's jurisdiction and the Court's preliminary injunction—actively opposing unaccompanied children's motions in immigration court for postponements to await a USCIS asylum adjudication. In opposing postponements in immigration court to await USCIS's adjudication, Defendants were advocating for the court to conduct "a hearing on the merits of [unaccompanied children's] asylum application in the adversarial setting of the immigration court, in violation of [their] statutory right to avoid that setting entirely by first making [their] case in a UCSIS interview." ECF No. 124-1 at 11; *see also* ECF No. 134 at 11-12. Class Counsel amended the complaint to directly challenge this DHS conduct, ECF No. 91 ¶¶ 108, 140, 141, and sought an amended preliminary injunction to forbid this DHS practice, ECF No. 124.

The Court agreed that DHS's practice of opposing immigration court postponements to await USCIS asylum adjudications was likely unlawful and on December 21, 2020, granted Class Counsel's motion to amend the preliminary injunction to forbid this conduct. ECF No. 144. The Court's class-wide amended preliminary injunction enjoined Defendants from:

(1) Seeking "[d]enials of continuances or other postponements [of Class Members' removal proceedings] in order to await adjudication of an asylum application that has been filed with USCIS";

(2) Seeking "[Executive Office for Immigration Review] exercise of jurisdiction over an asylum claim [of a class member in removal proceedings] where USCIS has initial jurisdiction under the terms of the 2013 Kim Memorandum"; and

(3) "[O]therwise taking the position in such individual's removal proceedings that USCIS does not have initial jurisdiction over the individual's asylum application."

*Id.* After the Court's grant of an amended preliminary injunction and certification of a nationwide class, the parties entered into settlement negotiations, and in June 2024, reached a Settlement Agreement. ECF No. 199-2.

A core protection in the Agreement is the requirement that "USCIS will exercise Initial Jurisdiction over Class Members' asylum applications in accordance with the terms of this Settlement Agreement and adjudicate them on the merits." *Id.* at 7, Section III.B. Other provisions of the Settlement Agreement are designed to prevent actions by Defendants that would contravene USCIS's exercise of its initial jurisdiction. Most relevant to the instant Motion, in Section III.H the parties incorporated and expanded the preliminary injunction's prohibition against DHS conduct in a Class Member's removal proceedings that undermines USCIS's initial jurisdiction. That paragraph retains the preliminary injunction's prohibition against DHS advocacy opposing USCIS's initial jurisdiction and against DHS oppositions to postponements of immigration court proceedings, and adds more explicit language regarding the potential types of postponements a Class Member might seek that DHS may not oppose: DHS may not oppose Class Member motions for a "continuance, administrative closure unless unavailable under controlling law in a particular jurisdiction, and, where available, assignment of cases to the EOIR status docket." *Id.* at 9, Section III.H.

In full, Section III.H reads as follows:

> With respect to DHS's treatment of Class Members in removal proceedings, DHS will refrain from taking the position that USCIS does not have Initial Jurisdiction over a Class Member's asylum application. DHS will join or non-oppose Class Members' motion(s) for a continuance, administrative closure unless unavailable under controlling law in a particular jurisdiction, and, where available, assignment of cases to the EOIR status docket, that have been filed or made orally on the record in immigration proceedings in order to await USCIS exercise of Initial Jurisdiction over their asylum application. Nothing in this provision prevents DHS from either filing a motion to dismiss or terminate removal proceedings of a Class Member to await USCIS's adjudication of the asylum application or as a matter of prosecutorial discretion, or from joining or non-opposing a motion to dismiss or terminate proceedings filed or made orally on the record by a Class Member. DHS will generally join or non-oppose Class Members' motion(s) to dismiss or terminate filed or otherwise made in order to await USCIS exercise of Initial Jurisdiction over their asylum application. Defendants retain discretion to oppose Class Members' motion(s) if it deems such opposition warranted based on the individual facts of the cases, as long as DHS's opposition is not based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application. Pursuant to this paragraph, Defendants agree that in cases where DHS chooses not to file any response with EOIR indicating its position on the Class Members' properly served motions for continuance, dismissal or termination, administrative closure unless unavailable under controlling law in a particular jurisdiction, adjournments or, where available, assignment of cases to the EOIR status docket, this provision of the Settlement Agreement serves as evidence of DHS's non-opposition.

*Id.*

In their joint motion seeking the Court's approval of the Settlement Agreement, the parties explained that one of the benefits to Class Members in the Agreement is that "DHS will join or non-oppose a motion for a continuance or administrative closure filed by a class member in order to await USCIS exercise of its initial jurisdiction over the asylum application." ECF No. 199-1 at 12, 18. On November 24, 2025, the Court approved the parties' Settlement Agreement, and it went into effect on that date. ECF No. 205.

### B. Administrative Closure, Termination, and Recalendaring Immigration Proceedings

Administrative closure "is used to temporarily remove a case from an Immigration Judge's active calendar or from the Board's docket. In general, administrative closure may be appropriate to await an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court and may not occur for a significant or undetermined period of time." *Matter of Avetisyan*, 25 I&N Dec. 688, 692 (BIA 2012) (citation omitted).[1] "[A]dministrative closure differs from termination of proceedings, where the Immigration Judge or the Board issues a final order, which constitutes a conclusion of the proceedings and which, in the absence of a successful appeal of that decision or a motion, would require the DHS to file another charging document to initiate new proceedings." *Id.* at 692.

For *J.O.P.* Class Members, a USCIS asylum adjudication on the merits is pivotal to the course of removal proceedings; its timing lies within USCIS's sole control, and the interval is undetermined and often significant. A grant of administrative closure allows a Class Member's removal proceedings to remain inactive until USCIS completes its adjudication, without requiring the parties and the immigration court to guess at the needed duration of the postponement, necessitating further motion practice if they guess wrong. This is consistent with the goals of the Settlement Agreement by allowing USCIS to exercise its initial jurisdiction, as well as with the plain language of Section III.H. Class Members who advocated for and were granted administrative closure stand in a posture that promotes their rights under the Settlement

---

[1] *Matter of Avetisyan*, 25 I&N Dec. 688, 692 (BIA 2012) was overruled in 2018 by *Matter of Castro-Tum*, 27 I&N Dec. 271 (A.G. 2018), which was subsequently overruled in 2021 by *Matter of Cruz-Valdez*, 28 I. & N. Dec. 326, 329 (2021), reinstating the Board's previous ruling in *Matter of Avetisyan.*

Agreement. Administrative closure allows Class Members to await USCIS's exercise of jurisdiction and insulates them from EOIR preemption of initial jurisdiction during that wait.

Similarly, termination of Class Members' removal proceedings furthers their ability to access USCIS initial jurisdiction over their asylum adjudication, without the inefficiency of having concurrent pending removal proceedings in which there is no matter ripe for the court's resolution. Termination is a particularly crucial tool to enforce Class Members' rights under the Agreement in light of increased ICE detentions of Class Members. For a detained Class Member awaiting a USCIS asylum adjudication, termination of removal proceedings will result in release from detention; in contrast, postponements of the removal proceedings to await USCIS's adjudication (which may take months or longer) will occur while the Class Member remains detained. If USCIS then grants the Class Member asylum, subsequent removal proceedings will be unnecessary; if USCIS does not grant asylum, the agency then refers the asylum application to immigration court through initiation of new removal proceedings. 8 C.F.R. § 208.14(c)(1).

A motion to recalendar, which seeks to resume active litigation of dormant removal proceedings, is a reversal of administrative closure. To "recalendar" means to "reinstate the case to the active docket in the same posture as it occupied when it was paused for administrative closure." *Arevalo v. Barr*, 950 F.3d 15, 18 (1st Cir. 2020).

### C. Defendants Have Denied Numerous Class Members Their Rights Under Section III.H and Have Declined to Correct Such Violations

Despite Section III.H's prohibition on DHS conduct in Class Members' removal proceedings that undermines their right to a USCIS asylum adjudication, Defendants have repeatedly flouted that provision and refused to remedy violations raised by Class Counsel. They have done this through (1) opposing Class Members' motions for administrative closure; (2) opposing Class Members' motions to terminate for reasons not permitted by Section III.H, and (3)

filing motions asking the immigration court to overturn previous grants of administrative closure by recalendaring Class Members' cases.

### *1. Defendants Have Repeatedly Opposed Class Members' Motions for Administrative Closure and/or Termination*

One Class Member harmed by Defendants' refusal to comply with Section III.H is A.C.H.,[2] who filed an asylum application with USCIS in 2024. Michie Decl. ¶ 8. On April 17, 2026, A.C.H.'s counsel filed a motion to terminate and, in the alternative, to administratively close his removal proceedings, based on his pending asylum application and status as a *J.O.P.* Class Member. *Id.* ¶ 11. On April 22, 2026, DHS filed a written opposition to A.C.H.'s motion, asserting "[t]he Department has requested that USCIS expedite the adjudication of Form I-589, but that does not mean that the court lacks jurisdiction [sic] adjudicate relief applications in removal proceedings." Michie Decl. Ex. 5 at 2. In opposing administrative closure, DHS argued that A.C.H. had not established that he was "prima facie eligible" for asylum or provided "an anticipated duration for the closure." *Id.* at 2-3. The IJ then denied A.C.H.'s motion to terminate and administratively close. Michie Decl. ¶ 13.

Class Counsel raised this violation of the Settlement Agreement with Defendants on April 28, 2026,[3] asking for a prompt remedy given A.C.H.'s immigration detention. Exhibit A at 5-6.

---

[2] The full names of the Class Members referred to in this brief are set forth in Exhibits A-H to the Declaration of Kevin J. DeJong, filed under seal. Class Counsel requests to proceed using initials only to protect their identity and sensitive personal information, as the Class Members are young individuals seeking asylum.

[3] The parties met and conferred regarding this violation on June 30, 2026. DeJong Decl., ⁋ 12. With respect to DHS's opposition to A.C.H.'s administrative closure motion, Class Counsel highlighted that the second sentence of Section III.H unequivocally prohibits DHS from opposing Class Members' motions for administration closure. *Id.* Defendants took the position that DHS is free to oppose Class Members' administration closure motions as long as the opposition is not

Defendants responded on May 20, 2026, claiming that DHS's conduct was consistent with Section III.H. *Id.* at 2-4. Defendants stated that "ICE's opposition to termination is unrelated to whether USCIS has initial jurisdiction over the asylum application." *Id.* at 3. Defendants also claimed that Section III.H affords DHS discretion to oppose administrative closure, and that DHS's opposition was permissibly based on their claim that A.C.H. "has not shown prima facie eligibility for relief." *Id.* On or about May 28, 2026, A.C.H. was released from immigration detention following a successful bond motion. Michie Decl. ¶ 14. A.C.H. remains in active removal proceedings. *Id.* ¶ 15.

Given Defendants' entrenched position that DHS may oppose administration closure despite the prohibition in Section III.H, Class Counsel continues to receive reports from Class Members in whose cases DHS has opposed administrative closure, including three described here.

Class Member N.N.D. filed an asylum application with USCIS in 2024. Exhibit G at 2. At a master calendar hearing on July 9, 2026, N.N.D.'s counsel renewed a motion for administrative closure. *Id.* The IJ asked DHS counsel for DHS's position on administrative closure, and DHS counsel stated that they opposed administrative closure and that the immigration court has jurisdiction over N.N.D.'s asylum application. *Id.* The IJ then denied the renewed motion for administrative closure. Class Counsel raised this violation with Defendants on July 22, 2026. *Id.* at 1-2.

---

based on a position that USCIS lacks initial jurisdiction over the asylum application. *Id.* With respect to DHS's opposition to A.C.H.'s termination motion, Class Counsel acknowledged that the fifth sentence in Section III.H permits DHS to oppose Class Members' termination motions "based on the individual facts of the cases" so long as the opposition is not based on opposing USCIS initial jurisdiction. *Id.* When Class Counsel asked Defendants what permissible basis Defendants had to oppose A.C.H.'s motion to terminate, Defendants' counsel stated that he did not know. *Id.*

Class Members T.M.T. and F.M.T. filed asylum applications with USCIS in 2018. Exhibit H at 1. On or about April 3, 2026, they filed motions to administratively close their removal proceedings based on their pending asylum applications; six days later DHS filed a written opposition to administrative closure in their cases, arguing that there was no "clear apparent time frame" for USCIS's adjudication. *Id.* The IJ then denied their motions for administrative closure, citing DHS's rationale. *Id.* at 2. Class Counsel raised these violations with Defendants on July 24, 2026. *Id.* at 1.

### 2. *Defendants Have Opposed Other Class Members' Motions for Termination Without Justification*[4]

On June 3, 2026, Class Counsel raised with Defendants the case of Class Member M.R.M. Exhibit F at 5-6. ICE took M.R.M. into detention in July 2025, and he was detained by ICE for over a year. *Id*. at 5. In December 2025, M.R.M.'s counsel filed a motion to terminate his removal proceedings, based in part on his pending asylum application with USCIS. *Id*. at 5. DHS filed an opposition, arguing that USCIS's No Asylum Adjudications Policy was a reason to deny termination and adjudicate M.R.M's asylum claim in immigration court. *Id.* (stating that the "pending I-589 . . . cannot yet be adjudicated . . . before USCIS" but that M.R.M.'s asylum application "could be adjudicated before the immigration judge," and claiming that "[i]t would be in the respondent's interest to have a potential claim for relief adjudicated where such adjudication is permitted to be done." The IJ denied M.R.M.'s motion after DHS's opposition and ordered removal. *Id.*

[4] M.R.M. was a Class Member during all of the relevant events described here. However, it is Class Counsel's understanding that, after securing release from detention through habeas on July 29, 2026, M.R.M.'s asylum application was approved on July 30, 2026. Having received an adjudication by USCIS on the merits of his asylum application, M.R.M. thus no longer meets the Class definition; however, the harms he suffered as a result of Defendants' violations described here illustrate the need for the class-wide relief sought.

Class Counsel explained to Defendants that DHS's opposition to termination relied on a basis that the Agreement forbids—an argument that the immigration court and not USCIS had the present ability to adjudicate M.R.M.'s asylum application. *Id.* at 5-6. On July 28, 2026, Defendants responded claiming that DHS had not violated Section III.H, asserting post hoc (DHS having made no such claim in its opposition in immigration court) that DHS had permissibly opposed termination because M.R.M. had not provided sufficient evidence of his Class membership. *Id.* at 2-3. In fact, DHS had affirmatively raised M.R.M.'s Class membership with the immigration court months earlier and DHS's opposition referenced his pending USCIS asylum application. *Id.* at 2. M.R.M.'s removal case is on appeal with the Board of Immigration Appeals. *Id.* at 5.

On July 22, 2026, Class Counsel raised with Defendants the case of Class Member J.G.H., who filed an asylum application with USCIS in 2019. Exhibit C at 5. On June 12, 2026, J.G.H. filed a motion to terminate his removal proceedings, based on his asylum application pending with USCIS and status as a *J.O.P.* Class Member. *Id.* DHS filed an opposition to the motion on June 17, 2026, arguing that "the statute does not prevent the Immigration Judge from determining whether initial jurisdiction over an application filed by an alien who has turned 18 lies with the Immigration Judge or the USCIS" and that J.G.H. "no longer qualified as a UAC" because he was over 18 years old when he filed his asylum application. *Id.* The IJ subsequently denied J.G.H.'s motion to terminate.[5] *Id.*

[5] While DHS subsequently agreed not to oppose a continuance, Defendants have not agreed to resolve the Section III.H violation raised by Class Counsel in J.G.H.'s case of opposing termination, nor to provide the requested remedy of joining a renewed motion to terminate.

### *3. Defendants Have Filed Motions to Recalendar Administratively Closed Removal Proceedings*

In addition to opposing administrative closure—conduct Section III.H expressly forbids—Defendants have filed motions to recalendar, seeking to overturn administrative closure grants in Class Member cases. Two siblings' cases—J.M.L. and B.M.L.—illustrate this practice. In 2016, an IJ administratively closed these Class Members' removal proceedings based on their asylum applications pending with USCIS. Exhibit B at 1; Exhibit D at 13. In July 2025, DHS filed motions to recalendar the removal proceedings of J.M.L. and B.M.L., despite the fact that their asylum applications remain pending with USCIS. Exhibit B at 1; Exhibit D at 13. DHS's motions stated that "DHS seeks to recalendar this matter in order to resolve the respondent's case on the merits," thus asking the IJ to preempt USCIS's initial jurisdiction over asylum claim by proceeding to the merits of their removal proceedings without awaiting USCIS's adjudication of the asylum claim. Exhibit B at 1; Exhibit D at 13.

Class Counsel raised these violations of Section III.H of the Agreement with Defendants on September 15, 2025. Exhibit B at 1; Exhibit D at 12-13. After Defendants failed to respond within the maximum allowable 60 days, Class Counsel requested a meet and confer. Exhibit D at 12. Defendants provided a written response on November 19, 2025, arguing that because the Agreement does not expressly prohibit DHS from seeking to overturn administrative closure grants, such conduct is permissible. *Id.* at 9-10. Defendants maintained that position when the parties met and conferred regarding these cases on December 2, 2025. DeJong Decl. ⁋ 11. Class

Counsel informed Defendants that the issue was ripe for an enforcement motion and that Class Counsel intended to raise the issue on a class-wide basis.[6] *Id.*

More recently, on July 24, 2026, Class Counsel raised with Defendants the case of Class Member N.A.R., who filed an asylum application with USCIS in 2018. Exhibit E at 1. N.A.R.'s removal proceedings had been administratively closed since 2023 pursuant to a previous joint request for administrative closure made by DHS and N.A.R. *Id.* Then, on July 9, 2025, DHS filed a motion to recalendar N.A.R.'s removal proceedings, stating that N.A.R. has not been accorded "new, lawful permanent status" since the 2023 administrative closure grant and that "DHS seeks to recalendar this matter in order to resolve the respondent's case on the merits." *Id*. at 2. The immigration court then scheduled a hearing for July 22, 2026, at which time the IJ noted that DHS had been filing motions to recalendar "generally across the board" and asked DHS for their position on administratively closing N.A.R.'s case once again. *Id.* DHS opposed administrative closure at the July 22 hearing, causing the IJ to order further briefing by both parties and to set another hearing. *Id.* Class Counsel notified Defendants that DHS's motion to overturn the prior administrative closure grant, and subsequent position opposing administrative closure, violated Section III.H. *Id.*

---

[6] While B.M.L. and J.M.L.'s immigration court proceedings were subsequently resolved through a motion to terminate that was granted, the issue of DHS motions to overturn administrative closure grants continues to harm other Class Members. *See, e.g.*, *A.C.J. v. Hermosillo*, No. 2:25-CV-02486-DGE, 2026 WL 73857, at *1 (W.D. Wash. Jan. 9, 2026) (describing July 2025 DHS motion to recalendar administratively closed removal proceedings of an asylum seeker whom DHS conceded was a *J.O.P*. Class Member); *Martinez v. Hyde*, 810 F. Supp. 3d 135, 139 n.10 (D. Mass. 2025) (describing 2025 DHS recalendaring of *J.O.P*. Class Member's administratively closed removal proceedings).

## III. THIS MOTION IS RIPE FOR ENFORCEMENT UNDER SECTION V.D OF THE SETTLEMENT AGREEMENT

This Court has "exclusive jurisdiction to supervise the implementation of th[e] Settlement Agreement and to enforce its provisions and terms." ECF No. 199-2 at 12, Section V.A; *see Fairfax Countywide Citizens Ass'n v. Fairfax Cnty.*, 571 F.2d 1299, 1303 n.8 (4th Cir. 1978) ("Where the settlement agreement is approved and incorporated into an order of court, the district court possesses jurisdiction to enforce its own order."). Pursuant to the Settlement Agreement, the parties have conferred multiple times in an effort to informally resolve multiple disputes under Section III.H. *Supra* Section II.C; ECF No. 199-2 at 13, Section V.D. Defendants declined to remedy any of the violations raised, and have taken positions that are an anathema to the Settlement Agreement. *Supra* Section II.C. Because the disputes cannot be resolved informally, Class Counsel files this motion, electing to enforce the Agreement on both an individual and class-wide basis. ECF No. 199-2 at 13, Section V.D.

## IV. ARGUMENT

### A. DHS Opposition to Administrative Closure Motions Violates the Settlement Agreement's Command to Join or Non-Oppose Such Motions

The Settlement Agreement specifies that DHS "will join or non-oppose" a Class Member's motion for administrative closure.[7] ECF 199-2 at 9, Section III.H. The use of the word "will"

[7] The only proviso in the Agreement is that administrative closure must be "available under controlling law." This qualifier reflects that in 2018, the Attorney General issued a decision restricting immigration court adjudicators' administrative closure authority. *Matter of Castro-Tum*, 27 I&N Dec. 271 (A.G. 2018). In 2021, the Attorney General vacated *Castro-Tum* and reinstated adjudicators' administrative closure authority "except when a court of appeals has held otherwise." *Matter of Cruz-Valdez*, 28 I&N Dec. 326 (A.G. 2021). The only Court of Appeals to have "held otherwise" is the Sixth Circuit, which in 2020 ruled the then-existing immigration regulations did not bestow authority on immigration tribunals to administratively close removal proceedings. *Hernandez-Serrano v. Barr*, 981 F.3d 459, 466 (6th Cir. 2020). However, in 2024

leaves no discretion to Defendants in deciding whether to join or non-oppose. *See Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024) (holding that use of the word "will" is "unmistakably mandatory" language); *Scotland Mem'l Hosp., Inc. v. Integrated Informatics, Inc.*, No. CIV. 1:02CV00796, 2003 WL 151852, at *4, n.5 (M.D.N.C. Jan. 8, 2003) ("The phrase 'will be,' like the phrase 'shall be,' indicates mandatory intent.'). As one court has recognized, Defendants must join or non-oppose a Class Member's motion for administrative closure. *A.C.J.*, 2026 WL 73857, at *2 ("Importantly here, the settlement requires DHS to "join or non-oppose" any class member's motion to continue or administratively close removal proceedings while USCIS adjudicates their asylum application."). Thus, DHS has repeatedly violated Section III.H of the Settlement Agreement by opposing Class Member's motion for administrative closure.

Defendants assert that Section III.H of the Agreement affords them discretion to oppose a Class Member's administrative closure motion. Defendants' strained reading of Section III.H should be rejected. According to Defendants, a later sentence in Section III.H provides them discretion to oppose a Class Member's motion for administrative closure. Defendants point to the fifth sentence of Section III.H, which provides that DHS retains "discretion to oppose Class Members' motion(s) if it deems such opposition warranted based on the individual facts of the cases," provided DHS does not rely on a position that USCIS lacks initial jurisdiction. ECF 199-2 at Section III.H. But that sentence only applies to motions to dismiss or terminate, because it immediately follows a sentence stating that "DHS ***will generally*** join or non-oppose Class

---

EOIR issued new regulations expressly granting immigration court adjudicators administrative closure authority. 8 CFR 1003.18(c). On June 22, 2026, the same day the case was filed, a Texas court purported to vacate the 2024 regulations on joint motion of the Plaintiff state of Texas and Defendant DOJ; recently a motion to intervene was filed in that case challenging the collusive nature of the vacatur and the violation of required notice and comment procedures. Memorandum in Support of Movant-Intervenors' Emergency Motion to Intervene, *State of Texas v. U.S. DOJ*, No. 26-cv-00070, Dkt. 6-1 (filed Aug. 7, 2026).

Members' ***motion(s) to dismiss or terminate*** filed or otherwise made in order to await USCIS exercise of Initial Jurisdiction over their asylum application." ECF No. 199-2 at 9, Section III.H (emphasis added). In other words, the Settlement Agreement provides DHS some discretion ("will generally") not to join or non-oppose a Class Member's motion to dismiss or terminate, but no such discretion is allowed for motions for administrative closure ("will join or non-oppose").[8] *See Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 52, 73 A.3d 224, 232–33 (2013) (holding that, "in ascertaining the true meaning of a contract," the "contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing").

Further, in the final sentence of Section III.H, memorializing the parties' agreement that the section serves as evidence of non-opposition where DHS files no response, the text enumerates every type of motion to which this agreement applies: motions for continuance, dismissal or termination, administrative closure, adjournments, or assignment to the status docket. The absence of that enumeration from sentence five reinforces that the parties chose not to extend the discretion to oppose under the Agreement to any type of motion other than those immediately referenced: dismissal or termination.

The plain language reading of Section III.H intentionally preserves the preliminary injunction's unqualified command for DHS to join or non-oppose postponement motions. Under

[8] Nor does the use of the plural "motion(s)" in sentence five of Section III.H provide discretion to oppose motions for administrative closure. Instead, sentence five uses the plural "motion(s)" to account for "Class Members" in the plural; to account for motions for either dismissal or termination; and to account for multiple motions by a single Class Member. ECF No. 199-2 at 9, Section III.H.

Defendants' proposed alternative construction, the Settlement Agreement would offer a lesser degree of protection than did the preliminary injunction, an unreasonable interpretation unsupported by the text. To the contrary, Section III.H builds on the injunction's protections, incorporating a limitation on DHS responses to dismissal or termination motions that was not found in the preliminary injunction.

The Class negotiated for and won the right to not face opposition from DHS when seeking to have removal proceedings administratively closed for purposes of USCIS's asylum adjudication. This is reflected in the parties' joint motion seeking this Court's approval of the Settlement Agreement, which explains that one of the benefits to Class Members in the Agreement is that "DHS will join or non-oppose a motion for a continuance or administrative closure filed by a class member in order to await USCIS exercise of its initial jurisdiction over the asylum application." ECF No. 199-1 at 12, 15. In most of the cases Class Counsel raised with Defendants, an IJ echoed or expressly adopted reasons offered in DHS's breach of the Agreement in denying the Class Member's request for administrative closure. *See, e.g.*, Ex. H at 1-2. While such decisions illustrate the importance of the Settlement Agreement's protections, Defendants have defied black-letter principles of contract interpretation in an effort to water down their obligation to join or non-oppose administrative closure motions. The Court should reject this effort and enforce the Agreement as written, class-wide.

### B. DHS Motions to Recalendar Class Members' Administratively Closed Removal Proceedings Violate the Settlement Agreement

Defendants have also repeatedly violated the Settlement Agreement by filing motions to recalendar a Class Member's removal proceedings that were administratively closed. As explained above, a motion to recalendar, which seeks to resume active litigation of dormant removal proceedings, is a reversal of administrative closure. *Supra* II.B at 8-9. Per the Settlement

Agreement, DHS must join or non-oppose a motion for administrative closure. ECF No. 199-2 at 9, Section III.H. Therefore, under the Settlement Agreement, DHS cannot file a motion to recalendar, as doing so is fundamentally at odds with their obligation to join or non-oppose a motion for administrative closure. *A.C.J.*, 2026 WL 73857, at *1 ("Respondents arguably violated the terms of the *J.O.P.* settlement agreement by reopening removal proceedings against Petitioner on the basis that USCIS had yet to adjudicate her asylum application.").

Defendants assert that moving to recalendar is not expressly proscribed by the Settlement Agreement. But it does not follow that conduct undermining a core purpose of the Settlement Agreement is permissible simply because it is not expressly proscribed. *See Wheeler v. Badders*, 2025 WL 3227720, at *5 (App. Ct. Md. Nov. 19, 2025) (rejecting argument that defendant need only perform "explicitly stated obligations" when failure to perform implied obligations frustrates the settlement's purpose). Defendants' interpretation should be rejected because it would nullify the express mandate that DHS join or non-oppose an administrative closure motion. *See Calomiris v. Woods*, 353 Md. 425, 441 (1999) ("[C]courts should avoid interpreting contracts so as to nullify their express terms.").

As this Court already held, Defendants may not construe the Agreement in a manner that "would relieve Defendants of their obligation to uphold the promises they made to Class Members as consideration for the relinquishment of Class Members' action." ECF No. 253 at 10. The Court grounded this finding in the illusory promises doctrine that "instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract," *id.*, citing *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440, 135 S.Ct. 926, 190 L.Ed.2d 809 (2015). Similarly, in *Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 149 (2003), the Maryland Court of Appeals held that an arbitration policy in

which one party had the right to revoke said policy "at any time" was an illusory promise, thus "no real promise at all." Here, DHS has promised not to oppose Class Members' administrative closure motions, yet seeks to render that promise illusory by affording itself free rein to recalendar proceedings, effectively nullifying the duty to non-oppose or join administrative closure motions.

Defendants have attempted to justify their sabotage of the Settlement Agreement by asserting that recalendaring can be reversed through further motion practice—namely, a Class Member's motion to administratively close (or re-close, really). After a case is recalendared, Defendants' counsel explained, "[a] class member can file a motion to administratively close proceedings, ask USCIS to accelerate adjudication, or withdraw their asylum application from USCIS, and where appropriate undergo adjudication through the immigration court process." Exhibit D at 10. Defendants thereby admit that the best that can be said of their motion to recalendar is that it wastes the time and resources of the parties and the immigration court, by undoing administrative closure and requiring further action to reinstate it. But there are also worse scenarios for the Class Member: while the recalendared proceedings are active, the IJ may preempt USCIS's initial jurisdiction,[9] or may issue a removal order, or may deny the Class Member's second motion for administrative closure.

Defendants' flawed interpretation also undermines USCIS's exercise of its initial jurisdiction. Defendants assert that the motions to recalendar they filed in the cases of B.M.L. and J.M.L. were "not premised on whether USCIS or the immigration court had jurisdiction," and "[t]he basis for the motion[s] was 'to resolve the respondent's case on the merits and prevent unreasonable delay in the resolution of the respondent's removal proceedings.'" Exhibit D at 10.

[9] An IJ's out-of-turn exercise of jurisdiction would subject the asylum-seeker to the adversarial process that the grant of initial jurisdiction to USCIS was designed to avoid, and any later adjudication by USCIS would not be "initial jurisdiction."

However, a motion to recalendar invites the immigration court to resume active consideration of the case—the opposite of awaiting USCIS's exercise of its initial jurisdiction.

For all of these reasons, the Court should hold that Defendants' filing of motions to recalendar are a violation of the Settlement Agreement.

### C. DHS's Blanket Opposition to Class Members' Termination or Dismissal Motions Violates the Settlement Agreement

Defendants' blanket opposition to Class Members' termination motions without any permissible basis—as in A.C.H.'s case—also violates Section III.H of the Settlement Agreement. Several sentences of Section III.H describe the requirement for DHS to "generally" join or non-oppose Class Members' motions to terminate, and restrict DHS's ability to oppose them. ECF No. 199-2 at 9, Section III.H. The third sentence of Section III.H confirms that DHS is free to file their own motion to terminate or dismiss a Class Member's removal proceedings and is also free to join or non-oppose such a motion by a Class Member. *Id.* The fourth sentence of Section III.H goes further, stating that "DHS will generally join or non-oppose Class Members' motion(s) to dismiss or terminate." *Id.* The next sentence provides two conditions that must be met to permit DHS to oppose Class Members' motion(s) to terminate or dismiss despite the fourth sentence's mandate to "generally join or non-oppose." *Id.* DHS may oppose if and only if (a) "it deems such opposition warranted based on the individual facts of the case," and (b) DHS's opposition "is not based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application."[10] *Id.* Reading these sentences on termination motions together, the Agreement requires DHS to generally join or non-oppose Class Members' motions

[10] The final, sixth sentence of Section III.H, which applies not only to Class Members' motions to dismiss or terminate but also to other types of motions discussed in Section III.H, confirms that, if DHS chooses silence as its method of required non-opposition rather than an affirmative statement, Class Members can use the Settlement Agreement itself in immigration court filings as proof of DHS's non-opposition.

to terminate; DHS may only oppose if they put forward individualized reasons specific to the Class Member that are not in any way based on advocating for the immigration court to usurp USCIS's initial jurisdiction over the Class Member's asylum application.

Yet Defendants have repeatedly opposed Class Member motion to terminate without any such individualized reason. In Class Member A.C.H.'s case, DHS's reasons for opposing termination consisted of these two sentences: "While the *JOP* class settlement agreement gives the Department the discretion to terminate cases to await by USCIS of the respondent's Form I-589, the Department is not exercising such discretion in the instant matter. The Department has requested that USCIS expedite the adjudication of Form I-589, but that does not mean that the court lacks jurisdiction adjudicate [sic] relief applications in removal proceedings." Michie Decl. Ex. 5 at 2. DHS did not put forward any reasons for opposing termination that were "based on the individual facts of the case[]" as required by Section III.H. Settlement Agreement Section III.H. That alone violates the Agreement.

Independently, DHS's opposition to A.C.H.'s motion also violated Section III.H because it was "based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application." By telling the immigration court that it should not terminate or postpone to await A.C.H.'s USCIS asylum adjudication because the immigration court had jurisdiction over A.C.H.'s "relief applications in removal proceedings"—where the only relief A.C.H. was pursing was asylum (Michie Decl. Ex. 5)—DHS was impermissibly advocating against USCIS's <u>initial</u> jurisdiction over his asylum application. This conduct is expressly prohibited by Section III.H.

DHS's conduct in other Class Members' cases similarly violates Section III.H's mandate to generally join or non-oppose termination unless DHS's opposition satisfies both narrow

conditions described above. For example, in M.R.M.'s case, DHS opposed termination on a variety of bases. Exhibit F at 2-3. As relates specifically to M.R.M.'s pending asylum application with USCIS, DHS's opposition to termination argued that because of the No Asylum Adjudications Policy, M.R.M.'s USCIS asylum application "cannot yet be adjudicated" but that the immigration court "can . . . adjudicate[]" his asylum application." *Id.* at 4. DHS's opposition was thus impermissibly "based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application," thus violating Section III.H.

In sum, despite Section III.H's command to "generally" join or non-oppose Class Members' termination motions, Defendants interpret the provision to give them blanket authority to oppose Class Members' motions to terminate without any case-specific reasons and even where the opposition is explicitly based on a position that the immigration court should forge ahead with adjudicating the Class Member's asylum application, undermining USCIS's initial jurisdiction. Because the Settlement Agreement prohibits DHS opposition where not based on individual case facts, and where based on a position contrary to respecting USCIS's initial jurisdiction, Class Counsel seek a class-wide order requiring Defendants to abide by Section III.H with respect to Class Members' motions to terminate.

### D. The Court Should Order Individual and Class-Wide Relief to Remedy Defendants' Violations of Section III.H

In view of Defendants' violations of Section III.H, the Court should order (1) specific remedies related to A.C.H.'s case, (2) class-wide remedies to enforce Section III.H's prohibition on DHS opposition to administrative closure, and (3) a class-wide remedy to enforce Section III.H's provisions narrowly restricting the circumstances in which DHS may oppose termination. Class Counsel's proposed individual and class-wide remedies are necessary and appropriate to

enforce Section III.H. Each remedy is required to enforce the Agreement given Defendants' violations of Section III.H detailed above.

**First**, Class Counsel seeks a remedy for Class Member A.C.H., in whose case an IJ denied motions to terminate and administratively close following DHS's opposition. To remedy DHS's violation of Section III.H by opposing administrative closure, Class Counsel seeks an order requiring Defendant DHS to join or non-oppose A.C.H.'s renewed motion for administrative closure of his removal proceedings—a motion his counsel would make on his behalf if the Court grants the requested relief. Michie Decl. ¶ 15. DHS should also be ordered to join or non-oppose a forthcoming renewed motion for termination that A.C.H.'s counsel would make following a grant of relief from this Court, unless Defendants have a basis for termination that is permissible under the Agreement—that is, DHS may oppose a termination motion only if individual facts related to A.C.H. warrant opposition, provided that any opposition is not based, in whole or in part, on a position that USCIS does not have initial jurisdiction over A.C.H.'s asylum application.

**Second**, Class Counsel seek class-wide remedies for DHS's conduct to oppose and/or overturn administrative closure for Class Members. DHS should be ordered to join or non-oppose Class Members' administrative closure motions to prevent any further violations. To address DHS's conduct nullifying Section III.H by filing motions to recalendar, DHS should be ordered to refrain from filing a motion to recalendar for Class Member proceedings that are administratively closed.

**Third**, Class Counsel seeks a class-wide remedy to address DHS's blanket oppositions to Class Members' motions to terminate that do not comport with Section III.H. To enforce Section III.H's mandate that DHS generally join or non-oppose Class Members' motions to terminate and its prohibition against DHS oppositions to termination unless the two criteria discussed above are

satisfied, DHS should be ordered to follow the language in Section III.H related to Class Members' motions to terminate. Specifically, the Court should order DHS to join or non-oppose Class Members' motions to terminate, unless (1) DHS presents individual facts of a Class Member's case that DHS deems to warrant opposition of the motion, and (2) such opposition is not based, in whole or in part, on a position that USCIS does not have initial jurisdiction over the Class Member's asylum application.

This Court has the authority to order the requested remedies pursuant to the Court's "exclusive jurisdiction to supervise the implementation of th[e] Settlement Agreement and to enforce its provisions and terms." ECF No. 199-2 at 12, Section V.A. Absent Court intervention, Defendants will continue to violate the Settlement Agreement.

**D. CONCLUSION**

Defendants have repeatedly violated Section III.H of the Settlement Agreement in numerous Class Members' cases. The Court should order Defendants to remedy their multiple violations in Class Member A.C.H.'s case, and should order adherence to the parameters for Defendants' conduct in removal proceedings set forth in Section III.H.

Dated: August 18, 2026

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project
30 S. 10th Street (c/o University of St. Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publicccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*