**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| J.O.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*<br><br>Defendants. | Case No. 8:19-cv-01944-SAG |

**DEFENDANTS' OPPOSITION TO CLASS COUNSEL'S MOTION TO ENFORCE SECTION III.H OF THE SETTLEMENT AGREEMENT**

## TABLE OF AUTHORITIES

Cases

*A.C.J. v. Hermosillo*,
No. 2:25-CV-02486-DGE, 2026 WL 73857 (W.D. Wash. Jan. 9, 2026) .............................. 15

*Calomiris v. Woods*,
353 Md. 425 (1999) ........................................................................................................ 20

*Cheek v. United Healthcare of Mid-Atl., Inc.*,
378 Md. 139 (2003) ........................................................................................................ 22

*Consumer Fin. Prot. Bureau v. Klopp*,
957 F.3d 454 (4th Cir. 2020) .................................................................................. 13-14, 20, 21

*Contracting, LLC v. XL Ins. Am., Inc.*
434 Md. 37, 52, 73 A.3d 224, 232-33 (2013) ................................................................ 18

*Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co,*
434 Md. 37, 52, 73 A.3d 224, 232-33 (2013) ................................................................ 18

*Fleet Feet, Inc. v. NIKE, Inc.*,
986 F.3d 458 (4th Cir. 2021) ........................................................................................... 12

*Int'l Bhd. of Teamsters v. Airgas, Inc.*,
885 F.3d 230 (4th Cir. 2018) ............................................................................................. 8

*Int'l Longshoremen's Ass'n Loc. 333 v. Int'l Longshoremen's Ass'n, AFL-CIO*,
687 F. App'x 315 (4th Cir. 2017)........................................................................................ 23

*Johnson v. Robinson*,
987 F.2d 1043 (4th Cir. 1993) ..................................................................................... 23, 25

*Lithko Contracting, LLC v. XL Ins. Am., Inc.*,
318 A.3d 1221 (Md. 2024) ............................................................................ 14, 15, 16, 18

*Lovo v. Miller*,
107 F.4th 199 (4th Cir. 2024) ........................................................................................... 18

*Maersk Line, Ltd. v. United States*,
513 F.3d 418 (4th Cir. 2008) ........................................................................................... 14

*Matter of Avetisyan*,
25 I. & N. Dec. 688 (B.I.A. 2012) .................................................................................... 16

*State of Texas v. Dep't of Justice,*
No. 7:26-CV-00070-O, 2026 WL 1803245 (N.D. Tex. June 22, 2026) ............... 6, 7, 9, 10, 11

*State of Texas v. Dep't of Justice*,
No. 7:26-CV-00070-O, 2026 WL 2455363 (N.D. Tex. Aug. 21, 2026) ................................ 11

*Walmart Real Est. Bus. Tr. v. Quarterfield Partners LLC*,
No. 24-1355, 2025 WL 1577562 (4th Cir. June 4, 2025) ..................................................... 13

*Wheeler v. Badders,*
2025 WL 3227720 (App. Ct. Md. Nov. 19, 2025) ............................................................. 22

Rules and Regulations

8 C.F.R. 1003.18 ........................................................................................................... 16

8 C.F.R. § 1003.18 ........................................................................................................ 17

89 Fed. Reg. 46742 (May 29, 2024) ................................................................... 11, 16

Fed. R. Civ. P. 60(b) ..................................................................................................... 8

Statutes

William Wilberforce Trafficking Victims Protection Reauthorization Act (TVPRA), Public Law 110-457, 122 Stat. 5044 (December 23, 2008)................................................................ 2

Other Authorities

Article III of the U.S. Constitution ........................................................................... 12

# TABLE OF CONTENTS

INTRODUCTION .......... 1
BACKGROUND .......... 2
I. The Origin of the Settlement Agreement and Relevant Provisions. .......... 2
II. History of Section III.H Alleged Violations Raised Through the Section V.D Process. .......... 5
ARGUMENT .......... 5
I. Class Counsel Has Failed to Present Individual or Class-Wide Allegations Meriting Judicial Intervention. .......... 5
II. Class Counsel Repeatedly Mischaracterizes Section III.H of the Settlement Agreement. .......... 9
a. Administrative Closure is Unlawful and Currently Unavailable in All Jurisdictions. .......... 10
b. The Settlement Agreement Does Not Guarantee Unconditional Administrative Closure to Class Members. .......... 12
c. Recalendaring is Not a Violation of the Settlement Agreement. .......... 19
d. Class Counsel Mischaracterize the Termination Provisions of the Settlement Agreement. .......... 23
CONCLUSION .......... 26

## INTRODUCTION

Once again, Class Counsel executes a strategy of delay and expansion when raising alleged violations with this Court. Class Counsel's Motion to Enforce Section III.H of the Settlement Agreement, ECF No. 649, should be denied. Class Counsel replicate their unsuccessful attempts for this Court to impose new and non-negotiated obligations onto Defendants that are divorced from the text of the Settlement Agreement. This Court should decline to order the expansions sought by Class Counsel's proposed order, as it has repeatedly done in the past.

Section III.H states "[w]ith respect to DHS's treatment of Class Members in removal proceedings, DHS will refrain from taking the position that USCIS does not have Initial Jurisdiction over a Class Member's asylum application." Settlement Agreement, ECF No. 199-2 at 9, § III.H (Settlement Agreement). Section III.H arose from provisions added to the preliminary injunction due to concerns about Department of Homeland Security (DHS) attorneys arguing for immigration judges to exercise jurisdiction over Class Member asylum applications. *See* Dec. 21, 2020 Mem. Op. 15, ECF No. 143 ("Plaintiffs assert that ICE attorneys argue before IJs that EOIR should assert its jurisdiction in such cases in order to deprive USCIS of the opportunity to exercise initial jurisdiction."). Class Counsel now contends that section III.H provides broad mandates for Defendants to join or non-oppose nearly all delay motions brought by Class Members, *see generally* Pls.' Mem. Supp. Mot. to Enforce, ECF No. 649-1, without consideration for the many caveats in the Settlement Agreement such as requirements for Class Members to self-identify and opportunities for Defendants to oppose on grounds unrelated to the Settlement Agreement. Settlement Agreement 9, § III.H ("Defendants retain discretion to oppose Class Members' motion(s) if it deems such opposition warranted based on the individual facts of the cases, as long as DHS's opposition is not based, in whole or in part, on a position that USCIS does not have

Initial Jurisdiction over the Class Member's asylum application."); *id*. at 10, § III.K ("For any provision of this Settlement Agreement wherein DHS will join or non-oppose motions filed or made by Class Members, DHS will join or non-oppose such motions when they are submitted with sufficient evidence of Class membership."). Class Counsel's proposed order, ECF No. 649-1, seeks to "enforce" the Settlement Agreement by adding a multitude of new duties for Defendants that range far beyond the four corners of the Settlement Agreement.

Enforcement is particularly inappropriate here due to the lack of evidence presented to the Court of enforceable violations and weakness of Class Counsel's arguments. Class Counsel has failed to identify a single individual alleged violation of section III.H of the Settlement Agreement that is ripe for judicial intervention. Their arguments regarding administrative closure are moot and the Court cannot grant the related requests for relief. Class Counsel's claims that Defendants are repeatedly violating section III.H of the Settlement Agreement on a class-wide basis mischaracterize the intent of the parties, misinterpret the plain language of section III.H, and read out the self-identification requirements imposed by section III.K. The motion should be denied in its entirety.

## BACKGROUND

### I. The Origin of the Settlement Agreement and Relevant Provisions.

On July 1, 2019, four named Plaintiffs commenced this litigation to challenge United States Citizenship and Immigration Services' ("USCIS") policies on Unaccompanied Alien Children ("UACs") under the William Wilberforce Trafficking Victims Protection Reauthorization Act (TVPRA), Public Law 110-457, 122 Stat. 5044 (December 23, 2008). Complaint, ECF No. 1. On August 2, 2019, the Court granted Plaintiffs' Motion for Temporary Restraining Order ("TRO"), ECF Nos. 54, 55, and on October 15, 2019, granted Plaintiffs' consent motion, converting the

Order into a preliminary injunction. ECF Nos. 70, 71. Neither Class Counsel's original complaint nor the preliminary injunction addresses Defendants' actions in immigration court.

On July 7, 2020, Class Counsel moved to amend the preliminary injunction. ECF No. 124. Class Counsel alleged that Defendants had "advocated in immigration courts for immigration judges to exercise jurisdiction over prospective class members, contending that USCIS does not have jurisdiction over such applications." Pls.' Mem. Supp. Mot. Amend 5, ECF No. 124-1. Class Counsel asked the Court to enjoin ICE from advocating against USCIS jurisdiction in removal proceedings. *Id*. at 21. The Court granted the motion, finding that "it would be manifestly unjust to require Plaintiffs and proposed class members to defend their asylum application in an adversarial setting." Dec. 21, 2020 Mem. Op. 49.

The amended preliminary injunction provided, *inter alia*, that Defendants were enjoined:

> during the removal proceedings of any Plaintiff or member of the class (including EOIR proceedings before immigration judges and members of the Board of Immigration appeals) from seeking any of the following where such individual's asylum application is pending before USCIS:
>
> i. Denials of continuances or other postponements in order to await adjudication of an asylum application that has been filed with USCIS;
>
> ii. EOIR exercise of jurisdiction over an asylum claim where USCIS has initial jurisdiction under the terms of the 2013 Kim Memorandum;
>
> or otherwise taking the position in such individual's removal proceedings that USCIS does not have initial jurisdiction over the individual's asylum application[.]

Order 2, ECF No. 144.

The parties began settlement negotiations in early 2021. Joint Mot. for Prelim. Approval of Class Action Settlement Agreement and to Amend the Class Def. 9, ECF No. 199. The negotiations involved at least twelve sessions to discuss terms and ten exchanges of drafts, ultimately resulting in participation in mediation and a two-day settlement conference. *Id*. at 10. The Settlement Agreement was executed on June 17, 2024. *Id*.

Section III.H of the Settlement Agreement covers DHS's treatment of Class Members in removal proceedings. *See* Settlement Agreement 9. Section III.H incorporates and adds to the provisions of the amended preliminary injunction. It provides in its entirety:

> With respect to DHS's treatment of Class Members in removal proceedings, DHS will refrain from taking the position that USCIS does not have Initial Jurisdiction over a Class Member's asylum application. DHS will join or non-oppose Class Members' motion(s) for a continuance, administrative closure unless unavailable under controlling law in a particular jurisdiction, and, where available, assignment of cases to the EOIR status docket, that have been filed or made orally on the record in immigration proceedings in order to await USCIS exercise of Initial Jurisdiction over their asylum application. Nothing in this provision prevents DHS from either filing a motion to dismiss or terminate removal proceedings of a Class Member to await USCIS's adjudication of the asylum application or as a matter of prosecutorial discretion, or from joining or non-opposing a motion to dismiss or terminate proceedings filed or made orally on the record by a Class Member. DHS will generally join or non-oppose Class Members' motion(s) to dismiss or terminate filed or otherwise made in order to await USCIS exercise of Initial Jurisdiction over their asylum application. Defendants retain discretion to oppose Class Members' motion(s) if it deems such opposition warranted based on the individual facts of the cases, as long as DHS's opposition is not based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application. Pursuant to this paragraph, Defendants agree that in cases where DHS chooses not to file any response with EOIR indicating its position on the Class Members' properly served motions for continuance, dismissal or termination, administrative closure unless unavailable under controlling law in a particular jurisdiction, adjournments or, where available, assignment of cases to the EOIR status docket, this provision of the Settlement Agreement serves as evidence of DHS's non-opposition.

*Id*. The Settlement Agreement also includes a provision, section III.K, which provides in relevant part that: "For any provision of this Settlement Agreement wherein DHS will join or non-oppose motions filed or made by Class Members, DHS will join or non-oppose such motions when they are submitted with sufficient evidence of Class membership." *Id*. at 10.

The Settlement Agreement provides a mechanism for resolution of alleged instances of noncompliance with its terms. *Id*. at 14, § V.D. This mechanism requires Class Counsel to submit a written allegation, which Defendants shall respond to within a reasonable period not to exceed 60 days. *Id*. The parties shall meet and confer "in a good faith effort to resolve the dispute

informally." *Id*. If the dispute cannot be resolved informally, "Class Counsel may elect to move to enforce the Agreement on an individual or class-wide basis before the Court." *Id*.

## II. History of Section III.H Alleged Violations Raised Through the Section V.D Process.

This Court granted final approval of the Settlement Agreement on November 25, 2024. Nov. 25, 2024 Order, ECF No. 205. Class Counsel raised their first alleged section III.H violation on March 27, 2025, due to DHS opposing a motion to terminate in the case of J.D.D. Defs.' Ex. A (filed under seal). Defendants responded on April 4, 2025, noting that the opposition was not based on USCIS lacking jurisdiction and that Defendants retained discretion to oppose such motions. *Id*. While Class Counsel noted that they disagreed with this position, they did not seek to meet and confer. *Id*. On April 25, 2025, Defendants responded to another alleged section III.H violation, stating that under the Settlement Agreement, Defendants retain discretion to join or non-oppose motions for administrative closure so long as the opposition is not based on a position that USCIS does not have initial jurisdiction over a Class Member's asylum application. Defs.' Ex. B (filed under seal). In the following sixteen months, Class Counsel sent over a dozen section V.D requests to Defendants that involved Section III.H. *See, e.g.*, Dec. of Kevin J. Dejong, ECF No. 649-3 (identifying eight alleged section III.H violations sent to Defendants between September 15, 2025, and July 24, 2026).

## ARGUMENT

## I. Class Counsel Has Failed to Present Individual or Class-Wide Allegations Meriting Judicial Intervention.

Class Counsel brings a motion to enforce section III.H of the Settlement Agreement. Pls.' Mem. 1. They seek enforcement on an individual basis with respect to A.C.H, a Class Member whose motions to terminate and administratively close were opposed by Defendants, and on a class-wide basis "to prevent further violations of the Settlement Agreement that imperil Class

Members' access to USCIS's initial jurisdiction over their asylum applications." *Id*. at 2. However, they have failed to present a single Class Member case ripe for judicial intervention.

Section V.D of the Settlement Agreement provides 60 days for Defendants to respond to alleged violations provided in writing by Class Counsel, and 90 days for the parties to meet and confer on the alleged violation. Settlement Agreement 14, § V.D. The Class Members identified by Class Counsel in their motion have either had the allegations mooted, or they have not yet completed the section V.D process:

- A.C.H. (Pls.' Mem. 11–12): This alleged violation is moot due to the unlawfulness of administrative closure. *State of Texas v. Dep't of Justice*, No. 7:26-CV-00070-O, 2026 WL 1803245, at *1 (N.D. Tex. June 22, 2026). *See infra* § II.a for discussion.
- N.N.D. (Pls.' Mem. 12): This alleged violation is moot due to the unlawfulness of administrative closure. *Id*. This alleged violation is not ripe because the parties have not concluded the section V.D process. Class Counsel raised this alleged violation on July 22, 2026. *Id*. at 12. Defendants have a reasonable time not to exceed 60 days to respond in writing. Settlement Agreement 14, § V.D. A response has not yet been transmitted.
- T.M.T. and F.M.T. (Pls.' Mem. 13): This alleged violation is moot due to the unlawfulness of administrative closure. *State of Texas*, 2026 WL 1803245, at *1. This alleged violation is not ripe because the parties have not concluded the Section V.D process. Class Counsel raised this alleged violation on July 24, 2026. Pls.' Mem. 13. Defendants have a reasonable time not to exceed 60 days to respond in writing. Settlement Agreement 14, § V.D. A response has not yet been transmitted.

- M.R.M. (Pls.' Mem. 13-14): This alleged violation is moot because M.R.M.'s asylum application was approved, and he is no longer a Class Member. Pls.' Mem. 13 fn. 4. Furthermore, the parties have not concluded the section V.D process. Upon follow-up from Class Counsel after Defendants' written section V.D response, Defendants offered to further investigate whether M.R.M. had satisfied the requirements of section III.K. Pls.' Mem. Exhibit F (sealed). Defendants received no response from Class Counsel. *Id*. Class Counsel did not seek to meet and confer.
- J.G.H. (Pls.' Mem. 14): This alleged violation is not ripe because the parties have not concluded the section V.D process. Class Counsel raised this alleged violation on July 22, 2026. *Id*. at 14. Defendants have a reasonable time not to exceed 60 days to respond in writing. Settlement Agreement 14, § V.D. A response has not yet been transmitted.
- J.M.L. and B.M.L. (Pls.' Mem. 15): This alleged violation is moot because both individuals' immigration court proceedings were terminated. Pls.' Mem. 16 fn. 6. Defendants agree that this alleged violation became ripe for review on December 2, 2025. *Id*. at 16.
- N.A.R. (Pls.' Mem. 16): This alleged violation is not ripe because the parties have not concluded the Section V.D process. Class Counsel raised this alleged violation on July 24, 2026. *Id*. at 16. Defendants have a reasonable time not to exceed 60 days to respond in writing. Settlement Agreement 14, § V.D. A response has not yet been transmitted.

Therefore, Class Counsel's motion is premature with respect to all individual violations with the exception of A.C.H., J.M.L. and B.M.L. This is not the first time Class Counsel has sought

to ignore section V.D of the Settlement Agreement. *See* Nov. 20, 2025 Order 1, ECF No. 448 (denying Class Counsel's second motion to enforce the settlement agreement as "[t]his Court agrees with Defendants that, at this point, Class Counsel's motion is premature because the parties have not completed the process they agreed to follow in section V.D of their Settlement Agreement."). And the three cases which are not premature are moot, either because of intervening law or the termination of immigration proceedings. *Int'l Bhd. of Teamsters v. Airgas, Inc.*, 885 F.3d 230, 235 (4th Cir. 2018) ("If an event occurs during the pendency of an appeal that makes it impossible for a court to grant effective relief to a prevailing party, then the appeal must be dismissed as moot."). *See infra* § II.a.

While Class Counsel purports to only raise A.C.H. on an individual basis and cites the other individuals in arguing for class-wide remedies, the fact remains that their motion rests entirely on individual factual allegations that are not ripe for judicial intervention. Their inability to present the Court with evidentiary support for their purportedly necessary remedies is particularly striking given the long history of alleged violations of section III.H sent under section V.D in this case. Defendants initially shared their views on section III.H's provisions addressing motions to terminate on April 4, 2025. Defs.' Ex. A (filed under seal). Defendants made clear their position on administrative closure on April 25, 2025. Defs.' Ex. B (filed under seal). Class Counsel failed to bring a motion to enforce, despite those cases being indistinguishable from those they bring to the Court now. *Compare id. with* Pls.' Mem. 13 (describing the opposition to T.M.T. and F.M.T.'s motion for administrative closure). Defendants' positions on section III.H have not changed in the sixteen months since Defendants first shared them with Class Counsel. Yet Class Counsel waited, not raising this issue in their first three motions to enforce or their motion to modify the Settlement Agreement pursuant to Fed. R. Civ. P. 60(b). Pls.' April 4, 2025, Nov. 3,

2025, & Jan. 22, 2026 Mots. To Enforce, ECF Nos. 227, 428, 459; Pls.' Apr. 10, 2025 Mot. to Modify the Settlement Agreement, ECF No. 535. As Class Counsel finally bring the long-threatened motion to fruition nearly a year and half after sending their first section III.H allegation, it is simultaneously too late for the allegations that have become moot and too early for the allegations that are not yet ripe under section V.D. Defendants maintain that the Settlement Agreement is working as intended and the parties are adequately resolving alleged individual violations as they arise, as supported by Class Counsel's failure to raise section III.H in a motion to enforce until three months before the now-extended termination of the Settlement Agreement. Their inability after this long delay to present the Court with alleged violations ripe for judicial intervention is further proof of the lack of need for class-wide enforcement measures. In the absence of a single individual alleged section III.H violation properly before the Court, Class Counsel has failed to provide sufficient evidentiary basis for either the individual or the class-wide enforcement they seek. The motion should be denied.

## II. Class Counsel Repeatedly Mischaracterizes Section III.H of the Settlement Agreement.

Even if Class Counsel presented sufficient alleged violations ripe for the Court's consideration, their arguments would fail because they incorrectly interpret the Settlement Agreement's plain text. Class Counsel's arguments regarding administrative closure are moot, as administrative closure is not available in any jurisdiction. *See* Jt. Mot. For Entry of Consent J. at 2-3, *State of Texas v. Dep't of Justice*, No. 7:26-CV-00070-O (N.D. Tex. June 22, 2026), Dkt. No. 3 (noting the Department of Justice's position that administrative closure is not authorized by statute); *State of Texas v. Dep't of Justice*, No. 7:26-CV-00070-O, 2026 WL 1803245, at *1 (N.D. Tex. June 22, 2026) (agreeing with this position). Furthermore, even in the absence of intervening legal developments, under the Settlement Agreement, Defendants have discretion to oppose

motions for administrative closure based on the individual facts of the case. Contrary to Class Counsel's assertions, Pls.' Mem. 17–20, Maryland principles of contract law support reading the fifth sentence of section III.H to cover administrative closure.

Class Counsel also asks this Court to create an entirely new class of obligations by requiring Defendants not to move to recalendar the immigration cases of Class Members. *Id*. at 20–23. This proposition is not supported by the Settlement Agreement. Finally, Class Counsel misstates the obligations of Defendants with respect to termination motions. *Id*. at 23–25. They are not entitled to the reasoning behind Defendants' oppositions to said motions that are unrelated to the Settlement Agreement.

**a. Administrative Closure is Unlawful and Currently Unavailable in All Jurisdictions.**

Class Counsel argues that the Settlement Agreement requires Defendants to join or non-oppose all Class Member motions for administrative closure. Pls.' Mem. 17–20. They seek for this Court to declare that "DHS has violated section III.H of the Settlement Agreement by not joining or non-opposing motions for administrative closure filed by Class Members, including A.C.H." Proposed Order, ECF No. 649-1 at 1. They further seek for the Court to order Defendants to join or non-oppose Class Member A.C.H.'s future administrative closure motion, as well as any administrative motions made by other Class Members. *Id*. at 2. However, Class Counsel's arguments are moot, and this Court is barred from granting their requested relief.

The Settlement Agreement provides that:

> DHS will join or non-oppose Class Members' motion(s) for a continuance, administrative closure *unless unavailable under controlling law in a particular jurisdiction*, and, where available, assignment of cases to the EOIR status docket, that have been filed or made orally on the record in immigration proceedings in order to await USCIS exercise of Initial Jurisdiction over their asylum application.

Settlement Agreement 9, § III.H (emphasis added). Importantly, for an alien to obtain administrative closure, an immigration judge must grant the request. But the Department of Justice, which oversees the immigration courts and is not party to this suit or the Settlement Agreement, recently announced its position that administrative closure is unlawful in litigation challenging an intervening regulation, the Efficient Case and Docket Management in Immigration Proceedings, 89 Fed. Reg. 46742 (May 29, 2024) (codified at 8 C.F.R. pts. 1001, 1003, 1239, and 1240). *See* Jt. Mot. for Entry of Consent J. at 2-3, *State of Texas v. Dep't of Justice*, No. 7:26-CV-00070-O (N.D. Tex. June 22, 2026), Dkt. No. 3. The court agreed with the Department of Justice and vacated the rule while declaring "that no statute authorizes immigration judges to indefinitely administratively close or suspend adjudication of a case before them." *State of Texas*, 2026 WL 1803245, at *1. Administrative closure is therefore not available in any jurisdiction. Defendants thus have no ongoing obligation under the Settlement Agreement to join or non-oppose Class Member motions for administrative closure, which are now futile.

Class Counsel acknowledge the district court's decision but refer to it as "purporting to vacate." Pls.' Mem. 18 fn. 7. This phrasing obfuscates reality; the regulation is vacated, full stop. *State of Texas*, 2026 WL 1803245, at *1 ("The Administrative Closure Rule is hereby vacated[.]").Class Counsel also seems to suggest that a motion seeking to intervene somehow changes the vacatur. Pls.' Mem. 18 fn. 7. That motion has been denied. *State of Texas v. Dep't of Justice*, No. 7:26-CV-00070-O, 2026 WL 2026 WL 2455363, at *1 (N.D. Tex. Aug. 21, 2026). But regardless of the status of the *Texas* litigation over the 2024 rule, the Department of Justice has concluded that administrative closure is unlawful absent statutory authorization, and thus administrative closure is unavailable under controlling law in any jurisdiction.

Article III of the U.S. Constitution prevents courts from advising on legal questions "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021). There is no live issue regarding Defendants' obligations to join or non-oppose Class Member motions for administrative closure. With administrative closure unavailable in all jurisdictions, neither Defendants nor Class Members have a legally cognizable interest in court-ordered relief involving whether Defendants join or oppose administrative closure motions. *Id*. Any such decree from this Court would be advisory in nature, and this Court has already declined to do exactly that in Class Counsel's other unsuccessful attempts to impose obligations on Defendants. Aug. 6, 2026 Mem. Op. 48, ECF No. 645 ("Class Counsel's request that this Court prohibit application of any 'hold' on adjudication of asylum applications to detained or returning Class Members would be advisory, and thus improper"). Items 2, 5.a, and 5.b of Class Counsel's proposed order address purported remedies related to administrative closure. Proposed Order 1–2. This Court is barred from providing that relief.

**b. The Settlement Agreement Does Not Guarantee Unconditional Administrative Closure to Class Members.**

Notwithstanding the mooting of Class Counsel's administrative closure motion claims, Defendants have not violated the Settlement Agreement with respect to administrative closure on a class-wide basis before the Department of Justice's announcement of its position and the Northern District of Texas' decision on June 22, 2026. Defendants never agreed to unconditionally join or non-oppose all administrative closure motions brought by Class Members. *Contra* Pls.' Mem. 14–15 ("The use of the word 'will' leaves no discretion to Defendants in deciding whether to join or not oppose."). The fifth sentence of section III.H provides:

> Defendants retain discretion to oppose Class Members' motion(s) if it deems such opposition warranted based on the individual facts of the cases, as long as DHS's

> opposition is not based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application.

Settlement Agreement 9, § III.H. This sentence unambiguously applies to motions for administrative closure. *See Walmart Real Est. Bus. Tr. v. Quarterfield Partners LLC*, No. 24-1355, 2025 WL 1577562, at *4 (4th Cir. June 4, 2025) ("A contract's language is ambiguous when, viewing the plain language in its full context, a reasonably prudent person could ascribe more than one reasonable meaning to it.") (unpublished opinion) (internal quotation marks omitted); May 26, 2026 Mem. Op. 15, ECF No. 619 ("Under Maryland's objective theory of contract interpretation, '[u]nless the language of the contract is ambiguous, [courts] interpret it based on what a reasonable person in the position of the parties would have understood the language to mean and not the subjective intent of the parties at the time of formation.'") (quoting *Tapestry, Inc. v. Factory Mut. Ins. Co.*, 286 A.3d 1044, 1053 (Md. 2022)). A reasonable person in the position of the parties would understand the word "motion(s)"—which was drafted in the plural and not limited to specific types of motions—to mean exactly that—all motions. This Settlement Agreement is the product of over ten rounds of edits and multiple days of negotiations. Joint Mot. for Prelim. App. 9-10. If the parties wanted the fifth sentence to be limited to certain motions, they had ample opportunity to provide that specificity. Indeed, they specified the covered motions in every other sentence within section III.H, as demonstrated in the second sentence ("motion(s) for a continuance, administrative closure[], and [] assignment of cases to the EOIR status docket"), third sentence ("motion to dismiss or terminate"), fourth sentence ("motion(s) to dismiss or terminate"), and sixth sentence ("motions for continuance, dismissal or termination, administrative closure [], or [] assignment of cases to the EOIR status docket"). The omission of any modifiers to the word "motion(s)" in the fifth sentence must be read as intentional. "[I]f parties to a contract omit terms . . . the inescapable conclusion is that the parties intended the omission." *Consumer Fin. Prot.*

*Bureau v. Klopp*, 957 F.3d 454, 464 (4th Cir. 2020)*; see also Maersk Line, Ltd. v. United States*, 513 F.3d 418, 423 (4th Cir. 2008) ("in contractual disputes every word is important"). Conversely, section III.K. also refers to "*motions* filed or made by Class Members," and Class Counsel does not dispute that reference applies to *all* motions made or filed by Class Members. Settlement Agreement 10,

Class Counsel's unsupported argument appears to be that, for no other purpose than perhaps to conserve words, the parties inexplicably omitted the words "to dismiss or terminate" from the fifth sentence of section III.H. Pls.' Mem. 18–19. This interpretation cannot be reconciled with this Court's previous holdings and application of Fourth Circuit precedent, as discussed above. Indeed, the fifth sentence read naturally provides broader protections for Class Members as well as Defendants—it ensures that Defendants will not oppose motions beyond those elsewhere identified in section III.H for reasons barred in the Settlement Agreement. Class Counsel's reading would eliminate this protection. This Court should thus give the word "motion" its clear meaning and hold that the fifth sentence of section III.H unambiguously applies to *all* motions identified in section III.H, including for administrative closure.

Even if the Court finds that there is ambiguity in the applicability of the fifth sentence of section III.H to motions for administrative closure, Maryland's "plain language, objective theory of contract law interpretation" supports Defendants' position. May 26, 2026 Mem. Op. 16. Maryland courts consider the entire contract, as well as "the contract's character, purpose, and the facts and circumstances of the parties at the time of execution" in interpreting ambiguous language. *Lithko Contracting, LLC v. XL Ins. Am., Inc.*, 318 A.3d 1221, 1230 (Md. 2024). While Class Counsel relies upon a sole out-of-circuit, unpublished district court decision for the direct proposition that joining Class Member administrative closure motions is mandatory under the

Settlement Agreement, this Court should not find that decision persuasive because the judge failed to look beyond the second sentence of section III.H. Pls.' Mem. 18, citing to *A.C.J. v. Hermosillo*, No. 2:25-CV-02486-DGE, 2026 WL 73857, at *1 (W.D. Wash. Jan. 9, 2026). Instead, under the applicable Maryland law, each of the factors identified in *Lithko* weigh in favor of Defendants.

The Settlement Agreement is a negotiated contract preserving *both* parties' interests. Yet Class Counsel incorrectly contend that the Settlement Agreement only expanded upon benefits for Class Members when compared to the amended preliminary injunction in this case. Pls.' Mem. 20. Section III.K is one example of a negotiated provision preserving Defendants' interests—the parties agreed that Class Members, not Defendants, are responsible for invoking for themselves the protections of the Settlement Agreement when in immigration court. *See* Settlement Agreement 10, § III.K. Under section III.K, "For any provision of this Settlement Agreement wherein DHS will join or non-oppose motions filed or made by Class Members, DHS will join or non-oppose such motions *when they are submitted with sufficient evidence of Class membership*." *Id.* (emphasis added). This provision was absent in the preliminary injunction and is clear evidence that, contrary to Class Counsel's assertions, the parties did in fact agree to "a lesser degree of protection [for Class Members] than [] the preliminary injunction[.]" Pls.' Mem. 20. This provision makes sense in practice; Defendants cannot be required to join a motion where a Class Member fails to assert class membership in the motion. As the Court has recognized, Defendants would not commit themselves to a wholly infeasible obligation. May 26, 2026 Mem. Op. 18 ("It is unreasonable to conclude that Defendants would have bound themselves to adjudicate all applications for a Class of undefined size, potentially committing themselves to a wholly infeasible obligation.").

Similarly, the fifth sentence of section III.H serves the important practical purpose of preserving Defendants' discretion to oppose Class Member motions for reasons wholly unrelated to the Settlement Agreement and USCIS's initial jurisdiction. In the case of administrative closure, a pending asylum application with USCIS was just one factor immigration courts considered prior to the vacatur. *See Matter of Avetisyan*, 25 I. & N. Dec. 688, 696 (B.I.A. 2012) (identifying as factor three of six "the likelihood the respondent will succeed on any petition, application, or other action [the respondent] is pursuing outside of removal proceedings"). The rule adopting the now-vacated regulations[1] governing administrative closure included detention status as a factor when considering administrative closure, *see* 8 C.F.R. 1003.18(c)(3)(i)(H) (2025), and in doing so explained that "the fact that [an alien] is detained in ICE custody will generally weigh against the appropriateness of administrative closure" because "detained cases present a heightened need for stringent monitoring and continuous reevaluation regarding whether a case is ready to proceed to minimize, to the greatest extent possible, the risk of lengthier than necessary detention and the resulting costs," Efficient Case and Docket Management in Immigration Proceedings, 89 Fed. Reg. 46742, 46749 (May 29, 2024). Therefore, "[i]n most detained cases, granting continuances as needed while maintaining the case on—or returning the case to—the active docket will be the most appropriate course of action." *Id*. Opposing administrative closure for detained individuals involved considerations wholly separate and apart from those of the Settlement Agreement—considerations that protected both individual Class Members (from "the risk of lengthier than necessary detention") and the government (from "resulting costs."). *Id*. Notably, this federal

[1] This regulation was vacated on June 22, 2026, as discussed *supra* in Section II.a. Defendants do not take the positions contained therein but rather, as guided by Maryland contract law, discuss them only as relevant to "the circumstances of the parties at the time of execution." *Lithko Contracting, LLC*, 318 A.3d at 1230.

regulation was published on May 29, 2024, a few weeks before the parties executed the Settlement Agreement. This Court has previously considered publications in the federal register in the months leading up to the Settlement Agreement to be "quite relevant" in understanding the facts and circumstances at the time of the Settlement Agreement's execution; the same is the case here. *See* May 26, 2026 Mem. Op. 18 (discussing the relevance of an Interim Final Rule published in June 2024 to interpretation of the Settlement Agreement). Similarly, section III.H does not include any language indicating Defendants would evaluate motions to administratively close filed by class members in a way inconsistent with regulations published prior to the Settlement Agreement. Prior to vacatur, those regulations required immigration judges to consider eight nonexclusive factors—including whether the alien was detained—when deciding whether to administratively close proceedings. 8 C.F.R. § 1003.18(c)(i)(A)–(H). Plaintiffs do not explain what authority Defendants would have through a settlement agreement to ignore those factors, especially where the agreement does not expressly disavow those regulations. Defendants would not have entered into a settlement agreement obligating them to unconditionally take a position contrary to recently published government policy, just as they would not have bound themselves to an obligation they knew they could not meet. *Id*. ("It is unreasonable to conclude that Defendants would have bound themselves to adjudicate all applications for a Class of undefined size, potentially committing themselves to a wholly infeasible obligation.").

In interpreting ambiguous contract provisions, the Court has also previously considered whether an interpretation would render another section "superfluous." May 26, 2026 Mem. Op. 17–18 ("interpreting Section III.B as Class Counsel urges would render Section III.G superfluous"). In their instant motion, Class Counsel overemphasize the significance of the word "will" at the expense of all other provisions in the Settlement Agreement, contending that use of

the word is "unmistakably mandatory language." Pls.' Mem. 18 (citing to *Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024)). But this Court has already cautioned against Class Counsel's expansive interpretations of this word in the context of section III.B. May 26, 2026 Mem. Op. 18 (acknowledging the use of the word "will" but still looking to the facts and circumstances at the time of execution). Under Maryland contract law, the provision must be read in context. *Lithko*, 318 A.3d at 1230. Interpreting section III.H as Class Counsel suggests would render superfluous several other provisions of section III.H. *First*, the administrative closure provision of the Settlement Agreement indicates that any administrative closure motions must be "in order to await USCIS exercise of Initial Jurisdiction over their asylum application." Settlement Agreement 9, § III.H. This clause aligns with section III.K, which requires that Class Members invoke their Class membership; *i.e.*, their entitlement to USCIS exercise of said jurisdiction. *Id*. at 10, § III.K. *Second*, Class Counsel's interpretation of the word "will" reads out entirely the fifth sentence of section III.H and its clear reservation of discretion. Class Counsel recognizes that "effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing." Pls.' Mem. 19 (citing to *Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 52, 73 A.3d 224, 232-33 (2013)). Therefore, to understand the second sentence of section III.H to be an unconditional mandate would read out the meaningful reservations of the fifth sentence.

Given the historical considerations, *see supra* Background, and taking the rest of the Settlement Agreement in context, any ambiguity in interpreting section III.H falls on the side of Defendants. Not every motion in immigration court is a threat to Class Member rights. This Court should recognize that the Settlement Agreement does not mandate joinder or non-opposition to

literally all Class Member administrative closure motions and should, therefore, deny Class Counsel's request to extend the Settlement Agreement beyond its drafted limits.

**c. Recalendaring is Not a Violation of the Settlement Agreement.**

The term "recalendar" does not appear a single time in the Settlement Agreement. *See generally* Settlement Agreement. The Settlement Agreement mentions with specificity many other motions throughout sections III.H and III.J. However, with two exceptions, the Settlement Agreement only addresses motions brought by Class Members, not Defendants. *See, e.g.*, *id* at 10, § III.K ("For any provision of this Settlement Agreement wherein DHS will join or non-oppose motions *filed or made by Class Members* . . .") (emphasis added). Motions by *Defendants* are mentioned only to make clear that the Settlement Agreement does not limit Defendants' prosecutorial discretion in filing motions of their own. *See id* at 9, § III.H ("Nothing in this provision prevents DHS from either filing a motion to dismiss or terminate removal proceedings of a Class Member to await USCIS's adjudication of the asylum application or as a matter of prosecutorial discretion."); *id* at 10, § III.J ("Nothing in this provision prevents DHS from filing an unopposed or joint motion to reopen the removal proceedings of a Class Member described in this section[.]").

This Court has repeatedly declined Class Counsel's previous requests to introduce new obligations into the Settlement Agreement beyond its written terms. May 26, 2026 Mem. Op. 18 (declining to find an obligation for USCIS to adjudicate all Class Member asylum applications by the Termination Date); Aug. 6, 2026 Mem. Op. 31 (declining to find an obligation for ICE to independently identify potential Class Members before removal); *id*. at 49 (declining to order the creation of a Class list). When seeking these previously failed measures, Class Counsel made essentially the same arguments they make now—that Defendants' positions "undermine a core purpose of the Settlement Agreement" and render the agreement an "illusory promise." *See, e.g.*,

Pls.' Mot. to Modify the Settlement Agreement 25 (arguing that a core purpose of the Settlement Agreement was the adjudication of all Class Member asylum applications). Here, interpreting the Settlement Agreement to require Defendants not to file motions to recalendar would introduce an entirely new class of obligations the parties failed to include in the original agreement. Accordingly, the Court must once again deny yet another effort by Class Counsel to "enforce" something simply not found within the text of the Settlement Agreement.

Class Counsel's arguments rest upon the supposition that, although recalendaring is not specifically mentioned, filing a motion to recalendar is "fundamentally at odds with their obligation to join or non-oppose a motion for administrative closure" and therefore a Settlement Agreement violation. Pls.' Mem. 21. But the settlement agreement obligations regarding administrative closure are not fully unconditional. *See supra* § II.b. If there is no absolute mandate to join or non-oppose administrative closure, then it would logically follow that reversals of administrative closure through motions to recalendar are also not subject to a universal requirement. *Klopp*, 957 F.3d at 463 ("the scope of a consent order must be discerned within its four corners, and not by reference to what might satisfy its purposes" (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). Therefore, even if recalendaring were somehow encompassed within the settlement agreement's provisions regarding administrative closure, these motions would not be unconditionally barred as Class Counsel argues, because administrative closure motions themselves are not thus barred.

Barring motions to recalendar would also partially nullify section III.K of the settlement agreement. *Calomiris v. Woods*, 353 Md. 425, 441 (1999) ("[C]ourts should avoid interpreting contracts so as to nullify their express terms."). Section III.K places the burden on Class Members to self-identify and provide evidence of Class membership when filing motions for administrative

closure, continuance, termination, or dismissal. Settlement Agreement 10, § III.K. This requirement was negotiated by the parties and has meaning. *Klopp*, 957 F.3d at 464 ("Words matter."). Class Counsel's proposed order would require Defendant DHS to investigate Class Members before filing a motion to recalendar. *See* Proposed Order 2 ("DHS must not move to recalendar the administratively closed removal proceedings of any Class Member."). This proposed requirement is particularly problematic because it creates obligations for Defendants notwithstanding whether the Class Member has ever satisfied the requirements of section III.K; for example, a case may have been administratively closed on other grounds without accompanying proof of Class membership. *See* Settlement Agreement 10, § III.K ("For any provision of this Settlement Agreement wherein DHS will join or non-oppose motions filed or made by Class Members, DHS will join or non-oppose such motions when they are submitted with sufficient evidence of Class membership."). The proposed order is contrary to the burdens negotiated by the parties and would place substantial new burdens on Defendants, going beyond the scope of this Court's enforcement authority. Therefore, the Court should not find that the Settlement Agreement's obligations with respect to administrative closure motions extend to encompass motions to recalendar brought by Defendants.

Further, Defendants note that the Settlement Agreement's requirement in the first sentence of section III.H that "DHS will refrain from taking the position that USCIS does not have Initial Jurisdiction over a Class Member's asylum" is not a bar to filing motions to recalendar. Settlement Agreement 9, § III.H. The authority of the immigration courts' encompasses significantly more than asylum applications. It covers, for example, determining removability, possible release conditions, and other applications for legal immigration status. Recalendaring does not, on its own, signify any position regarding USCIS's jurisdiction over a pending asylum application. And once

recalendared, as contemplated under the Settlement Agreement, Defendants may agree to continuances to await USCIS's adjudication of the asylum application. *Id*. Further, the existing first sentence of section III.H provides adequate protections to preserve the purposes of the Settlement Agreement in the context of recalendaring. Compliance with this sentence through not invoking improper positions in immigration court fulfills Defendants' obligations in the context of section III.H. Motions to recalendar do not then "frustrate the settlement's purpose." *Contra* Pls.' Mem. 21 (citing to *Wheeler v. Badders*, 2025 WL 3227720, at *5 (App. Ct. Md. Nov. 19, 2025)). Defendants' interpretation does not render section III.H to be an illusory promise. *See* Pls.' Mem. 21-22 (alleging that Defendants' position renders their promises to Class Members "illusory"). Rather, it adheres to the negotiated terms. Therefore, Defendants' position is distinguishable from the policy discussed in *Cheek v. United Healthcare of Mid-Atl., Inc.*, 378 Md. 139, 149 (2003). *See* Pls.' Br. 21-22 (discussing *Cheek*). Defendants do not seek to revoke the third sentence of section III.H on a whim; they merely maintain that the fifth sentence of section III.H and section III.K provide important context for its meaning. If Class Counsel wanted to negotiate a clear limitation on Defendants' ability to file any motion to recalendar, they should have done so during settlement negotiations. Filing motions to recalendar immigration court proceedings of Class Members does not violate section III.H, and the Court should decline to grant Class Counsel's proposed order seeking such a declaration. *See* Proposed Order, ECF No. 649-1 at 1 ("3. DHS has violated Section III.H of the Settlement Agreement by filing motions to recalendar administratively closed immigration court proceedings of Class Members.").

Finally, item 5.c of Class Counsel's proposed order—"DHS must not move to recalendar the administratively closed removal proceedings of any Class Member"—cannot be granted pursuant to the authority invoked by Class Counsel. *See* ECF No. 649-1 at 2. Class Counsel

identified the instant motion as a "motion to enforce" and did not invoke any authority of the Court other than enforcement in seeking for the Court to grant their requested remedies. *See* Pls.' Mem. 27 ("This Court has the authority to order the requested remedies pursuant to the Court's 'exclusive jurisdiction to supervise the implementation of th[e] Settlement Agreement and to enforce its provisions and terms."). Under its enforcement authority, this Court may only "order the performance of duties contained within the 'four corners' of the consent decree." *Johnson v. Robinson*, 987 F.2d 1043, 1049 (4th Cir. 1993) (quoting *Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984)). "[R]emedies that would greatly 'enlarge . . . the duties on which the parties have agreed and which the court has approved' . . . seek to modify rather than enforce the terms of [a] consent decree." *Int'l Longshoremen's Ass'n Loc. 333 v. Int'l Longshoremen's Ass'n, AFL-CIO*, 687 F. App'x 315, 327 (4th Cir. 2017) (unpublished per curiam) (quoting *Johnson*, 987 F.2d at 1046 (citations omitted)). Yet item 5.c of Class Counsel's proposed order goes beyond the "four corners" of the Settlement Agreement, which fails to mention motions to recalendar. This would be a modification of the Settlement Agreement, which Class Counsel has made no arguments to support. Therefore, both items 3 and 5.c of Class Counsel's proposed order should be denied.

**d. Class Counsel Mischaracterize the Termination Provisions of the Settlement Agreement.**

Section III.H of the Settlement Agreement provides a fulsome overview of the obligations of Defendants in the context of Class Member motions to terminate, including two sentences specific to motions to terminate and dismiss (sentences three and four) and two sentences that address all motions, including motions to terminate (sentences one and five). Settlement Agreement 9. As Class Counsel notes, termination of removal proceedings is a significant measure

involving a final order, conclusion of proceedings, and release of the individual if detained. Pls.' Mem. 10.

Class Counsel contends that Defendants are filing oppositions across the board to Class Member motions to terminate "without any case-specific reasons," Pls.' Mem. 25, in violation of section III.H. This allegation is without basis and also mischaracterizes the meaning of section III.H. Class Counsel does not contest that the fifth sentence of section III.H applies to motions for termination. Pls.' Mem. 23. That sentence, as discussed above, provides that:

> Defendants retain discretion to oppose Class Members' motion(s) if it deems such opposition warranted based on the individual facts of the cases, as long as DHS's opposition is not based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application.

Settlement Agreement 9, § III.H. The Settlement Agreement does not specify that Defendants' reasons must be legally relevant to the immigration judge in deciding the Class Members' motion; indeed, what arguments to bring forth in an opposition to termination are a matter of prosecutorial discretion. So long as Defendants do not take the position prohibited by the Settlement Agreement, that USCIS does not have Initial Jurisdiction over the Class Member's asylum application, the fifth sentence does not obligate Defendants to provide further explanation of the reasons for their opposition to the immigration court or the Class Member.

Class Counsel inexplicably make the illogical conclusion that the plain language of the fifth sentence of section III.H requires Defendants to "put forward" said reasons in their opposition. Pls.' Mem. 24. But this is not what the Settlement Agreement states. Defendants retained discretion to oppose motions where they deem such opposition warranted based on the individual facts of the case. Settlement Agreement 9, § III.H. A mandate for Defendants to include those reasons in their filings in immigration court would be inappropriate and beyond the plain language of the provision. If Class Counsel wanted to be privy to the reasons for each opposition

of termination in Class Member cases, they should have negotiated a clear provision for such. They failed to do so.

Defendants' interpretation of their obligations regarding termination is consistent with the purpose and history of section III.H. *See supra* Background, § I. The amended preliminary injunction arose from concerns with Defendants explicitly urging immigration judges to exercise jurisdiction over Class Member asylum applications, as made evident from Class Counsel's filings and the Court's order granting the amendment. *Id*. These concerns carried over into the drafting of the Settlement Agreement, which requires Defendants not to make arguments relying on the position, in whole or in part, that USCIS lacks initial jurisdiction over Class Member asylum applications. Settlement Agreement 9. The intended benefits of the Settlement Agreement are sufficiently preserved by this uncontroverted obligation. This Court should not read into the Settlement Agreement a new requirement for Defendants to disclose further information not relevant to the Settlement Agreement's prohibited position where no such requirement currently exists.

Therefore, the items of Class Counsel's proposed order involving motions to terminate immigration proceedings, item 4 and item 5.d, should both be denied. *See* Proposed Order 1–2. Item 4, which seeks a declaration that Defendants have violated the Settlement Agreement's termination motion obligations, must be denied because Class Counsel has failed to sufficiently demonstrate an individual or class-wide basis for the Court to find a violation. *See supra* § I. Item 5.d must be denied for the same reasons as item 5.c—it seeks modification, not enforcement, of the Settlement Agreement. *See supra* § II.c. This Court's enforcement authority is limited to duties agreed to be the parties. *Johnson*, 987 F.2d at 1049; May 26, 2026 Mem. Op. 21 fn. 27. Item 5.d rewrites existing language into section III.H of the Settlement Agreement in a way to modify those

agreed-to duties by adding a requirement that DHS "presents" certain information. *See* Proposed Order 2. This modification is unfounded and should be denied.

**CONCLUSION**

For the foregoing reasons, the Court should deny Class Counsel's motion to enforce section III.H the Settlement Agreement in its entirety.

Dated: September 1, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY NICASTRO
Director

CATHERINE M. RENO
Assistant Director

RUTH ANN MUELLER
Senior Litigation Counsel

EVAN P. SCHULTZ
JAIME A. SCOTT
JEFFREY ALDERETTE
Trial Attorneys

*/s/ Larissa K. Johnson*
LARISSA K. JOHNSON
Trial Attorney (D.C. Bar No. 90034719)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Telephone: (202) 598-9126
Fax: (202) 305-7000
Larissa.K.Johnson@usdoj.gov
*Counsel for Defendants*