GOODWIN

Brian Burgess
+1 202 346 4215
BBurgess@goodwinlaw.com

Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036

goodwinlaw.com
+1 202 346 4000

September 2, 2026

**FILED VIA CM/ECF**

The Honorable Stephanie A. Gallagher
District Judge
U.S. District Court for the District of Maryland
101 West Lombard Street
Chambers 7C
Baltimore, MD 21201

**Re: *J.O.P., et al. v. U.S. Department of Homeland Security, et al.*, Civil Action No. 19-cv-01944-SAG**

Dear Judge Gallagher:

We write to inform the Court that yesterday, September 1, 2026, Defendants removed 19-year-old Class Member ELA from the United States to his country of feared persecution for a ***second time*** without providing him an adjudication on the merits of his pending asylum application, violating multiple orders of this Court.[1] ELA's Class membership was well known to Defendants, who transported ELA from El Salvador to the United States on August 7, 2026, to remedy his unlawful removal earlier this year. Upon returning ELA, Defendants confined him at a detention center in Louisiana; despite his detention far from the location of his counsel, ELA had been working diligently with his immigration counsel to prepare for USCIS to adjudicate his asylum application on the merits. Instead of providing ELA the asylum adjudication on the merits by USCIS to which he is entitled under the Settlement Agreement, Defendants repeated their violation of this Court's orders of November 25, 2024; April 23, 2025; and July 29, 2026 by once again removing ELA from the United States. Class Counsel requests that the Court order a status report from Defendants on the circumstances of this violation.

Following is a chronology of events as understood by Class Counsel. Class Counsel has documents supporting this information and can file them under seal at the Court's request.

---

[1] Defendants have filed a related notice, acknowledging that "ICE has confirmed that E.L.A. was listed on a flight manifest, and that flight landed in El Salvador on the afternoon of September 1, 2026." ECF No. 664.

On March 30, 2026, Defendants disclosed to Class Counsel the removal of ELA on March 14, 2026. On May 22, 2026, Defendants confirmed that ELA is a Class Member—after the Court ordered that Defendants provide this information to Class Counsel, ECF No. 615.

After successfully making direct contact with ELA, Class Counsel learned that he wished to be returned to the United States for an adjudication by USCIS of his asylum application. Class Counsel notified Defendants of ELA's desired return on June 15, 2026 and asked Defendants to return him expeditiously. Defendants agreed to facilitate ELA's return, and on August 7, 2026, Defendants returned him to the United States.[2]

From August 7, 2026 to September 1, 2026, Defendants held ELA in immigration detention in Louisiana far from his counsel and prior residence but never notified ELA of the timing of his asylum interview. In preparation for ELA's asylum adjudication, his immigration counsel coordinated through the detention center to arrange for a psychological evaluation to be conducted via video conference over two days—August 31, 2026 and September 1, 2026. The first day of the evaluation occurred as planned on August 31. The second day of the evaluation was to be conducted by video conference on September 1, 2026 from 11:00 a.m. to 1:00 p.m. Central Time.

At approximately 8:40 a.m. Eastern Time on September 1, ELA's immigration counsel received a boilerplate email from an ICE email address stating that the appointment "has been cancelled," with the stated reason that he is "[n]o longer at this facility."

As of approximately 9:30 a.m. Eastern Time, the online ICE Detainee Locator reflected that ELA remained at the same Louisiana detention center where he had been held since August 8. Because ICE had previously sent an identical notice cancelling a legal appointment while ELA still remained at the facility, the cancellation notice at first appeared erroneous. However, shortly after 9:30 a.m. Eastern Time, someone at that Louisiana detention facility sent ELA's counsel a one-line email: "He is no longer at our facility, so we will not be able to conduct todays [sic] meeting." ELA's counsel immediately replied asking for ELA's location, and received no response. By about 10:30 a.m. Eastern Time, the online ICE Detainee Locator showed no record for ELA.

At 11:22 a.m. Eastern Time, Class Counsel sent Defendants' counsel an email with the words "urgent corrective action needed" in the subject line, asking to be informed of ELA's location due to ICE's failure to respond to ELA's immigration counsel of record. Defendants' counsel did not respond.

---

[2] However, despite Class Counsel's repeated requests that Defendants make an individualized determination regarding ELA's release upon return and, if Defendants were to detain ELA for any period, provide the legal basis for and location of his detention to Class Counsel in advance of his return, Defendants never provided any basis for ELA's detention and refused to communicate their plans for ELA regarding release or detention or location of detention in advance of ELA's return. Class Counsel also asked Defendants to provide copies of ELA's entry documents and to notify Class Counsel when any USCIS asylum interview was scheduled; Defendants provided no information.

GOODWIN



At approximately 5:00 p.m. Eastern Time, ELA's immigration counsel received messages from a family member of ELA's, reporting that ELA had called a family member using a phone borrowed from a stranger to tell his family that ICE had again deported him to El Salvador.

Soon after, members of the Class Counsel team called ELA's family member to hear this report directly. ELA's immigration counsel also spoke with a member of ELA's family during a phone call the family member received from ELA. ELA reported that on the night of August 31, officials had told him he would be relocated to another ICE detention center. Instead, ICE officials took away ELA's belongings and put him on a plane that landed in San Salvador on September 1.

At 5:36 p.m. Eastern Time, Class Counsel emailed Defendants' counsel to state that we had learned of ELA's removal. At 6:18 p.m. Eastern Time, Class Counsel asked for a response and enumerated the Court orders that Defendants had violated.

At 7:07 p.m., Defendants' counsel acknowledged that ELA "was listed on a flight manifest" of a flight that "landed in El Salvador this afternoon," but shared no substantive information. *See also* ECF No. 664 (Defendants' September 2, 2026 notice to the Court disclosing ELA's removal).

At 7:24 p.m., Defendants' counsel asserted that they (DOJ counsel) had first learned of ELA's removal via Class Counsel's 5:36 p.m. email. Yet Class Counsel had urgently asked opposing counsel's assistance in locating ELA *over 6 hours earlier,* at 11:22 a.m. Eastern Time. During these hours Defendants' counsel could and should have detected ELA's removal—and perhaps could have prevented it.

Defendants' serial removals of ELA violate three Court orders. ECF No. 205 (granting final approval of Settlement Agreement, which provides that "ICE will refrain from executing the Class Member's final removal order until USCIS issues a Final Determination on one properly filed asylum application under the terms of this Agreement"); ECF No. 254 (ordering Defendants "not to remove from the United States members of the certified 'Class'"); ECF No. 642 (ordering Defendants that, "if an individual is identified to ICE as a potential J.O.P. Class Member by any other means (including, but not limited to, USCIS's compiled lists of potential Class Members, self-identification, or identification by counsel), ICE must refrain from removing the individual unless and until USCIS adjudicates their asylum application on the merits or the USCIS Asylum Office confirms the individual is not a Class Member").

Defendants' second unlawful removal of ELA not only violates multiple court orders, but it also places him back in the country where he fears persecution in an extremely vulnerable state, deprived of his cell phone, clothing, paperwork, and other belongings.Class Counsel is extremely concerned about ELA's safety and well-being.

Class Counsel respectfully submits that Defendants—and possibly their counsel—stand in contempt of three orders of this Court. Once Class Counsel is able to ascertain ELA's needs and desires, Class Counsel intends to request specific remedies from this Court to secure protection for ELA and to hold Defendants to account for the profound malfeasance that resulted in ELA's removal, *for a second time*, to the country where he fears persecution.

GOODWIN



In the meantime, Class Counsel asks that this Court order Defendants to file a status report by noon EST on September 3, 2026, including a declaration under oath addressing the following questions:

1. At what time did Defendants move ELA from the Louisiana detention center where ICE had been holding him since August 8, 2026?

2. Who was responsible for the decision to move ELA from the detention center?

3. At what time did the plane carrying ELA take off for San Salvador?

4. Who was responsible for the decision to place ELA on a plane to San Salvador?

5. After receiving Class Counsel's 11:22 a.m. email, marked urgent and seeking "immediate information about ELA's location," what action, if any, did Defendants' counsel take to ascertain ELA's location?

6. Did ICE fail to provide any of the personnel who carried out these decisions with the revised ICE guidance issued August 13, 2026?

7. Do ICE systems contain an alert that ELA was identified as a potential *J.O.P.* Class Member?

Class Counsel will update the Court and the Defendants once we have ascertained ELA's needs. Class Counsel reserves the right to seek additional remedies in view of Defendants' ongoing violations of the Court's orders.

Sincerely,

*/s/ Brian Burgess*

Brian Burgess
BB

cc: Counsel of Record (via ECF)