**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **J.O.P., *et al.*,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil No. SAG-19-01944** |
| **U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,** | * | |
| **Defendants.** | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

This longstanding case involving claims brought by a class of asylum applicants who arrived in this country as "unaccompanied alien children" ("UACs") now revolves around efforts to enforce the parties' Settlement Agreement. Currently pending is the Second Motion for Attorney Fees and Expenses filed by the Plaintiff Class, ECF 505. This motion relates generally to fees and expenses incurred in connection with the government's removal of a Venezuelan class member, identified as "Cristian," to El Salvador in violation of the Settlement Agreement. Defendants have filed an opposition to the motion, ECF 557, and the Plaintiff Class filed a reply, ECF 582. This Court has reviewed the filings and the related exhibits and finds that no hearing is necessary to resolve the motion. *See* Local Rule 105.6 (D. Md. 2025). For the reasons that follow, the Plaintiff Class's motion will be granted in part and denied in part, and an award of fees and expenses will be entered as described herein.[1]

---

[1] Recent disputes have arisen relating to the government's apparent removal of a multitude of class members without affording them the benefits guaranteed by the Settlement Agreement. The instant motion for attorney's fees was filed on March 30, 2026, shortly after a series of evidentiary hearings at which those apparent removals were revealed. The award of attorneys' fees in this

## I. LEGAL STANDARDS

The Equal Access to Justice Act ("EAJA") permits certain litigants who file suit against the government to petition the Court for an award of reasonable fees and expenses. *See* 28 U.S.C. § 2412(d)(1)(A). Specifically, the statute reads:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Id.* The statute continues, "[w]hether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." *Id.* § 2412(d)(1)(B). The Fourth Circuit has explained that the standard is intended to "penalize unreasonable behavior on the part of the government without impairing the vigor and flexibility of its litigating position." *Crawford v. Sullivan*, 935 F.2d 655, 659 (4th Cir. 1991) (internal quotation marks omitted).

## II. ANALYSIS

Other than as to one particular motion to compel discovery, the government does not contest that the Plaintiff Class qualifies as the prevailing party in this matter, ECF 557 at 9, but it otherwise contests this motion on two grounds. First, it argues that its position was substantially justified, making any fee award inappropriate. Second, it argues that if the Court awards fees, it should significantly reduce the award from the amount the Plaintiff Class requests.

---

memorandum opinion and accompanying order does not consider whether any additional award might be appropriate should the Plaintiff Class eventually prevail with respect to the more recent issues raised.

### A. SUBSTANTIALLY JUSTIFIED

Because the EAJA employs the singular phrase "the position of the United States," the Court looks to "the totality of the circumstances" to assess substantial justification, instead of engaging in "an issue-by-issue analysis of the government's posture throughout each phase of the litigation." *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993). This Court collectively considers both the government's prelitigation conduct and its positions taken as the litigation proceeded. *Perez v. Jaddou*, 31 F.4th 267, 271 (4th Cir. 2002). The government need not prevail in the case for its position to be substantially justified; instead, its position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988). The government bears the burden of proving its position is substantially justified. *Meyer v. Colvin*, 754 F.3d 251, 255 (4th Cir. 2014).

The dispute at issue surrounds the removal of Cristian, a class member and Venezuelan citizen seeking asylum because of feared persecution, to El Salvador on March 15, 2025. One day prior, the President issued Presidential Proclamation 10,903, *Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua* ("TdA"). Without a hearing or other due process to determine TdA membership, Defendants removed Cristian on a plane with a number of other aliens to El Salvador. Upon arrival, Cristian and the other aliens were detained in the CECOT prison for months before being "traded" to Venezuela (the country from which Cristian was seeking asylum) in a prisoner swap.

On April 14, 2025, Class Counsel filed an Emergency Motion to Enforce the Settlement Agreement, arguing that Defendants' removal of Cristian violated its terms. ECF 227. This Court granted that motion on April 23, 2025, and entered an order directing Defendants to "facilitate Class Member Cristian's return to the United States to await the adjudication of his asylum application on the merits by USCIS under the terms of the Settlement Agreement." ECF 254. This

Court defined facilitation to include, but not be limited to, "a good faith request by Defendants to the government of El Salvador to release Cristian to U.S. custody for transport back to the United Staes." *Id.*

Defendants appealed this Court's order to the Fourth Circuit and sought a stay pending appeal. ECF 271, 276. While the Fourth Circuit initially granted an administrative stay, on May 19, 2025, it denied the stay pending appeal. ECF 278, 281. The next day, this Court ordered Defendants to provide a status report by May 27, 2025, detailing Cristian's location and steps being taken to facilitate his return. ECF 280. An hour past the deadline, Defendants filed a status report that "disregarded the substantive requests" of the Court's order. ECF 285, 286, 287.

This Court then entered an order requiring Defendants to file a weekly status report, each Friday "on or before noon ET," providing specific details regarding efforts to comply with the order to facilitate Cristian's return. ECF 293. The government thereafter provided a series of relatively uninformative weekly status reports affirming Cristian's good health and that the State Department was engaging in diplomatic discussions with El Salvador. *See, e.g.*, ECF 294, 295, 300, 303, 307, 314. The government also moved to vacate this Court's facilitation order, at one point proffering an "Indicative Asylum Decision" announcing an intent to deny Cristian's asylum application before any good faith proceeding occurred. ECF 261-2, Exh. A.

Because no concrete movement had been made towards Cristian's return, this Court entered an order on June 5, 2025, permitting Class Counsel to serve expedited discovery requests on Defendants "limited to ascertaining Defendants' compliance with this Court's" order to facilitate Cristian's return to the United States. ECF 293. Because Class Counsel was dissatisfied with the discovery responses it received, it filed a Motion to Compel further discovery, ECF 308. This Court scheduled a hearing on that motion for July 22, 2025. Before that hearing, on July 18,

2025, the government's regular Friday status report was not filed as required by noon. Instead, later that afternoon, Defendants belatedly advised the Court that El Salvador had released Cristian and 251 other Venezuelan nationals to Venezuela as part of a prisoner exchange. ECF 353. The United States, who served as an intermediary in those negotiations, obtained assurances from the Venezuelan government that it would not prevent an individual's travel to the United States if the travel was "called for in legal proceedings or required by the court" and "the individual [was] willing to travel to the United States for that purpose." ECF 352 at 6.

As a result of that development, the discovery sought by Class Counsel about the government's efforts to facilitate Cristian's return from El Salvador effectively became moot. Instead, the July 22 hearing (and the efforts of Class Counsel) focused on trying to ascertain Cristian's safety in Venezuela and his desire to return to the United States. *See* ECF 370-3, Exh. B (hearing transcript). At the conclusion of that hearing, therefore, this Court denied without prejudice Class Counsel's Motion to Compel additional discovery. ECF 358.

For some period of time, Class Counsel lost contact with Cristian in Venezuela. *See, e.g.*, ECF 388, 396, 408. Subsequently, they regained communication with their client, but Cristian never communicated a desire to return to the United States to receive his asylum adjudication.

This Court considers that background when evaluating the government's argument that its position has been substantially justified. The government argues primarily that its pre-litigation position was reasonable because the Settlement Agreement's use of the language "final removal order" implicated Title 8 of the U.S. Code and the parties did not expressly agree to any terms regarding use of the Alien Enemies Act. ECF 557 at 10. But as this Court noted in its adjudication of the claims about Cristian, it was unreasonable to infer, from the absence of any mention of the Alien Enemies Act in the Settlement Agreement, that the designation of Cristian as a member of

TdA (without any due process or hearing) removed him from the Settlement Class. ECF 253 at 8–11. Defendants' decision to remove Cristian without warning, even after Cristian's immigration counsel had notified them of his class membership, was unjustified and not reasonable. And as Class Counsel notes, "when the government's unjustified prelitigation position forces a lawsuit, the petitioner may recover fees under the EAJA for the entire suit, even if the government's litigation position was reasonable." *United States v. 515 Granby, LLC*, 736 F.3d 309, 316 (4th Cir. 2013) (citing *Thompson v. Sullivan*, 980 F.2d 280, 281 (4th Cir. 1992)).

This Court also concludes, however, that the government's litigation position was not reasonable. Setting aside the issue of its interpretation of the terms of the Settlement Agreement[2], during the course of the litigation of this matter, the government has engaged in other unreasonable conduct, including but not limited to its repeated unsubstantiated assertions that Cristian was a member of TdA or a threat to public safety, *see, e.g.*, ECF 557 at 3, its attempted use of an "Indicative Asylum Decision" manufactured for this litigation, and its decision to ignore this Court's reporting deadline to facilitate its participation in the prisoner swap without court intervention. Looking at the totality of the circumstances, even if portions of the government's positions might have been reasonable, its overall litigation position has not been substantially justified. A reasonable person could not find that the government's overall litigation position had reasonable basis in law and in fact.

[2] The Fourth Circuit has held, though, that an attempt to advance a construction of a settlement agreement that is "unduly restrictive and inconsistent with the intent of the law and the ostensible purposes of the Settlement Agreement" lacks substantial justification. *Hyatt v. Barnhart*, 315 F.3d 239, 248 (4th Cir. 2002). The government's proposed construction here would have rendered the Settlement Agreement's promises illusory by permitting unilateral decisions to remove class members with no process at all.

**B. MOTION TO COMPEL DISCOVERY**

With that finding on the issue of substantial justification, this Court next turns to calculating a reasonable fee award. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Defendants agree that Plaintiff's suggested hourly rates are reasonable. *See* ECF 216 at 8. They contend, however, that the Plaintiff Class was not the prevailing party on the Motion to Compel Discovery, which this Court denied without prejudice on July 22, 2025. Because Class Counsel voluntarily excluded time entries relating to the Motion to Compel Discovery from its fee request, ECF 505-1 at 22, this Court will not further reduce the hours compensated.

Defendants' related contention is that Class Counsel should not be able to recover fees and travel costs for the July 22, 2025 hearing, which was originally slated to focus on the Motion to Compel. That argument is unavailing, as the ensuing events relating to Cristian's unanticipated transfer to Venezuela (and Defendants' failure to timely apprise the Court of that transfer despite the status report deadline) became the focus of the proceeding. *See* ECF 370-3, Exh. B (hearing transcript). As the July 22, 2025 hearing related to the larger issues involving Cristian and the Plaintiff Class was the prevailing party, Defendants' request to reduce the fees and travel costs relating to that hearing will be denied.

**C. TIMEKEEPING REDUCTIONS**

The government also asks for a general 75% reduction in Plaintiffs' requested fee award, on the basis of "vague entries," "block billing," and "team calls." ECF 557 at 14–16. Both parties agree that Plaintiffs bear the burden of establishing their entitlement to fees by providing appropriate documentation of the hours expended. District courts then have "substantial discretion in fixing the amount of an EAJA award." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990). Courts

generally recognize and approve the practice of a fixed percentage reduction where a fee petition contains a significant number of objectionable items, rather than requiring the court to engage in a line-by-line evaluation of billing statements from multiple attorneys. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004); *Okla. Aerotronics, Inc. v. U.S.*, 943 F.2d 1344, 1346–47 (D.C. Cir. 1991). Some of the particular points of dispute leading to this Court's ultimate determination are reviewed below.

**1. "Team Calls"**

Defendants argue, "Plaintiffs billed for team calls for multiple billing attorneys on, for example, April 9, April 14, May 23, May 29, and May 30." ECF 557 at 16. They provide this Court no specific citations to the relevant exhibits to locate the allegedly duplicative entries. As this Court noted in its opinion deciding the first fee petition, the Local Rules in effect prior to December 1, 2025 provided that, in general, "only one lawyer is to be compensated for client, third party, and intra-office conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer." *See* then-Loc. R. App. B at 2.d.[3] Because, for that first fee petition, the routine team calls resulted in hundreds of thousands of dollars in requested fees over the four-plus years of litigation, this Court opined that it would "consider the billing entries with greater caution given the frequency and the unspecified nature of the 'team calls.'" ECF 333 at 12.

The issue presents differently here. Defendants have not quantified the total amount of team call-related fees at issue in this motion. But whatever the number, the urgent and fast-developing nature of the situation with Cristian warranted frequent coordination amongst Class

[3] The Court has since amended its Local Rules to eliminate that provision. *See* Loc. R. App. B at 2 (D. Md. Dec. 1, 2025).

Counsel. Thus, in this context, this Court does not believe that the calls involving multiple attorneys on the team warrant a percentage-based reduction in hours billed or the rejection of any time entries.

**2. "Vague Entries" and "Block Billing"**

The government also argues for an across-the-board percentage reduction based on entries they characterize as "excessively vague" or "block billing." With respect to vagueness, the government provides four examples. ECF 557 at 15. This Court disagrees that one of those examples is vague, because, when read in context, the entry referring to "also discovery work" can be assumed to refer to the "edit draft discovery requests" described in the immediately preceding entry. *See* ECF 509-1 at 3. And even assuming that the other three identified entries, referring more generally to "work," are excessively vague, this Court notes that the total fees associated with those three entries is around $650.00. Thus, this Court finds that no percentage-based reduction is warranted and it declines to undertake its own line-by-line review of entries to which the government failed to object.

Similarly, the government accuses Class Counsel of "block billing." The government cites to three examples from one exhibit without providing pincites to permit this Court to readily identify those entries. ECF 557 at 15. And it makes no contention that the overall time billed for those entries is less than reasonable. Overall, in recognition of the fact that there are some limited vague and block billed entries, but in the absence of any cogent arguments that the fees sought are otherwise unreasonable, this Court will make a $1000.00 reduction to the fees sought by Class Counsel.

As the Supreme Court has explained, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry," as there may be additional reductions, for example, where plaintiffs

achieved only partial success in the litigation's aims. *Hensley*, 461 U.S. at 434. No such factors have been argued in this instance, and this Court finds no ground for further reduction.

**3. Costs and Expenses**

Defendants made several arguments with respect to Class Counsel's originally claimed costs and expenses, ECF 557 at 16–18, and Class Counsel reasonably reduced their request in response to those arguments, ECF 582 at 14–15. Initially, this Court notes that Defendants' "comparison" between the costs and expenses sought in the first fee petition and those sought here, ECF 557 at 16, is a comparison between apples and oranges. The length of the time periods in question do not determine the reasonableness of total costs and expenses because the intensity of litigation activity within time periods can vary dramatically. The urgency and danger of Cristian's circumstances resulted in more travel for court hearings and higher costs and expenses to counsel. Moreover, one of the firms representing the class, Goodwin Proctor, did not seek to recoup its costs and expenses in the first fee petition. It does now and is entitled to receive them.

Class Counsel has also explained the reasons that counsel traveled to and stayed in Washington, DC instead of Baltimore and has reduced the claimed meal expenses to $25 per meal, which is more than reasonable. They have also provided an explanation for the need, on one occasion, for one attorney to travel to Florida instead of his home office—an expense they ultimately removed from their request. In totality, then, this Court finds the claimed fees and costs, as reduced, to be reasonable and will award $3,704.61.

## III. CONCLUSION

For the reasons set forth above, Plaintiffs' second motion for attorneys' fees and costs, ECF 505, will be granted in part and denied in part. Fees in the amount of $160,823.09 and costs and expenses in the amount of $3,704.61 will be awarded by separate order in accordance with this memorandum opinion.

Dated: September 8, 2026

/s/
Stephanie A. Gallagher
United States District Judge