**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| J.O.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>Defendants. | Civil Action No.<br>8:19-CV-01944-SAG |

**CLASS COUNSEL'S REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO <u>ENFORCE SECTION III.H OF THE SETTLEMENT AGREEMENT</u>**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Defendants Have No Valid Excuse for Failing to Join or Non-Oppose Class Member Motions for Administrative Closure .......... 2

B. Defendants' Motions to Re-calendar Class Members' Administratively Closed Removal Proceedings Conflict With the Plain Language of the Settlement Agreement .......... 9

C. Defendants' Arguments to Justify Opposition to Class Members' Termination or Dismissal Motions Conflict With the Plain Language of the Settlement Agreement .......... 11

D. Class Counsel's Motion Is Not Premature or Moot .......... 13

III. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C.J. v. Hermosillo*,
No. 2:25-CV-02486-DGE, 2026 WL 73857 (W.D. Wash. Jan. 9, 2026)....................................6

*Adventist Healthcare, Inc. v. Behram*,
322 A.3d 1 (Md. 2025) ....................................................................................................10, 12

*Matter of Avetisyan*,
25 I&N Dec. 688 (BIA 2012) ....................................................................................................4

*Calomiris v. Woods*,
727 A.2d 358 (Md. 1999) ..........................................................................................10, 12

*Cheek v. United Healthcare of Mid-Atl., Inc.*,
835 A.2d 656 (Md. 2003) ..........................................................................................................9

*Matter of Cruz-Valdez*,
28 I&N Dec. 326 (A.G. 2021) ....................................................................................................4

*Garcia-DeLeon v. Garland*,
999 F.3d 986 (6th Cir. 2021) ......................................................................................................4

*Goodman v. Resol. Tr. Corp.*,
7 F.3d 1123 (4th Cir. 1993) ..................................................................................................10, 11

*Hernandez-Serrano v. Barr*,
981 F.3d 459 (6th Cir. 2020) ......................................................................................................4

*Lithko Contracting, LLC v. XL Ins. Am., Inc.*,
318 A.3d 1221 (Md. 2024) ..........................................................................................................7

*Lovo v. Miller*,
107 F.4th 199 (4th Cir. 2024) .......................................................................................................7

*Martz v. Day Dev. Co., L.C.*,
35 F.4th 220 (4th Cir. 2022) .........................................................................................................6

*Romero v. Barr*,
937 F.3d 282 (4th Cir. 2019) ........................................................................................................3

*Scotland Mem'l Hosp., Inc. v. Integrated Informatics, Inc.*,
No. CIV. 1:02CV00796, 2003 WL 151852 (M.D.N.C. Jan. 8, 2003).......................................7

*Texas v. DOJ*,
No. 7:26-CV-00070-O, 2026 WL 1803245 (N.D. Tex. June 22, 2026) ....................................3

*Matter of W-Y-U-*,
27 I&N Dec. 17 (BIA 2017) ..........................................................................................4

*Wheeler v. Badders*,
C-03-CV-23-002736, 2025 WL 3227720 (App. Ct. Md. Nov. 19, 2005) ...............................10

*Williams v. Pro. Transp. Inc.*,
294 F.3d 607 (4th Cir. 2002) ........................................................................................10

**Other Authorities**

8 C.F.R. § 1003.18(c)(3)(i) ..............................................................................................8

# I. INTRODUCTION

Class Counsel seek to enforce Section III.H of the Settlement Agreement to hold Defendants to their agreement to join or non-oppose Class Members' motions for administrative closure and termination of their immigration court proceedings. Defendants' violations have forced numerous Class Members to face active removal proceedings while awaiting USCIS's exercise of initial jurisdiction, an outcome Section III.H is designed to prevent. Defendants' excuses for their violations should be rejected.

The Settlement Agreement mandates that DHS "will join-or non-oppose Class Members' motion(s) for administrative closure . . . unless unavailable under controlling law." ECF No. 199-2 at 9, Section III.H. Contrary to Defendants' assertion, administrative closure remains available under controlling Board of Immigration Appeals (B.I.A.) precedent, despite vacatur of 2024 regulations, as confirmed by a recent immigration court decision granting administrative closure after vacatur of those regulations. Defendants also seek to rewrite the Settlement Agreement to allow DHS discretion to oppose Class Members' motions for administrative closure—the Settlement Agreement provides DHS no such discretion, and Defendants should not be allowed to import language from a different sentence of Section III.H that does not relate to administrative closure motions.

Defendants have no valid excuse for DHS's motions to recalendar Class Members' proceedings that were administratively closed. Defendants are, in effect, arguing that the Settlement Agreement allows them to pull the proverbial rug out from under a Class Member, so long as they don't oppose allowing a Class Member to have the rug in the first place. Defendants' recalendaring of the administratively closed removal proceedings of Class Members does exactly that—undoing Defendants' joinder or non-opposition of Class Members' motions that the Settlement Agreement requires—thereby rendering the promises of Section III.H wholly illusory.

Defendants also seek to rewrite the Settlement Agreement to allow them unfettered discretion to oppose a Class Member's motion to terminate, despite the agreement's mandate that DHS must "generally join or non-oppose" such motions. On this issue, Defendants seek to expand the exception (opposing termination motions in discrete circumstances), such that it swallows the general rule.

Finally, Defendants' lead argument that Class Counsel's motion is either premature or moot is completely misplaced. The Settlement Agreement provides that Class Counsel may seek individual and class-wide relief upon a violation of the agreement. Here, Class Counsel seeks both individual relief for Class Member ACH and class-wide relief. Defendants assert that the issues are moot with respect to Class Member ACH because administrative closure is not available; that is simply not correct, because immigration court judges still can (and recently have) granted administrative closure.

## II. ARGUMENT

### A. Defendants Have No Valid Excuse for Failing to Join or Non-Oppose Class Member Motions for Administrative Closure

Defendants offer two excuses for their failure to comply with the Section III.H provision on motions for administrative closure—(1) that administrative closure is "not available in any jurisdiction"; and (2) that the Settlement Agreement does not "guarantee unconditional administrative closure to class members." ECF No. 659 at 14-23. The first assertion is flat out wrong as a matter of fact and law, and the second is a gross misreading of the Settlement Agreement.

#### 1. Administrative Closure Remains Available Under Controlling Law

The Settlement Agreement provides that "DHS will join or non-oppose Class Members'

motion(s) for . . . administrative closure unless unavailable under controlling law in a particular jurisdiction." ECF No. 199-2 at 9. Defendants' claim that "[a]dministrative closure is . . . not available in any jurisdiction," ECF No. 659 at 15, is wrong. As an initial matter, during the June 30, 2026 meet-and-confer regarding Defendants' opposition to A.C.H.'s motion for administrative closure, Defendants did not take the position that administrative closure is unavailable. Their opposition to the instant Motion is the first time they have made this unsupported claim.[1] And while Defendants' opposition repeatedly cites the June 22, 2026 judgment in *Texas v. DOJ*, No. 7:26-CV-00070-O, 2026 WL 1803245 (N.D. Tex. June 22, 2026),[2] they fail to supply a single source of authority for what the "controlling law" on administrative closure is in the wake of the *Texas* decision's vacatur of the 2024 regulations that, in their view, makes administrative closure now unavailable. In fact, administrative closure was available for decades before the 2024 regulations were promulgated. *See Romero v. Barr*, 937 F.3d 282, 296-97 (4th Cir. 2019) (also concluding that regulations in effect at that time "unambiguously confer upon IJs and the BIA the general authority to administratively close cases").

---

[1] Nor could the June 22, 2026 Texas court judgment possibly provide an excuse for DHS's oppositions to administrative closure that occurred ***before*** that date, as in the case of A.C.H. himself.

[2] The two-page final judgment in the Texas case was issued on the same day that the state of Texas filed the lawsuit, and only after the plaintiff state of Texas and defendant Department of Justice (the same agency that had promulgated the regulations just two years before) filed a joint motion asking the court to vacate the regulations. This is not the first time the Department of Justice has used the Northern District of Texas court to achieve "[o]ne-[d]ay [o]rders." Zach Montague & Mattathias Schwartz, *How Trump's Policy Agenda Runs Through One Federal Court, in Texas*, N.Y. Times, Aug. 30, 2026, https://www.nytimes.com/2026/08/30/us/politics/texas-judge-trump-agenda.html. As of this filing, the *Texas* decision is on appeal at the Fifth Circuit, in a challenge brought by proposed intervenors who argue, *inter alia*, that the judgment unlawfully bypassed the APA's required notice-and-comment procedures and that the court lacked jurisdiction because there was no "controversy" between the parties, given the collusive settlement agreement. Ex. I (Intervenor's Motion); Ex. J (Notice of Appeal).

Contrary to Defendants' claim, even without the 2024 regulations, administration closure is available under controlling law—*i.e.* precedential decisions issued by the attorney general and the Board of Immigration Appeals (BIA). The "controlling law" on administrative closure that existed immediately prior to the 2024 regulations vacated in the *Texas* decision includes an attorney general decision, *Matter of Cruz-Valdez*, 28 I&N Dec. 326 (A.G. 2021), which has not been vacated or otherwise overturned. In *Cruz-Valdez*, the attorney general overruled a short-lived attorney general opinion issued three years earlier that had stripped immigration judges of general administrative closure authority. In overturning that 2018 decision, the *Cruz-Valdez* decision restored administrative closure authority nationwide, and it directed immigration judges and the BIA to apply the standard for administrative closure found in two BIA precedent decisions, *Matter of Avetisyan*, 25 I&N Dec. 688 (BIA 2012), and *Matter of W-Y-U-*, 27 I&N Dec. 17 (BIA 2017). Thus, regardless of the status of the litigation surrounding the 2024 administrative closure regulations, administrative closure is "[]available under [the] controlling law" of *Cruz-Valdez*,[3] *Avetisyan*, and *W-Y-U-*.

Indeed, Class Counsel is aware of administrative closure grants since the vacatur of the 2024 regulations. In the case of Class Member N.A.R., whose case Class Counsel raised in the opening brief as an example of a DHS motion to recalendar in violation of Paragraph III.H, ECF No. 648-2 at 16, the immigration judge administratively closed N.A.R.'s case again on August 13,

[3] *Cruz-Valdez's* ruling restoring administrative closure nationwide applies "except when a court of appeals has held otherwise." 28 I&N Dec. at 329. In *Hernandez-Serrano v. Barr*, 981 F.3d 459, 466 (6th Cir. 2020), a divided panel of the Sixth Circuit concluded that the then-existing regulations did not confer general administrative closure authority on IJs and the BIA. The Sixth Circuit has not yet addressed the availability of administrative closure for young people pursuing asylum before USCIS. *Cf. Garcia-DeLeon v. Garland*, 999 F.3d 986, 990 (6th Cir. 2021) (concluding that administrative closure was authorized for noncitizen applying for a provisional unlawful presence waiver with USCIS).

2026, citing *Romero v. Barr*, 937 F.3d 282 (4th Cir. 2019), after having recalendared the case and received additional briefing from the parties. Ex. K. In a different immigration court decision denying a DHS motion to recalendar administratively closed proceedings issued on July 19, 2026, the immigration judge acknowledged that the "U.S. District Court of the Northern District of Texas vacated the 'Administrative Closure Rule,'" but noted that the case had not been administratively closed pursuant to that rule but instead pursuant to "precedential Board decisions, which remain binding on this Court." Ex. L at 1-2 (citing to BIA administrative closure precedents including *Avetisyan* and *W-Y-U-*). In short, administrative closure remains very much available, despite Defendants' argument otherwise.

Perhaps recognizing the weakness of their claim that the *Texas* district court decision vacating the 2024 regulations somehow also wiped out all pre-existing administrative closure authority, Defendants resort to an even more tenuous fall-back assertion: that the Department of Justice's litigation position in an unrelated lawsuit is "controlling law." ECF No. 659 at 15 ("But regardless of the status of the Texas litigation over the 2024 rule, the Department of Justice has concluded that administrative closure is unlawful absent statutory authorization, and thus administrative closure is unavailable under controlling law in any jurisdiction."). This is an absurd argument and should be summarily rejected. The plain meaning of "controlling law" refers to binding legal authority (*i.e.* statute, regulations, or precedential agency decision), not merely a government party's position "announced" in collusive litigation.

### 2. Defendants Misconstrue the Settlement Agreement

Defendants' interpretation of the Settlement Agreement should also be rejected. Defendants misconstrue the fifth sentence of Section III.H as granting them broad discretion to oppose motions by Class Members to administratively close their immigration proceedings, in clear contrast with the Settlement Agreement as well as findings in at least one other court. *See*

*A.C.J. v. Hermosillo*, No. 2:25-CV-02486-DGE, 2026 WL 73857 (W.D. Wash. Jan. 9, 2026). Defendants' strained argument that they possess broad discretion to oppose any and all motions filed by Class Members, including a motion for administrative closure, ignores basic principles of contract interpretation and grammatical conventions. To achieve this interpretation, Defendants seek to interpret a single sentence in isolation, outside the broader context of Section III.H or the Settlement Agreement, to argue that Section III.H does not mean what the plain language states or, in the alternative, that Section III.H is ambiguous and that extrinsic evidence reveals a different meaning. Both arguments should be rejected.

As an initial matter, as explained in Class Counsel's opening brief, the plain language of Section III.H is unambiguous—Defendants have no discretion in whether to join or non-oppose motions by Class Members to administratively close their immigration proceedings in order to await USCIS' exercise of Initial Jurisdiction over their asylum claims. *See* ECF No. 649-2 at 17-20. As the Court stated, "[u]nless the language of the contract is ambiguous, [courts] interpret it based on what a reasonable person in the position of the parties would have understood the language to mean and not the subjective intent of the parties at the time of formation." ECF No. 619 (quoting *Tapestry, Inc. v. Factory Mut. Ins. Co.*, 286 A.3d 1044, 1053 (Md. 2022)). When interpreting a contract, courts "must focus initially on the text within the four corners of the agreements at issue to determine what a reasonably prudent person would have understood as to their meaning and give effect to that meaning." *Martz v. Day Dev. Co., L.C.*, 35 F.4th 220, 225 (4th Cir. 2022). Yet Defendants encourage this Court to do the opposite—by looking only at the second and fifth sentences of III.H while ignoring all language between them.

The Settlement Agreement was negotiated by counsel who understood how to indicate where discretion may and may not be exercised. Consistent with contract interpretation

conventions, the parties chose the command "will" to indicate instances where Defendants were not afforded discretion—joining or non-opposing motions for administrative closure. ECF No. 199-2 at 9 (emphasis added); *Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024); *Scotland Mem'l Hosp., Inc. v. Integrated Informatics, Inc.*, No. CIV. 1:02CV00796, 2003 WL 151852, at *4 n.5 (M.D.N.C. Jan. 8, 2003). In contrast, where discretion may be exercised, the parties agreed to the phrases "[n]othing in this provision prevents…" or "will generally," granting Defendants at least some discretion when Defendants "fil[e] a motion to dismiss or terminate removal proceedings," as well as when Defendants "join or non-oppose Class Members' motion(s) to dismiss or terminate" removal proceedings. ECF No. 199-2 at 9 (emphasis added). The next sentence states that "Defendants retain discretion to oppose Class Members' motion(s) if it deems such opposition warranted . . . as long as DHS's opposition is not based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application." *Id.* Thus, when reading Section III.H as a whole, a reasonable person would ***not*** interpret the fifth sentence as modifying the express command regarding administrative closures; rather, a reasonable person would recognize this as a limitation on the discretion afforded in the immediately preceding sentence, *i.e.*, regarding Defendants' obligation to "generally join or non-oppose Class Members' motion(s) to dismiss or terminate[.]" ECF No. 199-2 at 9.

Further, nothing in Class Counsel's interpretation renders other provisions superfluous, and Class Counsel's interpretation is consistent with the broader Settlement Agreement when read "in context." *Lithko Contracting, LLC v. XL Ins. Am., Inc.*, 318 A.3d 1221, 1230 (Md. 2024). Contrary to Defendants' assertion, the understanding of the word "will" as a command to join or non-oppose motions seeking administrative closure does not negate Section III.K. Defendants recognize that Section III.H's second sentence only applies where the Class Member's motion is

"in order to await USCIS exercise of Initial Jurisdiction," which is consistent with, rather than opposed to, the requirements of Section III.K. Likewise, as explained above, the interpretation of "will" to indicate Defendants lack discretion is entirely consistent with the fifth sentence of Section III.H, which places limits on the instances where Defendants may exercise discretion as described in the immediately preceding fourth sentence.

To the extent Section III.H is deemed to be ambiguous, which Class Counsel maintains it is not, extrinsic evidence does not support Defendants' position. Defendants point to the federal regulations in place at the time the parties entered into the Settlement Agreement, ECF No. 659 at 20-21, which provided factors for immigration judges to consider when deciding whether to administratively close proceedings. 8 C.F.R. § 1003.18(c)(3)(i)(A-H). According to Defendants, DHS is not allowed to ignore those factors. ECF No. 659 at 21. That is simply not true. The regulations provided factors an ***immigration judge*** must consider, not mandatory factors for DHS to evaluate. Further, the regulations explicitly mandate that an immigration judge "shall grant a motion to administratively close or recalendar filed jointly by both parties, or filed by one party where the other party has affirmatively indicated its non-opposition, unless the immigration judge articulates unusual, clearly identified, and supported reasons for denying the motion." 8 C.F.R. § 1003.18(c)(3)(i). In short, contrary to Defendants' argument, the regulations in fact do allow DHS to unconditionally join or non-oppose Class Member's motions to administratively close.

Ultimately, the parties were represented by competent counsel during the negotiation of the Settlement Agreement. The parties understood how terminology could grant or deny Defendants the opportunity to exercise discretion. Yet Defendants now request that the Court ignores these intentionally-chosen words. The Court should reject this unreasonable approach.

### B. Defendants' Motions to Re-calendar Class Members' Administratively Closed Removal Proceedings Conflict With the Plain Language of the Settlement Agreement

Under Defendants' view, the Settlement Agreement allows them to immediately move to recalendar a Class Member's proceedings after they are administratively closed. As this Court has previously acknowledged, allowing Defendants to undo or avoid their obligations under the Settlement Agreement "render[s] Defendants' promises illusory, a construction that violates the illusory promises doctrine… [and] undermines the implied duty of good faith and fair dealing incorporated in every contract." ECF No. 253 at 10; *see also Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 662 (Md. 2003). Defendants' repeated motions to recalendar administratively closed removal proceedings of Class Members does exactly that—undoing Defendants' joining or non-opposing of Class Members' motions as required under the Settlement Agreement—thereby rendering the promises of Section III.H wholly illusory. Thus, contrary to Defendants' representation, Class Counsel does not seek to impose new obligations upon Defendants, but rather seeks to ensure that Defendants' obligations are not illusory.

As explained in more detail above, Defendants fundamentally misconstrue the Settlement Agreement to allow for the exercise of discretion in joining or non-opposing motions for administrative closure. *Supra* § II.A.2. Such discretion does not exist, and therefore Defendants' assertion that seeking recalendaring does not undermine Defendants' Section III.H obligations is incorrect. Defendants' interpretation of Section III.H's goals as limited to only the first sentence of the provision, in effect limiting Section III.H's obligations only to preventing Defendants from disputing USCIS's initial jurisdiction, similarly distorts the Settlement Agreement. It is well established that "contract terms must be construed to give meaning and effect to every part of the contract, rather than leave a portion of the contract meaningless or reduced to mere surplusage"

(*Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993)). Defendants' arbitrary limitation directly violates this principle and renders five sentences utterly meaningless.

While Class Counsel acknowledges that the term "recalendar" does not appear within the Settlement Agreement, that does not give Defendants free reign to move to recalendar Class Member proceedings, as doing so would undo Defendants' affirmative obligations. Maryland courts are clear that, even absent the express provision of an explicit obligation, the taking of actions that nullify or frustrate a settlement agreement's purpose is still a violation of said agreement. *Adventist Healthcare, Inc. v. Behram*, 322 A.3d 1, 12-13 (Md. 2025) (holding that "a reasonable person in the position of the parties" would have understood that Defendant's obligation under the settlement agreement precluded Defendant from taking contradictory actions, regardless of the "absence of language in the Agreement"); *Wheeler v. Badders*, C-03-CV-23-002736, 2025 WL 3227720, at *3-5 (App. Ct. Md. Nov. 19, 2005) (citing *Calomiris v. Woods*, 727 A.2d 358, 366 (Md. 1999) ("[C]ourts should avoid interpreting contracts so as to nullify their express terms."). The Fourth Circuit has likewise held that actions that undermine the goals of a settlement agreement constitute breaches of said agreement. *Williams v. Pro. Transp. Inc.*, 294 F.3d 607 (4th Cir. 2002). Such actions render the promises given illusory. ECF No. 253 at 10.

Defendants' argument premised on Section III.K is equally unavailing, as Class Counsel's interpretation does not "nullify" Section III.K's express terms. *Calomiris*, 727 A.2d at 366. First, Section III.H is clear that Defendants are required to join or non-oppose motions for administrative closure made by Class Members only "in order to await USCIS exercise of Initial Jurisdiction." ECF No. 199-2 at 9. Therefore, in having previously joined or non-opposed administrative closure motions, Class membership has most likely already been established. To the extent Defendants are unclear as to whether an individual is a Class Member, nothing in the Settlement Agreement

prevents Defendants from informing said individual of DHS's intent to move to recalendar absent a showing of Class Membership. This would not shift the burden of proof allegedly established by Section III.K to Defendants. Second, contrary to Defendants' suggestion of nullification, barring motions to recalendar would have no bearing on Section III.K. If Class Members desire Defendants' joinder or non-opposition to administrative closure, they must offer proof of Class Membership. But if Defendants wish to move to recalendar, which is the opposite of administrative closure, then Defendants can confirm the opposite: that the motion does not impact a protected Class Member. Section III.K does not place the burden on Class Members to ensure Defendants do not violate the Settlement Agreement when Defendants file motions.

Finally, Defendants seek to present Class Counsel's proposed remedy as a rewriting of the Settlement Agreement. It is not. Nothing Class Counsel has requested of the Court changes the obligations created under the Settlement Agreement; rather, Class Counsel seeks only for the Court to enforce the Settlement Agreement as written and properly construed.

### C. Defendants' Arguments to Justify Opposition to Class Members' Termination or Dismissal Motions Conflict With the Plain Language of the Settlement Agreement

Defendants also seek interpret the fifth sentence of Section III.H to grant Defendants broader discretion than written with respect to motions to terminate. Under Defendants' view, Defendants may oppose any motion by a Class Member for termination of their immigration proceedings, for any reason, even if it is a reason that is legally irrelevant and would apply to all Class Members so long as that "opposition is not based, in whole or in part, on a position that USCIS does not have Initial Jurisdiction over the Class Member's asylum application." ECF No. 659 at 24. Yet, this interpretation falls apart when the sentence is read within the context of the Settlement Agreement as a whole. *Goodman*, 7 F.3d at 1127. The fifth sentence of Section III.H serves as a limitation on Defendants' exercise of discretion, rather than a broad grant. *Supra* §

II.A.2. Indeed, to interpret the fifth sentence of Section III.H as Defendants propose would violate the basic principle of contract interpretation that language should not be interpreted in a manner that nullifies a contract's terms, as it would nullify the terms of the preceding sentence. *Calomiris*, 727 A.2d at 366. The Settlement Agreement is clear that "DHS ***will generally*** join or non-oppose Class Members' motion(s) to dismiss or terminate filed or otherwise made in order to await USCIS exercise of Initial Jurisdiction over their asylum application." ECF No. 199-2 at 9 (emphasis added). If Defendants may oppose motions to terminate in nearly all situations, as Defendants argue here and have done in practice, there is no meaning to the obligation to "will generally join or non-oppose" such motions. Yet again, Defendants' construction would render the promise of the fourth sentence illusory. ECF No. 253 at 10. In effect, Defendants' interpretation flips the Settlement Agreement's plain text on its head—the general rule should be that Defendants "will generally join or non-oppose" a motion to terminate, but under Defendants' view, the general rule is relegated to the exception.

Defendants justify their interpretation with an absurd proposition—that the Settlement Agreement allows them to oppose a motion to terminate for reasons that are not even legally relevant. ECF No. 659 at 24. Class Counsel never would have agreed to such an extreme position. Defendants next posit that the Settlement Agreement does not require them to explain the basis for their opposition to a motion to terminate. *Id.* This, too, is absurd. It is well established that a contract has implied obligations to facilitate performance, regardless of the specific language used. *Adventist Healthcare*, 322 A.3d at 12-13. In short, Defendants' arguments to this Court reinforce that they are interpreting the exception (opposing a motion to terminate in narrowly defined circumstances) to swallow the general rule ("will generally join or non-oppose").

**D. Class Counsel's Motion Is Not Premature or Moot**

Defendants' assertion that Class Counsel's motion is either premature or moot is entirely without merit. The Settlement Agreement provides that, "[i]n the event of an alleged noncompliance with th[e] Settlement Agreement" that cannot be resolved after a meet and confer to resolve the dispute informally, then "the complaining Class Member(s) may move to enforce the Agreement on an individual basis before the Court and Class Counsel may elect to move to enforce the Agreement on an individual or class-wide basis before the Court." ECF No. 199-2 at 14, § V.D. Class Counsel has complied with Section V.D.

Defendants agree that Class Counsel's motion is not premature at least with respect to the violations against Class Member A.C.H. ECF No. 659 at 10. Rather, according to Defendants, Class Counsel's arguments are moot with respect to any Class Member (including A.C.H.) because "administrative closure is not available in any jurisdiction." *Id.* at 15-16. That is flatly incorrect because, as discussed at length above, administrative closure remains available under controlling law. *Supra* § II.A.1. Moreover, Defendants' mootness argument ignores that Class Counsel also raised Defendants' violations of Section III.H of the Settlement Agreement by failing to join or non-oppose A.C.H.'s motion for termination. Accordingly, Class Counsel's motion is not premature or moot for Class Member A.C.H.

Defendants' assertion that the violations alleged by other Class Members are not yet ripe also misses the mark, because the Court may order class-wide relief in view of the violations against one Class Member. ECF No. 199-2 at 14, § V.D. Class Counsel does not have to wait until each of these violations become ripe in order to seek class-wide relief. In any case, these additional violations further underscore the need for the Court's intervention.

Finally, Defendants claim that Class Counsel's arguments regarding motions to recalendar are moot because the immigration court proceedings of Class Members J.M.L. and B.M.L. were

terminated. ECF No. 659 at 11. Again, Defendants ignore that the Settlement Agreement allows Class Counsel "to move to enforce the Agreement on an individual or class-wide basis before the Court." ECF No. 199-2 at 14, § V.D. While relief for Class Members J.M.L. and B.M.L. may be moot, class-wide relief is not.

## III. CONCLUSION

For all of the above reasons, and as set forth in Class Counsel's Opening Brief, Defendants have repeatedly violated Section III.H of the Settlement Agreement in numerous Class Members' cases. The Court should order Defendants to remedy their multiple violations in Class Member A.C.H.'s case, and should order adherence to the parameters for Defendants' conduct in removal proceedings set forth in Section III.H.

Dated: September 15, 2026

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Adam J. Horowitz*
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Phone: 212-813-8800
Fax: 212-355-3333
AHorowitz@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20009
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project
30 S. 10th Street (c/o University of St. Thomas Legal Services Clinic)
Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publicccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Attorneys for Plaintiffs*

*Admitted *pro hac vice*