**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

J.O.P., *et al.*,

Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*

Defendants.

Case No. 8:19-cv-01944-SAG

**DEFENDANTS' MOTION TO CLARIFY COURT'S JULY 29, 2026 ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(a)**

On July 29, 2026, the Court granted in part Plaintiff's third motion to enforce, found Defendants in civil contempt, and required Defendants to, among other provisions, issue "written guidance to all ICE personnel nationwide regarding the obligations" of the Court's order. Dkt. No. 642 ("July 2026 Order") at 2. Since that July 2026 Order, Defendants have issued two broadcasts to all ICE personnel nationwide each month. *See* Dkt. Nos. 646, 653, 674, 700, 711. The first broadcast goes to ICE ERO employees, reaching "the personnel who work with these issues." Ex. A, Declaration of Shohel Mollah ("Mollah Decl.") ¶ 7. The second broadcast—which originates from the office of the ICE Director—goes to each of ICE's 20,000 personnel,[1] the vast majority of whom have no involvement with *JOP*. This broadcast does nothing more than link to the ICE ERO broadcast. *See* Mollah Decl. ¶ 6.

[1] ICE "has more than 20,000 law enforcement and support personnel in more than 400 offices in the United States and around the world," *U.S. Immigration and Customs Enforcement*, https://www.ice.gov/about-ice (last visited Oct. 14, 2026), including Homeland Security Investigations, which employs "more than 8,700 employees" around the world, as well as non-enforcement offices, such as the Chief Financial Officer and Management and Administration. All personnel in these offices receive the ICE broadcast, regardless of the office or employee's role in complying with this Court's July 2026 order.

Federal Rule of Civil Procedure 60(a) allows courts to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." *Sartin v. McNair Law Firm PA*, 756 F.3d 259, 265 (4th Cir. 2014). A mistake arising from oversight or omission may "occur[] when there is an inconsistency between the text of an order or judgment and the district court's intent when it entered the order or judgment" or "an unintended ambiguity that obfuscates the court's original intent." *Id.* at 265–66. Thus, Rule 60(a) is "not confined just to fixing typographical and other clerical errors." *Id.* at 265; *see also Garamendi v. Henin,* 683 F.3d 1069, 1079 (9th Cir. 2012) ("Rule 60(a) allows for clarification and explanation, *consistent with the intent of the original judgment,* even in the absence of ambiguity, if necessary for enforcement") (emphasis added). "[T]he court's original intent 'may be ascertained through consideration of contemporaneous documents, such as a memorandum opinion or transcript, and by the presiding judge's own subsequent statements regarding his intent.'" *Sartin*, 756 F.3d at 266 (quoting *Rhodes v. Hartford Fire Ins. Co*., 548 F. App'x 857, 860 (4th Cir. 2013)).

Defendants ask the Court to clarify that, in ordering ICE to issue "written guidance to all ICE personnel nationwide regarding the obligations" under the Court's July 2026 Order, the Court's intent was to provide ICE with discretion to determine *which* personnel were responsible for the obligations in the Court's July 2026 order, and thus which personnel should receive the monthly broadcast. This conclusion is supported by the order itself and the accompanying Memorandum Opinion, Dkt. No. 641 ("Memo. Op.").

First, the limited nature of the July 2026 Order indicates that the Court intended for ICE to have discretion regarding distribution of the guidance. The July 2026 Order provides that the monthly guidance applies only to "parts 3.a–3.c" of the order. Those parts, in turn, provide:

a. If any system alerts signifying an individual's potential *J.O.P.* Class membership are present in an individual's records in ICE's systems, or if an individual is identified to ICE as a potential *J.O.P.* Class Member by any other means (including, but not limited to, USCIS's compiled lists of potential Class Members, self-identification, or identification by counsel), ICE must refrain from removing the individual unless and until USCIS adjudicates their asylum application on the merits or the USCIS Asylum Office confirms the individual is not a Class Member.
b. For any individual identified to ICE as a potential *J.O.P.* Class Member by any means (including, but not limited to, USCIS's compiled lists of potential Class Members, self-identification, or identification by counsel) for whom a system alert—in the form of a banner, case comment, "Special Class" entry, or any other form Defendants elect to employ for purposes of such identification subsequent to issuance of this Order—does not already exist in ICE's systems at the time of identification, ICE must enter an alert in its systems as promptly as possible, and in all instances within no more than two business days after the individual is identified to it as a potential *J.O.P.* Class Member;
c. ICE must, for any individual for whom it seeks to execute a final removal order, affirmatively and specifically review, prior to removal, the individual's EARM records (both active and closed) for any entries Defendants have employed, currently employ, or, elect to employ subsequent to issuance of this Order (to the extent elected) as signifiers of an individual's potential membership in the *J.O.P.* Class, including, but not limited to, banners, case comments, and "Special Class" entries.

July 2026 Order 1–2. These obligations relate to particular functions within ICE. Part (a) relates to executing orders of removal. ICE ERO is responsible for that function within ICE. Part (b) relates to implementing alerts in EARM, which is "a case management system for ERO." Hr'g Tr. vol. I, 13, March 19, 2026. Inputting those alerts is primarily handled by the National Case Management Unit, an office within ICE ERO. *Id.* at 10, 19–21. (discussing NCMU's role in receiving a list of potential class members from USCIS and adding entries to EARM). Finally, Part (c) explains the requirements for searching EARM prior to executing an order of removal—again, a function performed by ICE ERO. The personnel responsible for carrying out the responsibilities "regarding the obligations" in the Order are thus limited and do not implicate "all ICE personnel nationwide." July 2026 Order 2.

Second, the Court's Memorandum Opinion accompanying the July 2026 Order supports the conclusion that the Court intended to allow ICE to refine which employees would receive the guidance. "[T]he court's original intent 'may be ascertained through consideration of contemporaneous documents, such as a memorandum opinion or transcript . . . .'" *See Sartin*, 756 F.3d at 266. In its Memorandum Opinion, the Court recognized "Defendants' proven capability of disseminating written guidance to their personnel." Memo. Op. 64. This "proven capability" includes Defendants' ability to know which parts of its workforce are responsible for implementing the Court's orders. Exercising this "proven capability," ICE initially distributed the broadcast to all ICE employees—a broadcast that will remain accessible to all ICE employees. Mollah Decl. ¶ 5. Future monthly broadcasts from the ICE Director to each of ICE's nearly 20,000 employees who are not responsible for implementing *JOP* are redundant, *see id.* ¶ 6, and are likely to cause confusion among the ICE workforce. "The broadcast sent to all ICE employees does nothing more than direct ICE personnel to the All ERO broadcast." *Id.*

The Court's July 2026 Order and accompanying Memorandum Opinion reinforce that the Court's original intent was to allow ICE to determine which personnel should receive the broadcast. For future broadcasts, this would include ICE ERO, which includes the ICE employees responsible for entering "prompt entries in ICE's systems after identification as a potential Class Member." Memo Op. 64 n.42 (discussing testimony from ICE NCMU Chief Nichols). The alternative—mandatory continued ICE-wide broadcasts to personnel who have no role in implementing the "obligations ordered in items 3.a–3.c . . . in the context of describing ICE's obligations under Section III.I of the Settlement Agreement"—does not comport with the Court's Order or Memorandum Opinion. July 2026 Order 2.

Accordingly, this Court should grant this motion and issue an order clarifying that ICE has discretion to issue the monthly broadcast messages to those employees responsible for implementing sections 3.a–3.c of the Court's July 29, 2026 Order.

DATED: October 15, 2026

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANTHONY NICASTRO
Director

CATHERINE M. RENO
Assistant Director

RUTH ANN MUELLER
Senior Litigation Counsel

EVAN P. SCHULTZ
LARISSA K. JOHNSON
JAIME A. SCOTT
JEFFREY ALDERETTE
Trial Attorneys

ANDREA GARCIA
Law Clerk

*\/s/ Mia S. Bonadies*
MIA S. BONADIES
Trial Attorney (MN Bar: 0506350)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
Telephone: (202) 532-5965
Mia.S.Bonadies@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2026, I served an electronic copy of the foregoing on counsel for the Plaintiffs via the Court's CM/ECF system.

*/s/ Mia S. Bonadies*
MIA S. BONADIES
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

*Counsel for Defendants*

# EXHIBIT A