**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| J.O.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>Defendants. | Civil Action No.<br>8:19-CV-01944-SAG |

**CLASS COUNSEL'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION <u>TO AMEND PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)</u>**

# TABLE OF CONTENTS

**Page**

**I. BACKGROUND ....................................................................................1**

**II. ARGUMENT......................................................................................6**

**III. CONCLUSION ..................................................................................9**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boryan v. United States*,
884 F.2d 767 (4th Cir. 1989) ....................................................................................8

*Forquer v. White*,
2016 WL 7239722 (D. Md. Dec. 15, 2016).................................................................6

*Pacific Ins. Co. v. American Nat. Fire Ins. Co.*,
148 F.3d 396 (1998)....................................................................................................6

*Stiers v. Martin*,
277 F.2d 737 (4th Cir. 1960) ....................................................................................8

**Other Authorities**

Fed. Rule of Civil Proc. 59(e) ..........................................................................1, 6, 8

Fed. Rule of Civil Proc. 60(b)...........................................................................................6

Defendants stand in contempt of three Court orders for their second unlawful removal of Class Member E.L.A. To add insult to injury, Defendants removed E.L.A. without returning the documents and property he had when he entered ICE custody. Defendants now ask to be relieved from the Court's order to return that property. Invoking Rule 59(e) of the Federal Rules of Civil Procedure, Defendants package their belated and self-serving conclusion that the property cannot be found as "new evidence." But Defendants themselves created the circumstances that they now call "new evidence," and the record does not support a conclusion that they exhausted a reasonable search. Although the value of E.L.A.'s property may seem modest, that is not true from E.L.A.'s standpoint, and the items include basic necessities like a phone and his identity documents. Defendants should not be allowed to wrongly remove him twice, take his property, and then be absolved of any responsibility. Defendants' request should be denied, and Defendants should be ordered to continue their search and to provide updates to this Court and Class Counsel on exactly what steps they have taken, and what steps they will take, to search for E.L.A.'s property.

## I. BACKGROUND

On August 7, 2026, Defendants returned E.L.A. to the United States to remedy an unlawful removal, only to remove him a second time on September 1, 2026, in contempt of this Court's orders. ECF No. 715; *see* ECF Nos. 205, 254, 642. On his return flight to the United States, E.L.A. carried a black backpack containing a passport, national identity card, birth certificate, $150 in cash, clothing, cologne, a pair of white Jordan sneakers, and three mobile phones. Decl. of E.L.A. ¶ 4. Except for a single shirt and a badly creased passport, E.L.A. never recovered any of the identity documents, phones, cash, clothing, or other items he had carried with him or worn when he entered ICE custody on August 7. ICE confiscated those possessions during processing at the Alexandria Staging Facility on August 7, 2026, and he never saw them again. *Id.* ¶ 5.

Once at the Jackson Parish Corrections Center, ICE discarded most of the clothing he was wearing, except a single burgundy-colored shirt that an officer bagged and labeled with his name for eventual return to him. *Id.* ¶ 8. On the morning of September 1, 2026 Jackson Parish awoke him and others after 1:00 a.m. Officers showed E.L.A. the plastic bag containing his shirt, and asked him to sign a document, telling him that he was being transferred to another detention facility. *Id.* ¶ 9-10. ICE then bussed E.L.A. to the Alexandria Staging Facility to board a flight to San Salvador, El Salvador. *Id.* ¶¶ 11-14. Once he cleared immigration checks at the migrant center, he was left with nothing but the detention-issued clothing he was wearing, the burgundy shirt ICE had bagged for him, and a passport so beat up he thought it was an old, previously confiscated passport. *Id.* ¶¶ 14-15, 17. With no money and no phone, E.L.A. used a stranger's phone to call family members who hired a taxi to take him from the migrant center. *Id.* ¶ 18. E.L.A. purchased a new phone with borrowed money to communicate with his family and counsel, in the hope of returning to the United States to pursue his asylum claim and retrieve his confiscated property. *Id.* ¶¶ 19-20.

On September 4 and again on September 8, E.L.A.'s counsel team emailed ICE requesting return of his documents and property. *See* ECF No. 684 (Sept. 15 JSR) at 4. On September 4, Class Counsel also made the same request, among others, of Defendants' counsel—who waited a week to reply that the request should be directed to ICE. ECF No. 676-5 at 3.

On September 14, 2026, the Court ordered the parties to confer daily and provide daily status reports "detailing steps taken that day to facilitate ELA's return to the United States," ECF No. 681. From September 15 to 21, while Class Counsel repeatedly requested that ICE locate, secure, and return E.L.A.'s belongings, Defendants were silent as to any effort to locate and return

E.L.A.'s documents and property, focusing primarily on arguments against providing release from custody or an adjudication on the merits. ECF Nos. 684, 689, 693, 694, 700.

During the September 15 meet-and-confer, "Class Counsel informed Defendants that ELA's counsel had received no response to requests made on September 4 and September 8, raising concerns about the preservation of ELA's documents and personal property. Defendants' counsel agreed to speak with Defendants *and revert tomorrow*." ECF No. 684 at 4 (emphasis added). But at the next *four* conferences, that update never came. *See* ECF No. 689 at 3 (Defendants "agreed again" to inquire into the missing property); ECF Nos. 693, 694, 700 (no update). Faced with no progress, at the September 18 conference, Class Counsel "not[ed] the concern that with each additional day that Defendants are unable to provide an update regarding ELA's property, concern increases that Defendants have failed to secure it." ECF 694 at 3.

On September 22, Defendants' status report mentioned ELA's property for the first time, stating, "Defendants have not located E.L.A.'s property." ECF No. 704 at 1. Although Defendants reported a generic understanding that "items placed on departing planes are given either to the removed individual or the government of the country where the plane lands," *id.*, they told Class Counsel that Defendants did not know if E.L.A.'s property was in fact placed on the plane to El Salvador, *id.* at 2; ECF No. 709 at 2 (unknown if E.L.A.'s property ever left the Alexandria facility). That same day, Defendants suggested that Class Counsel inquire of an ICE ERO attaché in El Salvador, although Defendants could not say whether that individual had any relevant information. ECF No. 704 at 2, 3. Contrary to Defendants' representations (ECF No. 736 ¶ 6), the attaché denied having any information regarding E.L.A.'s property. ECF No. 709 at 2.

Class Counsel noted their "understand[ing] that ELA last saw his belongings when ICE took them from him at the Alexandria Staging Facility, before placing him on a plane." *Id.*; ECF

No. 700. This understanding was correct except in one respect: E.L.A. last saw his possessions at the Alexandria Staging Facility, but it was when he deplaned there on August 7. Decl. ¶ 5. Class Counsel asked Defendants for records of the movement of E.L.A.'s property to and from the Alexandria Staging Facility, and copies of any procedures maintained for safeguarding personal property. ECF No. 704 at 2. Defendants have not provided that information.

On September 23, Defendants again reported no progress. ECF No. 709 at 1. On September 24, Defendants offered two new representations: that they were "actively working" on updates, and that "at this point there is no indication the property is in the U.S. government's possession." ECF No. 713 at 1; ECF No. 716 at 1. Although Defendants reported having "taken numerous steps" to locate the missing property, ECF No. 713 at 1, during the parties' meet-and-confer they were unable to identify any steps taken, *see id.* at 2. In a 4:30 p.m. email that day, perhaps anticipating that their search might fail, Defendants asked for detailed descriptions and valuations of all of E.L.A.'s missing property, *id.* at 2, which Class Counsel provided less than a day later; the modest amount claimed is $2,100, Ex. 1 at 1 (Oct. 5, 2026 email).

On September 25, the parties' daily conference coincided with the Court issuing its order relating to E.L.A. Defendants stated, "Defendants do not concede that they failed to return ELA's property," ECF No. 716 at 1. While Defendants reiterated that they were "actively working" on updates, the only investigative step they reported was having emailed Class Counsel to request an inventory and valuation of the property. *Id.* at 1-2. When Class Counsel asked whether ICE "maintain[ed] a reliable inventory of the property ELA had with him when he arrived on August 7," and whether the property was "consistently stored in a way that identified it as ELA's property," Defendants could not respond. *Id.* at 2-3.

On multiple occasions—September 21, 22, 24, and 25—Defendants had no response when Class Counsel asked whether the Alexandria Staging Facility has procedures in place for safeguarding the property of persons brought to that facility, such as under the ICE National Detention Standards. ECF Nos. 700, 704, 713, 716. Not until September 29 did Defendants state that the National Detention Standards were not in use at the Alexandria facility, without specifying what procedures, if any, are in place. ECF No. 719 (public), 720 (sealed).

In their September 28 status report, Defendants declared: "ICE has reported it has exhausted its efforts to locate E.L.A.'s property *based on the information it currently has.*" ECF No. 717 at 1. Class Counsel then asked "whether this means that Defendants have stopped searching for the property, or have determined that they destroyed or gave away the property, but Defendants' counsel did not know." *Id.* at 2. During the same meeting, "Defendants' counsel also inquired if E.L.A. has tried calling any of his cell phones at any point since he last saw his property, or using any location services (*e.g.*, "Find my Phone"). Class Counsel represented they could inquire with E.L.A. on these questions." *Id.* at 1. On October 2, acting on Defendants' prompt to use locator software, E.L.A. reported seeing, but failing to capture, a search result that located his phone in Alexandria, Louisiana. The only search result E.L.A. successfully captured showed his phone's location as Louisiana generally. E.L.A. Decl. ¶ 21, Ex. A; ECF No. 740 at 3. Despite having suggested a phone locator search, Defendants disputed the significance of E.L.A.'s search results on the grounds that the software did not state whether the October 2 screenshot showed the phone's current location or merely a last known location. *Id.* Simultaneously, Defendants also held out the possibility of using a law enforcement "ping" to locate E.L.A.'s phones, but ultimately declined to do so. *Id.* Defendants also refused to review available security camera footage to search for E.L.A.'s property. ECF No. 726.

For the first time on September 29, and without specifying a timeline, Defendants represented that they "searched the locations where E.L.A. was located while in the United States and in El Salvador, and did not locate his property." ECF No. 719 at 1. On September 30, Class Counsel reported, "Although Defendants' report states that they have exhausted all reasonable efforts to locate ELA's property, during today's call Defendants' counsel stated that their clients are still looking for any records relating to their custody of ELA' property, and have not stated whether they found any such records. Class Counsel asked that Defendants produce an inventory of the property ELA had when he entered custody, if an inventory exists; and that Defendants produce any records relating to the storage and retrieval of ELA's documents, if any such records exist." ECF No. 722.

The Court should deny Defendants' motion, as Defendants have not shown that they have done a reasonable search to excuse them from complying with this Court's Order.

## II. ARGUMENT

The Court ordered Defendants to "[r]eturn to E.L.A. all of his property and documents that were removed from his person at the time of his wrongful removal." ECF No. 715 at 2. There is no dispute that they have failed to comply with the order. Rather, Defendants move under Rule 59(e) for amendment of the Court's order, "an extraordinary remedy which should be used sparingly." *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (1998).[1] Of the

---

[1] Defendants also suggest that the Court may grant their motion under Rule 60(b) based on "newly discovered evidence." But the ostensibly previously unavailable "new evidence" that Defendants proffer is not new, nor was it previously unavailable. In any case, "[t]he Fourth Circuit has held "that a motion filed under both Rule 59(e) and Rule 60(b) should be analyzed only under Rule 59(e) if it was filed no later than [28] days after entry of the adverse judgment and seeks to correct that judgment." *Forquer v. White*, 2016 WL 7239722, at *2 n.1 (D. Md. Dec. 15, 2016) (quoting *Robinson v. Wix Filtration Corp. LLC*, 559 F.3d 402, 412 (4th Cir. 2010).

three permissible bases for a motion under the Rule, Defendants rely on an asserted need "to account for new evidence not available at trial," and acknowledge their burden to "produce a legitimate justification for not presenting the evidence during the earlier proceeding," ECF No. 736 at 1. Defendants' motion should be denied because their "new evidence" is not adequate to excuse them from complying with this Court's order. At most, Defendants' "discovery" on September 28, 2026 of their own inability or unwillingness to find the lost property is a construct of their own making; it is not even evidence.

Defendants proclaim that, as of September 28, they had exhausted a "reasonable" search for E.L.A.'s property, but the record shows otherwise. Although Defendants searched unspecified areas of the Jackson Parish and Alexandria facilities, ECF No. 736-1 ¶ 5, their current stance that their search was completed on September 28 conflicts with the report filed on September 30: "[D]uring today's call Defendants' counsel stated that their clients are still looking for any records relating to their custody of ELA' property, and have not stated whether they found any such records." ECF No. 722 at 4. Moreover, Defendants' declarant provides no detail on their purported search, and instead simply states that "staff searched for ELA's property and did not locate it." ECF No. 738. Because ICE's detention standards, including those that apply to facilities holding people temporarily, such as the Alexandria Staging facility, require ICE officials and its agents to inventory and safeguard a detained person's personal property while those items remain in its custody and to return the property to the person upon their release or transfer,[2] it is unclear why Defendants are unable to provide details of their search for E.L.A.'s personal property.

---

[2] *See, e.g.*, U.S. Immigration and Customs Enforcement, National Detention Standards (2026), at 22, 37, available at https://www.ice.gov/doclib/detention-standards/2026/nds2026.pdf.

In any case, Defendants' search was not reasonable. They have not provided, or even reviewed, any inventory or records tracking the movement of ELA's property during ICE custody. They have not reviewed records documenting the storage of his property. They have not reviewed footage from security cameras at the Alexandria Staging Facility. ECF No. 726 at 2. They have not pinged E.L.A.'s phone to determine its location, ECF No. 728 at 3, despite E.LA. himself having done so and shared a screenshot showing one phone's location as Louisiana.[3] They have not conducted a law enforcement ping on E.L.A.'s cell phones. With so many options left to explore, Defendants' search is not yet reasonable or exhausted.

Furthermore, to prevail on a Rule 59(e) motion, the movant must show that the newly discovered evidence "could not with reasonable diligence have [been] discovered and produced" before the judgment. *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989); *Stiers v. Martin*, 277 F.2d 737, 737 (4th Cir. 1960). Assuming, *arguendo*, that Defendants' purported exhaustion of their search constitutes new evidence, Defendants could have reached that conclusion sooner with reasonable diligence. Starting on September 4, Defendants could have been responsive to any of the multiple written requests to locate E.L.A.'s property, and could have undertaken a search promptly instead of waiting until September 15. Defendants could have admitted early on that they lacked an inventory of the property they took from E.L.A., instead of waiting until September 24 to request one. They could have offered early on to use technology to "ping" the phones. Throughout, Defendants could have been forthcoming about the steps they took, their records (if

---

[3] On September 28, Defendants requested that E.L.A. attempt to track his phones using a locator application; the next day, Defendants revealed they were considering conducting law enforcement tracking on his phone. The screen shot E.L.A. captured on October 2 shows the state of Louisiana. Whether the screen shot suggests that E.L.A.'s phone was in Louisiana on October 2 or that its last known location is in Louisiana, it does not indicate that the phone traveled to El Salvador with E.L.A.

any) of custody of the property, and their assessment of the likelihood of finding it. Having played their hand close to the vest and shared minimal information, Defendants' assertion that the "evidence" could not have been discovered earlier rings hollow.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to strike part (3)(b) of the Court's September 25 Order. Defendants should continue their search for E.L.A.'s property, provide updates to this Court and Class Counsel on exactly what steps they have taken, and what steps they will take, to search for E.L.A.'s property.

Dated: October 23, 2026

Respectfully submitted,

*Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20036
Phone: 202-346-4000
Fax: 202-346-4444
BBurgess@goodwinlaw.com

Elaine Herrmann Blais*
Kevin J. DeJong*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: 617-570-1000
Fax: 617-523-1231
EBlais@goodwinlaw.com
KDeJong@goodwinlaw.com

Adam J. Horowitz*
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Phone: 212-813-8800
Fax: 212-355-3333
AHorowitz@goodwinlaw.com

Wendy Wylegala*
Kids in Need of Defense
252 West 37th Street, Suite 1500W
New York, NY 10018
Phone: 646-970-2913
Fax: 202-824-0702
WWylegala@supportkind.org

Michelle N. Mendez (Bar No. 20062)
National Immigration Project
1763 Columbia Road NW
Suite 175 #896645
Washington, DC 20036
Phone: 410-929-4720
Fax: 617-227-5495
Michelle@nipnlg.org

Rebecca Scholtz*
National Immigration Project of the
National Lawyers Guild
30 S. 10th Street (c/o University of St.
Thomas Legal Services Clinic)

Minneapolis, MN 55403
Phone: 202-742-4423
Fax: 617-227-5495
Rebecca@nipnlg.org

Kristen Jackson*
Public Counsel
610 South Ardmore Avenue
Los Angeles, CA 90005
Phone: 213-385-2977
Fax: 213-201-4727
KJackson@publicccounsel.org

Mary Tanagho Ross*
Bet Tzedek Legal Services
3250 Wilshire Blvd., #1300
Los Angeles, CA 90010
Phone: 323-939-0506
Fax: 213-471-4568
MRoss@betzedek.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs and the Class*