**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **J.O.P., *et al.*,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil No. SAG-19-01944** |
| **U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,** | * | |
| **Defendants.** | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Currently pending before this Court is Class Counsel's Motion Under Federal Rule of Civil Procedure 60(b) to Extend the Termination Date of the Settlement Agreement. ECF 701. In essence, Class Counsel argue that because Defendants removed a number of Class Members in violation of Section III.I of the Settlement Agreement, the Termination Date should be extended until February 24, 2028, for all wrongly removed individuals, to permit Class Counsel to identify those persons and pursue remedial relief. *Id.* Defendants filed an opposition, ECF 727, and Class Counsel filed a Reply, ECF 748. This Court held a motions hearing on October 29, 2026. ECF 764. At the hearing, for the reasons stated on the record and in this Court's May 26, 2026 opinion, ECF 619, this Court granted the motion in part, extending the Termination Date of the parties' court-approved Settlement Agreement to November 27, 2026. ECF 765. At that time, this Court deferred consideration of the remainder of the motion, which now will be granted in part and denied in part for the reasons set forth herein.

## I. BACKGROUND FACTS

The factual background of this case has been explained at length in prior opinions and is incorporated by reference herein. *See, e.g.*, ECF 619. It will be helpful, however, to review some of this Court's recent decisions on issues relevant to those presented in this motion.

In May, 2026, this Court granted in part Class Counsel's then-pending Motion Under Federal Rule of Civil Procedure 60(b) to Extend the Termination Date of the Settlement Agreement. ECF 619. In that motion, Class Counsel argued that a series of "changed circumstances" supported modification of the Termination Date. ECF 535-1 at 24–31. While this Court rejected the specific relief requested by Class Counsel (a "performance-based" termination mechanism or a wholesale 3-year extension of the term of the Settlement Agreement), it agreed to extend the Termination Date to account for a period during which a USCIS Hold Memo had halted some or all asylum applications from being processed. ECF 619 at 20–21, 28–29. In making that ruling, this Court noted in a footnote:

> Class Counsel also argued changed circumstances in the alleged "wrongful removals" in violation of Section III.I. Even assuming, *arguendo*, that this Court were to agree, this Court disagrees that extension of the Termination Date would be a suitably tailored modification to address wrongful removals during the original term. Whether there are modifications suitably tailored to address wrongful removals is better addressed in connection with the pending "motion to enforce," which includes alternative arguments for modification.

*Id.* at 20 n.26.

This Court decided Class Counsel's Emergency Motion to Enforce the Settlement Agreement and to Find Defendants in Civil Contempt on July 29, 2026. ECF 641. That opinion recounted the disclosure of fast-growing numbers of apparent wrongful removals: (1) the motions hearing on February 18, 2026 to discuss the alleged wrongful removals of eight potential Class Members, *id.* at 3; (2) the scheduling of an evidentiary hearing to amass evidence regarding the removal of what became nine confirmed and potential class members, *id.* at 4; (3) the disclosure, during that multi-day evidentiary hearing, that at least 91 removals of confirmed and potential Class Members had occurred, *id.* at 12–13; (4) the disclosure, at a May 19, 2026, hearing, that Defendants had re-run a search and identified 142 removals of potential Class Members, *id.* at 13; and (5) the clarification, at a June 26, 2026, hearing, that Defendants were aware of 107 individuals removed pursuant to final removal orders, 66

removed pursuant to grants of voluntary departure, and 2 removed on "other bases" before receiving a final decision on the merits of their asylum applications, *id.* at 14. Class Counsel proposed a suite of remedies to address the wrongful removals, including actions to be taken pursuant to the Court's authority to enforce the Settlement Agreement, the Court's civil contempt authority, and the Court's authority to modify the Settlement Agreement pursuant to Fed. R. Civ. P. 60(b). ECF 459. This Court found Defendants in contempt and used its enforcement authority and modification authority to impose certain additional terms, including requirements targeted to eliminate future mistaken removals and requirements for retrospective efforts to identify wrongly removed individuals. ECF 641. Those additional requirements have revealed the number of wrongly removed individuals at issue in the pending motions briefing.

## II. LEGAL STANDARD

Class Counsel's instant motion seeks modification of the Settlement Agreement. ECF 701. "The court's inherent authority to modify a consent decree or other injunction is now encompassed in Rule 60(b)(5) of the Federal Rules of Civil Procedure." *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 826 (4th Cir. 2005). Rule 60(b)(5) provides that a court may relieve a party or its legal representative from a final judgment or order if, *inter alia*, "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

"[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992). In assessing whether circumstances have so changed that a modification is warranted, the court must determine whether the moving party, at the time it entered into the agreement, actually anticipated the events it now cites as the basis for modification. *Id.* at 385. "[T]hat the events were theoretically foreseeable does not foreclose a modification"; "the issue is whether

the parties *actually* anticipated the events giving rise to the modification request." *Thompson*, 404 F.3d at 828 (emphasis in original).

## III. ANALYSIS

Class Counsel asks this Court for a blanket extension of the termination date from November 27, 2026, through February 24, 2028, for persons wrongly removed in violation of Section III.I on or before November 27, 2026. ECF 702 at 6. They argue that the period of time requested would permit them to locate the persons who have been removed and ascertain which of them are actual Class Members who want to return to this country for a hearing on their asylum claims. *Id.* at 28.

Defendants raise three primary arguments in opposition. First, they contend that this Court lacks jurisdiction under 8 U.S.C. § 1252(f) to grant the proposed modification. ECF 727 at 12–18. Second, they argue that their noncompliance does not justify modification. *Id.* at 18–24. And third, they argue that an almost 450-day extension of the Termination Date is not suitably tailored to the changed circumstances, even if modification is warranted. *Id.* at 25–27. This Court will address each argument, though it will shuffle the order in light of its disposition of the issues.

### 1. Whether Defendants' Noncompliance Justifies Modification

This Court has already concluded, in its July 29, 2026, opinion, that "the degree and nature of Defendants' noncompliance with what Class Counsel characterize as 'arguably the Agreement's most important term from a harm-reduction angle,' ECF 594 at 11, constitutes, in this Court's view, an unanticipated circumstance sufficient to support this Court's exercise of its modification authority." ECF 641 at 44–45. Despite that ruling, Defendants note that they "do not concede that every potential Class member reported to Class Counsel constitutes a violation of the Settlement Agreement." ECF 727 at 20–21. Both parties seem to agree with that proposition. But as of the date of the hearing, at least 84 confirmed Class Members had

been removed in violation of Section III.I. ECF 766 at 35. While this Court agrees with Defendants that the record evidences no intentional disregard of the Settlement Agreement, it disagrees that the number of wrongful removals has been *de minimis* or, as Defendants state, a "small number of potential mistakes." ECF 727 at 24. The wrongful removal of at least 84 confirmed Class Members, and possibly more, is not a small number and is amply sufficient to warrant modification.

The parties dispute the adequacy and promptness of Defendants' efforts to provide contact information about the wrongly removed potential Class Members. *See* ECF 766 at 40, 51. That issue is not germane to this Court's analysis. What is material is the fact that potential wrongful removals have been and continue to be discovered in the waning months and weeks of the Settlement Agreement's period.

Finally, Defendants contend that modification is not required because this Court previously determined that the appropriate remedy for wrongful removal is facilitation of the removed party's return. ECF 727 at 22. Those rulings were made, however, when there was still time under the Settlement Agreement for benefits to be afforded to confirmed Class Members. *See* ECF 715 (ordering Defendants to facilitate E.L.A.'s return on September 29, 2026); ECF 254 (ordering Defendants to facilitate Cristian's return on April 23, 2025). The case's current posture, with the Termination Date imminent, is another changed circumstance. This Court will soon lose jurisdiction to remedy those wronged by Defendants' conduct and that fact weighs heavily in favor of a modification to preserve this Court's ability to provide a suitable remedy.

**2. Whether Class Counsel's Requested Modification is Suitably Tailored**

Class Counsel argue that their requested modification is suitably tailored because the Settlement Agreement employs the February 24, 2028, date for other purposes and because the extended date would only be applied to those who have been wrongly removed. ECF 702 at

22–28. Defendants counter that should this Court find changed circumstances, "the only appropriate remedy is for this Court to order facilitation of return for Class Members who both demonstrate their Class Membership and that they did not otherwise waive their rights under the Settlement Agreement." ECF 727 at 25. Defendants also contended at the hearing that this Court need not extend the Termination Date at all, because it would retain jurisdiction to order facilitation of return for violation of its own April 23, 2025, order that Defendants refrain from removing class members. ECF 766 at 56 (discussing this Court's order at ECF 254). This Court is not wholly persuaded by either party's position.

The goal of modification is to "preserve the essence of the parties' bargain" and therefore to "return *both* parties as nearly as possible to where they would have been absent" the wrongful removal. *Thompson*, 404 F.3d at 832–33 (emphasis in original). Here, based on the most current numbers before this Court, 163 people (at least 84 of whom are confirmed Class Members) have been removed without receiving an adjudication on the merits of their asylum requests. ECF 766 at 35. Some of those will turn out to be Class Members entitled to the protection of the Settlement Agreement; others will not. Some will have otherwise waived their rights under the Settlement Agreement; others will not. And, as we have seen, if located, some will desire to return to this country; others will choose to remain where they are.[1]

This Court does not see its ability to enforce the "violation of its April 2025 order" as sufficient to permit this Court to return both parties to the position they would have been in absent the wrongful removals. Some Class Members were removed between January and April, 2025, and those removed in those earlier months would not be entitled to any relief under the later court order. Moreover, the Order's prohibition was limited to removing the Class Members

[1] In fact, to date, some Class Members who have been offered return have later opted to remain in the countries where they were removed. Such decisions are unsurprising, given that the information provided to this Court suggests that the success rate when adjudications on the merits have occurred at USCIS has not been high and most cases have ended in referral to an immigration judge. *See, e.g.*, ECF 517 at 122.

from the country in violation of Section III.I. *See* ECF 254. There are other provisions of the Settlement Agreement affording protection to Class Members that may have provided benefits to them had they remained. This Court requires greater flexibility to fashion a remedy to restore those Class Members to the position they should have held.

That said, Plaintiff's requested extension of the Termination Date for a lengthy period uniform to any wrongly removed individual is not suitably tailored either. As Defendants note, a person who was removed recently is in a different posture than someone removed almost two years ago in early 2025.

The appropriate remedies for a Class Member's wrongful removal are best addressed on a case-by-case basis, which can ensure that both the wrongly removed Class Member and the Defendants are placed as closely as possible to the positions they would have been in had the Class Member remained in this country awaiting asylum adjudication. This Court recognizes that earnest (and court-ordered) efforts to identify wrongly removed potential Class Members have been underway only for the last few months. Given the time frames provided in the Settlement Agreement for responding to inquiries from Class Counsel, there has been inadequate opportunity for these issues to be fleshed out. Moreover, there has been understandable difficulty in locating the removed Class Members. As these individuals should not have been removed from the United States in the first instance under the parties' bargained-for agreement, it is unfair to leave them deprived of the Settlement Agreement's benefits without an opportunity for this Court to consider whether some relief other than facilitation of return is warranted.

For these reasons, this Court finds that the modification of the Settlement Agreement suitably tailored to address the changed circumstance is an extension of this Court's jurisdiction to enforce the Settlement Agreement's provisions and terms as to Class Members who were wrongly removed prior to November 27, 2026. The extension will last for six months, until

May 27, 2027, subject to further extension should this Court deem it warranted for good cause shown. That six-month period should be sufficient to permit good faith efforts to locate the individuals who have not yet been located and for the parties to negotiate possible remedial terms. This Court will modify the language in sections IV.K and V.A of the Settlement Agreement to reflect that extension.

**3. Whether This Court Lacks Jurisdiction Under 8 U.S.C. § 1252(f)**

Lastly, this Court does not lack jurisdiction to grant the relief described herein, because the extension of its jurisdiction to consider appropriate remedies for violation of the Settlement Agreement has no more than collateral effect on the operation of covered provisions under 8 U.S.C. § 1252(f)(1). *See, e.g.*, *Garland v. Aleman Gonzalez*, 596 U.S. 543, 553 n.4 (acknowledging that § 1252(f)(1) does not foreclose lower courts' authority to "enjoin the unlawful operation of a provision *that is not specified in § 1252(f)(1)* even if that injunction has some collateral effect on the operation of a covered provision.") (emphasis in original). In its ruling, this Court has made no decision that "would restrain the operation of the Executive's removal authority under 8 U.S.C. §§ 1220-1231—covered provisions." ECF 568 at 33 (emphasis added) (citing 8 U.S.C. § 1231(a)(1)(A), which provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."). And, as this Court noted in its May, 2026 opinion, *see* ECF 619, multiple federal courts of appeals have held that injunctions primarily relating to asylum processes, specifically, do not contravene § 1252(f)(1), even if resulting in collateral effects to operation of covered provisions. *See, e.g.*, *Al Otro Lado v. Exec. Off. For Immigr. Rev.*, 138 F.4th 1102, 1126–28 (9th Cir. 2025), *cert. granted sub nom.*, *Noem v. Al Otro Lado*, 146 S. Ct. 604 (2025), and *rev'd on other grounds and remanded sub nom. Mullin v. Al Otro Lado*, 609 U.S. 258 (2026); *Refugee and Immigrant Ctr. for Educ. and Legal Servs. v. Mullin*, 171 F.4th 81, 117 (D.C. Cir. 2026) (holding that where lower court had enjoined government officials from, *inter*

*alia*, (1) "removing any individual plaintiffs or class members without complying with the asylum statute, 8 U.S.C. § 1158(a)"; and (2) "relying on the Proclamation or Guidance to 'narrow[ ] the eligibility criteria for asylum without complying with 8 U.S.C. § 1158(b)(2)(C),'" the injunctive relief was not barred by § 1252(f)(1), because "[t]he asylum statute, 8 U.S.C. § 1158, appears in Part I of the INA," not Part IV of the INA, "[s]o Section 1252(f)(1)'s injunction constraints do not apply."). At least one district court has held that where the claims at issue pertain to UACs, the TVPRA has "occupie[d] the field" and thus any interference with operation of covered provisions is by definition collateral to the operation of the TVPRA. *See Perez-Funez v. Dep't of Homeland Sec.*, No. CV 81-01457-MWF (Ex), 2026 WL 982623, at *10 (C.D. Cal. Apr. 6, 2026) (denying motion to terminate permanent injunction on basis of § 1252(f)(1) objection) ("[T]he government is first and foremost required to follow the TVPRA when it encounters unaccompanied children. . . . Therefore, where the TVPRA 'occupies the field' and constitutes a 'binding' legal framework on DHS's processing of UAC, as the Government insists, the Injunction's procedural requirements are thus enjoining or restraining the way the Government 'enforces, implements, or carries out' the *TVPRA*, rather than any covered provision.") (emphasis in original).

In light of the above, this Court concludes that § 1252(f)(1) does not bar this Court from ordering an extension of the jurisdictional provisions of the Settlement Agreement for six months, to preserve its ability to remedy violations of the Settlement Agreement's terms identified shortly before its expiration.

## IV. CONCLUSION

For the reasons stated above, Class Counsel's Motion Under Federal Rule of Civil Procedure 60(b) to Extend the Termination Date of the Settlement Agreement, ECF 701, is granted in part. Sections IV.K and V.A of the Settlement Agreement will be modified to extend this Court's jurisdiction to enforce the provisions and terms of the Settlement Agreement, as to

Class Members wrongly removed on or before November 27, 2026, without receiving adjudication on the merits of their asylum applications by USCIS, until May 27, 2027. A separate Order will follow.

Dated: November 3, 2027

/s/
Stephanie A. Gallagher
United States District Judge