**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION**

| | |
|---|---|
| J.O.P., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*<br><br>Defendants. | Case No. 8:19-cv-01944-SAG |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' THIRD MOTION FOR ATTORNEYS' FEES AND COSTS**

This Court should deny Plaintiffs' Third Motion for Fees and Expenses. Dkt. No. 754. Defendants' position was substantially justified in opposing Plaintiffs' First Motion to Extend the Settlement Agreement. *See* Dkt. No. 535-1. Should this Court disagree, an overall reduction in fees and costs is warranted where Plaintiffs obtained only limited success in litigating their motion. Pointedly, this Court rejected nearly all of Plaintiffs' proposals on modifying the Settlement Agreement in response to Plaintiffs' motion.

## I. LEGAL BACKGROUND

Pursuant to the Equal Access to Justice Act ("EAJA"), litigants in certain types of lawsuits against the government may petition the reviewing court to award the reasonable fees and expenses incurred during the course of the litigation. *See* 28 U.S.C. § 2412(d)(1)(A). In relevant part, the statute states:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having

> jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphases added). The EAJA statute sets forth what an EAJA application must contain. It states:

> A party seeking an award of fees and other expenses shall . . . submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B) (emphases added).

## II. FACTUAL BACKGROUND

### A. Settlement Agreement.

On July 1, 2019, a class of asylum seekers previously determined to be unaccompanied alien children sued the Department of Homeland Security ("DHS"), the Secretary of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS"), and the Director of USCIS to challenge guidance for determining initial jurisdiction over their asylum applications. On November 25, 2024, the Court granted final approval of the Settlement Agreement. ECF No. 205. Nearly all the provisions of the Settlement Agreement were set to terminate on May 27, 2026. *Id.*

### B. The Court's Extension of the Settlement Agreement to November 18, 2026.

On May 26, 2026, the Court granted Plaintiffs' Motion to Extend the Settlement Agreement to November 18, 2026. Dkt. No. 619. (May 2026 Memo. Op.). This Court determined that the USCIS Policy Memorandum PM-602-0192 ("Hold and Review Memo") constituted a "dramatic

change in circumstances" warranting a 175-day extension—the number of days between its issuance and the Court's order. The Hold and Review Memo provided:

> USCIS has determined that it must implement an adjudicative hold on all pending asylum applications, regardless of the alien's country of nationality . . . . This hold will remain in effect until lifted by the USCIS Director through a subsequent memorandum. Any requests to lift the hold due to litigation or other extraordinary circumstances must receive approval from the USCIS Director or Deputy Director.
> *Id.*

*See* USCIS Policy Memorandum 602-0192, *Hold and Review of all Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries*, December 2, 2025.

Plaintiffs' Motion proposed replacing the termination date with a "performance-based termination mechanism" requiring Defendants to complete a series of actions: (1) creation of a comprehensive potential Class Member List; (2) adjudication on the merits of the asylum applications of all erroneously removed Class Members who wished to return; (3) individualized notice to every person on the potential Class Member List inviting them to request that USCIS adjudicate their pending asylum applications on the merits; and (4) adjudication on the merits of the asylum applications of those Class Members who opt-in. Dkt. No. 535-1 ("Pls.' First 60(b) Mot.") at 1–2. The Court also denied Plaintiffs' proposal to extend the Settlement Agreement by three years, notably rejecting their argument that the Settlement Agreement required Defendants to adjudicate the applications of all Class Members by the original termination date. *See* May 2026 Memo. Op. at 20.[1]

[1] On October 29, 2026, the Court granted in part Plaintiffs' Second Motion to Extend the Settlement Agreement, thereby extending the Settlement Agreement's Termination Date for all Class Members for nine days, to November 27, 2026. Dkt. No. 765. On November 3, 2026, the Court extended the Settlement Agreement to May 27, 2027 for "Class Members wrongly removed by Defendants in violation of Section III.I on or before November 27, 2026." Dkt. No. 768.

**C. The Court's Prior Grants of EAJA to Plaintiffs.**

On November 25, 2024, the Court entered final approval of the parties' settlement agreement, which resolved the merits of the litigation but permitted Plaintiffs to seek attorneys' fees, which Plaintiffs did on December 24, 2024. Plaintiffs requested attorneys' fees in the amount of $1,820,206, as well as expenses in the amount of $4,812 pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. On July 15, 2025, the Court entered an order partially granting Plaintiffs' motion, awarding attorneys' fees to Plaintiffs in the amount of $909,809.17 and expenses in the amount of $4,812.00. In doing so, the Court reasoned that "while certain elements of its position were reasonable . . . its implementation was not in accordance with the law, both in the lack of notice and comment rulemaking and the retroactive application of the new policy to existing asylum applications." Dkt. No. 333 at 8. As to the reasonableness of the EAJA award, the Court rejected the Plaintiffs' argument that three of the attorneys possessed "special factors" warranting a receipt of enhanced hourly rates under 28 U.S.C. § 2412(d)(2)(A)(ii). Dkt. No. 333 at 9. Instead, it applied the standard EAJA rates adjusted for cost of living for all attorneys. *Id.* at 10–11. The Court found that a reduction of 15% from the requested number of hours was warranted to account for Plaintiffs' billing deficiencies. *Id.* at 13.

On April 23, 2026, the Court issued an order granting Class Counsels' Motion to Enforce the Settlement Agreement. Dkt. No. 254. Class Counsel subsequently filed a second EAJA motion seeking $161,823.09 in attorneys' fees and $6,120.49 in costs and expenses. Dkt. No. 505-1. The Court rejected Defendants' argument that a percentage-based reduction is warranted based on the unspecified nature of "team calls," vague entries, and block billing. Dkt. No. 669 at 8–9. The Court recognized limited vague and block billed entries and placed a $1,000 reduction to Class Counsels' requested fees. *Id.* at 9.

## III. ARGUMENT

Plaintiffs' Third Motion for Attorneys' Fees, Dkt. No. 754-1 ("Pls.' Mot.") should be denied outright because Defendants' litigation positions were "substantially justified." *See Hyatt v. Barnhart*, 315 F.3d 239, 244 (4th Cir. 2022).[2] Defendants sought to uphold the terms of the Settlement Agreement and prevent Plaintiffs from rewriting its terms in ways the parties never agreed to.

In any event, if the Court finds that Defendants' positions were not substantially justified, the Court should reduce the fees awarded to Plaintiffs because Plaintiffs vastly overstate the extent of the success they obtained. The Court plainly rejected the heart of Plaintiffs' proposal—a performance-based termination mechanism. Because Plaintiffs achieved minimal success in their first Motion to Extend the Settlement Agreement and "the most critical factor [in assessing attorneys' fees] is the degree of success obtained," *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983), this Court should significantly reduce the fees that Plaintiffs may obtain.

### I. Defendants Were Substantially Justified in Pre-Litigation and Litigation Positions.

The government does not need to win the case to be substantially justified. Instead, the government bears the burden of showing its position had a reasonable basis in law and fact—that is, a reasonable person could find it correct. *United States v. 515 Granby, LLC*, 736 F.3d 309, 315 (4th Cir. 2013). This standard allows the government some flexibility, provided its stance is not entirely unreasonable. *See, e.g., Perez v. Jaddou*, 31 F.4th 267, 271 (4th Cir. 2022); *Hess Mech. Corp. v. N.L.R.B.*, 112 F.3d 146, 149 (4th Cir. 1997).

---

[2] Defendants do not dispute Plaintiffs' assertion that they are the prevailing party with respect to fees and costs related to their First Motion to Extend the Settlement Agreement.

When evaluating whether the government's position is substantially justified under EAJA, courts in the Fourth Circuit consider the government's *overall* conduct, including both pre-litigation action and litigation posture, rather than analyzing individual issues separately. *See, e.g, Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993); *Granby*, 736 F.3d at 316. To determine "whether the government acted reasonably in causing the litigation or in taking a stance during the litigation, courts must consider the "totality of the circumstances." *Hyatt v. Barnhart*, 315 F.3d 239, 244-245 (4th Cir. 2002). Viewed in its entirety, Defendants took reasonable actions to contest Plaintiffs' Motion to Extend the time-limited Settlement Agreement.

**A. Defendants' Pre-Litigation Conduct was Substantially Justified Based on the Exact Terms of the Settlement Agreement.**

Plaintiffs focus solely on the Hold and Review Memo to argue that Defendants cannot establish substantial justification for their pre-litigation conduct. Pls.' Mot. 13–17. Plaintiffs' over-argument of this one issue makes sense; the Hold and Review Memo is the only reason the Court extended the Agreement in response to their First Motion to Extend.[3] May 2026 Memo. Op. But Plaintiffs' myopic view of that extension and this Court's underlying reasoning to extend cannot vacate or re-frame valid pre-litigation decisions. The Court must consider the totality of circumstances surrounding the government's conduct giving rise to the litigation. *Hyatt*, 315 F.3d at 244-245; *see also Roanoke*, 991 F.2d at 139 ("[W]e look beyond the issue on which the petitioner prevailed to determine, from the totality of circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation.").

Here, Defendants' pre-litigation decisions leading up to Plaintiffs' First Motion to Extend the Agreement emulated the essence of the parties' bargained-for, "time-limited" agreement: that

---

[3] Defendants do not concede that the Hold and Review Memo justified extending the Settlement Agreement.

the Settlement Agreement would largely sunset "548 days after the Effective Date." *See* Agreement, § II.S; *see also* Hr'g. Tr. Sept. 23, 2026, 8:17.

Critically, Plaintiffs' claim that Defendants' failure to comply with the Settlement Agreement warrants extension was not borne out. Plaintiffs argued for the first time, in their First Motion to Extend the Agreement, that Defendants were obligated to adjudicate *all* Class Members' asylum applications before the original Termination Date. Pls.' First 60(b) Mot. at 22. Defendants argued—and this Court agreed—that the Settlement Agreement nowhere guarantees all Class Members an adjudication on the merits by the Termination Date. Dkt. No. 568 ("Defs.' Opp'n. Mot.") at 6–7. Defendants' position against extension was substantially justified because adjudicating all applications as the Plaintiffs' suggested was simply not part of the deal that the parties struck when fashioning the Agreement. Plaintiffs also claimed that the breadth of erroneous removals warranted extension (an argument that the Court rejected as an inappropriate remedy in response to Plaintiffs' Motion, May 2026 Memo. Op. at n.26). In response, Defendants acknowledged that inadvertent removal of Class Members not in compliance with Section III.I does not comport with the Settlement Agreement. Defs.' Opp'n. Mot at 12. Nevertheless, Plaintiffs' overstated Defendants' non-compliance with Section III.I. Defendants' position that the degree of purported noncompliance does not support extension was rooted in law and fact because removal of individuals with unconfirmed Class membership does not violate the Settlement Agreement—an individual must meet *all* prongs of the Class definition to trigger Defendants' obligations under Section III.I.

Additionally, Defendants' position that the Hold and Review Memo was not a changed circumstance justifying modification was substantially justified because the Hold had been lifted for virtually all Class Members, and Plaintiffs never even attempted to quantify how many Class

Members were actually impacting by the Hold and Review Memo. Such a position was entirely reasonable given that the extent of the Hold's application to Class Members remained undetermined. Recovery under EAJA was "never intended to chill the government's right to litigate" issues in which the government "chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong." *Roanoke*, F.2d at 139. Defendants' need not establish that positions were "justified to a high degree," but instead justified "to a degree that could satisfy a reasonable person." *Id.* at n.4.

Taken altogether, Defendants' conduct giving rise to the litigation was substantially justified. Plaintiffs' impermissible attempt to examine only the Hold and Review Memo to establish a lack of substantial justification disregards the Court's obligation to review the issues as an "inclusive whole, rather than as atomized line-items." *Granby*, 736 F.3d at 315.

**B. Defendants' Litigation Position was Also Substantially Justified Because Class Counsel Effectively Attempted to Rewrite the Settlement Agreement.**

Plaintiffs again singularly focused on the Hold and Review Memo when evaluating Defendants' litigation position, disregarding the fact that the heart of Plaintiffs' motion concerned their denied performance-based proposals. Plaintiffs' proposed modifications in their First Motion to Extend the Settlement Agreement blatantly contradicted the existing Agreement and binding legal precedent. Plaintiffs' principal proposal to remedy Defendants' alleged noncompliance involved performance-based mechanisms that reached far beyond the parties' negotiated terms in the Settlement Agreement. Pls.' First 60(b) Mot. at 16–19. Class Counsel themselves acknowledged at a later hearing that their proposals in their First Motion to Extend were not suitably tailored. ("Admittedly, [the performance-based metric] would have extended this protection to the stay of removal far into the future, and because of what we understand about how the system is working, it would have generated additional unlawful removals that perhaps would

have felt like it was never ending."). Hr'g. Tr. Oct. 29, 2026, 48:16-23. Defendants were substantially justified in opposing Plaintiffs' attempt to rewrite the Agreement, and this Court properly denied Plaintiffs' overbroad and drawn-out requested remedies.

The original Settlement Agreement provided a termination of all but one term in 548 days from the Effective Date. Plaintiffs instead sought to make termination contingent on four "required actions," none of which the Settlement Agreement obligates Defendants to do. Dkt. No. 535-24, § 4. First, Plaintiffs proposed a new definition titled "Potential Class Member List," which Defendants are then required to create as one condition of termination. *Id.* at § 3. The creation of this "Potential Class Member List" is not something the parties had ever agreed to, and Defendants have never recognized an obligation to "Potential Class Members" as defined by Plaintiffs. Plaintiffs sought to introduce an entirely new category of individuals into the Settlement Agreement and add multiple provisions establishing affirmative requirements Defendants must take toward individuals. In fact, nearly all of Plaintiffs' proposed alternative termination mechanism involve actions Defendants must take with this "Potential Class Member List." Plaintiffs' proposal that Defendants adjudicate on the merits the applications of all potential Class Members who "opt in"—is essentially an indefinite extension. It was never Defendants' intent to ever agree to adjudicate all Class Member asylum applications within a certain timeframe, let alone "potential class members."

Second, Plaintiffs proposed that Defendants create and implement a system of individualized notice and monitor responses for half a year from a group the size of which is unknown, but may be in the hundreds of thousands. Pls.' First 60(b) Mot. at n.6. And third, Plaintiffs proposed not only that Defendants identify all removed potential Class Members, but

also allow at least a year for the funding and facilitation of return of any Class Members who so wish. Dkt. No. 525-24 at 2. This proposal brings a whole host of administrative challenges.

Plaintiffs' sweeping proposals were unsupported by the terms of the Settlement Agreement and run afoul to the "suitably tailored" modification standards outlined in *Rufo v. Inmates of Suffolk County Jail*. 502 U.S. 367, 391 (1992). As stated by the Supreme Court, "[a] proposed modification should not strive to rewrite a consent decree . . . the focus should be on whether the proposed modification is tailored to resolve the problems created by the change in circumstances. A court should do no more." *Id*. Yet rewriting the Settlement Agreement is precisely what Plaintiffs aimed to do. Plaintiffs' proposals failed to "preserve the essence of the parties' bargain" as required by *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, 404 F.3d 821, 833 (4th Cir. 2005), asking this Court to remove one provision, completely rewrite two provisions, and add two entirely new provisions. Therefore, Defendants were substantially justified in its position to oppose Plaintiffs' unwarranted attempt to rewrite the Settlement Agreement.

As discussed above, Defendants were substantially justified in its position that the Hold and Review Memo did not constitute a changed circumstance sufficient to support modification. The Hold began to be lifted as early as February 13, 2026, and as of March 30, 2026, likely fewer than two percent of Class Members fell into categories still placed under the Hold. *See* Dkt. No. 535-4 at 107 (discussing Feb. 13 guidance distributed within regarding applying a hold exception to detained UACs); Defendants' Notice of Change of Material Facts, Dkt. No. 523 (explaining that holds have been lifted for asylum applications from non-high risk countries). Defendants were entirely reasonable and substantially justified in its position when the number of affected Class Members was small and undetermined, and were even more so justified in opposing Class-wide extension as not suitably tailored.

Moreover, and contrary to Plaintiffs' assertion, Defendants were justified in challenging the Court's jurisdiction to extend the Settlement Agreement under 8 U.S.C. § 1252(f)(1). It is well-established that questions of jurisdiction "may be raised at any time." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). That remains true even when a court previously determines that a party waived a jurisdictional argument. And even if Defendants were able to waive § 1252(f)(1) by entering into the Settlement Agreement, Defendants instead argued that § 1252(f)(1) would bar the Court from granting an *extension*. Thus, Defendants' substantially justified positions preclude Plaintiffs from recovering under EAJA.

## II. Plaintiffs Seek Unwarranted Fees and Costs.

Even if this Court decides that the government was not substantially justified in its position, this Court should find that Plaintiffs seek an unwarranted amount of attorneys' fees and costs. "Once the district court determines that plaintiffs have met the threshold conditions for an award of fees and costs under the EAJA, the district court must undertake the 'task of determining what fee is reasonable.'" *Hyatt*, 315 F.3d at 253 (quoting *INS v. Jean*, 496 U.S 154, 161 (1990)). A district court has "considerable discretion in determining the amount of the fee award." *Granby*, 736 F.3d at 318.

Reasonableness relates to the rate of compensation and the total time charged. *Hyatt*, 315 F.3d at 248. A prevailing party is entitled to compensation only for the reasonable time expended in the litigation, not to all time billed. *Id.* at 253–54. The party seeking an award of fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. Counsel must also exercise "billing judgment" in the hours worked. *Id.* at 433–34.

To determine a reasonable fee, the Fourth Circuit has directed district courts to (i) calculate the lodestar figure, which is determined by multiplying the "reasonable hourly rate" by the "hours reasonably expended" in light of the factors enumerated in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) and *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), abrogated by *Blanchard v. Bergeron*, 489 U.S. 87 (1989); (ii) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (iii) award some percentage of the remaining amount, depending on the degree of success achieved. *Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). The lodestar figure is presumptively reasonable and may only be adjusted "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The Barber/Johnson factors are (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to acceptance of the case; (v) the customary fee for such services; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the representation, (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *See Johnson*, 488 F.2d at 717–19.

Notably, "the extent of a plaintiff's success is an important factor to consider when determining the reasonableness of the fees requested." *Hyatt*, 315 F.3d at 254. The Supreme Court instructs that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S.

at 440. Otherwise, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. That is exactly the case here.

### A. There is a Significant Disparity Between the Amount of Fees Involved and the Results Class Counsel Actually Obtained.

Class Counsel claims 317.4 total hours' worth of attorneys' fees for their success in the First Motion to Extend the Settlement Agreement, citing hours spanning four organizations and multiple attorneys in drafting the Motion and Reply. In its Order, this Court granted a narrow, temporal extension, and not based on Plaintiffs' primary performance-based proposals. May 2026 Memo. Op. at 20–21. Yet a temporal extension does not appear anywhere in Plaintiffs' Motion or Reply. In fact, Plaintiffs only raised the temporal extension during the May 19, 2026 motions hearing, and even then, this Court only granted a six-month extension instead of Plaintiffs' request for at least three years. *Id.* at 11. In short, Class Counsel is claiming they are entitled to hundreds of hours of fees for work they did not ultimately succeed in. Reality reveals that Class Counsels' limited success in extending the Settlement Agreement resulted from their last-minute proposal during an hour-and-a-half hearing, not from their concentrated efforts to build a performance-based mechanism. Thus, Plaintiffs' claim for $86,300.43 in fees from 317.4 hours of work is not "reasonable in relation to the results" they obtained. *Hensley*, 461 U.S. at 440. And, even to the extent the Court finds Plaintiffs were partially successful, Plaintiffs' block billing records make it impossible to disentangle the hours spent pursuing their unsuccessful claims from the successful claim. *See, e.g.*, Dkt. No. 754-5 at 14 (billing 7.4 hours with the broad entry "Drafted and edited brief ISO 60(b) motion"); Dkt. No. 754-4 at 16 (billing 5.5 hours with the broad entry "Edit 60(B) motion"); Dkt. No. 754-3 at 14 (billing 4.4 hours with the broad entry "timeline of CM removals for hearing reference"); Dkt. No. 754-2 at 7 (billing 16.9 hours between April 6 and April 9 with the broad entry "[w]ork on motion to extend termination date of settlement agreement").

Moreover, the Hold and Review Memo was the only reason for the Court's extension of the Settlement Agreement. Yet Class Counsel dedicated numerous pages in their Motion and Reply arguing that erroneous removal and arrests and detentions justified modification.[4] These efforts appear to be included in the hours Plaintiffs are alleging are recoverable through this motion. *See, e.g.*, Dkt. No. 754-3 at 14 (billing 4.4 hours with the broad entry "timeline of CM removals for hearing reference"). Plaintiffs mischaracterize the level of success they obtained on their First Motion to Extend the Settlement Agreement, and this Court should deny their requested fees as unreasonable. Alternatively, this Court should exercise its discretion to significantly reduce fees and costs by at least 80% due to Plaintiffs' limited success in litigating their motion.

**CONCLUSION**

This Court should deny Plaintiffs' Third Motion for Attorneys' Fees and Costs.

[4] Class Counsel attached twenty-one exhibits to their First Motion to Extend the Settlement Agreement, but only a handful referred to the USCIS Hold and Review Memo. *See, e.g.*, Dkt. Nos. 535-7, 535-17. The vast majority of the exhibits related to Plaintiffs' claims on erroneous removals, performance-based proposals, and their discussion on ICE arrest and detention policies not related to the issues raised and negotiated in this litigation.

DATED: November 20, 2026

Respectfully Submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

ANTHONY NICASTRO
Director

CAROLINE MCGUIRE
Acting Assistant Director

RUTH ANN MUELLER
Senior Litigation Counsel

LARISSA K. JOHNSON
JAIME A. SCOTT
Trial Attorneys

ANDREA GARCIA
Law Clerk

*/s/ Jeffrey Alderette*
JEFFREY ALDERETTE
Trial Attorney (D.C. Bar No. 1738711)
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
T: (202) 860-9941
Jeffrey.Alderette@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2026, I served an electronic copy of the foregoing on counsel for the Plaintiffs via the Court's CM/ECF system.

*/s/ Jeffrey Alderette*
JEFFREY ALDERETTE
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation

*Counsel for Defendants*